**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. 23-cr-061 (MN) |
| | ) |
| ROBERT HUNTER BIDEN | ) |
| | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

**BRIEF OF *AMICI CURIAE*
THE HERITAGE FOUNDATION AND MIKE HOWELL**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ......................................................................... ii

INTERESTS OF *AMICI CURIAE* ........................................................... 1

INTRODUCTION ......................................................................................... 2

    ARGUMENT ........................................................................................... 6

**I.** **THERE ARE GRAVE CONCERNS ABOUT THE CONDUCT OF THIS CASE ON WHICH NO ONE OTHER THAN THE DEPARTMENT OF JUSTICE HAS FULL INFORMATION.** ...................................................................... 6

**II. ASSESSING A PLEA AGREEMENT REQUIRES COMPLETE INFORMATION.** ........................................................................................ 19

**III. THE DEPARTMENT OF JUSTICE IS OPPOSING THE RELEASE OF INFORMATION THAT MAY INFORM THIS PROCEEDING.** .......................... 21

**A. The Department of Justice has Opposed *Amici's* Efforts to Obtain the Documents Under FOIA.** ............................................................................................. 22

**B. The Department of Justice has Vigorously Opposed Congressional Oversight of the Hunter Biden Investigation.** ........................................................................ 23

    **1. The House Judiciary Committee's February 28, 2023 Records Request.** ........... 23

    **2. The Department and Weiss's Refusal to Cooperate with Congressional Oversight of Alleged Whistleblower Retaliation in the Hunter Biden Investigation has Compounded Existing Confusion About Weiss's Authority.** . 24

    **3. The Department and Weiss Have Refused to Cooperate With Congressional Oversight of the *Substance* of the Whistleblowers' Allegations.** .......................... 25

**IV. THIS COURT SHOULD NOT ACCEPT THE PLEA AGREEMENT ON JULY 26, 2023.** ........................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*In re Morgan*, 506 F.3d 705 (9th Cir. 2007) .............................................................. 19

*In re United States*, 32 F.4th 584 (6th Cir. 2022) ........................................................ 19

*United States v. Aegerion Pharmaceuticals, Inc.*, 280 F.Supp.3d 217 (2017) ...................... 21, 29

*United States v. Baird*, 109 F.3d 856 (3d Cir. 1997) ..................................................... 20

*United States v. Bednarski*, 445 F.2d 364 (1st Cir. 1971) ............................................. 20

*United States v. Blakeslee*, 423 Fed. App'x. 136 (3rd Cir. 2011) .................................... 28

*United States v. Brown*, 595 F.3d 498 (3rd Cir. 2010) ..................................... 21, 28, 29

*United States v. Carrigan*, 778 F.2d 1454 (10th Cir. 1985) ........................................... 20

*United States v. Ciavarella*, 716 F.3d 705, (3rd Cir. 2013) ........................................... 20

*United States v. Conahan*, No. 3:09-CR-00028, Slip. Op. (M.D. Pa. July 31, 2009) (ECF No. 39-2) ................................................................................................................ 20, 21

*United States v. Concord Mgmt. & Consulting LLC*, 317 F.Supp.3d 598 (D.D.C. 2018)........... 16

*United States v. Dixon*, 504 F. 2d 69 (3d Cir. 1974)..................................................... 19

*United States v. Hecht*, 638 F.2d 651 (3rd Cir. 1981) ................................................... 28

*United States v. Hicks*, No. 06–0055, 2006 WL 3544713 (M.D. Pa. Dec. 8, 2006).............. 20, 29

*United States v. Jesus-Nunez*, No. 10-cr-17 (SR), 2013 WL 312387 (M.D. Penn. Jan. 25, 2013) ................................................................................................................ 30

*United States v. Lange*, No. 98–472, 1999 WL 219787 (E.D. Pa. Apr. 12, 1999) ................... 20

*United States v. Ruch*, 906 F. Supp. 261 (E.D. Pa. 1995)............................................. 20

*United States v. White*, No. 16-CR-212, 2023 WL 2405436 (M.D. Pa. Mar. 8, 2023) .............. 29

*United States v. Wright*, 291 F.R.D. 85 (E.D. Pa. 2013) .............................................. 20

**Statutes**

18 U.S.C. § 1001 .......................................................................................... 7, 14

18 U.S.C. § 1505 ............................................................................................. 14

43 Stat. 5 (1924) ............................................................................................... 5

**Other Authorities**

Fed. R. Crim. P. Advisory Committee's Note to 1974 Amendments.................................. 19

Nathan Masters, *Crooked* (2023)........................................................................... 5

**Rules**

*See* Fed. R. Crim. P. 11 ............................................................................... passim

## INTERESTS OF *AMICI CURIAE*

*Amicus curiae*, The Heritage Foundation, is a Washington, D.C.-based nonpartisan public policy organization with a national and international reputation whose mission is to "formulate and promote public policies based on the principles of free enterprise, limited government, individual freedom, traditional American values, and a strong national defense."  Heritage Foundation*, About Heritage*, *found at* https://www.heritage.org/about-heritage/mission (last visited July 25, 2023).  Heritage is a not-for-profit IRC Section 501(c)(3) organization which engages in substantial dissemination of information to the public.  Heritage operates a national news outlet, *The Daily Signal*.

*Amicus curiae,* Mike Howell, leads the Heritage Foundation's Oversight Project and is an investigative columnist for *The Daily Signal*.  The Oversight Project is an initiative aimed at obtaining information via Freedom of Information Act requests and other means in order to inform the public and Congress on the workings of government.  The requests and analyses of information are informed by Heritage's deep policy expertise.  By function, the Oversight Project is primarily engaged in disseminating information to the public.  Oversight Project, *found at* https://www.heritage.org/oversight (last visited July 25, 2023); Twitter, *found at* @OversightPR (last visited July 25, 2023).  Staff members of the Oversight Project regularly appear in television, radio, print, and other forms of media to provide expert commentary on salient issues in the national debate.

*Amici* have a strong interest in informing the public and Congress on the workings of government.  *Amici* work to provide the transparency necessary to restore the public's trust in the equal administration of justice in the United States.  This case presents fundamental questions

concerning the operation of the American justice system.  *Amici* submit this brief to provide the Court with information relevant to answering those questions.

## INTRODUCTION

This is *not* an ordinary criminal plea agreement.  Before the Court is a case concerning the son of the President of the United States, Robert Hunter Biden.

The Court must decide whether to accept the plea agreement.  Federal Rule of Criminal Procedure 11 ("Rule 11") gives this Court immense discretion in considering whether to accept or reject a plea agreement.  A critical factor in that evaluation is whether the plea agreement is "in the interests of justice."  That analysis can include evaluation of the proposed sentence in relation to the Sentencing Guidelines range for the actual underlying offense conduct; evaluation of facts—including uncharged conduct—relevant to sentencing; and evaluation of whether the proposed plea would undermine the system of justice directly or via public perception.

*Amici* seek to ensure the facts relevant to these considerations are fully briefed before this Court.  The parties have no incentive to do so; their interest is in having the plea agreement they negotiated accepted, and to put the matter to bed.  Moreover, *Amici* are aggressively litigating a Freedom of Information Act ("FOIA") case seeking records that are important to this Court's evaluation of whether to accept the plea agreement.  *See Heritage Found. & Mike Howell v. DOJ*, No. 23-cv-1854 (DLF) (D.D.C.).

*First*.  Information has come to light after the plea agreement was announced that has raised significant questions about whether this entire proceeding is infected with political bias.  And on the current record, there is clearly a perception of bias.  To be sure, that perception may shift, but it must be addressed here and now.  The Attorney General of the United States and the United States Attorney for the District of Delaware, David C. Weiss ("Weiss"), have repeatedly

assured the American People that despite the fact that Hunter Biden is the son of the sitting President, the investigation is "independent" because Weiss has "complete authority over the Hunter Biden investigation."  But that position is directly contradicted by Internal Revenue Service Whistleblowers—who have contemporaneous documentation—and by Weiss's *own statements*.

*Second*.  *Amici* are aggressively litigating their FOIA action to obtain the production of what the Department represents is over twenty-five hundred pages of internal records that go directly to resolving the contradictions above.  *See* Declaration of Mike Howell in Support of Motion for Leave to File *Amicus Curiae* Brief, Ex. 1 at ¶ 20 (July 25, 2023) ("Howell Decl.").  Both *Amici* and Congress have requested these records.  The Department has fiercely resisted the transmission of these documents in both the FOIA litigation and Congressional oversight settings.  The Department has used every tool in the arsenal to oppose any sort of transparency on these issues.  *Amici's* litigation is pending, but *Amici's* efforts to obtain records in time for this plea hearing have been rejected by courts in the District of Columbia.  Notably, the District Court rejected *Amici's* motion for a preliminary injunction in part by concluding that obtaining more information for use in these proceedings was properly the province of *this* Court.  Howell Decl. Ex. 2 at 6.

As concerns Congress, the Department has refused to make much of any meaningful response.  Most recently on July 24, 2023, it transmitted a self-contradicting letter to the investigating Congressional Committees that further muddles the questions of Weiss's authority. *See* Howell Decl. Ex. 3 ("July 24 Letter").  On the one hand, the July 24 Letter states "[t]he Department believes it is strongly in the public interest for the American people and Congress to hear directly from U.S. Attorney Weiss on these assertions and questions about his authority at a

public hearing" (*id.* at 2); that the Department is "deeply concerned about misrepresentations about our work" (*id.* at 1); and that the Department will make Weiss available for public testimony on "September 27, September 29, October 18, and October 19." *Id.* at 2.  On the other hand, the July 24 Letter flatly ignores that the Judiciary Committee also requested to interview other fact witnesses.  The letter contains a number of carefully lawyered caveats that appear to be designed to allow Weiss to refuse to answer any question he finds "difficult" at any eventual hearing.  Particularly odd is the reference to limitations of testimony at "this early juncture" to "protect the ongoing matter."  *Id.*  If this case is at an "early juncture" and on-going, then why has the Government offered a plea agreement that by all accounts does not in any way further a related investigation?

*Third*.  Because of the substantial record and conflict on the issue of the very independence of the Department's conduct of this case, *Amici* urge this Court to defer consideration of the plea agreement until more information is known.  The Court has ample authority to obtain additional information or briefing on the matters raised herein.

The Court also has authority under Rule 11 and its inherent authority to control its own docket to allow sufficient time to ensure it has all relevant information to consider the difficult decisions it must make, and time sufficient for the serious deliberation the extreme and usual posture of this case demands.  *Amici* submit that in exercising that authority, the Court should consider not only its informational needs, but should also consider the immense public interest in obtaining information concerning this case with which to petition the Court.  The Court also should consider the fact that as *Amici's* FOIA litigation and Congress' investigation proceeds and more information becomes known, the Executive or Congress may wish to take action to remove the handling of the Hunter Biden case from the Department.  This has happened before.

*See, e.g.*, Nathan Masters, *Crooked* 81–82 (2023) (detailing legislative remedial actions in the aftermath of the Teapot Dome scandal); 43 Stat. 5 (1924) (an Act of Congress to establish a special counsel in part to void corruptly awarded federal oil leases).

At this juncture, the Court has at least three options:

*Option 1.*  The Court has full authority to reject the plea agreement on July 26, 2023. That said, *Amici* do not urge this course *at this time*, although there is *more* than ample basis to do so on the present record.  *Amici* believe the extraordinary and historic nature of this matter requires full information, public participation, and deliberation, regardless of the outcome, to ensure the public has confidence that justice has been done.

*Option 2.*  The Court has the power to accept the plea but defer acceptance of the *plea agreement* pending preparation of a presentence report.  A presentence report will provide this Court with one aspect of the world of information essential to its decision, but not currently before it.  This is the normal approach; the Federal Sentencing Guidelines recommends it.  *Amici* believe this course would serve the broader interests at stake.

*Option 3.*  The Court could postpone the change of plea proceeding in order to obtain additional information on all relevant matters.  It also could do so to allow reasonable time for the Executive or Congress to act and remove the conduct of this case from the Attorney General. The Court has power to do so.  And the Court also has power to directly require the production of information—for example from Weiss.  *Amici* believe this course would also serve the broader interests at stake as to the Congressional and public need for information.

## ARGUMENT

### I.   THERE ARE GRAVE CONCERNS ABOUT THE CONDUCT OF THIS CASE ON WHICH NO ONE OTHER THAN THE DEPARTMENT OF JUSTICE HAS FULL INFORMATION.

The son of the President of the United States was being investigated for serious crimes, many of which revolve around allegations of *at best* unsavory influence peddling to at least one hostile foreign power (agents of the Chinese Communist Party).  The allegations involve not only many other members of the President's family, but the President *himself*.  Because the Attorney General of the United States, Merrick B. Garland, was appointed by the President, one would expect the appointment of a Special Counsel.  Other Administrations appointed Special Counsels in cases where the possible conflict of interest was much more attenuated.  And yet, the Biden Administration steadfastly refuses to do so.

The Administration's answer to date has been that Weiss—retained from the prior Administration—supposedly had complete authority over the case.  Attorney General Garland repeatedly testified under oath before Congress to that effect.  As the Attorney General told the press on June 23, 2023:  "Mr. Weiss had in fact more authority than a special counsel would have had.  He has and had complete authority, as I said, to bring a case anywhere he wants in his discretion." Howell Decl. Ex. 4 at *19.

But on June 22, 2023, the House Committee on Ways and Means released transcribed bipartisan staff interviews of two Internal Revenue Service ("IRS") whistleblowers, Gary Shapley ("Shapley") and (now publicly identified) Joseph Ziegler ("Ziegler") (collectively "Whistleblowers").[1]  Those transcripts paint a picture of a different world.  *See* Howell Decl. Ex.

---

[1]  At the time of his transcribed interview, Ziegler was anonymous.  His identity was not publicly revealed until he testified at a public House Committee on Oversight and Accountability hearing

5; Howell Decl. Ex. 6.  That stark conflict in world views was reiterated and hammered home when the Whistleblowers testified in public before the House Committee on Oversight and Accountability on July 19, 2023.  *See* Howell Decl. Ex. 7.

Both Whistleblowers are career criminal investigators in an elite government unit. Shapley is the highly decorated supervisor of that unit.  Howell Decl. Ex. 5 at 8–9, 12, 32.  Both Whistleblowers testified they had no political axe to grind.  Howell Decl. Ex. 5 at 11; Howell Decl. Ex. 6 at 10.  Indeed, Ziegler testified he is a Democrat and that he had even been attacked online for his role in the investigation because, as a gay man, many assumed he was a reliable "far left liberal" who would favor the Biden Administration. Howell Decl. Ex. 6 at 10.

The Whistleblowers offered more specific testimony:

- The Whistleblowers testified that Weiss stated he was not the deciding official as to whether charges are brought against Hunter Biden, contrary to the Attorney General's sworn testimony.

- Shapley testified that at an October 7, 2022 meeting, Weiss told those present:

    o That he sought to bring felony tax charges against Hunter Biden for the tax years 2014 and 2015 in the District of Columbia (which had sole venue), but the Biden-appointed U.S. Attorney for the District of Columbia, Matthew Graves, refused to proceed.

    o That he requested Special Counsel status from Main Justice, but the request was denied.  Instead, he was told to "follow the process."

    o That he sought to bring felony tax charges for the tax years 2017 and 2018 in the Central District of California (which had sole venue).

    o That if the Central District of California refused to bring the felony tax charges referred to them, he had no authority to bring those charges absent authorization from the Attorney General or the Deputy Attorney General.

---

on July 19, 2023.  For ease of understanding, this brief will refer to him as Zeigler throughout. Transcribed Interviews with Congressional staff are not taken under oath, but Shapley and Ziegler were both cautioned they were subject to 18 U.S.C. § 1001, which criminalizes false statements to Congressional investigators.  Howell Decl. Ex. 5 at 5; Howell Decl. Ex. 6. at 5.

- Shapley documented Weiss's statements at the October 7, 2022 meeting in a contemporaneous memorandum sent to, and confirmed as accurate by, his supervisor who was also present at the meeting.

- Shapley testified that the U.S. Attorney for the Central District of California refused to bring the felony tax charges. *The New York Times* reported on June 27, 2023 that "this episode was confirmed independently to *The New York Times* by a person with knowledge of the situation." Howell Decl. Ex. 8 at 3.

- During a transcribed interview a former FBI agent who worked on case corroborated part of the Whistleblowers testimony. Howell Decl. Ex. 9 at 4.

The conflict between the Whistleblowers' testimony on pain of felony and the emphatic position delivered under oath by the Attorney General is direct and obvious. The more granularity with which one considers the conflicting statements, the wider the chasm.

**<u>Statements of Attorney General Garland:</u>**

- "So, I am not going to comment about this investigation, but as everyone knows there is an investigation going on in Delaware by the U.S. Attorney who was appointed by the previous Administration. I can't comment on it any further than that." Howell Decl. Ex. 9.

- "So the Hunter Biden investigation, as I said even in my own nomination confirmation hearing, is being run by and supervised by the United States Attorney for the District of Delaware." Howell Decl. Ex. 10 at *16–18.

- "He [Weiss] is supervising the investigation. And I'm, you know, I'm not at liberty to talk about internal Justice Department deliberations, but he is in charge of that investigation. There will not be interference of any political or improper kind." *Id.* at *16.

- "Again, he [Weiss] is the supervisor of this investigation and, you know, the normal processes of the department occur. But he is the supervisor of this investigation." *Id.* at *16.

- "Because we put the investigation in the hands of a Trump appointee from the previous Administration who's the United States Attorney for the District of Delaware. And because you have me as the Attorney General, who is committed to the independence of the Justice Department from any influence from the White House in criminal matters. *Id.* at *17.

- "Senator, following the longstanding rule of the Justice Department we don't discuss investigations or evidence that maybe—may or may not be relevant to investigations.

That's a matter for the United States Attorney's office that's investigating the case." *Id.* at *18.

- "So, as the committee well knows from my confirmation hearing, I promise to leave—I promised to leave the matter of Hunter Biden in the hands of the US attorney for the District of Delaware, who was appointed in the previous administration. So, any information like that should have gone or should—or should have gone to that US attorney's offices and the FBI squad that's working with him. I have pledged not to interfere with that investigation, and I have carried through on my pledge." Howell Decl. Ex. 11 at *30–33.

- "The—the US attorney in Delaware has been advised that he has full authority to—to make those kind of referrals that you're talking about, or to bring cases in other jurisdictions if he feels it's necessary. And I will assure that, if he does, he will be able to do that." *Id.* at *31.

- "He [Weiss] would have to bring—if it's in another district, he would have to bring the case in another district. But as I said, I promise to ensure that he's able to carry out his investigation and that he be able to run it. And if he needs to bring it in another jurisdiction, he will have full authority to do that." *Id.*

- "Well, it's a kind of a complicated question. If it—under the regulations, that kind of act, he [Weiss] would have to bring to me under—to the Attorney General. Under the regulations, those kind of charging decisions would have to be brought. I would then have to, you know, authorize it and permit it to be brought in another jurisdiction. And that is exactly what I promised to do here already, that if he needs to do—bring a case in another jurisdiction, he will have my full authority to do that." *Id.* at *31–32.

- "So, I—I don't know the answer to that. I do—and I don't want to get into the internal elements of decision making by the US attorney. But he [Weiss] has been advised that he is not to be denied anything that he needs. And if that were to happen, it should ascend through the department's ranks. And I have not heard anything from that office to suggest that they're not able to do everything that the US attorney wants to do." *Id.* at *32.

- "I can't comment about the investigation, other than to say that all the matters involving Mr. Hunter Biden are the purview of the US attorney in Delaware. He's not restricted in his investigation in any way." *Id.* at *138.

- "Yes, it's still the case that I stand by my testimony, and I refer you to the U.S. attorney for the District of Delaware who is in charge of this case and capable of making any decisions that he feels are appropriate." Howell Decl. Ex. 12 at *1.

- "As I said at the outset, Mr. Weiss, who was appointed by President Trump as the US attorney in Delaware and assigned this matter during the previous administration would be permitted to continue his investigation and to make a decision to prosecute anyway in

which he wanted to and in any district in which he wanted to.  Mr. Weiss has since sent a letter to the House Judiciary Committee confirming that he had that authority.  I don't know how it would be possible for anybody to block him from bringing a prosecution, given that he has this authority."  Howell Decl. Ex. 4 at *17–18.

- "I say, [Weiss] was given complete authority to make all decisions on his own.  *Id*. at *18.

- "The only person with authority to make somebody a special counsel or refuse to make somebody a special counsel is the attorney general.  Mr. Weiss never made that request to me."  *Id.*

- "Mr. Weiss had in fact more authority than a special counsel would have had.  He had and has complete authority, as I said, to bring a case anywhere he wants in his discretion. *Id*. at *19.

**Whistleblower Statements:**

- Ziegler testified that the U.S. Attorney for the District of Columbia, Matthew Graves, personally rejected Weiss's March 2022 attempt to charge Hunter Biden for tax years 2014 and 2015 in the District of Columbia. "But he basically said that now that the U.S. Attorney looked at the case, they don't want to move forward with it.  And essentially what he told me is that not only are they not going to join the case and give us assistance—so give us another AUSA, give us someone to help there—they also told our prosecutors that they don't think we have—that we can—or they don't think that we have the charges—or not the ability, but the evidence for the charges to charge in D.C.  So not only was it a, no, we're not going to help you, but it was a, you shouldn't bring the charges here, essentially."  Howell Decl. Ex. 6 at 36; *accord id.* at 35; Howell Decl. Ex. 5 at 24 ("Just a couple days later, Mark Daly called the case agent back and told him that the President Biden appointee to the United States Attorney for the District of Columbia, Matthew Graves, personally reviewed the report and did not support it."); *accord id.* at 65.

- "The next meeting was in person on October 7th, 2022, and it took place in the Delaware U.S. Attorney's Office.  This meeting included only senior-level managers from IRS CI, FBI, and the Delaware U.S. Attorney's Office.  This ended up being my red-line meeting in our investigation for me.  United States Attorney Weiss was present for the meeting. He surprised us by telling us on the charges, quote:  I'm not the deciding official on whether charges are filed, unquote.  He then shocked us with the earth-shattering news that the Biden-appointed D.C. U.S. Attorney Matthew Graves would not allow him to charge in his district.  To add to the surprise, U.S. Attorney Weiss stated that he subsequently asked for special counsel authority from Main DOJ at that time and was denied that authority.  Instead, he was told to follow the process, which was known to send U.S. Attorney Weiss through another President Biden-appointed U.S. Attorney. This was troubling, because he stated that, if California does not support charging, he has no authority to charge in California.  Because it had been denied, he informed us the

government would not be bringing charges against Hunter Biden for the 2014–2015 tax years, for which the statute of limitations were set to expire in one month.  All of our years of effort getting to the bottom of the massive amounts of foreign money Hunter Biden received from Burisma and others during that period would be for nothing.  Weiss also told us that if the new United States Attorney for the Central District of California declined to support charging for the 2016 through 2019 years, he would have to request special counsel authority again from the Deputy Attorney General and/or the Attorney General.  I couldn't understand why the IRS wasn't told in the summer of 2022 that D.C. had already declined charges.  Everyone in that meeting seemed shellshocked, and I felt misled by the Delaware United States Attorney's Office.  At this point, I expressed to United States Attorney Weiss several concerns with how this case had been handled from the beginning.  The meeting was very contentious and ended quite awkwardly.  It would be the last in-person meeting I had with United States Attorney Weiss."  Howell Decl. Ex. 5 at 28–29.

- Shapley's memorandum recording Weiss's statements during the October 7, 2022 meeting:



**From:** Shapley Gary A Jr <
**Sent:** Friday, October 07, 2022 6:09 PM
**To:** Batdorf Michael T <
**Cc:** Waldon Darrell J <
**Subject:** Sportsman Meeting Update

Mike,

Darrell asked me to shoot an update from todays meeting. Darrell – feel free to comment if I miss something.

1. Discussion about the agent leak – requested the sphere stay as small as possible
   a. DOJ IG will be notified
   b. FBI – HQ is notified and they refer it to their Counter Intelligence squad in a field office for investigation
   c. IRS-CI – We need to make a referral to TIGTA – What do you need from me on this action item?
2. Weiss stated that he is not the deciding person on whether charges are filed
   a. I believe this to be a huge problem – inconsistent with DOJ public position and Merrick Garland testimony
   b. Process for decision:
      i. Needs DOJ Tax approval first – stated that DOJ Tax will give "discretion" (We explained what that means and why that is problematic)
      ii. No venue in Delaware has been known since at least June 2021
      iii. Went to D.C. USAO in early summer to request to charge there – Biden appointed USA said they could not charge in his district
         1. USA Weiss requested Special counsel authority when it was sent to D.C. and Main DOJ denied his request and told him to follow the process

EXHIBIT
10

iv. Mid-September they sent the case to the central district of California – coinciding with the confirmation of the new biden appointed USA – decision is still pending
v. If CA does not support charging USA Weiss has no authority to charge in CA –
   1. He would have to request permission to bring charges in CA from the Deputy Attorney General/Attorney General (unclear on which he said)
vi. With DOJ Tax only giving "discretion" they are not bound to bring the charges in CA and this case could end up without any charges
3. They are not going to charge 2014/2015 tax years
   a. I stated, for the record, that I did not concur with that decision and put on the record that IRS will have a lot of risk associated with this decision because there is still a large amount of unreported income in that year from Burisma that we have no mechanism to recover
   b. Their reason not to charge it does not overcome the scheme and affirmative acts – in my opinion
4. FBI SAC asked the room if anyone thought the case had been politicized – we can discuss this is you prefer
5. No major investigative actions remain
6. Both us and the FBI brought up some general issues to include:
   a. Communication issues
   b. Update issues
   c. These issues were surprisingly contentious

Always available to discuss. Have a great weekend!

Text Description automatically generated

2

- Confirmation by Special Agent in Charge Darrell J. Waldon, Shapley's supervisor that Shapley's memorandum was accurate:

From: Waldon, Darrell J
To: Shapley, Gary A Jr; Batdorf, Michael T
Subject: RE: Sportsman Meeting Update
Date: Tuesday, October 11, 2022 7:27:14 AM
Attachments: image001.png

Good morning, all –

Thanks, Gary. You covered it all. I am taking care of referral to TIGTA.

Mike – let me know if you have any questions.
Darrell

*Darrell J. Waldon*
*Special Agent in Charge*
*Washington, D.C. Field Office*
*(C)* ██████████ [3]

- Shapley testified that "[i]n January of this year, I learned United States Attorney Estrada had declined to bring the charges in the Central District of California." Howell Decl. Ex. 5 at 31; *accord id*. at 152. Ziegler testified consistently. Howell Decl. Ex. 6 at 158-159. Shapley did not know if Weiss sought Special Counsel authority after U.S. Attorney Estrada declined to bring charges.  Howell Decl. Ex. 5 at 102.

- At the July 19, 2023 hearing the Whistleblowers made the following additional points:

  o None of the individuals present in the October 7, 2022 meeting contacted Shapley to dispute his account.  Howell Decl. Ex. 7. at *29–30.

  o Ziegler indicated several times that he had additional records to support his statements and had on one occasion refreshed his recollection from those emails and would be willing to turn those records over per the appropriate procedures.  *Id.* at 51, 59.

  o Ziegler asked some of his former colleagues at the FBI if they felt anything was inaccurate in his transcript and "[t]hey said not from their best understanding of reading it."  *Id.* at 88–99.

**Weiss's Statements.**

The conflict between the Attorney General and the Whistleblowers is further

---

[2]  Shapley testified that the memorandum was sent to his supervisors so as to contemporaneously document the October 7, 2022, meeting because of the "gravity of what I just witnessed." Shapley Trans. at 149.  Shapely also testified that the memorandum contained specific and accurate recollections that Weiss stated "he is not the deciding official."  *Id.* at 151.  Shapely also testified as to who was present at the October 7, 2023 meeting and could confirm the accuracy of his testimony.  *Id.* at 178–79.

[3]  *See* Howell Decl. Ex. 5 at 149 (discussing preparation of memorandum and confirmation).

compounded by the fact that Weiss has directly contradicted both the Attorney General, the

Whistleblowers, and *himself*.

On June 7, 2023, Weiss transmitted a letter to House Committee on the Judiciary

("Judiciary") Chairman Jim Jordan.  Howell Decl. Ex. 12 ("June 7 Letter").[4]  That letter stated:

> I want to make clear that, as the Attorney General has stated, I have been granted
> ultimate authority over this matter, including responsibility for deciding where,
> when, and whether to file charges and for making decisions necessary to preserve
> the integrity of the prosecution, consistent with federal law, the Principles of
> Federal Prosecution, and Departmental regulations.

*Id. at* 1.  Notably these statements were made *prior* to the June 22, 2023 release of the

Whistleblowers' Transcripts.

Weiss sent two additional letters to Congress *after* the June 22, 2023 Whistleblower

transcript release regarding his authority over the Hunter Biden matter.  Howell Decl. Ex. 14

("June 30 Letter"); Howell Decl. Ex. 15 ("July 10 Letter") (collectively the "Weiss Letters").

They are both subject to 18 U.S.C. § 1001 and 18 U.S.C. § 1505.  The Weiss Letters are critical

to this case because they directly contradict:  (1) Weiss's prior statement; (2) the Attorney

General; and (3) the Whistleblowers.  There has been extensive reporting on the Weiss Letters

and their contradictions with the Attorney General's statements.

**The Weiss Letters Contradict His Prior Statements**.  Weiss has repeatedly

contradicted himself as to the key question of what authority he has.  Start with the June 7 Letter.

Weiss stated he "*ha[d] been granted* ultimate authority over this matter" and that "authority"

included "*responsibility for deciding* where, when, and whether to file charges and for making

decisions necessary to preserve the integrity of the prosecution."  June 7 Letter at 1 (emphasis

---

[4]  All of the letters sent by Weiss were made on pain of felony.  18 U.S.C. § 1001 makes illegal
false statements in response to a Congressional investigation.  Additionally, 18 U.S.C. § 1505
often applies to false statements as well.

added). But in the June 30 Letter, Weiss stated he *lacked* "charging authority" outside of the

District of Delaware. *Id.* at 2. Instead, Weiss explained that he would have to follow "common

Departmental practice" and work with the local U.S. Attorneys with venue to see if they wanted

to "partner on the case." *Id.* Weiss then stated that if the local U.S. Attorney declined to partner,

he "*ha[d]* been assured that, "*if necessary*" after the above process" he "*would* be granted"

authority to prosecute that case under 28 U.S.C. § 515. *Id. at* 2 (emphases added).

One either *has* "ultimate authority" or one does not. Present authority is a simple binary.

The Vice President does not *have* authority as Commander-in-Chief even though Article II,

Section 1, Clause 6 assures her she *will* have such authority if the President dies. It defies the

English language to say that Weiss *has* ultimate authority over the Hunter Biden matter and can

charge cases outside the District of Delaware if that authority is conditioned upon: (1) following

a complicated internal Department process to bring charges outside of Delaware; (2) incurring

the substantial political and opportunity costs of doing so; (3) having a coordinate officer *reject*

his request to bring charges outside of Delaware; (4) requesting additional authority from the

Attorney General (5) having some (conspicuously not identified) individual make a

determination that this process was "necessary"; *and* (6) (again) incurring the political and

opportunity costs of doing so.

Moreover, these conditions precedent are not mere formalities. The authority occurs only

if "proved necessary" (July 10 Letter at 1) after the "above process." June 30 Letter at 2. For

example, if the local U.S. Attorney *agreed* to "partner on the case" (*Id.*) then necessarily Weiss

would *not* have "ultimate authority" over the matter because he would be in *partnership*.

Even if the causal chain is carried through, Weiss's statements are in direct conflict. One

who "has been granted ultimate authority over this matter" (June 7 Letter at 2) has authority over

the *entire* matter.  But the Weiss Letters both reference a future promise to grant authority under 28 U.S.C. § 515 to *file charges*.  "[T]h[e]matter" involves much more than simply filing criminal charges.  It includes pursuing investigatory matters such as search warrants, Title III wiretaps, and more—steps that require the assent from the U.S. Attorney with venue, in addition to certain offices in Main Justice.  Weiss now states he had *no* additional authority over those important investigative steps.  Note that the Whistleblowers testified they repeatedly encountered roadblocks to taking investigative actions in other judicial districts.  *See, e.g.*, Howell Decl. Ex. 5 at 14-15, 22; Howell Decl. Ex. 6 at 26-27.

The Weiss Letters reveal additional contradictions with the June 7 Letter with respect to both his authority and his alleged requests for Special Counsel status.  Merely appointing Weiss a statutory Special Counsel under 28 U.S.C. § 515 to "allow[]" him "to file charges in a district outside [Delaware] . . . without the partnership of the local U.S. Attorney" (July 10 Letter at 1) would do nothing to remove Weiss from the supervision of the Attorney General (or the Deputy Attorney General).  Both have total control over a statutory Special Counsel.  The only reason a regulatory Special Counsel has some measure of independence is that the regulations tightly constrain the Attorney General's authority over a regulatory Special Counsel (absent the Attorney General taking the politically nuclear step of rescinding the regulations).  *See United States v. Concord Mgmt. & Consulting LLC*, 317 F.Supp.3d 598, 614–15 (D.D.C. 2018).

**The Weiss Letters contradict the Attorney General**.  The Weiss Letters completely contradict the Attorney General's statements at his June 23, 2023, press conference in which he responded to questions regarding the June 22, 2023, Whistleblower disclosures.

- The Attorney General:  "As I said at the outset, Mr. Weiss, who was appointed by President Trump as the US attorney in Delaware and assigned this matter during the previous administration would be permitted to continue his investigation and to make a decision to prosecute anyway in which he wanted to and in any district in which he

wanted to.  *Mr. Weiss has since sent a letter to the House Judiciary Committee confirming that he had that authority.*  I don't know how it would be possible for anybody to block him from bringing a prosecution, given *that he has this authority*."  Howell Dec1. Ex. 4 at *17–18 (emphases added).

The Weiss Letters are unambiguous that he did not have *present* authority, but rather had a promise of *future* authority *if* conditions precedent were met.  Per the Weiss Letters, Weiss had no actual authority to bring a prosecution outside of his District at the time of the Attorney General's June 23, 2023, press conference.

- The Attorney General:  "I say, [U.S. Attorney Weiss] *was given* complete authority to make *all decisions* on his own."  *Id*. at *18 (emphases added).

The Weiss Letters are clear that Weiss had received only a *future* promise of authority regarding *charging* decisions (not the full investigation) *if* conditions precedent were met.  That directly contradicts the Attorney General's statement that the authority "was given" and encompassed making "all decisions."  Moreover, the "authority" referenced as "assured" in the Weiss Letters was not complete; it referenced only charging decisions and was subject to plenary control and direction of the Attorney General and Deputy Attorney General.

- The Attorney General:  "Mr. Weiss had in fact more authority than a special counsel would have had.  *He had and has* complete authority, as I said, to bring a case anywhere he wants in his discretion."  *Id*. at *19 (emphasis added).

Again, a future promise of authority if certain conditions are met does not translate into present "complete authority" under any usage of the English language.  Moreover, contextually, the Attorney General was speaking of Weiss's authority versus that of a regulatory Special Counsel.  *Id.* at *18–19.  The notion that Weiss had *more* authority than a regulatory Special Counsel is simply incredible.  A regulatory Special Counsel has complete authority over charging and any other aspect of an investigation independent of the Attorney General.  *See Concord Mgmt.*, 317 F.Supp.3d at 609–10.  That is the point.  A regulatory Special Counsel need

17

not even follow all Department "policies."  *Id.* at 609.  The only control on a regulatory Special Counsel's actions is that "[a]t most, the Acting Attorney General is able to countermand actions that—after giving 'great weight to the views of the Special Counsel—are 'so inappropriate or unwarranted under established Departmental practices.'  28 C.F.R. § 600.7(b)."  *Id.* at 611.

Viewed through the prism of the Weiss Letters, the Attorney General's sworn Congressional testimony was *at best* an exercise in hyper-lawyered statements interchanging present and future or conditional tense and speaking in deliberately vague terms concerning Weiss's precise authority.  *See, e.g.*, Howell Decl. Ex. 11 at 31-33 ("The—the US attorney in Delaware has been advised that he *has* full authority to—to make those kind of referrals that you're talking about, or to bring cases in other jurisdictions if he feels it's necessary.  And I *will* assure that, if he does, he *will* be able to do that." (emphases added)).

At its worst, the Attorney General's testimony was factually incorrect.

- The Attorney General:  "I can't comment about the investigation, other than to say that all the matters involving Mr. Hunter Biden are the purview of the US attorney in Delaware.  *He's not restricted in his investigation in any way*."  Howell Decl. Ex. 9 at *138 (emphasis added).

Again, the Weiss Letters reference only *future* authority *if* conditions precedent are met.  That is a long way off from a present lack of restriction on "his investigation in any way."  And again, the future, conditional authority promised in the Weiss Letters reaches only charging decisions—not all aspects of an investigation—and appears to be subject to the plenary control of the Attorney General and the Deputy Attorney General.

**The Weiss Letters Contradict the Whistleblowers**.  The July 10 Letter squarely disputes (for the first time) the Whistleblower's allegations that Weiss was blocked from bringing felony charges against Hunter Biden in the District of Columbia and Central District of California.  *See* July 10 Letter (Weiss "ha[s] never been denied the authority to bring charges in

any jurisdiction").  But in the same breath, Weiss admits that the key October 7 meeting—contemporaneously documented by whistleblower Gary Shapley—*did* in fact occur.  *See* July 10 Letter at 1. The Weiss Letter also disputes the Whistleblowers' allegations that Weiss stated he requested and was denied Special Counsel authority as concerns charging Hunter Biden in the District of Columbia.  *Id.*

## II.   ASSESSING A PLEA AGREEMENT REQUIRES COMPLETE INFORMATION.

When deciding whether to accept a plea agreement pursuant to Rule 11, the Court must have access to complete information.  Rule 11 provides district courts with broad discretion to accept, reject, or defer a plea agreement pending review of the presentence report.  *See* Fed. R. Crim. P. 11(c)(3)(a)–(b); *In re Morgan*, 506 F.3d 705, 708 (9th Cir. 2007).  The Court is "not obligated to accept any recommendation or bargain reached by parties."  *United States v. Dixon*, 504 F.2d 69, 72 (3d Cir. 1974).  The Rule itself is silent on the criteria a court considers in exercising its discretion and those decisions are left up to the "individual trial judge."  Fed. R. Crim. P. Advisory Committee's Note to 1974 Amendments.

This grant of discretion must be exercised by an independent examination of the facts unique to each plea agreement.  *See, e.g.*, *In re United States*, 32 F.4th 584, 595 (6th Cir. 2022). To that end, courts may not reject an agreement on categorical rules unrelated to the matter before them; the decision must be case-specific.  *Id*.  A necessary condition for conducting a full and deliberate independent consideration of the case is having all relevant facts—not just some facts or those facts the parties to the plea chose to present.

Multiple Circuits have endorsed broad district court consideration of the "interests of justice" in accepting or rejecting a plea agreement.  *See, e.g.*, *In re Morgan*, 506 F.3d at 712 ("a district court properly exercises its discretion when it rejects a plea agreement calling for a

sentence the court believes is too lenient or otherwise not in the public interest in light of the factual circumstances specific to the case"); *United States v. Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985) ("[w]hile '[t]he procedures of Rule 11 are largely for the protection of criminal defendants . . . Rule 11 also contemplates the rejection of a negotiated plea when the district court believes that the bargain is too lenient, or otherwise not in the public interest.'") (quoting *United States v. Miller*, 722 F.2d 562, 563 (9th Cir. 1983)); *United States v. Bednarski*, 445 F.2d 364, 366 (1st Cir. 1971) ("a conviction affects more than the court and the defendant; the public is involved.").

Within this Circuit, courts have rejected Rule 11 plea agreements because they are not in the interest of justice. *See*, *e.g.*, *United States v. Wright*, 291 F.R.D. 85 (E.D. Pa. 2013); *United States v. Conahan*, No. 3:09-CR-00028, Slip. Op. (M.D. Pa. July 31, 2009) (ECF No. 39-2); *United States v. Hicks*, No. 06–0055, 2006 WL 3544713, at *1–2 (M.D. Pa. Dec. 8, 2006); *United States v. Lange*, No. 98–472, 1999 WL 219787, at *2 (E.D. Pa. Apr. 12, 1999); *United States v. Ruch*, 906 F. Supp. 261 (E.D. Pa. 1995). Courts construe "the interests of justice" expansively and have identified multiple factors relevant here that courts have found can justify a conclusion that a plea is *not* "in the interests of justice."

- A defendant's full acknowledgement of his conduct. *See, e.g.. United States v. Ciavarella*, 716 F.3d 705, 716–17 (3rd Cir. 2013) (Defendant's denial of conduct following plea a factor in rejection of plea agreement).

- The nature of uncharged or dismissed charges. *See, e.g.*, *Wright*, 291 F.R.D. at 90–92 (rejecting plea agreement where agreed upon charges bore little resemblance to charges previously asserted); *Ruch*, 906 F.Supp. at 263–65 (rejecting plea agreement which would limit the Court's discretion to a level below that which could result from following total offense level under "relevant conduct" of Sentencing Guidelines); *cf., e.g.*, *United States v. Baird*, 109 F.3d 856, 862–63 (3d Cir. 1997) (permissible to consider uncharged offense related conduct in sentencing).

- Adequacy of the agreed sentence. *See, e.g.*, *Hicks*, 2006 WL 3544713 (joint sentence recommendation rejected for sentence well below applicable guideline range).

- Public Perception of Justice System.  *See, e.g.*, *United States v. Brown*, 595 F.3d 498, 519 (3rd Cir. 2010) (trial judge concerned about public perception in rejected plea); *United States v. Aegerion Pharmaceuticals, Inc.*, 280 F.Supp.3d 217, 225 (2017) (rejection of corporate Rule 11(c)(1)(C) agreement in part due to "two-tier system" where "[c]orporations routinely get "C" pleas after closed door negotiations . . . while individual offenders but rarely are afforded the advantages of a "C" plea.").

- Integrity of Justice System.  *See, e.g.*, *United States v. Conahan*, No. 3:09-CR-00028, Slip. Op. (M.D. Pa. July 31, 2009) (ECF No. 39-2) (post-guilty plea conduct and expressions from defendants who were judges who took bribes led court to reject plea agreements).

## III.    THE DEPARTMENT OF JUSTICE IS OPPOSING THE RELEASE OF INFORMATION THAT MAY INFORM THIS PROCEEDING.

The Department is using every possible procedural and substantive mechanism to withhold key records—that may inform the Court of whether the plea before it is in the interest of justice—from Congress, *Amici*, and the public.  Again, these records would go directly to resolving the profound conflicts between the Attorney General, Weiss, and the Whistleblowers. The Department controls these records, the Department could release these records to provide transparency on these matters to inform the public and resolve the conflict, but to date, the Department has not done so.  If the Attorney General's statements were accurate, these records would *corroborate* those statements.  Administrations have released such information in the past. For example, the Department of Justice during the George W. Bush Administration provided documents in response to Congressional inquiries regarding the dismissal of United States Attorneys due to concern over contradictions in high-ranking official's statements.  In addition, the White House under President Trump released the transcript of his call with Ukrainian President Zelensky, which ultimately led to President Trump's first impeachment.

But rather than take steps to further the paramount interest in public transparency, the Administration has sought to perpetuate the void of information concerning the raging scandal.

It has done everything possible to delay or outright block the release of information to Congressional Committees investigating the matter. The Administration has also employed every mechanism in its arsenal to delay production under *Amici's* lawful FOIA request in the D.C. District Court.

### A.  The Department of Justice has Opposed *Amici's* Efforts to Obtain the Documents Under FOIA.

*Amici*'s FOIA request for documents related to Weiss's authority and requests for Special Counsel status has been outstanding for months. Throughout the process, the Department has consistently and steadfastly opposed *Amici's* attempts to bring transparency to the Hunter Biden investigation. The results of *Amici's* Washington D.C. FOIA litigation inform its filings in this case—particularly the fact that the Department is currently reviewing slightly over 2,500 pages of records going directly to the points at issue here.

- *Amici* submitted a FOIA request containing the same document requests as the Congressional February 28 Letter on March 10, 2023. Howell Decl. Ex. 2 at 1. The Department granted *Amici* expedited processing on the FOIA Request on March 27, 2023. *Id.* To date, 137 days after receiving the request, the Department has not produced any documents in response to the FOIA Request.

- The release of the House Ways and Means Committee interview transcripts with the IRS Whistleblowers caused *Amici* to move as aggressively as possible to obtain the records. *Amici* filed their Complaint on June 26, 2023. *Id.* at 2. In the three days following the filing of the Complaint, *Amici* met and conferred twice in an attempt to negotiate an accelerated records production. Unable to find a path forward, *Amici* filed a motion for preliminary injunction on June 29. The motion for preliminary injunction sought the production of a narrowed subset of documents contained in the FOIA request by July 21, 2023. *Id.* at 2–3.

- The Department has vigorously opposed *Amici's* motions. In a July 10, 2023 declaration filed supporting the Department's opposition, the Department admitted for the first time to the existence of 2,523 pages of potentially responsive documents from seven custodians. Howell Decl. Ex. 1 at ¶ 15. The Department offered a production schedule of 350 pages per month. *Id.* at ¶ 20.

- While acknowledging *Amici's* FOIA Request "carries exceptional importance" (Howell Decl. Ex. 2 at 10), the District Court denied *Amici's* motion for a preliminary injunction.

In denying the motion, the District Court stated the issue of timely access to information as to the July 26 plea hearing was a matter for *this* Court.  *Id.* at 6.

- On July 20, 2023, *Amici* took the extraordinary step of seeking an injunction pending appeal in the Court of Appeals for the D.C. Circuit in an effort to make these records available prior to July 26, 2023, but was denied relief on July 24, 2023.

- *Amici* intends to vigorously pursue this matter in the District Court, with the Department's Answer due July 27, 2023 and a status hearing set for the week of August 7, 2023.  *See* ECF No. 18, *Heritage Found. & Mike Howell v. DOJ*, No. 23-cv-1854 (D.D.C. July 19, 2023).

The nonexempt portion of the roughly 2,500 records *will be* produced.  There is a clear benefit to not adjudicating the plea agreement until these records are produced.

**B.     The Department of Justice has Vigorously Opposed Congressional Oversight of the Hunter Biden Investigation.**

For almost all of 2023, multiple Congressional Committees have sought information about potential political interference with the Hunter Biden investigation and whistleblower retaliation against individuals who raised concerns about improprieties with the investigation. The Department has steadfastly refused to comply with Congressional oversight on these matters.

**1.     The House Judiciary Committee's February 28, 2023 Records Request.**

On February 28, 2023, House Judiciary Chairman Jim Jordan sent a document request to the Attorney General.  Howell Decl. Ex. 16 ("February 28 Letter").  The letter sought the same two categories of records *Amici* seeks in its FOIA Request at issue in the FOIA lawsuit before the D.C. Court.  The Department admits it has pulled and has begun processing over 2,500 pages of potentially responsive records from seven custodians in that litigation.  Accordingly, the Department admits this universe of records is also responsive to the Congressional request.

23

Chairman Jordan recently confirmed that the Department has not responded to the February 28 Letter.  Howell Decl. Ex. 7 at *4.  Therefore, the Department has apparently refused—for almost five months—to produce over 2,500 pages of records responsive to a Congressional oversight request that asks key questions about the integrity of the investigation currently before the Court.

> **2.    The Department and Weiss's Refusal to Cooperate with Congressional Oversight of Alleged Whistleblower Retaliation in the Hunter Biden Investigation has Compounded Existing Confusion About Weiss's Authority.**

Congress has sought information about key questions clouding the Hunter Biden investigation for months.  One issue at the forefront of Congressional oversight efforts has been allegations that the Department retaliated against the Whistleblowers.  For months, the Department has refused to produce the requested information on whistleblower retaliation to Congress.

On May 25, 2023, the House Judiciary Committee wrote to the Attorney General to request information about allegations from the Whistleblowers that Shapley's entire team had been removed from the investigation.  Howell Decl. Ex. 17 ("May 25 Letter").  The Committee sought records concerning the allegations that the whistleblower was removed from the case, with a return date of June 8, 2023.  *Id.*

Weiss—not the Attorney General—responded to Chairman Jordan on June 7, 2023. Howell Decl. Ex. 13 ("June 7 Letter").  The June 7 Letter was peculiar for two reasons.  First, the June 7 Letter provided no documents.  Second, Weiss refused to comment or provide information on Shapley's allegations he and his team had been removed from the Hunter Biden investigation, citing longstanding Department policy not to comply with Congressional oversight requests into ongoing criminal investigations.

24

The Judiciary Committee responded on June 22, 2023.  Howell Decl. Ex. 18 ("June 22 Letter").  The June 22 Letter explained that the rationale Weiss provided for not cooperating with Congressional oversight in the June 7 Letter was "unpersuasive" and the Committee reiterated its request for records on whistleblower retaliation.  *Id* at 1.  Citing the "unusual nature" of Weiss's authoring of the June 7 Letter, the Judiciary Committee expanded its oversight to request additional information about who drafted the June 7 Letter, to include how Weiss was assigned the June 7 Letter from Main Justice, and whether Weiss communicated with the Attorney General or anyone else at the Department about the June 7 Letter.  *Id.* at 3.  The Judiciary Committee sought a response containing the records requested in the May 25 Letter and answers to the questions in the June 22 Letter by July 6, 2023.  *Id.*

Weiss responded on June 30.  Howell Decl. Ex. 14 ("June 30 Letter").  The June 30 Letter neither provided the documents requested in the May 25 Letter, nor answered the narrative questions posed in the June 22 Letter.  Weiss did, however, offer an empty platitude that the Department of Justice "did not retaliate against 'an IRS Criminal Supervisory Special Agent and whistleblower, as well as his entire investigative team . . . for making protected disclosures to Congress.'"  *Id.* at 1 (citation omitted).  The June 30 Letter did not engage with the Judiciary Committee's arguments it had ample authority to conduct oversight of this matter.  Weiss concluded by offering to speak with the Committee at "the appropriate time."  *Id* at 2.

### 3. The Department and Weiss Have Refused to Cooperate With Congressional Oversight of the *Substance* of the Whistleblowers' Allegations.

The Whistleblowers have testified twice before Congress and provided records, including contemporaneous notes, to support their claims.  The Department and Weiss have provided nothing other than a bald denial from the Attorney General and three statements from Weiss, the

latter two of which contradict not only the Attorney General, but also *Weiss's* prior statements. To date, the Department has used the existence of an "ongoing investigation" as a justification to refuse to provide any information to Congress concerning serious questions about the integrity of the investigation. And again, if the investigation is on-going and the plea agreement not related to furthering that investigation, why is there a plea agreement at all? To reiterate, if the Attorney General is correct that Weiss has "complete authority," then these records should *corroborate* his accounts. Congress—under the control of both parties—has long exercised oversight over ongoing investigations.

On June 28, 2023, Senator Lindsey Graham, Ranking Member of the Senate Judiciary Committee, sent letters to the Attorney General and Weiss. Howell Decl. Ex. 19; Howell Decl. Ex. 20 ("June 28 Letters"). The June 28 Letters were substantially similar. They both discussed the Whistleblowers' interviews with the House Ways and Means Committee and asked for information to confirm or refute those allegations.

*Weiss* replied on July 10, 2023. Howell Decl. Ex. 15. It appears the Attorney General has not responded. As discussed, *supra* at 14, the July 10 Letter provided *another* inconsistent statement regarding Weiss's authority. Weiss refused to elaborate any further, nor did he provide any documents to support this latest claim.

On July 14, 2023, House Ways and Means Committee Chairman Jason Smith wrote to the Attorney General and Weiss requesting they submit the transcripts of the Whistleblowers' transcribed interviews with bipartisan Committee Staff into the record in this case. Howell Decl. Ex. 22 ("July 14 Letter"). The July 14 Letter explained that "[g]iven the abruptness of the plea agreement announcement shortly after it became public that whistleblowers made disclosures to Congress, the seriousness of the whistleblower allegations, and the fact that multiple

congressional investigations into the matter are ongoing" it is "critical" the transcripts are included in the record because it is "essential" for the Court "to have relevant information before [it] when evaluating the plea agreement." *Id.* at 2. The July 14 Letter requested the Attorney General and Weiss submit the transcripts to the Court by July 18, 2023. *Id.*

Three Committees in the House of Representatives have launched a joint investigation into the conduct of the Hunter Biden case in light of the IRS Whistleblowers' interviews with the House Ways and Means Committee. On June 29, 2023, House Ways and Means Committee Chairman Jason Smith, House Oversight and Accountability Committee Chairman James Comer, and House Judiciary Committee Chairman Jim Jordan jointly announced they were demanding that the Department, IRS, and the U.S. Secret Service "make over a dozen employees available for transcribed interviews who possess information concerning allegations of politicization and misconduct at their agencies with respect to the investigation of Hunter Biden." Howell Decl. Ex. 23 at 1 ("June 29 Letter"). In particular, the Chairmen demanded transcribed interviews with Weiss, his first deputy, and the U.S. Attorneys for the District of Columbia and the Central District of California—the two districts with venue where the Whistleblowers allege Weiss sought to bring charges but was blocked. *Id.*

The Department apparently responded on July 13, 2023 ("July 13 Letter"). That letter does not appear to have been made public. The Committees responded to the July 13 Letter on July 21 where they address a number of points the Department made in the July 13 Letter. Howell Decl. Ex. 23 ("July 21 Letter"). The Department questioned the Committees' legislative purpose of investigating improprieties with the Hunter Biden investigation in the July 13 Letter. *Id.* at 1. The Committees addressed those concerns in the July 21 Letter, noting several topics that the Committees can legislate on including "reforming the special attorney statute, codifying

the special counsel regulations, reforming the Tax Division of the Department of Justice and its interactions with the IRS, and expanding the ability of the IRS, including whistleblowers, to share certain tax information with Congress." *Id.* at 2.

Finally, the July 21 Letter confirmed that the Department agreed to make Weiss available to Congress but did not provide a date for such an appearance. In turn, the Committees reiterated the importance of conducting the requested transcribed interviews *before* Weiss testifies in a public hearing. They demanded that the Department contact the Judiciary Committee by 5:00 PM on July 24 to schedule the transcribed interviews in the June 29 Letter and failure to do so would lead to the Judiciary Committee issuing deposition subpoenas to obtain the required testimony. *Id.* at 3.

The Department responded on July 24, 2023 (Howell Decl. Ex. 3). In the July 24 Letter, the Department refused to make *all* requested witnesses available for transcribed interviews. Instead, the Department offered to have Weiss testify at a public hearing on September 27, September 28, October 18, or October 19, 2023. *Id.* at 2.

## IV.   THIS COURT SHOULD NOT ACCEPT THE PLEA AGREEMENT ON JULY 26, 2023.

The Court has broad discretion in choosing to accept, reject, or defer a decision on a plea agreement made pursuant to Rule 11 pending review of the presentence report. If a court rejects a plea agreement, the rejection is reviewed for abuse of discretion. *Brown*, 595 F.3d at 521; *United States v. Blakeslee*, 423 Fed. App'x. 136, 141 (3rd Cir. 2011); *United States v. Hecht*, 638 F.2d 651, 658 (3rd Cir. 1981) (Weis, J., dissenting). District courts generally have broad discretion on scheduling incidental to the power to control the docket. *Amici* urge the Court to either defer a decision on the plea agreement until the presentence report is reviewed, continue the case until adequate information is either made public or presented to the Court by the

Department and/or Weiss, or reject the agreement outright given the contradictory testimony of the IRS Whistleblowers, the Attorney General, and Weiss.

**Option 1:      Defer Decision on Plea Agreement Pursuant to Fed. R. Crim. Proc. 11(c)(3)(A).**  As explained in Section II *supra*, the Court has full authority to defer acceptance of the plea agreement until it considers the presentence report.  Commentary to the United States Sentencing Commission, Guidelines Manual § 6B1.1 recommends courts defer acceptance of a plea agreement until the presentence report is reviewed. Review of a presentence report may reveal  information unknown to the Court.  *See Hicks*, 2006 WL 3544713, at *2 ("When [the court] accepted the plea agreement, [it] w[as] not aware that the parties' recommended sentence of 15 years was below the advisory guideline imprisonment range."); *Brown*, 595 F.3d at 519 (judge deferred decision pending review of presentence report); *United States v. White*, No. 16-CR-212, 2023 WL 2405436, at *3 (M.D. Pa. Mar. 8, 2023) (Court rejected plea agreement after review of presentence report calculated a term of life imprisonment rather than the 130 months stipulated in agreement).  Indeed, in *Aegerion Pharmaceuticals, Inc.*, the District Court *rejected* the plea because it did not allow for the preparation of a presentence report, which the Court felt was essential to evaluating any plea.  280 F.Supp.3d at 219.

Given the recommendation of the Sentencing Guidelines Manual and the possibility a presentence report may present information previously unknown to the Court, deferral of a decision pending review of the presentence report is prudent.  It will also allow time for Congress to gather more information and for *Amici's* FOIA case to progress.

**Option 2:  Delay the Change of Plea Hearing Until All Relevant Information is Available.**  The Court has broad discretion to control its docket and scheduling.  It is apparent in this proceeding that transparency is lacking.  The Department has resisted both *Amici*'s and

Congress's attempts to obtain additional information regarding Weiss's authority in this prosecution.  Weiss has contradicted himself on this point.  It may be that all is well here, but the actions of the Government raise suspicion.  And there is a firm public perception something is amiss.

The Court should exercise its inherent power and continue this proceeding until sufficient information is released to allow the Court to make a fully informed evaluation of the plea agreement.  The Court has power to seek all relevant information in aid of its determination on the plea bargain.  *See, e.g.*, *United States v. Jesus-Nunez*, No. 10-cr-17 (SR), 2013 WL 312387, at *1, 10 (M.D. Penn. Jan. 25, 2013) (court held an evidentiary hearing on sentencing related factors prior to rejecting plea).  Absent additional disclosures as to the conduct of this investigation, approval of the plea agreement seems likely to erode, if not eviscerate, the public's trust in the criminal justice system.

**Option 3:  Reject the Plea Agreement Outright.**  Again, *Amici* believe the appropriate course is to take steps to ensure everyone has the relevant facts necessary to evaluate the plea agreement.  That said, this Court certainly has power to reject the plea agreement.  And this Court would be amply justified in doing so based on the record here.

Dated:  July 25, 2023

Respectfully submitted,

LAW OFFICES OF
MURRAY, PHILLIPS & GAY

/s/ Julianne E. Murray

Bar ID 5649
215 E. Market Street
Georgetown, DE 19947
Tel:  (302) 855-9300
julie@murrayphillipslaw.com
Counsel for *Amici The Heritage Foundation
and Mike Howell*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

_____
                             )
UNITED STATES OF AMERICA   )
                             )
                             )
            *Plaintiff*,     )
                             )
v.                         )     Case No. 23-cr-061 (MN)
                             )
ROBERT HUNTER BIDEN    )
                             )
                             )
          *Defendant*.    )
_____)

### DECLARATION OF MIKE HOWELL IN SUPPORT OF HERITAGE FOUNDATION AND MIKE HOWELL'S MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF

1.     My name is Mike Howell.  I am the Director of the Oversight Project at The Heritage Foundation and an Investigative Columnist at *The Daily Signal*, a major news outlet operated by The Heritage Foundation.  I have worked at The Heritage Foundation since October 2018.

2.     I make this declaration to provide the Court with a factual background relevant to the Motion for Leave to File an *Amicus Curiae* Brief.

3.     Attached hereto as Exhibit 1 the Declaration of Cara Kain in *Heritage Found. v. DOJ*, No. 23-cv-1854 (DLF) (D.D.C. July 10, 2023) (ECF No. 10-1).

4.     Attached hereto as Exhibit 2 is a true and correct copy of the District Court for the District of Columbia's July 19, 2023 Order Denying Plaintiffs' Motion for a Preliminary Injunction in *Heritage Found. v. DOJ*, No. 23-cv-1854 (DLF). (D.D.C. July 19, 2023) (ECF No. 18)

5.    Attached hereto as Exhibit 3 is a true and correct copy of a July 24, 2023 letter from Assistant Attorney General Carlos Felipe Uriarte to Congressman Jim Jordan, Chairman of the House Judiciary Committee ("Chairman Jordan").

6.    Attached hereto as Exhibit 4 is a true and correct copy of a CQ Transcript of Attorney General Merrick Garland's press conference from June 23, 2023.

7.    Attached hereto as Exhibit 5 is a true and correct copy of the May 26, 2023 Transcribed Interview of Gary Shapley.

8.    Attached hereto as Exhibit 6 is a true and correct copy of the June 1, 2023 Transcribed Interview of Joseph Ziegler.

9.    Attached hereto as Exhibit 7 is a true and correct copy of a CQ Transcript of the July 19, 2023 Hearing of the House Oversight and Accountability Committee.

10.    Attached hereto as Exhibit 8 is a true and correct copy of a June 27, 2023, article from *The New York Times* entitled, "*Competing Accounts of Justice Dept.'s Handling of Hunter Biden Case.*"

11.    Attached hereto as Exhibit 9 is a true and correct copy of excerpts from *Oversight of the United States Department of Justice*: *Hearing Before the H. Comm. On the Judiciary,* 117th Cong. 80 (Oct. 21, 2021).

12.    Attached hereto as Exhibit 10 is a true and correct copy of *A Hearing of the President's Fiscal Year 2023 Funding Request for the U.S. Department of Justice: Hearing before the S. Comm. On Appropriations, Subcomm. On Justice, Science, and Related Agencies*, 117th Cong., CQ Trans. (Apr. 26, 2022).

13.     Attached hereto as Exhibit 11 is a true and correct copy of *Oversight of the Department of Justice*: *Hearing Before the Sen. Comm. On the Judiciary*, 118th Cong., CQ Trans. (Mar. 1, 2023).

14.     Attached hereto as Exhibit 12 is a true and correct copy of a May 2, 2023, article from *ABC News* entitled, "*Garland responds to IRS agent's claim Hunter Biden probe is being mishandled*."

15.     Attached hereto as Exhibit 13 is a true and correct copy of a June 7 Letter from United States Attorney for the District of Delaware David C. Weiss ("U.S. Attorney Weiss") to Chairman Jordan.

16.     Attached hereto as Exhibit 14 is a true and correct copy of a June 30, 2023 letter from U.S. Attorney Weiss to Chairman Jordan.

17.     Attached hereto as Exhibit 15 is a true and correct copy of a July 10, 2023 letter from U.S. Attorney Weiss to Senator Lindsey Graham, Ranking Member of the Senate Judiciary Committee ("Senator Graham").

18.     Attached hereto as Exhibit 16 is a true and correct copy of a February 28, 2023 letter from Chairman Jordan to United States Attorney General Merrick B. Garland ("Attorney General Garland").

19.     Attached hereto as Exhibit 17 is a true and correct copy of a May 25, 2023 letter from Chairman Jordan to Attorney General Garland.

20.     Attached hereto as Exhibit 18 is a true and correct copy of a June 22, 2023 letter from Chairman Jordan to U.S. Attorney Weiss.

21.     Attached  hereto as Exhibit 19 is a true and correct copy of a June 28, 2023 letter from Senator Graham to U.S. Attorney Weiss.

22.     Attached hereto as Exhibit 20 is a true and correct copy of a June 28, 2023 letter from Senator Graham to Attorney General Garland.

23.     Attached hereto as Exhibit 21 is a true and correct copy of a July 14, 2023 letter from Congressman Jason Smith, Chairman of the House Ways and Means Committee ("Chairman Smith"), to Attorney General Garland and U.S. Attorney Weiss.

24.     Attached hereto as Exhibit 22 is true and correct copies of June 29, 2023 letters from Chairman Jordan, Chairman Smith, and Congressman James Comer, Chairman of the House Oversight and Accountability Committee ("Chairman Comer"), to the United States Department of Justice, Internal Revenue Service, and the United States Secret Service.

25.     Attached hereto as Exhibit 23 is a true and correct copy of a July 21, 2023 letter from Chairman Jordan, Chairman Smith, and Chairman Comer to Attorney General Garland. I declare under the penalty of perjury that the foregoing is true and correct.


July 25, 2023                                 /s/  Mike Howell
                                              Mike Howell

4