**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 23-mj-00274-MN |
| | ) | Criminal Action No. 23-cr-00061-MN |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS**
**MOTION TO VACATE THE COURT'S BRIEFING ORDER**

The United States, by and through its undersigned attorneys, submits this reply in support of its motion to vacate the Court's briefing order (ECF 30[1], filed August 11, 2023) pursuant to the Court's oral order (ECF 36, issued August 14, 2023).

First, the Government did not "renege" on the "previously agreed-upon Plea Agreement," as the Defendant inaccurately asserts in the first substantive sentence of his response. ECF 33, Def. Resp. at 1. The Defendant chose to plead not guilty at the hearing on July 26, 2023, and U.S. Probation declined to approve the proposed diversion agreement at that hearing. Thus, neither proposed agreement entered into effect. Instead, as of the end of the hearing on July 26, the two proposed agreements were drafts that either party could propose changes to. And both parties did so following the hearing. Without going into the substance of the negotiations between the parties, in the afternoon after the hearing on July 26, defense counsel asked to meet with the Government. At that meeting, defense counsel proposed changes to both documents. The Government considered the Defendant's proposals but did not believe they were in the best interests of the United States and offered counterproposals on July 31, 2023. The Defendant rejected these

---

[1]     All ECF cites are to docket entries in Criminal Action No. 23-mj-000274-MN.

counterproposals on August 7, 2023.  Seeing that the parties were at an impasse, the Government informed the Defendant, in writing on August 9, 2023, that it was withdrawing the most recent version of its proposed plea and diversion agreements.  That is why the Government has asked the Court to vacate its briefing order and has moved to dismiss the criminal tax information.

Second, the Defendant makes the factual assertion that the Government drafted much of the proposed agreements.  *Id*. at 1–2.  Assuming for the sake of argument that is even true, who drafted the language is irrelevant—it's the language itself that controls.

Third, while the Defendant claims that he was prepared to plead guilty to the charges in the tax information, *id*. at 2, his answers to the Court's questions demonstrate otherwise.  At the hearing on July 26, the Government summarized the proposed plea agreement.  ECF 18, Transcript of Hearing, July 26, 2023, at 21–38.  At the end of the Government's summary, the Court sought to ensure that the Defendant's plea "did not result from . . . promises (other than promises in a plea agreement)," as required by Federal Rule of Criminal Procedure 11(b)(2).  Specifically, the Court asked the Defendant, addressing him personally as Rule 11 requires, "Mr. Biden, does the written agreement as summarized by Mr. Wise accurately reflect the agreement you have reached with the government?"—to which the Defendant himself replied, "Yes, Your Honor."  ECF 18, Transcript of Hearing, July 26, 2023, at 39:2–5.  The Court then asked the Defendant, "Has anyone threatened you or forced you into entering this written agreement?"—to which the Defendant relied, "No, Your Honor."  *Id*. at 39:6–8.  The Court then asked the Defendant, "Has anyone made you any promises that are not contained in the written agreement?"  Before the Defendant could answer, Mr. Clark interrupted and prevented the Defendant from responding to the Court's question.  The colloquy then proceeded as follows:

2

MR. CLARK: Your Honor, with the exception of the Diversion Agreement—

THE COURT: We're not making an exception.  I want to know, has anyone made you any promises that are not contained in the written Memorandum of Plea Agreement?

MR. CLARK:  Yes, there are promises from the government in the Diversion Agreement, Your Honor.

THE COURT: And sir, are you relying on the promises made in the Diversion Agreement in connection with your agreement to plead guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And if the Diversion Agreement were not valid or unenforceable for any reason, would you enter into the Memorandum of Plea Agreement?

THE DEFENDANT: No, Your Honor.

*Id*. at 39:9–25.  At that point, the Court, by the plain terms of Rule 11, could not accept a guilty plea as knowing and voluntary.  Again, Rule 11(b)(2)—the sub-section titled, "Ensuring that a Plea is Voluntary"—says that "[b]efore accepting a plea of guilty," the court must determine that it "did not result from" any "promises (other than promises in a plea agreement)."  And at that point, Mr. Clark and his client were both telling the Court that the Defendant was pleading guilty because of promises that were not contained in the plea agreement.  This was a problem entirely of their own making and not one that resulted from the drafting of the proposed plea or diversion agreements.  The final paragraph of the proposed plea agreement, paragraph 13, expressly stated:

It is further agreed by the undersigned parties that this Memorandum and Exhibit 1 – together with sealed Attachment A – supersedes all prior promises, representations, and statements of the parties; that this Memorandum may be modified only in writing signed by all the parties; *and that any and all promises, representations, and statements made prior to or after this Memorandum are null and void and have no effect whatsoever, unless they comport with the subsequent written modification provisions of this paragraph.*

ECF 28 at 6 (emphasis added).  The plain meaning of this text is that the parties are not relying on

promises outside of the four corners of the proposed plea agreement itself in order to enter into the plea agreement.  Obviously, the proposed plea agreement did not contain paragraph 15 from the diversion agreement, or anything like it.  Therefore, it was not a promise contained within the proposed plea agreement.

Fourth, the Defendant asserts that his "understanding of the scope of immunity agreed to by the United States was and is based on the express written terms of the Diversion Agreement." ECF 33, Def. Resp. at 2.  He then asserts that his "understanding" is "corroborated by prosecutors' contemporaneous written and oral communications *during the plea negotiations*."  *Id.* (emphasis added).  Without conceding that the latter is true, "written and oral communications during the plea negotiations," are irrelevant.  The very last paragraphs of the now withdrawn plea and diversion agreements state that the agreements supersede any prior communications about the content of the agreements.  As quoted above, paragraph 13 of the withdrawn plea agreement was:

> It is further agreed by the undersigned parties that this Memorandum and Exhibit 1 – together with sealed Attachment A – *supersedes all prior promises, representations, and statements of the parties*; that this Memorandum may be modified only in writing signed by all the parties; and that any and all promises, representations, and statements made prior to or after this Memorandum are null and void and have no effect whatsoever, unless they comport with the subsequent written modification provisions of this paragraph.

ECF 28 at 6 (emphasis added).  Similarly, paragraph 19 of the withdrawn diversion agreement was:

> This Agreement sets forth all of the terms of the Agreement between the United States and Biden. It constitutes the complete and final agreement between the United States and Biden in this matter. There are no other agreements, written or otherwise, modifying the terms, conditions, or obligations of this Agreement. No future modifications of or additions to this Agreement, in whole or in part, shall be valid unless they are set forth in writing and signed by the United States, Biden, and Biden's counsel.

ECF 29-1 at 8.  What both now-withdrawn agreements expressly stated was that it was the

agreements themselves, and not "written and oral communications during plea negotiations," that define the scope of the provisions of the respective agreements.

Fifth, as noted above, the proposed diversion agreement never took effect.  And the Defendant misstates the record when he claims that the Government made statements to the contrary during the July 26 hearing.  The Defendant claims, in a footnote, that the "Government stated in open court that the Diversion Agreement was a 'bilateral agreement between the parties' that 'stand[s] alone' from the Plea Agreement, and that it was 'in effect' and 'binding,'" citing various parts of the transcript.  But those cobbled together snippets do not add up to a statement that the proposed diversion agreement was in effect.  The Government never said the proposed diversion agreement was in effect because it is not.  And in none of the portions of the transcript that the Defendant cites in this footnote did the Government say the diversion agreement was in effect. [2]  In fact, the Government said the opposite.  In response to a question from the Court, the Government explained how the diversion agreement worked as follows:

> I think practically how this would work, Your Honor, is if your Honor takes the plea *and signs the Diversion Agreement which is what puts it into force as of today*, and at some point in the future we were to bring charges that the Defendant thought were encompassed by the factual statement in the Diversion Agreement or the factual statement in the Plea Agreement, they could move to dismiss those charges on the grounds that we had contractually agreed not to bring charges encompassed within the factual statement of the Diversion Agreement or the factual statement of the tax charges.

ECF 18, Transcript of Hearing, July 26, 2023, at 53:15–25 (emphasis added).  The Government's

---

[2]     The Defendant's citations on this point are misleading.  For example, the Defendant states "The Government stated in open court that the Diversion Agreement . . . *was* 'in effect.'"  ECF 33, Def. Resp. at 2.  However, the only time the Government used the words "in effect" were in response to the Court's hypothetical about what would happen if 18 U.S.C. § 922(g)(3) were found to be unconstitutional.  ECF 18, Transcript of Hearing, July 26, 2023, at 91:2–8.  The Court's question was premised on a hypothetical situation where the proposed diversion agreement was already in effect and the Court was asking what would happen if there was a change in the law.  The Government's answer was also based on that hypothetical.  *Id*.

5

statement that the Agreement goes into effect if the Court signs it is a recognition that the signature of Margaret M. Bray, Chief United States Probation Officer for the District of Delaware, was necessary to put the agreement into effect, and that Ms. Bray is the head of an office within the Court and would be acting at the Court's direction as was made clear at the hearing when Ms. Bray declined to sign and approve the agreement.[3]

To reiterate, the now-withdrawn diversion agreement, by its own terms, is not in effect. Paragraph one of the agreement expressly provides that, "The term of this Agreement shall be twenty-four (24) months, *beginning on the date of approval* of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14." ECF 29-1 at 1 (emphasis added). Paragraph two further provides that, "The twenty-four (24) month period following the execution *and approval* of this Agreement shall be known as the 'Diversion Period.'" *Id.* (emphasis added). Ms. Bray, Chief United States Probation Officer for the District of Delaware, declined to approve the agreement at the hearing on July 26, 2023. Indeed, the version of the agreement that the Defendant docketed on August 2, 2023, has an empty signature line for Ms. Bray, immediately below the text "APPROVED BY." *Id.* at 9. In sum, because Ms. Bray, acting in her capacity as the Chief United States Probation Officer, did not approve the now-withdrawn diversion agreement, it never went into effect and, therefore, none of its terms are binding on either party.

---

[3]   Similarly, the Government's letter to the Court dated August 1, 2023, ECF 24—which stated the Government's position on whether the proposed plea agreement and proposed diversion agreement that were discussed at the July 26 hearing should be docketed—did not state that either agreement had entered into effect because they had not.

Respectfully submitted,

DAVID C. WEISS
SPECIAL COUNSEL

BY:    _____

Leo J. Wise
Derek E. Hines
Assistant Special Counsels
U.S. Department of Justice

Dated:  August 15, 2023