

**U.S. Department of Justice**
*Office of Special Counsel David C. Weiss*

*The Hercules Building*
*1313 N. Market Street, Suite 400*
*P. O. Box 2046*                                       *(302) 573-6277*
*Wilmington, Delaware 19899-2046*       *FAX (302) 573-6220*

September 20, 2023

**By ECF**
The Honorable Christopher J. Burke
U.S. Magistrate Judge
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

Re:  *United States v. Biden*, **Criminal Action No. 23-cr-61**

Dear Judge Burke:

The government opposes the defendant's request to hold a virtual initial appearance and arraignment on the indictment that was returned by a grand jury on September 14, 2023. Fifteen months ago, the Court's standing order authorizing virtual proceedings during the pandemic expired.[1] Since its expiration on June 21, 2022, the Court has almost always held in-person initial appearances and arraignments for defendants. This defendant should be treated no differently.

The defendant suggests that such an accommodation is necessary due to "the financial impact on government resources" and "the logistical burden."[2] But the only two cases from this District he cites as precedent do not involve those issues. In *U.S. v. Benn*, the defendant was wounded in California during a gang-related shooting and was not medically cleared for travel to Delaware.[3] In *U.S. v. Burns*, a virtual hearing was held two days after the expiration of the standing order for a defendant located in Texas who could not afford travel to Delaware.[4] Hunter Biden does not contend he is injured or indigent. If "convenience" was a legitimate basis to warrant virtual proceedings, every defendant would ask for them in every case.

Although Fed. R. Crim. P. 5 and 10 do permit video teleconferencing for hearings, the commentary to the rules establishes that the court has the discretion to decide whether to hold a virtual proceeding.[5] As noted in the commentary, "[m]uch can be lost when video teleconferencing occurs."[6] A non-exhaustive set of reasons not to hold a virtual hearing include:

> First, the setting itself may not promote the public's confidence in the integrity and solemnity of a federal criminal proceeding; that is the view of some who have witnessed the use of such proceedings in some state jurisdictions. While it is difficult to quantify the

---

[1] *See* Eighth Amended Standing Order, *available at* https://www.ded.uscourts.gov/sites/ded/files/news/CARES%20ACT%20-%20Eighth%20Amended%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_.pdf (Order dated March 23, 2022).
[2] Defendant's Letter Brief Accompanying Motion for Leave at p. 1 (ECF 42-1)
[3] Criminal Action No. 22-71, Dkt. Entry Dated January 5, 2023.
[4] Criminal Action No. 22-41, Dkt. Entry Dated June 23, 2022.
[5] *See* Federal Rules of Criminal Procedure 5 & 10, Committee Notes on Rules—2002 Amendment.
[6] *Id.*

intangible benefits and impact of requiring a defendant to be brought before a federal judicial officer in a federal courtroom, the Committee realizes that something is lost when a defendant is not required to make a personal appearance. A related consideration is that the defendant may be located in a room that bears no resemblance whatsoever to a judicial forum and the equipment may be inadequate for high-quality transmissions . . . Finally, the magistrate judge may miss an opportunity to accurately assess the physical, emotional, and mental condition of a defendant—a factor that may weigh on pretrial decisions, such as release from detention.[7]

An in-person hearing is important to promote the public's confidence that the defendant is being treated consistently with other defendants in this District and in other Districts.[8] Moreover, the previous arraignment held in connection with this matter was anything but routine because the defendant and his previous attorney were not prepared to answer the Court's questions. For example, the defendant provided contradictory testimony[9] and his previous attorney apologized to the court for the way the defendant and his counsel chose to answer the Court's questions.[10] The confusion they caused resulted in the Court twice recessing the proceeding only to ultimately defer a decision on the proposed and subsequently withdrawn diversion and plea agreements. Although the government anticipates this proceeding should be straightforward since the parties have not reached an agreement to resolve this matter, we believe an in-person proceeding may be more conducive to addressing any unforeseen issues that arise. Finally, the government anticipates asking this Court to order conditions of pretrial release, consistent with the United States Probation Office's recommendation and the Court's prior order.[11] Given the serious felony gun charges at issue in this case, this Court should have an opportunity to assess the defendant in a live setting when discharging its obligations under 18 U.S.C. § 3142(f) and (g), and considering recommendations for conditions of release. Accordingly, the government opposes the defendant's request for a virtual proceeding.

Respectfully submitted,

DAVID C. WEISS
Special Counsel
United States Department of Justice

By: _____
Derek E. Hines
Leo J. Wise
Assistant Special Counsels

---

[7] *Id.*

[8] During the last few months, the United States Secret Service has coordinated with the United States Marshals Service and court personnel on multiple occasions and in multiple jurisdictions to provide protective services in connection with initial appearances and arraignments.

[9] *Compare* Transcript of Hearing, Dkt. 16, 40:16-20 (defendant testifying that he was relying on promise outside plea agreement) to 45:8-12 (defendant testifying he was not relying on any promises outside plea agreement).

[10] *See, e.g.*, Transcript of Hearing, Dkt. 16, 43:11-13 (defense attorney apologizing to Judge for his "unartful phrasing for some of the issues") and 57:19-24 (defense attorney reversing his position and conceding that government accurately described the scope of the limited immunity in the 24-month diversion agreement).

[11] *See* Order Setting Conditions of Release, Dkt. 15.