IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN |
| | ) |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MR. BIDEN'S MOTION FOR ISSUANCE OF
SUBPOENAS *DUCES TECUM* PURSUANT TO RULE 17(c)
AND MEMORANDUM IN SUPPORT**

Defendant Robert Hunter Biden, through his counsel, respectfully moves this Court to enter an order directing that subpoenas *duces tecum* be issued to the following individuals—Donald John Trump ("Mr. Trump"); William P. Barr ("Mr. Barr"); Richard Donoghue ("Mr. Donoghue"); and Jeffrey A. Rosen ("Mr. Rosen")—pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, and that each subpoena recipient be required to provide any responsive documents and materials by December 1, 2023, to allow Mr. Biden sufficient time to review the material in advance of any necessary pre-trial motion, evidentiary hearing, and/or trial.  The grounds for this Motion, including the four subpoenas to be issued, are set forth below.  Because the documents sought relate to one another in both form and substance, this memorandum encompasses all four subpoena requests.

**INTRODUCTION**

Law enforcement agents have testified that the federal investigation of Mr. Biden, led by the U.S. Attorney's Office in Delaware in conjunction with other agencies, began in late 2018, during the administration of then President Trump.  That wide-ranging investigation has spanned two administrations and lasted more than five years (and remains ongoing).  That probe included

1

investigating years of Mr. Biden's tax affairs as well as the events surrounding his purchase of a firearm on October 12, 2018, and its recovery by law enforcement 11 days later. The culmination of this five-year inquiry was prosecutors and Mr. Biden agreeing that he would plead guilty to two failure-to-file misdemeanor charges, as well as entering a diversion agreement resolving one count of unlawful possession of a firearm—an agreement on which the prosecution has now unilaterally reneged. The collapse of the agreement and the prosecution's change of heart eventually led to the three-count felony Indictment against Mr. Biden currently before this Court.

But the initial investigation was born out of a wider probe into Mr. Biden's taxes and foreign business dealings. Additionally, it has been reported and revealed in the now-public IRS investigative files concerning *this case* (released by the House Ways and Means Committee[1]) that, separately, the Department of Justice ("DOJ") under then Attorney General Barr opened a dedicated channel at the U.S. Attorney's Office in Pittsburgh to receive information about Mr. Biden coming from then President Trump's personal attorney, Rudolph Giuliani, and his associates.[2] That effort to review and vet any material was coordinated by then U.S. Attorneys Richard Donoghue (E.D.N.Y.) and Scott Brady in Pittsburgh (W.D.P.A.). When Mr. Donoghue was elevated to serve as Principal Associate Deputy Attorney General at the DOJ in July 2020 (and later, in December 2020, Deputy Attorney General under Mr. Rosen), IRS files reveal that he further coordinated with the Pittsburgh Office *and* with the prosecution team in Delaware,

---

[1] Press Release, H. Comm. on Ways & Means, *Bombshell: Ways and Means Releases New Documents Revealing Hunter Biden Selling Access to White House, Investigators Blocked From Pursuing Evidence Related to President Biden* (Sept. 27, 2023), *available at* https://waysandmeans.house.gov/updates/.

[2] *See, e.g.*, Letter From Asst. Att'y Gen. Stephen E. Boyd to Hon. Jerrold Nadler (Feb. 18, 2020) (*available via* https://www.justice.gov/) ("[T]he Deputy Attorney General has also assigned Scott Brady, the U.S. Attorney for the Western District of Pennsylvania, to assist in the receipt, processing, and preliminary analysis of new information provided by the public that may be relevant to matters relating to Ukraine."); *Material From Giuliani Spurred a Separate Justice Dept. Pursuit of Hunter Biden*, N.Y. Times (Dec. 11, 2020), https://www.nytimes.com/2020/12/11/us/politics/hunter-biden-justice-department-pittsburgh.html.

including issuing certain guidance regarding overt steps in the investigation.[3]

As Deputy Attorney General, Mr. Rosen interacted with teams investigating Mr. Biden in both Pittsburgh and Delaware. In the lead up to the 2020 election, IRS case files show certain investigative decisions were made "as a result of guidance provided" by, among others, "the Deputy Attorney General's office."[4] Testimony and investigative files provided by IRS Agent Gary Shapley also reveal that around the 2020 election, all aspects of the investigation "need[ed] to be vetted with USA Weiss and DAG Don[og]hue."[5]

In addition, public reporting reveals certain instances that appear to suggest incessant, improper, and partisan pressure applied by then President Trump to Messrs. Rosen, Donoghue, and Barr in relation to an investigation of Mr. Biden. For example, on December 27, 2020, then Deputy Attorney General Donoghue took handwritten notes of a call with President Trump and Acting Attorney General Rosen, showing that Mr. Trump instructed Mr. Rosen and Mr. Donoghue to "*figure out what to do with H[unter] Biden*" and indicating Mr. Trump insisted that "*people will criticize the DOJ if he's not investigated for real.*"[6] (These notes were released by the House Oversight Committee as part of the January 6 investigation.) Additionally, former Attorney General Barr's latest book recalls an instance in mid-October 2020 in which President Trump called Mr. Barr and inquired about the investigation of Mr. Biden, which Mr. Barr says ended with

---

[3] Gary Shapley Aff. 3, attach. 6 (IRS CI Memorandum of Conversation, Oct. 22, 2020), ("Pittsburgh read out on their investigation was ordered to be received by this prosecution team by the PDAG."), *available at* https://gop-waysandmeans.house.gov/wp-content/uploads/2023/09/T87-Shapley-3_Attachment-6_WMRedacted.pdf.

[4] *Id.* attach. 9 (Sportsman Investigation, IRS-CI-WDCFO, undated) at 1, *available at* https://gop-waysandmeans.house.gov/wp-content/uploads/2023/09/T90-Shapley-3_Attachment-9.pdf.

[5] Shapley Testimony at 129, Ex. 7 at 2, *available at* https://www.documentcloud.org/documents/23866178-whistleblower-1-transcript_redacted#document/p129/a2390692.

[6] Dec. 27, 2020 Handwritten Notes of Richard Donoghue Released by H. Oversight Comm. at 4 (emphasis added), *available at* www.washingtonpost.com/context/read-richard-donoghue-s-handwritten-notes-on-trump-rosen-calls/cdc5a621-dfd1-440d-8dea-33a06ad753c8/); *see also* Transcribed Interview of Richard Donoghue at 56 (Oct. 1, 2021), H. Oversight Comm., *available at* https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000034600/pdf/GPO-J6-TRANSCRIPT-CTRL0000034600.pdf.

Mr. Barr yelling at Mr. Trump, "*Dammit, Mr. President, I am not going to talk to you about Hunter Biden. Period!*"[7] These confirmations of communications give more than a mere appearance that President Trump improperly and unrelentingly pressured DOJ to pursue an investigation and prosecution of Mr. Biden to advance President Trump's partisan ambitions.

For his part, Mr. Trump has made a plethora of concerning public statements calling for an investigation or possible prosecution of Mr. Biden, both while in office and since leaving, that further suggest improper partisan, political demands were at play, either expressly or implicitly. *See also* 26 U.S.C. § 7217 (making it a felony for the President to request an IRS investigation of an individual). The former President has also incessantly called for law enforcement, the media, and the public to go after Mr. Biden. For example, he tweeted (@realDonaldTrump) or posted the following about Mr. Biden:

- D. Trump tweet on November 15, 2019: "*Democrats must apologize to USA: Ukrainian Foreign Minister Vadym Prystaiko said that "United States Ambassador Gordon Sondland did NOT link financial military assistance to a request for Ukraine to open up an investigation into former V.P. Joe Biden & his son, Hunter Biden.....*"
- D. Trump tweet on December 12, 2020: "*Why didn't Bill Barr reveal the truth to the public, before the Election, about Hunter Biden.*"
- D. Trump tweet on December 12, 2020: "*IF Biden gets in, nothing will happen to Hunter or Joe. Barr will do nothing, and the new group of partisan killers coming in will quickly kill it all. Same thing with Durham. We caught them cold, spying, treason & more (the hard part), but 'Justice' took too long. Will be DOA!*"
- D. Trump tweet on December 17, 2020: "*I have NOTHING to do with the potential prosecution of Hunter Biden, or the Biden family. It is just more Fake News. . . .*"[8]
- D. Trump Truth Social posts on June 20, 2023:
  - "*Wow! The corrupt Biden DOJ just cleared up hundreds of years of criminal liability by giving Hunter Biden a mere 'traffic ticket.' Our system is BROKEN!*"

---

[7] Matt Zapotosky & Josh Dawsey, *Barr Calls Prospect of Trump Running For President Again 'Dismaying,' Says GOP Should 'Look Forward' to Others*, WASH. POST (Feb. 27, 2022), https://www.washingtonpost.com/national-security/2022/02/27/barr-trump-2024/.

[8] An archive of former President Trump's tweets is available at https://www.presidency.ucsb.edu/.

- o "*A 'SWEETHEART' DEAL FOR HUNTER (AND JOE), AS THEY CONTINUE THEIR QUEST TO 'GET' TRUMP, JOE'S POLITICAL OPPONENT. WE ARE NOW A THIRD WORLD COUNTRY!*"

- o "*The Hunter/Joe Biden settlement is a massive COVERUP & FULL SCALE ELECTION INTERFERENCE 'SCAM' THE LIKES OF WHICH HAS NEVER BEEN SEEN IN OUR COUNTRY BEFORE. A 'TRAFFIC TICKET,' & JOE IS ALL CLEANED UP & READY TO GO INTO THE 2024 PRESIDENTIAL ELECTION. . . .*"

- D. Trump Truth Social post on July 11, 2023: "*Weiss is a COWARD, a smaller version of Bill Barr, who never had the courage to do what everyone knows should have been done. He gave out a traffic ticket instead of a death sentence. Because of the two Democrat Senators in Delaware, they got to choose and/or approve him. Maybe the judge presiding will have the courage and intellect to break up this cesspool of crime. The collusion and corruption is beyond description. TWO TIERS OF JUSTICE!*"[9]

This call for Mr. Biden to receive "a death sentence" and other incendiary comments are just a few examples, as Mr. Trump made other similar statements at his rallies, on TV, and in his post-presidency. Accordingly, such statements by Mr. Trump while in office or since then necessitate, and provide ample justification for, this set of requests for documents, communications, and personal records relating to or concerning Mr. Biden.

As referenced in the above posts, there has also been a sustained, almost-nonstop public pressure campaign, led by Mr. Trump and his allies in Congress, to criticize DOJ's handling of this case—specifically, the agreed-to plea deal between prosecutors and Mr. Biden, first made public on June 20, 2023. After Mr. Biden agreed to plead guilty to resolve two tax offenses and negotiated a diversion agreement with prosecutors on the firearm charge (*later signed by both parties in court on July 26*), Mr. Trump blasted the agreement as a "sweetheart deal," a "traffic ticket," and a "massive coverup." House Oversight Chairman James Comer, who has made Mr. Biden a centerpiece of his Committee's investigations, slammed DOJ for giving Mr. Biden a

---

[9] Ryan Bort, *Trump Blasts Prosecutor He Appointed for Not Giving Hunter Biden 'Death Sentence'*, ROLLING STONE (July 11, 2023), https://www.rollingstone.com/politics/politics-news/trump-suggests-hunter-biden-death-penalty-1234786435/.

5

"sweetheart plea deal" and deemed it "a slap on the wrist."[10] Senator Rick Scott (R-Fla.) called it "a mockery of our legal system" and Senator Ron Johnson said it was "a light slap on the wrist."[11] Upon news that the parties' agreement was not approved on July 26, Republican allies cheered and claimed responsibility, touting their role in "intervening" to "kill" the deal. House Ways and Means Chairman Jason Smith told Fox News that afternoon that "justice is being served,"[12] and later said, "a special counsel *only happened because congressional GOP exposed the two-tiered judicial system by shining light onto the investigation* into Hunter Biden's alleged financial crimes & the political interference that shielded both him & POTUS from scrutiny."[13]

From that point forward, Republicans pushed for *more severe* charges against Mr. Biden from the now Special Counsel in an effort to make Mr. Biden's prosecution an election issue. That outside pressure culminated in Special Counsel Weiss's then changing course and bringing this Indictment on September 14 against Mr. Biden, charging *three* felony counts for the same gun and same facts that just a few months prior Mr. Weiss had agreed to divert under a pre-trial diversion agreement. Yet Republicans now say this is not enough. The very same day that Mr. Biden was charged in this case, Chairman Comer stated: "Mountains of evidence reveals that Hunter Biden likely committed several felonies and Americans expect the Justice Department to apply the law equally. *Today's charges are a very small start*, but unless U.S. Attorney Weiss investigates everyone involved in fraud schemes and influence peddling, *it will be clear President Biden's*

---

[10] Devan Cole, *Legal Experts Cast Doubt on GOP Claims of a 'Sweetheart Deal' In Hunter Biden Case*, CNN (June 21, 2023), https://www.cnn.com/2023/06/21/politics/hunter-biden-sweetheart-deal-tax-charges/index.html.

[11] Betsy Woodruff Swan, *In Talks with Prosecutors, Hunter Biden's Lawyers Vowed to Put the President on the Stand*, POLITICO (Aug. 19, 2023), https://www.politico.com/news/2023/08/19/hunter-biden-plea-deal-collapse-00111974.

[12] *Jason Smith on Hunter Biden Plea Deal Collapse: Justice Is Being Served*, FOX NEWS (July 26, 2023), https://www.foxnews.com/video/6331889313112.

[13] @RepJasonSmith, *X* (Aug. 11, 2023) (emphasis added), twitter.com/RepJasonSmith/status/1690065476838105088.

*DOJ is protecting Hunter Biden and the big guy*."[14]  It is clear no measure of charges against Mr. Biden will ever be enough to appease Chairmen Comer and Smith and their MAGA allies.  As anyone can readily tell, it is not just pressure from within the Trump-era Executive Branch that is the problem; it is also incessant, unrelenting outside interference from congressional Republicans and their allies in the prosecutorial process, which is supposed to be independent and free from political interference.  Undoubtedly, the current political climate has jeopardized that longstanding and fundamental American principle.

Consequently, Mr. Biden now moves this Court to issue four subpoenas directing Messrs. Trump, Barr, Donoghue, and Rosen (individually, the "Subpoena Recipient" and, collectively, the "Subpoena Recipients") to produce the following documents and materials in their possession pursuant to Rule 17(c) for the time period *January 20, 2017 to the present* (the "Relevant Time Period"):

1. All documents and records (personal or official platforms) reflecting communications from the Relevant Time Period to, from, between, or among the Subpoena Recipient relating to or discussing any formal or informal investigation or prosecution of Hunter Biden, including, but not limited to, any decision, referral, or request to investigate or not investigate or charge or not charge Hunter Biden.

2. All documents and records (personal or official platforms) reflecting communications from the Relevant Time Period to, from, between, or among the Subpoena Recipient and any Executive Branch official, political appointee, Department of Justice official, government agency, government official or staff person, cabinet member, or attorney for President Trump (personal or other) discussing or concerning Hunter Biden.

3. All personal records (including diaries, journals, memoirs, memoranda, or notes) from the Relevant Time Period discussing or concerning Hunter Biden, including, but not limited to, reference to any formal or informal decision, discussion, or request to investigate or prosecute Hunter Biden.

---

[14] Alexandra Hutzler, *Republicans Not Satisfied With Just Hunter Biden Gun Charges: 'Very Small Start'*, ABC NEWS (Sept. 14, 2023) (emphasis added), https://abcnews.go.com/Politics/republicans-satisfied-hunter-biden-gun-charges-small-start/story?id=103194671.

    4. Any documents and records produced by the Subpoena Recipient to the House Select Committee to Investigate the January 6th Attack on the United States Capitol that reference or discuss Hunter Biden.

As discussed below, this information would be both relevant to and admissible in pre-trial motions or evidentiary hearings. To date, the defense has not received such material in discovery from the prosecution or elsewhere, notwithstanding specific discovery requests and that some of this information likely resides with the DOJ. Nevertheless, this information is essential to Mr. Biden's proper preparation of his defense.[15] Before the government intones its stock phrase, this is no fishing expedition. The statements described in this Motion actually occurred, and the events that transpired both before and after June 20, 2023 are well known to the Court. Mr. Biden seeks specific information from three former DOJ officials and the former President that goes to the heart of his defense that this is, possibly, a vindictive or selective prosecution arising from an unrelenting pressure campaign beginning in the last administration, in violation of Mr. Biden's Fifth Amendment rights under the Constitution. Moreover, each of the former DOJ officials had known contacts with then President Trump concerning Mr. Biden, and according to recently released IRS investigative case files, each had a hand in one way or another in the still *ongoing* investigation of Mr. Biden, either in Delaware or elsewhere. Lastly, as reflected by both the handwritten notes taken contemporaneously by Mr. Donoghue (involving Mr. Rosen and Mr. Trump) and Mr. Barr's vignette in his recent book, these individuals are in fact *likely* to have relevant materials in their possession that are responsive to Mr. Biden's document requests.

---

[15] Should the Subpoena Recipients have any concerns about the sensitivity of producing these records, the parties can surely come to an agreement on the terms of an adequate protective order concerning them.

**ARGUMENT**

I.      **Legal Standard for Issuance of Rule 17(c) Subpoenas.**

Rule 17 of the Federal Rules of Criminal Procedure governs the issuance of subpoenas in criminal cases. Subsection (c) provides, in relevant part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). "Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988); *see also United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013) (observing that Rule 17(c) "implements a criminal defendant's constitutional right 'to have compulsory process for obtaining witnesses in his favor' by providing a means to subpoena witnesses and documents for a trial or a hearing. U.S. Const. amend. VI[.]" (citing 2 Charles Alan Wright et al., *Federal Practice and Procedure* § 272 (4th ed. 2023) ("Rule 17 is not limited to subpoenas for the trial" and observing that a subpoena may be issued for a preliminary examination, a grand jury investigation, a deposition, a determination of a factual issue raised by a pre-trial motion, or a post-trial motion))).

In *United States v. Nixon*, the Supreme Court set forth the standards for issuing a Rule 17(c) subpoena. 418 U.S. 683, 699–700 (1974). Adopting the test devised by Judge Weinfeld in *United States v. Iozia*, pre-trial production of evidence is appropriate where the requesting party can demonstrate:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the

9

trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.* (citing *Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)). The *Nixon* Court further distilled this test to three factors: (1) relevancy, (2) admissibility, and (3) specificity. *Id.* at 700. Said another way, Rule 17(c) is designed to help "obtain[] relevant evidentiary material that the moving party may use at trial." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) (citations omitted).

While the bulk of case law involving Rule 17(c) concerns production prior to "trial," the Court's authority under Rule 17(c) relates to a judicial "proceeding," *see* Fed. R. Crim. P. 17(a), which includes pre-trial evidentiary hearings. *See* 2 Wright et al., *Federal Practice and Procedure* § 272. In this case, production of documents by each of the Subpoena Recipients prior to trial may be used either in pre-trial pleadings or in a pre-trial evidentiary hearing on Mr. Biden's motions to dismiss the Indictment (or, potentially, another issue). Accordingly, Mr. Biden seeks pre-trial access to the documents sought in order to allow him sufficient time to review them and prepare his defense, consistent with Rule 17(c). *See* Fed. R. Crim. P. 17(c)(1) (permitting courts to require production pre-trial or "before they are to be offered in evidence").

## II. The Information Sought From Each of the Subpoena Recipients Is Relevant.

The information Mr. Biden seeks from the Subpoena Recipients is relevant and material to a fundamental aspect of issues in his defense that will be addressed in pre-trial motions and possibly as impeachment of a trial witness, should the case get that far: whether this investigation or prosecution arose because of or in response to any Executive Branch official or other outside influences placing undue pressure on government officials to investigate, formally or informally, or prosecute Mr. Biden. Subpoena recipient President Trump knows full well that improper pressure on prosecutors to bring criminal charges against an individual for political reasons is grounds for seeking to dismiss an indictment because President Trump recently filed a motion to

dismiss on this very basis in one of his criminal cases. *See United States v. Trump*, No. 1:23-cr-00257-TSC, D.E. 116 (D.D.C. Oct. 23, 2023).[16] Similarly, subpoena recipient Attorney General Barr has explained precisely why the concern Mr. Biden raises here is problematic for this Indictment:

> The essence of the rule of law is that whatever rule you apply in one case must be the same rule you would apply to similar cases. *Treating each person equally before the law includes how the Department enforces the law.* We should not prosecute someone for wire fraud in Manhattan using a legal theory we would not equally pursue in Madison or in Montgomery, or allow prosecutors in one division to bring charges using a theory that a group of prosecutors in the division down the hall would not deploy against someone who engaged in indistinguishable conduct.[17]

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A document is "material to the defense" if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Stein*, 488 F. Supp. 2d 350, 356–57 (S.D.N.Y. 2007) (internal quotation marks omitted) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)); *see also United States v. Lacerda*, 2013 WL 3177814, at *18 (D.N.J. June 19, 2013) (evidence is material "if it could be used to counter the government's case or to bolster a defense" (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993))); *United States v. Charamella*, 294 F. Supp. 280, 282 (D. Del. 1968) (finding Rule 17(c) authorizes and permits pre-trial production and inspection of documents held

---

[16] Demonstrating hypocrisy and a lack of principles, just last week, Mr. Trump insisted that the weaponization of the judicial process is wrong (and it is), but Mr. Trump claims that he would be justified in weaponizing the judicial process against his political enemies because he believes that he has been a victim of such weaponization. *See* Kathryn Watson, *Trump Suggests He Or Another Republican President Could Use Justice Department To Indict Opponents*, CBS News (Nov. 10, 2023), https://www.cbsnews.com/news/donald-trump-weaponization-justice-department-political-opponents/. This claim certainly undercuts any notion that Mr. Trump is above such misconduct.

[17] Remarks by Att'y Gen. William P. Barr at Hillsdale College Constitution Day Event (Sept. 16, 2020) (emphasis added), https://www.justice.gov/opa/speech/remarks-attorney-general-william-p-barr-hillsdale-college-constitution-day-event.

by the government, for good cause at the court's discretion); 2 Wright et al., *Federal Practice and Procedure* § 272 (Rule 17 subpoena includes use "for determination of an issue of fact raised by a pre-trial motion").

Requests 1 – 4 only seek communications or personal records reflecting one issue, to determine whether the Subpoena Recipients or those with whom they worked pressured, discussed, influenced, or requested any investigation or prosecution of Mr. Biden, including whether any Executive Branch official placed any undue pressure on another government official to undertake the same. From a Fifth Amendment perspective, it is essential for Mr. Biden to know whether anyone improperly discussed, encouraged, endorsed, or requested an investigation or prosecution of him, and to whom and under what circumstances. The information sought would demonstrate that fact. This is especially true in light of the fact that *no* new evidence related to these charges emerged between June 20 (when the plea deal was first presented to the Court) and July 26 (when the prosecution reneged on its deal), and in fact only more favorable case law on this issue has developed since then.[18] Thus, the prosecution's change of heart appears to be in response to political pressure, rather than anything newly discovered in the investigation of Mr. Biden. Because such evidence, only some of which has been disclosed already, would tend to undermine the prosecution's allegation that this case was free from any political inference and was not of a selective or vindictive nature, Mr. Biden's requests are relevant and material under the requirements of Rule 17(c).

---

[18] In a closed-door deposition with congressional lawmakers, Mr. Weiss denied bowing to political pressure and said that the decisions had been based only on "the facts and the law." *See* Farnoush Amiri et al., *Special Counsel in the Hunter Biden Case Insists He Was the 'Decision-Maker' in Rare Testimony*, ASSOCIATED PRESS (Nov. 7, 2023), https://apnews.com/article/hunter-biden-david-weiss-congress-republicans-aed25541b709a57371cdfe1582be0c5a. Again though, no new facts had emerged after Mr. Weiss had supported a plea deal and the diversion agreement, and the only pertinent legal development had been that the Fifth Circuit had found the prosecution's principal gun charge unconstitutional. The only intervening event between then and Mr. Weiss's decision to bring more serious charges was the Republican political backlash against his prior efforts to resolve this matter based on the facts and the law.

**III.     The Information Sought From Each of the Subpoena Recipients Is Admissible.**

All the information sought from the Subpoena Recipients would be admissible in pre-trial motions or an evidentiary hearing or, depending on the author and recipient, to impeach a trial witness.  Generally, relevant evidence "is admissible for all purposes except as provided otherwise by the Constitution or by Act of Congress." *United States v. Wey*, 252 F. Supp. 3d 237, 254 (S.D.N.Y. 2017) (quoting *United States v. Griffith*, 385 F.3d 124, 126 (2d Cir. 2004)); *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 n.1 (S.D.N.Y. 2011) (noting a Rule 17(c) subpoena is "a way for a defendant to examine documents he believes to exist that would be relevant to, and therefore presumptively admissible in, his defense").  To satisfy the admissibility threshold, Mr. Biden must merely make a "preliminary showing" of the "potential evidentiary uses of [] material." *Nixon*, 418 U.S. at 700–02 (holding there is a "sufficient preliminary showing" that material sought as part of a Rule 17(c) subpoena is admissible where a requesting party has demonstrated "valid potential evidentiary uses" for the material); *Rajaratnam*, 753 F. Supp. 2d at 323 (documents sought will satisfy *Nixon*'s admissibility prong when they have "'potential evidentiary uses'").

The communications and personal records sought satisfy the threshold standard for admissibility under Rule 17(c).  The statements or contemporaneous notes, diaries, or the like would be relevant and offered for (1) the fact of the communications themselves, demonstrating that such pressure was communicated; and (2) bias or improper motive on the part of the prosecution or its witnesses.  It would be material to Mr. Biden's defense if pressure had been placed on prosecutors to investigate or charge Mr. Biden for political reasons, based on *who* he is and not on any conduct for which there is probable cause to believe he engaged in.

**IV.     The Information Sought From Each of the Subpoena Recipients Is Specific.**

Mr. Biden has identified the information he seeks from the Subpoena Recipients with sufficient specificity to satisfy Rule 17(c).  The requests are "sufficiently narrowly focused on a

13

group of records likely to contain helpful documents," about the communications or personal records possessed by the Subpoena Recipients concerning a possible investigation or prosecution of Mr. Biden, and thus "cannot be said to be . . . a 'fishing expedition.'" *United States v. Weisberg*, 2011 WL 1327689, at *7 (E.D.N.Y. Apr. 5, 2011). In this context, specificity embodies both the "good faith" and the "fishing expedition" concepts that the *Nixon* Court imported from *Iozia*. *See United States v. King*, 194 F.R.D. 569, 573 (E.D. Va. 2000).

Moreover, the Requests are limited in the following ways:

- **Topic:** Requests 1 – 4 only seek communications or personal records reflecting one issue, to see whether the Subpoena Recipients discussed, participated in, or requested any investigation or prosecution of Mr. Biden, including whether anyone else placed any undue pressure on other government officials to undertake the same.

- **Custodian:** Requests 1 – 4 only seek records from a handful of relevant former DOJ individuals who would be the only ones to possess copies of such documents, communications, or personal records as reflected from the communications already made public.

- **Time Period:** Requests 1 – 4 are limited to the relevant time period for which former President Trump was in office and thereafter (January 20, 2017 – present).

As explained in the Introduction, *supra* pp. 3–5, Mr. Biden seeks specific information from three former DOJ officials and the former President that goes to the heart of his pre-trial and trial defense that this is, possibly, a vindictive or selective prosecution that arose out of an incessant pressure campaign that began in the last administration, in violation of Mr. Biden's constitutional rights. Moreover, each of the former DOJ officials from whom Mr. Biden now seeks documents had *known* contacts with then President Trump concerning Mr. Biden, and according to now-public IRS investigative case files, each of these officials interacted in one capacity or another with the teams investigating Mr. Biden, either in Delaware or elsewhere. As reflected by the handwritten notes taken by Mr. Donoghue (involving Mr. Rosen and Mr. Trump) inquiring about investigating Mr. Biden "*for real*," as well as Mr. Barr's vignette in his recent book about Mr. Trump's inquiry

about Mr. Biden, these individuals are *likely* to have relevant and responsive materials in their possession that are at the center of Mr. Biden's document requests.

As described in this Motion, Mr. Biden seeks these materials in good faith and maintains that they are highly relevant and material to his pre-trial and trial defense. Accordingly, Mr. Biden submits that these Requests are narrowly tailored to satisfy the requirements of Rule 17(c).

## CONCLUSION

For the foregoing reasons, Mr. Biden respectfully requests that this Court enter an order pursuant to Rule 17(c) directing that a subpoena *duces tecum* be issued to each of the Subpoena Recipients for the documents and materials described in Requests 1 – 4, *supra* pp. 7–8. Mr. Biden further requests that each of the Subpoena Recipients be required to provide any responsive documents and materials by December 1, 2023, to allow Mr. Biden sufficient time to review the material in advance of any necessary evidentiary hearing and/or trial. These Requests do not prejudice or constitute a waiver of Mr. Biden's pending discovery requests under Rule 16 and *Brady* and its progeny.

Dated: November 15, 2023                    Respectfully submitted,

**DALTON & ASSOCIATES, P.A.**              **WINSTON & STRAWN LLP**

Bartholomew J. Dalton (#808)               /s/ *Abbe David Lowell*
1106 West 10th Street                      Abbe David Lowell
Wilmington, DE 19806                       Christopher D. Man
Tel.: (302) 652-2050                       1901 L Street NW
BDalton@dalton.law                         Washington, DC 20036
                                           Tel.: (202) 282-5000
                                           AbbeLowellPublicOutreach@winston.com
                                           CMan@winston.com

                                           *Attorneys for Robert Hunter Biden*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2023, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Attorney for Robert Hunter Biden*