IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 23-00061-MN |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| *Defendant.* | ) | |

**THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
FOR ISSUANCE OF RULE 17(C) SUBPOENAS DUCES TECUM**

The United States respectfully opposes defendant Robert Hunter Biden's request to issue

subpoenas duces tecum under Federal Rule of Criminal Procedure 17(c). *See* ECF 58. His

motion is meritless and should be denied.

Defendant asks the Court to enter an order directing subpoenas, which seek broadly

worded categories of documents across seven years, to former President Donald J. Trump,

former Attorney General William P. Barr, and two other former officials in the U.S. Department

of Justice. Defendant contends that the requested material "goes to the heart of his pre-trial and

trial defense that this is, possibly, a vindictive or selective prosecution that arose out of an

incessant pressure campaign that began in the last administration, in violation of Mr. Biden's

constitutional rights." ECF 58, at 14.  It is worth noting from the outset that defendant

misunderstands the difference between pretrial arguments to dismiss an indictment and trial

defenses.  It is black-letter law that claims of vindictive and selective prosecution are *not* trial

defenses and may only be brought and litigated pretrial.  They are not defenses and, therefore,

are never argued to trial juries.

In any event, both vindictive- and selective-prosecution claims turn on the actual intent of

the specific decisionmaker in a defendant's case: here, the Special Counsel. But not only does

defendant's motion fail to identify any actual evidence of bias, vindictiveness, or discriminatory intent on the Special Counsel's part, his arguments ignore an inconvenient truth: No charges were brought against defendant during the prior administration when the subpoena recipients actually held office in the Executive Branch. Instead, every charge in this matter was or will be brought during the current administration—one in which defendant's father, Joseph R. Biden, is the President of the United States and Merrick B. Garland is the Attorney General that was appointed by President Biden and who personally appointed the Special Counsel. Defendant has not shown, nor can he, how external statements by political opponents of President Biden improperly pressured him, his Attorney General, or the Special Counsel to pursue charges against the President's son. The Government as in all cases, and in this case as represented by the Special Counsel, is entitled to a presumption of regularity in discharging the duties of the executive branch, and defendant's claim provides nothing to rebut that presumption but conclusory assertions in pursuit of a narrative.

In seeking discovery for a claim of selective prosecution, defendant fails to identify even one similarly situated individual who was not prosecuted for similar conduct. This omission alone precludes his request for discovery. *See, e.g.*, *United States v. Armstrong*, 517 U.S. 456 (1996). He also identifies no constitutionally protected class to which he belongs and does not identify any evidence of discriminatory intent by the relevant decisionmakers, which is what the law requires in order to make out a claim of selective prosecution.

Defendant's motion similarly fails to articulate any basis for a vindictive-prosecution claim. Defendant fails to identify what protected constitutional or statutory right he is being punished for asserting. Under long-settled law, "[a] charging decision does not levy an improper 'penalty' unless it results 'solely' from the defendant's exercise of a protected legal right, rather

than the prosecutor's normal assessment of the societal interest in the prosecution." *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982). Further, Defendant does not claim that a presumption of vindictiveness applies and offers no evidence of actual vindictiveness. Because *Armstrong*'s framework for obtaining discovery applies equally to a claim of vindictive prosecution, he again fails to satisfy the requisite heightened pleading standard.

Lastly, while *Armstrong* makes clear that disclosure under Federal Rule of Criminal Procedure 16 does not extend to selective-prosecution theories his claim fares no better under the limited mechanism of Rule 17(c), which he seeks to employ here. Under the well-established standards of that Rule applicable to both claims, defendant fails to make the necessary showing that his requests target only specific, admissible, and relevant evidence that is necessary for trial. Instead, he demands from third parties broadly framed categories of documents that bear no resemblance to the elements needed for his pre-trial motion, even assuming Rule 17(c) subpoenas are available for such a purpose.

**I.    Challenges to a prosecutorial decision face a high bar on the merits, and defendant has identified no viable legal theory supporting a claim here.**

While the Defendant has not yet filed any pre-trial motion to dismiss the indictment on selective- or vindictive-prosecution grounds, the basis for his request for Rule 17(c) subpoenas are such claims.  ECF 58, at 14; *see* Fed. R. Crim. P. 12(b)(3)(A)(iv). Therefore, his request for discovery requires that he meet the pleading standard established by *Armstrong* and the necessary showing for pre-trial Rule 17(c) subpoenas under *United States v. Nixon*, 418 U.S. 683 (1974). Accordingly, the United States will briefly summarize the general law applicable to defendant's purported claims before addressing the deficiencies in defendant's motion.

**A.      The Constitution confers broad prosecutorial discretion on the Executive Branch.**

"Article II of the Constitution assigns the 'executive Power' to the President and provides that the President 'shall take Care that the Laws be faithfully executed.'" *United States v. Texas*, 599 U.S. 670, 678 (2023) (quoting U.S. Const. art. II, § 1, cl. 1, and § 3). Under the Constitution, "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *Id*. at 679 (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)). The Executive Branch decides "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." *Id*. at 678 (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021)). In short, "decisions about enforcement of 'the Nation's criminal laws' lie within the 'special province of the Executive.'" *Id*. at 679 (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

Not only does the Constitution assign enforcement decisions to the Executive Branch, but also as a practical matter, "courts generally lack meaningful standards for assessing the propriety of enforcement choices in this area," and necessarily, "the Executive Branch must prioritize its enforcement efforts." *Id*. at 679 (citing *Wayte v. United States*, 470 U.S. 598, 607–08 (1985)). "In light of inevitable resource constraints and regularly changing public-safety and public-welfare needs, the Executive Branch must balance many factors when devising arrest and prosecution policies." *Id*. at 680. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis that courts are competent to undertake." *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 607).

**B.    The Defendant fails to show clear evidence of both discriminatory effect and discriminatory intent, which is the high burden a selective prosecution claim must meet.**

The Executive Branch's discretion must, of course, operate within "constitutional constraints." *Armstrong¸* 517 U.S. at 465 (quoting *Batchelder*, 442 U.S. at 125). Accordingly, courts may "adjudicate selective-prosecution claims under the Equal Protection Clause," *Texas*, 599 U.S. at 681, or the "equal protection component of the Due Process Clause of the Fifth Amendment," *Armstrong*, 517 U.S. at 464 (citing *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954)). But a "'presumption of regularity supports' [an Executive Branch officer's] prosecutorial decisions," and "to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" *Armstrong*, 517 U.S. at 464, 465 (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926)).

When a defendant alleges selective prosecution, "[t]he requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608). Under those standards, a defendant "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608, and citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).  In keeping with these points, the Supreme Court has "long recognized that," for example, "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 U.S. 114, 123 (1979).

In explaining the constitutional limitation on prosecutorial discretion, the Supreme Court has repeatedly explained that "the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte*, 470 U.S. at 608 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), and *Oyler*, 368 U.S. at 456); *see*

*also Armstrong*, 517 U.S. at 464. Thus, when a defendant merely asserts "some selectivity in enforcement," and cannot show that the enforcement decision was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification," the "selectivity in enforcement is not itself a federal constitutional violation." *Oyler*, 368 U.S. at 456. As the Third Circuit recently noted, when a defendant did "not allege any 'unjustifiable standard such as race, religion, or other arbitrary classification' underlying his prosecution," he "cannot successfully advance a selective prosecution claim." *United States v. Rivera*, 62 F.4th 778, 788 (3d Cir. 2023) (citing *Wayte*, 470 U.S. at 608) (rejecting a corrupt police officer's selective-prosecution argument when he was prosecuted for accepting corrupt payments from brothel owners and preparing false tax returns, and brothel owners were not prosecuted). As in *Rivera*, Defendant's motion raises no claim that he is being prosecuted because of some recognized protected class, which fails to satisfy the requisite pleading necessary for discovery.

Defendant has the burden to plead a theory of selective prosecution that would allow discovery, and he has not done so. The government briefly notes that other theories of selective prosecution fit his case even less. For example, in some cases, a defendant may not need to show these elements if the Executive Branch's action was "based on an overtly discriminatory classification"; in those circumstances, the overtly discriminatory classification itself satisfies the showing of discriminatory intent. *Wayte*, 470 U.S. at 608 n.10 (citing *Strauder v. West Virginia*, 100 U.S. 303 (1880), which invalidated a state law that prohibited African-Americans from serving on juries). But defendant's motion contains no argument or evidence in support of such a claim. Instead, the arguments he advances appear to fall within the ordinary formulation of selective prosecution, which requires proof of both disparate treatment and discriminatory intent.

Alternatively, a defendant could theoretically seek to advance a selective-prosecution claim based on post-*Armstrong*/*Wayte* cases addressing what has been termed a "class-of-one equal-protection claim." *See, e.g., Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam). But after the Supreme Court decided *Olech*, the Court rejected the class-of-one theory in a context where the government exercises broad discretion—namely, when the government acts as an employer and makes personnel decisions. *See Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591 (2008). The Court observed that "some forms of state action … by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments," and "in such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id*. at 603. Notably, to illustrate this point, the Supreme Court used an example where only some drivers who are exceeding the speed limit are stopped. "[A]n allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim. But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernible or articulable reason, would be incompatible with the discretion inherent in the challenged action." *Id*. at 604.

Courts of appeals have extended *Engquist*'s limitation on class-of-one theories in various contexts where the government exercises broad discretion. *See, e.g., Planned Parenthood Ass'n of Utah v. Hebert*, 828 F.3d 1245, 1255 (10th Cir. 2016) (collecting cases). And as *Engquist*'s example of stopping speeders illustrates, the Supreme Court has repeatedly emphasized that "in the criminal-law field, a selective prosecution claim is a *rara avis*" and is so "[b]ecause such claims invade a special province of the Executive—its prosecutorial discretion." *Reno v. Am.-*

*Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999) (citing *Armstrong*, 517 U.S. at 463–65). *Cf. United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) ("[A] class-of-one equal protection challenge, at least where premised solely on arbitrariness/irrationality, is just as much a 'poor fit' in the prosecutorial discretion context as in the public employment context" considered in *Engquist*). In addition to *Rivera*, in the context of parole decisions for sex offenders, the Third Circuit has recognized the force of *Engquist*'s limitations on equal protection challenges where the "state action … involves 'discretionary decisionmaking based on a vast array of subjective, individualized assessments' [that] necessarily results in different treatment among those subject to the discretionary action." *Stradford v. Sec. Penn. Dept. of Corrections*, 53 F.4th 67, 76 (3d Cir. 2022) (quoting *Engquist*, 553 U.S. at 603–04). *Engquist*, *Rivera*, and *Stradford* provide no home for a class-of-one theory in the context of this case.

As *Amstrong* made clear, prosecutorial charging decisions must factor in considerations like "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis that courts are competent to undertake." *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 607). Defendant has not offered the Court any equal protection theory to support his request for discovery, and it is his burden to do so.  In the absence of any such developed theory, it suffices to say that the Third Circuit's precedent makes clear that defendant is not entitled to discovery. And even where a class-of-one theory is available, the Third Circuit has explained that in addition to showing intentional disparate treatment, the defendant must also show "there was no rational basis for the difference in treatment." *Madar v. United States Citizenship and Immigration Serv.*, 918 F.3d 120, 124 (3d

Cir. 2019) (quoting *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018), and *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)).

A selective-prosecution argument here is particularly weak in comparison to what the Supreme Court considered in *Armstrong*. First, defendant does not claim that the charging decisions in his case are motivated by his membership in a protected class that is subject to heightened scrutiny under the Equal Protection Clause, unlike in *Armstrong*. Second, he offers no evidence whatsoever of a discriminatory effect. Third, as to discriminatory intent, he offers no evidence that the relevant decisionmakers were motivated by any intent that equal protection standards prohibit. Having failed to make a sufficient preliminary showing, defendant cannot meet *Armstrong*'s standards for obtaining discovery.

Under well-established equal protection principles, a defendant must show "that the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292-93, 298 (1987). In requiring threshold showings of discriminatory intent and effect to obtain discovery for a selective-prosecution claim, *Armstrong* evaluated charging decisions by the prosecuting official responsible for that particular case. Here, additional factors make a showing of discriminatory intent even harder to make.

Defendant focuses his narrative of selective prosecution largely on the actions and motivations of non-prosecuting officials in the previous administration prior to any charges being brought. However, after a change in administrations—to one headed by defendant's father, who leads a competing political party—the President's current Attorney General personally exercised his discretion to direct "a full and thorough investigation" of these matters and conferred on the Special Counsel statutory and regulatory authority to prosecute this case. *See* Order No. 5730-

2023 (Aug. 11, 2023) (citing 28 U.S.C. §§ 509, 510, 515, 533 and 28 C.F.R. pt. 600).[1] Thus, defendant's claim of selective prosecution must contend with the presumption of regularity not only for the Special Counsel's decision to prosecute but also for both the Attorney General's decision to direct a full and thorough investigation *and* the Attorney General's determination that the prosecution warrants the greater authority and independence of the Special Counsel's Office. On those points, in addition to offering no evidence that the now-Special Counsel had any animus or improper motivation against defendant, he offers no evidence that the current Attorney General acted out of any improper motive in empowering the Special Counsel to continue pursuing prosecution.

Lastly, defendant points to nothing about the circumstances of his case itself that would weigh against his prosecution. Defendant himself acknowledged committing criminal conduct relevant to this case when he authored a book admitting that he was addicted to crack cocaine in 2018, the year in which he illegally purchased a gun. As discussed in *Armstrong* and *Wayte*, factors like the strength of such a case and its general deterrent value are quintessentially permissible considerations for a prosecution to proceed. *See Armstrong*, 517 U.S. at 465. It is unremarkable therefore that a prosecutor would choose to pursue charges on such discretionary factors, and defendant faces a significant uphill battle to demonstrate any discriminatory effect or intent in such a case.

---

[1] https://www.justice.gov/d9/2023-08/order.appointment_of_david_c._weiss_as_special_counsel.pdf.

**C.  The Defendant fails to identify what constitutionally protected right he is being punished for exercising, which a vindictive prosecution claim requires him to show.**

Defendant also argues that discovery is warranted to support a vindictive-prosecution claim. A vindictive-prosecution claim requires proof that the government seeks to punish a defendant for exercising a constitutional or statutory right that a defendant possesses in defending against a prosecution. *See United States v. Esposito*, 968 F.2d 300, 303–04 (3d Cir. 1992). "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *Goodwin*, 457 U.S. at 372 (quoting *Bordenkircher*, 434 U.S. at 363). But because "[t]he imposition of punishment is the very purpose of virtually all criminal proceedings," a defendant cannot simply point to "[t]he presence of a punitive motivation," for that "does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity." *Id.* at 372–73.

In providing a framework for determining which prosecutorial decisions are vindictive and which are not, the Supreme Court has distinguished between a prosecutor's decision to add charges in the pretrial context and such a decision after trial. In the pretrial context, the Court has recognized that, "by tolerating and encouraging the negotiation of pleas, this Court ha[s] accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his constitutional right to stand trial." *Id.* at 378. Moreover, the addition of charges in the pretrial context does not give rise to any presumption that the prosecutor is acting vindictively. "An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution." *Id.* at 380. "In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he

11

simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *Id*. at 381. In short, "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Id*. at 382.

A defendant also derives no particular constitutional claim when a plea agreement is not accepted by the court. "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or other constitutionally protected interest." *Mabry v. Johnson*, 467 U.S. 504, 507 (1984), *disapproved on other grounds by Puckett v. United States*, 556 U.S. 129 (2009). Plea negotiations in such circumstances may continue, or a prosecutor may choose to add charges, cease negotiations, and go to trial. "A charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution." *Goodwin*, 457 U.S. at 380 n.11; *see also United States v. Paramo*, 998 F.2d 1212, 1221 (3d Cir. 1993).

Defendant "cannot rely on a presumption of vindictiveness" in this pretrial context and instead "must prove actual vindictiveness in order to prevail." *Paramo*, 998 F.2d at 1221 (citing *United States v. Wasman*, 468 U.S. 559, 569 (1984)). But such proof is "exceedingly difficult to make" and requires proving that the charging decision "results 'solely' from the defendant's exercise of a guaranteed legal right, rather than the prosecutor's ordinary assessment of the societal interest in prosecution." *Id*. (citations omitted). This "strict standard of proof" reflects "the broad discretion held by the prosecutor to select the charges against an accused." *Id*.

Defendant never squarely identifies what right he is purportedly being punished for asserting. But *Goodwin* makes clear he is not entitled to a presumption of vindictiveness here, and that, in the absence of one, the prosecutor remains entitled to a presumption of regularity, which can be rebutted only by clear evidence that his motivation was "solely" to punish the exercise of a legal right, rather than the usual prosecutorial interests. *Goodwin*, 457 U.S. at 380 nn.11–12, 384 n.19. Defendant here offers nothing more than speculation and cannot meet the heightened standard necessary to obtain discovery on such a claim.[2]

## II.    Defendant has not satisfied any of the preliminary thresholds to obtain discovery on a selective-prosecution or vindictive-prosecution theory.

Defendant's motion gives, as the sole justification for these subpoenas, that they are in support of his "pre-trial and trial defense that this is, possibly, a vindictive or selective prosecution." ECF 58, at 14. This argument fails across multiple independent fronts.

As a preliminary matter, the government notes that defendant's description of this claim as a "trial defense" is erroneous. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. It has therefore been blackletter law in this Circuit since 1973 that selective- and vindictive-prosecution claims are properly the subject of pre-trial motions to be decided by the Court alone and are not issues for the jury to decide. *See, e.g.*, *United States v. Berrigan*, 482 F.2d 171, 175-76 (3d Cir. 1973) (citing then-Fed. R. Crim. P. 12(b)(2)); *United States v. Dufresne*, 58 F. App'x 890, 895 (3d Cir.

---

[2] The government notes that none of the charges in the indictment carry a mandatory minimum, and the two false-statement charges carry equal or lower statutory penalties to the information's unlawful-possession charge. *See* ECF 40; *compare* 18 U.S.C. § 924(a)(1)(A), (a)(2), *with* § 924(a)(8).

13

2003); *see also* Fed. R. Crim. P. 12(b)(3)(A)(iv), 12(d).[3] Thus, the question before the Court is whether defendant may use Rule 17(c) subpoenas solely to bolster the information on which he intends to file a future, but not yet filed, pre-trial motion to dismiss the indictment. In *Armstrong* and in *Wayte*, the Supreme Court assumed but did not decide that discovery would be available if an appropriate threshold showing were made. *Armstrong*, 570 U.S. at 463 (citing *Wayte*, 504 U.S. at 186). On its own standards, however, Rule 17(c) does not provide an appropriate mechanism for such discovery. *See infra* Part B.1 (discussing availability of pre-trial subpoenas for selective-prosecution claims).

As discussed above, defendant has articulated no theory of selective prosecution on the basis of membership in a protected class or the absence of any rational justification for his prosecution. Moreover, as further explained below, defendant has also failed to make necessary minimum showings that discovery is even available under *Armstrong* or that his requests meet the standards of pre-trial Rule 17(c) subpoenas.

### A.    Discovery for selective-prosecution claims requires, at minimum, a credible showing of similarly situated defendants treated differently.

The Supreme Court in *Armstrong* imposed exacting standards both for the merits of selective-prosecution claims and for seeking discovery in aid of them. As discussed above, to prove a selective prosecution claim, "a criminal defendant must present clear evidence." *Armstrong*, 517 U.S. at 465 (cleaned up); *see also Reno*, 525 U.S. at 489-90. At the same time, "[d]iscovery imposes many of the same costs present when the Government must respond to a prima facie case of selective prosecution," both by "diverting prosecutors' resources" and

---

[3] Other circuits hold likewise. *See, e.g.*, *United States v. Clay*, 618 F.3d 946, 955-56 (8th Cir. 2010); *United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006); *United States v. Jones*, 52 F.3d 924, 927 (11th Cir. 1995); *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983).

potentially "disclosing the Government's prosecutorial strategy." *Armstrong*, 517 U.S. at 468.

"The justifications for a rigorous standard for the elements of a selective-prosecution claim thus

require a correspondingly rigorous standard for discovery in aid of such a claim." *Ibid.*

Notably, *Armstrong* did not adopt a case-by-case balancing of these factors to determine

whether discovery is warranted. Instead, the Court struck the balance itself, concluding that "the

Government's interest in vigorous prosecution and the defendant's interest in avoiding selective

prosecution" permits discovery only after a defendant makes "a credible showing of different

treatment of similarly situated persons." *Id.* at 470; *see also id.* at 469 (rejecting the Ninth

Circuit's conclusion that a defendant could obtain discovery "without evidence that the

Government has failed to prosecute others who are similarly situated to the defendant").

Subsequently, the Supreme Court repeated the need for such comparators "even assuming that

the *Armstrong* requirement can be satisfied by a nationwide showing (as opposed to a showing

regarding the record of the decisionmakers in respondent's case)." *United States v. Bass*, 536

U.S. 862, 863 (2002) (per curiam).

Though *Armstrong* itself did not specifically address vindictive-prosecution claims, it

relied heavily on the same prosecutorial discretion and presumption of regularity that *Goodwin*

recognized in the context of pre-trial vindictive-prosecution claims. *Compare Armstrong*, 517

U.S. at 463–65, 468, *with Goodwin*, 457 U.S. at 384 & n.19.  Accordingly, both before and after

*Armstrong*, the circuits have uniformly held that the same "some evidence" pleading standard for

selective-prosecution discovery applies to vindictive-prosecution discovery. *See United States v.*

*Bucci*, 582 F.3d 108, 113 (1st Cir. 2009); *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir.

2004); *United States v. Wilson*, 262 F.3d 305, 315–16 (4th Cir. 2001); *United States v. Sanders*,

211 F.3d 711, 717 (2d Cir. 2000); *United States v. One 1985 Mercedes*, 917 F.2d 415, 421 (9th

Cir. 1990); *United States v. Heidecke*, 900 F.2d 1155, 1159 (7th Cir. 1990); *United States v. Adams*, 870 F.2d 1140, 1145–46 (6th Cir. 1989).

The Third Circuit rigorously enforces *Armstrong*'s standard.[4] In *United States v. al Hedaithy*, 392 F.3d 580, 607-08 (3d Cir. 2004), for example, the Circuit held that a defendant was not entitled to discovery based on "numerous newspaper articles" demonstrating that several thousand people cheated on a standardized test every year yet "the Government has never before prosecuted such cheaters for any offense." The Circuit noted the "defect in Al Hedaithy's proffer is that none of the evidence indicates that *similarly situated* persons were treated differently" and identified the lack of any showing about similarities in the scope, facts, nature, or purpose of the offenses for other individuals not prosecuted. *Id.* at 608. In *United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012), the Circuit again held that a defendant failed to meet the discovery threshold "given [*Armstrong*'s] high standards" in the absence of showing "any other examples of defendants" who committed similar crimes without comparable prosecution.[5] The Circuit has even applied *Armstrong*'s reasoning to other prosecutorial decisions than initial charging. *See United States v. Abuhouran*, 161 F.3d 206, 216-17 (3d Cir. 1998) (applying the standard to prosecutors' decisions not to file substantial-assistance motions).

---

[4] In fact, well before *Armstrong*, the Circuit emphatically rejected a defendant's attempts to obtain discovery into the prosecutorial decisions leading to his charging. *Berrigan*, 482 F.2d at 180 ("[F]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." (quoting *Newman v. United States*, 382 U.S. 479, 480 (D.C. Cir. 1967) (Burger, J.))).

[5] A host of unpublished decisions hold likewise. *See, e.g.*, *United States v. Bernick*, 651 F. App'x 102, 105 (3d Cir. 2016); *United States v. Roberts*, 404 F. App'x 624, 625 (3d Cir. 2010); *United States v. Gist*, 382 F. App'x 181, 183-84 (3d Cir. 2010); *United States v. Rhines*, 143 F. App'x 478, 481 (3d Cir. 2005); *United States v. Geddes*, 98 F. App'x 187, 188 (3d Cir. 2004), *vacated on other grounds*, 543 U.S. 1109 (2005); *United States v. Davis*, 39 F. App'x 702, 705 n.3 (3d Cir. 2002).

More recently, even while slightly relaxing the standard for discovery into allegedly discriminatory law-enforcement practices, the Third Circuit emphasized that *Armstrong* and *Bass* continue to apply to all claims "that implicate protected prosecutorial functions." *United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017). In so doing, the Circuit reiterated that "'some evidence' must still include a showing that similarly situated persons were not prosecuted," which "must be 'credible' and cannot generally be satisfied with nationwide statistics." *Id.* at 214-15 (citing *Armstrong* and *Bass*)). The Circuit further noted that this standard is a "demanding gatekeeper" and that "neither the Supreme Court nor this [Circuit] has ever found sufficient evidence to permit discovery of a prosecutor's decision-making policies and practices." *Id.* at 215 (quoting the government's brief).

Defendant's motion does not even attempt to make a showing of similarly situated individuals who were not prosecuted. It discusses no comparators *at all*, much less articulates the basis on which a court could find that they are "similarly situated" to the defendant but for a protected characteristic. On the issue of vindictive prosecution, defendant's motion again does not identify what protected right he invokes or present any evidence of actual vindictiveness that would satisfy the showing for non-conclusory assertions about the government's decision to prosecute. These deficiencies in meeting the heightened pleading standard for discovery on selective- and vindictive-prosecution claims alone warrant denial. Nonetheless, as discussed below, defendant's motion also fails even the other basic standards for the issuance of subpoenas in criminal cases.

**B.    The Federal Rules likewise impose strict pleading requirements for subpoenas.**

In addition to the special pleading standards of selective and vindictive prosecution discovery are those generally applicable under Rule 17. Recognizing that Rule 17 "was not

intended to provide a means of discovery in criminal cases," the Supreme Court held that a party issuing subpoenas duces tecum for pre-trial inspections must make an initial showing of several factors, including that the materials are "evidentiary and relevant" as well as necessary to prepare for trial. *United States v. Nixon*, 418 U.S. 683, 699 (1974). Further defining these requirements, the Supreme Court identified "(1) relevancy; (2) admissibility; (3) specificity" as "three hurdles" the movant must "clear." *Id.* at 700.

### 1.  Rule 17 permits only production of potential trial evidence, not general discovery in aid of pre-trial motions.

As evidenced by *Nixon*'s focus on the use of the subpoenaed materials for trial, including its requirements that they be "evidentiary" and admissible, Rule 17(c)'s scope does not extend to subpoenas in aid of pre-trial collateral attacks on a prosecution, rather than documents or other materials that could be admitted before a jury at trial. *See, e.g.*, *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) (holding that Rule 17(c) provides an alternative mechanism to obtain "evidentiary" material from the government's possession but that Rule 17 does not "give a right to discovery in the broadest sense" or "an additional means of discovery"); *United States v. Cuthbertson* (*Cuthbertson I*), 630 F.2d 139, 144 (3d Cir. 1980) ("[R]ule 17(c) is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial."); *United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976) ("Criminal Rule 17(c), which is not a discovery device, confines a subpoena duces tecum to admissible evidence ...." (cleaned up)).

Accordingly, courts have concluded that "[t]he weight of authority holds that in order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence." *United States v. Cherry*, 876 F. Supp. 547, 552-53 (S.D.N.Y. 1995) (citing cases). Indeed, in *Nixon* itself, the Supreme Court noted that even though, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," the

18

"other valid potential evidentiary uses for the same material" rendered it properly obtainable through Rule 17(c). 418 U.S. at 701. Applying *Nixon*'s standard, the Third Circuit held that potential impeachment material without an independent basis for admissibility could not be produced to the moving party before the witness testified inconsistently at trial, even if the material had some exculpatory value. *See United States v. Cuthbertson* (*Cuthbertson II*), 651 F.2d 189, 192, 195 (3d Cir. 1981) (citing *Cuthbertson I*, 630 F.2d at 144-46).

Reading *Armstrong* and *Nixon* together compels the conclusion that Rule 17(c) may not be used to discover material for pre-trial collateral attacks. *Nixon* unambiguously imposed limitations on Rule 17(c) subpoenas to "evidentiary" and admissible materials for use at trial, which closes off criminal discovery on collateral, pre-trial issues. *See* 418 U.S. at 699; *see generally* Fed. R. Evid. 104, 1101(d) (providing that courts are not bound by the Federal Rules of Evidence other than privilege in various non-trial stages of criminal cases). Then, in *Armstrong*, although it proceeded on the undecided assumption that some discovery might be available on an adequate showing, the Supreme Court nonetheless unequivocally held that the defendant's "defense" does not encompass collateral selective-prosecution attacks on the indictment. 517 U.S. at 463 ("[I]n the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief."); *cf. supra* note **Error! Bookmark not defined.**. Put simply, because Rule 17 is not "a means of discovery in criminal cases" (*Nixon*, 418 U.S. at 699), defendants may not use it to investigate whether some material that might be useful to some pre-trial motion a defendant may make exists in the files of the government or a third party. Instead, Rule 17(c) is a limited, trial-focused mechanism for procuring known, identifiable evidence.

Defendant's citations in support of using Rule 17(c) in aid of a pre-trial claim are unavailing. He relies almost exclusively on language from a practice treatise that "Rule 17 is not limited to subpoenas for the trial" and may be used "for determination of an issue of fact raised by a pre-trial motion." 2 Charles Alan Wright et al., Federal Practice & Procedure § 272 (4th ed. 2023); *cf.* ECF 58, at 9, 10, 12.[6] However, immediately after defendant's quoted language, the treatise further clarifies: "The purpose of Rule 17 is not to obtain witnesses and documents for use as evidence"; "it is not a discovery device." 2 Wright & Miller § 272 (footnotes omitted). Also notably, this treatise section addresses Rule 17 generally, thus including subpoenas under Rule 17(a) that can indisputably be issued to compel testimony at pre-trial evidentiary hearings.

By contrast, *Nixon* explicitly addressed its requirements to subpoenas duces tecum under Rule 17(c). *See* 418 U.S. at 698-99. In the treatise's subsequent section specifically discussing subpoenas duces tecum, it repeatedly and unambiguously emphasizes that Rule 17(c) subpoenas require "good cause" to be returnable prior to trial, that *Nixon*'s standard limits subpoenas duces tecum to "evidentiary materials" and not "general requests for categories of only arguably relevant documents," that "Rule 17(c) was not intended as a discovery device," that "[a]ny document that might previously have been obtained by defendant through use of a subpoena duces tecum may now be obtained by the defendant by discovery" through Rule 16, and that

---

[6] General venerability of the treatise aside, its only actual authority for the latter proposition are two district court cases that precede *Nixon*'s 1974 determination that Rule 17(c) subpoenas may seek only specific, relevant materials that are evidentiary, admissible, and necessary for trial. *See id.* n.5 (citing *United States v. Charamella*, 294 F. Supp. 280 (D. Del. 1968), and *United States v. Rickenbacker*, 27 F.R.D. 485 (S.D.N.Y. 1961)). The treatise also contains an unexplained "compare" citation to *United States v. Bebris*, 4 F.4th 551, 559-62 (7th Cir. 2021), which (a) concerns Rule 17(a) testimonial subpoenas, (b) does not address any challenge to the appropriateness of using Rule 17(c) for pre-trial collateral issues only, and (c) affirms the quashing of the subpoena on the ground that it would have been cumulative.

"Rule 17(c)(1) can be confined to the rather modest purposes the draftsmen intended," *i.e.*, permitting limited inspection of known potential evidence in advance of trial. 2 Wright & Miller § 275. Thus, by linking the scope of material procurable by Rule 17(c) with that available under Rule 16, which *Armstrong* held excluded selective-prosecution theories, defendant's own principal authority defeats his argument here.

In other words, as the Southern District of New York has recently explained, while *Nixon* and Rule 17(c) do govern more than just "subpoenas returnable at trial ('trial subpoenas') to obtain impeachment," the only others authorized are "pre-trial subpoenas to obtain *admissible evidence*." *United States v. Donziger*, No. 19-cr-561, 2021 WL 1865376, at *4 (S.D.N.Y. May 10, 2021) (emphasis added); *see also United States v. Avenatti*, No. 19-cr-737, 2020 WL 508682, at *3-5 (S.D.N.Y. Jan. 31, 2020) (citing cases). Defendant's argument that these documents are "material to his defense" runs headlong into *Armstrong*'s holding that, while the idea of a "defense" *could* be construed so broadly as to encompass a selective and vindictive prosecution claim, it does not extend so far. *See* 517 U.S. at 462-63 ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."). In short, defendant's arguments that Rule 17(c) is available for pursuing non-merits pre-trial arguments ignore binding Supreme Court precedent and extend Rule 17(c) far beyond its recognized scope.

### 2. Rule 17(c)'s relevance requirements would equally constrain the scope of obtainable documents.

*Nixon*'s relevance requirement also precludes application to pre-trial collateral issues like selective and vindictive prosecution: because Rule 17(c) is directed at trial evidence, courts assess the relevance of materials with reference to offense elements or trial defenses. *See Nixon*, 418 U.S. at 700 (finding under relevance that there was a "sufficient likelihood that each of the

tapes contains conversations relevant *to the offenses charged in the indictment*" (emphasis added)); *see also United States v. Jabar*, No. 09-cr-170, 2016 WL 8671207, at *3 (W.D.N.Y. July 22, 2016) (quashing Rule 17(c) subpoenas seeking discovery for selective-prosecution claim on this basis). However, even if the Court were to assume that relevancy could be applied to a selective or vindictive prosecution claim, the claim's substantive elements narrowly limit what evidence is relevant.

As discussed above, a selective-prosecution claim contains two elements a defendant must prove by "clear evidence": that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465-66 (cleaned up); *see also Oyler v. Boles*, 368 U.S. 448, 456 (1962). As to intent, the equal-protection principles inherent in selective-prosecution claims require a defendant to show "that the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey*, 481 U.S. at 292-93, 298; *accord Conley v. United States*, 5 F.4th 781, 789 (7th Cir. 2021); *Broadnax v. Lumpkin*, 987 F.3d 400, 413-14 (5th Cir. 2021); *United States v. Lawrence*, 735 F.3d 385, 439 (6th Cir. 2013); *Freeman v. Attorney General*, 536 F.3d 1225, 1232-33 (11th Cir. 2008); *United States v. Olvis*, 97 F.3d 739, 745-46 (4th Cir. 1996). Similarly, "discriminatory purpose implies more than intent as awareness of consequence"; instead, "it implies that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group." *Wayte*, 470 U.S. at 610 (cleaned up). To obtain any discovery on such a claim, defendant must make his "credible showing" with respect to both elements, including by identifying similarly situated individuals treated differently. *Bass*, 536 U.S. at 863-64.

Likewise, a vindictive-prosecution claim in the absence of a presumption of vindictiveness requires that "the defendant must affirmatively prove actual vindictiveness."

*Wasman v. United States*, 468 U.S. 559, 569 (1984); *accord Paramo*, 998 F.2d at 1220–21

(requiring "evidence of a prosecutor's retaliatory motive to prove actual vindictiveness"). The

mere fact that a prosecutor files additional charges after a failed plea negotiation process does

not meet that standard. *See Goodwin*, 457 U.S. at 380 ("For just as a prosecutor may forgo

legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor

may file additional charges if an initial expectation that a defendant would plead guilty to lesser

charges proves unfounded.").

      Here, defendant's motion utterly fails to plead *Armstrong*'s required "credible showing"

of both elements of selective prosecution, or any evidence of an actual retaliatory motive, with

respect to the decisionmaker for his prosecution: the Special Counsel. Instead, his alleged

narrative—and the target of his subpoena requests—focuses almost exclusively on the actions,

communications, and potential motives of individuals who did not make the decision to

prosecute in his case.[7]

      At the time of investigation and initial decision to prosecute, the Special Counsel was the

sitting United States Attorney for the District of Delaware, a Presidentially appointed and

Senate-confirmed office. *See* 28 U.S.C. § 541. Federal law vested him with the duty to prosecute

offenses against the United States and initiate proceedings under the revenue laws. *See* 28 U.S.C.

§ 547(1), (4). Subsequently in this case, the sitting Attorney General—appointed by a different

President of a later administration controlled by a different political party—exercised his

---

    [7] By analogy, in a retaliatory malicious prosecution civil case, the Supreme Court recognized a causation mismatch between the discriminatory animus of a non-prosecuting official and a prosecutor's charging decision; it then adopted a requirement that the plaintiff plead a lack of probable cause to overcome the prosecutorial presumption of regularity. *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 263-64 (2006). *But cf. Mitchell v. Miller*, 598 F.3d 139, 154 (3d Cir. 2010) (holding no-probable-cause element is required even in cases where the prosecutor is alleged to have the retaliatory motive).

statutory and regulatory authority to confer on the U.S. Attorney the additional jurisdiction and independence of the Special Counsel's Office for this prosecution. *See* Order No. 5730-2023 (Aug. 11, 2023) (invoking 28 U.S.C. §§ 509, 510, 515, 533 and 28 C.F.R. pt. 600).

Against this backdrop, the gaps in defendant's motion become glaring: absent is any credible argument that (a) one of the subpoena recipients, rather than the Special Counsel, made the decision to prosecute the defendant and that the Special Counsel merely followed an order, or (b) that the Special Counsel himself has treated similarly situated individuals differently or decided to prosecute for discriminatory purposes. In fact, throughout the defendant's entire constructed narrative, he barely refers to the actions or motives of the then-U.S. Attorney, now-Special Counsel, much less makes *Armstrong*'s "credible showing" of disparate treatment, discriminatory intent, or retaliatory motive on his part. Nor has defendant addressed the impact of the sitting Attorney General's subsequent determination that, "to ensure a full and thorough investigation" of these matters, it was necessary to confer the additional jurisdiction and independence outlined in 28 C.F.R. § 600.04–600.10. *See* Order No. 5730-2023.

Defendant's attempts to manufacture discriminatory treatment or intent on behalf of the U.S. Attorney fall apart under the most minimal scrutiny. First, defendant obliquely references that "IRS files reveal that [Richard Donoghue] further coordinated with the Pittsburgh Office *and* with the prosecution team in Delaware, including issuing certain guidance steps regarding overt steps in the investigation." ECF 58, at 2-3 & n.3. Looking behind the defendant's ambiguously phrased allegation reveals the actual "overt steps" involved: (1) the U.S. Attorney making an independent assessment of the probable cause underlying a warrant and (2) a direction by Mr. Donoghue that the Delaware investigation receive the information from the Pittsburgh team, which was being closed out. *See* ECF 58, at 3 n.3 (citing memorandum of conference call).

24

Assessing the validity of a warrant and merely receiving information from other investigating entities does nothing to show any disparate treatment or animus. Next, defendant alleges that "certain investigative decisions were made as a result of guidance provided by, among others, the Deputy Attorney General's office." ECF 58, at 3 n.4. In fact, the source cited revealed that the guidance was simply not to conduct any "proactive interviews" yet. Likewise, defendant's last attempt to create a link involved guidance not to make any "external requests (outside of government)," which followed the long-standing Department of Justice policy to avoid overt investigative steps that might interfere with ongoing elections. *See* ECF 58, at 3 n.5; *cf., e.g.*, *Federal Prosecution of Election Offenses* 40 (2d ed. 1980). In other words, the most defendant claims is that the Deputy Attorney General's office was aware of and involved in some specific investigatory decisions in the most banal fashion possible—by *waiting* to take specific investigative steps at certain times out of caution.

None of these contacts or events provides any evidence involving *either* the disparate treatment of similarly situated individuals *or* a discriminatory intent behind the U.S. Attorney's prosecutorial decision. Perhaps even more glaringly, defendant focuses his final narrative arc entirely on the mere existence of public statements of a former President no longer in office and congressional politicians, none of whom have any authority to direct a sitting U.S. Attorney, much less an independent Special Counsel. *See* ECF 58, at 5-7. Defendant's real argument is that if political actors uninvolved in the prosecution claim credit or leverage the prosecution for their own political ends, those statements must have necessarily influenced the Special Counsel's decisions. That is nothing more than a conclusory assertion fundamentally at war with the presumption of regularity accorded to the actions of the Special Counsel, who is also a Presidentially appointed, Senate-confirmed constitutional officer under oath to apply the law

faithfully and discharge his duties impartially. To permit a subpoena based on such peripheral atmospherics would render *Armstrong* a dead letter and open the gates for expansive discovery demands in any prosecution about which uninvolved elected officials—or those seeking office— seek to make political hay.

Unsurprisingly, defendant's subpoena requests follow the same pattern as his allegations and fail *Nixon*'s required relevancy standard. Instead, they cast a wide net to obtain documents— both personal and official, both communicated and non-communicated—from the subpoena recipients without regard for even a potential connection to the Special Counsel's prosecutorial decision. *See* ECF 58-1, at 6.

- Category #1, for example, appears to request any communication made to or by a subpoena recipient relating to the defendant—a category that could include a random citizen's letter urging formal charging, a text message from a tangential acquaintance expressing a hope that the Department *not* investigate the defendant, and a vast number of other wholly irrelevant documents;

- Category #2 similarly appears to request communications from or to the subpoena recipient involving any Executive Branch employee anywhere in the government, regardless of jurisdiction or involvement in the investigation or prosecution—not to mention private, non-governmental attorneys for one of the subpoena recipients;

- Category #3 seeks even uncommunicated personal thoughts and musings by any subpoena recipient in the form of diaries, journals, or personal notes; and

- Category #4 seeks any document that even mentions the defendant among those produced in an entirely unrelated congressional investigation.

26

These requests simply do not target the elements of defendant's actual selective- or vindictive-prosecution claims: either that the decisionmaker in his case, the Special Counsel, has (1) treated similarly situated defendants disparately or (2) acted from discriminatory intent; or that he has acted with an actual retaliatory motive. They are therefore irrelevant to the claim on which defendant grounds his request, even assuming Rule 17(c) permitted subpoenas for such pre-trial motions.

### 3. Rule 17(c) must seek only "known, ascertainable" potential trial evidence, not conduct fishing expeditions.

Lastly, independent of its other glaring defects, defendant's request does not come close to the specificity required by *Nixon*. Indeed, defendant's sweeping subpoena requests contain numerous requests that amount to the kind of fishing expedition that courts have condemned as improper, a problem that he acknowledges will be raised against his requests. ECF 58, at 8.

For example, courts have observed that unlike civil subpoenas, the specificity requirement for criminal subpoenas authorized by Rule 17(c) compels production only of known "particular documents or sharply defined categories of documents." *E.g.*, *United States v. Crossland*, 821 F. Supp. 1123, 1129 (E.D. Va. 1993); *accord United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kan. 1994); *United States v. Hastie*, No. 14-cr-291, 2015 WL 13308843, at *2 (S.D. Ala. 2015). "Stated another way, Rule 17(c) is a vehicle to obtain known, ascertainable evidence from a third party that is relevant to the charged conduct…." *United States v. Mills*, No. 17-cr-122, 2018 WL 1382647 (W.D. Pa. March 19, 2018). The fact that a party does not know the contents of the documents and "is seeking to determine this information by means of a subpoena, points pervasively to the conclusion that this trial subpoena is an impermissible 'fishing expedition,' not a proper request for production of specifically identified documents." *Crosland*, 821 F. Supp. at 1129; *see also United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)

("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.").

In *Bowman Dairy*, for example, the Supreme Court flatly rejected "a catch-all provision," which was "not intended to produce evidentiary materials but [was] merely a fishing expedition to see what may turn up." 341 U.S. at 221. Later, the Fifth Circuit affirmed the quashing of a subpoena where a defendant sought to obtain government files about his investigation as relevant to his entrapment and due process defenses. *United States v. Arditti*, 955 F.2d 331, 345-46 (5th Cir. 1991). In rejecting this argument, the court held that *Nixon*'s "specificity and relevance elements require more than the title of a document and conjecture as to its contents." *Id.* at 345. Because "Arditti was attempting to use the subpoena to gain knowledge that he could not obtain under rule 16(a)(1)" and thus "trying to use the subpoena duces tecum as a discovery device, which it is not," he could not invoke Rule 17(c). *Id.* at 346 (cleaned up). (Here, of course, defendant's requests are even less targeted than a title of a document and conjecture about its contents.) Likewise, where defendants have sought to obtain entire files, rather than specific documents, courts have quashed such subpoenas as being improper discovery devices or allowing "a blind fishing expedition seeking unknown evidence." *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) (quoting *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981)); *see also United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) (rejecting subpoena because it "cast a wide net that betokens a general fishing expedition" (cleaned up)).

In *United States v. Jackson*, 155 F.R.D. 664, 668 (D. Kan. 1994), the district court observed that a defendant's Rule 17(c) subpoenas "unquestionably resemble discovery requests" because they employed "such terms as 'any and all documents' or 'including but not limited to,'"

which were "indicia of a fishing expedition." The court noted that the subpoenas "aim for what appears to be a broad array and large number of documents," including "seek[ing] entire files, all correspondence, and all related records"—all "more indicia of a fishing expedition." *Ibid.* Likewise, the Southern District of New York has observed that "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013). Other courts also "routinely reject Rule 17(c) requests for 'any and all' documents because such requests fail *Nixon*'s specificity test." *United States v. Patterson*, No. 20-cr-1078, 2020 WL 2217262, at *8 (D. Md. 2020) (citing cases); *see also United States v. Ellis*, No. 19-cr-369, 2021 WL 2104879, at *3 (W.D. Pa. Jan. 21, 2021) (citing more cases); *United States v. Hutchinson*, No. 97-cr-1146, 1998 WL 1029228, at *2 (E.D.N.Y. Dec. 23, 1998) (citing even more cases).

Notwithstanding defendant's attempt to pre-empt this obvious defect, *see e.g.*, ECF 58, at 8, the substance of his subpoena request reveals the true breadth of his attempted discovery. One not even go further than defendant's assertion that the subpoena recipients are "likely to have relevant materials in their possession that are responsive to Mr. Biden's document requests." ECF 58, at 8. This is, of course, circular reasoning: Defendant framed his own discovery requests, and unlike in civil discovery, the likelihood that materials responsive to such broadly framed requests exist is immaterial to the criminal standard. *Cf. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (permitting civil discovery of "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). Under Rule 17(c), "[t]he test for enforcement is whether the subpoena constitutes a good

faith effort to obtain *identified evidence* rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." *Cuthbertson I*, 630 F.3d at 144 (emphasis added).

Defendant's "Attachment A" to each subpoena makes no bones about being a broadly sweeping civil discovery request. It contains "Definitions" that include expansive descriptions of "documents" and "communications" and even sets a "Relevant Time Period." *E.g.*, ECF 58-1, at 4. It includes "Instructions" with such broad commands as the manner of production, how to determine "responsive" documents, a demand for a privilege log, and even an instruction to produce any documents "which are known to exist and can be obtained by [the recipient] from any other source." ECF 58-1, at 5-6. Lastly, as discussed above, each category sweeps in a vast amount of potential documents that are wholly unrelated to the elements of defendant's selective-prosecution claim, including ones that were never communicated to, seen by, or interacted with by the Special Counsel and therefore could not remotely support a claim of discriminatory intent. "These categories cover a tellingly broad swath of information, and the Subpoena's use of language such as 'including but not limited to' and 'all' suggests that it crosses an important line." *Ellis*, 2021 WL 210489, at *4.

None of these categories identify specific evidence that relates to whether the decisionmaker in defendant's case—here, the Special Counsel—either treated similarly situated defendants differently or acted with a prohibited discriminatory purpose. *Cf. McCleskey*, 481 U.S. at 292-93. Instead, the requests are self-evidently an attempt to find out *whether* any material exists that defendant can turn to his advantage in a pre-trial motion. Rule 17(c) permits the use of the court's compulsory process only to obtain access to known, ascertainable, relevant evidence for potential use at trial, not to conduct wide-ranging civil discovery in support of a defendant's preferred narrative.

Lastly, the specificity demanded by Rule 17(c) is not empty formalism. Here, defendant's broadly worded requests appear to encompass both personal and official documents, including those over which the Executive Branch may retain a variety of possible privileges. *See United States v. Reynolds*, 345 U.S. 1, 7-8 (1953) (holding that executive privilege "belongs to the Government and must be asserted by it" and that "it can neither be claimed nor waived by a private party" (footnotes omitted)); *see also Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2035 (2020) (recognizing that "separation of powers concerns are no less palpable here simply because the subpoenas were issued to third parties"). But the lack of identification of specific documents precludes the government from assessing whether and which privileges might apply.

Likewise, specific regulations govern the disclosure of DOJ materials in the possession of former DOJ employees, and the government is unable to assess the applicability or propriety of disclosure without identification of the specific documents. *See* 28 C.F.R. § 16.26 (outlining considerations governing appropriateness of disclosure); *see generally* 28 C.F.R. pt. 16, subpt. B (proscribing *Touhy* regulations for disclosure of official materials, including those held by former DOJ employees); *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Only once those materials are specifically identified can the government assess the appropriateness of disclosure, including whether such materials are privileged. The government must therefore respectfully reserve the right to bring additional arguments as to privilege or other basis for quashing the subpoenas under Rule 17(c)(2).

## CONCLUSION

Supreme Court precedent, both on selective- and vindictive-prosecution claims and on the scope of Rule 17(c), compels denial of defendant's motion for several reasons. Even absent a heightened pleading standard, defendant has not shown that the Federal Rules' requirements of admissibility, specificity, or relevance can be, much less are, satisfied by the subpoenas he

31

propounds. His allegations and subpoena requests focus on likely inadmissible, far-reaching, and non-specific categories of documents concerning the actions and motives of individuals who did not make the relevant prosecutorial decision in his case. On allegations about disparate treatment or discriminatory intent regarding the Special Counsel, defendant's motion is notably deficient. Moreover, the Supreme Court's and Third Circuit's unequivocal enforcement of *Armstrong* means that to get even theoretical discovery, a defendant must make a credible showing of selective or vindictive prosecution, including identifying similarly situated but disparately treated individuals. Viewed under that lens, defendant's requests become even more untenable. This Court should decline to allow its compulsory process to be invoked for defendant's unsupported, improper attempt to circumvent the rules applicable to criminal subpoenas, particularly with respect to the claims at issue.

Respectfully submitted,

DAVID C. WEISS
SPECIAL COUNSEL

By:

Leo J. Wise
Principal Senior Assistant Special Counsel

Derek E. Hines
Senior Assistant Special Counsel

U.S. Department of Justice