# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) <br> ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN <br> ) |
| ROBERT HUNTER BIDEN, | ) <br> ) |
| Defendant. | ) <br> ) |

DECLARATION OF CHRISTOPHER J. CLARK

I, Christopher J. Clark, hereby declare the following under penalty of perjury:

1. I am former counsel for Robert Hunter Biden ("Mr. Biden") and represented Mr. Biden in the above-captioned matter and preceding grand jury investigation, until my withdrawal on August 17, 2023. (D.E. 31.)

2. I am a partner at the law firm of Clark Smith Villazor LLP, located at 250 West 55th Street, 30th Floor, New York, New York 10019. My telephone number, fax number, and email address are as follows: 212-377-0853 (tel.); 212-377-0868 (fax); clark@csvllp.com (email). I previously worked at the law firm of Latham & Watkins LLP until April 2023.

3. I am a member in good standing of the bars of Connecticut and New York.

4. My representation of Mr. Biden included the negotiation and preparation of the Diversion Agreement with the U.S. Attorney's Office for the District of Delaware (the "USAO") in this matter, executed by the Parties on July 26, 2023, in Delaware.

5. On May 11, 2023, Associate Deputy Attorney General Bradley Weinsheimer emailed my co-counsel Matthew Salerno, copying me, co-counsel, and U.S. Attorney David Weiss, that "U.S. Attorney Weiss has full authority to bring charges in any jurisdiction as he deems appropriate," which confirmed that U.S. Attorney Weiss operated with the full weight and

1

authority of the U.S. Department of Justice (DOJ). A true and correct copy of Bradley Weinsheimer's May 11, 2023, email to Matthew Salerno is attached hereto as Exhibit A.

6. On May 15, 2023, at or around 4:00 PM EST, Delaware Criminal Chief Shawn Weede, DOJ-Tax Counsel Mark Daly, and Assistant U.S. Attorneys Lesley Wolf and Carly Hudson initiated a phone call with me, during which they indicated the USAO's willingness for a non-charge disposition to resolve any and all investigations by the DOJ of Mr. Biden and noting only two non-negotiable requirements for a non-charge disposition: (1) that any resolution be public, and (2) include an accompanying statement of facts. Such a non-charge resolution would not include any plea (something I stated was a necessity), and I responded that I would speak with my client about a potential resolution. A true and correct copy of AUSA Wolf's May 15, 2023, email to Chris Clark and Matthew Salerno, copying my co-counsel and Mr. Weede, Mr. Daly, and AUSA Hudson, is attached hereto as Exhibit B.

7. Following further confirmation from AUSA Wolf on May 16, 2023, that the USAO was open to a non-charge, non-plea resolution, on May 17, 2023, I flew to California to meet with Mr. Biden to explain the USAO's proposal and the process for resolution.

8. In the morning on May 18, 2023, while staying at my mother's house and prior to meeting with Mr. Biden at his home in California, I called AUSA Wolf on her cellphone to make certain and confirm that, before meeting with Mr. Biden, the USAO was amendable to a non-plea, non-prosecution disposition of this case. AUSA Wolf confirmed again to me the USAO was open to this, and I then met with Mr. Biden that day to discuss the concept and terms of a non-charge, non-plea resolution.

9. Later that day (May 18, 2023), my co-counsel Tim McCarten emailed AUSAs Wolf and Hudson a draft non-prosecution agreement (NPA) and an initial draft statement of facts for

the purpose of facilitating further discussions about the framework of a possible resolution of Mr. Biden's case. The NPA and resolution would apply to Mr. Biden and Owasco P.C. A true and correct copy of Timothy McCarten's May 18, 2023, email and attachment to AUSAs Wolf and Hudson is attached hereto as Exhibit C.

10. On a phone call later that evening, while I was still in California and after I had already met with Mr. Biden to discuss a potential non-plea resolution, AUSA Wolf relayed to me that U.S. Attorney Weiss had changed his position and was unlikely to agree to a non-prosecution agreement in this instance, and instead had in mind a deferred prosecution agreement (DPA) on the charge related to Mr. Biden's possession of a firearm. I expressed my dismay to AUSA Wolf that U.S. Attorney Weiss had changed his position after I had confirmed his position several times. However, I felt it was important to understand the details of the new deal U.S. Attorney Weiss was now proposing. I asked AUSA Wolf whether or not such a DPA would be one include a plea by Mr. Biden or the model without such a plea. In answering that question, AUSA Wolf stated that the agreement proposed by U.S. Attorney Weiss was unclear on this issue, and that she would check with the U.S. Attorney regarding the terms of the DPA.

11. During that same phone call with AUSA Wolf (in California), she assured me that a deal would get done, and that the Office had several people working on it, but that it would not be finalized before the weekend in light of the fact that U.S. Attorney Weiss now required a DPA rather than an NPA. At this point, given what AUSA Wolf and I had discussed, this non-charge resolution was conveyed as an official offer and duly authorized by U.S. Attorney Weiss. I reiterated that any deal must resolve and close any and all investigations of Mr. Biden, and I asked AUSA Wolf to send me new terms for a deal. I flew back to Washington, D.C. from Los Angeles, California on May 18, 2023.

3

12. In an email to me that same evening (May 18), AUSA Wolf stated that the USAO "would consider" a pre-trial diversion agreement in place of a non-prosecution agreement and listed certain "key terms of any potential diversion agreement"—some of which had been included in the draft non-prosecution agreement sent earlier that day. AUSA Wolf listed 12 "key terms" for Mr. Biden's counsel, among them: "(1) Pre-trial Diversion Agreement; (2) Agreement to waive indictment (which requires an in-court proceeding); (3) Information filed charging 922(g)(3) and the tax misdemeanors; (4) Agree to dismiss after three years . . . (6) Diversion agreement will be public record . . . (9) A more comprehensive statement of facts than what was included in your initial draft[.]" She asked defense counsel "to incorporate [the USAO's requested terms] into a draft agreement." The terms set forth in the proposal sent by AUSA Wolf indicated a complete and total resolution of the case against Mr. Biden. I reviewed these terms with Mr. Biden, and based on these terms then offered, Mr. Biden was willing to accept AUSA Wolf's proposal. A true and correct copy of AUSA Wolf's May 18, 2023, email to Chris Clark is attached hereto as Exhibit D.

13. In furtherance of the USAO's preference for a diversion agreement, rather than a non-prosecution agreement, on May 19, 2023, at or about 8:52 AM, AUSA Wolf sent me and my partners "the best exemplar" as a template for the agreement—and appended a copy of the Deferred Prosecution Agreement used in *United States of America v. Aegis Electronic Group, Inc.* in 2011. AUSA Wolf also suggested including a provision in the parties' diversion agreement that would provide "notice from the government" regarding potential breach by the defendant, "and if contested, then presented to the Court for determination in the same way a supervised release violation might be handled." A true and correct copy of AUSA Wolf's May 19, 2023, email and attachment to Chris Clark, copying AUSA Hudson and my co-counsel, is attached hereto as

Exhibit E.

14.     With AUSA Wolf's direction, co-counsel and I used the terms, conditions, and provisions in *Aegis* as the model for the diversion agreement with Mr. Biden, and worked to address AUSA Wolf's 12 enumerated requests.  On May 19, 2023, my co-counsel Tim McCarten sent AUSAs Wolf and Hudson a draft diversion agreement based on the *Aegis* agreement for the USAO to review.  A true and correct copy of Timothy McCarten's May 19, 2023, email to AUSAs Wolf and Hudson, copying my co-counsel, is attached hereto as Exhibit F.

15.     The following week, on May 23, 2023, AUSAs Wolf and Hudson called me to inform me that U.S. Attorney Weiss had changed his position on the Agreement again and would no longer agree to a deal without some type of plea by Mr. Biden.  According to AUSAs Wolf and Hudson, U.S. Attorney Weiss now required that a resolution include pleas to two failure to file misdemeanors but would still include a diversion agreement to address Mr. Biden's brief possession of a handgun.  Following that phone call, I immediately relayed the U.S. Attorney's about-face reversal to my co-counsel, and Mr. Biden, on a phone call on May 23, 2023, at or around 4:14 PM EST.

16.     That same evening (May 23) at or around 5:31 PM EST, AUSA Wolf reiterated in a follow-up email to me, copying AUSA Hudson, that U.S. Attorney Weiss "ultimately did not approve continued discussions for diversion relating to the tax charges."  This was a change in the framework we had discussed to resolve the tax-related charges and was a modification of the proposal AUSA Wolf had offered on May 15, 2023.  A true and correct copy of AUSA Wolf's May 23, 2023, email to Chris Clark, copying AUSA Hudson, is attached hereto as Exhibit G.

17.     I discussed this change with Mr. Biden, and on May 23 at or around 6:30 PM EST, I had another phone call with AUSA Wolf indicating our willingness to go forward with a new

5

deal, subject to the USAO not changing the basic terms again. On that call, I communicated to AUSA Wolf a critical requirement: Mr. Biden not serve a term of incarceration. To accomplish this, I proposed a Federal Rule of Criminal Procedure 11(c)(1)(C) plea for a probationary period with the same conditions that the Deferral Agreement would require, along with a statement of facts. AUSA Wolf indicated she would check with U.S. Attorney Weiss. A true and correct copy of Chris Clark's May 23, 2023, email to AUSAs Wolf and Hudson is attached hereto as Exhibit G.

18.     The next day, during a phone call on or about May 24, 2023, AUSA Wolf relayed to me that U.S. Attorney Weiss would not be inclined to accept an 11(c)(1)(C) plea in this matter. Instead, U.S. Attorney Weiss was willing to recommend a probationary sentence if Mr. Biden agreed to plead guilty to two misdemeanors for tax-related offenses, accompanied by a broad statement of facts. I agreed to take this offer back to Mr. Biden and discuss it with him.

19.     In the days following that call, the USAO discarded prior NPA and DPA drafts that had been exchanged and substantially rewrote a draft Diversion Agreement, and separately drafted a Plea Agreement for the tax misdemeanors.

20.     On June 1, 2023, AUSA Wolf sent me an email inviting me to meet at the U.S. Attorney's Office in Wilmington on June 2 to work together on the agreements' specific language and provisions. The idea was for the AUSAs and defense counsel to be in the same room with access to U.S. Attorney Weiss, so that the terms could be worked out. A true and correct copy of AUSA Wolf's June 1, 2023, email to Chris Clark is attached hereto as Exhibit H.

21.     On June 2, 2023, co-counsel Matthew Salerno and I went to the U.S. Attorney's Office in Wilmington, where the USAO presented us with its draft of a new Diversion Agreement, along with a draft Plea Agreement. This was the first time that we had seen the USAO's draft

Agreements. Each draft Agreement was accompanied by a broad and lengthy Statement of Facts, each of which had been drafted solely by the USAO in advance of the June 2 meeting. At this meeting, AUSA Wolf expressed the view that it was in Mr. Biden's interest to have broad Statements of Facts included because the scope of immunity (under Paragraph 15 of the Diversion Agreement) would be tied to the Statements of Facts. The Agreement included a more limited immunity provision than I had discussed with AUSA Wolf or that Mr. Biden would accept. Among the revisions, during or shortly after that June 2 meeting, references to tax liability for years 2016 and 2019 were specifically added to the Plea Agreement's Statement of Facts.

22. The AUSAs and we took turns working on the specific language of each Agreement—with AUSA Wolf running the changes by Office leadership, including U.S. Attorney Weiss. No final agreement was reached that day, and the meeting concluded with the AUSAs agreeing that the USAO would work on composing acceptable language on an immunity provision.

23. That same evening (Friday June 2), at or around 9:43 PM EST, I emailed AUSA Wolf, copying my co-counsel, and proposed one revision to Paragraph 15 of the Diversion Agreement (the provision governing immunity): that Paragraph 15 provide that "The United States agrees not to criminally prosecute Biden, outside the terms of this Agreement, for *any federal crimes arising from the conduct generally described in* the attached Statement of Facts (attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day." (Emphasis added.) In the email, I advised AUSA Wolf that it was "very critical for us" that the Diversion Agreement include "[t]his language or its functional equivalent." A true and correct copy of Chris Clark's June 2, 2023, email to AUSA Wolf, copying co-counsel, is attached hereto as Exhibit I.

24. On Monday June 5, 2023, at or around 5:25 PM EST, AUSA Wolf sent me revised

7

drafts of a Plea Agreement, Diversion Agreement, Statements of Facts for both the firearm possession and tax-related affairs, and two Informations (one for the firearm charge and one for the tax misdemeanors).  The USAO's draft Diversion Agreement reflected the version that we had discussed on June 2 in Wilmington but rejected the edits I had proposed in my June 2 email to Paragraph 15.  In the USAO's draft, Paragraph 15 instead provided that "The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for *any federal crimes described in* the attached Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day."  (Emphasis added.)  A true and correct copy of AUSA Wolf's June 5, 2023, email and draft Diversion Agreement to Chris Clark is attached hereto as Exhibit J.

25.     By this point, the USAO had assumed full drafting responsibilities over the various agreements and had proposed a bifurcated set of agreements and told defense counsel that it had to work within this bifurcated agreement structure.  This structure was new to me and my co-counsel and not something we had ever suggested.  Accordingly, AUSA Wolf sent me revised drafts of the Diversion Agreement and Statements of Facts throughout the week of June 5.  A true and correct copy of AUSA Wolf's June 6, 2023, email to Chris Clark is attached hereto as Exhibit K.  A true and correct copy of AUSA Wolf's June 7, 2023, email and redlined Diversion Agreement to Chris Clark is attached hereto as Exhibit L.  A true and correct copy of AUSA Wolf's June 8, 2023, email to Chris Clark, copying AUSA Hudson, is attached hereto as Exhibit M.

26.     At each stage of the negotiation, AUSA Wolf assured me and co-counsel that the format in which the USAO was structuring the resolution would address our concerns and protect Mr. Biden's rights.

27.     Throughout our negotiations and during and after the June 2 meeting, I repeatedly

discussed with AUSAs Wolf and Hudson that a critical and essential component of any plea agreement was a broad immunity provision for Mr. Biden that brought closure and finality to this investigation, and would protect Mr. Biden from being charged for the same conduct by a possible future Trump-led DOJ. They did not disagree.

28. After extensive discussion with AUSA Wolf in which she repeatedly stated that U.S. Attorney Weiss was unwilling to revise the language of the Agreement's immunity provision, I conveyed that if this language could not be revised, we would not have a deal and that it was the most important term in the Agreement that Mr. Biden get finality. Accordingly, I requested to speak directly with U.S. Attorney Weiss, whom I was told was the person deciding the issues of the Agreement. Later that afternoon, on June 6, 2023, I spoke directly with U.S. Attorney Weiss. During that call, I conveyed to U.S. Attorney Weiss that the Agreement's immunity provision must ensure Mr. Biden that there would be finality and closure of this investigation, as I had conveyed repeatedly to AUSA Wolf during our negotiations. I further conveyed to U.S. Attorney Weiss that this provision was a deal-breaker. I noted that U.S. Attorney Weiss had changed the deal several times heretofore, and that I simply could not have this issue be yet another one which Mr. Biden had to compromise. The U.S. Attorney asked me what the problem was with the proposed language, and I explained that the immunity provision must protect Mr. Biden from any future prosecution by a new U.S. Attorney in a different administration. The U.S. Attorney considered the proposal and stated that he would get back to me promptly.

29. Later that same evening on June 6, 2023, at or around 5:47 PM EST, AUSA Wolf emailed me proposed language for the immunity provision that read: "How about this- *The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes **encompassed by** the attached Statement of Facts (Attachment A) and the Statement*

9

*of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day.*" (Emphasis in original.) After speaking with Mr. Biden, I responded to AUSA Wolf that the language she sent me "works" and is suitable for Mr. Biden as well, at which point the Parties had a deal. A true and correct and correct copy of AUSA Wolf's June 6, 2023, email to Chris Clark is attached hereto as Exhibit K.

30. On June 7, 2023, AUSA Wolf emailed me a revised draft of the Diversion Agreement that incorporated the language she had proposed in her June 6 email to me. In that draft, the revised Paragraph 15 provided that "The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes *encompassed by* the attached Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day." (Emphasis added.) A true and correct copy of AUSA Wolf's June 7, 2023, email and redlined Diversion Agreement to Chris Clark is attached hereto as Exhibit L.

31. This language was also reflected in the Diversion Agreement that AUSA Shannon Hanson sent to the Court on June 8, 2023. A true and correct copy of AUSA Hanson's June 8, 2023, email to Judge Noreika is attached hereto as Exhibit N.

32. Consistent with the conversations described above with U.S. Attorney Weiss and with AUSAs Wolf and Hudson wherein I sought closure for Mr. Biden, I conveyed to Mr. Biden that the Agreements drafted and approved by the USAO, and submitted to the Court on June 8, 2023, constituted a final resolution of the investigation of Mr. Biden by the DOJ.

33. Also on June 8, AUSAs Hanson, Wolf, and I began making arrangements for Mr. Biden's initial appearance, as well as getting all the necessary approvals from and reports prepared by Probation and Pretrial Services, including arranging an interview of Mr. Biden with Probation.

10

AUSA Hanson wrote that a hearing was tentatively scheduled for Tuesday, June 13 at 4:00 PM. A true and correct copy of AUSA Hanson's June 8, 2023, email to Judge Noreika is attached hereto as Exhibit N.

34. However, on June 9, 2023, the Courtroom Deputy communicated to AUSA Hanson, Chief U.S. Probation Officer Margaret Bray, and me that the Court would prefer to set the schedule once the documents are filed and the case is opened. A true and correct copy of Mark Buckson's June 9, 2023, email to AUSA Hanson, copying Chris Clark, Margaret Bray, and April Smith, is attached hereto as Exhibit O.

35. On June 19, 2023, at 2:53 PM EST, after I had a phone call with AUSA Hanson indicating I would do so, I emailed AUSA Hanson a proposed press statement to accompany the public release of both Informations that read, in part, "I can *confirm* that the five-year long, extensive federal investigation into my client, Hunter Biden, *has been concluded* through agreements with the United States Attorney's Office for the District of Delaware." (Emphases added.) A true and correct copy of Chris Clark's June 19, 2023, email to AUSA Hanson is attached hereto as Exhibit P.

36. Shortly after that email, I had another phone call with AUSA Hanson, during which AUSA Hanson requested that the language of Mr. Biden's press statement be slightly revised. She proposed saying that the investigation would be "resolved" rather than "concluded." I then asked her directly whether there was any other open or pending investigation of Mr. Biden overseen by the Delaware U.S. Attorney's Office, and she responded there was not another open or pending investigation. Thereafter, at 4:18 PM EST that day, I sent AUSA Hanson a revised statement that read: "With the announcement of two agreements between my client, Hunter Biden, and the United States Attorney's Office for the District of Delaware, it is *my understanding* that the five-year

11

investigation into Hunter *is resolved*." (Emphases added.) The new statement revised the language from "concluded" to "resolved," a stylistic change that meant the same thing. A true and correct copy of Chris Clark's June 19, 2023, email to AUSA Hanson is attached hereto as Exhibit Q.

37. Section I of Diversion Agreement defined the "Parties" to be the United States of America, by and through the U.S. Attorney's Office for the District of Delaware, and Mr. Biden himself. At no point during the negotiations, drafting, or filing of the Diversion Agreement was there any discussion that the Probation Officer was a Party to the Diversion Agreement.

38. In accordance with its language and the communications I had with the USAO, the Diversion Agreement was not conditioned on a guilty plea with respect to the tax-related charges and would be effective regardless of whether a guilty plea was ultimately accepted and regardless of any sentence ultimately imposed by the Court with regard to the tax misdemeanors.

39. On June 19, 2023, at or around 12:45 PM EST, AUSA Hanson emailed me, copying Special AUSAs Leo Wise and Derek Hines and AUSA Benjamin Wallace (none of whom had been involved in the prior negotiations), attaching final copies of the agreements and Informations. A true and correct copy of AUSA Hanson's June 19, 2023 email to Chris Clark, copying U.S. Attorney Weiss and AUSAs Wise, Hines, and Wallace, is attached hereto as Exhibit R.

40. On June 20, 2023, pursuant to the Agreement reached by the Parties, Special AUSA Wise filed two Informations with the Court.

41. On July 19, 2023, prior to Mr. Biden's scheduled appearance in Wilmington on July 26, 2023, after he had been contacted and interviewed by the Probation Office, Chief U.S. Probation Officer Margaret Bray approved the Diversion Agreement and issued a copy of Mr. Biden's Pretrial Diversion Report, which Terri Kilgoe emailed to me and AUSAs Wallace, Wise, and Hines (copying Ms. Bray) that same day. Ms. Bray's signed cover letter and Report (dated

July 19, 2023) included Probation's approval of diversion for Mr. Biden in this case and stated: "*The United States Probation Office recommends the defendant as a candidate for a 24-month term of Pretrial Diversion.*" A redacted copy of Terri Kilgoe's July 19, 2023, email to Chris Clark, Benjamin Wallace, Leo Wise, Derek Hines, and Margaret Bray, attaching Hunter Biden's Pretrial Diversion Report dated July 19, 2023 and signed by Ms. Bray, is attached hereto as Exhibit S.

42. On July 20, 2023, the USAO, Probation, and I made final revisions to specifically conform the Diversion Agreement to Probation's July 19 report. AUSA Wallace then emailed the final copy of the Agreement to the Court on July 20, 2023, at 4:07 PM EST (copying me, Ms. Bray, and AUSAs Hanson, Wise, and Hines), and he stated in his email: "[t]he parties and Probation *have agreed* to revisions to the diversion agreement to more closely match the conditions of pretrial release that Probation recommended in the pretrial services report issued yesterday." (Emphasis added.) A true and correct copy of AUSA Wallace's July 20, 2023 email to the Court's Deputy is attached hereto as Exhibit T.

43. The Diversion Agreement that AUSA Wallace sent to the Court on July 20, 2023 reflected the final agreement of the "parties and Probation," which followed Probation's approval of Mr. Biden's placement in a 24-month pretrial diversion program, and was the exact same version that AUSA Wise, Mr. Biden, and I signed in Court on July 26, 2023. An executed copy of the Diversion Agreement, dated July 26, 2023, can be found on this case's docket at ECF 24-1.

44. As of July 26, 2023, the Diversion Agreement was thus both approved and executed by the Parties required for that Agreement with the approval of the Chief U.S. Probation Officer.

45. At no time following the execution of the Diversion Agreement did Mr. Biden agree to rescind the Agreement, nor authorize me to do so.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 10, 2023.

>Respectfully submitted,
>
>/s/ *Christopher J. Clark*
>Christopher J. Clark