Exhibit N

| | |
|---|---|
| **From:** | Hanson, Shannon (USADE) |
| **To:** | Judge Maryellen Noreika |
| **Cc:** | Christopher Clark; Margi Bray |
| **Subject:** | [EXTERNAL EMAIL] Regarding |
| **Date:** | Thursday, June 8, 2023 7:43:50 PM |
| **Attachments:** | RHBiden GunDiversion and exh a.pdf |
| | RHBiden combined tax plea ex1 attA.pdf |
| | RHBiden Tax Information.pdf |
| | RHBiden Gun Information.pdf |

Dear Judge Noreika:

Our sincere apologies for the delay in getting these draft documents to you for review. We have been working diligently today with defense counsel, Mr. Christopher Clark, cced above, to finalize their content.  The attached are in final form, with exception of the signature blocks.

Accordingly, please find:

**Tax**:

- An Information charging two misdemeanor tax offenses, in violation of Title 26, United States Code, Section 7203
- A Memorandum of Plea Agreement for the tax offenses, including a standard Attachment A and a Statement of Facts (Exhibit 1).

**Firearm:**

- An Information charging one gun offense, in violation of 18 U.S.C. Section 922(g)(3).
- A Pretrial Diversion Agreement for the gun offense, including a Statement of Facts (Attachment A).

We anticipate filing the signed documents with the Court on Tuesday.

You will notice that the Pretrial Diversion Agreement contemplates approval by the U.S. Probation and Pretrial Services Office.  We have been speaking with Margi Bray, Chief U.S. Probation Officer. Through her diligence, we hope to have the requisite pretrial diversion report completed prior to the hearing, currently tentatively scheduled for Tuesday, June 13th at 4:00 p.m.

We are available at the call of the Court.

Respectfully submitted,

Shannon Hanson

*Shannon T. Hanson*
*First Assistant U.S. Attorney*
*U.S. Attorney's Office for the District of Delaware*
*1313 N. Market Street, Suite 400*

*Wilmington, DE 19801*

*302 573 6669 (desk)*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Action No. 23- |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |

**DIVERSION AGREEMENT**

I.   <u>PARTIES</u>

This Diversion Agreement (the "Agreement") is entered into between the United States of America, by and through the United States Attorney's Office for the District of Delaware, and Robert Hunter Biden ("Biden"), collectively referred to herein as "Parties," by and through their authorized representatives.

II.   <u>TERMS AND CONDITIONS OF DIVERSION AGREEMENT</u>

1.   The term of this Agreement shall be twenty-four (24) months, beginning on the date of approval of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14. Obligations hereunder survive the term of this Agreement only where this Agreement expressly so provides.

2.   The twenty-four (24) month period following the execution and approval of this Agreement shall be known as the "Diversion Period."

3.   Biden shall waive indictment and agree that the United States will file an information (hereinafter "the Information") in the United States District Court for the District of Delaware, charging Biden with one count of knowingly possessing a

firearm while then an unlawful user of or person addicted to a controlled substance, in violation of Title 18, United States Code, Section 922(g)(3).

4.     The United States agrees that if Biden complies with all of his respective obligations under this Agreement, then the United States, within thirty (30) days after the expiration of the Diversion Period, will file a motion with the Court seeking the dismissal of the Information.

5.     Biden agrees that the United States has probable cause to bring the charges in the Information, and that the charges are not frivolous or made in bad faith. Biden also agrees that if at a future time the United States should move to dismiss the Information pursuant to this Agreement, Biden would not be a "prevailing party" with regard to the Information. Biden further waives any possible claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this case.

6.     In light of the fact that Biden has accepted responsibility for the actions referenced in the Statement of Facts as set forth in the attached Attachment A (hereinafter "Statement of Facts (Attachment A)", and taking into consideration Biden's candid acknowledgment of his historical drug use as well as his current sobriety, and in consideration for the other terms recited herein, the United States shall divert this matter in the manner set forth in this Agreement pursuant to the terms and conditions set forth herein.

7.     Biden agrees to waive all defenses based on the statute of limitations with respect to the charge set forth in the Information and any other federal firearms

charges that could be brought with respect to the conduct set forth in the Statement of Facts (Attachment A) and agrees that the applicable statute of limitations period for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A) shall be tolled during the Diversion Period. Biden further agrees not to assert any right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, or Title 18, United States Code, Section 3161, or Federal Rule of Criminal Procedure 48(b), or any local rule of the District of Delaware, with respect to the Information.

8.    It is the intent of this Agreement for Biden to agree to be subject to the jurisdiction of, and venue in, the United States District Court for the District of Delaware with respect to the charge set forth in the Information, and for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A).

<u>Commitments and Undertakings of Mr. Biden</u>

9.    It is understood that under the terms of this Agreement, Biden shall:

a.  Not purchase, possess, or attempt to purchase or possess, or otherwise come into possession of, a firearm (as that term is defined by Title 18, United States Code, Section 921(a)(3)), during the Diversion Period or at any time thereafter; and

b.  Consent to a permanent entry in the National Instant Criminal Background Check System ("NICS"), such that he will be denied via NICS if he attempts to legally purchase another firearm.

<u>Additional Conditions Applicable to Diversion Period</u>

10.     Without limiting or otherwise modifying any of the Commitments and Undertakings set forth in the preceding paragraph, it is further understood that during the Diversion Period, Biden shall:

  a.  Be subject to pretrial diversion supervision as directed by the U.S. Probation and Pretrial Services Office in this District.

  b.  Refrain from unlawfully consuming or possessing any controlled substance and be subject to drug-testing on a periodic basis as determined by the United States Probation and Pretrial Services Office.

  c.  Not commit a violation of any federal, state, or local law.

<u>Statement of Facts</u>

11.     Biden acknowledges and agrees that the Statement of Facts as set forth in Attachment A, is truthful and accurate.

12.     Biden agrees that he shall not, himself or through any agent or representative, make any statement, in litigation or otherwise, repudiating or contradicting the Statement of Facts (Attachment A) associated with this Agreement. Any contradictory statement by Biden, or by an agent for Biden, shall constitute a violation of this Agreement. If the United States believes such a contradictory statement has been made and that such statement constitutes a knowing material breach of this Agreement, then the United States may seek a determination regarding such alleged breach pursuant to the procedures set forth in paragraph 14, below.

4

Breach of Agreement

13.    Biden agrees that a knowing failure to abide by or fully perform any of the terms, promises, or agreements set forth in this Agreement shall constitute a breach of this Agreement.

14.    If the United States believes that a knowing material breach of this Agreement has occurred, it may seek a determination by the United States District Judge for the District of Delaware with responsibility for the supervision of this Agreement.  Upon notice to Biden, the United States may seek a determination on a preponderance of the evidence presented to such District Judge.  Biden shall have the right to present evidence to rebut any such claim in such proceeding.  If after that process the judge overseeing such process makes a final determination that Biden committed a knowing material breach of this Agreement, then the United States may elect from the following remedies depending on the nature and seriousness of the breach:

a.  **Remedy 1** – The United States may give Biden a specific time period in which to remedy the breach. If the United States determines that Biden has failed to remedy the breach during the specified time period, then the United States may elect Remedy 2 below.

b.  **Remedy 2** – The United States may prosecute Biden for any federal criminal violation of which the United States has knowledge, including crimes related to the conduct set forth in the Statement of Facts (Attachment A), perjury; and obstruction of justice; and any such prosecution that is not time-barred by the applicable statute of limitations

on the date of the signing of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution.  The United States is not required to offer Remedy 1 before proceeding to Remedy 2 if, in its sole determination, the nature and seriousness of the breach warrants termination of this Agreement.

Agreement Not to Prosecute

15.    The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes encompassed by the attached Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day.  This Agreement does not provide any protection against prosecution for any future conduct by Biden or by any of his affiliated businesses.

General Terms and Conditions

16.    All parties consent to the public disclosure of this Agreement. The parties agree that this Agreement, the attached Statement of Facts (Attachment A), the Information, and any order related thereto shall be publicly filed in the United States District Court for the District of Delaware.

17.    The parties stipulate and agree that the conduct set forth in the Statement of Facts (Attachment A) does not constitute relevant conduct pursuant to U.S.S.G. § 1B1.3 to the offenses arising under Title 26 of the United States Code as set forth in the Information filed in a separate case matter this same day.

18.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

19.    This Agreement sets forth all of the terms of the Agreement between the United States and Biden. It constitutes the complete and final agreement between the United States and Biden in this matter. There are no other agreements, written or otherwise, modifying the terms, conditions, or obligations of this Agreement. No future modifications of or additions to this Agreement, in whole or in part, shall be valid unless they are set forth in writing and signed by the United States, Biden, and Biden's counsel.

In   Witness   Whereof,   the   Parties,   through   their   duly   authorized representatives, hereunder set their hands.

ON BEHALF OF THE UNITED STATES OF AMERICA


BY:   _____

DAVID C. WEISS
United States Attorney

Dated:


ON BEHALF OF ROBERT HUNTER BIDEN



BY:   _____   BY:   _____

Robert Hunter Biden   Christopher Clark, Esq.
Defendant   Attorney for Robert Hunter Biden



Dated:



APPROVED BY:



_____

Margaret M. Bray
Chief, United States Probation Officer,
District of Delaware

Dated:


8

# ATTACHMENT A

# STATEMENT OF FACTS

Robert Hunter Biden ("Biden") began using crack and powder cocaine in or around October 2016, became a habitual user in 2017, and continued to use frequently and regularly through approximately May 2019.  During that time, he enrolled in multiple in- and outpatient rehabilitation programs with varying degrees of temporary success but did not achieve long-term sobriety.  Instead, his drug use overall escalated.

Biden moved to California in the spring of 2018, where he used crack cocaine on a regular basis, at times as frequently as every 15 minutes.  He enrolled in an additional rehabilitation program in California from August 16-27, 2018, and then lived with a sober companion from August 27-September 2, 2018.  He relapsed shortly thereafter, and his crack cocaine use continued when he returned to the East Coast in the fall of 2018.

On October 12, 2018, Biden visited StarQuest Shooters & Survival Supply, a federally licensed firearms dealer in Wilmington, Delaware.  He purchased a Colt Cobra 38SPL revolver with serial number RA 551363 (the "Firearm"), along with several other items, including an HKS speed loader for theFirearm and a box of ammunition.

When he purchased the Firearm, Biden completed an ATF Form 4473, which required him to answer the question "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?"  Biden answered "No," even though he was a user of, and addicted to, crack cocaine at the time.  Biden certified that his "answers in Section A" were "true, correct, and complete," and that he understood that a person who answers "yes" to that question is "prohibited from purchasing or receiving a firearm."

Biden possessed the Firearm from October 12-23, 2018.  During that time, he purchased and used crack cocaine regularly.  On October 23, 2018, the Firearm was found in Biden's vehicle along with drug remnants and paraphernalia.  The Firearm was subsequently discarded in a trashcan outside Janssen's Market in Greenville, Delaware and later recovered by law enforcement.

USAO Rev. 10/22

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| Defendant. | ) |

Criminal Action No. 23-

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to discussions between the United States of America, by and through its attorney, David C. Weiss, United States Attorney for the District of Delaware, and the defendant, Robert Hunter Biden, by and through his attorney, Christopher Clark, Esquire, the following agreement is hereby entered into by the respective parties:

1.     The defendant shall waive indictment and venue and plead guilty in the United States District Court for the District of Delaware to:   Counts One and Two of the Information, which charge the defendant with willful failure to pay tax, in violation of Title 26, United States Code, Section 7203.

2.     The defendant understands that the maximum penalties for each of Counts One and Two are:   12 months of imprisonment; a $100,000 fine or twice the gross gain or loss from the offense, whichever is greater; 1 year of supervised release; restitution; a $25 special assessment; and the costs of prosecution, which the parties stipulate to be zero.

3.     The defendant understands that if there were a trial with regard to Counts One and Two the government would have to prove the following elements beyond a reasonable doubt:   (1) the defendant had a duty to pay a tax; (2) the tax

was not paid at the time required by law; and (3) the failure to pay was willful.   The defendant knowingly, voluntarily, and intelligently admits his guilt to each of the above-described elements of Counts One and Two.   The defendant further admits to the information contained in the Statement of Facts, attached to this Memorandum as Exhibit 1.

4.   The defendant is pleading guilty to Counts One and Two because he is, in fact, guilty.

5.   Pursuant to Section 6B1.4 of the November 1, 2021, edition of the United States Sentencing Guidelines Manual ("U.S.S.G."), the parties enter into the following stipulations:

   a.   Pursuant to U.S.S.G. § 2T1.1, the amount of loss as to Counts One and Two, including relevant conduct as defined in U.S.S.G. § 1B1.3, is no less than $1,199,524.00 and no greater than $1,593,329.00;

   b.   The conduct set forth in the Statement of Facts (Attachment A) to the Diversion Agreement filed this same day does not constitute relevant conduct pursuant to U.S.S.G. § 1B1.3; and

   c.   Provided that the United States does not subsequently learn of conduct by the defendant inconsistent with the acceptance of responsibility, the United States agrees that in consideration of the defendant's timely guilty plea, it will not oppose a two-level

2

reduction in the Offense-Level pursuant to U.S.S.G. § 3E1.1(a). Further, should it be determined that the defendant's Offense Level is 16 or greater prior to the application of the aforementioned two-level reduction, the United States agrees that the defendant's Offense Level should be reduced by one additional level, pursuant to U.S.S.G. § 3E1.1(b), for a total reduction of three levels.

It is understood and agreed that: (1) these stipulations are not binding upon either the Probation Office or the Court; and (2) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed.

6.      For reasons to be articulated at or near the time of sentencing, the United States will recommend a sentence of probation.

7.      The United States retains the right to defend the rulings of the District Court at any subsequent proceeding.

8.      The defendant understands that the District Court must consider the United States Sentencing Guidelines, the applicable statutory maximum penalties, and the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence.   The defendant understands that the ultimate determination of an appropriate sentence will be up to the sentencing judge.   The Court may impose a

3

sentence that exceeds, falls below, or is contained within the sentencing range prescribed by the Sentencing Guidelines. The defendant expressly acknowledges that if the Court imposes a sentence outside the range set forth in the Sentencing Guidelines, is otherwise different than the defendant expected, or is contrary to the recommendation of his attorney or the United States, the defendant will not be allowed to withdraw his guilty plea on that basis.

9.     In exchange for the promises made by the government in entering this plea agreement, the defendant knows that he has, and voluntarily and expressly waives, the right to appeal or collaterally attack his conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.   Notwithstanding the foregoing, the defendant reserves the right to (1) file an appeal or other collateral motion on the grounds that he received ineffective assistance of counsel, and (2) appeal his sentence if:   (a) the government appeals from the sentence; (b) the defendant's sentence exceeds the statutory maximum for the offense set forth in the United States Code; or (c) the District Court imposes an "upward variance" above the final Sentencing Guideline range that it determines at sentencing.

10.     The defendant agrees to pay the $50 special assessment the day of sentencing.

11.     This Memorandum expressly incorporates Attachment A, which is attached hereto and filed under seal.   In accordance with the June 30, 2016 Standing Order of the Court (https://www.ded.uscourts.gov/sites/ded/files/general-orders/Standing%20Order%20Criminal%20Cases.pdf), the government routinely files such an attachment, even though it may or may not contain additional terms. To the extent, however, that Attachment A contains additional terms, the parties acknowledge and agree to be bound by those terms.

12.     Pursuant to 18 U.S.C. §§ 3663 and 3663A, the defendant agrees to the entry of a Restitution Order for the full amount of the victim's losses attributable to the defendant's activities as ordered by the Court, which is expected to be:   $0.00, because the self-assessed tax due at the time of filing and associated interest and penalties have been paid to the Internal Revenue Service by a third-party on behalf of the defendant.   The defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw his guilty plea.   The parties further understand that should the Internal Revenue Service determine there are additional taxes due and owing for tax years 2014-2019, they are not subject to the terms of this agreement.   For purposes of this Memorandum, the sole victim of Count One and Count Two is the United States Treasury.

////

5

13.     It is further agreed by the undersigned parties that this Memorandum and Exhibit 1 – together with sealed Attachment A – supersedes all prior promises, representations, and statements of the parties; that this Memorandum may be modified only in writing signed by all the parties; and that any and all promises, representations, and statements made prior to or after this Memorandum are null and void and have no effect whatsoever, unless they comport with the subsequent written modification provisions of this paragraph.


_____                    _____
Christopher Clark, Esquire                  David C. Weiss
Attorney for Defendant                      United States Attorney


_____
Robert Hunter Biden, Defendant

Dated:


    **AND NOW**, this _____ day of _____, 2023, the foregoing Memorandum of Plea Agreement is hereby (accepted) (rejected) by this Court.


                            _____
                            THE HONORABLE MARYELLEN NOREIKA
                            UNITED STATES DISTRICT JUDGE

**EXHIBIT 1**

At all times relevant to the instant information, the defendant, Robert Hunter Biden ("Biden") was an attorney and businessman with lucrative domestic and international business interests. From 2017 to 2019, he served on the board of a Ukrainian energy company and a Chinese private equity fund. He further negotiated and executed contracts for business and legal services that paid millions of dollars of compensation to him and/or his domestic corporations, Owasco, PC and Owasco, LLC. Through at least early 2017, he also was employed by a prestigious multi-national law firm in an "of counsel" capacity. For this work, he earned substantial income, totaling more than $2.3 million in 2017 and $2.1 million in 2018.

Biden also has a well-documented and long-standing struggle with substance abuse. Following the death of his brother in 2015, Biden relapsed and over time progressed from alcohol to abusing illegal drugs, including crack cocaine in 2016. This contributed to the collapse of his marriage, with his divorce finalized in March 2017, as well as the collapse of his most significant professional relationship in Fall 2017. Nonetheless, in 2017, despite his addiction, Biden successfully entered into business ventures and landed legal clients, earning millions of dollars. By his own telling in a memoir published in 2021, Biden's substance abuse worsened in 2018 that included a move to Los Angeles and a "spring and summer of nonstop debauchery." Even during this period, however, Biden continued to earn money and exercise control over his personal and corporate finances.

Federal income tax returns and payments are due on or about April 15 of each year for the prior calendar year. Biden, like many other taxpayers, routinely requested an automatic extension to file his returns, pushing the due date for a tax return to on or about October 15. An extension of time to file a return, however, does not extend the deadline for payment of taxes, which remain due on the April filing date.

During calendar year 2017, Biden earned substantial income, including: just under $1 million from a company he formed with the CEO of a Chinese business conglomerate; $666,666 from his domestic business interests; approximately $664,000 from a Chinese infrastructure investment company; $500,000 in director's fees from a Ukrainian energy company; $70,000 relating to a Romanian business; and $48,000 from the multi-national law firm.

Through tax year 2017, Biden worked with a DC/Maryland-based accountant to prepare his individual and corporate tax returns. In 2018, this accountant (who died in 2019) prepared Biden's 2017 corporate and individual income tax returns and throughout the fall repeatedly attempted to provide them to Biden for review and signature. These efforts included directly contacting Biden, reaching out to his administrative assistant, and by sending copies to his former business partner. The

former business partner reviewed the returns and sent several emails to Biden in which he commented on their substance and reminded Biden of his filing obligations. The former business partner left the final returns for Biden at Biden's office. Despite these actions, Biden neither signed nor submitted the individual or corporate income tax returns to the Internal Revenue Service.

Not only did the accountant timely prepare Biden's individual and corporate tax returns, the accountant repeatedly encouraged Biden to timely pay the taxes associated with the 2017 tax returns. Beginning in April 2018 and continuing into October 2018, the accountant advised Biden to make his tax payments, noting approximately $600,000 owed by Biden personally and an additional $204,000 owed by Owasco, PC. Biden told the accountant he could pay $25,000 in April 2018 towards his taxes, but no such payment was made to the Internal Revenue Service. His large tax liability stemmed in part from the fact that over the course of 2017, Biden began withdrawing substantial funds outside of Owasco, PC's established payroll system, which had been created, in part, to ensure that Biden had sufficient withholdings to timely pay any outstanding tax liability. The end of year liability should not have come as a surprise. At the time of those withdrawals, Biden's business partner advised him that these transfers, made without withholding, would result in a significant tax liability at year end.

Despite his large outstanding tax liability and profligate spending, on or about April 17, 2018, the due date for 2017 tax payments, Biden did, in fact, have the funds available to pay his outstanding 2017 tax liability for both his personal and corporate returns. On or about March 22, 2018, Biden received a $1,000,000 payment into his Owasco, LLC bank account as payment for legal fees for Patrick Ho and $939,000 remained available as of tax day. Over the next six months Biden would spend almost the entirety of this balance on personal expenses, including large cash withdrawals, transfers to his personal account, travel, and entertainment.

Biden continued to earn handsomely and spend wildly in 2018. He received a little over $2.6 million in business and consulting fees from the company he formed with the CEO of a Chinese business conglomerate and the Ukrainian energy company. However, without the structure of a stable business partner and still in the throes of addiction, Biden essentially ignored his tax obligations, withholding only approximately $38,465, less than 6% of the taxes owed. Tax returns and filings for tax year 2018 were due on April 15, 2019. On that date, Biden traded emails with his DC accountant and his attorney about seeking an extension. The accountant advised Biden of his obligation to make a tax payment on that date, irrespective of the extension to file a return. Ultimately, the extension was filed, making the return due on October 15, 2019. Biden, however, paid nothing. As with tax year 2017, at the time his 2018 tax payment was due, Biden continued to have substantial income and the ability to pay his tax liability, having received payments totaling

approximately $758,000 during March and April 2019.  By late May, Biden had spent almost the entire sum on personal expenses, including large cash withdrawals, payments to or on behalf of his children, credit card balances, and car payments for his Porsche.

After numerous programs and trips to rehab, Biden got sober in May 2019, the same month he married his current wife.  He has remained sober since.  Biden remained in California and spent much of Summer 2019 painting and developing plans for his memoir, which he began working on through the fall and into the winter.  During the summer of 2019, he was sued in two different domestic-relations lawsuits, both seeking payment of support obligations.  He still did not, however, make preparations to file or actually file either his 2018 individual or corporate income tax returns on or about October 15, 2019, the extension due date.

In or around November 2019, Biden engaged a California accountant to prepare his individual and corporate income tax returns for 2017 and 2018.  The California accountant began gathering materials and started preparing Biden's 2017 and 2018 returns in early 2020.  By that time, the domestic-relations lawsuits had progressed, and having failed to do so previously, Biden was under court order to provide his tax returns or face potential sanctions, including imprisonment.  On or about January 27, 2020, Biden signed a representation letter for the California accountants, averring that he was providing the accountants with truthful and accurate information and acknowledging his responsibility for the accuracy of those tax returns.  Over the days that followed, Biden participated in a series of meetings with the California accountants and identified business and personal expenses in connection with his tax returns.  During this process, Biden miscategorized certain personal expenses as legitimate business expenses, resulting in a reduction in his tax liability.  At the same time, the California accountants overreported Biden's income, which partially offset this reduction.

On or about February 18, 2020, Biden filed his individual and corporate income tax returns with the Internal Revenue Service for tax years 2017 and 2018.  On his 2017 Form 1040, Biden reported $2,376,436.00 in total income and a self-assessed tax due of $710,598.00, of which $125,909.00 was timely paid, leaving a balance due and owing of $581,713.00.  On his 2017 Form 1120 for Owasco, PC, Biden reported gross receipts $2,698,041.00 and a self-assessed tax due and owing of $13,630.00.  On his 2018 Form 1040 Biden reported $2,187,286.00 in total income and a self-assessed tax of $659,366.00, of which $38,465.00 was timely paid, leaving a balance due and owing of $620,901.00.  No additional payment was included at the time of filing.  On his 2018 Form 1120 for Owasco, PC, Biden reported gross receipts $2,659,014.00 and a self-assessed tax due and owing of $4,247.00.

Approximately a year and a half later, on or about October 18, 2021, a third party paid the Internal Revenue Service $955,800.00 to cover Biden's self-assessed individual tax liability with interest and penalties for tax year 2017 and $956,632.00 to cover Biden's self-assessed individual tax liability with interest and penalties for tax year 2018.

Tax Years 2016 and 2019

In addition, in or around February 2020, Biden's California accountants discovered that Biden's 2016 Form 1040 had not been filed. The return was originally prepared in or around October 2017 and showed $15,520.00 in taxes due and owing. Though it was delivered to Biden at Biden's office, this return was not filed with the Internal Revenue Service. After learning in 2020 that the Form 1040 for 2016 remained unfiled, Biden filed a Form 1040 on June 12, 2020. For tax year 2016, Biden reported $1,580,283.00 in total income and a self-assessed tax due of $492,895.00 of which $447,234.00 was timely paid, leaving a balance due and owing of $45,661.00. Biden did not include a payment with this return. On or about October 18, 2021, this liability, plus accrued interest and penalties, was also fully paid by a third party.

After seeking an extension, Biden timely filed his 2019 Form 1040 on or about October 15, 2020. He did not, however, pay his estimated tax due when filing for an extension as required by law. For tax year 2019, Biden reported $1,045,850.00 in total income and a self-assessed tax due and owing of $197,372.00. On October 18, 2021, this liability, plus accrued interest and penalties, was also fully paid by the same third party.

## **ATTACHMENT A**
## **FILED UNDER SEAL**

There are no additional terms.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 23- |
| | ) | |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |

## INFORMATION

The United States Attorney for the District of Delaware charges that:

## COUNT ONE

During the calendar year 2017, Robert Hunter Biden, defendant herein, who was a resident of the District of Columbia, had and received taxable income in excess of $1,500,000.00 on which taxable income there was owing to the United States of America an income tax in excess of $100,000.00.  He was required by law to pay, on or before April 17, 2018, that income tax to the Internal Revenue Service Center, at Hartford, Connecticut, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue.  Well knowing and believing all of the foregoing, ROBERT HUNTER BIDEN did willfully fail, on or about April 17, 2018, in the District of Columbia and elsewhere, to pay the income tax due.

In violation of Title 26, United States Code, Section 7203.

## COUNT TWO

During the calendar year 2018, Robert Hunter Biden, defendant herein, who was a resident of the District of Columbia, had and received taxable income in excess

of $1,500,000.00 on which taxable income there was owing to the United States of America an income tax in excess of $100,000.00.  He was required by law to pay, on or before April 15, 2019, that income tax to the Internal Revenue Service Center, at Hartford, Connecticut, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue.  Well knowing and believing all of the foregoing, ROBERT HUNTER BIDEN did willfully fail, on or about April 15, 2019, in the District of Columbia and elsewhere, to pay the income tax due.

      In violation of Title 26, United States Code, Section 7203.


                                  _____

                                    DAVID C. WEISS
                                    United States Attorney


Dated:  June 13, 2023

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,    )
                                       )
           v.                  )   Criminal Action No. 23-
                                       )
ROBERT HUNTER BIDEN,      )
                                       )
            Defendant.    )

## INFORMATION

The United States Attorney for the District of Delaware charges that:

## COUNT ONE

On or about October 12, 2018, through on or about October 23, 2018, in the District of Delaware, the defendant Robert Hunter Biden, knowing that he was an unlawful user of and addicted to a controlled substance as defined in Title 21, United States Code, Section 802, did knowingly possess a firearm that is, a Colt Cobra 38SPL revolver with serial number RA 551363, said firearm having been shipped and transported in interstate commerce,

In violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(2).

 

_____

DAVID C. WEISS
United States Attorney

Dated:  June 13, 2023

1