# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN |
| ROBERT HUNTER BIDEN, | ) |
| Defendant. | ) |

## MR. BIDEN'S MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO CHARGE A CONSTITUTIONALLY PERMISSIBLE OFFENSE

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

## INTRODUCTION

The prosecution charges that Mr. Biden violated a rarely used statute that it claims prevented him from owning a firearm as an unlawful user of a controlled substance, 18 U.S.C. § 922(g)(3), but that statute's status-based prohibition on gun ownership recently was struck down as unconstitutional under the Second Amendment. *See United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023). Not only does the unconstitutionality of Section 922(g)(3) render Mr. Biden's alleged violation of that unconstitutional statute baseless, it compels the same conclusion as to the prosecution's charges that Mr. Biden made a false statement in denying his status as a user of a controlled substance under 18 U.S.C. § 922(a)(6) and caused the seller (a holder of a federal firearms license) to maintain a record of this false answer in violation of 18 U.S.C. § 924(a)(1)(A).

Because persons protected by the Second Amendment can no longer be denied gun ownership due simply to past drug use—a practice inconsistent with this nation's historical tradition on firearm regulation—any false statement by Mr. Biden concerning his status as having used a controlled substance no longer concerns "any fact material to the lawfulness of the sale" of a firearm. 18 U.S.C. § 922(a)(6). Quite simply, asking about Mr. Biden's status as a user of a controlled status is constitutionally irrelevant to whether he can be denied his Second Amendment right to gun ownership. Likewise, Section 924(a)(1)(A)'s requirements concerning maintaining records free of false information is no longer implicated because it is not a statute that "criminalizes a false answer to an ultra vires question." *Abramski v. United States*, 573 U.S. 169, 206 (2014) (Scalia, J., dissenting).

1

**ARGUMENT**

I.   **SECTION 922(G)(3) IS AN UNCONSTITUTIONAL PROHIBITION ON GUN OWNERSHIP THAT VIOLATES THE SECOND AMENDMENT**

Gun control is a politically charged topic, and the scope of permissible gun control laws consistent with the Second Amendment has been a divisive legal issue among scholars, but the Supreme Court in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), recently adopted a test for evaluating the constitutionality of restrictions on the possession of firearms that resolve many of those issues.  The Supreme Court held that an individual's right to possess a handgun is "presumptively" protected by the Second Amendment.  *Id.*  If a government, state or federal, seeks to restrict that right, the Supreme Court explained:

> the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Id.* at 2126 (citation omitted).  The Court emphasized that the relevant timeframe for evaluating this "historical tradition" is the period before the Second Amendment was adopted because "it has always been widely understood that the Second Amendment . . . codified a *pre-existing* right." *Id.* at 2127 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis and alterations in *Bruen*).

Just recently, the Fifth Circuit applied the new *Bruen* framework to Section 922(g)(3)'s prohibition on gun ownership by persons who is a user of or addicted to controlled substances,[1]

---

[1] The Third Circuit explains: "The term 'unlawful user' is not otherwise defined in the statute, but courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use." *United States v. Augustin*, 376 F.3d 135, 138 (3d Cir. 2004) (quoting *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003)).  Thus, "Congress intended the statute to cover unlawful drug use at or about the time of the possession of the firearm. . . . [O]ne must be an unlawful user at or about the time he

2

the same statute at issue in Mr. Biden's case, and it had no difficulty finding the statute unconstitutional. In truth, the statute is indefensible under the *Bruen* framework. *Daniels* appropriately recognized that the Framers were well aware of the problems caused by intoxication, but there is no historical precedent for prohibiting gun ownership by persons who had any history of ingesting intoxicating substances. Rather, the problems associated with intoxication were addressed by prohibiting certain conduct *while* intoxicated. *Daniels*, 77 F.4th at 345.

Given the lack of any historical precedent for disarming citizens based on their status of having used a controlled substance, the fact that Section 922(g)(3) violates the Second Amendment is inevitable under the *Bruen* framework. As the Fifth Circuit explained, prior to *Bruen*, courts would have addressed the issue of whether any defined class of people could be disarmed by examining whether that class of persons is sufficiently dangerous to justify disarming them. *Id.* at 353. "But *Bruen* foreswears that kind of review," the Fifth Circuit explained, "*Bruen* heads that analysis off at the pass." *Id.* While Congress could criminalize gun possession from someone who was actively intoxicated, or perhaps someone who at least actively had a controlled substance in their body, a prohibition on gun ownership by anyone who had at some time used a controlled substance is constitutionally overbroad under *Bruen*.[2]

Since *Bruen*, other similar status-based prohibitions on gun ownership have been found unconstitutional. The Fifth Circuit, for example, struck down another provision of Section 922—

---

or she possessed the firearm and that to be an unlawful user, one needed to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm." *Id.* at 138–39.

[2] Even before *Bruen*, this statute was rarely used to charge anyone, particularly absent other more serious charges, because it would be absurd to apply it literally. Roughly half of American adults, for example, have tried marijuana, and there would be a staggering number of felons in the United States if all those who did later come into possession of a firearm were prosecuted under Section 922(g)(3). *See* Jeffrey M. Jones, *Nearly Half of U.S. Adults Have Tried Marijuana*, Gallup (Aug. 17, 2021), https://news.gallup.com/poll/353645/nearly-half-adults-tried-marijuana.aspx.

922(g)(8)—which prohibited persons under a domestic violence restraining order from possessing a firearm. *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023). That statute targets individuals that a court already has identified as potentially violent (in issuing a restraining order)—something Section 922(g)(3) does *not* do—and yet it did not pass constitutional muster. Although the statute had previously been upheld by that court, the Fifth Circuit found that "*Bruen* requires us to re-evaluate our Second Amendment jurisprudence" and overrule its prior case law because there was no historical precedent for such a prohibition when the Second Amendment was adopted. *Id.* at 448; *see also Baird v. Bonta*, 81 F.4th 1036, 1047 (9th Cir. 2023) (describing *Daniels* favorably).

In doing so, the Fifth Circuit seemed almost apologetic. It began its opinion explaining: "The question presented in this case is *not* whether prohibiting the possession of firearms by someone subject to a domestic violence restraining order is a laudable policy goal." *Rahimi*, 61 F.4th at 448 (emphasis in original). Even though such a prohibition may very well by a favorable evolution in the law, it was not something the Framers would have envisioned as constitutionally permissible under the Second Amendment according to *Bruen*. The Constitution does not make such evolutions impossible, just more difficult through the amendment process, but the country has done it many times when it has been warranted. *See, e.g.*, U.S. Const., amend. IX (extending the right to vote to women), XXVI (lowering voting age from twenty-one to eighteen); *see also Md. Shall Issue, Inc. v. Moore*, 2023 WL 8043827, at *7 (4th Cir. Nov. 21, 2023) (explaining the Constitution can be amended to permit more expansive gun control).

If confronted with this very issue, there is no reason to doubt that the Third Circuit will agree with the Fifth Circuit, the only circuit to have considered the constitutionality of Section 922(g)(3) post-*Bruen*. The *Bruen* framework is clear, and the historical record is immutable and the same before this Court as it was when the Fifth Circuit addressed it.

Already, the Third Circuit, sitting *en banc*, found a similar status-based prohibition in Section 922 unconstitutional in the wake of *Bruen*. *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc). *Range* found that Section 922(g)(1), which prohibited anyone with a felony conviction from possessing a gun, violates the Second Amendment because there was no historical precedent for it when the Second Amendment was adopted. The plaintiff in *Range* was denied a permit to purchase a firearm due to a prior felony conviction for making a false statement about his income when applying for food stamps, and he challenged the constitutionality of the firearm prohibition. The Third Circuit found that application of the statute unconstitutional.[3]

Like the Fifth Circuit, the Third Circuit explained that "*Bruen* abrogated our Second Amendment jurisprudence" and the statute failed to pass muster under the Supreme Court's newly established framework for evaluating such challenges. *Id.* at 101.[4] The Third Circuit explained that the prohibitions on felons possessing firearms was overbroad. Although there was precedent for imposing restrictions on those who had committed violent crimes, there was no precedent for

---

[3] *Range* decided an as-applied challenge under the circumstances of the case, where the felony of making a false statement in seeking food stamps is not probative of a person's propensity for violence. Although the Third Circuit did not reach the broader question of whether Section 922(g)(1) is unconstitutional with respect to other felonies, it is difficult to see how a defendant could validly be convicted under the statute. Even if a more tailored version of the statute could be constitutional with respect to convictions for certain dangerous felonies, there is no way for a person of ordinary intelligence to now discern from the existing statute which felonies are covered, and which are not. Accordingly, in addition to a Second Amendment challenge, any defendant prosecuted under the statute would have a powerful argument that it is "void for vagueness." *Id.* at 118 (Krause, J., dissenting). The same problem would arise under Section 922(g)(3) if it were found unconstitutional in some instances but not others, with people having to wonder which controlled substances are covered, whether it matters when they were used last or how often, or if it matters whether drug use sedated them instead of making them violent.

[4] The Fourth Circuit recently explained that "*Bruen* effected a sea change in Second Amendment law," and overturned Maryland's firearm licensing process due to the delays it imposed on being allowed to lawfully obtain a firearm. *Md. Shall Issue*, 2023 WL 8043827, at *2.

imposing such restrictions on non-violent criminals. *Id.* at 104. Just as not all felons are violent, not all users of controlled substances are either.

There is no reason to believe that the Third Circuit or the Supreme Court will find Section 922(g)(3) constitutional because there is no historical precedent to support its ban on gun possession as *Bruen* requires. *See United States v. Quailes*, 2023 WL 5401733, at *5 n.3 (W.D. Pa. Aug. 22, 2023) (dismissing indictment based on *Range*, noting *Range* is consistent with *Daniels*). Accordingly, the Court should dismiss Count 3.

## II.  THE UNCONSTITUTIONALITY OF SECTION 922(g)(3) REQUIRES THE FALSE STATEMENT AND CAUSING A RECORD TO BE STORED WITH FALSE INFORMATION CHARGES TO BE DISMISSED AS WELL

The prosecution, which had been satisfied before bowing to political pressure to resolve Mr. Biden's 11-day ownership of an unloaded gun with a Diversion Agreement, has now overcharged this case by turning the single act of purchasing a single handgun into three separate felonies: (1) unlawful possession of a firearm (Section 922(g)(3)); (2) making a false statement in purchasing a firearm (Section 922(a)(6)); and (3) causing the seller to retain a record of that same false statement (Section 924(a)(1)(A)). But the charges for falsely checking a box on a form denying being a user of a controlled substance and causing the seller to retain that form with a falsely checked box both fall to the wayside, along with the charge for unlawful possession of a firearm, once Section 922(g)(3) is found unconstitutional. The whole purpose of asking a buyer about his use of controlled substances, and the storage of those statements, is to verify that a gun sale is not prohibited by Section 922(g)(3).

In Count 1, the prosecution charges Mr. Biden's with violating Section 922(a)(6) by making a false statement by checking the box signifying that he is not a user of controlled substances when he purchased a firearm. Not all false statements are punishable, however, the

6

statute explicitly requires that the false statement be "with respect to any fact material to the lawfulness of the sale." 18 U.S.C. § 922(a)(6); *see United States v. Laboy-Torres*, 553 F.3d 715, 717 (3d Cir. 2009) (explaining that "materiality [is] an element necessary for conviction under § 922(a)(6)"). Now that Section 922(g)(3)'s ban on gun ownership for those who have used a controlled substance is unconstitutional, this question on the form about whether a gun purchaser is a user of controlled substances is irrelevant to the lawfulness of the sale. In other words, neither the question nor the answer to it is a "fact material to the lawfulness of the sale."

The same is true of Count 2 because Section 924(a)(1)(A)'s requirement of maintaining records free of false information is not implicated by Mr. Biden's answer to a question that the unconstitutionality of Section 922(g)(3) now makes irrelevant to whether he could lawfully purchase the gun. Section 924(a)(1)(A) is not a statute that "criminalizes a false answer to an ultra vires question." *Abramski*, 573 U.S. at 206 (Scalia, J., dissenting).[5] The whole point of requiring the questions on the form to be asked and that the "dealer keep certain records, [is] to enable federal authorities both to enforce the law's verification measures and to trace firearms used in crimes." *Abramski*, 573 U.S. at 173. The question at issue here about whether the purchaser is a user or controlled substance relates only to verifying compliance with Section 922(g)(3). Unlike the questions about a name, address, and serial number, knowing whether a purchaser is a controlled substance user is of no value in tracing a weapon. But once Section 922(g)(3) is found unconstitutional because gun possession cannot be prohibited based on someone's status as a user

---

[5] Justice Scalia's conclusion that the scope of Section 924(a)(1)(A) does not criminalize false answers to ultra vires questions was joined by Chief Justice Roberts and Justices Thomas and Alito. The majority explicitly did not address that issue because it did not believe the question it considered in that case was ultra vires. *Abramski*, 573 U.S. at 193 n.11.

of controlled substances, the question about whether a person is a user of a controlled substance becomes as irrelevant as asking the purchaser to reveal their favorite color.

The prosecution may note that Section 924(a)(1)(A), unlike Section 922(a)(6), does not contain a materiality requirement, but that is no answer to Justice Scalia's observation that Section 924(a)(1)(A) does not criminalize answers to irrelevant questions. The fact that a false statement does not need to be material does not mean that Mr. Biden can be prosecuted for a false statement that is irrelevant to the purposes of the statute.[6] Particularly in the criminal context, the Supreme Court has cautioned against providing a "'boundless reading' of a statutory term given 'deeply serious consequences' that reading would entail." *Yates v. United States*, 574 U.S. 528, 547 (2015) (quoting *Bond v. United States*, 572 U.S. 844, 860 (2014)); *see also Dubin v. United States*, 599 U.S. 110, 114 (2023) (refusing to provide a "boundless interpretation"). In *Bond*, for example, a married woman sought revenge against her husband's mistress by placing harmful chemicals on the mistress's car, mailbox, and doorknob in an effort to give her a rash. Although the woman plainly used chemicals as a weapon, the Supreme Court held that she could not be prosecuted for

---

[6] It is a well-established cannon of construction that statutory terms should not be read to their literal extreme when doing so would produce absurd results that do not further the statute's purpose. *See, e.g.*, *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.") (internal citation omitted); *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940) ("All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose.").

violating a treaty banning the use of chemical weapons because this application went beyond the purposes of the statute. *Bond*, 572 U.S. at 860.

Similarly, in *Yates*, a man who had unlawfully caught an undersized fish threw the fish back in the water and was charged with obstruction of justice because he disposed of evidence in the form of a "tangible object." *Yates*, 574 U.S. at 532. The obstruction of justice statute that the defendant was charged with violating was part of the Sarbanes-Oxley Act, "legislation designed to protect investors and restore trust in financial markets following the collapse of Enron Corporation." *Id.* Although the Supreme Court acknowledged that "[a] fish is no doubt an object that is tangible," it rejected the conclusion that the defendant could be convicted because "it would cut [the statute] loose from its financial-fraud mooring to hold that it encompasses any and all objects, whatever their size or significance, destroyed with obstructive intent." *Id.*

As with cases like *Bond* and *Yates*, the Court should not construe the phrase "false statement" in Section 924(a)(1)(A) to include statements that are irrelevant to verifying whether Mr. Biden was prohibited from purchasing the firearm. To be sure, making any kind of false statement to anyone is frowned upon, but seeking to cause someone physical harm (*Bond*) and destroy evidence of a crime (*Yates*) were not exactly noble either. Any false statement by Mr. Biden in response to a question that is now irrelevant to whether he had a right to purchase a handgun is beyond the purview of the statute. Accordingly, Counts 2 and 3 should be dismissed.

## CONCLUSION

The Court should dismiss the Indictment.

Dated: December 11, 2023 /s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of December, 2023, I filed the foregoing Motion to Dismiss the Indictment with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*