**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 23-00061-MN |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| *defendant*. | ) | |

**THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE INDICTMENT BASED ON IMMUNITY CONFERRED BY HIS
DIVERSION AGREEMENT**

The United States respectfully opposes defendant Robert Hunter Biden's motion to dismiss the indictment based on immunity conferred by the withdrawn proposed diversion agreement. *See* ECF 60. Because U.S. Probation did not approve the diversion agreement and its approval was an express condition precedent to the formation of the agreement, the agreement, and its immunity provision never went into effect.  Because the agreement never went into effect, the Government was free to withdraw it, which it did, in writing, on August 9, 2023.  Therefore, the defendant's motion to dismiss the indictment returned by the grand jury is meritless and should be denied.

## I.      PROCEDURAL HISTORY

On June 20, 2023, the United States filed a single count criminal information charging the defendant with violating 18 U.S.C. §§ 922(g)(3) and 924(a)(2) related to his illegal possession of a Colt Cobra 38SPL revolver between October 12, 2018, and October 23, 2018 (hereafter the "firearm information").  ECF 2.  That information was docketed in the above captioned case.  Simultaneously, the United States filed a second information charging the defendant with two counts of failing to pay taxes (hereafter the "tax information") that was docketed as a separate case, also assigned to this Court, under Criminal Action Number 23-mj-274-MN.  No. 23-mj-274-MN ECF 2.

On June 21, 2023, the Court issued an order scheduling a combined hearing to conduct an initial appearance on the firearm information, ECF 3, and for an initial appearance and plea hearing on the tax information, 23-mj-274-MN ECF 3.

On July 26, 2023, the Court conducted the hearing.  First, the Court held an initial appearance on the firearm information and an initial appearance on the tax information, apprising the defendant of the maximum penalties for the offenses charged in those two filings, his right to be represented by counsel, his right to a preliminary hearing and that he had the right to remain silent.  ECF 16 3:22-6:25. The Court then engaged in a colloquy with the Government and defense counsel pursuant to the Due Process Protection Act.  *Id.* at 7:1-16.  Next, the Court entered an order setting conditions of pretrial release and orally advised the defendant of those conditions.  ECF 15 and ECF 16 at 7:18-10:15.[1]

The Court then addressed the proposed plea agreement that the parties had negotiated to resolve the tax information and the proposed diversion agreement that the parties had negotiated to resolve the firearm information:

> THE COURT: Now, we have two cases and two agreements and I understand that the Diversion Agreement is not something that is typically before the Court, but you all did send it to me so I do want to talk about that a little bit. There are some provisions in those agreements that are not standard and are different from what I normally see, so I think we need to walk through these documents and get some understanding **of what is being proposed** so that I can give due consideration to the determination that you all are asking me to make.

ECF 16 at 10:19-11:4 (emphasis added).  A lengthy discussion of both the proposed plea agreement and the proposed diversion agreement then followed.

---

[1] The court entered an identical order setting conditions of pretrial release in 23-mj-274-MN.  *See* 23-mj-274-MN ECF 16.

Of particular relevance to the defendant's motion to dismiss, and as will be discussed in greater detail below, the proposed diversion agreement that was discussed at the hearing contained the following provision: "The term of this Agreement shall be twenty-four (24) months, **beginning** on the date of **approval** of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14." ECF 24-1 at ¶1 (emphasis added).  Paragraph two of the proposed diversion agreement further provided that, "The twenty-four (24) month period following the **execution and approval** of this Agreement shall be known as the 'Diversion Period.'" *Id.* at ¶2 (emphasis added). The signature page at the end of the proposed agreement had spaces for the parties, which the Agreement defined as the United States and the defendant, to execute the agreement.  It also had a signature space for Margaret Bray, Chief United States Probation Officer for the District of Delaware, to approve the agreement.  While the parties signed the proposed plea agreement and the proposed diversion agreement, Ms. Bray did not. Indeed, the version of the agreement that the defendant docketed on August 2, 2023, has an empty signature line for Ms. Bray, immediately below the text "APPROVED BY."  ECF 24-1 at 9.  Nor did she say anything on the record at the hearing that indicated she approved it.

Reflecting the fact that the terms of the diversion agreement required approval by U.S. Probation for the agreement to enter into effect, when the Court asked the Government to summarize the proposed diversion agreement, the Government said the following:

> Paragraph 1 [of the proposed diversion agreement] provides that it's for a two-year period, twenty-four months **beginning on the date of approval of this agreement, and that would be when the chief probation officer, Ms. Bray signs it,** unless there is a breach as set forth in paragraphs 13 and 14.

ECF 16 at 83:12-17 (emphasis added).  The Government did not say that Ms. Bray had signed it, because she had not, nor did the Government say she had otherwise approved it, because she had

not.[2]  When the Government finished summarizing the proposed diversion agreement, the Court

asked defense counsel, "Mr. Clark, any corrections you want to make?" to which defense counsel

stated, "No, Your Honor."  *Id*. at 90:14-15.

Further, during the extended discussion on the proposed diversion agreement, the Court

posed the following question that reflected that Ms. Bray's approval had not been given as of the

hearing:

> THE COURT: All right. Now, I want to talk a little bit about this
> agreement not to prosecute. The agreement not to prosecute includes -- is in the
> gun case, but it also includes crimes related to the tax case. So we looked through
> a bunch of diversion agreements that we have access to and we couldn't find
> anything that had anything similar to that.
>
> So let me first ask, do you have any precedent for agreeing not to
> prosecute crimes that have nothing to do with the case or the charges being
> diverted?
>
> MR. WISE: I'm not aware of any, Your Honor.
>
> THE COURT: Do you have any authority that says that that's appropriate
> and that the probation officer **should agree to that** as terms**, or the chief of
> probation should agree to that** as terms of a Diversion Agreement?

---

[2] While the Government clearly and accurately summarized how the proposed diversion agreement entered into effect, with the approval of U.S. Probation, defendant repeatedly mischaracterizes an answer that the Government gave to a question posed by the Court to misleadingly suggest that the Government thought the agreement was already in effect at the time of the hearing.  The cherry-picked answer that the defendant seizes on is the following: "Your Honor, the Diversion Agreement is a contract between the parties so it's in effect until it's either breached or a determination [of breach has been made], period."  Def. Mot. at 7, 14.  But in his motion, the defendant omitted the question the Court posed that this statement was in response to: "[s]o if 922(g)(3), which makes it unlawful for a drug user addict to possess a gun were found by some court to be unconstitutional, what happens to the Diversion Agreement?" ECF 16 at 91:2-5.  The question was premised on a future event after the agreement went into effect.  The Government's answer is similarly based on this premise.  In any event, Government counsel's statement, however one interprets it, does not magically make the diversion agreement come into effect.  Only the terms of the agreement itself do that.  The Defendant's entire judicial estoppel argument is similarly premised on his misrepresentation of this answer Government counsel gave in response to the Court's question at the hearing.  *See* Def. Mot. at 20-21.  For that reason, it should be rejected.

ECF 16 at 46:5-8.  Obviously, the phrase "should agree" reflects future, not past tense.  Put another way, if Ms. Bray, as the Chief U.S. Probation Officer, had already approved the diversion agreement, the Court would not be asking if she "should."

In addition to the Court's concerns about the agreement not to prosecute in the diversion agreement quoted above, the Court also raised whether the proposed diversion agreement was enforceable or even constitutional.  *Id*. at 92:22-106:2.  As a result, the Court deferred a decision on the proposed diversion agreement and the proposed plea agreement, as reflected in a minute order entered on the docket:

> Minute Entry for proceedings held before Judge Maryellen Noreika - Initial Appearance as to Robert Hunter Biden on (1) Count 1 held on 7/26/2023., defendant was present with counsel. The Court advised defendant of rights and granted release with conditions. defendant waived the preliminary hearing. The Court advised counsel of their Brady obligations under Rule 5(f). **The Court deferred a decision on the plea and pretrial diversion agreement.** The parties shall submit briefs as ordered within 30 days; Not Guilty Plea entered. Time is excluded from the Speedy Trial Act between today and 9/1/2023 in the interests of justice.

(emphasis added).[3]

Following the July 26, 2023 hearing, the Government and the defendant engaged in further negotiations on both the proposed plea and the proposed diversion agreement but, as the Government previously informed the Court, those negotiations were unsuccessful.  ECF 25.

---

[3] The Court entered a nearly identical minute order in 23-mj-274-MN:

> Minute Entry for proceedings held before Judge Maryellen Noreika - Initial Appearance as to Robert Hunter Biden on Count 1, 2 held. Defendant was present with counsel. The Court advised Defendant of rights and granted release with conditions. Defendant waived the preliminary hearing. The Court advised counsel of their Brady obligations under Rule 5(f). **The Court deferred a decision on the plea and pretrial diversion agreement.** The parties shall submit briefs as ordered within 30 days; Not Guilty Plea entered. Time is excluded from the Speedy Trial Act between today and 9/1/2023 in the interests of justice.

Because the parties could not reach agreement, the Government informed the defendant, in writing on August 9, 2023, that it was withdrawing the most recent version of its proposed plea agreement and its proposed diversion agreement.  ECF 32.

On September 14, 2023, a grand jury returned a three count indictment charging the defendant with committing crimes in connection with the same firearm that was the subject of the firearm information, specifically, with violating 18 U.S.C. §§ 922(a)(6) and 924(a)(2) for making a false statement during a background check to deceive a firearms dealer when he acquired the firearm ("Count One"), 18 U.S.C. § 924(a)(1)(A) for making a false statement during a background check on paperwork that the firearms dealer was required to maintain ("Count Two"), again related to the firearm, and 18 U.S.C. §§ 922(g)(3) and 924(a)(2) related to his illegal possession of the firearm between October 12, 2018 and October 23, 2018 ("Count Three"). ECF 39.

On October 3, 2023, the defendant had an initial appearance on the indictment.  At that hearing, United States Magistrate Judge Christopher J. Burke entered an order setting conditions of pretrial release that were consistent with the Court's prior order.  ECF 47.

On October 4, 2023, the United States moved to voluntarily dismiss the firearm information without prejudice because the indictment had been returned by the grand jury.  ECF 52.  The defendant filed a response on October 5, 2023, which failed to state a position on the Government's motion to dismiss.  ECF 53.  On October 11, 2023, the Court entered an order dismissing the firearm information without prejudice.  ECF 55.

On December 11, 2023, the defendant filed the instant motion to dismiss the indictment. ECF 60.

## II.    ARGUMENT

Because the diversion agreement never entered into effect, the defendant has no immunity from prosecution.

### A. The diversion agreement never entered into effect.

The defendant's first argument is that the diversion agreement is in effect.  However, he offers three different and conflicting theories as to why it is in effect.  First, he asserts that "[t]he Diversion Agreement was validly *executed* and, therefore, it is a binding and enforceable contract."  Def. Mot. at 8 (emphasis added).  Then, in the next paragraph he says, "[t]he Agreement need only be *approved and executed by the parties* to become effective, and that has occurred."  *Ibid.* (emphasis added).  Later in that same paragraph he writes, "Because Mr. Biden *accepted* the Diversion Agreement, 'the Government may not now revoke it.'"  *Ibid.* (emphasis added).  The defendant doesn't tell the Court which of his own competing versions of the diversion agreement he is advancing.  And by the plain terms of the agreement, it is none of those things.

1. By the plain terms of the diversion agreement that the parties negotiated, it goes into effect only upon approval by U.S. Probation.

By its plain terms, the diversion agreement negotiated by the parties only goes into effect upon approval of U.S. Probation, which was a condition precedent to the formation of the contract.  And that didn't happen.

The Third Circuit, citing the United States Supreme Court's decision in *Santobello v. New York*, 404 U.S. 257, 261–63 (1971), has held that "[p]lea agreements, although arising in the criminal context, are analyzed under contract law standards." *United States v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007); *United States v. Swint*, 223 F.3d 249, 253 (3d Cir. 2000); *United States v. Nolan–Cooper*, 155 F.3d 221, 236 (3d Cir. 1998); *United States v. Isaac*, 141 F.3d 477, 483

(3d Cir. 1998); *United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir. 1989). By analogy, the same principle should apply to the analysis of the diversion agreement as the United States Circuit Courts of Appeal for the Fifth, Eighth, Ninth and Eleventh Circuits have found. *United States v. Harris*, 376 F.3d 1282, 1287 (11th Cir. 2004) ("A pretrial diversion agreement is analogous to a plea bargain agreement. Accordingly, this court interprets a pretrial diversion agreement applying the same standards we would use to interpret a plea agreement."); *Aschan v. Auger*, 861 F.2d 520, 522 (8th Cir. 1988); *United States v. Hicks*, 693 F.2d 32, 33 (5th Cir. 1982); *United States v. Warren*, 594 F.2d 1046, 1049 (5th Cir. 1979); *United States v. Garcia*, 519 F.2d 1343, 1345 n. 2 (9th Cir. 1975).

Because plea agreements and diversion agreements are contractual in nature, a court begins its analysis as it would "with any contract" by "examin[ing] first the text of the contract." *United States v. Gebbie,* 294 F.3d 540, 545 (3d Cir. 2002). "The preliminary inquiry is to determine whether the terms at issue are ambiguous. This is a question of law." *In re Stendardo*, 991 F.2d 1089, 1094 (3d Cir. 1993), as amended (June 21, 1993); *Moscahlaidis*, 868 F.2d at 1361; *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 362 (3d Cir.1987); *Landtect Corp. v. State Mutual Life Assurance Co.*, 605 F.2d 75, 79 (3d Cir. 1979) *Iron Branch Assocs., LP v. Hartford Fire Ins. Co.*, 559 F. Supp. 3d 368, 378 (D. Del. 2021) (Under Delaware law, "the Court must first determine whether a contract is unambiguous …" and "Under Delaware law, contract interpretation is a question of law"). Here the terms at issue are the ones concerning what would bring the proposed diversion agreement into effect. [4] The defendant takes the

---

[4] At the hearing on July 26, 2023, the Court raised whether there was a meeting of the minds as to the immunity provision in paragraph 15 of the proposed diversion agreement. In response, defense counsel made conflicting statements about his understanding of the scope of paragraph 15. First, defense counsel disagreed with government counsel that the Government could bring a

position that the entire diversion agreement, including these provisions, is unambiguous, and the Government agrees.[5]  Def.  Mot. at 9 ("The Diversion Agreement, like any unambiguous contract is interpreted solely by its plain language").  Because interpreting an unambiguous contract provision is a matter of law, an evidentiary hearing on the defendant's motion is unnecessary.

"The reviewing court must not look towards extrinsic or parol evidence to create an ambiguity in a written agreement that is otherwise clear and unambiguous." *In re Zohar III, Corp.*, 2021 WL 3793895, at *6 (D. Del. Aug. 26, 2021); *CKSJB Holdings LLC v. EPAM Sys., Inc.*, 837 F. App'x 901, 904-05 (3d Cir. 2020) (citing Delaware law); *Prime Victor Int'l Ltd. v. Simulacra Corp.*, 2023 WL 4546333, at *6 (D. Del. July 14, 2023).  Even though the defendant takes the position that the agreement is unambiguous, and even cited the Court's opinion in *In re Zohar III, Corp.*, he nonetheless chose to submit more than 200 pages of extrinsic or parol evidence, including an affidavit from former counsel and multiple emails and other communications between defense counsel and the former prosecution team.  ECF 60-2 through 60-23.  Because the parties agree the diversion agreement is unambiguous, these submissions are irrelevant.  *LPPR, Inc. v. Keller Crescent Corp.*, 532 F. App'x 268, 275 (3d Cir. 2013) (quoting

---

charge under the Foreign Agents Registration Act.  ECF 16 at 55:5-18.  Following this exchange, defense counsel asked for a brief recess in the proceeding.  *Id.* at 57:1-3.  When the hearing resumed, Defense counsel reversed himself and said he *did* agree with the Government's statement on the scope of the immunity agreement.  *Id.* at 58:18-24.  To the extent the Court views defense counsel's changing positions as indicative of ambiguity in the agreement, the defendant has obviously taken the position in his motion to dismiss that the entire agreement is unambiguous.  In any event, the provisions at issue in his motion concern whether the agreement entered into effect.  As to those provisions, and the parties agree on this, there is no ambiguity.

[5] The Defendant spends three pages on a strawman argument that if the Government were to take the position that the diversion agreement was ambiguous, any ambiguity should be construed against the Government.  Def. Mot. at 10.  The Government does not take the position that the diversion agreement is ambiguous and never has.

*United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007)) ("Ambiguity does not exist simply because the parties disagree about what the contract means. Moreover, extrinsic, parol evidence cannot be used to manufacture an ambiguity in a contract that facially has only one reasonable meaning."). And because they are irrelevant, the Government will not address them. This does not mean, however, that the Government agrees with the version of events former defense counsel offers in his declaration. It does not. Nor does the Government agree with the characterizations of the negotiations between the parties that the defendant offers in his motion.

If unambiguous, the court must "give effect to the plain meaning of the contract's terms and provisions," and "[i]n upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein." *Iron Branch*, 559 F. Supp. 3d at 378; *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010); *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012); *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985)).

Turning to the text of the agreement itself, and as summarized above, the very first numbered paragraph of the proposed diversion agreement stated that it would take effect when the agreement was "approved": "[t]he *term of this Agreement* shall be twenty-four (24) months, *beginning* on the date of *approval* of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14." ECF 24-1 at ¶1 (emphasis added). The next paragraph further provides that: "[t]he twenty-four (24) month period following *execution and approval* of this Agreement shall be known as the 'Diversion Period.'" *Id.* at ¶2 (emphasis added). And the signature page at the end of the entire agreement reflects the distinction drawn by paragraph 2 between execution by the parties and approval by the Chief U.S. Probation Officer:

10



*Id*. at page 9.  The only signature line that has "APPROVED BY:" above it is the one for the

Chief United States Probation Officer.  Not the United States or the defendant.  Above the

signature lines for the United States and the defendant it instead says, "ON BEHALF OF."  And

it is axiomatic that words have meaning.  If the parties intended for the agreement to come into

effect when *they* approved it, then that the signature page would have said "APPROVED BY"

over the signature line for the United States and the defendant, not for U.S. Probation.

In sum, the plain terms of the agreement are that the agreement is executed by the parties,

which the Agreement defines as the United States and the defendant.  *Id*. at I.  But the Agreement

does not vest the parties with the power to approve the agreement.  That is reserved for Chief

United States Probation Officer Margaret Mr. Bray.  And, as quoted above, paragraph 1 expressly

provides that it is approval that begins the term of the agreement.  Thus, the defendant's repeated

assertions that the parties approve the agreement, not U.S. Probation, and that the parties'

approval causes it to enter into effect, is clearly wrong.

Furthermore, even if the defendant actually believed that the agreement he negotiated did

not require U.S. Probation's approval, that is not controlling.  Delaware adheres to the 'objective'

theory of contracts, i.e., a contract's construction should be that which would be understood by

an objective, reasonable third party."  *Iron Branch*, 559 F. Supp. 3d at 378; *Osborn ex rel.*

*Osborn*, 991 A.2d 1153 at 1159; *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5

(Del. Ch. Apr. 29, 2005)).  An objective, reasonable third party would understand that U.S.

Probation would have to approve the agreement for it to go into effect, given the language in

paragraphs 1 and 2 and the construction of the signature page.

"A court must not render any part of the contract mere surplusage or render any provision

or term "meaningless or illusory."  *Iron Branch*, 559 F. Supp. 3d at 378 citing *Osborn ex rel.*

*Osborn*, 991 A.2d at 1159; *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177,

1183 (Del. 1992).  That is exactly what the defendant is inviting the Court to do because his

argument that the parties' execution of the agreement brings it into effect would render the

agreement's requirement of approval by U.S. Probation "mere surplusage" and make it

"meaningless or illusory."  *Iron Branch*, 559 F. Supp. 3d at 378.

Clearly, the Chief U.S. Probation Officer did not sign the agreement.  ECF 24-1 at 9.

That fact is not in dispute.  Even though she did not sign it, the defendant claims she did in fact

approve it.  What makes this assertion bizarre is that the defendant repeats some version of his

argument that only the parties, and not U.S. Probation, had to approve the agreement no less than eight (8) times in his motion, only to abandon it and claim that U.S. Probation *did* approve it.[6]

The approval that the defendant claims U.S. Probation gave took the form, in the defendant's words, of "passively agree[ing]" with the agreement, whatever that means. Def. Mot. at 18. All he can point to in support of his "passive" agreement theory is a partial draft of a pretrial diversion report in which Ms. Bray wrote, "[t]he United States Probation Office *recommends* the defendant as a candidate for a 24-month term of Pretrial Diversion." ECF 60-21. A pretrial diversion report is prepared for the Court. Ms. Bray recommending the defendant for pretrial diversion to the Court is not the same thing as Ms. Bray approving the diversion agreement. If Ms. Bray had chosen to approve the agreement she would have said so. She did not. She merely said she recommended the defendant to the Court for diversion.

After taking the inconsistent positions that the parties and not U.S. Probation approved the agreement, only to reverse course and claim that U.S. Probation did in fact approve it, the defendant next asserted in his motion that U.S. Probation's approval didn't amount to anything. Specifically, the defendant claimed that the "signature line for Probation reflecting its approval

---

[6] *See,* Def. Mot. at 8 ("With the *parties' approval* of the Diversion Agreement on July 26, 2023, a twenty-four month diversion period began) (emphasis added); *id.* at 10 ("Because the Diversion Agreement does not make the effectiveness of the Agreement contingent on anything beyond the *approval* and execution *of the parties* to the Agreement …") (emphasis added); *id.* at 15 ("… but the Diversion Agreement required execution and approval *from the parties—not from Probation*.") (emphasis added); *id.* at 21 ("The Diversion Agreement became effective once it was approved and executed by *the parties* to the Agreement") (emphasis in original); *ibid.* ("… but the Division Agreement required execution and *approval from the parties—not by Probation.*") (emphasis added); *ibid.* ("… there is no provision that says Probation must sign the Diversion Agreement for it to be effective."); *ibid.* ("The Diversion Agreement would have stated that a signature from Probation to make it effective if that was what the parties intended"); *id.* at 23 ("Because Probation was not a party to the Agreement, its approval was not necessary for the Agreement to be effective").

would indicate only that Probation approved being given the supervisory responsibility, which even then it would not have to exercise."  Def. Mot. at 18.  But this position also renders U.S. Probation's approval as "mere surplusage" and makes it "meaningless or illusory."  *Iron Branch*, 559 F. Supp. 3d at 378.  It is also at odds with the structure of the agreement.  The signature line for U.S. Probation under "APPROVED BY" appears at the end of the agreement, on the same page as the lines for the parties to execute the agreement.  That shows that U.S. Probation is approving the entire agreement, not just some part of it.

    *2.*  <u>The approval of U.S. Probation was a condition precedent to the formation of the agreement</u>.

Applying contract law principles, the approval of U.S. Probation was a condition precedent to the formation of the contract.  "A condition may be either a condition precedent to the formation of a contract or a condition precedent to performance under an existing contract."  *W & G Seaford Assocs. v. Eastern Shore Mkts., Inc.*, 714 F.Supp. 1336, 1340 (D.Del.1989) (citing *J. Calamari & J. Perillo*, Contracts § 11–5, at 440 (3d ed.1987)); Williston on Contracts § 38.4. "In the former situations, the contract itself does not exist unless and until the condition occurs." *Id*.; *Willison on Contracts* § 38.7.  As the Supreme Court's opinion in *United States v. Hyde* shows, contract law on conditions applies to plea agreements.  520 U.S. 670, 678 (1997).

The approval of U.S. Probation is a condition precedent to the formation of the agreement because paragraph 1 provides that "[t]he Agreement shall be twenty-four (24) months, *beginning on the date of approval* of this Agreement …" and the Chief U.S. Probation Officer is the person the parties agreed must approve the diversion agreement.  ECF 24-1 at ¶ 1.  Under contract law, "[n]o particular form of language is necessary to make an event a condition, although such words as 'on condition that, 'provided that' and 'if' are often used for this purpose.  An intention to make a duty conditional may be manifested by the general nature of an agreement, as well as by

specific language."  Restatement (Second) of Contracts § 226 & cmt. A (Am. Law Inst. 1981).

The proposed diversion agreement reflected, in multiple ways, that U.S. Probation's approval

was a condition precedent to the formation of the agreement.  Paragraph 1 fell under the heading

"Terms and *Conditions* of Diversion Agreement" and specified that the term of the agreement

"begin[s] on the date of *approval* of this Agreement."  In other words, the diversion period does

not begin until the agreement is approved, and the very next paragraph, paragraph 2,

distinguished between "execution" and "approval."  If the parties alone both executed and

approved the agreement, the former would render the latter redundant.  And such a reading of the

agreement would violate the contract principle that "[a] court must not render any part of the

contract mere surplusage."  *Iron Branch*, 559 F. Supp. 3d at 378

  If any doubt about the distinction between execution and approval were possible,

construction of the signature page at the very end of the agreement reinforced that "approval"

would not occur until Margaret M. Bray, Chief United States Probation Office, signed the

agreement.  As cited above, her signature alone appears under "APPROVED BY" in capital

letters.  Moreover, paragraph 10, labeled "Additional *Conditions* Applicable to Diversion Period"

specified that the defendant must "[b]e subject to pretrial diversion supervision as directed by the

U.S. Probation and Pretrial Services Office in this District"—a "condition" that could not occur

without the U.S. Probation's approval, as the agreement itself specified.

  Indeed, as described above, defense counsel demonstrated this contemporaneous

understanding of the condition at the plea hearing on July 26, 2023. There, the Court asked the

government to summarize the terms of the diversion agreement.  Reading from the agreement,

government counsel stated, "Roman two describes the terms and conditions of the agreement.

Paragraph 1 provides it's for a two-year period, **twenty-four months beginning on the date of**

**approval of this agreement, and that would be when the chief probation officer, Ms. Bray, signs it**, unless there is a breach as set forth in paragraphs 13 and 14."  ECF 16 at 83 (emphasis added).  When the government completed its summary of the diversion agreement, the Court asked the defendant's counsel, "any corrections you want to make?"  *Id*. at 90.  Defense counsel responded, "No, Your Honor."  *Ibid.*

The defendant makes much of the fact that the parties signed the agreement at the beginning of the hearing on July 26, 2023.  But a contract does not exist if a condition precedent to its formation has not occurred even if the parties to the proposed contract have signed the instrument.  *See, e.g., Int'l Bhd. Of Teamsters v. NASA Servs., Inc.*, 957 F. 3d 1038, 1043 (9th Cir. 2020) (cited in Williston § 38.7); *see Ocean Atlantic Development Corporation v. Aurora Christian Schools, Inc.*, 322 F.3d 983 (7th Cir. 2003) (citing Williston; letter offers that anticipated future formal contracts were not binding); *Peerless Cas. Co. v. Housing Authority of Hazelhurst, Ga.*, 228 F.2d 376 (5th Cir. 1955); *Southern Bell Tel. and Tel. Co. v. John Hancock Mut. Life Ins. Co.*, 579 F. Supp. 1065 (N.D. Ga. 1982).   Thus, the fact that the defendant and the Government signed the agreement does not mean it went into effect.

**B.  Because the diversion agreement never entered into effect, the Government was free to withdraw it.**

Because the diversion agreement never entered into effect, the Government was free to withdraw it, which it did on August 9, 2023.  *United States v. Gonzalez*, 918 F.2d 1129 (3d Cir. 1990).  In *Gonzalez*, the Government offered the defendant and his two codefendants a wired plea, in other words, each defendant's plea agreement was conditioned on the other two defendants also pleading guilty.  One of the defendants rejected the offer and the Government withdrew the offer as to all three.  After conviction at trial, the defendant argued that "basic fairness should compel the government to be held to the terms of the agreement it had reached

16

with him, since he was ready, willing, and able to plead guilty to count one as required by the agreement." *Id*. at 1133. The Third Circuit rejected the defendant's argument reasoning that "[t]he proposal, however, was subject to a condition precedent—that all three must plead guilty in order for there to be an agreement." *Ibid*. Citing its decision in *Moscahlaidis* for the proposition that plea agreements should be interpreted applying contract principles, the Third Circuit concluded, "[t]herefore, under the approach suggested in *Moscahlaidis*, the agreements should not be enforced when one of the conditions to the agreement (unanimous agreement) is not met. *Ibid*.

The Third Circuit's decision in *Gonzalez* adopts the "prevailing doctrine" that the government "may withdraw from a plea bargain agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement." WAYNE L. LAFAVE, CRIMINAL LAW § 21.2(c) (6th ed. 2017). That same section of LaFave expressly blesses withdrawal "where the plea bargain was specifically conditioned on some future event which did not come to pass." Thus, the government can withdraw if a condition precedent to the formation of the contract is not satisfied.

Only one circuit previously did not follow the "prevailing doctrine" that LaFave describes—the Fourth Circuit. In *Cooper v. United States*, 594 F. 2d 12, 15 (1979), the government attempted to withdraw a plea agreement before a defendant had accepted it. The Fourth Circuit held that the defendant's rights had been violated, stating that "constitutional fairness requires that [a plea agreement] be fulfilled if within a reasonable time the defendant unequivocally communicates his assent to it, and unless in the interval extenuating circumstances affecting the propriety of the proposal that were unknown to and not reasonably discoverable by

17

the government when the proposal was made have supervened or become known." *Id.* at 19. But the Supreme Court abrogated *Cooper* in *Mabry v. Johnson*, 467 U.S. 504, 507 n.2. (1984).

Even before *Mabry* was decided in 1984, the Third Circuit specifically rejected "a *Cooper*-type rule that would allow specific performance of an unconsummated plea in the absence of . . . detrimental reliance." *Government of Virgin Islands v. Scotland*, 614 F.2d 360, 365 (1980). In *Scotland*, the government offered a plea agreement, the defendant accepted the agreement, and the government then added an additional condition to the agreement. The defendant sought to hold the government to its initial offer. The Third Circuit held that the government could withdraw that offer, even after the defendant had accepted it, absent detrimental reliance by the defendant. *Id.* at 365. *Mabry* later sided with *Scotland*, 467 U.S. at 507 n.2.

The defendant claims that he has relied, to his detriment, on the proposed diversion agreement. He has not. The defendant writes, "In exchange for Mr. Biden giving up various rights—including his Fifth Amendment right to remain silent by agreeing to the Statement of Facts drafted by the prosecution and numerous restrictions on his liberty—the prosecution agreed to provide him immunity for any offense concerning his purchase of a firearm (among other offenses)." Def. Mot. at 6.

First, the defendant has not given up his right to remain silent in any meaningful way. Federal Rule of Criminal Procedure 11(f) provides that "[t]he admissibility or inadmissibility of a plea, plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Federal Rule of Evidence 410 bars the use in evidence of "any statement made in the course of any proceeding under Federal Rule of Criminal Procedure 11 regarding a plea of guilty …"[7]

_____

[7] The sole exception is in a prosecution for perjury. Fed. R. Evid. 410(b)(2).

Second, the defendant incorrectly asserts that, "Mr. Biden also agreed not to exercise his Second Amendment right to possess a firearm during the diversion period (*which he could otherwise do because he has not used illicit substances in more than four years*)."  Def. Mot. at 9 (emphasis added).  That is not true.  The defendant is prohibited from possessing a firearm as a standard condition of his pretrial release like any other criminal defendant.  *See* ECF 15.  The Court's Order of July 26, 2023, specifically provides that:

Case 1:23-cr-00061-MN   Document 15   Filed 07/26/23   Page 1 of 4 PageID #: 876

AO 199A (Rev. 06/19)  Order Setting Conditions of Release

Page 1 of ___4___ Pages

# UNITED STATES DISTRICT COURT
for the
District of Delaware

United States of America
v.
Robert Hunter Biden
_____
*Defendant*

)
)
)
)
)

Case No.   1:23-CR-61 & 1:23-MJ-274

## ORDER SETTING CONDITIONS OF RELEASE

AO 199B (Rev. 12/20)  Additional Conditions of Release

Page 2 of 4 Pages

## ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

([✓])  (7)   The defendant must:

([✓])  (k)   not possess a firearm, destructive device, or other weapon.

To be clear, it is that order of the Court that restricts his rights under the Second Amendment, not the proposed diversion agreement that never went into effect.

Third, the defendant claims he has "agree[d] to supervision by Probation and drug testing and treatment as directed by Probation," pursuant to the diversion agreement. He has not. Probation is supervising the defendant, including requiring him to undergo drug testing and treatment pursuant to the Order setting his pretrial conditions of release, not the proposed diversion agreement that never went into effect. *See* ECF 15. The Bail Reform Act mandates that this Court enter such an order setting the terms and conditions of pretrial release at defendant's first appearance on a criminal charge. *See* 18 U.S.C. § 3142(a) (providing that a judicial officer "shall issue" an order under the Act "[u]pon the appearance … of a person charged with an offense"). The hearing transcript makes clear that the Court issued this order and set these conditions as a component of the defendant's "initial appearance," which occurred prior to the discussions and colloquies surrounding either the diversion agreement or the plea agreement. *See* ECF 16, at 3-10; *id.* at 8 (The Court: "I agree that pretrial release is appropriate subject to the following conditions which I will read into the record."); *id.* at 10 (The Court: "Anything I left out or anything I need to address with respect to the initial appearances?").

[this space intentionally left blank]

The Court's Order of July 26, 2023, specifically provides that:

AO 199A (Rev. 06/19)  Order Setting Conditions of Release

Page 1 of ____4____ Pages

# UNITED STATES DISTRICT COURT
for the
District of Delaware

United States of America

v.

Robert Hunter Biden

_____
*Defendant*

)
)
)
)
)

Case No.   1:23-CR-61 & 1:23-MJ-274

## ORDER SETTING CONDITIONS OF RELEASE

---

AO 199B (Rev. 12/20)  Additional Conditions of Release

Page 2 of 4 Pages

## ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ✓ )  (7)  The defendant must:

( ✓ )  (l)  not use alcohol ( ✓ ) at all ( ☐ ) excessively.

( ✓ )  (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

( ✓ )  (n)  submit to testing for a prohibited substance if required by the pretrial services office or supervising officer.  Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.  The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

( ✓ )  (o)  participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

Again, it is that order of the Court that subjects him to pretrial supervision by U.S. Probation, including drug testing and treatment, not the proposed diversion agreement that never went into

21

effect. The conditions imposed are in fact expressly identified in the statute as ones a court may impose on pretrial release under the Act. *See* § 3142(c). Moreover, the defendant himself agreed to these conditions of pretrial supervision.  ECF 16, at 7, 10.

## III.    CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the grand jury's indictment should be denied.

Respectfully submitted,
DAVID C. WEISS
SPECIAL COUNSEL

By:   _____

Leo J. Wise
Principal Senior Assistant Special Counsel

Derek E. Hines
Senior Assistant Special Counsel

U.S. Department of Justice