## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 23-00061-MN |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| *Defendant*. | ) | |

## THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
## TO DISMISS CONCERNING THE SPECIAL COUNSEL'S APPOINTMENT

Defendant Robert Hunter Biden has filed a pretrial motion to dismiss the indictment arguing that the Special Counsel was unlawfully appointed and that funding of this investigation violates the Appropriations Clause. ECF No. 62. This argument is meritless and should be denied.

First, for the entire history of the United States Department of Justice (DOJ), the Attorney General has possessed the statutory authority to designate any officer of the Department to represent the United States in any court. As most recently codified, the Attorney General's statutory authority to empower his officers to conduct specific litigation is not limited by either text or historical tradition to individuals from outside the government. The appointment of counsel from "outside the government" under 28 C.F.R. § 600.3 is not the exclusive, much less primary, source of a Special Counsel's delegated authority, nor could such a procedural regulation limit the Attorney General's statutory authority or confer any enforceable right on a defendant to dismiss his prosecution.

Second, the Department of Justice has a long-settled and fully lawful practice of funding sitting U.S. Attorneys subsequently appointed as Special Counsel with Congress's designated permanent indefinite appropriation, and defendant's attacks on that practice crumble under the

slightest inspection.  As a matter of plain text, the appropriation covers "independent counsel appointed pursuant to [the Independent Counsel statute] *or other law*." Pub. L. 100-202, tit. II, 101 Stat. 1329, 1329-009 (1987) (emphasis added).  Because the Special Counsel has been appointed by the Attorney General pursuant to statute and granted independence to conduct this investigation and prosecution, he falls squarely in the plain text of the statute.  Indeed, since the expiration of the specific Independent Counsel statutes, this method of appropriation has been used to fund independent Special Counsel from within DOJ, audited and approved by the U.S. Government Accountability Office (GAO), and left unchanged by Congress.  Indeed, after the GAO report, Congress concluded that further audits by GAO were unnecessary and eliminated that review and took no steps to alter the practices the GAO described.  When another defendant raised the same challenge in court that defendant does here, the claim was soundly rejected. *See United States v. Stone*, 394 F. Supp. 3d 1, 17–23 (D.D.C. 2019).

## BACKGROUND

When the first Congress enacted legislation creating legal officers in the executive branch, the United States Attorney General and the various United States Attorneys for each judicial district were independent of one another.  *See* Judiciary Act of 1789, ch. 20, sec. 35, 1 Stat. 73, 92-93.  On June 22, 1870, Congress created the Department of Justice, establishing the Attorney General as its head, with supervision over the individual U.S. Attorneys.  *See generally* An Act to Establish the Department of Justice, ch. 150, sec. 1, 16 Stat. 162, 162 (1870).  One explicitly stated purpose of consolidating a single federal law department was to replace the number of outside counsel hired to represent the United States with officers of the Department specifically commissioned by the Attorney General.  *See, e.g.*, Cong. Globe, 41st Cong., 2d Sess. 3035 (Apr. 27, 1870).  "Since the Act of June 22, 1870, no head of any department of the government has been permitted to employ legal counsel at the expense of the United States; but,

whenever such counsel is desired, a call must be made upon the Department of Justice, by which it is furnished." *Ewert v. Bluejacket*, 259 U.S. 129, 136 (1922) (citation omitted).  In the wake of the Civil War, the volume of litigation involving the United States as a party expanded substantially.  Accordingly, Congress provided broad authority to the Attorney General to "require the solicitor-general or any officer of the Department" to "conduct and argue any case in which the government is interested, in any court of the United States" and "to attend to the interests of the United States in any suit pending in any court of the United States, or in the courts of any State."  Act to Establish Department of Justice, sec. 5, 16 Stat. at 163; *see also* Cong. Globe, 41st Cong., 2d Sess. 3035 (Apr. 27, 1870) (explaining that the Attorney General may appoint assistants to conduct litigation on behalf of the United States in the various districts).

In 1906, Congress further codified the Attorney General's specific prerogative to direct prosecutions by conferring authority to conduct personally, or to appoint "any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law" to conduct, "any kind of legal proceeding, civil or criminal, including grand jury proceedings, which [U.S. Attorneys] are authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought."  Act of June 30, 1906, ch. 3935, 34 Stat. 816, 816-17 (then codified at 5 U.S.C. § 310).[1]  In addition, the reorganized sections unambiguously vested the Attorney General with the authority of all functions of any officer of the Department of Justice (with narrow exceptions not relevant here) and the authority to delegate such functions to any other officer.  *See* 28 U.S.C. § § 509, 510; *see*

---

[1] In 1966, Congress reorganized and enacted Titles 5 and 28, codifying the provision where it is now at 28 U.S.C. § 515. *See* Pub. L. 89-554, sec. 4(c), 80 Stat. 378, 611-13 (Sept. 6, 1966).

*also* 28 U.S.C. § 533 (authorizing the Attorney General to appoint officials "to detect and prosecute crimes against the United States" and "to conduct such other investigations regarding official matters under the control of the Department of Justice … as may be directed by the Attorney General").  In short, by 1966, the positive law adopted by Congress explicitly granted the Attorney General plenary control over all investigations and prosecutions conducted by DOJ and the concomitant authority to delegate or direct authority among Department officers to carry out those proceedings.

On October 20, 1973, in the midst of the Watergate Scandal, the infamous "Saturday Night Massacre" occurred when U.S. Attorney General Elliot Richardson and Deputy Attorney General William Ruckelshaus resigned rather than follow President Richard Nixon's orders to fire the special prosecutor investigating President Nixon.  On November 2, 1973, Acting Attorney General Robert Bork issued a final rule creating the office of a Watergate Special Prosecutor and vesting it with "full authority to investigate and prosecute" specified matters under § § 509, 510, and 515. *See* Establishing the Office of Watergate Special Prosecution Force, 38 Fed. Reg. 30,798-02 (Nov. 2, 1973).  The regulation provided that "the Special Prosecutor will have the greatest degree of independence that is consistent with the Attorney General's statutory accountability for all matters falling within the jurisdiction of the Department of Justice." *Id.* at 30,739.  Nonetheless, the regulation also specified that the Special Prosecutor would be "subject to the administrative regulations and policies of the Department of Justice" while having freedom to "determine whether and to what extent he will inform or consult with the Attorney General about the conduct of his duties and responsibilities." *Ibid.*  Subsequently, in a dispute over executive privilege, the Supreme Court approved the Attorney General's use of §§ 509, 510, 515, and 533 to delegate investigatory and prosecutorial authority to the Special

Prosecutor. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 694 (1974) ("Acting pursuant to those statutes, the Attorney General has delegated the authority to represent the United States in these particular matters to a Special Prosecutor with unique authority and tenure.").

Also acting in response to the Watergate scandal, Congress passed the Ethics in Government Act in 1978.  *See* Pub. L. 95-521, 92 Stat. 1824 (Oct. 26, 1978).  Title VI of that Act provided statutory authority for the appointment of a "special prosecutor" by a division of the U.S. Court of Appeals for the District of Columbia Circuit, upon application of the Attorney General.  *See* Ethics in Government Act, 92 Stat. at 1867-74. The statute precluded the court from appointing as a special prosecutor "any person who holds or recently held any office of profit or trust under the United States." *Id.* at 1869 (codified at 28 U.S.C. § 593(d)).

In 1982, the statute was amended to, among other changes, rename the appointed individual as an "independent counsel."  *See* Ethics in Government Act Amendments of 1982, Pub. L. 97-409, 96 Stat. 2039 (Jan. 3, 1983).  In 1987, Congress re-enacted the overall substantive scheme but added a provision terminating the law five years after enactment. *See* Independent Counsel Reauthorization Act of 1987, Pub. L. 100-191, sec. 2, 101 Stat. 1293, 1306 (Dec. 15, 1987) (codified at 28 U.S.C. § 599).  One week later, Congress passed a joint resolution on appropriations that, among its provisions, established "a permanent indefinite appropriation … within the Department of Justice to pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. § 591 et seq. or other law" and providing for audits by the Comptroller General,[2] who would report findings to the congressional appropriations committees.  *See* Pub. L. 100-202, tit. II, 101

---

[2] The Comptroller General is a Presidentially appointed, Senate-confirmed officer of the legislative branch and head of the Government Accountability Office. *See* 31 U.S.C. §§ 702, 703; *Bowsher v. Synar*, 478 U.S. 718 (1986).

Stat. 1329, 1329-9 (Dec. 22, 1987) (codified at 28 U.S.C. § 591 note) (hereinafter "the permanent appropriation").[3]  In 1994, Congress reauthorized §§ 591-599 for another five years but then permitted the law to lapse. *See, e.g.*, Independent Counsel Reauthorization Act of 1994, Pub. L. 103-270, sec. 2, 108 Stat. 732, 732 (June 30, 1994) (as amended at 28 U.S.C. § 599).

In 1999, immediately following the sunset of the independent counsel statutes, Attorney General Janet Reno promulgated a final set of regulations "to replace the procedures set out in the Independent Counsel Reauthorization Act of 1994," which sought to "strike a balance between independence and accountability in certain sensitive investigations."  Office of Special Counsel, 64 Fed. Reg. 37,038-01 (July 9, 1999).[4]  The first three sections of these regulations address the grounds on which the Attorney General may appoint a Special Counsel, as well as alternatives to appointments and the qualifications of Special Counsel appointed from outside the government.  *See* 28 C.F.R. §§ 600.1-600.3.  The sections that follow in the regulations address procedures for conducting Special Counsel's investigations, including jurisdiction, staff, authority, procedural requirements, and notifications to the Attorney General by a Special Counsel and, in turn, by the Attorney General to Congress.  *See* 28 C.F.R. §§ 600.4-600.9.  As did the post-Watergate regulations, the current regulations provide for a Special Counsel's independence while mandating compliance with established policies and procedures of the Department. For example, the regulations provide that:

---

[3] Shortly thereafter, the Supreme Court held that the judiciary's appointment of independent counsel under this statutory mechanism did not violate the Constitution's Appointments Clause. *See Morrison v. Olson*, 487 U.S. 654 (1988).

[4] Because the regulations related to matters of agency management and personnel, as well as rules of procedure and practice, the Attorney General was not required to subject them to the notice-and-comment procedures of the Administrative Procedures Act (APA). *See id.* at 37,041 (citing 5 U.S.C. § 553(a)(2), (b)(A)).

- "[T]he Special Counsel shall exercise, within the scope of his or her jurisdiction, the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney," § 600.6;

- "Except as provided in this part, the Special Counsel shall determine whether and to what extent to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities," § 600.6;

- "A Special Counsel shall comply with the rules, regulations, procedures, practices and policies of the Department of Justice" but that if "the extraordinary circumstances of any particular decision would render compliance with required review and approval procedures by the designated Departmental component inappropriate, he or she may consult directly with the Attorney General," § 600.7(a);

- "The Special Counsel shall not be subject to the day-to-day supervision of any official of the Department," except that the Attorney General may conclude, after giving "great weight to the views of the Special Counsel," that a proposed investigatory or prosecutorial action "is so inappropriate or unwarranted under established Departmental practices that it should not be pursued," § 600.7(b); and

- "The Special Counsel may be disciplined or removed from office only by the personal action of the Attorney General … for misconduct, dereliction of duty, incapacity, conflict of interest, or for other good cause," § 600.7(d).

The last section provides that the regulations "are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative." 28 C.F.R. § 600.10.

Before 1999, Attorney General Janet Reno used the permanent indefinite appropriation to pay for the expenses of regulatory independent counsel Robert Fiske, who was appointed on January 20, 1994, and after 1999, the Attorney General also used the permanent indefinite appropriation to pay for the expenses of regulatory Special Counsel John Danforth, who was appointed on September 9, 1999. *See Special Counsel and Permanent Indefinite Appropriation*, GAO B-302582, 2004 WL 2213560, at *3 n.11 (Comp. Gen. Sept. 30, 2004). Attorneys General have also used this permanent appropriation to fund special-counsel investigations conducted by sitting U.S. Attorneys to whom the Attorney General delegated the same expanded authority and

independence of regulatory Special Counsel under § 515.  In 2004, for example, Acting Attorney General James Comey delegated plenary authority to Patrick Fitzgerald, the U.S. Attorney for the Northern District of Illinois, to investigate the alleged disclosure of a CIA employee's identity. *See* Letter from James B. Comey, Acting Attorney General, to Patrick J. Fitzgerald, United States Attorney (Dec. 30, 2003); Letter from James B. Comey, Acting Attorney General, to Patrick J. Fitzgerald, United States Attorney (Feb. 6, 2004).[5]

Acting pursuant to its statutory authority, the GAO audited the use of the permanent appropriation for Fitzgerald's investigation and issued a formal decision concluding that the Department could use the appropriation to fund a Special Counsel who held a position as a U.S. Attorney and continued to do so during his investigation.  *See Special Counsel and Permanent Indefinite Appropriation*, GAO B-302582, 2004 WL 2213560 (Comp. Gen. Sept. 30, 2004).  In line with the statute, the GAO transmitted this decision to the appropriations committees of both Houses of Congress.  Since receiving the GAO's analysis, Congress has neither amended nor rescinded the permanent appropriation.  Rather, in 2009 Congress lifted GAO's audit duty, deeming its review of the permanent appropriation unnecessary.  *See* Pub. L. No. 111–68, § 1501(d), 123 Stat. 2023, 2041 (2009).

Most recently, in December 2020, Attorney General William Barr appointed John Durham, the U.S. Attorney for the District of Connecticut, as a Special Counsel under §§ 509, 510, and 515.  *See* Att'y Gen. Order 4878-2020 (Oct. 19, 2020).  Finally, in August 2023, the current Attorney General Merrick Garland appointed David Weiss, the U.S. Attorney for Delaware, as Special Counsel, also under §§ 509, 510, and 515, as well as under § 533.  *See*

---

[5] Both letters are available at https://www.justice.gov/archive/osc/documents/ 2006_03_17_exhibits_a_d.pdf.

Att'y Gen. Order 5730-2023 (Aug. 11, 2023).  In both cases, the appointment orders specify that 28 C.F.R. §§ 600.4 to 600.10 are "applicable to the Special Counsel" but do not reference nor rely on §§ 600.1 to 600.3.  *See* Att'y Gen. Order 4878-2020; Att'y Gen. Order 5730-2023.

## ARGUMENT

Contrary to defendant's assertions, the Special Counsel's appointment conforms to the law in all respects. While 28 C.F.R. § 600.3 provides a mechanism for appointing a Special Counsel from outside of the Department, nothing in that regulation, or any other source, establishes it as the exclusive means by which the Attorney General can delegate his authority over criminal investigations and prosecutions.  Moreover, the Attorney General's decision to delegate "full power and independent authority" to the Special Counsel under various statutes and invocation of § 600.4 renders him an "independent counsel under … other law" and thus covered by Congress's permanent indefinite appropriation in 1987, as every court and administrative opinion to consider the issue has concluded.  Lastly, defendant's arguments are not the kind of claims that permit dismissal of the validly returned indictment, even were this Court to assume their merits in the first instance.  As set forth below, therefore, defendant's motion should be denied in its entirety.

## I.    The Special Counsel's appointment was lawful and does not violate the regulations.

Defendant's entire argument boils down to the assertion that § 600.3's discussion of qualifications for a Special Counsel occupies the entire field for—and thus substantively limits—the Attorney General's independent statutory powers to delegate any function he chooses to any current officer of the Department.  That argument is simply wrong under every lens.

As discussed above, for as long as there has been a Department of Justice, the Attorney General has had authority to designate one of his officers to represent the United States with respect to a particular matter.  *See* Act to Establish Department of Justice, sec. 5, 16 Stat. at 163

(conferring authority on Attorney General to require "any officer of the Department … to attend to the interests of the United States in any suit pending in any court of the United States").  When Congress has acted subsequently to this initial authority, it has only broadened that discretion, culminating with the 1966 codification of Title 28 that vested authority over all DOJ functions in the Attorney General and provided an equally broad authorization to delegate those functions as he sees fit. *See, e.g.*, 28 U.S.C. §§ 509, 510, 515, and 533.  Each of these statutes predated—and then survived—the specific statutory mechanism for Independent Counsel through the now-lapsed Ethics in Government Act, which first contained the limitation to appointing a special prosecutor from outside of government service. *See* 92 Stat. at 1869.

The lapsed Ethics in Government Act did not detract from the Attorney General's concomitant power to delegate authority to a Special Counsel and confer the independence necessary to perform that function.  To the contrary, during the Iran/Contra investigations, the Independent Counsel Lawrence Walsh possessed *both* authority under the Ethics in Government Act *and* authority delegated by the Attorney General through regulation under §§ 509, 510, 515, and 533.  *See In re Sealed Case*, 829 F.2d 50, 52-53, 55-58 (D.C. Cir. 1987).  Likewise, after the Independent Counsel statutory scheme lapsed, the District of Columbia District Court rejected the argument that Acting Attorney General Comey's delegation of authority and independence to Special Counsel Fitzgerald—who was also a sitting U.S. Attorney—violated Congress's intent in letting the statute expire: "Congress was well aware, long before the Independent Counsel statute expired, that Sections 510 and 515 could create such an office with substantial authority and limited oversight.  Congress certainly could have acted to prevent further delegation of such authority if it had wanted to, but it did not." *United States v. Libby*, 429 F. Supp. 2d 27, 34 (D.D.C. 2006) (citation omitted).  The principle that these two statutory schemes operated

independently, without abrogating each other, accords with the familiar presumption that a later statute does not repeal an earlier one "unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) (cleaned up).

So too the subsequent regulations: in promulgating 28 C.F.R. pt. 600, the Attorney General specifically sought "to replace the procedures set out in the Independent Counsel Reauthorization Act of 1994" and "strike a balance between independence and accountability in certain sensitive investigations." Office of Special Counsel, 64 Fed. Reg. 37,038-01 (July 9, 1999). But while those regulations certainly provide one mechanism by which the Attorney General may appoint a Special Counsel, nothing in them purports to be the exclusive means by which he might do so. To the contrary, the regulations do not purport to control *all* delegations of authority, with whatever grant of independence the Attorney General deems appropriate, to current officers of the Department.

Moreover, "[t]he Attorney General, an officer appointed by the President with the advice and consent of the Senate, has the authority to rescind at any time the Office of Special Counsel regulations or otherwise render them inapplicable to the Special Counsel." *In re Grand Jury Investigation*, 916 F.3d 1047, 1052 (D.C. Cir. 2019). The Attorney General may "revise or repeal" the regulations, *id*. (citing 5 U.S.C. § 553(a)(2), (b)(A), (b)(B), (d)(3)), and "retain[s] plenary supervisory authority of the Special Counsel under 28 U.S.C. § 509," *id*. Indeed, the Attorney General may revise the regulations through the appointment order for Special Counsel. *Id*. In focusing solely on § 600.3, defendant does not even attempt to offer an argument that the Attorney General lacks *statutory* authority to appoint a U.S. Attorney as Special Counsel.

Here, the Attorney General decided that "to discharge [his] responsibility to provide supervision and management of the Department of Justice, and to ensure a full and thorough investigation," it was necessary to delegate authority and independence to the U.S. Attorney already conducting the investigations and prosecutions. Att'y Gen. Order 5730-2023, at 1.  He therefore invoked his statutory authority under §§ 509, 510, 515, and 533 to do so, further providing that "[s]ections 600.4 to 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel."  *Id.* at 2.  Thus, the Attorney General's inclusion of those sections incorporates them into the appointment order as the terms under which he delegated the Special Counsel's authority.

Defendant's argument relies solely on § 600.3's reference to appointing Special Counsel from outside the U.S. government, but defendant's assertion that "[t]he Attorney General had no lawful basis to pick and choose what parts of an integrated regulation to apply" is followed by no citation—and for good reason.  The statutes provide the Attorney General with discretion over the delegation of functions within the Department of Justice.  *See* §§ 509, 510, 515, 533. Nothing in those statutes prevents the Attorney General from specifying under what terms and with what scope he will delegate independent authority to a Special Counsel.  In this case, as with nearly all Special Counsels to date, that the Attorney General chose to make applicable the provisions of 28 C.F.R. §§ 600.4 through 600.10 means just that: the delegation of authority carries with it the substantive and procedural requirements of those provisions.  Section 600.3— which the Attorney General neither referenced nor invoked—has nothing to do with the appointment and delegated authority under which the Special Counsel here acts.

Moreover, the regulations in Part 600 are "a matter relating to agency management or personnel" as well as "rules of agency organization, procedure, or practice," which are not

subject to notice-and-comment rulemaking under the APA.  5 U.S.C. § 553(a)(2), (b)(A); *cf.*
Office of Special Counsel, 64 Fed. Reg. at 37,041; *see also United States v. Concord Manag. &
Consulting LLC*, 317 F. Supp. 598, 615-17 (D.D.C. 2018).  In fact, the Supreme Court has
squarely held that the administrative authority to "regulate its own affairs" found in 5 U.S.C.
§ 301, under which the regulations in Part 600 were promulgated, cover "rules of agency
organization, procedure, or practice."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 309-11 (1979). By
contrast, only "substantive rules" that "affect[] individual rights and obligations" and are
promulgated through notice-and-comment rulemaking "are binding or have the force of law." *Id.*
at 301-03 (citing *Morton v. Ruiz*, 415 U.S. 199, 232-35 (1974)).  Not only did the Attorney
General promulgate the regulations expressly as internal rules of procedure, § 600.10 itself
expressly disclaims the creation of any substantive right on behalf of an individual or entity in
the regulations.  Thus, purported violations of their terms, even if a violation is assumed, is
simply not a basis on which to dismiss a criminal indictment.  *See United States v. Manafort*, 312
F. Supp. 3d 60, 75-79 (D.D.C. 2018) (holding the Special Counsel regulations are internal
procedures only); *see also United States v. Caceres*, 440 U.S. 741, 754 (1979) (holding that an
IRS agent's violation of an internal procedural regulation could not trigger the exclusionary rule
without a concomitant constitutional violation).

Defendant argues that dismissal is necessary under the Supreme Court's decisions in
*Nixon* and *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), but those citations
are unavailing.  As the D.C. district court observed in rejecting a similar argument, the claim
"lifts one sentence from [*Nixon*]," which "concerned a different regulation, promulgated for a
different purpose, and the case does not stand for the proposition that the regulations at issue
should be read to confer any enforceable rights on the defendant."  *Manafort*, 312 F. Supp. 3d at

76.  After analyzing the cases at length, Judge Jackson explained that in the context of the specific dispute between the President and the Special Prosecutor over the availability of executive privilege and the validity of the Special Prosecutor's subpoena, the Supreme Court held only that the President and the Attorney General could not themselves continue to exercise the discretion that had been delegated by regulation to the Special Counsel.  *See id.* at 77-78. That is not the case here, where a criminal defendant is attempting to enforce internal agency regulations by challenging the delegation in the first instance.

Indeed, under the APA, judicial review is not even available over an "agency action" that is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  This prohibition applies to decisions where "the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," and has been held to encompass such decisions as non-prosecution decisions and employment decisions involving national security interests.  *See Department of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019) (citing cases). The decision here falls squarely within that category. In fact, few conceivable decisions are *less* susceptible to judicial second-guessing than this one: the Attorney General made a personal determination to appoint the prosecutor he concluded was most appropriate to wield the delegated authority and independence of a Special Counsel in an investigation and prosecution of the son of the sitting President.

Defendant's assertions of invalidity as to the appointment order are contrary to statutory text, historical practice, and the Attorney General's prerogatives to direct, or delegate, the core executive functions of prosecutorial discretion. His challenge must be rejected.

## II.     The funding of the Special Counsel's investigation does not violate the Appropriations Clause.

Under the Appropriations Clause, "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const., art. I, § 9, cl.7.  Defendant contends that the Appropriations Clause was violated here because the Special Counsel's funding for the investigation and prosecution in this case purportedly was not approved by Congress.  But defendant's argument is groundless.  The Department has repeatedly used this same appropriation to fund similarly situated Special Counsel, and the text and history of that appropriation, as well as longstanding practice known and accepted by Congress, confirms that it is again validly used here.

Defendant acknowledges that the Department has relied on this permanent appropriation for multiple Special Counsel in the past but argues that appropriation is limited to independent counsel under the now-lapsed Independent Counsel Act.  As Judge Jackson observed with similar challenge, this argument "ignores the plain language" of the appropriation.  *United States v. Stone*, 394 F. Supp. 3d 1, 18 (D.D.C. 2019).  Specifically, Congress created a "permanent indefinite appropriation … to pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or *other law*."  *Stone*, 394 F. Supp. 3d at 18 (quoting 101 Stat. 1329).  Defendant shuts his eyes to this language entirely.

As explained above, the Attorney General has ample statutory authority—the relevant "other law"—to appoint a sitting U.S. Attorney as Special Counsel and, in this case, has conferred on that Special Counsel independence within the meaning of the appropriation.[6]  As

---

[6] Again, defendant has raised no argument about the Attorney General's statutory authority to appoint Special Counsel, waiving any such challenge.

recounted above, to date, three Attorneys General (or Acting Attorneys General) have used this permanent appropriation to fund Special Counsel who were (a) appointed through statutory or regulatory authority other than the Ethics in Government Act and (b) sitting U.S. Attorneys at the time.  As Judge Jackson observed, "[t]he General Accounting Office (GAO), an 'independent agency within the legislative branch' that serves Congress, *Bowsher v. Merck & Co., Inc.*, 460 U.S. 824, 844 (1983), has conducted audits and reported to Congress that other special attorneys appointed after the expiration of section 591 have been supported with funds from the permanent appropriation."  *Stone*, 394 F. Supp. 3d at 22 (citations omitted); *see infra* (discussing the GAO's analysis).  After receiving these GAO reports, Congress has left undisturbed the practice, which the plain language of the appropriation facially encompasses.  In fact, beyond merely not disturbing the practice that the GAO endorsed, Congress then amended the law in 2009 to lift the GAO's audit duty altogether.  *See* Pub. L. No. 111–68, § 1501(d), 123 Stat. 2023, 2041 (2009). In short, while repealing other portions of the statute relating to GAO oversight, Congress still chose not to rescind the permanent appropriation, indicating the appropriation is being used as intended.  *See United States v. Rutherford*, 442 U.S. 544, 554 n.10 (1979) ("[O]nce an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." (cleaned up)). Those actions would make little sense under defendant's theory that the statute is limited solely to the Independent Counsel Act or to "outside" Special Counsel.

Defendant cannot persuasively claim that the phrase "independent counsel" in the permanent appropriation excludes Special Counsel.  An "independent counsel" is "[a]n attorney hired to provide an unbiased opinion about a case or to conduct an impartial investigation; esp.,

16

an attorney appointed by a governmental branch or agency to investigate alleged misconduct within that branch or agency." *Black's Law Dictionary* 426 (10th ed. 2014).  The Special Counsel here falls within that definition.  The Attorney General appointed the Special Counsel to ensure a full and thorough investigation of the identified matters, involving the President's son, and conferred the broad independence found in the provisions incorporated into the appointment order. *See* 28 C.F.R. § 600.4.  Although the Special Counsel remains subject to the Attorney General's direction and supervision, he also retains "a substantial degree of independent decisionmaking," *Office of Special Counsel*, 64 Fed. Reg. 37,038, 37,039-37,040 (July 9, 1999), and is not part of the regular Department chain of command or "subject to the day-to-day supervision of any official of the Department," 28 C.F.R. § 600.7(b).

As *Stone* notes, the text of the permanent appropriation imposes no limitation requiring that the "other law" possess the same limitations that the Independent Counsel Act included. "The phrase 'other law' sweeps broadly, and sections 509, 510, and 515 are surely 'other law' under which special attorneys— including Special Counsel who investigate the President— may be appointed." *Stone*, 394 F. Supp. 3d at 20 (noting that the Special Counsel appointed to investigate and prosecute President Nixon and the Iran/Contra matter were appointed under §§ 509, 510, and 515, and citing *Nixon*, 418 U.S. at 694-95). Moreover, *Stone* notes that the permanent appropriation specifically drew a distinction between Independent Counsel appointed under the Ethics in Government Act and other types of independent counsel, referring to the former as "Independent Counsel" and the latter as "independent counsel" without capitalization. 394 F. Supp. 3d at 18 (citing 101 Stat. 1329).

Defendant also contends that Special Counsel Weiss cannot fall within the permanent appropriation because of the authority that the Attorney General retains over Special Counsel.

But *Stone* rightly rejected that argument: "[T]he fact that the regulation calls for a certain level of oversight and compliance with the policies and procedures of the Department of Justice does not mean a special counsel is not 'independent' as that term is generally understood and as it was used in the permanent appropriation."  394 F. Supp. 3d at 21.[7]  Again, "there is nothing in the language of the provision itself that would support defendant's attempt to narrow the appropriation to cover only specially appointed lawyers who operate under terms identical to those in the much-criticized Ethics in Government Act.  And it is the language of the Congressional authorization, and not the level of autonomy the lawyer enjoys, that controls." *Id*. And the provisions in the Special Counsel Regulation made applicable here "expressly recognizes and provides for the independence of the specially appointed lawyer."  *Id*.

The GAO's analysis—which Congress has received to effectuate its oversight responsibilities—accords with the reasoning in *Stone* that the permanent indefinite appropriation is not limited to counsel appointed pursuant to the lapsed Independent Counsel Act.  The GAO noted that when Special Counsel Fitzgerald was appointed, he was a sitting U.S. Attorney and "continued to perform his duties as a U.S. Attorney after his appointment as Special Counsel." *Special Counsel and Permanent Indefinite Appropriation*, GAO B-302582, 2004 WL 2213560, at 1 (Comp. Gen. Sept. 30, 2004).  The GAO explained that it has a "responsibility to audit" the "use of the account to finance Special Counsel Fitzgerald's activities, and the provisions of 28 C.F.R. Part 600 (2003)," and the GAO concluded that "we do not object to the use of the

---

[7] Similarly, although the GAO indicated that Special Counsel Fitzgerald's exclusion from Part 600 altogether "contribute[d] to [his] independence," 2004 WL 2213560, at *3, it also noted that it had not objected to the use of the permanent appropriation to fund Special Counsel who were appointed under Part 600. *See id.* at *3 n.11, *4 n.17. It therefore clearly did not view the limited Attorney General oversight defined in those regulations to undermine the appointed official's authority as an "independent counsel" under the appropriation's plain language.

permanent indefinite appropriation to fund Special Counsel Fitzgerald's expenses." *Id*. at 2. "[T]he permanent indefinite appropriation does not require that a Special Counsel be appointed from outside the government," and such special counsel falls within "other law" under the appropriation. *Id*. Moreover, "the Part 600 regulations are not substantive and may be waived by the Department." *Id*. The GAO "agree[d] with the Department that the same statutory authorities that authorize the Attorney General (or Acting Attorney General) to delegate authority to a U.S. Attorney to investigate and prosecute high ranking government officials are 'other law' for the purposes of authorizing the Department to finance the investigation and prosecution from the permanent indefinite appropriation." *Id*. at 7. The GAO likewise agree that the "Part 600 [regulation] is not a substantive (legal) limitation on the authority of the Acting Attorney General to delegate departmental functions to Special Counsel Fitzgerald." *Id*. Nowhere did the GAO conclude that only "outside" regulatory special counsel, or statutory special counsel appointed under the Independent Counsel Act, had the requisite level of independence necessary to fall within the terms of the permanent indefinite appropriation.[8]

In short, Congress unambiguously authorized the use of the permanent appropriation for independent counsels appointed under "other law," not merely those appointed under the Ethics in Government Act. Several Attorneys General have since used that appropriation to fund sitting U.S. Attorneys who have been made special counsel with broad authority and independence inside the Department of Justice. That practice has been audited and concurred with by the GAO and reported to Congress, which has taken no action to amend or rescind the appropriation. The

---

[8] Given that Congress saw fit to sunset the Independent Counsel Act—which prioritized independence of the Special Counsel over the Attorney General's prerogatives to administer the Department of Justice—defendant cannot credibly argue that Congress nonetheless insisted that *only* that lapsed degree of independence could satisfy the terms of the permanent appropriation, which it left in place.

19

only judicial authority to consider the question has also approved it. All three branches of government have therefore squarely rejected defendant's theory.

**III.    Even assuming error, neither of defendant's arguments warrants dismissal of the indictment.**

Defendant identifies no legal error, but even assuming his arguments had merit, neither affects the validity of the indictment or the prosecution in a way that permits this Court to dismiss the indictment.

It is a "general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests," including the government's interest in prosecution and the public's interest in the administration of criminal justice. *United States v. Morrison*, 449 U.S. 361, 364-65 (1981) (holding that dismissal of the indictment is "plainly inappropriate" for violations of Fourth, Fifth, and Sixth Amendment rights because "[t]he remedy in criminal cases is limited to denying the prosecution the fruits of its transgression"); *accord United States v. Montalvo-Murillo*, 495 U.S. 711, 721-22 (1990) (rejecting overbroad remedy that did not target the specific harm); *Rushen v. Spain*, 464 U.S. 114, 119-20 (1983) ("The adequacy of any remedy is determined solely by its ability to mitigate constitutional error, if any, that has occurred."); *United States v. Gussie*, 51 F.4th 535, 539 (3d Cir. 2022) (holding that to dismiss an indictment, "any prejudice must be shown to preclude remedies other than dismissal"). Here, the "errors" of which defendant complains would not preclude prosecution altogether, whether because the Special Counsel could bring the prosecution under his distinct authority as the U.S. Attorney or because the government could simply transition to a funding source other than the permanent appropriation. As discussed below, therefore, dismissal is unavailable as a remedy on either argument.

A.      **Because the Special Counsel is also the U.S. Attorney for this District, dismissal of the indictment is improper.**

Defendant's challenge to the legitimacy of the Special Counsel's appointment is particularly weak considering the jurisdiction in which his indictment was returned. The Special Counsel is also the sitting Presidentially appointed, Senate-confirmed U.S. Attorney for the District of Delaware, and therefore, he possesses the statutory authority and duty, "within his district," to initiate and prosecute "all offenses against the United States," even without the Attorney General's appointment order. 28 U.S.C. § 547; *see also* 28 U.S.C. § 516 (reserving conduct of litigation in which the United States is a party to "officers of the Department of Justice, under the direction of the Attorney General" except where otherwise permitted by law). Thus, even were there some defect in the appointment order—and there is not—the indictment returned against defendant in this case is valid and may not be dismissed.

More than 130 years ago, the Supreme Court held that an indictment that was not signed by the U.S. Attorney for the judicial district but was "found by the grand jury, and indorsed as a true bill by the foreman, and filed in open court according to law" was legally valid. *In re Lane*, 135 U.S. 443, 449 (1890); *see also United States v. Williams*, 504 U.S. 36, 47 (1992) (recognizing that the grand jury "is a constitutional fixture in its own right" and "belongs to no branch of the institutional Government"). Since then, courts have routinely concluded that any alleged defects involving the attorney for the government do not affect the validity of the indictment. *See, e.g.*, *Wheatley v. United States*, 159 F.2d 599, 600-01 (4th Cir. 1946) (citing cases); *see also United States v. Kelley*, 989 F.3d 67 (1st Cir. 2021) (citing more recent cases).

The modern Federal Rules are in accord. An indictment is validly returned so long as 12 grand jurors concur and the grand jury returns the indictment to a magistrate judge in open court. *See* Fed. R. Crim. P. 6(f); *cf.* ECF No. 40 (indictment). Likewise, the Rules require that an

21

indictment be signed by "an attorney for the government" (Fed. R. Crim. P. 7(c)(1)), which they define to include "(A) the Attorney General or an authorized assistant; (B) a United States attorney or an authorized assistant; … and (D) any other attorney authorized by law to conduct proceedings under these rules as a prosecutor" (Fed. R. Crim. P. 1(b)(1)).  And, of course, the Rules require the Court to disregard any "error, defect, irregularity, or variance that does not affect substantial rights."  Fed. R. Crim. P. 52(a).  Indeed, the Supreme Court has expressly held that defects in an indictment are not jurisdictional and thus are subject to the harmless- and plain-error standards of Rule 52.  *See, e.g.*, *United States v. Cotton*, 535 U.S. 625 (2002). Courts lack authority to use supervisory powers to create rules that conflict with the Constitution or the Federal Rules of Criminal Procedure (*e.g.*, *United States v. Tsarnaev*, 595 U.S. 302, 315-17 (2022)), and harmlessness standards are compelled by the Rules (*e.g.*, *United States v. Hasting*, 461 U.S. 499, 509 (1983)).

Dismissal may be available in some extremely rare cases where a proceeding violates a federal statute because the officer of the Department of Justice with exclusive statutory authority to conduct it refuses to do so.  *See, e.g.*, *United States v. Providence Journal Co.*, 485 U.S. 693 (1988) (dismissing petition for certiorari filed by court-appointed special prosecutor where 28 U.S.C. § 518(a) vested exclusive authority over Supreme Court litigation involving the United States in the Attorney General and Solicitor General, who declined to authorize petition).  But regardless of defendant's meritless attacks on the appointment order, the Special Counsel possesses an independent source of authority to prosecute him in this judicial district: his Presidential commission carrying the statutory powers conferred by § 547.  Thus, even assuming the Attorney General's delegation of authority under §§ 509, 510, 515, and 533 is unavailable, defendant's argument boils down to a quibble that the indictment reads "Special Counsel"

22

beneath David Weiss's name and not "U.S. Attorney." ECF No. 40, at 4.  Such

hypertechnicalities have no impact on the indictment's validity or to the prosecutor's statutory

authority to conduct this litigation on behalf of the United States. Dismissal is thus wholly

inappropriate.

      **B.**     **The alleged Appropriations Clause violation here could not justify dismissal.**

     As to remedy, defendant's Appropriation Clause argument asserts, with no analysis, that

"[a] prosecution that is made in violation of the Appropriations Clause must be dismissed."  ECF

No. 62, at 8.  Neither of his two principal cited cases support that proposition. In fact, they and

cases relying on them contradict it.[9]

     In *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), the Ninth Circuit held that an

appropriations rider prevented DOJ from using funds to prosecute individuals who acted in

"strict compliance" with state laws permitting medical marijuana.  Notably, however, the Ninth

Circuit remanded for an evidentiary hearing on compliance and expressly declined to decide

what remedy existed in a criminal prosecution if a violation of the Appropriations Clause had

occurred.  *See d.* at 1179.  However, the posture of the case is instructive: the Ninth Circuit held

that it had jurisdiction over the interlocutory appeal only because the defendant had requested

either dismissal of the indictment *or* an injunction against the prohibited use of funds.  *See Id.* at

---

    [9] The "see also" Supreme Court cases defendant cites following this statement deal
exclusively with Article III standing, not the appropriate remedy in the event of an
Appropriations-Clause violation. *See Collins v. Yellin*, 141 S. Ct. 1761, 1780 (2021) (standing to
assert separation-of-powers challenge); *Sheila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196 (2020)
(standing to assert Appointments Clause challenge); *Bond v. United States*, 564 U.S. 211, 220
(2011) (standing to assert Tenth Amendment challenge). The government assumes for purposes
of this response that defendant has Article III standing to challenge the permissible appropriation
of funds for his prosecution. But what remedy is available if the Court finds a violation of the
Appropriations Clause is a wholly distinct analysis. *See, e.g.*, *Collins*, 141 S. Ct. at 1781
(observing that scope of relief turns on the harm attributable to a constitutional violation).

1171-72; *see also* 28 U.S.C. § 1291(a) (permitting interlocutory appeals from decisions regarding injunctive relief).

In defendant's own second cited case, the Ninth Circuit affirmed the district court after it "enjoined the government from spending additional funds on the prosecution" after "finding that Pisarski and Moore strictly complied with California's medical marijuana laws." *United States v. Pisarski*, 965 F.3d 738, 740 (9th Cir. 2020). More recently, the First Circuit—adopting the Ninth Circuit's interpretation of the rider but finding the prosecution permissible—also noted that because "the defendants' motions are in substance aimed at preventing the DOJ from spending federal funds to continue their prosecution," they are "best seen as requests for injunctions." *United States v. Bilodeau*, 24 F.4th 705, 711 n.6 (1st Cir. 2022).[10] Thus, the overwhelming weight of authority rejects dismissal as a remedy for an asserted appropriations violation.

Notably, defendant's argument here stands in much different shoes than the medical-marijuana appropriations rider involved in the cited cases. Unlike those defendants, defendant cannot claim that prosecuting him *at all* violates a congressional prohibition on the use of appropriated funds; instead, his argument is only that one specific appropriation is not available. Thus, even if this Court were to agree with defendant, dismissal of the indictment is an excessive remedy because the government could simply employ other permissible appropriations. The Court cannot grant more relief than is warranted by the alleged constitutional violation, and here, the nature of defendant's objection cannot support dismissal of the entire indictment.

---

[10] Courts in the Sixth Circuit have taken a similar approach and found a prosecution proper, even assuming the same standard as the Ninth Circuit. *See United States v. Trevino*, 7 F.4th 414, 421-22 (6th Cir. 2021) (noting "[t]he district court and both parties on appeal characterize the motion as a request for injunctive relief"); *but see id.* at 421 n.5 (expressing "no definitive view" on the nature of the request as "injunctive relief").

**CONCLUSION**

Both of defendant's attacks on the appointment of the Special Counsel and on the funding used for this prosecution and investigation conflict with statutory text and well-established historical practice. Nor would they, even if meritorious, be legitimate reasons on which to dismiss a validly returned indictment by a grand jury.  The Court should deny his motion.

<div style="margin-left:50%">

Respectfully submitted,
DAVID C. WEISS
SPECIAL COUNSEL

By: _____

Leo J. Wise
Principal Senior Assistant Special
Counsel

Derek E. Hines
Senior Assistant Special Counsel

U.S. Department of Justice

</div>

25