# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN |
| | ) |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| Defendant. | ) |

## MR. BIDEN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO CHARGE A CONSTITUTIONALLY PERMISSIBLE OFFENSE

Abbe David Lowell  
Christopher D. Man  
WINSTON & STRAWN  
1901 L Street NW  
Washington, DC 20036  
Tel.: (202) 282-5000  
Fax: (202) 282-5100  
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)  
DALTON & ASSOCIATES, P.A.  
1106 West 10th Street  
Wilmington, DE 19806  
Tel.: (302) 652-2050  
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

## INTRODUCTION

What the prosecution's opposition demonstrates most is that this Court should stay its decision on this motion until the Supreme Court clarifies its view of the Second Amendment. The prosecution acknowledges that the Fifth Circuit has held 18 U.S.C. § 922(g)(3) unconstitutional under the Second Amendment in *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023)—the very statute at issue here prohibiting possession of a firearm by a user of a controlled substance—but it notes that the government has sought certiorari in that case. Opp. at 5 (citing Pet. for Cert., *United States v. Daniels*, No. 23-376 (U.S. filed Oct. 5, 2023)). In doing so, the Solicitor General noted that the Supreme Court has heard argument in *United States v. Rahimi*, No. 22-915 (U.S. argued Nov. 7, 2023), concerning the constitutionality of Section 922(g)(8), which prohibits firearm possession by someone subject to a domestic violence protective order, and asked the Supreme Court to hold the petition in *Daniels* until *Rahimi* is decided.[1] Additionally, the prosecution highlights that the Solicitor General also has sought certiorari in the Third Circuit's decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), holding that the prohibition against felons in possession in Section 922(g)(1) is unconstitutional. Opp. at 5 (citing Pet. for Cert., *Garland v. Range*, No. 23-374 (U.S. filed Oct. 5, 2023) (pending). Given that some guidance will come from the Supreme Court in *Rahimi*, and the prosecution's warranted optimism that the Supreme Court will review the more similar cases of *Daniels* and *Range*, this Court should await

---

[1] *Rahimi* will not necessarily be dispositive of *Daniels*. Although both cases concern prohibitions in Section 922(g), there is an important distinction between them. As Mr. Biden has highlighted, the central flaw at issue with Section 922(g)(3), the statute at issue in *Daniels*, is that it is a class-wide prohibition based on a status, that of being a user of a controlled substance or an addict. By contrast, *Rahimi* is different because Section 922(g)(8) involves a prohibition on gun ownership by someone who a court has found to be personally dangerous and who is subject to a judicially imposed domestic violence protective order. Although it is premature to guess how the Supreme Court may resolve *Rahimi*, this distinction could explain why Section 922(g)(8) is constitutional while Section 922(g)(3) is not.

1

that guidance from the Supreme Court before allowing this case to proceed to trial. However, even without further guidance from future Supreme Court decisions, the current law supports dismissal of the counts in this indictment.

I. **THE PROSECUTION SEEKS TO DEFEND LOST BATTLES IN DEFENDING THE CONSTITUTIONALITY OF SECTION 922(g)(3)**

    **A. The Supreme Court Has Squarely Rejected The Prosecution's Proposed Balancing Test For Restricting Gun Possession Based On Congress's Assessment Of Dangerousness**

The prosecution begins its defense of Section 922(g)(3) by staking out a position that the Supreme court has actually repudiated, claiming: "Anglo-American law has long recognized the government's ability to restrict access to firearms for those whose possession would present an increased risk of danger to public health and safety." Opp. at 1. While the Second Amendment was once understood to allow Congress to decide that certain classes of people could be deemed too dangerous to possess firearms, the Supreme Court has emphatically rejected that view. As the Third Circuit explained in *Range*, this sort of means-ends scrutiny was abrogated by the Supreme Court, which now holds that gun possession is presumptively constitutionally protected by the Second Amendment absent a historical exception that was recognized when the Constitution was adopted. *Range*, 69 F.4th at 100.

The Supreme Court explains that its recent cases have

> declined to engage in means-end scrutiny because '[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon.' . . . 'A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.'

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008) (emphasis in original)). Thus, regardless of the merit of stripping certain classes of people of firearms, the Third Circuit has emphasized that the

2

Supreme Court's reasoning necessitates that "the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Range*, 69 F.4th at 103 (quoting *Heller*, 554 U.S. at 636).

    **B. The Prosecution's Historical Analogs Have Been Rejected By Appellate Courts And Are Now Before The Supreme Court**

The prosecution next seeks to defend Section 922(g)(3) by searching for any historical analog that it finds close enough, but this same history was presented to the Fifth Circuit and rejected in *Daniels*. *See Daniels*, 77 F.4th at 349-356; *see also United States v. Rahimi*, 61 F.4th 443, 451–66 (5th Cir. 2023) (rejecting this history). The Supreme Court already has rejected much of the prosecution's historical arguments as referencing an irrelevant timeframe. *Compare* Opp. at 13 (invoking the medieval Statute of Northampton as historical support), *with Bruen*, 142 S. Ct. at 2139 ("the Statute of Northampton . . . has little bearing on the Second Amendment adopted in 1791"). The prosecution also argues historical examples to support its claims that courts have found that the prosecution has gotten backwards.

Most notably, the prosecution invokes the Militia Act of 1662, which was used to disarm Protestants, but that Act was limited by the 1689 English Bill of Rights that the Supreme Court describes as the "predecessor to our Second Amendment." *Bruen*, 142 S. Ct. at 2141 (quoting *Heller*, 554 U.S. at 593). Thus, rather than illustrate the kind of gun restrictions the Framers found permissible, the subsequent history demonstrates that the Militia Act reflected the kind of harm that the Second Amendment was intended to prevent. *See, e.g.*, *Rahimi*, 61 F.4th at 456. It was these sorts of abuses of the right to bear arms that led to the Second Amendment; they are not exceptions to it. Justice Thomas has written extensively on this subject and explained "the history from England, the founding era, the antebellum period, and Reconstruction leave no doubt that the

right to 'bear Arms' includes the individual right to carry in public in some manner." *Rogers v. Grewal*, 140 S. Ct. 1865 (2020) (Thomas, J., dissenting from denial of certiorari).

In any event, there is no need for this Court to wade through the historical record. The Solicitor General has raised the same history with the Supreme Court in its merits brief before the Supreme Court. Br. of United States, *United States v. Rahimi*, No. 22-915 (U.S. filed Aug. 14, 2023). Thus, it makes sense to let the Supreme Court decipher the historical record rather than accept this set of prosecutors' views of it.

### C. The Prosecution Overstates The Burden Of This Facial Challenge

The prosecution seeks to raise an insurmountable obstacle by emphasizing that Mr. Biden must demonstrate that there are "*no set of circumstances*" where Section 922(g)(3) could be constitutionally applied to sustain a facial challenge, but the prosecution misstates the test. Opp. at 1 (emphasis by prosecution). The prosecution accurately attributes this inartful formulation of the test to *United States v. Salerno*, 481 U.S. 739, 745 (1987), but that formulation has been modified. Now, the Supreme Court explains that a litigant can demonstrate that a statute is facially unconstitutional if it fails *Salerno*'s "no set of circumstances" test "or show that the law lacks 'a plainly legitimate sweep.'" *Am. For Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)); *see also Bruni v. City of Pittsburgh*, 824 F.3d 353, 362 (3d Cir. 2016) ("To ultimately succeed on the merits, a plaintiff theoretically has 'to establish that no set of circumstances exists under which [the ordinance] would be valid, or that the [ordinance] lacks any plainly legitimate sweep.") (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010) (alterations in *Bruni*).

The formalism the prosecution invokes in separating facial from as-applied challenges is overblown as well. The Third Circuit explains: "the distinction between facial and as-applied

4

challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Bruni*, 824 F.3d at 363 (3d Cir. 2016) (quoting *Citizens United v. FEC*, 558 U.S. 310, 331 (2010); *see also John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) ("The label is not what matters."). Thus, the Third Circuit has explained in the Second Amendment context that "the distinction between facial and as-applied claims 'goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint.'" *Drummond v. Robinson Township*, 9 F.4th 217, 225 n.5 (3d Cir. 2021) (quoting *Citizens United*, 558 U.S. at 331). As the Third Circuit explains, "the Supreme Court typically 'consider[s] facial challenges simply by applying the relevant constitutional test to the challenged statute, without trying to dream up whether or not there exists some hypothetical situation in which application of the statute might be valid.'" *Drummond*, 9 F.4th at 225 n.5. (quoting *Bruni*, 824 F.3d at 363)); *see also Grange*, 552 U.S. at 450 (warning courts deciding facial challenges not to "speculate about 'hypothetical' or 'imaginary' cases"); *Janklow v. Planned Parenthood, Sioux Falls Clinic*, 517 U.S. 1174, 1175 (1996) (Stevens, J., respecting denial of cert.) (noting that the "no set of circumstances" formulation "has been properly ignored in subsequent cases," and collecting cases).

      The prosecution's effort to find refuge by searching for a minute category of Section 922(g)(3) prosecutions that would not violate the Second Amendment fails to defeat a facial challenge for that reason. Section 922(g)(3) lacks a legitimate sweep. Mr. Biden acknowledges that there were statutes at the time the Second Amendment was adopted that allowed people who were actively intoxicated to be disarmed, and that such a targeted prohibition would pass

5

constitutional muster.[2]  But Section 922(g)(3) sweeps far more broadly from the common law prohibitions based on the conduct of being intoxicated and armed and to instead regulate people based on their status as a user or addict of drugs, even when they may not have used drugs in days or weeks or months.  Importantly, not even the prosecution claims that Mr. Biden's conduct would fall into this constitutionally permissible zone of prohibition for those who purchased a firearm while intoxicated and he signed the form—it has not alleged in the indictment that Mr. Biden was using unlawful drugs at the time he purchased the firearm.

The prosecution claims the sweep of Section 922(g)(3) is cabined from reaching all persons who ever have used or been addicted to unlawful drugs, but its explanation is no better than to say the sweep is excessive but not as excessive as it could be.  The prosecution tells us that to be a "user" under Section 922(g)(3), "courts have uniformly determined that the relevant unlawful drug use must be both (a) regular and (b) temporally linked to the gun possession." Opp. at 8.  Similarly, it notes that someone who is "addicted" is someone who uses "habitually" and "endanger[s] the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction." *Id.* at 8–9 (quoting 21 U.S.C. § 802(1)).

But however regularly or habitually someone uses unlawful drugs, the prosecution still claims a felony has been committed if someone who possessed a firearm had last used unlawful drugs under an undefined temporal connection that could be days or weeks, perhaps months, earlier (to our knowledge, the Department of Justice has never identified the outer boundary of what it

---

[2] This appears to be the only context in which Section 922(g)(3) could be prosecuted consistent with the Second Amendment.  The prosecution has not identified any other basis to differentiate where some as-applied challenges would fail and others would succeed.

considers this temporal nexus to be).[3]  That is a far cry from the common law prohibitions against being both armed and intoxicated, and even more modern DUI laws that ask whether someone had consumed too much alcohol *while* driving, rather than punish a completely sober driver for drinking to excess days or weeks before.  If the constitutional scope of the statute were limited to the moment when the firearm is purchased and the form is signed, extending the scope of the statute to reach drug use that occurred days, weeks, or perhaps months, earlier multiplies the scope of Section 922(g)(3) exponentially, rendering it a law that lacks "a plainly legitimate sweep." *Bonta*, 141 S. Ct. at 2387.  Without such a clear limitation, under current Supreme Court jurisprudence, the statute is unconstitutional.

The fact that Congress could have enacted a more targeted statute prohibiting the *conduct* of being armed while using unlawful drugs does not save Section 922(g)(3) from a facial challenge that sweeps more broadly to extend the temporal connection between simultaneous drug use and firearm possession to situations where those events can be separated by days or weeks, or perhaps months.  *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), illustrates the fallacy of that argument. The Supreme Court noted in *Patel* that it has struck down numerous statutes permitting warrantless searches under the Fourth Amendment, even though some searches executed pursuant to those statutes would be constitutionally permissible.  If the mere fact that some searches conducted under

---

[3] The prosecution dismisses Mr. Biden's concern that its interpretation of Section 922(g)(3) would render a substantial number of American's felons, but noting the limitations on the statute does not alter the math.  Millions of Americans regularly use marijuana (among other controlled substances) and possess firearms, while knowing that marijuana use is unlawful at the federal level. ATF Form 4473 in asking about unlawful drug use when purchasing a firearm specifically contains a bolded warning: "**Warning**:  The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside." ATF Form 4473 (Aug 2023); https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download.  The fact that ATF deems such a warning necessary seems to be an acknowledgment of the scope of the problem that Mr. Biden has highlighted.

7

those statutes would be constitutional could defeat a facial challenge, the Supreme Court explained that "logic would preclude facial relief in every Fourth Amendment challenge to a statute authorizing warrantless searches," a principle the Court had repeatedly rejected. *Id.* at 418.

The same is true under the Second Amendment, where facial challenges are frequently upheld. *See, e.g.*, *Bruen*, 142 S. Ct. at 2122 (invalidating licensing scheme that depended on a showing of a need for self-defense); *McDonald v. City of Chicago*, 561 U.S. 742 (2010) (extending *Heller* to the states and striking down ban on handgun possession); *Heller*, 554 U.S. at 636 (invalidating ban on handguns in the home); *Lara v. Comm'r Penn. State Police*, 2024 WL 189453 (3d Cir. Jan. 18, 2024) (holding Pennsylvania restrictions on gun access for young adults facially unconstitutional). Section 922(g)(3)'s expansive *status-based* prohibition cannot be upheld against a facial challenge simply because a *conduct-based* prohibition limited to those who are armed while intoxicated would not offend the Second Amendment any more than overly-expansive warrantless search statutes can be upheld because some searches would be permissible under the Fourth Amendment.

Take the Third Circuit's recent decision in *Lara*, 2024 WL 189453, at *12. The Court found Pennsylvania's restrictions on gun possession by persons aged 18-21 facially unconstitutional, although surely there is someone in that age group who would fall within one of the exceptions allowing persons to be disarmed despite the Second Amendment. The fact that such persons could be disarmed did not prevent the statute from being held unconstitutional, it means only that the government could enact a more targeted prohibition. The same is true of Section 922(g)(3). If Congress seeks to enact a prohibition comparable to those at the nation's founding that prohibited being armed while intoxicated, it can do so.

8

To be sure, courts sometimes impose a limiting construction on a statute to save it, but even then due process notice principles prevent the new limiting construction from being imposed retroactively, *see, e.g.*, *Marks v. United States*, 430 U.S. 188, 194–95 (1977), and this judicial gloss on a statute must be charged in an indictment like any other element, *see, e.g.*, *United States v. Simmons*, 96 U.S. 360, 363 (1877). Whatever limiting principle the prosecution imagines may exist that would render Section 922(g)(3) constitutional in some contexts and not others, it has yet to be announced by any court, so neither of these requirements has been satisfied. Moreover, if the line is drawn at being both actively using drugs and possessing a firearm, this prosecution would fail because the indictment does not allege that Mr. Biden was using drugs when he bought the firearm.

If such a limiting principle were to be announced, Mr. Biden certainly should be allowed to bring an as-applied challenge at that point, based on whatever new test the Court announces. *See, e.g.*, *Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255, 263 (3d Cir. 2008) (explaining the Court permits new arguments based on a change in the law as an exception to the normal waiver rules); *E.I DuPont de Nemours and Co. v United States*, 508 F.3d 126, 136 n.6 (3d Cir. 2007) (permitting plaintiff to raise claims that it voluntarily dismissed before the district court on appeal due to an intervening change in law). The prosecution's effort to find a gotcha moment in claiming that Mr. Biden waived his right to bring an as-applied challenge rings hollow, given that no court has yet adopted its interpretation or drawn the line as to what applications of the statute are constitutional and which are not.

Additionally, even the prosecution recognizes that Mr. Biden did not waive his ability to challenge such a newly formulated limiting principle. In characterizing Mr. Biden's argument, the prosecution states that in addition to challenging the statute as facially unconstitutional, he "goes

9

on to argue that as-applied determinations under § 922(g)(1) or (3) would just create a vagueness problem." Opp. at 6 (citing DE 61 at 5 n.4). The argument that the prosecution seeks to minimize as "just" a vagueness problem is more substantial than it claims; it is a claim that Section 922(g)(3) is "void for vagueness." *Id.* (quoting *Range*, 69 F.4th at 118 (Krause, J., dissenting)). Mr. Biden cannot be expected to foresee that the Court may draw a line differentiating constitutional applications of the statute from those that are not, or foresee where that line will be drawn. And he certainly cannot be expected to know his conduct is unlawful if the Court limits the constitutional applications to persons who are simultaneously (or at some permissible definition of "temporal") using an unlawful drug and possessing a firearm, as the indictment does not allege that he has done that.

This sort of issue was foreshadowed by the Third Circuit. *Range* upheld an as-applied challenge to Section 922(g)(1)'s prohibition on possession by a felon, but the decision was tantamount to a finding that the statute as a whole is unconstitutional. Strictly speaking, *Range* is a narrow opinion because the Third Circuit's decision held only that there was no Founding Era exception for disarming someone convicted of the plaintiff's particular non-violent offense, but the practical implications of the decision are much broader because there is no such historical analog for prohibiting possession by someone convicted of any felony. As Judge Shwartz explained in dissent: "While my colleagues state that their opinion is narrow, the analytical framework they have applied to reach their conclusion renders most, if not all, felon bans unconstitutional." *Range*, 69 F.4th at 113 (Shwartz, J., dissenting). Similarly, Judge Krause explained: "As interpreted today by the majority, § 922(g)(1) is rendered so vague as to be facially unconstitutional." *Id.* at 133. That is because "offenders cannot possibly know in advance of a court's retroactive declaration whether possessing a firearm post-conviction is a constitutional

10

entitlement or a federal felony" and "the majority opinion makes the statute's *mens rea* impossible to establish." *Id.*

Judges Shwartz and Krause are right about the broader implications of *Range*. If the framework requires the government to identify a historical analog where someone convicted of a particular felony could be disarmed and no person convicted of any felony can identify such an analog, the *Range* framework is tantamount to finding the statute facially invalid. Moreover, if a court could divine that some felonies could justify disarmament, the statute would be void for vagueness and open to challenges for a lack of intent because no defendant could know in advance whether their prior felony conviction stripped them of constitutional protection.

The same is true of Section 922(g)(3). Mr. Biden should not have had to guess when he purchased a firearm in 2018 whether some court in 2024, six years later, would adopt a new test that would decide whether his purchase was constitutionally protected or a felony. That sort of vagueness is an anathema to due process.

## II. THE UNCONSTITUTIONALITY OF SECTION 922(g)(3) REQUIRES THE FALSE STATEMENT AND CAUSING A RECORD TO BE STORED WITH FALSE INFORMATION CHARGES TO BE DISMISSED AS WELL

### A. The Alleged False Statement Is No Longer "Material To The Lawfulness Of The Sale" If Section 922(g)(3) Is An Unconstitutional Prohibition On The Sale

The charges for falsely checking a box on a form denying being a user of a controlled substance and causing the seller to retain that form with a falsely checked box both fall to the wayside, along with the charge for unlawful possession of a firearm, once Section 922(g)(3) is found unconstitutional. The whole purpose of asking a buyer about his use of controlled substances, and the storage of those statements, is to verify that a gun sale is not prohibited by Section 922(g)(3).

11

The prosecution claims the firearm-related false statement statute in 18 U.S.C. § 922(a)(6) in Count 1 and the related charge of causing a false record to be recorded under 18 U.S.C. § 924(a)(1)(A) in Count 2 should be viewed as having a different purpose; one that is not focused on whether someone has lawfully complied with the federal firearm laws, but that instead serve to police whether people are entirely honest. In the prosecution's telling, even the whitest of lies would subject someone to a federal felony conviction. The prosecution's sweeping argument is wrong.

The face of Section 922(a)(6) is not nearly as broad as the prosecution suggests. Rather than reach all false statements, it requires that the false statement concern "any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter." 18 U.S.C. § 922(a)(6); *see United States v. Laboy-Torres*, 553 F.3d 715, 717 (3d Cir. 2009) (explaining that "materiality [is] an element necessary for conviction under § 922(a)(6)"). While dishonesty is no virtue, it is not necessarily a crime. If a federal firearm dealer proudly asks a customer whether he enjoys the store's coffee and the customer politely responds that he does, the customer has not committed a felony if that answer was a lie. The same is true if he falsely denied driving to the store on an expired driver's license. Nor would the customer commit a felony by saying his wife wanted him to have a gun for the family's protection, when he knows she does not want a gun in the house. Such dishonesty may be worthy of a family counseling session, but it is not a criminal felony because it has nothing to do with whether the man can legally buy the gun. By the same token, if Section 922(g)(3) is unconstitutional and cannot provide a basis for denying the sale of a firearm, any lie told about complying with that provision is immaterial. Such a false statement is not actionable under Section 922(a)(6).

### B. The Prosecution's Case Citations Do Not Concern The Statutes At Issue And Are Readily Distinguishable

In response, the prosecution again searches for something to argue and invokes cases from completely different contexts, involving statutes with no materiality requirement. The prosecution first invokes *Lachance v. Erickson*, 522 U.S. 262 (1998) (Opp. at 35, 37), which is strikingly different than this case. The issue in that case was whether a federal employee could face adverse employment actions for not just engaging in misconduct, but also lying about their misconduct. The Supreme Court held that lying about their misconduct was punishable under a statute that "provides that an agency may impose the sort of penalties involved here 'for such cause as will promote the efficiency of the service.'" *Id.* at 265 (quoting 5 U. S. C. § 7513(a)). Thus, *Lachance* holds only that an employee who lies to their employer about their own misconduct can be punished because such lies are material to promoting the efficiency of the service. It does not stand for the proposition that anyone can be criminally punished with a felony conviction for making an immaterial falsehood even if tied "temporally" to a gun purchase (e.g. lying that a spouse wanted a gun to protect the family or that the driver buying the gun had a valid driver's license when he did not).

The prosecution then traces its imagined doctrine that someone can be criminally punished for telling immaterial falsehoods back to *United States v. Kapp*, 302 U.S. 214 (1937) (Opp. at 35–36), but that case stands for a different principle. In *Kapp*, the defendants lied to the government trying to obtain benefits under the Agricultural Adjustment Act, which was found unconstitutional. The Supreme Court held that the invalidity of the statute the defendants hoped to benefit from did not defeat the indictment brought under a *different statute* for seeking to defraud the United States. In rejecting that argument, the Supreme Court explained: "It might as well be said that one could embezzle moneys in the United States Treasury with impunity if it turns out that they were

13

collected in the course of invalid transactions." *Id.* at 217. The defendants in *Kapp* sought to defraud the United States, and they had attempted to defraud the United States. The fact that the benefits they sought should not have been attainable because the statute that authorized them was later found unconstitutional does not change that fact. A conspiracy to defraud the United States is a crime, regardless of whether the conspiracy achieves its object.

If anything, *Kapp* cuts the other way for the prosecution. *Kapp* was careful to explain that the defendants were not charged with a conspiracy to violate the Agriculture Adjustment Act, which had been found unconstitutional, as such a conspiracy to commit a non-crime would not be a crime. *Id.* That is essentially the same sort of situation here. Lying about one's status as a drug user or addict when purchasing a firearm is only material to whether someone is prevented from owning a firearm under Section 922(g)(3). If Section 922(g)(3) is unconstitutional, such a lie is immaterial, comparable to the non-offense of conspiring to violate an unconstitutional statute alluded to in *Kapp*.

Next, the prosecution invoked *Dennis v. United States*, 384 U.S. 855 (1966) (Opp. at 35–36), but *Dennis* is no different from *Kapp*. It upheld a prosecution to defraud the United States where the lie being told concerned a statute that was arguably unconstitutional. The Supreme Court declined to reach the constitutionality of that statute because the case involved "a prosecution directed at petitioners' fraud. It is not an action to enforce the statute claimed to be unconstitutional." *Id.* at 867.

The prosecution then adds a parenthetical citation to *Bryson v. United States*, 396 U.S. 64 (1969) (Opp. at 36), but *Bryson* does not add anything as it merely "found 'no significant differences' between this case and *Dennis*." 396 U.S. at 66. There was no dispute in *Bryson* that the defendant made a material false statement. The Supreme Court held that the fact that the

defendant never should have been forced to answer that question under an arguably unconstitutional statute did not excuse him from giving a false answer. *Id.* at 72. *Bryson* says nothing about a prosecution being valid where an *immaterial* false answer is given.

Likewise, the prosecution makes passing references to *United States v. Knox*, 396 U.S. 77 (1969) (Opp. at 38), which is similar to *Bryson* and equally inapplicable. *Knox* involved an IRS form that asked questions that could call for self-incriminating answers, and the Supreme Court previously held that no one could be prosecuted for invoking their Fifth Amendment right by refusing to answer. *Id.* at 80 n.3. But rather than do that, the defendant chose to answer and gave materially false answers. The Supreme Court held that his conviction for telling materially false statements was valid.

*Dennis* and *Knox* stand only for the proposition that someone who makes materially false statements cannot complain that the question never should have been asked. Neither case stands for the proposition that someone can be prosecuted for making false statements that are *not* material.

Finally, the prosecution invokes a non-binding, out-of-circuit precedent in *United States v. Holden*, 70 F.4th 1015 (7th Cir. 2023) (Opp. at 36–37), but, while *Holden* is at least a gun case, it too is distinguishable. *Holden* lied on his ATF form when buying a gun by falsely denying that he was not under indictment, when he actually had been charged with a violent offense of battering a public safety official. *Id.* at 1016. The defendant claimed the false answer was not material under Section 922(a)(6) because he believed Section 922(n), which prevented someone under indictment from purchasing a gun, violated the Second Amendment. The Seventh Circuit disagreed because Section 922(n) is constitutional, as someone under indictment for a violent felony can be disarmed under the Second Amendment. *Id.* at 1017–18. As the prosecution noted in Mr. Biden's case,

15

denial of possession of a firearm is a standard condition of pretrial release where someone is charged with a felony. (DE 69 at 19.) The Seventh Circuit also noted that even if Section 922(n) was unconstitutional, the false answer would be relevant to an investigation of numerous other prohibitions on firearm possession, such as whether the applicant was a fugitive, whether the charge involved a prior conviction, or whether the indictment resulted in a conviction. 70 F.4th at 1018 (citing 18 U.S.C. §§ 922(g)(1), (g)(2) & (g)(5)). Thus, that court concluded "a truthful answer to the question 'are you under indictment?' can be material to the propriety of a firearms sale, whether or not all possible applications of § 922(n) comport with the Second Amendment." *Id.*

*Holden* is readily distinguishable. Unlike Section 922(n), which the Seventh Circuit found constitutional, Mr. Biden has demonstrated (and a federal court of appeals has held) that Section 922(g)(3) does violate the Second Amendment. And unlike Section 922(n), which implicates numerous other crime-related prohibitions on gun ownership, Section 922(g)(3)'s question about drug use does not. If Section 922(g)(3) cannot provide a constitutional basis for disarming Mr. Biden, a false answer to that question is not "material to the lawfulness of the sale" for purposes of Section 922(a)(6).

### C. The *Abramski* Dissent Disproves The Prosecution's Claim Under Sections 922(a)(6) And 924(a)(1)(A)

The prosecution claims that Mr. Biden "fails to acknowledge *any* of the Supreme Court precedent within the 80-plus years since *Kapp*—which includes *LaChance*, *Bryson*, *Knox*, and *Dennis*—or the Seventh Circuit's recent application of those principles to this specific context in *Holden*," and that he is "ignoring more than 80 years of consistent, directly applicable Supreme Court decisions" (Opp. at 35, 38), but those cases are not relevant. That is why the Supreme Court

16

ignored this line of cases too when the issue arose in the context of the very statutes charged here, Sections 922(a)(6) and 924(a)(1)(A).  *See Abramski v. United States*, 573 U.S. 169 (2014).

The central issue in *Abramski* was whether Section 922(a)(6) and 924(a)(1)(A) were violated when a purchaser falsely claims he was purchasing a gun for himself, when he was really purchasing the gun for a strawman, but that strawman could legally have purchased the gun himself.  The defendant argued the answer was not "material to the lawfulness of the sale" because the strawman could make the purchase legally.  The Supreme Court upheld the convictions because the purchaser's true identity, and recording of it, serves many material purposes, including being able to trace a gun used in a crime to its actual owner.  *Id.* at 182.

There was a subsidiary question in *Abramski* below the surface of whether Section 924(a)(1)(A) would be violated if a false statement to an ultra vires question was given.  The majority did not reach the question because it found that the question was proper and the answer was material.  *Abramski*, 573 U.S. at 192 n.11.  Four members of the Court did reach the question, however, and Justice Scalia, joined by Chief Justice Roberts, Justice Thomas and Justice Alito declared that Section 924(a)(1)(A) is not a statute that "criminalizes a false answer to an ultra vires question."  *Abramski*, 573 U.S. at 206 (Scalia, J., dissenting).

The prosecution faults Mr. Biden for relying upon the dissent in *Abramski*, claiming it is "a nonbinding dissent" and "legally untenable" because "a Supreme Court dissent did not—and could not—abrogate the Court's directly applicable precedent" discussed above (Opp. at 37-38),[4] but the prosecution loses sight of the fact that *every* member of the Court to consider the issue,

---

[4] The prosecution claims *Abramski* is "also factually distinguishable," which is true but not relevant in any way that matters.  Opp. at 37.  The questions asked and answered in *Abramski* and here are different, but that does not change that fact that the answer to an ultra vires question is not prosecutable, whatever the question.

17

three of which are still on the Court, agreed with Mr. Biden's position. Moreover, no Justice cited any of the cases that the prosecution addresses here—they ignored this line of cases too.

That was no oversight. The Solicitor General made the same claim the prosecution makes here that any lie, no matter how trivial, is punishable as a felony, citing *Bryson* and *Knox*, as the prosecution does here. Br. of the United States at 34, *Abramski v. United States*, No. 12-1493 (U.S. filed Dec. 23, 2013). Thus, the four Justices who did reach the issue did not find the government's argument meritorious or even worth mentioning, and no Justice in the majority even flagged this line of cases as an issue to consider. Given the fact that the prosecution's line of cases was irrelevant to the question before the Court in *Abramski* and is irrelevant here, for the reasons Mr. Biden explains above, it is no surprise that no Justice on the Court bothered to mention it. This Court should not credit it either.

## CONCLUSION

The Court should dismiss the indictment.

Dated: January 30, 2024

Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2024, I filed the foregoing Reply in Support of Mr. Biden's Motion to Dismiss the Indictment with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*