**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

_____

UNITED STATES OF AMERICA

v.

ROBERT HUNTER BIDEN,

Defendant.
_____

)
)
)
)
)
)
)
)
)
)
)
)

Criminal Action No. 1:23-cr-00061-MN


**MR. BIDEN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE**
**INDICTMENT BECAUSE SPECIAL COUNSEL WEISS WAS UNLAWFULLY**
**APPOINTED AND THIS PROSECUTION VIOLATES**
**THE APPROPRIATIONS CLAUSE**

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

_Counsel for Robert Hunter Biden_

## INTRODUCTION

It appears from his opposition filing that Mr. Weiss cannot decide whether he wants the Court to view him as a Special Counsel under Department of Justice (DOJ) regulations or as a Special Counsel who somehow exists despite those regulations (or if all else fails, he will start again as a U.S. Attorney). On the one hand, Mr. Weiss accepts that he cannot be a Special counsel consistent with those regulations. Those regulations require that "[t]he Special Counsel shall be selected from outside the United States Government," 28 C.F.R. § 600.3, which makes sense because a Special Counsel appointment is needed only "when the Attorney General concludes that extraordinary circumstances exist such that the public interest would be served by removing a large degree of responsibility for the matter from the Department of Justice." 64 Fed. Reg. 37038 (July 9, 1999). No degree of responsibility is removed from DOJ through an appointment of a U.S. Attorney who is a part of DOJ. Nevertheless, when he seeks to use an appropriation for appointed counsel who are "independent" of the federal government, Mr. Weiss says he is just like those real Special Counsel appointed under the regulations who are appointed from *outside* the federal government. The truth, however, is that DOJ's regulations flatly preclude Mr. Weiss from being appointed a Special Counsel, and his DOJ insider status prevents him from using an appropriation for counsel who are "independent" of DOJ.

Mr. Weiss devotes much of his opposition to setting up strawmen and knocking them down, rather than addressing Mr. Biden's actual arguments. Mr. Biden does not contest the Attorney General's broad authority to appoint whomever he chooses to prosecute any federal case, but he does contest the Attorney General's more limited authority to appoint someone in a specific position created by regulation called "Special Counsel." A Special Counsel, like its predecessor, the Independent Counsel, is a unique prosecutor—one appointed from *outside* the United States

government when there is a concern that a conflict of interest may exist from *within* the United States government. *Compare* 28 U.S.C. § 593(b)(2) ("The division of the court may not appoint as an independent counsel any person who holds any office of profit or trust under the United States."), *with* 28 C.F.R. § 600.3 ("The Special Counsel shall be selected from outside the United States Government."). That makes sense because someone cannot be both independent of a conflict within the United States government and a part of the United States government at the same time. The problem here is that Mr. Weiss is not eligible to be a Special Counsel because he already is part of the United States government as the U.S. Attorney for the District of Delaware, so he is not independent of the United States government.

The fact that "Special Counsel" is a defined term is not lost on the Attorney General, as he explicitly subjected Mr. Weiss to the regulations setting out what a Special Counsel can and cannot do. Order 5730-2023 (Aug. 11, 2023) ("Sections 600.4 to 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel."). But Mr. Weiss cannot be given the title Special Counsel and the powers of a Special Counsel when he is barred by DOJ's own regulations from being a Special Counsel. The Attorney General creates a façade by calling Mr. Weiss a "Special Counsel," when he is not, to create the illusion this is an investigation and prosecution is being conducted independent from DOJ when it is not.

The Special Counsel asks this Court not to peek behind the curtain so he can conceal an additional Appropriations Clause problem. Special Counsel's Weiss's funding comes from a congressional appropriation for "independent counsel."[1] Again, the Special Counsel sets up a

---

[1] "[A] permanent indefinite appropriation is established within the Department of Justice to pay all necessary expenses of investigations and prosecutions by *independent counsel* appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." *See* Pub. L. 100–202, § 101(a) [title II], Dec. 22, 1987 (emphasis added).

strawman to knock down by arguing that the appropriation includes more than just the Independent Counsel appointed under the expired Independent Counsel Act.  Fine.  Mr. Biden does not argue otherwise, but Special Counsel Weiss must still be "independent" of the United States government and, structurally, as the U.S. Attorney, he is not.

## ARGUMENT

## I.    MR. WEISS WAS UNLAWFULLY APPOINTED SPECIAL COUNSEL

### A.  DOJ Regulations Render Mr. Weiss Ineligible To Be Appointed Special Counsel

The Special Counsel does not contest that he is an officer of the United States and ineligible to be appointed as Special Counsel under DOJ regulations, but he makes the curious argument that the Attorney General can appoint him as Special Counsel in violation of an explicit legal prohibition anyway.  The Special Counsel claims the Attorney General's authority to appoint a Special Counsel is not exclusively under the Special Counsel regulations, and notes that the Attorney General made his appointment under 28 U.S.C. §§ 509, 510, 515, and 533.  Opp. at 8. In his view, the Attorney General can just ignore the law governing his appointment.  But like everyone else, the Attorney General must follow the law.

Sections 509, 510, 515 and 533 may authorize the Attorney General to appoint someone as a prosecutor, but they make no mention of his authority to appoint someone as "Special Counsel."  Instead, "Special Counsel" is a term of art created by DOJ regulations themselves.  *See* 28 C.F.R. §§ 600.1-600.10.  Those regulations contain a specific prohibition against appointing a United States government insider as Special Counsel, which state a "Special Counsel shall be selected from outside the United States Government."  *Id.* § 600.3.  Therefore, the Attorney General's general authority has been limited by his own regulations in this specific context.  *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (noting the

truism that specific law controls over the general).  The prohibition against the Attorney General appointing anyone within the United States government in Section 600.3 would be meaningless if the Attorney General can ignore this "shall" command at will by invoking some prior general authority all Attorneys General had or a general statute that applies in other contexts.  Thus, while the Attorney General's broad statutory authority may exist, he has limited his authority to appoint Special Counsel by regulation.  Those regulations have the force of law, *see, e.g.*, *United States v. Nixon*, 418 U.S. 683 (1974).

The Special Counsel claims "the Supreme Court approved the Attorney General's use of §§ 509, 510, 515, and 533 to delegate investigatory and prosecutorial authority to the Special Prosecutor" in *Nixon* (Opp. at 4–5), which is true, but those statutes cannot override Section 600.3's prohibition.  *Nixon* cuts decisively against the Special Counsel.  *See also* 38 FR 14688 (June 4, 1973) (Special Prosecutor regulations).

The context in which *Nixon* was decided should not be forgotten.  There,

> counsel for Nixon argued that the Watergate Special Prosecutor could not challenge a claim of executive privilege made by the President.  The Court rejected this contention on the basis of a *regulation* promulgated by the Attorney General which gave the Special Prosecutor the explicit power to contest the invocation of executive privilege.

*United States v. Exxon Corp.*, 470 F. Supp. 674, 684 (D.D.C. 1979) (emphasis added).  President Nixon maintained this was an "intra-branch dispute between a subordinate and superior officer of the Executive Branch," *Nixon*, 418 U.S. at 692, and argued "the President, as the chief executive officer, and not the Special Prosecutor or the Judiciary, is and remains the final authority as to what presidential material may be utilized in the furtherance of any prosecution." Br. of Nixon at 28–29, No. 73-1766, *United States v. Nixon* (U.S. filed June 21, 1974).  The Supreme Court found the case justiciable and found that the President's authority as the head of the Executive Branch to conduct criminal prosecutions on behalf of the United States had been delegated to the Attorney

General who, through the Special Prosecutor *regulation*, had delegated the authority to handle that case to the Special Prosecutor. The Court held that the Attorney General's *regulation* was binding and prevented both the President or his Attorney General from withdrawing that delegation so long as the regulation was in effect. The Supreme Court explained:

> [I]t is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority. But he has not done so. So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.

*Nixon*, 418 U.S. at 696.

By the same token, Section 600.3 remains in effect and it flatly precludes the Attorney General from appointing a Special Counsel from within the United States government. As in *Nixon*, the Attorney General could seek to amend or revoke the regulation, but he cannot simply ignore it. Neither President Nixon nor his Attorney General had the audacity to do so, but it remains an option for the current President and Attorney General.

The Special Counsel's notion that the Attorney General can use his general statutory authority to appoint any prosecutor to justify naming a Special Counsel who is ineligible to be a Special Counsel is further undermined by the Independent Counsel Act. When it was in force, a special court was convened to appoint an Independent Counsel when the Attorney General determined one should be appointed. *Morrison v. Olson*, 487 U.S. 654, 661 (1988). By the Special Counsel's reasoning, the Attorney General could have cut this special court out of the process and side-stepped the Independent Counsel Act by selecting his own choice for Independent Counsel under the Attorney General's general authority under Sections 509, 510, 515, and 533. That would have defeated the very purpose of the Independent Counsel Act. To be sure, the Attorney General always had the authority to appoint a prosecutor to handle any particular case, but the Attorney

5

General could not circumvent the Independent Counsel Act by appointing an Independent Counsel. Likewise, the Attorney General cannot side-step his own Special Counsel regulations to appoint a Special Counsel who is ineligible to serve.[2]

### B.  The Special Counsel Regulations Are Enforceable

The Special Counsel next argues that the Special Counsel regulations are not enforceable because they are internal rules and expressly disclaim that they do not create any rights, but this position is patently inconsistent with *Nixon*.  In *Nixon*, the Supreme Court rejected a similar claim that a regulation appointing a Special Prosecutor could not limit the President's "absolute discretion to decide whether to prosecute a case."  *Nixon*, 418 U.S. at 693.

There is no sense in which the regulation appointing a Special Prosecutor in *Nixon* can be considered any less of an internal rule for appointing a prosecutor than the Special Counsel regulations at issue here (they invoke the same statutory authority and do the same thing), but the Supreme Court unanimously found that regulation binding.  *Nixon* found "the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it."  418 U.S. at 696.

*Nixon* would have come out the other way, in President Nixon's favor, if the Special Counsel is right and such regulations are non-binding, internal rules that the Judicial Branch is

---

[2] The Special Counsel cites *In re Sealed Case*, 829 F.2d 50 (1987), noting that Independent Counsel Walsh had been given authority under the Independent Counsel Act and the Attorney General's other statutory authorities, but that instance was sui generis.  Mr. Walsh was first appointed Independent Counsel by the special court and, after Oliver North challenged the constitutionality of the Independent Counsel Act, the Attorney General delegated Mr. Walsh "identical" authority as a backstop in case the Independent Counsel Act was found unconstitutional.  *Id.* at 267.  Thus, the Attorney General had not attempted an end-run around the Independent Counsel Act or sought to appoint an ineligible Independent Counsel.  The Attorney General's independent action was irrelevant in the sense that it did not give Mr. Walsh any power he did not already have unless the Independent Counsel Act was invalidated.

powerless to enforce when the President or Attorney General decides the law should not be followed.  If that were true, President Nixon could have ignored the delegation under the regulation and used his authority as head of the Executive Branch to assert executive privilege (or ordered his Attorney General to do so, as he did in the "Saturday Night Massacre") in refusing to enforce the subpoena, and the Special Prosecutor would have been powerless to rely upon the non-binding regulation as his authority for challenging the President's claim.[3]

The obligation for agencies to follow their own regulations "is not limited to rules attaining the status of formal regulations," as the Supreme Court has extended the *Nixon* principle and found it applicable even where procedural regulations have not been published.  *Mass. Fair Share v. Law. Enf. Assistance Admin.*, 758 F.2d 708, 711 (D.C. Cir. 1985) (citing *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)).  The Special Counsel regulations have been published and are longstanding, and they do not provide the Attorney General the discretion to ignore their requirements.  This is a regulation directing what the Attorney General "shall" do, not a guidance document.  What would be the point of a regulation saying the Attorney "shall" do something if he does not have to do it?  Although DOJ "could have reserved to itself the discretion it now claims, it simply failed to do so," and is bound by its regulations.  *Clean Ocean Action v. York*, 57 F.3d 328, 333 (3d Cir. 1995).  This is especially the case in this setting—appointing someone to investigate and charge a case in a very heated political setting—which was the very purpose of establishing the independent counsel and now the special counsel apparatus.

---

3 The Special Counsel is correct that his position was upheld in an out-of-circuit district court opinion that found "those regulations are not substantive rules that create individual rights; they are merely statements of internal departmental policy."  *United States v. Manafort*, 312 F. Supp. 3d 60, 75 (D.D.C. 2018).  Mr. Biden maintains that decision is flatly contrary to *Nixon*, fails to address the arguments made here, and was wrongly decided.

The Special Counsel also asks the Court to dismiss any concern with his appointment by portraying his appointment as following a typical pattern for DOJ, but that is not true and, even if it were true, the Special Counsel surely knows that it is no defense for a law breaker to claim they had gotten away with breaking the same law before.  Since the Special Counsel regulations were enacted in 1999, few Special Counsels have been appointed, so there is not much of a historical record, and only one prior appointment—the recent appointment of Special Counsel John Durham by Attorney General Barr in 2020—involved a person who held office in the United States government being appointed Special Counsel with the authority granted by the Special Counsel regulations.[4]  Mr. Durham's appointment does not appear to have been litigated and none of the three cases that he brought (one guilty plea and two acquittals) were appealed.  Thus, the selection of someone within the United States government to serve as Special Counsel is rare and whether such appointments are lawful, despite a regulation that explicitly prevents it, has gone untested.

## C. The Unauthorized Indictment Must Be Dismissed

It does not matter that the Special Counsel regulations explicitly disclaim that they create any rights, 28 C.F.R. § 600.10, because Mr. Biden is contesting the authority of the Special Counsel

---

[4] In 2003, Acting Attorney General James Comey appointed then-U.S. Attorney Patrick Fitzgerald to a position that he confusingly titled "Special Counsel," but the appointment made clear this role was not defined by the Special Counsel regulations.  In making the appointment, Mr. Comey directed that Mr. Fitzgerald exercise his authority "independent of the supervision or control of any officer of the Department" and he later clarified: "Further, my conferral on you of the title 'Special Counsel' in this matter should not be misunderstood to suggest that your position and authorities are defined and limited by 28 C.F.R Part 600."  *United States v. Libby*, 429 F. Supp. 2d 27, 29 (D.D.C. 2006) (quoting appointment letters).  At a press conference announcing the appointment, Mr. Comey acknowledged the Special Counsel regulations, but he explained "the mandate that I am giving Mr. Fitzgerald is significantly broader than that that would go to an outside special counsel."  DOJ Press Conference, *Appointment of Special Prosecutor* (Dec. 30, 2003), https://irp.fas.org/news/2003/12/doj123003.html.  He added that he told Mr. Fitzgerald that "I've delegated to you all the approval authority that I as attorney general have" and explained, "I have given him all the approval authorities that rest—that are inherent in the attorney general; something that does not happen with an outside special counsel."  *Id.*

regardless of whether the regulations grant Mr. Biden a right.  In numerous contexts, the Supreme Court has allowed a defendant to challenge the actions of government officials in excess of their authority.  *See, e.g.*, *Collins v. Yellen*, 141 S. Ct. 1761, 1781 (2021); *Seila Law LLC v. Consumer Fin. Protec. Bureau*, 140 S. Ct. 2183, 2196 (2020); *Bond v. United States*, 564 U.S. 211, 220 (2011).[5]  *Collins* specifically noted that the actions that "involved a Government actor's exercise of power that the actor did not lawfully possess," including where a government actor was improperly "appointed," must be invalidated.  141 S. Ct. at 1788.  Thus, the Court should invalidate the improperly appointed Special Counsel's actions, including this prosecution by dismissing the indictment.

Mr. Biden, like any other defendant, has the right to challenge the authority of an improperly constituted grand jury that indicts him or the lack of authority for the prosecutor who brings the case.  It is shocking that the Special Counsel would claim otherwise.  If someone who was not properly appointed or licensed as a prosecutor brought an indictment, the only remedy for the person charged would be to invalidate the charges.  Any other remedy (e.g., a "shame, shame" admonition) would be meaningless and legitimize an ultra vires action, conferring a power this Court has no authority to give the Special Counsel.  The fact that Special Counsel Weiss is a DOJ employee makes no difference if he too is not legally authorized to bring this indictment.

---

[5] The Special Counsel seeks to distinguish this line of cases as concerning standing, but the Special Counsel *is* challenging Mr. Biden's standing—his lack of right to complain about this improper prosecution.  Opp. at 23 n.9.  While the Special Counsel is right that the question of remedy is distinct from standing, where the issue is the lack of authority for the government to bring an action, the only remedy is the dismissal of the action.  That was the result in each of these cases.  Any lesser remedy would have this court bestow upon the Special Counsel an ultra vires power that has not been bestowed upon him by law and that this Court has no constitutional authority to confer.  *See United States v. Providence Journal Co.*, 485 U.S. 693, 707 (1988) (holding courts typically lack power to appoint a special prosecutor).

Although the issue seldom arises (fortunately), where a DOJ attorney lacks the authority to obtain an indictment, it is the settled practice to dismiss the indictment. *See, e.g.*, *United States v. Williams*, 65 F.R.D. 422, 448 (W.D. Mo. 1974) (dismissing indictment where DOJ failed to comply with orders demonstrating that DOJ Special Attorneys had the authority to bring the indictment); *United States v. Huston*, 28 F.2d 451, 456 (N.D. Oh. 1928) (dismissing indictment because a Special Assistant to the Attorney General who had been authorized to prosecute in federal district courts in other states was not authorized to obtain an indictment in that district); *United States v. Rosenthal*, 121 F. 862, 873 (C.C.S.D.N.Y. 1903) (dismissing indictment because a DOJ lawyer was authorized to investigate the case only but exceeded his authority and became an "unauthorized prosecutor" by seeking an indictment from a grand jury); *see also Providence Journal*, 485 U.S. at 708 (dismissing case because a court-appointed prosecutor was not authorized to file a petition for certiorari);[6] *United States v. Weyhrauch*, 544 F.3d 969, 975 (9th Cir. 2008) (finding that the Chief of the Public Integrity Section at Main Justice filed an appeal without certifying that he had the necessary approval from the U.S. Attorney to authorize the appeal and ordering him to produce such certification or the appeal would be dismissed).  Judge Morton's observation in dismissing an indictment brought by an unauthorized DOJ attorney rings as true today as it did a century ago:

> The power to bring informations which charge crime and on which warrants of arrest issue is a great power, carrying with it possibilities of serious oppression, if improperly used. . . .  This power is lodged in the United States Attorney . . . and in the Attorney General. . . .  Both by the statute, therefore, and by general principles of law, a delegation of this power, if intended, must be made in clear and precise terms, and not left to

---

[6] The Special Counsel distinguishes *Providence Journal* as holding only that "[d]ismissal may be available in some extremely rare cases where a proceeding violates a federal statute" (Opp. at 22), but the Supreme Court rejected the sort of distinction the Special Counsel seeks to draw between statutes and regulations.  As *Nixon* explained: "So long as this regulation is extant it has the force of law." 418 U.S. at 695.  The Special Counsel cites nothing in support of his imaginary distinction in which statutes are binding law, but regulations are not.

inference or implication; it is not conferred by authority to conduct grand jury proceedings. For these reasons, [a Special Assistant to the Attorney General] was not, in my opinion, authorized to bring these informations, and as they were not submitted to or approved by the Attorney General they were not legally brought.

*United States v. Cohen*, 273 F. 620, 621 (D. Mass. 1921).[7]

Additionally, even if viewed as a violation of Mr. Biden's rights under the regulations, an agency cannot provide those rights and simultaneously attach a provision saying "we don't really mean it" to shield them from being enforced in court. The Supreme Court would have wasted its time deciding cases that found such regulation-created rights enforceable, such as *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Service v. Dulles*, 354 U.S. 363 (1957); *Vitarelli v. Seaton*, 359 U.S. 535 (1959), if an agency can render those regulations unenforceable by adding a "we don't mean it" clause. There is surely a difference between the DOJ's policy manuals not being enforceable in litigation and promulgated, official regulations.

The whole point of having some form of *independent* counsel is to protect a target of a prosecutor's actions from a prosecutor who could be subject to a conflict of interest. That in turn has one goal: ensuring confidence in the process and rule of law. A person in Mr. Biden's position should not have to fear a prosecutor hostile to him will act on that bias or that a sympathetic

---

[7] The Special Counsel fails to address this line of cases about actual authority, but instead argues a line of cases involving how to determine whether that actual authority has been exercised with respect to the mere technical issue with a prosecutor's signature or lack of signature on an indictment. *See In re Lane*, 135 U.S. 443, 449 (1890) (finding such a signature was not required in that case); *Kelley v. United States*, 989 F.3d 67, 70 (1st Cir. 2021) (finding indictment signed by a suspended prosecutor valid because the signature requirement only is meant to signify the government's agreement to prosecute the case and the evidence showed the government had agreed); *Wheatley v. United States*, 159 F.2d 599, 601 (4th Cir. 1946) (finding Assistant U.S. Attorney signing for U.S. Attorney was valid and demonstrated government's intent to try the case). Unlike the cases cited by the prosecution where the government had authorized the prosecution, the Special Counsel had no such authorization either to obtain an indictment from the grand jury or to file and prosecute this case in court. This is not a dispute over how clearly the government's intent to prosecute this case has been presented, but whether it is authorized at all.

prosecutor may feel pressure to treat him more harshly to avoid any claim that he was too soft. These regulations are intended to ensure that Mr. Biden is treated fairly, and they are meant to enforce his constitutional right to be treated fairly. It is not about whether an individual prosecutor is or can be fair. The Independent Counsel statute, and now the Special counsel regulation, include a structural bar to apply across the board so that a particular attorney's influences or bias would be irrelevant. If nothing else, the fact that these regulations were enacted to protect him from bias and are being ignored undercuts the notion that the prosecution is being pursued in good faith. *See* Mot. to Dismiss for Selective/Vindictive Prosecution. (DE 63.)

## II.   DOJ IS VIOLATING THE APPROPRIATIONS CLAUSE BY FUNDING SPECIAL COUNSEL WEISS'S INVESTIGATION AND PROSECUTION

### A.  Special Counsel Weiss Lacks An Appropriation From Congress

The funds spent on Special Counsel Weiss's investigation and prosecution of Mr. Biden have not been appropriated by Congress in accordance with the Appropriations Clause. Special Counsel Weiss relies upon an appropriation established in a Note to 28 U.S.C. § 591, which provides: "[A] permanent indefinite appropriation is established within the Department of Justice to pay all necessary expenses of investigations and prosecutions by *independent counsel* appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." *See* Pub. L. 100–202, § 101(a) [title II], Dec. 22, 1987 (emphasis added). As the Special Counsel notes, this appropriation was passed "one week" after the Independent Counsel Reauthorization Act creating the role of Independent Counsel was passed. Opp. at 5. Special Counsel Weiss's claim that the appropriation covers him fails because he is not an "independent counsel" as envisioned in any "other law."

Here again, the Special Counsel sets up and knocks down a strawman by emphasizing that the phrase "or other law" means that it covers more than those who served as Independent Counsel

under the expired statute. That is true, but Special Counsel Weiss ignores that the statute still requires that the covered person be a lower-case "independent counsel"—in a similar sense to the Independent Counsel the appropriation was primarily intended to fund—and he is in no sense "independent" from the United States government that he already serves as U.S. Attorney.

It borders on baffling that the Special Counsel claims this funding practice is "long standing and fully lawful" because it has been "audited and approved by the Government Accounting Office (GAO)" and he believes Mr. Biden's "claim was soundly rejected" in *United States v. Stone*, 394 F. Supp. 3d 1, 17–23 (D.D.C. 2019). Opp. at 1, 2. Critically here, the GAO report and *Stone* cut *against* the Special Counsel's position.

Start with the GAO Report, which looked only at the propriety of Special Counsel Fitzgerald's position. *Special Counsel and Permanent Indefinite Appropriation*, GAO B-302582, 2004 WL 2213560 (Comp. Gen. Sept. 30, 2004), 2004 WL 2213560 [GAO Report]. As noted above, Special Counsel Fitzgerald was delegated the *full* authority of the Attorney General and powers that Acting Attorney General Comey described as "significantly broader" than those given to a Special Counsel subject to the Special Counsel regulations. *See supra* at 8 n.4. By contrast, Special Counsel Weiss acknowledges that his authority to act is governed by the Special Counsel regulations (even though he claims his appointment need not comply with those regulations). Opp. at 9 (explaining that his "appointment orders specify that 28 C.F.R. §§ 600.4 to 600.10 are 'applicable to the Special Counsel'").

The more expansive authority granted to Mr. Fitzgerald over the typical Special Counsel was decisive for the GAO. The GAO Report explained, "[s]ince the permanent indefinite appropriation is available for independent counsels, we looked for indicia of independence of Special Counsel Fitzgerald," and it found "[t]he parameters of his authority and independence are

13

defined in the appointment letters which delegate to Special Counsel Fitzgerald all (plenary) the authority of the Attorney General." GAO Report at *3. The GAO Report emphasized "the express exclusion of Special Counsel Fitzgerald from the application of 28 C.F.R. Part 600, which contains provisions that might conflict with the notion that the Special Counsel in this investigation possesses all the power of the Attorney General, contributes to the Special Counsel's independence." *Id.* Among other things, the GAO Report noted that Section 600.7's consulting requirement—applicable to Special Counsel Weiss, but not Special Counsel Fitzgerald—is "inconsistent" with the delegation of the "plenary authority of the Attorney General" that was given to Special Counsel Fitzgerald. *Id.*

Mr. Biden notes that the opinion of the GAO—and not a court—on the lawfulness of a DOJ practice is itself a slender reed for the Special Counsel to rest upon, but here the GAO Report undermines his claim. Special Counsel Weiss does not have the plenary authority that was given to Special Counsel Fitzgerald and is instead subject to the Special Counsel regulations that the GAO found would undermine the independence of a Special Counsel. The GAO Report did not opine on whether a Special Counsel with the authority designated by the Special Counsel regulations is sufficiently independent to qualify for this appropriation—particularly where the Special Counsel's insider status would *disqualify* him from being a Special Counsel under those regulations to begin with.

Special Counsel Weiss's reliance upon *Stone* is misleading for the same reason. *Stone* found that Special Counsel Mueller was sufficiently independent to qualify for this appropriation because he was appointed pursuant to the Special Counsel regulations that exist for when "it would be appropriate to appoint an investigator from outside the Department." 394 F. Supp. 3d at 18. To reiterate, Mr. Mueller was appointed from *outside* the federal government. To be sure, there is

ample reason to question whether the Special Counsel regulations delegate sufficient authority for even an *outside* Special Counsel to be sufficiently independent to qualify for this appropriation as *Stone* found,[8] but the Court need not even reach that issue because, unlike Special Counsel Mueller, Special Counsel Weiss is an insider, part of DOJ itself.  Neither *Stone* nor basic logic supports the notion that Special Counsel Weiss could be independent of the very federal government that he works for.  That is a contradiction in terms.

The "longstanding" history the prosecution invokes is non-existent.  Only one other *inside* Special Counsel (Durham) ever has been appointed Special Counsel as Mr. Weiss was and that only occurred recently, just over three years ago, and this issue was never litigated.[9]

_____

[8] The Congressional Research Service (CRS) analyzed the differences between the authority granted to Special Counsel from Independent Counsel and Nixon Era Special Prosecutors.  CRS, *Independent Counsel Law Expiration and the Appointment of "Special Counsels"*, RL 31246 (Jan. 15, 2022).  CRS explained that "it seems appropriate that such personnel are called Special Counsels, since their designation as 'independent' counsels might be something of a misnomer." *Id.* at 4.  It found "the most significant change" is that "the Attorney General, rather than the Special Counsel, will have the 'ultimate responsibility' for any matter referred to the Special Counsel," which is "a major shift of discretion and ultimate authority back to the Attorney General." *Id.* at 5, 6.  The "review and approval procedures" under the regulations are extensive (and catalogued at length by CRS) and impose the "most significant impact . . . upon the 'independence' of a Special Counsel." *Id.* at 10.  They essentially allow the Attorney General to thwart or countermand the Special Counsel at every turn.

[9] The Special Counsel claims the history of the Attorney General using this appropriation for Special Counsel like him has been "left unchanged by Congress," but there is no such history there and it has never received judicial approval.  Opp. at 2.  Courts sometimes consider arguments that Congress has ratified a settled judicial interpretation by reenacting a statute without changing its terms.  *See, e.g.*, *Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019); *Holder v. Martinez Guttierez*, 566 U.S. 583, 593 (2012) ("[T]he doctrine of congressional ratification applies only when Congress reenacts a statute without relevant change."); *Jama v. ICE*, 543 U.S. 335, 349 (2005) (ratification requires "the supposed judicial consensus [be] so broad and unquestioned that we must presume Congress knew of and endorsed it").  There is no broad and unquestioned judicial construction approving the appropriation's use for an *outside* Special Counsel (or any Special Counsel)—there is no judicial construction at all concerning *outside* Special Counsel—and the appropriation has never been reenacted, so any effort by the Special Counsel to make a ratification fails.  Congress's alleged inaction here is meaningless.

### B.  The Appropriations Clause Violation Prevents This Case From Being Tried

The Special Counsel takes issue with Mr. Biden's claim that the Appropriations Clause violation requires dismissal and instead claims that the appropriate remedy would be to enjoin this prosecution.  Opp. at 24.  Under either view, this case could not proceed, so it is unclear how the Special Counsel's preferred remedy would benefit him.

The Special Counsel is correct that the Ninth Circuit found a claim seeking either dismissal or an injunction for an Appropriations Clause violation was viable in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), without then deciding which remedy was appropriate. Subsequently, the Ninth Circuit affirmed an injunction against prosecution in *United States v. Pisarski*, 965 F.3d 738, 743 (9th Cir. 2020), but *Pisarski* does not foreclose an alternative remedy of dismissal.

Dismissal is the appropriate remedy here.  In *Collins*, the Supreme Court addressed the remedy in separation of powers cases, distinguishing cases that "involved a Government actor's exercise of power that the actor did not lawfully possess," such as cases where the government official was improperly "appointed," from cases that do not.  141. S. Ct. at 1788.  In cases where the government actor lacked authority, the government actions taken without authority are invalidated.  *Id.*  The Fifth Circuit properly interpreted *Collins* to require that "[t]he remedy in those cases, invalidation of the unlawful actions, flows 'directly from the government actor's lack of authority to take the challenged action in the first place.'"  *Community Fin. Servs. Ass'n of Am. Ltd. v. CFPB*, 51 F.4th 616, 642 (5th Cir. 2022) (quoting *CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 241 (5th Cir. 2022) (en banc) (Jones, J., concurring).  Thus, the remedy here is to invalidate the Special Counsel's indictment that initiated without authority.

It is especially important to invalidate the actions of an improperly appointed Special Counsel. As Mr. Biden noted in his motion, then-Deputy Attorney General Eric Holder summed up the criticism of the Independent Counsel Act by advising Congress:

> Independent counsel are largely insulated from any meaningful budget process, competing public duties, time limits, accountability to superiors and identification with the traditional long-term interests of the Department of Justice. This insulation contributes greatly to the independence of these prosecutors, but it also eliminates the incentive to show restraint in the exercise of prosecutorial power. [These factors] provide an impetus to investigate the most trivial matter to an unwarranted extreme. . . . An independent counsel who does not indict faces criticism for wasting both his time and the taxpayers' good money. As the old adage, adapted from Mark Twain, goes: "To a man with a hammer, a lot of things look like nails that need pounding."[10]

Those concerns arise especially in this case. (*See* DE 63 (selective prosecution motion).) Congress responded by letting the Independent Counsel Act expire because it was tired of runaway Independent Counsels with unlimited checkbooks self-perpetuating their own positions by chasing down matters to investigate and prosecute free from financial restraint. If the Court does not invalidate the Special Counsel's actions taken without a valid appropriation from Congress, the Court will restore the very problem that Congress meant to forestall and that the Constitution's Appropriations Clause empathically precludes.

Where government funding for a prosecution simply runs out, an injunction against prosecution may be appropriate to permit the prosecution to seek an appropriation of funds from Congress so that the prosecution may resume. Such a remedy would be inadequate here, however, because the Special Counsel already has violated the Appropriations Clause by spending funds that were not appropriated to him to conduct his investigation and bring this case. Thus,

---

[10] (DE 62 at 3–4 (quoting *The Independent Counsel Act, Hearing Before the Subcomm. on Commercial and Administrative Law, on the Judiciary*, 106th Cong. (Mar. 2, 1999) (prepared remarks of Dep. Att'y Gen. Eric Holder), https://www.justice.gov/archive/dag/testimony/ictestimonydag.htm.).)

constitutional damage has been done, and a remedy must prevent the prosecution from benefitting from the fruits of its unconstitutional action.

## III.   THE SPECIAL COUNSEL'S ARGUMENTS THAT HE CAN REMEDY HIS ERRORS THROUGH ACTIONS HE HAS NOT TAKEN ARE IRRELEVANT

In response to both the lack of authorization and lack of appropriation issues, the Special Counsel claims the Court should let him go ahead and prosecute this case in the wrong way because he believes he could find a right way to prosecute the case if he wanted to.  Opp. at 20.  With respect to his lack of authorization to bring the case as Special Counsel, Mr. Weiss claims that he could have brought the case in his capacity as U.S. Attorney even though he did not.  Opp. at 22–23 (conceding that he signed the indictment as "Special Counsel," rather than bringing it in his capacity as U.S. Attorney).  Perhaps Mr. Weiss could resign as U.S. Attorney and seek to be reappointed as Special Counsel, consistent with DOJ regulations, and then seek to indict Mr. Biden again.  Perhaps he could find a way to prosecute this case with the costs and expenses of gathering new evidence that was not obtained in violation of the Appropriations Clause as well (*see supra* at 15).  But such issues are premature as he has done none of those things. It is telling that Mr. Weiss's last argument is that, if all else fails, he can put back on his U.S. Attorney hat, change the nameplate on his door, and start again.

Article III's "cases and controversies" requirement prevents this Court from engaging in such hypotheticals.  If Special Counsel Weiss wants to try to cure these errors on his own, he should do so.  But we are unfamiliar with any instance—and Special Counsel Weiss identifies none—in which a government official asks a court to ignore, and then the court ignored, a legal violation because the official claims the violation can be cured through a self-help remedy that has

not been taken.[11]  Federal Rule of Civil Proceeding 15(a)(1), for example, allows a plaintiff to file an amended complaint in response to a motion to dismiss for a defective pleading, but a plaintiff cannot benefit from this rule without filing an amended complaint.  It is not sufficient to ask a court not to dismiss the existing complaint because it could be fixed through amendment, if the plaintiff has not done so.  Similarly, prosecutors often file superseding indictments when defense motions show a flaw in how the initial indictment was charged.  Again, however, no court allows a defective indictment to stand just because a prosecutor is pretty sure that he could get a valid superseding indictment if he wanted one.  Despite the Special Counsel's insistence to the contrary, the "errors" here, which the prosecution has not even tried to fix, clearly *would* "preclude prosecution altogether."  Opp. at 20.

This Court must evaluate the case as it stands before it.  If this indictment is not authorized, it should be dismissed.  If the prosecution chooses to find another way to indict this case, we can consider whether it has done so appropriately then.

### CONCLUSION

Special Counsel Weiss is not authorized to prosecute this case or bring this indictment.  The indictment should be dismissed.

---

[11] The Special Counsel cites criminal rules and cases addressing the harmless error standard used on appeal (Opp. at 22), but the lack of authorization to prosecute a case is very different from a harmless error at trial that would not have changed the outcome of a trial.  An unauthorized prosecution always requires dismissal because there would be no trial if that error had been corrected.  Moreover, as a trial court, this Court always seeks to avoid committing all errors, rather than accepting a prosecutor's invitation to intentionally err and hope the Court of Appeals finds it harmless.

Dated: January 30, 2024                  Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of January, 2024, I filed the foregoing Reply in Support of Mr. Biden's Motion to Dismiss the Indictment with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*