# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN ) |
| ROBERT HUNTER BIDEN, | ) ) |
| Defendant. | ) ) ) |

### MR. BIDEN'S REPLY IN SUPPORT OF HIS MOTION FOR DISCOVERY AND AN EVIDENTIARY HEARING REGARDING HIS MOTIONS TO DISMISS THE INDICTMENT

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

**INTRODUCTION**

The prosecution's responses to Mr. Biden's motions to dismiss suggest that there is not enough evidence to grant the relief requested, but the record set out in each motion demonstrates the prosecution is wrong. At the very least, the amount of evidence Mr. Biden has identified in his motions to dismiss based on the Diversion Agreement and selective and vindictive prosecution triggers any reasonable standard for testing the statements and omissions the prosecution has made. As just a few examples, the prosecution states it "considered pursuing" gun charges in 2022 (DE 68 at 12–13), yet has not explained why it did not to bring them for over a year, and it has not offered any *legitimate* explanation for why it agreed that a diversion on the gun charges and probation on the tax misdemeanors was an appropriate resolution of the cases on July 26, 2023, but then suddenly—after heavy Republican criticism of the deal—chose to charge felonies instead.[1]

**ARGUMENT**

**I.    THE PROSECUTION OVERSTATES MR. BIDEN'S BURDEN**

The prosecution's opposition overstates the requisite standard necessary for an evidentiary hearing, essentially claiming that a defendant must prove entitlement to dismissal for selective and

---

[1] The prosecution's opposition briefs reveal some new evidentiary issues (e.g., seizing electronic evidence for the gun charges for the first time pursuant to a December 4, 2023 warrant; using a grand jury in California in connection with the tax case to elicit evidence for already-indicted gun charges in Delaware; seeking a search warrant in December 2023 to search for evidence in support of its charges three months after having charged; testing a leather pouch for cocaine residue in October 2023 that it had in its possession for five years; denying there was Probation's approval for the diversion agreement) in addition to those raised in Mr. Biden's motions to dismiss themselves (e.g., how a Delaware agreement for a diverted gun charge and two tax misdemeanors turned into multiple felonies in two jurisdictions following massive political pressure to do just that). Based on the prosecution's admissions made only recently in its filings, Mr. Biden will expeditiously file a motion to suppress improperly gathered evidence.

1

vindictive prosecution to obtain discovery on those issues. But if a defendant had to establish a winning motion to obtain discovery, there would never even be a need for discovery.

The prosecution repeatedly overstates Mr. Biden's burden, claiming he failed to make "a credible showing" of both discriminatory effect and intent or animus. Opp. at 1, 3, 5, 7–8. But the threshold "for obtaining an evidentiary hearing on the matter is somewhat lower." *United States v. Bradley*, 880 F. Supp. 271, 279 (M.D. Pa. 1994) (permitting discovery to support a selective prosecution claim and finding that defendant's evidence of disparate impact satisfies the intent prong). A hearing is necessary where "the motion alleges sufficient facts to take the question past the frivolous state . . . and raises a reasonable doubt as to the prosecutor's purpose." *Id.* (citations omitted). And to obtain discovery, Mr. Biden need only "make out 'a colorable entitlement to the defense of discriminatory prosecutions,' . . . or come forward with 'some evidence tending to show the existence of the essential elements of the defense.'" *Id.* (citations omitted). If the prosecution means something more by its "credible showing" language, it is mistaken.

On the record already presented, Mr. Biden has offered a "colorable claim" to warrant discovery and an evidentiary hearing in this case for selective or vindictive prosecution. (*See* DE 64 at 4.) But should the Court decline to dismiss the indictment, the record reflects at least "some evidence" that carries Mr. Biden's claim well past the "frivolous state" and warrants discovery and a hearing.[2] (*See* DE 81.)

The prosecution's cursory argument that the information Mr. Biden seeks regarding the prosecution's intentions and decisions—including "the testimony of prosecutors and other parol

---

[2] Mr. Biden is also contemporaneously filing a motion to compel discovery for his other prior requests from October 8, 2023, some of which relate to the issues discussed above. *See* Mr. Biden's Motion to Compel Discovery (Jan. 30, 2024).

evidence"—is "not relevant" also misses the mark. Opp. at 8. As described in detail in Mr. Biden's 60-page motion to dismiss (DE 63), the prosecution's motives are relevant because they reflect the purposes behind this prosecution.[3] The information Mr. Biden seeks is relevant to further disclosing how the well-documented improper political motives of Republican leaders influenced and continue to drive the Special Counsel's prosecution. Weighing the balance of the rights implicated in the motions and any burden (other than resisting transparency), the discovery and hearing requested should be granted.

**II. MR. BIDEN'S PROFFERED EVIDENCE IS SUFFICIENT TO WARRANT DISCOVERY AND AN EVIDENTIARY HEARING.**

The factual record set out in Mr. Biden's motion to dismiss for selective and vindictive prosecution, coupled with newfound evidentiary issues identified and raised for the first time in the prosecution's response to his motion (*see supra* at 1), demonstrate that Mr. Biden has proffered more than a mere "colorable claim" to warrant discovery and an evidentiary hearing in this case. *United States v. Heidecke*, 900 F.2d 1155, 1159 (7th Cir. 1990); (DE 64 at 4). Mr. Biden's reply in support of his motion to dismiss for selective and vindictive prosecution (DE 81), filed concurrently, addresses these issues at length so we will not repeat them here. If the prosecution is right that the discovery will not demonstrate Mr. Biden's entitlement to the relief that he seeks, there is no harm in providing it. *See United States v. Adams*, 870 F.2d 1140, 1146 (6th Cir. 1989) ("It may well be that no fire will be discovered under all the smoke, but there is enough smoke

---

[3] Mr. Biden does agree that the parol evidence rule does prevent the parties from offering evidence of the meaning of contract terms, for example, it would bar the prosecution from using parol evidence to establish a condition precedent exists in the contract. Parol evidence, however, does not prevent the parties from showing approval of the contract, as that does not involve the interpretation of the contract itself. *See* Reply Brief filed concurrently in support of DE 63.

here, in our view, to warrant the unusual step of letting the defendants find out how this unusual prosecution came about[.]").

The prosecution's response to Mr. Biden's motion to dismiss for selective and vindictive prosecution further confirms the need for discovery should the Court not dismiss the indictment outright. The prosecution claims that its reasons for charging this case were based on "overwhelming evidence" (DE 68 at 2, 24) it obtained in 2019 and 2021, and on the unexplained "deterrent effect" (DE 68 at 33, 40–41) that it claims this prosecution of Mr. Biden serves. And the prosecution suggests "it had been considering" charging Mr. Biden "long before plea negotiations began." (DE 68 at 17, 40, 48.) But this explanation is entirely pretextual because— even with all these factors in play—the prosecution still determined that the appropriate resolution was a diversion on the gun charge and a probationary sentence on two tax misdemeanors. The prosecution even signed a Diversion Agreement and Plea Agreement to that effect, and openly advocated for the Court to adopt the Plea Agreement at the July 26, 2023 hearing. What the prosecution has *not* explained is why it deemed this *agreed upon* resolution of its issues with Mr. Biden appropriate on July 26, 2023, but chose to abandon that approach and charge Mr. Biden with multiple gun and tax felonies afterward. It is undisputed that extremist Republicans criticized the prosecution's deal heavily, and since then, House Republicans have declared that pressure is what caused the prosecution to reverse course. The fact that the prosecution's explanation for its charging decision does not explain why it chose to change its proposed resolution of the dispute does nothing to show those House Republicans are wrong to claim causing the prosecution to reverse course.

Several of the cases relied upon by the prosecution are wholly distinguishable from the facts and circumstances in this prosecution, and bear almost no similarity to this case. *See* Opp. at

4

6–8. In *United States v. Al Hedaithy*, 392 F.3d 580 (3d Cir. 2004), defendant's evidence of selective prosecution relied almost entirely on "numerous newspaper articles" which tended to show "that at least several thousand people cheat on [a language proficiency] exam each year." *Id.* at 607–08. Accordingly, the court found that lacking any sufficient credible evidence, defendant failed to make a threshold showing of discriminatory effect necessary to obtain discovery on a claim of selective prosecution of Arab and middle eastern students for mail fraud. *Id.* at 608. Mr. Biden, on the other hand, has shown enough evidence of pressure by congressional Republicans, notes of former high-ranking DOJ officials, and statements and requests (both public and private) by the former President, among other things, to make a showing of discriminatory effect and intent or animus here that is the only factor that changed the prosecutor's agreements for a resolution.

In *United States v. Taylor*, 86 F.3d 182 (3d Cir. 2012), the defendant's vague, speculative, and unsupported theory that he was improperly selected for prosecution on a charge of assault because his victim in the case was white is so far afield from the facts in the instant prosecution, there is almost no comparison. In *Taylor*, the defendant's selective prosecution claim lacked any concrete evidence whatsoever—only that he was not prosecuted for a prior assault committed on two black victims—distinguishing it from the 60-pages of evidence proffered by Mr. Biden (not to mention the evidentiary issues that post-date the indictment, first raised in the prosecution's response, DE 68).

Similarly, in *United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997), defendant's selective prosecution claim premised on the unlawful political biases of investigating agents was inadequate where the defendant failed to make a sufficient showing of discriminatory effect to be entitled to discovery. There, the defendant's proffered claim relied only on a single affidavit of a former IRS

5

agent, who said he knew of no similar cases which had been criminally prosecuted. Mr. Biden, on the other hand, has not premised his selective prosecution claim simply on "statistical evidence" (as defendant in *Hastings* did) to show such how rare this prosecution is (though, to be clear, the firearms prosecution of Mr. Biden *is* statistically incredibly rare, indeed such a prosecution is non-existent in this District, *see* DE 63 at 42). Mr. Biden is able to show how bias exerted itself in this very case. The prosecution determined that Mr. Biden should be subject to a Diversion Agreement on the gun charge and be sentenced to probation for misdemeanor tax charges, but was pressured to instead charge Mr. Biden with felonies and seek his incarceration by extremist Republicans. There is no need to look to how DOJ treats others to determine whether Mr. Biden has been selectively targeted for disparate treatment, the prosecution's own treatment of Mr. Biden reflects that it was pressured to pursue felony charges that it would not have pursued otherwise in this very case.

Additionally, Mr. Biden's claim is supported by credible, specific evidence and not general statistics or blanket arguments about investigators' political affiliation. *See supra* at 3. Likewise, unlike the defendant in *United States v. Slawick*, 1993 U.S. Dist. LEXIS 11020 (D. Del. 1993), who claimed selective prosecution based on his political affiliation and prosecutors' "improper ideological motivation" despite that three other individuals who were similarly situated had also been indicted (*id.* at *11), Mr. Biden's case is quite literally the first of its kind in the history of this District, and there has been no one similarly situated who has been prosecuted under facts similar to Mr. Biden (e.g., charged in the absence of a violent crime or any other aggravating or additional criminal conduct unrelated to the possession of a firearm). (*See* DE 63 at 45 n.100 (citing *United States v. Greenlaw*, No. 1:21-cr-00019-MN (D. Del. Aug. 1, 2022)), in which prosecutors under U.S. Attorney Weiss declined to bring Section 924(a)(1)(A) charges, and

6

voluntarily moved to dismiss their indictment against a defendant, who was a straw purchaser, for making a false statement on the gun purchase form).

## CONCLUSION

Should the Court seek any additional information concerning the motions to dismiss being filed, Mr. Biden respectfully requests that the Court order the government to provide the discovery that he requested and conduct an evidentiary hearing to further develop the record in this regard.

Dated: January 30, 2024                        Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

7

## CERTIFICATE OF SERVICE

      I hereby certify that on this 30th day of January, 2024, I filed the foregoing Reply in support of Mr. Biden's Motion for Discovery and an Evidentiary Hearing Regarding His Motions to Dismiss the Indictment with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                               /s/ *Abbe David Lowell*
                                               Abbe David Lowell

                                             *Counsel for Robert Hunter Biden*