**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN |
| | ) |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MR. BIDEN'S MOTION TO COMPEL DISCOVERY**
**AND SET DISCOVERY DEADLINES**

Abbe David Lowell                    Bartholomew J. Dalton (#808)
Christopher D. Man                   DALTON & ASSOCIATES, P.A.
WINSTON & STRAWN                     1106 West 10th Street
1901 L Street NW                     Wilmington, DE 19806
Washington, DC 20036                 Tel.: (302) 652-2050
Tel.: (202) 282-5000                 BDalton@dalton.law
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

*Counsel for Robert Hunter Biden*

## INTRODUCTION

Mr. Biden moves to compel discovery because the prosecution has ignored its affirmative discovery obligations and Mr. Biden's specific discovery requests for documents that the prosecution is obligated to produce.[1]   To date, the prosecution has made three voluminous productions that contain almost nothing responsive to Mr. Biden's specific requests.  Mr. Biden sent a letter to the prosecution on November 15, 2023, regarding these deficiencies, but the prosecution never responded.  Counsel then conferred with the prosecution by phone on December 1, 2023, and the prosecution confirmed that it considers its discovery obligations satisfied.  Absent an order from this Court, it seems further productions will not be forthcoming, and further discussion would be unproductive.  Mr. Biden therefore moves for an order (1) compelling the prosecution to provide relevant discovery and adequate responses to Mr. Biden's discovery requests, and (2) setting deadlines for the production of certain discovery in the future.  *See* Proposed Order.

## BACKGROUND

On October 8, 2023, Mr. Biden sent the prosecution a letter requesting disclosure of: (1) materials the prosecution is obligated to disclose pursuant to Federal Rule of Criminal Procedure ("FRCP") 16 ("Rule 16 materials"); (2) materials the prosecution is obligated to disclose in accordance with *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady* materials") and its progeny; (3) materials the prosecution is obligated to disclose pursuant to FRCP 26, *Jencks v. United States*, 353 U.S. 657 (1957), and the Jencks Act (18 U.S.C. § 3500) ("Jencks material"); (4) disclosure of evidence subject to Federal Rule of Evidence 404; and (5) relevant grand jury materials.  This

---

[1] The Court has before it motions to dismiss filed by Mr. Biden that, if granted, would make this motion to compel moot.  However, as certain of the discovery requests may inform one or more of those motions, this filing is being made to preserve that possibility.

letter was filed as an exhibit to Mr. Biden's Motion for Discovery and an Evidentiary Hearing regarding his motions to dismiss last month.[2]  (DE 65.)

The prosecution then provided two discovery production volumes to Mr. Biden on October 12, 2023 and November 1, 2023, and an additional single search warrant on December 4, 2023.[3] The October 12 production also included arrangements for sharing with Mr. Biden's counsel a forensic image of an Apple MacBook Pro laptop and Western Digital external hard drive in DOJ's possession since December 2019.[4]  With a handful of inconsequential exceptions related to Mr. Biden's request for (i) the Delaware state police case file; (ii) any electronic search or seizure warrants; and (iii) any law enforcement affidavits, these productions failed in large part to provide documents responsive to Mr. Biden's October 8, 2023 requests.

On November 15, 2023, Mr. Biden sent a follow-up letter to the prosecution regarding the status of the prosecution's responses to the requests provided on October 8.  *See* Ex. A.  Mr. Biden explained that, while he appreciated the materials provided, "except for a handful of search and

---

[2] Mr. Biden emphasized to the prosecution when it served the requests that they were not limited to documents and information in the possession, custody, or control of the Special Counsel's Office, or otherwise available to that Office, but also included documents and information in the possession, custody, or control of any government officials or agencies involved with the investigation or with relevant knowledge or documents.

[3] The search warrant on December 4, 2023, which post-dates the firearm indictment by almost three months, is the *first time* in the course of this five-year investigation that DOJ obtained a warrant to search the alleged laptop (and iCloud account and backup data) for evidence of federal firearms violations.  The prosecution then used that warrant to purportedly review and seize, *for the first time*, text messages, photos, and other evidence in support of its felony charges, several of which the prosecution cited in its pleadings on January 16, 2024.  (*See* DE 68 at 8–9.)  Moreover, that warrant contained testimony (in support of finding probable cause) about the firearm obtained from a witness in a grand jury empaneled in the Central District of California in November 2023 *after* this indictment had already been brought.  Accordingly, the issue raised—as a result of the prosecution's recent filings—is one to explore at the evidentiary hearing Mr. Biden requested (DE 64) and a motion to suppress which will be filed promptly.

[4] Questions remain about the provenance and total authenticity of the data on the laptop image and hard drive the government seized, as both had been reviewed and likely altered before coming into the hands of the prosecution.

seizure warrants and supporting law enforcement affidavits," the prosecution had not responded to any of the requests in his letter.  *Id.* at 1.  Mr. Biden reminded the prosecution that this Court ordered the production of *Brady* materials on July 26 and October 3 and asked the prosecution to confirm whether further productions were forthcoming, or Mr. Biden would need to move to compel.  *Id.*  As the Court may recall, the prosecution told the Court *at the July 26 hearing* that it had already produced all *Brady* material.  (7/26/23 Tr. at 7 ("THE COURT: Has all Brady material been produced?  MR. WISE: Yes, Your Honor".).)  Yet, the prosecution did not send the first production for almost three months, until October 12, 2023, with a cover letter noting its production was "in response" to Mr. Biden's October 8 letter requesting discovery.

Also on November 15, Mr. Biden sent a third letter to the prosecution supplementing the requests sent on October 8.  (DE 66.)  Mr. Biden requested documents related to communications between or among specific former DOJ officials, and President Trump, related to Mr. Biden during the relevant time period.  In that letter, Mr. Biden explained the discoverability of the additional requests and that he "would appreciate [the prosecution's] response to the [] requests as soon as possible given the current schedule for filing pretrial motions."  (DE 66 at 5.)

After all three letters went unanswered, Mr. Biden's counsel conferred by phone with the prosecution on December 1, 2023 about the deficient responses to Mr. Biden's discovery requests.  Mr. Biden's counsel asked when Mr. Biden could expect further productions of documents responsive to his requests.  The prosecution responded that it believed it had met its discovery obligations and intended to "let the discovery stand for itself," as this is "a more efficient way to deal with it."  Mr. Biden's counsel explained that in that case, we would move to compel those materials if the prosecution does not provide them, and we would not ask to meet and confer again

with the prosecution given that further efforts to confer on these issues would be futile.  The prosecution affirmed its understanding with this approach.

Then, on January 9, 2024, shortly before Mr. Biden began preparing this Motion, and nearly *six months* after the prosecution told the Court it had satisfied its *Brady* obligations, the prosecution sent defense counsel 502,000 pages of additional documents—nearly 70 GB of data— along with an index (received on January 10).  The productions adopt the "quantity versus quality" approach to discovery which does not satisfy the government's obligation.  We understand, based on the prosecution's oral representations in court on January 11, 2024, in connection with a separate prosecution of Mr. Biden in California (*United States v. Robert Hunter Biden*, No. 23-599-MCS (C.D. Cal.)), that the Special Counsel's discovery productions to date in *this matter* are intended to satisfy its discovery obligations in both the Delaware and California matters.  Mr. Biden is still reviewing the latest production, but as far as counsel can tell based on a preliminary review, this production also does not satisfy or address Mr. Biden's outstanding discovery requests from October 8, 2023, particularly because the "additional information related to *the tax investigation*."  (DE 70 at 3 (emphasis added).)  As this appears to be the prosecution's final disclosure of discovery, this motion is now ripe to be brought.

## REQUESTS AND ARGUMENTS[5]

The prosecution cannot contend that it has met its discovery obligations in this matter (e.g., telling the Court it provided all *Brady* material back in July 2023).  This case is the culmination of a five-year, multiagency investigation of Mr. Biden.  To date, the prosecution has produced a few

---

[5] In addition to the arguments and cases discussed herein, Mr. Biden is entitled to discovery relevant to the selective and vindictive prosecution issues for the reasons set forth in his pending motion for discovery and an evidentiary hearing.  (DE 64, and his reply filed contemporaneously with this motion to compel.)

search warrants and affidavits, a Delaware state police and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") case file, and certain miscellaneous material such as Apple iCloud backup reports, The Mac Shop files, statements and interviews by Mr. Biden, and a forensic copy of the devices seized from The Mac Shop.[6]  The November 2023 and January 2024 productions also contain hundreds of thousands of pages worth of documents collected by the government from third parties: bank records; travel records; accounting records; credit card records; phone records; Google and Apple records; iCloud back-ups; and productions of records from various individuals (likely either voluntarily produced or subpoenaed by the prosecution) during the course of its five-year investigation.  Of the hundreds of thousands of pages provided, only a handful of individual files are at all responsive to Mr. Biden's October 8, 2023 discovery requests (e.g., the search warrants, affidavits, police and ATF case file, excerpts from Mr. Biden's memoir, records related to rehabilitation or treatment programs during the relevant period or payment thereof, and certain FBI lab reports).  They also seem to have been disclosed to satisfy what the government believed would be its obligations in the California tax case.  Needless to say, hundreds of thousands of pages of financial, bank, travel, phone, and credit card records are not likely to produce relevant material to the alleged firearms violations.  If the prosecution truly believes these productions span the universe of relevant documents it must produce, the Court should order it to confirm this and bind the prosecution to the evidentiary limitations this would impose.

The Court should also order the prosecution to respond to Mr. Biden's specific discovery requests and his arguments for why the requested documents must be produced.  In the unlikely event that the prosecution intends to withhold responsive material, it should specifically identify those documents on a log and the reasons it believes they need not be disclosed, so that Mr. Biden

---

[6] *See supra* n.4.

has an opportunity to respond and, if necessary, move to compel or seek *in camera* review.  *See United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994) (prosecution must preserve and produce investigative documents that may be discoverable to the court for review); *United States v. Boffa*, 513 F. Supp. 444, 499 (D. Del. 1980) (prosecution must respond to specific requests with substantial basis).  Finally, for categories of discovery that the prosecution is not yet able or required to fully produce, the Court should issue an order with deadlines for when these materials must be produced to ensure Mr. Biden has an adequate opportunity to prepare his defense.

**I.     Rule 16 Materials**

Mr. Biden requested the ongoing production of all materials subject to disclosure under FRCP 16(a)(1)(A), (B), and (D).  (*See* DE 65.)  Mr. Biden notes that his October 2023 Rule 16 requests also cover any expert reports that the prosecution intends to rely upon at trial; to date, however, no expert reports or materials have been identified or produced to defense counsel.

The prosecution produced a Delaware state police case file, which includes a summary of an interview Mr. Biden gave police in October 2018 and other information about the purchase, discard, and recovery of the firearm, as well as evidence photos from its case file.  The prosecution also produced an ATF case file that has additional information about the firearm and statements about its purchase.  Mr. Biden asks the Court to order the prosecution to either (1) confirm no further responsive documents or communications exists in its possession (which includes material in the possession of all relevant government agencies and officials), or (2) produce the requested documents (including any expert reports) and, if the prosecution believes any responsive documents are protected from disclosure, identify those documents and the reasons why the prosecution believes they need not be disclosed.

## II.   *Brady* Materials

With all the disputes that have occurred in recent years about prosecutors' failures to disclose in various cases, the Court is well aware of the government's requirements to disclose exculpatory information under *Brady* and its progeny.  "It is well-settled that the government's obligations under *Brady* require it to disclose actual exculpatory evidence without undue delay." *United States v. Johnson*, 218 F. Supp. 3d 454, 459 (W.D. Pa. 2016).  "[C]ases by the Third Circuit have reiterated and encouraged adherence to the long-standing policy of promoting the early production of all types of Brady material[.]"  *Id.* (citing *United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984); *United States ex rel. Marzeno v. Gengler*, 574 F.2d 730, 739 (3d Cir. 1978); *United States v. Kaplan*, 554 F.2d 577, 578 (3d Cir. 1977)).[7]  Although prosecutors are fond of telling defense counsel that they are well-aware of their *Brady* obligations, there are far too many instances where those obligations go unmet.  Even in this case, the prosecution has produced an avalanche of materials months after it told the Court that *all Brady* materials have been produced. (7/26/23 Tr. at 7.)

In Mr. Biden's October letter, he requested all materials the prosecution is required to disclose under the *Brady* line of cases (pursuant to its affirmative obligations and this Court's order

---

[7] The prosecution has an affirmative duty to preserve and disclose documents to the Court when there is any doubt whether they must be produced under *Brady*.  For example, in *United States v. Vella*, the Third Circuit held that "the rough interview notes of F.B.I. agents should be kept and produced so that the trial court can determine whether the notes should be made available to the [defendant] under the rule of *Brady* . . . or the Jencks Act."  562 F.2d 275, 276 (3d Cir. 1977) (per curiam); *see also United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983) (extending rule to require preservation of rough drafts of agents' reports).  To the extent the court needs to review any of the investigative reports before they are produced, Mr. Biden asks the Court to order they be produced to the Court for review as soon as practicable.  *See Ramos*, 27 F.3d at 68 ("[T]he government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced.") (citations omitted).

7

to the parties in court on July 26, 2023).  (DE 65 at 2.)  Mr. Biden also included 19 specific *Brady*

requests.  (*Id.* at 2–4.)  Despite assuring the Court all *Brady* material had been produced on July

26, 2023, since then, the prosecution has produced an October 2018 state police case file of the

firearm incident that includes interview memoranda and deliberations among Delaware state

prosecutors regarding whether to file charges—per the file, on October 30, 2018, after reviewing

the facts, New Castle County prosecutors decided *not to prosecute* and closed the case.[8]  The

prosecution has also produced three search and seizure warrants and affidavits for Mr. Biden's

Apple ID account, alleged laptop, and iCloud backup data in its October 2023 production.[9]  The

prosecution produced an additional search and seizure warrant on December 4, 2023 (warrant

dated that same day),[10] with an accompanying letter informing counsel that this was "[i]n response

to your letter dated October 8, 2023 requesting discovery."  The prosecution has also provided

some records that may reflect Mr. Biden's state of sobriety in 2018, including text messages,

excerpts from Mr. Biden's memoir, and records related to rehabilitation or treatment programs.[11]

     If the prosecution really believes it has produced all the *Brady* material in its possession

(e.g., anything it reviewed that indicates periods of sobriety; the prosecution's basis for originally

concluding that charges other than the ones that were agreed-to in June 2023 were not warranted;

why they waited over five years before testing the pouch seized in October 2018 and how they

---

[8] DOJ-01-00000360.

[9] DOJ-01-00000002 – DOJ-01-00000196.

[10] DOJ-000001.  The prosecution has not provided an index or actual Bates-stamped discovery
productions from the results of this search and review, despite quoting from such material in its
oppositions to pending motions to dismiss.

[11] In the context of this case especially, where a diverted gun charge was turned into three felonies,
what could be more exculpatory than the prosecutors' own concerns about how bringing a felony
case, before the political pressure mounted, was not warranted because of the evidence or DOJ's
policy for such cases, or because it was unprecedented for this Office to do so, as it has never
charged based on similar facts before now.

cannot confirm either who handled it and when, or when residue was first placed on it), then it should be ordered to confirm this in writing to defense counsel.  If the prosecution does have unproduced *Brady* materials, the Court should order the production of those materials as soon as reasonably practicable.  And if the prosecution believes any documents responsive to Mr. Biden's requests need not be disclosed under *Brady*, the prosecution should be required to identify those materials and why it believes they need not be disclosed so that Mr. Biden has an opportunity to respond.  *See Boffa*, 513 F. Supp. at 499 ("If a request for relevant and specific information is received by a prosecutor, he must respond to that request as long as there is some substantial basis for claiming materiality.").

## III.    Jencks Material

By now, the practice for providing Jencks Act material is well-known.  "The Jencks Act obliges the government . . . to proffer upon a defendant's timely request any statement of [a particular] witness in its possession, whether or not exculpatory, that relates to the subject matter of the witness's testimony."  *United States v. Sepúlveda-Hernández*, 752 F.3d 22, 32 (1st Cir. 2014).

Despite the literal words of the statute (mandating disclosure after a witness has testified), the provision of Jencks material well in advance of any trial (especially in a white-collar case such as this) is common.  Indeed, at Mr. Biden's initial appearance in California for the tax charges against him, Judge Mark Scarsi explained to the same prosecutors in this case why such an early disclosure would be appropriate.[12]  This Circuit has also recognized the value of early Jencks disclosure.  *See United States v. Blackwell*, 954 F. Supp. 944, 970 (D.N.J. 1997) (noting that while

---

[12] "And then, just suggest that the Government provide Jencks material well in advance of trial, just so we don't have unnecessary continuances and things during trial. . . . I know it's not required, but it certainly helps when the Government makes early Jencks material disclosures."  *United States v. Robert Hunter Biden*, No. 23-599-MCS (C.D. Cal.) (1/15/2024 Tr. at 25.)

courts in this Circuit "cannot compel disclosure of Jencks material . . . the [Third] Circuit encourages early disclosure") (citations omitted); *United States v. Bennett*, 2023 WL 2965699, at *4 (W.D. Pa. Apr. 17, 2023) (entering an order encouraging the government to provide Jencks material no later than the deadline set in the forthcoming jury trial order) (citations omitted).[13] Additionally, even where such material has been provided to the defense prior to trial, courts have held that a continuance or recess of proceedings may be required to review late-provided Jencks material and to adequately prepare cross-examination.[14]   There is no reason to delay proceedings due to late Jencks disclosures that the prosecution could make well ahead of trial.   If the prosecution is really committed to a search for truth, nothing is gained by sandbagging the defense.

On October 8, Mr. Biden requested the following Jencks material: (1) witness interview memoranda; (2) grand jury testimony; (3) FBI-302s (including drafts); and (4) FD-1023s.  (DE 65 at 4.)  There is no question that these are discoverable under the Jencks doctrine.  *See United States v. Gonzalez-Melendez*, 570 F.3d 1, 4 (1st Cir. 2009) (witness statements in FBI 302 Forms and other interview reports and summaries are discoverable Jencks material); *United States v. Hinton*, 631 F.2d 769, 782 (D.C. Cir. 1980) (same); 18 U.S.C. § 3500(e)(3) (requiring disclosure of

---

[13] Several Circuits have recognized a court's authority to order early disclosure of Jencks.  *See, e.g.*, *Unted States v. Minsky*, 963 F.2d 870 (6th Cir. 1992) (acknowledging practice of early disclosure of Jencks material across federal courts); *United States v. McKenzie*, 768 F.2d 602 (5th Cir. 1985) (same); *United States v. Holmes*, 722 F.2d 37, 40 (4th Cir. 1983) (noting the benefits of early disclosure of any witness statements).  Moreover, there is authority for not literally applying the time dictates of Jencks Act and FRCP 26.2 where there are countervailing constitutional considerations, such as the denial of due process in a complex case.  *See United States v. Snell*, 899 F. Supp. 17, 21 (D. Mass. 1995).  As with Jencks, FRCP 26.2(d) allows a court to "recess the proceedings to allow time for a party to examine [a witness] statement and prepare for its use."

[14] *See, e.g.*, *United States v. Holmes*, 722 F.2d 37, 40–41 (4th Cir. 1983) (finding continuance of trial warranted where the defense was "not afforded a reasonable opportunity to examine and digest" Jencks material furnished by the prosecution prior to trial); *United States v. Wables*, 731 F.2d 440, 448 (7th Cir. 1984) (granting defense opportunity during trial to review Jencks material and to recross-examine prosecution's witnesses).

statement made by the witness to a grand jury). Mr. Biden requests these materials be disclosed in a timely manner, and no later than six weeks before any trial or any evidentiary hearing where witnesses may be called.

If the prosecution does not have any statements contained in those or other documents by anyone it intends to call as a witness in this case (or would not be *Brady* because they undercut the charges), the prosecution should be ordered to confirm this or explain why it would not be able to provide such material in the coming weeks. Finally, if the prosecution has any of the requested documents or other statements by a witness it intends to call that the prosecution believes it need not disclose, the prosecution should be required to identify those materials and why it believes they need not be provided so that Mr. Biden has an opportunity to respond.

## IV.     Rule 404 Materials

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). To allow a defendant to promptly challenge a prosecutor's intention to use such evidence, the rule also states that prosecutors must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it" and "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid 404(b)(3)(A)-(B). "What constitutes 'reasonable notice in advance of trial' [pursuant to Rule 404(b)] is determined by the circumstances and complexity of the prosecution." *United States v. Johnson*, 218 F. Supp. 3d 454, 462 (W.D. Pa. 2016).

The prosecution has not produced any Rule 404(b) evidence. If the prosecution does not intend to use any 404(b) evidence in any proceedings in this case, it should confirm this. If the

prosecution does intend to use such evidence, it should identify that promptly to the defense. *See* Advisory Committee Notes to the 2020 amendments to Rule 404 ("Advance notice of Rule 404(b) evidence is important so that the parties and the court have adequate opportunity to assess the evidence, the purpose for which it is offered, and whether the requirements of Rule 403 have been satisfied—even in cases in which a final determination as to the admissibility of the evidence must await trial."). The Court should therefore order the prosecution to disclose any 404(b) evidence it intends to use in thirty days unless it is relevant to any pre-trial proceedings ordered by the Court.[15] Finally, if the prosecution intends to use any evidence of past acts or crimes that it believes are not subject to Rule 404, the prosecution should be required to identify those materials and its reasoning so that Mr. Biden has an opportunity to respond.[16]

## V.     Grand Jury Materials

The Supreme Court has held that "after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *United States v. Socony-Vacuum Oil Co., Inc.*, 310 U.S. 150, 233–34 (1940); *see In re Grand Jury Proceedings*, 4 F. Supp. 283, 284 (E.D. Pa. 1933) ("the rule of secrecy has long since been relaxed by permitting disclosure whenever the interest of justice requires," and that determination "rests largely within the discretion of the court whose grand jury is concerned"). Indeed, when grand jury secrecy was codified in the Federal Rules of Criminal Procedure in 1946, the Advisory Committee that promulgated those rules explained that Rule 6(e) was intended to "continue[] the traditional practice of secrecy on the part[]

---

[15] In particular, the prosecution should be ordered to disclose any Rule 404(b) evidence it intends to use in support of any pretrial hearings related to pending motions to dismiss, which raise several dispositive and constitutional issues, at least 14 days before those hearings are held.

[16] The defense is obviously aware of the new tax charges brought in California. If the prosecution now wants to claim these charges constitute Rule 404(b) evidence to the gun charges, they should say so as that is surely a contestable position.

of members of the grand jury, *except* when the court permits a disclosure." Fed. R. Crim. P. 6(e) 1944 advisory committee's note 1 (emphasis added). Moreover, Rule 6(e) applies only to the *substance* of jury deliberations or evidence actually presented to the jury, not the ground rules by which the grand jury conducts its proceedings. *United States v. E. Air Lines Inc.*, 923 F.2d 241, 244–45 (2d Cir. 1991).

On October 8, 2023, Mr. Biden requested the following grand jury information:

A. Empanelment date and place of each grand jury that heard evidence concerning this case;

B. Any voir dire questions presented to potential grand jurors;

C. Record of any grand jurors who were summoned but excused from service;

D. Dates on which each such grand jury sat, the number of grand jurors present on those dates, and the dates on which each grand juror was in attendance;

E. Identities of all persons to whom grand jury materials were disclosed;

F. Whether anyone was present during grand jury proceedings other than the grand jurors, witnesses, court reporter, and the prosecutors, and, if so, the identities of all such persons;

G. Instructions provided to the grand jury before the indictment was returned;

H. Voting record and record of return of the indictment in open court.

In the instant case, disclosure of grand jury instructions (e.g., to determine whether the grand jury voted on what may be an unconstitutional instruction) and voir dire questions (e.g., to determine whether grand jurors carried political or other bias in their decisions) is needed to avoid possible injustice in Mr. Biden's criminal prosecution. Yet the prosecution has not produced anything responsive to these requests. Rule 6(e), which restricts the disclosure of "matters" occurring before a grand jury, does not apply to the narrow set of grand jury materials being requested because Mr. Biden does not seek information regarding the substance of jury deliberations or evidence that was presented to the jury. But even if Rule 6 applied to these

13

requests, a court may order disclosure "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). The Court may also do so "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Both exceptions apply. Moreover, Mr. Biden has demonstrated through this pleading and his other pre-trial filings the requisite standard for grand jury materials: a "particularized need" for such items that outweighs the public interest in secrecy. *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979) (disclosure of grand jury proceedings is appropriate "where the need for it outweighs the public interest in secrecy").

Among other things, these requests target documents related to Mr. Biden's selective and vindictive prosecution claims, which he needs to prepare for an evidentiary hearing if the Court grants his request. And furthermore, it remains possible that in this highly-politicized matter, the grand jury was selected without regard to the bias that people might have and, given the history of the government's decision to forego any gun charge for a diversion agreement and decisions by courts of appeals striking the gun statute as unconstitutional, it is not speculation that erroneous or improper instructions were likely given to the grand jury. If that were found to be the case here, it is grounds for dismissal both on constitutional grounds and pursuant to 28 U.S.C. § 1867(a) (a defendant may move to dismiss an indictment on "the ground of substantial failure to comply with the provisions of this title in selecting the grand . . . jury").

Moreover, while a defendant must show a particularized need for the information, where, as here, the prosecution has no interest in keeping the requested information secret, the showing "need not be 'compelling.'" *United States v. Abounnajah*, 1991 WL 42895, at *2 (E.D.N.Y. Mar. 26, 1991) (defendant demonstrated a particularized need sufficient to warrant disclosure of grand

jury instructions).  The motions filed, and the prosecution's responses, demonstrate a particularized

need for this information, which is likely to bear directly on the arguments in Mr. Biden's pending

dispositive motions and that he cannot obtain from elsewhere.  The prosecution, on the other hand,

will suffer no prejudice from such disclosure, and may in fact even benefit to the extent it helps

dispel some of the appearance of improper political interference in this case.  We therefore

respectfully request that the prosecution be ordered to disclose the requested grand jury

information as soon as practicable.

## VI.    Supplemental Requests for DOJ Materials

In Mr. Biden's November 15, 2023 letter, he made two additional discovery requests:

(1) All documents and records reflecting communications from January 20, 2017 to the present (the "Relevant Time Period") to, from, between, or among Donald J. Trump, William P. Barr, Geoffrey Berman, Scott W. Brady, Richard Donoghue, or Jeffrey A. Rosen relating to or discussing any formal or informal investigation or prosecution of Hunter Biden, or a request thereof.

(2) All documents and records reflecting communications from the Relevant Time Period to, from, between, or among Donald J. Trump, William P. Barr, Geoffrey Berman, Scott W. Brady, Richard Donoghue, or Jeffrey A. Rosen and any Executive Branch official, political appointee, Department of Justice official, government agency, government official or staff person, cabinet member, or attorney for President Trump (personal or other) discussing or concerning Hunter Biden.

As with Mr. Biden's October 8 *Brady* requests, any documents in DOJ's possession

responsive to these two supplemental requests would constitute exculpatory or impeachment

material for the defense, including, for example, for purposes of discrediting or undermining the

credibility of government witnesses.  Such communications and notes may reflect the potential

actions and motivations behind the investigation of Mr. Biden, and later the charges—an issue

central to this prosecution for which witnesses may be called during an evidentiary hearing.

Accordingly, such records are needed for impeachment of government witnesses.  Moreover, to

the extent communications exist concerning prosecuting or investigating Mr. Biden (or a request

from one DOJ official to another to do so), such documents would be exculpatory in demonstrating DOJ's lack of independent investigatory and prosecutorial decision-making concerning Mr. Biden.

This information is also relevant to Mr. Biden's pending motions to dismiss, and the prosecution has identified no basis to withhold them.  (*See* DE 63.)  They are also the subject of Mr. Biden's pending Rule 17 subpoena requests.  (DE 58, 67.)  These individuals were involved in the decision-making related to the five-year, multi-district investigation of Mr. Biden, as well as efforts to influence those decisions by others.  These communications and records, such as personal handwritten notes like those taken by former Deputy Attorney General Richard Donoghue during his December 2020 call with acting Attorney General Jefrey Rosen and President Donald Trump (*see* DE 63 at 29), seem likely to include exculpatory or impeachment evidence that must be produced under *Brady* or statements by witnesses that must be disclosed under Jencks. The prosecution should be ordered to produce them within the timeframes to produce those materials set forth by the Court.  And if the prosecution has any responsive communications that it believes it need not disclose, the prosecution should identify those materials and its reasoning so that Mr. Biden has an opportunity to respond.

## VII.   Electronic Evidence Relevant to the Firearm Charges Contained On An Apple MacBook Pro Laptop

In the Special Counsel's opposition brief to Mr. Biden's motion to dismiss for selective and vindictive prosecution (DE 68), the prosecution cites a trickle of very selective text messages and other data involving Mr. Biden (without Bates stamps) apparently pulled from what it claims is "defendant's Apple MacBook Pro, which he had left at a computer store."[17]  (DE 68 at 7.)  Worse

---

[17] *See supra* n.4. Mr. Biden does not concede or accept the prosecution's version of events concerning the authenticity of this Apple device, despite the Special Counsel's representation to the contrary.  (*See* DE 68 at 7.)  However, given the prosecution's pleading is the first time DOJ has publicly alleged it was "defendant's" laptop or that it received the device as it was originally

yet, the prosecution confirmed that the Special Counsel's Office obtained a search warrant only on December 4, 2023, to search that laptop (and associated iCloud account and backup data), *for the first time*, for evidence of federal firearms violations, almost three months *after having charged* Mr. Biden with felony gun charges.  (DE 68 at 8 n.5.)[18]  Notwithstanding the fact that DOJ has had possession of the devices since December 9, 2019, the prosecution thought to get a warrant to review any evidence from the data pertaining to alleged firearms violations only *after* charging Mr. Biden with three felony gun offenses in September 2023.  Using the data that "[t]he searches revealed," the prosecution then spends more than a page of its pleading quoting only some text messages and citing data (e.g., photos) pulled from that device that they allege support their charges.  (DE 68 at 8–9.)  In addition to using the plural "searches"—another way to blur the provenance and propriety of their "evidence" and what they obtained—nowhere in the prosecution's 52-page opposition to the motion to dismiss for selective and vindictive prosecution do they indicate for defense counsel where on the devices they have found which evidence and when it was found (though now clearly after the charges were filed).

As to a forensic image of a laptop provided to defense counsel on October 12, 2023, this production was not supplemented like other productions in this case or made in a manner as is routinely done in such cases with an index of what it contained, or an indication of what is going to be used, or Bates stamps of any portions.  Instead, the prosecution has left buried the pertinent messages and photos "within a production of a voluminous, undifferentiated" files.  *United States*

---

acquired by the repairman, Mr. Biden seeks any authentication evidence DOJ has in its possession for this statement.

[18] Citing District of Delaware Search Warrant No. 23-507M.  Unlike the Office's prior search warrants during the five-year investigation that were for tax, financial, or foreign-business related offenses, this warrant was specifically for offenses pertaining to 18 U.S.C. §§ 922, 924 (firearms offenses).  *See supra* n.3, and a further motion to suppress concerning this December 4, 2023 search will be forthcoming.

*v. Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (recognizing that "some courts have reasonably suggested" burying exculpatory material in a voluminous production "might violate the government's obligations").

Stuck searching an abyss of data (more than 220 gigabytes), Mr. Biden's counsel has spent hours combing through a forensic image of the device provided in search of the handful of messages and photos cited by the prosecution in its latest briefs.  While the prosecution, as a general rule in this Circuit, is under no obligation to direct defense counsel to exculpatory evidence within a larger mass of disclosed evidence, here, the prosecution has fallen short of even its most basic duties: it must have (but did *not*) provide the image in a searchable e-discovery format; it did *not* disclose, as it must have, an index of the image; there are *no* Bates stamps for material contained on the image (including that are now cited in the prosecution's opposition briefs (*see* DE 68 at 8–9); and prosecutors did *not* identify a set of "hot documents" for defense counsel.  *See, e.g.*, *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009) (where the government voluntarily provided searchable e-discovery, indices, and a set of "hot documents" potentially relevant to defendant's case among several hundred million pages of discovery.)  To be clear: Mr. Biden is not asking (and does not think *Brady* and its progeny require) the prosecution to identify or marshal all potentially defense-favorable material from the laptop image, nor is he reticent to comply with the fact that it is the defendant's burden to review the discovery for exculpatory information.  Rather, Mr. Biden is simply requesting that the prosecution generally point defense counsel to where on the image it can find the quoted text messages and referenced photos described in the prosecution's latest briefs, so as to avoid "present[ing] the defense with a needle-in-a-haystack" obstacle.  *United States v. Farese*, 2023 WL 6795083, at *2 (D.N.J. Oct. 12, 2023).

Mr. Biden therefore moves for an order (1) compelling the prosecution to provide relevant discovery and identify where on the images of the devices provided Mr. Biden can locate material responsive to his discovery requests (and that which is cited in the prosecution's opposition briefs), and (2) setting deadlines for the production and identification of relevant discovery on those devices. *See* Proposed Order.

## CONCLUSION

Mr. Biden respectfully requests that the prosecution be required to produce the discovery requested herein, pursuant to any deadlines set by the Court for doing so.

Dated: January 30, 2024                    Respectfully submitted,

                                           /s/ *Abbe David Lowell*
Bartholomew J. Dalton (#808)               Abbe David Lowell
DALTON & ASSOCIATES, P.A.                  Christopher D. Man
1106 West 10th Street                      WINSTON & STRAWN
Wilmington, DE 19806                       1901 L Street NW
Tel.: (302) 652-2050                       Washington, DC 20036
BDalton@dalton.law                         Tel.: (202) 282-5000
                                           Fax: (202) 282-5100
                                           AbbeLowellPublicOutreach@winston.com
                                           CMan@winston.com

        *Counsel for Robert Hunter Biden*

19

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of January, 2024, I filed the foregoing Motion to Compel Discovery and Set Discovery Deadlines with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*
