IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 23-00061-MN |
| ROBERT HUNTER BIDEN, ) | |
| ) | |
| *Defendant*. ) | |

**THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL DISCOVERY AND SET DISCOVERY DEADLINES**

The United States respectfully opposes defendant Robert Hunter Biden's motion to compel discovery and set discovery deadlines. *See* ECF 83.

Before addressing his claims, the government notes three significant deficiencies in the defendant's motion. First, while he is the moving party and therefore bears the burden of persuasion, the defendant fails to argue why each of his specific discovery requests are for discoverable material. Instead, he simply references his discovery letters, broadly contends that those requests were for discoverable material under Federal Rule of Criminal Procedure 16 or *Brady*, and seeks to shift the burden to the Government in the first instance to address his own individual requests and the applicable law. In other words, rather than establishing why he is entitled to the broad categories of information he is demanding, he argues the Court should order the Government to explain why he is not entitled to them. That is simply not how criminal discovery works. Second, he does not cite any precedent for the relief he requests, such as his request that the Court set a Jencks deadline six weeks in advance of trial. Third, the defendant's claims show that he has either failed to review the discovery he has received, or he has misrepresented what has already been produced by the government.

1

The government will address each of the defendant's general arguments in his motion regarding Federal Rule of Criminal Procedure 16, *Brady* material, witness statements covered by 18 U.S.C. § 3500, Federal Rule of Evidence 404, Grand Jury Materials, his "Supplemental Requests for DOJ Materials," and his complaints about the format of some of the electronic evidence. For the reasons stated below, the defendant's motion to compel discovery and set discovery deadlines should be denied.

I.      BACKGROUND

On September 14, 2023, a grand jury in the District of Delaware returned a three-count indictment charging the defendant with violating 18 U.S.C. §§ 922(a)(6) and 924(a)(2) for making a false statement during a background check to deceive a firearms dealer when he acquired a firearm ("Count One"), 18 U.S.C. § 924(a)(1)(A) for making a false statement during a background check on paperwork that the firearms dealer was required to maintain ("Count Two"), and 18 U.S.C. §§ 922(g)(3) and 924(a)(2) related to his illegal possession of a firearm between October 12, 2018 and October 23, 2018 ("Count Three"). ECF 39, 40.

On October 8, 2023, the defendant made a formal request for discovery. ECF 65-1. In advance of his letter, defense counsel communicated to government counsel both at an in-person meeting and by email that the defendant sought to obtain an <u>identical</u> copy of his laptop that retained the laptop's native forensic properties:

> From: Lowell, Abbe
> Sent: Friday, September 29, 2023 1:25:04 PM
> To: Hines, Derek (USAPAE) ▊▊▊▊▊▊▊▊▊▊; Wise, Leo (USAMD) ▊▊▊▊▊▊▊▊▊▊
> Cc: Man, Christopher ▊▊▊▊▊▊▊▊▊▊; ▊▊▊▊▊▊▊▊▊▊
> Subject: [EXTERNAL] RE: Follow Up
>
> Derek,
>
> Thank you for following up – we are working to get a hard drive and will provide you with one as soon as possible, either mailing it or in person. Please provide a mailing address for sending the HD if we need to mail it.
>
> In transferring the data to the HD, we want to ensure the data we receive is an _identical_ copy as you have it and that the data will retain its native forensic properties (e.g., time and date stamps, file paths, operative system characteristics, user profile information, etc.). Will you please check with your e-discovery/forensics' team regarding preservation of the integrity of the original data? We would appreciate if you're able to confirm in writing that the data loaded on the hard drive is complete and identical in every shape and manner to that obtained by the FBI when it acquired possession of whatever device(s) in their possession. Also, could they confirm that the HD they also received is identical to the internal HD of any device so we do not need a copy of that as well?
>
> Thanks very much for doing this.
>
> Abbe

On October 12, 2023, the government provided to the defendant a production of materials ("Production 1") consisting of over 350 pages of documents as well as additional electronic evidence from the defendant's Apple iCloud account and an identical copy of the defendant's laptop produced in the exact specifications requested by the defendant.

Production 1 included the search warrant, application, and accompanying affidavit for information associated with the Apple email address <rhbdc@icloud.com>. *See* District of Delaware Case No. 19-234M, issued on August 29, 2019. Production 1 also included an additional search warrant, application, and accompanying affidavit for backups of Apple devices (three iPhones and one iPad) that the defendant had backed up to his Apple iCloud account and had been provided to investigators in response to the initial warrant. *See* District of Delaware

Case Number 20-165M, issued on July 10, 2020.  Both of these warrants authorized investigators to search for violations of 26 U.S.C. § 7201, Tax Evasion, 26 U.S.C. § 7203, Willful Failure to File Tax Returns or Pay Taxes, and 26 U.S.C. § 7206(1), False Tax Returns.  Relevant to this case, investigators were authorized by these warrants to seize "evidence indicating the email account owner's state of mind as it relates to the crimes under investigation."  Evidence that showed the defendant's addiction to and use of narcotics indicates "the email account owner's state of mind as it relates" to the tax crimes enumerated in the warrant.  In addition, investigators were also permitted to seize evidence relevant to this case under the plain view doctrine, which they did.  This evidence, from the defendant's backups of his devices to his iCloud account, was produced with the warrants in Production 1 in an easily searchable format.  The primary source of electronic evidence in this case is from the defendant's iCloud account, which investigators were authorized to seize because it showed "the email account owner's state of mind as it relates to the crimes under investigation" as well as under the plain view doctrine.

Production 1 also included the contract the defendant signed when he dropped off his laptop and hard drive at the computer repair store in which he agreed that, "[e]quipment left with the Mac Shop after 90 days of notification of completed service will be treated as abandoned."  Investigators also obtained a search warrant authorizing them to search the laptop and hard drive that was obtained from the computer repair store.  *See* District of Delaware Case No. 19-309M, issued on December 13, 2019.  The warrant authorized investigators to search for the same violations referenced in the previous paragraph, that is, violations of 26 U.S.C. § 7201, Tax Evasion, 26 U.S.C. § 7203, Willful Failure to File Tax Returns or Pay Taxes, and 26 U.S.C. § 7206(1), False Tax Returns.  Relevant to this case, this warrant also authorized investigators to seize "evidence indicating the state of mind of the owner and user of the TARGET MACBOOK

4

PRO and TARGET EXTERNAL HARD DRIVE as it relates to the crimes under investigation." Again, evidence that showed the defendant's addiction to controlled substances indicates "the state of mind of the owner and user of the TARGET MACBOOK PRO and TARGET EXTERNAL HARD DRIVE as it relates" to the to the tax crimes enumerated in the warrant.  In addition, investigators were also permitted to seize evidence relevant to this case under the plain view doctrine.  Evidence seized pursuant to this warrant was produced to the defendant in the specific format that he requested. Many of the same messages, photographs, and information that were obtained from the iCloud warrants were also located on the defendant's laptop.

On November 1, 2023, the government provided a production of materials ("Production 2") to the defendant that was over 700,000 pages and largely consisted of documents obtained during an investigation into whether the defendant timely filed and paid his taxes and committed tax evasion.  These documents included information about the defendant's income and payments made to drug and alcohol rehabilitation programs in 2018, the same year in which the defendant possessed the firearm while addicted to controlled substances.

On December 4, 2023, investigators obtained an additional search warrant for the defendant's iCloud account, the backup data associated with his iCloud account, his MacBook Pro laptop, and the hard drive.  *See* District of Delaware Case No. 23-507M, issued on December 4, 2023.  This warrant authorized investigators to search for violations of 18 U.S.C. § 924(a)(6) and 924(a)(2) related to making a false statement during a background check to deceive a firearms dealer, violations of 18 U.S.C. § 924(a)(1)(A) related to making a false statement during a background check on records that the firearms dealer was required to maintain, and violations of 18 U.S.C. 922(g)(3).  Among other items, the warrant authorized investigators to seize "all evidence relating to addiction, substance use, and controlled substances, to include

5

conversations, message communications, photographs, documents, and videos." The December 4, 2023, warrant provided yet another legal basis for investigators to seize information relevant to this case from the defendant's iCloud account, his iCloud backup files, his laptop, and his external hard drive. The warrant was produced to the defendant that same day, December 4, 2023. The following day, December 5, 2023, defense counsel sent the government a letter that acknowledged it had reviewed this search warrant. Because the actual evidence relevant to this case that was previously seized from the laptop, hard drive, and iCloud backup files had already been produced to the defendant on October 12, 2023, there was no additional evidence produced in response to this warrant.

The defendant's pretrial motions were due on December 11, 2023. ECF 57. The defendant did not file any motions seeking to suppress evidence related to the search warrants and evidence produced to him on October 12, 2023, in Production 1. The December 4, 2023, warrant does not entitle him to file any now. In fact, the December 4, 2023 warrant moots any issues that could have been raised by the defendant had he filed a motion to suppress those warrants, and, in any event, he did not elect to file motions to suppress the evidence from the August 29, 2019, December 13, 2019, or July 10, 2020 warrants that were produced to him on October 12, 2023.

In advance of his initial appearance on the tax indictment in the Central District of California, on January 9, 2024, the government made a production of materials ("Production 3") to the defendant which included over 500,000 pages of documents and consisted of additional information related to the tax investigation.

6

For each production, the government created an index with columns showing the Bates range of the documents, a document description, and additional document details. This index was also provided to the defense.

On October 12, 2023, the government requested reciprocal discovery from the defendant. The defendant has not yet produced any discovery to the government.

I. **ARGUMENT**

Because "[t]here is no general constitutional right to discovery in a criminal case," *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), the defendant's requests for discovery must be tethered to applicable federal criminal discovery rules and law. Instead, he sent the government a letter with enumerated requests similar to the style of a request for production of documents in a civil case. However, his letters fail to explain how each of the requested items are discoverable under applicable criminal discovery rules. His motion to compel discovery is likewise deficient and fails to explain how the requested items are discoverable under applicable criminal discovery rules and law. For the reasons described below, his motion should be denied.

**A. The Defendant's Claims About Rule 16 Expert Reports Are Wrong**

The defendant does not allege any Rule 16 materials are missing from the productions other than one assertion that, "to date, however, no expert reports or materials have been identified or produced to defense counsel." ECF 83 at p 6. He is incorrect. On November 7, 2023, the government produced to the defendant an expert report prepared by an FBI chemist who analyzed the cocaine discovered on the defendant's brown leather pouch that had contained his gun.[1] In this same production, the government also produced an expert report prepared by an

---

[1] *See* DOJ-02-00701485 – 00701486.

agent related to the interstate nexus of the gun charged in the indictment.[2] In addition to these reports, the government produced other materials for these two experts, including CVs, as well as a CV for an additional expert.[3] By contrast, the defendant has failed to provide any discovery, including any expert discovery.

Other than his mistaken assertion regarding the lack of expert reports, the defendant does not identify any other Rule 16 material that the government has failed to produce. *See* ECF 83 at 6. The defendant offers no authority for his request that the Court issue the order he suggests and the government opposes his request.

### B.  The Defendant's Requests Are Not For *Brady* Material

In his motion, the defendant states, "[i]n Mr. Biden's October letter, he requested all materials the prosecution is required to disclose under the *Brady* line of cases . . ." ECF 83 at 8. The defendant's motion references "19 specific *Brady* requests" in his October letter although he does not attach it to his motion. *Id.* The defendant asks the Court to "order the prosecution to respond to Mr. Biden's specific discovery requests and his arguments for why the requested documents must be produced." *Id.* at 5.

However, the defendant has not articulated why the requested documents are *Brady*, so there is little to which the government can respond. For example, in his first discovery letter, the defendant demanded, "Any documents and/or information reflecting communications between anyone in your Office and any person at the U.S. Department of Justice concerning the investigation or prosecution of Mr. Biden, including the decision to bring any particular charges," calling it "*Brady*" material. ECF 65 at 3. But the defendant failed to articulate in his

---

[2] *See* DOJ-02-00701693 – 00701694.

[3] *See* DOJ-02-00701481 – DOJ-02-00701484, DOJ-02-00701686 – 00701692.

letter or in his motion why the internal deliberative process and work product of Justice Department lawyers would ever be considered *Brady*. It would not. Similarly, in his motion, the defendant demands "communications between or among specific former DOJ officials, and President Trump, related to Mr. Biden," ECF 83 at 3, but fails to explain how communications among former political appointees and former President Trump addresses whether his client was addicted to drugs when he purchased the firearm charged in this case and lied on the form he was required to fill out. Overall, the defendant fails to provide any authority to support his argument that the specific materials he requested in his discovery letters are required to be disclosed under *Brady*. He does not discuss the specific requests in his motion or describe how the information requested is material to his defense and favorable. He cites no cases addressing analogous situations where courts have deemed that defendants are entitled to responses to similar requests under *Brady*. Instead, he seeks to pass his burden to the government to argue in the first instance why the information he is requesting is not *Brady*. But as the moving party here, it was the defendant's burden to do so. Since he did not, the Court should deny his deficient motion.

Nonetheless, the government will briefly address the relevant law under *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, the government has the obligation to disclose exculpatory evidence, that is, evidence that is favorable and material to the defense. *Id.* Strictly speaking, *Brady* "'is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation.'" *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984) (citation omitted).

> Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility of a crucial prosecution witness. Evidence impeaching the testimony of a government witness is exculpatory when the credibility of the witness may be determinative of a criminal defendant's guilt or innocence. If the exculpatory evidence "creates a reasonable doubt" as to the defendant's culpability, it will be held to be material.

9

*Id.* at 260 (citations omitted); s*ee also United States v. Bagley*, 473 U.S. 667, 682 (1985) (evidence is "material" when it is reasonably probable that, "had the evidence been disclosed to the defense, the result of the proceeding would have been different."). *Brady* material must be disclosed "in time for its effective use at trial." *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983), *cert. denied*, 464 U.S. 1048 (1984).

In *Bagley*, the Supreme Court was unequivocal in describing the parameters of *Brady* within the context of criminal pretrial discovery: "[t]he *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." 473 U.S. 667, 675 (1985). *Accord Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files.… it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final.") (citations omitted).

The defendant's October 8, 2023, letter included 19 requests but none sought exculpatory evidence that "goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility of a crucial prosecution witness." *Starusko*, 729 F.2d 256, 260. Therefore, the requests are not "*Brady* requests." Accordingly, during a meet and confer conference with counsel on December 1, 2023, the government did not agree that the

10

materials were discoverable under *Brady* and advised that it would not be providing information responsive to those requests beyond what may have already been provided in discovery.[4]

Two months later, the defendant filed the instant motion that fails to provide authority, much less argument, about his specific requests. For example, he fails to explain why the government must produce communications with his own defense lawyers (which are already in his possession)*, see* ECF 65-1 at "D," yet he asks the Court to order them to be produced under *Brady*. He does not explain how such communications with his lawyers negate his guilt on the charged crimes. Because the defendant failed to provide authority for his requests, the government reiterates here, as it did to the defendant, that his requests under *Brady* are unfounded.[5]

---

[4] Some of the requested information was produced, but not because it is *Brady* material. For example, the government produced records of the defendant's addiction by providing records of payments for substance abuse treatment in 2018 which, by his own admission in his book, was unsuccessful. The defendant's failure to acknowledge that some of the requested information was produced is either a misleading omission or demonstrates that the defendant has not reviewed the discovery he has received, similar to his failure to acknowledge the expert reports already produced in discovery. The government also notes that it is not withholding "documents and/or information reflecting Mr. Biden's sobriety in 2018."

[5] Nearly all of the defendant's requests appear to be for material related to his constitutional arguments regarding selective and vindictive prosecution. Such challenges are "not a defense on the merits to the criminal charge itself," *United States v. Armstrong*, 517 U.S. 456, 463 (1996), and are not issues for the jury to decide, s*ee United States v. Berrigan*, 482 F.2d 171, 175-76 (3d Cir. 1973); *United States v. Dufresne*, 58 F. App'x 890, 895 (3d Cir. 2003). The requested information is not *Brady* because it does not go to the heart of his guilt or innocence on the charges in the indictment and is not admissible at trial. *See United States v. Brock*, 628 F. Supp. 3d 85, 101 & n.5 (D.D.C. 2022) (selective prosecution evidence is not discoverable under *Brady* because it is not relevant to guilt or punishment); *United States v. Sutton*, 636 F. Supp. 3d 179, 209–10 (D.D.C. 2022) (referencing its rulings rejecting defendant's selective prosecution and *Brady* claims as "irrelevant, inappropriate for consideration by the jury, invite jury nullification, and distract from the issues at trial."). Additionally, the defendant did not (and could not) argue that these materials are "material to his defense" under Fed. R. Crim. P.16(a)(1)(E)(i) because Fed. R. Crim. P. 16(a)(2) explicitly exempts such materials from disclosure: "[T]his rule does not authorize the discovery of or inspection of reports, memoranda, or other internal government

Finally, pursuant to Federal Rule of Criminal Procedure 5(f), the Court issued an order, stating:

> The United States is obligated, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and subsequent cases, to timely disclose information favorable to the defense as to criminal liability on the charged offense(s) or mitigation of any punishment that may be imposed. Such favorable information includes information that may cast doubt on the credibility of government witnesses. Possible consequences for violating this order include exclusion of evidence, dismissal of charges, contempt proceedings, disciplinary referral, and any other relief authorized by law.

ECF 14.

The defendant cites no authority for his request that the Court should also order the government to confirm in writing that it has produced all *Brady* material. ECF 83 at 9. He also cites no authority for his suggestion that the Court should order the government to identify materials that are not *Brady* but responsive to the defendant's requests. *Id.* His requests for this Court to go beyond the bounds of Federal Rule of Criminal Procedure 5(f)(1) are unsupported by law and serve no purpose other than to try to obtain materials that he is otherwise not entitled to receive, if such materials even exist.

### C. The Government Agreed to Provide Remaining Jencks Materials at Least One Week Before Trial

The defendant asks the Court to order that witness statements covered by 18 U.S.C. § 3500 (the "Jencks Act") be provided to the defense "no later than six weeks before any trial or any evidentiary hearing where witnesses may be called." ECF 83 at 11. At this time, no

---

documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." The defendant's attempt to generally cite *Brady* as an end-run around Rule 16 should be denied.

evidentiary hearing has been scheduled and, for the reasons stated in the government's prior filing, ECF 70, an evidentiary hearing is not warranted. With respect to trial in this case, the government advised the defendant in writing on October 12, 2023, that it would provide additional Jencks and impeachment materials, "at least one week prior to trial." There is a small volume of unproduced Jencks materials in this case and the government is confident that a production of remaining Jencks materials at least one week before trial will not be a reason to delay proceedings. Although the law, specifically 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2, requires the disclosure of such information only after direct testimony is provided at trial, the government has indicated it will provide remaining Jencks materials at least one week prior to trial. The defendant cites no authority that permits the Court to override this law and order an earlier disclosure date. His requests should be denied.

### D. The Court Can Set a Deadline for Reasonable Notice Under Rule 404(b)

Rule 404(b) provides that the government must provide "reasonable notice" of any evidence it intends to offer at trial under Rule 404(b). The government requests that the Court set a deadline for such disclosure in advance of trial that gives the defendant fair opportunity to consider any Rule 404(b) evidence that the government intends to use.[6] His requested order, however, is unfounded and should be denied.

---

[6] As stated in the government's filing, ECF 70, an evidentiary hearing is not warranted. Moreover, Rule 404(b) relates to evidence at "trial" and the rules of evidence do not apply to pretrial hearings. *See United States v. Matlock*, 415 U.S. 164, 172-73 (1974) ("the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence."); *see also* Fed. R. Evid. 1101(d)(3) (providing that the Rules of Evidence—"except for those on privilege"—do not apply to "a preliminary examination in a criminal case.")

### E.  The Defendant's Request for Grand Jury Information is Unwarranted

The defendant seeks broad categories of what he calls "grand jury information" and asks the court to order the government to disclose this information. ECF 83 at 13. No authority is offered for most of his requests. He asks for an order of production directed to the government, even though the court possesses almost all of the information he has requested and the government does not. The government opposes each of his requests.

In support of his request for voir dire questions, the defendant argues that "it remains possible that in this highly-politicized matter, the grand jury was selected without regard to the bias that people might have . . ." He provides no authority as to why he is entitled to this information other than a citation to 28 U.S.C. § 1867(a), which provides:

> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

The statute states that "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section" and "the parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." 28 U.S.C. § 1867(f). The defendant cites no authority that a transcript of the court's voir dire during grand jury selection is covered by this statute.

The prosecution does not possess a transcript of the court's voir dire of potential grand jurors. Moreover, because the defendant has not indicated that he is preparing a motion that challenges the court's selection processes under (a), (b), or (c) of 28 U.S.C. § 1867 or explained

14

the relevance of any of his requests as it relates to such a motion, the court is not required to grant his requests. Furthermore, the defendant's requests should have been made prior to the motions deadline since the statute provides that the defendant may move to dismiss "within seven days after the defendant discovered or could have discovered, by the exercise of due diligence, the grounds therefor." His belated request without any facts supporting a claim that the court's selection processes permitted unlawful grand jury bias should be denied.

The defendant offers no legal authority to support his request for information related to any instructions given to the grand jurors. The defendant contends, "given the history of the government's decision to forego any gun charge for a diversion agreement and decisions by courts of appeals striking the gun statute as unconstitutional, it is not speculation that erroneous or improper instructions were likely given to the grand jury." ECF 83 at 14.

Rule 6(e)(3)(E)(ii) provides that, "[t]he court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." "This provision is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred." *United States v. Loc Tien Nguyen*, 314 F.Supp.2d 612, 616 (E.D.Va. 2004). *See also United States v. Minerd*, 299 F. App'x 110, 112 (3d Cir. 2008) (defendant failed to make the showing of "particularized need" for disclosure that is required to overcome the policy of secrecy encompassed by Rule 6(e); *United States v. Woodson*, No. CRIM. 09-117-SLR, 2010 WL 4365574, at *3 (D. Del. Oct. 28, 2010) (finding defendant's request for release of portions of the grand jury minutes to determine whether the evidence presented was legally sufficient vague, conclusory and failed to demonstrate a

particularized need for disclosure); *In re Grand Jury Matter (Catania),* 682 F.2d 61, 63-65 (3d Cir. 1982) (explaining that only after the particularized need is demonstrated can the court weigh the competing interests and holding that the district court abused its discretion in authorizing disclosure of grand jury transcripts).

The defendant has not supported his motion with facts that show wrongdoing or abuse may have occurred.  "Because grand jury proceedings are entitled to a strong presumption of regularity, a defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) bears the heavy burden of establishing that 'particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'" *Loc Tien Nguyen,* 314 F. Supp. 2d at 616 (citing *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974). This requires the moving party to show that without access to the materials, the "defense would be greatly prejudiced" or "an injustice would be done."  *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682 (1958)).

The defendant failed to establish how the "government's decision to forego any gun charge for a diversion agreement" means that "erroneous or improper instructions were likely given to a grand jury."  He also failed to establish how an out-of-circuit appellate decision means that "erroneous or improper instructions were likely given to a grand jury."  These speculative statements fall far short of establishing a "strong showing of particularized need."  Accordingly, his requests should be denied.

### F. The Defendant's Requests for DOJ Materials Should be Denied

The defendant misunderstands *Brady* in making the argument that he is entitled to the records requested in his November 15, 2023, letter, attached as Exhibit 1 to his motion.  ECF 83-1.  He argues that any communications to, from, between or among six named individuals

16

relating to his prosecution are "impeachment material for the defense." ECF 83 at 15.  The government is not calling any of these six individuals as witnesses.  Nor is it calling as a witness anyone who may have communicated with these six individuals about this prosecution.  The defendant's argument that these communications are "impeachment material for the defense" is without merit.  *See Starusko*, 729 F.2d at 262 ("Evidence impeaching the testimony of a government witness is exculpatory when the credibility of the witness may be determinative of a criminal defendant's guilt or innocence.") (citing *Giglio v. United States*, 405 U.S. 150, 154, (1972) and *United States v. Gengler*, 574 F.2d 730, 735 (3d Cir. 1978)).[7]

In support of his far-reaching request for all communications by anyone in the government related to him, the defendant claims that "such documents would be exculpatory in demonstrating DOJ's lack of independent investigatory and prosecutorial decision-making concerning Mr. Biden." ECF 83 at 16.  Again, this argument misses the mark and shows the defendant fundamentally misunderstands *Brady* and its progeny because such communications do not go to the heart of his guilt or innocence at trial.  The Court should deny the defendant's requests to produce such materials or identify them for the defense.

### G. The Government Produced the Defendant's Laptop in the Specific Format He Requested and Attaches as Exhibit 1 the Relevant Messages the Defendant Suggests Cannot be Found in the Discovery

The defendant states, "nowhere in the prosecution's 52-page opposition to the motion to dismiss for selective and vindictive prosecution do they indicate for defense counsel where on

---

[7] The Court should reject the defendant's invitation to conflate impeachment with selective prosecution. An alleged lack of prosecutorial discretion is not the same as impeachment evidence. Impeachment evidence goes to a witness' reliability and calls into question the credibility of their testimony while selective prosecution evidence would show that the defendant was unconstitutionally selected for prosecution. *See United States v. Abboud*, 438 F.3d 554, 579-80 (6th Cir. 2006) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) and *Davis v. Alaska*, 415 U.S. 308, 318 (1974)).

the devices they have found which evidence and when it was found (though now clearly after the charges were filed)." ECF 83 at 17.

The defendant did not reach out to government counsel to ask for assistance in locating materials. Instead, he filed a motion with the Court suggesting the materials cannot be located. Exhibit 1 includes examples of the electronic messages referenced on page 8-9 of its Response in Opposition to the Defendant's Motion for Selective and Vindictive Prosecution, ECF 68.[8]

The defendant received the messages referenced in the government's opposition in Production 1 on October 12, 2023. These messages were obtained pursuant to the 2019 and 2020 search warrants which were also included in that same production.

As outlined above, the government later obtained a December 4, 2023, warrant that provided yet another legal basis for investigators to seize information relevant to this case from the defendant's iCloud account, his iCloud backup files, his laptop, and his external hard drive. But because the defendant did not file a motion to suppress the 2019 and 2020 search warrants, the 2023 warrant ultimately was not needed as additional legal authority in response to a motion in this case. The defendant knows that no evidence was obtained pursuant to the 2023 warrant because the electronic evidence and accompanying search warrants were produced to him in October 2023 with the prior warrants, three months prior to the December 2023 warrant. He incorrectly claims in footnote 2 that the 2023 warrant was used to obtain "for the first time, text messages, photos, and other evidence in support of his felony charges" and suggests he will seek leave to file a belated motion to suppress the December warrant (which he informed the government he had reviewed prior to the pretrial motions deadline but did not ask for leave then). But even if he could provide sufficient reasons for leave to file a belated motion seeking

---

[8] The government will also provided Exhibit 1, without redactions, to defense counsel.

18

to suppress the December 2023 warrant, it would be denied as moot because the government already obtained all of the relevant electronic evidence in this case from the 2019 and 2020 warrants produced on October 12, 2023, which he did not seek to suppress.

The final argument by the defendant is dishonest and misleading. The defendant's counsel met with government counsel in Wilmington on August 29, 2023, and made a specific request for an exact forensic copy of the laptop and external hard drive. His defense counsel reiterated this request in an email dated September 25, 2023, in which defense counsel stated "we want to ensure the data we receive is an <u>identical</u> copy as you have it and that the data will retain its native forensic properties (e.g., time and date stamps, file paths, operative system characteristics, user profile information, etc.)" and that the "data loaded on the hard drive is complete and identical in every shape and manner to that obtained by the FBI when it acquired possession" of the laptop and hard drive. The government accommodated this request.

Before asking for any help from the government in locating the data, the defendant filed his motion alleging he is "[s]tuck searching an abyss of data (more than 220 gigabytes)", ECF 83 at 18, and the government has "left buried the pertinent photos within a production of a voluminous, undifferentiated files." ECF 83 at 17. The defendant does not disclose that the format in which he received the discovery is the format that he demanded. He also claims the prosecution has the laptop image in a "searchable e-discovery format." The prosecution does not have the laptop image in that format. He claims the prosecution has an index of the image. It does not. And he complains that there are no Bates stamps for material contained on the image. There are no Bates stamps because the defendant demanded the data in its original, unaltered format. Moreover, as mentioned previously, the primary source of evidence in this case is the

evidence obtained from the defendant's Apple iCloud account, which was produced to the defendant in a readily searchable format.

Finally, the defendant's requested relief is disconnected from his argument. While the defendant states, "Mr. Biden is simply requesting the prosecution generally point defense counsel to where on the image it can find the quoted text messages and referenced photos described in the prosecution's latest briefs," he then asks the Court for an order "compelling the prosecution to provide relevant discovery and identify where on the images of the devices provided Mr. Biden can locate material *responsive to his discovery requests. . .*" ECF 83 at 18, 19 (emphasis added). The government has already provided discovery in the format the defendant requested and the government is under no obligation to search the produced materials for the information he seeks in his letters. Exhibit 1 to this response addresses the defendant's request for information in the government's filing, therefore there is no need for involvement from the Court. An order "setting deadlines for the production and identification of relevant discovery on those devices" is not appropriate or necessary and his requests should be denied.

## II.    CONCLUSION

The defendant's motion, ECF 83, should be denied.

                                                           Respectfully submitted,

                                                           DAVID C. WEISS
                                                           SPECIAL COUNSEL

By: _____
      Derek E. Hines
      Senior Assistant Special Counsel

      Leo J. Wise
      Principal Senior Assistant Special Counsel

      U.S. Department of Justice