IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 23-61 (MN) |
| | ) | |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |

## **<u>MEMORANDUM OPINION</u>**

David C. Weiss, Special Counsel, Leo J. Wise, Principal Senior Assistant Special Counsel, Derek E. Hines, Senior Assistant Special Counsel, U.S. Department of Justice, Wilmington, DE – attorneys for Plaintiff

Bartholomew J. Dalton, DALTON & ASSOCIATES, P.A., Wilmington, DE; Abbe David Lowell, Christopher D. Man, WINSTON & STRAWN, Washington, DC – attorneys for Defendant

April 12, 2024
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE

Defendant Robert Hunter Biden is charged with knowingly making a false written statement intended to deceive in connection with acquiring a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), knowingly making a false statement in connection with acquiring a firearm in violation of 18 U.S.C. § 924(a)(1)(A), and possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).  (D.I. 40).  Presently before the Court are Defendant's motion to dismiss the indictment for selective and vindictive prosecution (D.I. 63) with a related motion for discovery and an evidentiary hearing (D.I. 64), as well as Defendant's motion for issuance of subpoenas *duces tecum* pursuant to Federal Rule of Criminal Procedure 17(c) (D.I. 58).  For the reasons set forth below, the Court DENIES Defendant's motions.

## I.      BACKGROUND

The Court has set forth a detailed factual background in a prior opinion.  (*See* D.I. 97).  The Court will not revisit those facts and instead will limit the discussion here to the facts relevant to the motions at issue.

In October 2018, during a time when Defendant was struggling with addition, he purchased a "small firearm" after certifying that he was not an unlawful user of or addicted to any controlled substance.  (D.I. 63 at 5; *see also id.* (admitting his "past drug use" was widely reported) & D.I. 40).  He contends that he never loaded the firearm, never fired it and only owned it for eleven days.  (D.I. 63 at 5).  The gun was taken from him at some point after purchase and was discarded (along with ammunition) in a public trash can.  (D.I. 68 at 7).  It was discovered by a member of the public (*id.*) and later recovered by local police in Delaware, who did not pursue charges against Defendant (D.I. 63 at 5).

At some point in 2018, the government began investigating Defendant's financial affairs. (D.I. 63 at 4).  That investigation spanned roughly five years and involved at least the Internal Revenue Service ("IRS") and a number of Department of Justice ("DOJ") officials from the prior and current administrations, all of whom were investigating Defendant's "tax and financial affairs, and his foreign business dealings."  (*Id.* at 1 & 4-5).  During the investigation, federal law enforcement became aware of Defendant's firearm purchase and his "past drug use."  (*Id.* at 5).

In June 2023, the government decided to charge Defendant with several misdemeanor tax offenses and one felony firearm offense.  (*See* D.I. 2; *see also* Misdemeanor Information, *United States v. Biden*, Cr. A. No. 23-mj-274 (D. Del. June 20, 2023) (tax offenses)).  The parties attempted to resolve these charges with a plea agreement on the tax offenses and pretrial diversion on the firearm offense.  As detailed in an earlier opinion, those efforts were unsuccessful after negotiations fell apart when it became clear that the parties had fundamentally different understandings of the scope of immunity conferred by their agreements.  (*See* D.I. 97).

After the government and Defendant failed to reach final agreement on a pretrial diversion resolution for the original firearm charge, on September 14, 2023, Defendant was indicted on the three felony firearm charges currently at issue.  (D.I. 40).  On November 15, 2023, Defendant filed a motion seeking issuance of subpoenas *duces tecum* under Rule 17(c) to four individuals allegedly in possession of documents and information bearing on the question of whether the investigation or prosecution of Defendant was based on pressure from any Executive Branch official or other outside influences.  (*See generally* D.I. 58).  Nearly a month later, on December 11, 2023, Defendant filed a number of pretrial motions.  Relevant here, Defendant seeks to dismiss the indictment on the basis that his prosecution is selective and vindictive and violates the separation

of powers.  (*See* D.I. 63).  Defendant has also moved for discovery and requested an evidentiary hearing relating to this motion to dismiss.  (*See* D.I. 64).

## II.  <u>LEGAL STANDARD</u>

### A.  **Selective and Vindictive Prosecution**

The Executive Branch, led by the President, is vested with the exclusive authority to prosecute cases.  *See United States v. Nixon*, 418 U.S. 683, 693 (1974).  "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute."  *Wayte v. United States*, 470 U.S. 598, 607 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982)).  As long as probable cause exists, the decision of whether or not to prosecute or to present charges to a grand jury is generally committed entirely to the prosecutor's discretion.  *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).  That being said, each charging decision must be consistent with and not run afoul of the rights and protections afforded by the Constitution.  *See United States v. Batchelder*, 442 U.S. 114, 125 (1979) ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints.").  A claim of selective prosecution is "an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."  *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  Such a claim is founded on principles of equal protection.  *Id.* at 465.

To demonstrate selective prosecution, a defendant must show that the federal prosecutorial policy was "motivated by a discriminatory purpose" and had a "discriminatory effect."  *Armstrong*, 517 U.S. at 465.  The defendant bears the burden of showing that "persons similarly situated have not been prosecuted" for the same offense to satisfy the "discriminatory effect" element.  *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989).  The defendant must also show that "the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or

some arbitrary factor" to satisfy the "discriminatory purpose" element.  *Id.*  Each of these elements must be shown with "clear evidence sufficient to overcome the presumption of regularity that attaches to decisions to prosecute."  *United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012) (cleaned up).  This standard is "a demanding one."  *Armstrong*, 517 U.S. at 463.

One form of selective prosecution is vindictive prosecution, which derives from the principle that "an individual certainly may be penalized for violating the law, [but] he just as certainly may not be punished for exercising a protected statutory or constitutional right." *Goodwin*, 457 U.S. at 372; *see also Bordenkircher*, 434 U.S. at 363 ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . .").  There are two ways in which a defendant may demonstrate vindictive prosecution.  "First, a defendant may use evidence of a prosecutor's retaliatory motive to prove actual vindictiveness. Second, in certain circumstances, a defendant may show facts sufficient to give rise to a presumption of vindictiveness."  *United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir. 1993) (citations omitted).  A presumption of vindictiveness only attaches where there is a "realistic likelihood" of vindictiveness.  *Id.*  "The inquiry here is not whether there is a possibility that the defendant might be deterred from exercising a legal right, but whether the situation presents a reasonable likelihood of a danger that the State might be retaliating against the accused for lawfully exercising a right."  *United States v. Esposito*, 968 F.2d 300, 303 (3d Cir. 1992).  As the Third Circuit has warned, "courts must be cautious in adopting" such a presumption.  *Id.*

### B.     Discovery in Support of Selective or Vindictive Prosecution

Not only is the standard for showing selective prosecution a "rigorous" one, but so is the standard for obtaining discovery in support of such a claim.  *See Armstrong*, 517 U.S. at 468. ("The justifications for a rigorous standard for the elements of a selective-prosecution claim thus

require a correspondingly rigorous standard for discovery in aid of such a claim.").  Six years after *Armstrong*, the Supreme Court again reiterated the significant burden facing a defendant, explaining that defendant must show "some evidence of both discriminatory effect and discriminatory intent" even to obtain discovery in support of a selective-prosecution claim.  *See United States v. Bass*, 536 U.S. 862, 863 (2002).  The Third Circuit has recently explained the nuanced differences between the standard to obtain discovery and the standard to prevail on the merits of a selective prosecution claim:

> A criminal defendant, however, will not often have access to the information, statistical or otherwise, that might satisfy a "clear evidence" burden.  Thus, the two component cases that make up the *Armstrong*/*Bass* test – *United States v. Armstrong* and *United States v. Bass*, both of which arose from selective prosecution challenges – propounded a facially less rigorous standard for criminal defendants seeking *discovery* on an anticipated selective prosecution claim.  Instead of "clear evidence," a successful discovery motion can rest on "some evidence."  "Some evidence" must still include a showing that similarly situated persons were not prosecuted.  Furthermore, under *Armstrong*/*Bass*, the defendant's showing must be "credible" and cannot generally be satisfied with nationwide statistics.

*United States v. Washington*, 869 F.3d 193, 214-15 (3d Cir. 2017) (emphasis in original) (footnotes omitted).  Although the Third Circuit has not squarely addressed the standard to obtain discovery for a vindictive-prosecution claim, it appears to be the same as for selective prosecution.  *See, e.g.*, *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) ("We see no reason to apply a different standard to obtain discovery on a claim of vindictive prosecution."); *see also United States v. Bucci*, 582 F.3d 108, 113 (1st Cir. 2009); *United States v. Wilson*, 262 F.3d 305, 315-16 (4th Cir. 2001).  Thus, a defendant may fail to demonstrate dismissal is warranted for selective or vindictive prosecution, but discovery may nevertheless be appropriate if the defendant comes forward with some evidence of the essential elements of the underlying selective- or vindictive-prosecution claim.

III.    **DISCUSSION**

Defendant argues that his felony firearm possession charge and the two related false-statement charges are selective and vindictive and also that they violate the separation of powers, requiring their dismissal.  Before turning to the merits of Defendant's arguments, the Court must first clarify the scope and reach of Defendant's selective- and vindictive-prosecution claims.

Defendant's motion sets forth a winding story of years of IRS investigations, Congressional inquiries and accusations of improper influence from Legislative Branch and Executive Branch officials within the prior administration, including former President Trump himself.  (*See* D.I. 63 at 4-20).  Yet, as Defendant explains in reply, his selective and vindictive prosecution claims are focused on "the prosecution's decision to abandon the Plea and Diversion Agreement framework it had signed in response to ever mounting criticism and to instead bring this felony indictment." (D.I. 81 at 2 n.1).  That decision occurred in the summer of 2023.  Any allegation of selective or vindictive prosecution stemming from the IRS investigations or prior administration officials or any conduct that preceded this past summer appears largely irrelevant to the present motions.  Moreover, the only charges at issue in this case are firearm charges – Defendant's financial affairs or tax-related charges (or investigations thereof) also appear irrelevant.  Thus, the only charging decision the Court must view through the selective and vindictive prosecution lens is Special Counsel David Weiss's decision to no longer pursue pretrial diversion and instead indict Defendant on three felony firearm charges.

A.      **Selective Prosecution**

Defendant argues that he has been "selectively charged for an improper political purpose" because he is the son of the sitting President, the latter of whom is a candidate in the upcoming presidential election.  (D.I. 63 at 26; *see also id.* at 23 ("This case exists because Mr. Biden is politically affiliated with his father, the sitting President and a candidate for reelection, at a time

when a historically divided nation prepares for a contentious presidential election."); D.I. 81 at 8 ("Mr. Biden is being targeted because he is the son of a sitting Democratic President and a political rival of former President Trump, who seeks to defeat President Biden in the upcoming presidential election.")).  To prevail on his selective-prosecution claim, Defendant must demonstrate that the Special Counsel's decision to abandon pretrial diversion on the firearm charges and proceed with indictment was "motivated by a discriminatory purpose" and had a "discriminatory effect." *Armstrong*, 517 U.S. at 465.  Defendant has failed to show either.

### 1. Discriminatory Effect

As to discriminatory effect, Defendant must show with "clear evidence" that similarly situated persons have not been prosecuted.  *See Taylor*, 686 F.3d at 197.  "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008); *see also Washington*, 869 F.3d at 214 ("Meeting this standard generally requires evidence that similarly situated individuals of a difference race or classification were not prosecuted, arrested, or otherwise investigated.").  Defendant's claim of selective prosecution differs from the more common equal protection arguments seen in cases where selective prosecution is raised – *e.g.*, the protected class comprised of individuals of a certain race or nationality.  In fact, Defendant struggles to define the class to which he belongs.  (*Compare* D.I. 63 at 23, 26 & 27 n.45, *with* D.I. 81 at 8-9, 11, 14).  Defendant never argues that he is being selectively prosecuted because he is a member of any specific political party or because he engaged in any specific political activity.[1]  Instead, he claims that his prosecution is unconstitutionally

---

[1]     "[M]embership in a political party is protected by the First Amendment, and the mere exercise of that right cannot be punished by means of selective prosecution." *United States v. Torquato*, 602 F.2d 564, 569 n.9 (3d Cir. 1979).  The closest that Defendant comes to

selective because he is being targeted politically and because he is "politically affiliated with his father." (D.I. 63 at 23; *see also id.* at 26). Thus, Defendant's articulated protected class is apparently family members of politically-important persons.[2] Like the government (D.I. 68 at 20), this Court has been unable to find any instance where a defendant's familial relationship to a politically-important person on its own gave rise to a claim of selective prosecution. Even if that were a cognizable claim, however, Defendant has failed to come forward with "clear evidence" that similarly situated individuals (*i.e.*, people who are not family members of politically-important persons) have not been prosecuted for comparable firearm-related conduct.

Defendant points to several categories of evidence that he contends support a finding of discriminatory effect. First, citing a news article, Defendant contends that Special Counsel Weiss admitted that he originally did not want to pursue the current charges in this case because "the average American" would not be charged based on the same facts. (D.I. 63 at 6, 41). Next, Defendant claims that "[s]everal experienced legal experts and law enforcement officials" agree with the Special Counsel's initial decision to not pursue charges, again citing a news article.[3] (*Id.*

---

arguing this is his suggestion that he is being prosecuted because he is the son of the sitting Democratic President (and candidate for re-election) or, more broadly, because he is a Biden – a family with well-known and strong ties to the Democratic Party.

[2]  To the extent that Defendant's claim that he is being selectively prosecuted rests solely on him being the son of the sitting President, that claim is belied by the facts. The Executive Branch that charged Defendant is headed by that sitting President – Defendant's father. The Attorney General heading the DOJ was appointed by and reports to Defendant's father. And that Attorney General appointed the Special Counsel who made the challenged charging decision in this case – while Defendant's father was still the sitting President. Defendant's claim is effectively that his own father targeted him for being his son, a claim that is nonsensical under the facts here. Regardless of whether Congressional Republicans attempted to influence the Executive Branch, there is no evidence that they were successful in doing so and, in any event, the Executive Branch prosecuting Defendant was at all relevant times (and still is) headed by Defendant's father.

[3]  Defendant also detours into a discussion about the tax charges currently pending in California, claiming that former Attorney General Eric Holder and unidentified

at 41).  Defendant then cites general statistics about federal firearm prosecutions from 2008 to 2017.  (*Id.* at 42-43).  According to Defendant, of the roughly 132,400 prosecutions for federal firearm offenses in this timeframe, only 1.8% were charges under § 922(g)(3).  (D.I. 63 at 42). And as for charges under §§ 922(a)(6) and 924(a)(1)(A) for falsely denying unlawful drug use or addiction when attempting to purchase a firearm, Defendant claims that less than 1,000 of such false-statement cases are even referred for investigation – let alone prosecuted.  (D.I. 63 at 42). None of this evidence, however, constitutes the requisite "clear evidence" that similarly situated persons were not prosecuted for the same offenses as Defendant.

As to the claim that the Special Counsel "admitted" others would not be prosecuted under the same facts, Defendant cites to a *New York Times* article quoting an anonymous source as providing that information.  (D.I. 63 at 6 & n.9; *see also id.* at 37 & n.85).  Yet, as the government points out, that same article goes on to say that "[a] senior law enforcement official forcefully denied" that the Special Counsel made any such statements.  (D.I. 68 at 40).  An anonymous source – let alone a contradicted one – is certainly not "clear evidence" of anything.

Next, as to Defendant's argument that "legal experts and law enforcement officials have agreed" with the initial decision not to prosecute Defendant for the firearm-related offenses (D.I. 63 at 41), the evidence he uses here is again a single *New York Times* article.  That article also relies primarily on anonymous sources reaching generic conclusions about Defendant's case:

> A substantial percentage of those accused of lying on a federal firearms application, like Mr. Biden has been, are not indicted on that charge unless they are also accused of a more serious underlying crime, current and former law enforcement officials said.  Most negotiate deals that include probation and enrollment in programs that include counseling, monitoring and regular drug testing. . . .

---

"Republican and Democratic U.S. attorneys . . . all agreed" that those tax charges would not have been brought absent "political pressure."  (D.I. 63 at 41).  Again, that is of minimal relevance here where the charging decision at issue relates only to the firearm offenses.

> When officials with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives reviewed Hunter Biden's gun application several years ago, they believed the case most likely would have been dropped if the target were a lesser-known person – because the gun had not been used in a crime and Mr. Biden had taken steps to get and stay sober, according to a former law enforcement official familiar with the situation.

Glenn Thrush, *The Gun Charges Against Hunter Biden Are Unusual. Here's Why.*, N.Y. Times (Sept. 15, 2023), https://www.nytimes.com/2023/09/15/us/politics/hunter-biden-gun-charges.html.  The only individual identified by name is John Fishwick Jr., a former U.S. Attorney for the Western District of Virginia for the time period of 2015 to 2017.  He states that this case is "rare" and that "[t]hese charges are usually brought against convicted felons who illegally possess a gun or who commit a violent or drug-related charge."  *Id.*  Yet neither Mr. Fishwick nor any of the anonymous sources provide any specific details about the individuals who have been prosecuted for the same offenses and those who have not.  And nowhere in the article is there any mention of charging practices for prosecutors here in Delaware.  *See Bass*, 536 U.S. at 863-64 ("Even assuming that the *Armstrong* requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the record of the decisionmakers in respondent's case) . . . .").  Simply put, the "legal experts and law enforcement officials" that Defendant relies on offer no "clear evidence" regarding the charges (or lack thereof) brought against similarly situated individuals.

The statistics cited by Defendant also fail to constitute "clear evidence" that similarly situated individuals were not prosecuted when Defendant was.  Citing a report issued by the Government Accountability Office, Defendant attempts to show the discriminatory effect element by arguing that just 1.8% of the 132,464 federal firearm prosecutions between 2008 and 2017 were for persons unlawfully using or addicted to controlled substances within the meaning of § 922(g)(3).  (*See* D.I. 63 at 42).  Even if national statistics could suffice as "clear evidence" to

warrant dismissal on the basis of selective prosecution,[4] the statistics cited by Defendant are nevertheless deficient because they say nothing about the individuals who have been prosecuted between 2008 and 2017 under § 922(g)(3) versus those who have not – *e.g.*, there is no information about their family connections, their family's political activity, their own political activity, etc. And Defendant's evidence regarding the false-statement charges is similarly lacking, again offering no specifics about whether those prosecuted versus not are family members of politically-important persons. (*See* D.I. 42-43). At best, Defendant has offered national statistics regarding how often the government prosecutes firearm charges against persons unlawfully using or addicted to controlled substances in general. That is not "clear evidence" that Defendant was selectively prosecuted because of his familial connection to politics when similarly situated persons were not. *See Bass*, 536 U.S. at 863-64 ("[R]aw statistics regarding overall charges say nothing about charges brought against *similarly situated defendants*." (emphasis in original)).

Finally, Defendant points to several DOJ announcements of firearm-related charging policies and press releases of successful prosecutions under § 922(g)(3). (*See* D.I. 63 at 43-46). In Defendant's view, these DOJ statements evidence a prosecutorial policy regarding drug-related firearm charges that targets only violent conduct or other "aggravating factors creating risk to public safety." (*Id.* at 43-44). Setting aside the fact that the United States Sentencing Commission does appear to consider false statements on firearms applications as an aggravating factor, as the government points out, roughly half of all prohibited-person prosecutions in 2021 actually lacked

---

[4]     In the context of a request for discovery on selective prosecution, the Supreme Court has cast doubt on the utility of national statistics instead of statistics tailored to the specific charging prosecutors. *See Bass*, 536 U.S. at 863-64 ("Even assuming that the *Armstrong* requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the record of the decisionmakers in respondent's case) . . . ."). If national statistics do not suffice to obtain discovery in support of a selective-prosecution claim, those same statistics do not warrant dismissal of the charges.

any aggravating factor.  (*See* D.I. 68 at 28 (discussing UNITED STATES SENTENCING COMMISSION, *What Do Federal Firearms Offenses Really Look Like?* 24-25 (July 2022))).  Defendant has offered no evidence that, in any given year, all firearm-related prosecutions have included aggravating factors.  Thus, although Defendant claims that recent DOJ statements and press releases indicate a policy to only prosecute firearm offenses that involve violence or threats to public safety, that is not borne out by the evidence provided.  Nothing in these DOJ materials demonstrates that Defendant was prosecuted when similarly situated others were not.

Because Defendant has failed to come forward with "clear evidence" that he has been prosecuted where others similarly situated were not, he is unable to show discriminatory effect, one of the two necessary elements of a selective-prosecution claim.  As such, his motion to dismiss the indictment on that basis must be denied.

2.      Discriminatory Purpose

Even if Defendant had made an adequate showing as to discriminatory effect, to prevail on his claim of selective prosecution, he would still need to prove that "the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor, or that the prosecution was intended to prevent his exercise of a fundamental right."  *Schoolcraft*, 879 F.2d at 68.  Defendant contends that the arbitrary factor driving the prosecution here is his affiliation with his politically active father.  To satisfy this second element, then, Defendant needs to show with "clear evidence" that the decision to prosecute him was because he is the family member of a politically-important person.  *See Wayte*, 470 U.S. at 610 ("In the present case, petitioner has not shown that the Government prosecuted him *because of* his protest activities. Absent such a showing, his claim of selective prosecution fails." (emphasis in original)); *see also Taylor*, 686 F.3d at 197.  Defendant has again failed to meet his burden.

Defendant contends that the discriminatory purpose behind his prosecution is targeting based on "his political affiliations and as a proxy for the political affiliations of his father." (D.I. 63 at 27 n.45; *see also id.* at 27 ("Top GOP government officials admittedly are openly weaponizing this case to influence voters and the next presidential election.")).   In attempting to show discriminatory purpose, Defendant points to past and recent statements made by former President Trump, alleged conduct of one of the former president's personal attorneys (Rudy Giuliani) and a purported criticism and pressure campaign by Congressional Republicans.   (*See id.* at 27-37). None of this evidence, however, is relevant to any alleged discriminatory purpose in this case.   The charging decision at issue here – from 2023 – did not occur when the former president was in office.   Nor did it occur when Mr. Giuliani was purportedly trying to uncover "dirt" about Defendant and presenting that information to U.S. Attorneys across the country.   (*See id.* at 30). And the pressure campaign from Congressional Republicans may have occurred around the time that the Special Counsel decided to move forward with indictment instead of pretrial diversion, but the Court has been given nothing credible to suggest that the conduct of those lawmakers (or anyone else) had any impact whatsoever on the Special Counsel.   It is all speculation.

Defendant also attempts to use statements and conduct by the DOJ to support his claim of discriminatory purpose.   (*See* D.I. 63 at 37-40).   He alleges that the "DOJ confirmed its own improper motive" when it pursued a "rarely used gun charge" that the Special Counsel purportedly admitted would not be brought against the average American.   (*Id.* at 37; *see also id.* at 38 ("That is an admission of improper motive.")).   The Court has already found this evidence insufficient to show discriminatory effect; the unsupported statement of a contradicted anonymous source also cannot suffice as "clear evidence" of any discriminatory intent of the prosecutors here.   Defendant then claims that the "DOJ's efforts to torpedo [the original] plea deal in response to political

blowback puts the matter to rest."[5]   (*Id.* at 39).   According to Defendant, the abrupt change in course from proceeding with pretrial resolution of the tax and firearm charges to pursuing indictments in both cases evidences a "a 180-degree about-face in response to congressional ire and criticism" that can only be interpreted as an improper motive.   (*Id.* at 39-40).   The problem with Defendant's argument, however, is that he offers nothing concrete to support a conclusion that any member of Congress – or anyone else – actually influenced the Special Counsel or his team.   The Court is provided with only Defendant's speculation and suspicion.   But suspicion based on temporal proximity is not "clear evidence" of discriminatory purpose, particularly where there are non-discriminatory reasons to explain the government's decision.[6]

Although Defendant asks this Court to find that the prosecution's decision to abandon pretrial diversion and proceed with indictment on the three firearm charges only occurred because of Defendant's political affiliations (or his father's political affiliations), Defendant has failed to offer "clear evidence" that that is what happened here.   Moreover, in this case, there appear to be legitimate considerations that support the decision to prosecute.   *See Armstrong*, 517 U.S. at 465 (recognizing "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan" as legitimate factors that may motivate a particular prosecution).   Defendant has published a book about his life, where he admitted that his firearm was taken from him at some

---

[5]   Defendant complains about the initial reversal from non-prosecution for all charges to seeking a guilty plea for the misdemeanor tax offenses and pretrial diversion for the firearm charges.   (*See* D.I. 63 at 38-39).   Defendant has made clear, however, that his selective-prosecution claim is focused on the decision to abandon pretrial diversion and pursue indictment on the three felony firearm charges – a decision that occurred after the Court's hearing in July 2023.   (*See* D.I. 81 at 2 n.1).

[6]   For example, the government may have simply decided it no longer wanted to follow through with pretrial diversion when it became apparent that the Court had concerns over the role that the parties wanted the Court to assume.

point after purchase and it was discarded (along with ammunition) in a public trash can, only to be discovered by a member of the public.  (D.I. 68 at 2, 7).  The government has an interest in deterring criminal conduct that poses a danger to public safety, and prosecutors are not frozen in their initial charging decisions.  *See Goodwin*, 457 U.S. at 382 ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.  An initial decision should not freeze future conduct.").

Because Defendant has failed to offer "clear evidence" that the firearm charges in this case were motivated by a discriminatory purpose and with a discriminatory effect, his claim of selective prosecution must fail.  Dismissal of the indictment is not warranted.

### B.      Vindictive Prosecution

Defendant also claims that his prosecution is vindictive.  To prevail on this theory, Defendant must show either actual animus on the part of the prosecutor or that a presumption of vindictiveness applies under the facts of this case.  *See Paramo*, 998 F.2d at 1220.  Defendant has failed to show either.

As to actual vindictiveness, Defendant does not accuse the prosecutor here, Special Counsel Weiss, of harboring any actual animus towards him.  Instead, Defendant makes claims of animus by a number of other individuals – the former president, his supporters and "other opponents of the Bidens."  (D.I. 63 at 49).  Yet, as was the case with selective prosecution, the relevant point in time is when the prosecutor decided to no longer pursue pretrial diversion and instead indict Defendant.  Whether former administration officials harbored actual animus towards Defendant at some point in the past is therefore irrelevant.  This is especially true where, as here, the Court has been given no evidence or indication that any of these individuals (whether filled with animus or not) have successfully influenced Special Counsel Weiss or his team in the decision to indict Defendant in this case.  At best, Defendant has generically alleged that individuals from

the prior administration were or are targeting him (or his father) and therefore his prosecution here must be vindictive. The problem with this argument is that the charging decision at issue was made during this administration – by Special Counsel Weiss – at a time when the head of the Executive Branch prosecuting Defendant is Defendant's father. Defendant has offered nothing credible to support a finding that anyone who played a role in the decision to abandon pretrial diversion and move forward with indictment here harbored any animus towards Defendant. Any claim of vindictive prosecution based on actual vindictiveness must fail.

Defendant argues that, even in the absence of actual vindictiveness, a presumption of vindictiveness should apply because the DOJ purportedly "upped the ante" several times in response to Congressional Republicans and other outside pressure. (D.I. 63 at 50-54). First, according to Defendant, when IRS whistleblowers came forward, the ensuing "Republican fervor" caused DOJ officials to change course from allegedly pursuing no charges to a guilty plea on the tax charges and pretrial diversion on the firearm charges. (*Id.* at 50). Then, DOJ "upped the ante again" when, in response to undefined criticism, it abandoned the plea and diversion agreements and brought additional felony firearm charges. (*Id.*). And finally, Defendant accuses the DOJ of "upping the ante" a third time, indicting Defendant on nine counts of tax offenses in California because members of Congress purportedly pressured the DOJ into doing so. (*Id.* at 50-51).

As to any presumption of vindictiveness, the Court begins by noting that the Supreme Court has cast doubt on the applicability of the presumption in pretrial settings.[7] *See generally Goodwin*, 457 U.S. 368, 372-84 (discussing the propriety of the presumption in cases where a defendant successfully challenges a conviction and faces enhanced punishment upon retrial but declining to

---

[7]     The government pointed this out in its opposition (D.I. 68 at 44) and Defendant had no response (*See* D.I. 81 at 20-22). This Court has found no cases from within the Third Circuit where a presumption of vindictiveness was applied in the pretrial context.

apply the presumption in the pretrial context where the defendant faced additional charges and enhanced punishment after refusing to plead guilty as demanded by the prosecutor).  As the Supreme Court explained:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting.  In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance.  At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.  In contrast, once a trial begins – and certainly by the time a conviction has been obtained – it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

*Id.* at 381.  Although the Supreme Court did not go so far as to hold that the presumption is categorically unavailable in the pretrial context, this Court finds that there is no reason to disregard the general concern announced in *Goodwin* and allow a presumption in the pretrial setting here.

Defendant claims that the Special Counsel's decision to abandon pretrial diversion and indict Defendant on the three felony firearm charges in this case is presumptively vindictive.  (*See* D.I. 81 at 2 n.1).  Because that decision occurred in the summer of 2023, his complaints about original charging decisions (or lack thereof) in this case are irrelevant, as are charging decisions for the unrelated tax offenses being pursued in another venue.  Yet even as to the Special Counsel's decision to indict after failing to reach agreement on pretrial diversion, Defendant fails to identify any right that he was lawfully exercising that prompted the government to retaliate.  *See Esposito*, 968 F.2d at 303.  He generically claims that the "self-serving and vindictive motives" at play here "rang[e] from a desire to punish him and others for engaging in constitutionally protected speech and political activity to influencing elections, avoiding scrutiny and criticism, and other interests

17

unrelated to the fair administration of justice." He goes on to claim that he is being targeted because of his "familial and political affiliations" and because of unspecified "actions taken by the Administration and democratic party."[8] (D.I. 63 at 49). The only thing that appears relevant to Defendant's vindictive-prosecution claim is the purportedly "constitutionally protected speech and political activity" of Defendant.[9] But Defendant identifies no such instances of protected speech or activity with any specificity – in fact, he offers no timeframe when the right was purportedly exercised. Under these circumstances, the Court cannot find that Defendant engaged in any constitutionally protected activity such that any charging decision by the Special Counsel should be viewed as presumptively vindictive. Thus, even if a presumption of vindictiveness could be invoked in the pretrial context, Defendant has failed to demonstrate that such a presumption is appropriate here.

In sum, Defendant has failed to show that his prosecution is vindictive.

## C.    Separation of Powers

At the end of his selective- and vindictive-prosecution arguments, Defendant argues that his prosecution also violates the separation of powers. (*See* D.I. 63 at 54-60). The gist of

---

[8]    Defendant has offered no authority for the proposition that a claim of vindictiveness may exist where a defendant is being prosecuted only to target a family member, particularly where legitimate reasons may exist to prosecute the defendant in the first place.

[9]    To the extent that Defendant believes that his prosecution is presumptively vindictive because additional charges were brought in response to something that transpired during the plea and pretrial diversion negotiations (and breakdown thereof), that argument would also be unavailing. If charges – including additional or more serious charges – are pursued following the failure to reach a plea agreement, that prosecution is not presumptively vindictive. *See Goodwin*, 457 U.S. at 379-80 ("Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation – in often what is clearly a 'benefit' to the defendant – changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial 'vindictiveness.'"). This Court sees no reason why the same principle should not apply in the context of a failed diversion agreement.

Defendant's argument is that the Legislative Branch has failed to respect the prosecutorial discretion vested in the Executive Branch and instead attempted to usurp that authority. (*Id.*). In particular, Defendant claims that many members of Congress "are actively interfering with DOJ's investigation" and conducting "a criminal investigation of private conduct by a private citizen" – *i.e.*, Defendant. (*Id.* at 58). He goes so far as to assert that these Legislative Branch officials "have overcome Special Counsel Weiss's independent judgment" and, even further, those officials are the reason that pretrial diversion was abandoned in favor of indictment. (*Id.*). Defendant's separation-of-powers argument is not credible.

As an initial matter, Defendant never disputes that the Executive Branch holds the ultimate power to prosecute in his case and that that branch of government is headed by his father. And Defendant does not actually accuse the Legislative Branch of successfully encroaching on or usurping the Executive Branch's power. Indeed, Defendant's argument is more subtle and nuanced; he alleges that the Legislative Branch is exerting pressure on the Special Counsel, purportedly causing him to make charging decisions that he would not otherwise make simply because members of Congress are unhappy. Yet members of the Legislative Branch pressuring Executive Branch officials or the Special Counsel to act is fundamentally different than actually making charging decisions or influencing them. And, apart from Defendant's finger-pointing and speculation, the Court has been given no evidence to support a finding that anyone other than the Special Counsel, as part of the Executive Branch, is responsible for the decision to indict Defendant in this case instead of continuing to pursue pretrial diversion. There is thus no basis to find a violation of the separation of powers under the facts here.

**D.      Defendant's Request for Discovery and an Evidentiary Hearing**

Defendant has also filed a motion seeking discovery for his claims of selective and vindictive prosecution, as well as discovery relating to the parties' proposed pretrial diversion agreement.  (*See generally* D.I. 64).  Defendant has failed to meet his burden to obtain discovery.

Defendant is correct that the standard to obtain discovery is different than the standard to prevail on a motion to dismiss the indictment for selective or vindictive prosecution.  (*See* D.I. 82 at 1-2).  Indeed, the Third Circuit has clarified that Defendant needs to show with "clear evidence" that his prosecution was selective or vindictive to obtain dismissal, but he only needs to come forward with "some evidence" to obtain discovery.  Even with that clarification, however, the Court is mindful that both standards are considered "rigorous."  *Armstrong*, 517 U.S. at 468.  As the Supreme Court explained:

> If discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim.  Discovery thus imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution.  It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy.  The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim.

*Armstrong*, 517 U.S. at 468.  In fact, the standard is so rigorous that, as of 2017, "neither the Supreme Court nor [the Third Circuit] has ever found sufficient evidence to permit discovery of a prosecutor's decision-making policies and practices."  *Washington*, 869 F.3d at 215.[10]

This is not the rare case where discovery of a prosecutor's decision-making practices will be permitted.  Although Defendant insists that he has come forward with "some evidence" to move past the "frivolous state" and thus warrant discovery, the Court disagrees that Defendant has

---

[10]     This Court has been unable to locate Third Circuit cases since 2017 permitting such discovery.

offered sufficient evidence to warrant discovery under Supreme Court and Third Circuit precedent. Most of Defendant's "evidence" consists of his description of the actions of others – actions that Defendant subjectively believes influenced the Special Counsel here. (*See* D.I. 64 at 5 ("contemporaneous handwritten notes by a former high-ranking DOJ official while on the phone with then-President Trump, IRS criminal investigation agent memorandums, quotes of then-President Trump summarized by former Attorney General Bill Barr in his memoir, and an incessant pressure campaign by partisan congresspersons and their allies, among other things.")).[11] As the Court has explained several times herein, Defendant has failed to offer anything credible to suggest that the Special Counsel's decision to abandon pretrial diversion and pursue indictment was actually influenced by any member of Congress or anyone else. And to the extent that Defendant contends his statistics entitled him to discovery, the Court disagrees. As was the case in *Washington*, Defendant's national statistics "revealed nothing about similarly situated individuals" who were not prosecuted for the same firearm-related conduct. 869 F.3d at 215. Defendant has thus failed to offer "some evidence" of discriminatory effect. That failure is itself enough to deny Defendant's request for discovery. *See Bass*, 536 U.S. at 864 ("[B]ecause respondent failed to submit relevant evidence that similarly situated persons were treated differently, he was not entitled to discovery.").

Finally, part of Defendant's motion for discovery and an evidentiary hearing relates to the parties' attempts to enter into a pretrial diversion agreement ("the Diversion Agreement"). (*See, e.g.*, D.I. 64 at 1 n.1). Defendant apparently seeks an evidentiary hearing where all of the attorneys involved in the pretrial diversion negotiations are required to testify. (*Id.*). Because the Court has

---

[11]    Defendant's motion requesting discovery and an evidentiary hearing is just five pages long, and he waits until the fifth page to identify these "concrete instances" that purportedly entitle him to discovery. (D.I. 64 at 4-5).

previously found that the Diversion Agreement unambiguously required but did not receive Probation's approval, there is no need for discovery or such an evidentiary hearing. Extrinsic evidence is not necessary or appropriate to consider. By its unambiguous approval terms, the Diversion Agreement never went into effect and extrinsic evidence will not change that conclusion. (*See* D.I. 97).

### E.    Defendant's Motion for Issuance of Rule 17(c) Subpoenas

*Defendant* also requests an order directing that subpoenas *duces tecum* be issued to Donald J. Trump, William P. Barr, Richard Donoghue and Jeffrey A. Rosen under Rule 17(c). (*See* D.I. 58). Rule 17(c) allows a party to obtain from a witness before trial documents and other evidentiary materials that may be used at trial. FED. R. CRIM. P. 17(c). A party seeking documents under this Rule must demonstrate that (1) the documents are evidentiary and relevant, (2) the documents cannot reasonably be obtained before trial through other means, (3) the moving party cannot prepare for trial without the documents and failure to obtain the documents may unreasonably delay trial and (4) the documents are sought in good faith and not as a "general fishing expedition." *Nixon*, 418 U.S. at 699-700. The Supreme Court has cautioned that Rule 17(c) was "not intended to provide a means of discovery for criminal cases" but instead exists "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). "Courts must be careful that [R]ule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16." *United States v. Cuthbertson* (*Cuthbertson I*), 630 F.2d 139, 146 (3d Cir. 1980).

Defendant seeks from the four subpoena targets documents and records relating to any investigations or prosecutions of (or decisions to investigate or prosecute) Defendant or, even more

broadly, any discussion of Defendant whatsoever.[12]  (*See, e.g.*, D.I. 58-1 at Page 6 of 6).  The time

period covered by the subpoenas is vast – *i.e.*, January 2017 to present.  (*Id.* at Page 4 of 6).

Defendant argues that the requested documents "may be used either in pre-trial pleadings or in a

pre-trial evidentiary hearing on [his] motions to dismiss the Indictment (or, potentially, another

issue)."  (D.I. 58 at 10).  According to Defendant, he is only seeking documents "reflecting one

issue, to determine whether the Subpoena Recipients or those with whom they worked pressured,

discussed, influenced, or requested any investigation or prosecution of Mr. Biden, including

whether any Executive Branch official placed any undue pressure on another government official

to undertake the same."  (*Id.* at 12).  In other words, Defendant is attempting to obtain discovery

from Mr. Trump, Mr. Barr, Mr. Donoghue and Mr. Rosen to support his claim of selective or

vindictive prosecution.  (*See id.* at 14 ("Mr. Biden seeks specific information . . . that goes to the

heart of his pre-trial and trial defense that this is, possibly, a vindictive or selective prosecution

that arose out of a n incessant pressure campaign that began in the last administration . . . .")).

Defendant is not entitled to such discovery for at least two reasons.

First, as the government points out, Defendant was not charged with the current (or any)

firearm offenses while any of the four individuals held office.  (D.I. 59 at 2).  The decision to

prosecute Defendant was made by and during the current administration – one headed by

Defendant's father and an Attorney General appointed by and serving at the pleasure of

Defendant's father.   And that Attorney General appointed the current Special Counsel – *i.e.*, the

prosecutor who decided to abandon pretrial diversion and seek indictment in this case in the

---

[12]     Defendant also seeks documents and records that mention Hunter Biden and relate to the
January 6th, 2021 attack on the United States Capitol.  (*See, e.g.*, D.I. 58-1 at Page 6 of 6).
The Court has been given no indication that such materials would have even tangential
bearing on the issues in this case.

summer of 2023.   None of the four individuals subject to Defendant's proposed Rule 17(c) subpoenas were involved in that charging decision and Defendant has offered nothing to suggest otherwise.   Any argument that those individuals have documents in support of his selective or vindictive prosecution claim seems likely doomed from the outset.

Moreover, any materials sought by a Rule 17(c) subpoena must be relevant, admissible and specific.  *See Nixon*, 418 U.S. at 700.  Yet the Court has found that Defendant failed to make out a claim of selective or vindictive prosecution and, further, that Defendant is not entitled to discovery from the government on those issues.   The documents requested by Defendant's Rule 17(c) subpoenas are thus not relevant evidentiary material because there is no viable claim of selective or vindictive prosecution in this case and there is no other purported use for the information sought.  *See, e.g.*, *Cuthbertson I*, 630 F.2d at 145-46 ("[O]nly evidentiary material is subject to subpoena under [R]ule 17(c). . . . [S]tatements made by nonwitnesses have no value as possible prior inconsistent statements to impeach trial testimony. The defendants have presented no other evidentiary use for such statements at trial, except for a general assertion that this material might contain exculpatory information."); *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) ("[N]aked exculpatory material held by third parties that does not rise to the dignity of admissible evidence simply is not within [Rule 17(c)].").[13]  If Defendant is not entitled to the same type of discovery from the government under Rule 16, the Court can discern no reason why the result under Rule 17(c) would be any different for the third parties here.  *See United States v. Charamella*, 294 F. Supp. 280, 282 (D. Del. 1968) ("If the documents sought to be produced and inspected pursuant to Rule 17(c) can have no relevance or evidentiary value to defendant in the

---

[13]    "[R]ule 17(c) is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial." *Cuthbertson*, 630 F.2d at 144.  The Rule does not exist to allow a defendant to search for possible claims or defenses.

conduct of his defense, the Court should decline to permit a pre-trial inspection.").  Defendant's will not be permitted to issue the four proposed subpoenas *duces tecum*.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motions to dismiss the indictment for selective and vindictive prosecution (D.I. 63), for discovery and an evidentiary hearing (D.I. 64) and for issuance of Rule 17(c) subpoenas (D.I. 58) are DENIED.