IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,            ) | |
|                                                              ) | |
|              Plaintiff,                              ) | |
|                                                              ) | |
|       v.                                                 ) | Criminal Action No. 23-61 (MN) |
|                                                              ) | |
| ROBERT HUNTER BIDEN,                ) | |
|                                                              ) | |
|              Defendant.                           ) | |

## MEMORANDUM ORDER

At Wilmington this 9th day of May 2024:

Defendant Robert Hunter Biden is charged with three firearm-related offenses that stem from his purchase of a firearm in Delaware in 2018 during a time when he was struggling with addiction. (D.I. 40; *see also* D.I. 99 at 1-3). Presently before the Court is Defendant's motion to compel discovery and set discovery deadlines. (*See* D.I. 83). To date,[1] Defendant has received from the government "a few search warrants and affidavits, a Delaware state police and Bureau of Alcohol, Tobacco, Firearms and Explosives ('ATF') case file, and certain miscellaneous material such as Apple iCloud backup reports, The Mac Shop files, statements and interviews by Mr. Biden, and a forensic copy of the devices seized from The Mac Shop." (D.I. 83 at 4-5). He also has received from the government third-party materials consisting of "bank records; travel records; accounting records; credit card records; phone records; Google and Apple records; iCloud back-ups; and productions of records from various individuals (likely either voluntarily produced or subpoenaed by the prosecution) during the course of its five-year investigation." (*Id.* at 5).

---

[1]   The discovery discussed herein was produced by the government at least by the end of January 2024. (*See* D.I. 83 at 4-5 (Defendant's opening brief setting forth discovery produced "to date")). Neither party has indicated that the state of discovery today is fundamentally different than how it existed then.

Defendant nevertheless seeks an order requiring the government to produce: (1) discovery materials under Federal Rule of Criminal Procedure 16; (2) materials that the prosecution is required to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady* materials"); (3) materials that the prosecution is required to disclose pursuant to Federal Rule of Criminal Procedure 26, *Jencks v. United States*, 353 U.S. 657 (1957) and the Jencks Act ("*Jencks* materials"); (4) discoverable evidence under Federal Rule of Evidence 404; and (5) grand jury materials. (D.I. 83 at 1; *see also id.* at 15-19 (additional requests for Department of Justice materials and laptop evidence)).

Turning first to materials under Rule 16, Defendant has received from the government a Delaware state police case file and an ATF file relating to the firearm-related conduct at issue in this case. (D.I. 83 at 5-6). The government has also produced "statements and interviews" of Defendant, search warrants and affidavits, excerpts from Defendant's memoir, records relating to his participation in rehabilitation programs and "certain FBI lab reports." (*Id.* at 5). Defendant argues that the government should be ordered to confirm no further responsive documents under Rule 16(a)(1)(A), (B) & (D) exist in its possession or be ordered to produce any remaining documents, including expert reports. (*Id.* at 6). The government responds that it has, in fact, produced two expert reports to Defendant in this case, along with supporting materials and the CVs for each expert. (D.I. 86 at 7-8). Apart from these reports, Defendant apparently "does not identify any other Rule 16 materials that the government has failed to produce." (*Id.* at 8). After reviewing the parties' submissions, the Court can discern no deficiency in the government's compliance with its Rule 16 obligations at this juncture. Defendant's request for an order directing the government to produce Rule 16 materials or confirm that no further materials exist is denied.

As to *Brady* materials, at the July 26, 2023 hearing, the government stated that it had produced all such materials. (*See* D.I. 16 at 7:1-14; *see also id.* at 7:15 (Defendant's counsel stating that it had no concerns about the government's production of *Brady* materials)). Later that day, the Court entered an order pursuant to Federal Rule of Criminal Procedure 5(f) confirming the government's obligation to produce *Brady* materials. (D.I. 14). Defendant complains that, notwithstanding the government's assertion that it had complied with its *Brady* obligations, "an avalanche of materials" has been produced by the government in the months that followed. (D.I. 83 at 7). According to Defendant, some of the discovery produced since the government made its July 2023 representation were *Brady* materials,[2] thereby casting doubt on the notion that the government has actually produced all materials as required. (*See id.* at 8). Defendant thus seeks an order requiring the government to (1) produce any unproduced *Brady* materials, (2) identify any unproduced *Brady* materials that will not be produced or (3) confirm no unproduced *Brady* materials exist. The government responds that Defendant has failed to identify any unproduced *Brady* material because none of the information sought is favorable and material to the defense. (D.I. 86 at 10). In reply, Defendant resorts to generalities and accusations that the prosecution does not understand its own disclosure obligations. (D.I. 89 at 9). In so doing, however, Defendant has not persuaded the Court that the government is withholding any such material. Defendant's request as to *Brady* materials is denied.

As to *Jencks* materials, the government does not dispute that it must turn over any such materials. (D.I. 86 at 12-13). Instead, the parties disputed the proper timeframe for doing so –

---

[2]   For example, Defendant claims that the production of the Delaware state police file constituted *Brady* material because it contained a statement indicating that New Castle County prosecutors decided not to pursue charges for the firearm-related conduct that occurred in October 2018. (*See* D.I. 83 at 8).

Defendant originally requested the materials six weeks before trial (D.I. 83 at 11), whereas the government offered to produce the materials one week before trial (D.I. 86 at 13). Since Defendant filed his motion, the parties have agreed that the government will provide any *Jencks* materials one week before trial is set to begin. (*See* D.I. 95 at 1). Therefore, this portion of Defendant's motion appears moot.

Turning next to the request for materials under Rule 404. In this, Defendant requests that the government either confirm that it does not intend to present any Rule 404(b) evidence at trial or identify the evidence that it does intend to present. (D.I. 83 at 11-12). Recognizing that the Rule requires "reasonable notice" of any such character evidence to be used in a criminal trial, the government agrees that the Court can set a deadline for the production of Rule 404 evidence in advance of trial. (D.I. 86 at 13). The government is silent as to a proposed deadline, whereas Defendant seeks production of Rule 404(b) material four weeks in advance of trial (D.I. 89 at 12). Mirroring the parties' agreement on *Jencks* material, the Court will order the government to disclose any Rule 404 material that it intends to offer at trial one week prior to trial.[3]

Defendant also requests broad and voluminous information regarding the grand jury that was empaneled and heard evidence regarding this case. (*See* D.I. 83 at 12-15; *see also id.* at 13 (setting forth the eight categories of requested information about the grand jury)). Notwithstanding the secrecy that generally applies to grand jury materials, Defendant argues that disclosure of such materials is necessary here to "avoid possible injustice in Mr. Biden's criminal prosecution." (*Id.*

---

[3] In his reply brief, Defendant revised his proposed deadline for *Jencks* materials to be only four weeks before trial, and he mirrored the requested deadline for Rule 404 materials based on that number. (*See* D.I. 89 at 12 ("To give the defense an adequate opportunity to consider such evidence, Mr. Biden respectfully requests the Court order the prosecution to disclose any 404(b) evidence it intends to use by the same four weeks suggested above for Jencks Act disclosures.")).

4

at 13). In particular, he claims that the grand jury materials sought relate to his selective and vindictive prosecution claims and are purportedly needed to prepare for any evidentiary hearing the Court may hold relating to those claims. The Court has denied Defendant's motion to dismiss for selective and vindictive prosecution, as well as his request for discovery relating to the same. (*See* D.I. 99). There will be no such evidentiary hearing. Defendant's extinguished claim of selective and vindictive prosecution provides no basis to obtain grand jury materials. Defendant also argues that he is entitled to these grand jury materials because "improper instructions were likely given to the grand jury." (D.I. 83 at 14). Although he assures the Court that "it is not speculation that erroneous or improper instructions were likely given to the grand jury," the sentence that includes that assurance begins with "[a]nd furthermore, ***it remains possible*** that in this highly-politicized matter, the grand jury was selected without regard to the bias that people ***might have*** . . . ." (*Id.* (emphases added)). Words like "possible" and "might" signal a lack of certainty or conviction in an assertion – *i.e.*, speculation. Defendant has offered nothing concrete upon which this Court can base a finding that the grand jury was improperly instructed or that the process was unconstitutionally tainted with bias. Defendant has failed to demonstrate a compelling or particularized need to obtain grand jury materials and, as such, his request is denied. *See United States v. Procter & Gamble,* 356 U.S. 677, 682 (1957) ("As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity.").

Defendant also seeks all documents in the Department of Justice's possession between or among Donald J. Trump, William P. Barr, Geoffrey Berman, Scott W. Brady, Richard Donoghue, or Jeffrey A. Rosen (or other Executive Branch or DOJ officials) relating to Defendant or the

investigation of him.[4]  (*See* D.I. 83 at 15-16).  To the extent that Defendant claims such material is relevant to his motion to dismiss for selective or vindictive prosecution (*id.* at 16), the Court has already denied that motion and accompanying request for discovery (D.I. 99).  As such, allegations of selective or vindictive prosecution provides no basis to order the requested discovery.  To the extent that Defendant claims that these materials are relevant to the "potential actions and motivations behind the investigation" of him (D.I. 83 at 15), potentially serving as exculpatory or impeachment evidence, the Court is unpersuaded.  Seeking to explore "motivations behind the investigation" is just another way of requesting discovery on selective or vindictive prosecution.  Moreover, the government has represented that it will not call any of these individuals at trial – nor will it call "anyone who may have communicated with these six individuals about this prosecution."  (D.I. 86 at 17).  The requested material therefore does not seem usable at impeachment either.  And Defendant has failed to show how any of the requested communications among former DOJ and Executive Branch officials could constitute exculpatory evidence as applied to him and the three firearm-related offenses being pursued here.  Defendant's request for DOJ materials is denied.

Defendant closes his motion with a request that the government be ordered to "generally point defense counsel" to where, on a forensic image of Defendant's "Apple MacBook Pro," certain text and photographs can be located.  (D.I. 83 at 18).  That forensic image was produced to Defendant in October 2023 without an index, without any Bates stamps and without any indication of what will be used at trial.  (*Id.* at 17).  Although the government produced the laptop in the

---

[4]  This request tracks the proposed subpoenas that Defendant sought under Rule 17. (*See* D.I. 58).  The Court denied the request to issue those subpoenas because Defendant failed to demonstrate that discovery into a claim of selective or vindictive prosecution was warranted.  (*See* D.I. 99 at 22-25).

specific format requested by Defendant (D.I. 86 at 19), he complains that he has been unable to locate on the image certain text and photographs relied upon by the government (D.I. 83 at 17-18). In its opposition, the government provides an exhibit with images and annotations that appears to identify where the information resides on the laptop. (*See* D.I. 86 at Ex. 1). As best the Court can tell, this response satisfied Defendant, and there are no further outstanding requests with respect to the laptop. (*See* D.I. 89 at 19-20 (recognizing that the government has no index and expressing appreciation for the government's disclosure of location of information)). Therefore, Defendant's request as applied to the Apple MacBook Pro appears moot.

    For the reasons set forth above, Defendant's motion to compel discovery and set discovery deadlines (D.I. 83) is DENIED.

*[signature]*
The Honorable Maryellen Noreika
United States District Judge