IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Criminal Action No. 23-61 (MN) |
| ROBERT HUNTER BIDEN, | ) ) ) |
| Defendant. | ) |

### MEMORANDUM ORDER

At Wilmington this 9th day of May 2024:

Defendant Robert Hunter Biden is charged with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(3)[1] and two false-statement counts under §§ 922(a)(6) and 924(a)(1)(A). (D.I. 40). Presently before the Court is Defendant's motion to dismiss the indictment based on the Second Amendment. (D.I. 61). In particular, Defendant argues that the indictment must be dismissed because § 922(g)(3) is unconstitutional under the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). Defendant argues that the charges under §§ 922(a)(6) and 924(a)(1)(A) must be dismissed as well because his alleged false statements regarding drug use are only illegal if § 922(g)(3) is constitutional. For the reasons set forth below, Defendant's motion is denied.

The Second Amendment protects "the right of the people to keep and bear arms." U.S. CONST. amend. II; *see also District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). That right, however, is "not unlimited." *Heller*, 554 U.S. at 626. Instead, the Second Amendment allows for a "variety" of firearm regulations, including the "longstanding prohibitions on the possession of

---

[1] Section 922(g)(3) prohibits anyone "who is an unlawful user of or addicted to any controlled substance" from possessing a firearm that has moved in interstate commerce.

firearms by felons and the mentally ill." *Id.* at 626 & 636; *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' . . . . We repeat those assurances here." (citation omitted)). Recently, in *Bruen*, the Supreme Court revisited its Second Amendment jurisprudence, rejecting a two-step framework that various Courts of Appeals had adopted in the years following *Heller* and *McDonald*.[2] *See Bruen*, 597 U.S. at 17-24. The Supreme Court found that the second step – applying means-end scrutiny to the challenged regulation – had no place in the constitutional analysis. *See id.* at 19 ("But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context."). Instead, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 24.

Under *Bruen*, when a regulation is challenged, a court must ask (1) whether the regulation covers conduct protected by the text of the Second Amendment and, if so, (2) whether the government has shown that regulation is consistent with the historical tradition of firearm regulation in this country. *Bruen*, 597 U.S. at 24; *see also Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 101 (3d Cir. 2023) (en banc) ("After *Bruen*, we must first decide whether the text of the Second Amendment applies to a person and his proposed conduct. If it does, the government now bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" (quoting *Bruen*, 597 U.S. at 24)). This inquiry searches for a relevantly similar firearm regulation

---

[2] The two-step approach generally asked whether the challenged regulation burdened conduct covered by the Second Amendment, followed by an assessment of the regulation's constitutionality using means-end scrutiny. The Third Circuit used this approach. *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010).

2

that existed at the time of the Second Amendment's adoption. In assessing whether regulations are "relevantly similar under the Second Amendment, . . . *Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are **central** considerations when engaging in an analogical inquiry." *Id.* (cleaned up). "[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30 (emphases in original).

Defendant argues that § 922(g)(3) is unconstitutional under the revised framework announced in *Bruen* because there is no "historical precedent for disarming citizens based on their status of having used a controlled substance." (D.I. 61 at 3; *see also id.* at 2-6).[3] Because Defendant makes no arguments specifically tailored to him or the application of § 922(g)(3) to his facts, Defendant's challenge to the constitutionality of § 922(g)(3) is a facial one. "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019); *see also United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) ("A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case."). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also United States v. Mitchell*,

---

[3] Neither side disputes that the text of the Second Amendment covers Defendant's conduct.

652 F.3d 387, 405 (3d Cir. 2022) (en banc).  In the wake of *Bruen*, to defeat a facial challenge under the Second Amendment, "all the government must do is identify constitutional applications – even if they are unrelated to [the defendant]'s conduct – using the same text-and-historical-understanding framework."  *United States v. Veasley*, 98 F.4th 906, 910 (8th Cir. 2024).

To date, no Court of Appeals has found § 922(g)(3) unconstitutional on its face under *Bruen*.  One Court of Appeals has found the opposite – *i.e.*, § 922(g)(3) is facially constitutional after *Bruen*.  *See Veasley*, 98 F.4th 906; *see also Gilpin v. United States*, No. 23-1131, 2024 WL 1929297, at *1 (8th Cir. May 2, 2024) ("[F]or purposes of a facial challenge, § 922(g)(3) fits within the historical tradition of firearm regulation.  Therefore, we reject Gilpin's facial challenge as foreclosed by *Veasley*.").  And one Court of Appeals has found § 922(g)(3) unconstitutional as applied to a particular defendant.  *See United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023) (finding § 922(g)(3) unconstitutional as applied to habitual marijuana smoker where there was no evidence he was under the influence at the time he was found with a firearm); *but see id.* at 355 ("Daniels's § 922(g)(3) conviction is inconsistent with our 'history and tradition' of gun regulation.  We conclude only by emphasizing the narrowness of that holding.  We do not invalidate the statute in all its applications, but, importantly, only as applied to Daniels." (citation omitted)).  Defendant's facial challenge thus finds no support in the appellate courts.[4]

---

[4] Two Courts of Appeals suggested in passing that the answer is unclear in the post-*Bruen* world.  *See, e.g., United States v. Claybrooks*, 90 F.4th 248, 256 (4th Cir. 2024) ("This Circuit lacks precedent establishing that any of the relevant statutes [including § 922(g)(3)] violate the Second Amendment right to keep and bear arms.  Nor have our sister circuits made much progress on the question.  The contours of *Bruen* continue to solidify in district and appellate courts across the nation, and yet there is no consensus."); *United States v. Stephenson*, No. 21-74-CR, 2023 WL 3402310, at *1 (2d Cir. May 12, 2023) (finding district court committed no plain error in not considering unraised argument regarding the constitutionality of § 922(g)(3) because "the contention that 18 U.S.C. § 922(g)(3) is unconstitutional is not clear under current law").  In addition, the Fourth Circuit is holding a case involving the question in abeyance pending the Supreme Court's decision in a case

Quite a few district courts have addressed § 922(g)(3) in the wake of *Bruen*, with the vast majority upholding its facial constitutionality. *See, e.g.*, *United States v. Montoya*, No. 1:21-CR-0997-KWR, 2024 WL 1991494, at *11 (D.N.M. May 6, 2024) (finding that § 922(g)(3) is facially constitutional because the government "met its burden in demonstrating that disarming presumptively risky people, like habitual drug users, is part of this nation's history and tradition of firearm regulation"); *United States v. Cousar*, No. 23-10004-01-EFM, 2024 WL 1406898, at *11 (D. Kan. Apr. 2, 2024) ("[Section 922(g)(3)] is distinctly similar to founding-era regulations aimed at preventing intoxicated persons from possessing and using firearms. Thus, § 922(g)(3) is constitutional under the Second Amendment."); *United States v. Connelly*, No. EP-22-CR-229(1)-KC, 2024 WL 1460762, at *3 (W.D. Tex. Apr. 2, 2024) ("*Daniels* strongly intimates that not only those who are actively intoxicated, but also those who are rendered dangerous or violent by their drug use, may be prohibited from possessing firearms without running afoul of the Second Amendment. Thus, because Connelly has not shown that § 922(g)(3) is unconstitutional in all of its applications, Connelly's facial challenge also fails." (cleaned up)); *United States v. Blue Bird*, No. 3:22-CR-30112-RAL, 2024 WL 35247, at *2 (D.S.D. Jan. 3, 2024) ("Section 922(g)(3) is a constitutional restriction to the possession of firearms analogous to founding-era statutes regulating the mentally ill, intoxicated, and lawbreakers from possessing firearms, and therefore, does not violate the Second Amendment."); *United States v. Slone*, No. 5:22-CR-144-KKC-MAS, 2023 WL 8037044, at *4 (E.D. Ky. Nov. 20, 2023) ("The Government has shown that § 922(g)(3) is 'relevantly similar' to historical regulations aimed at preventing potentially dangerous persons from possessing and using firearms, including the mentally ill and the intoxicated. Addiction to

---

involving a facial challenge to § 922(g)(8). *See* Order Granting Motion for Abeyance, *United States v. Alston*, No. 23-4705 (4th Cir. May 1, 2024).

5

controlled substances has long been accepted as a mental illness.  Accordingly, the Court finds that the Government has met its burden of demonstrating that § 922(g)(3) is consistent with this country's historical tradition of firearm regulation."); *United States v. Grubb*, No. 23-CR-1014-CJW-MAR, 2023 WL 6960371, at *4 (N.D. Iowa Oct. 20, 2023) ("Congress made it illegal for unlawful drug users to possess firearms for the common sense and obvious reason that someone using illegal drugs, in possession of a firearm, poses a real danger to the community.  It follows, then, that barring unlawful drug users who pose a danger to society is consistent with the history of firearm regulation at the time the Second Amendment was adopted." (citation omitted)); *United States v. Costianes*, 673 F. Supp. 3d 756, 762 (D. Md. 2023) ("The Government has shown that § 922(g)(3) is 'relevantly similar' to historical regulations aimed at preventing potentially dangerous persons from possessing and using firearms, such as individuals convicted of felonies, individuals suffering from mental illness, and intoxicated individuals.").[5]  The overwhelming weight of the district courts lends no support to Defendant's position either.

As is evident from above, the Third Circuit has not addressed the constitutionality of § 922(g)(3) under *Bruen*.  In fact, as best this Court can tell, no district court from within this Circuit has addressed its constitutionality either.  That being said, the foregoing survey of cases demonstrates that the current state of the law on the facial constitutionality of § 922(g)(3) is decidedly not in Defendant's favor.  No appellate court has agreed with his position, and possibly only one district court has found § 922(g)(3) unconstitutional on its face.  This Court ultimately sides with the great majority of cases upholding the facial constitutionality of § 922(g)(3) and,

---

[5]   Only a handful have come out the other way, finding that § 922(g)(3) is unconstitutional (usually on an as-applied basis).  *See, e.g.*, *United States v. Alston*, No. 5:23-CR-021-FL-1, 2023 WL 7003235, at *5 (E.D.N.C. Oct. 24, 2023) (facial challenge); *United States v. Connelly*, 668 F. Supp. 3d 662 (W.D. Tex. 2023) (as-applied challenge); *United States v. Harrison*, 654 F. Supp. 3d 1191 (W.D. Okla. 2023) (as-applied challenge).

because this Court finds persuasive and adopts the Eighth Circuit's reasoning in *Veasley*, the following analysis will be brief.

In *Veasley*, the Eighth Circuit undertook a careful analysis of the history of regulating firearm possession by mentally ill and dangerous persons, ultimately concluding that § 922(g)(3) is consistent with that historical tradition. *See Veasley*, 98 F.4th at 910-16 (beginning with this country's history of regulating intoxicating substances, reviewing regulations that banned use of firearms while drinking and detailing various laws permitting confinement of the mentally ill). Focusing on confinement, the *Veasley* court explained how, in the 18th century, mental illness was viewed as "a transitory condition" and those deemed dangerous were confined and restrained – often at the sole discretion of justices of the peace. *Id.* at 913. That confinement "did not include access to guns." *Id.* As the problem grew without any dedicated place for the mentally ill, an early solution was simply to jail them, but soon mental hospitals started to proliferate in the colonies beginning in the mid-1700s (and continuing for many years). *Id.* at 914-15. Again, as the court emphasized, "[c]onfinement led to the loss of liberties" and "[g]un rights were no exception." *Id.* at 915. By the late 1800s, states started to permit prosecution of individuals who provided firearms to mentally ill people. *See id.* ("Along with the even longer tradition of confinement, these laws suggest that society made it a priority to keep guns out of the hands of anyone who was mentally ill and dangerous."). In the *Veasley* court's view, § 922(g)(3) was thus analogous to the historical tradition of confining – and thereby disarming – mentally ill persons:

> The "burden" imposed by § 922(g)(3) is "comparable," if less heavy-handed, than Founding-era laws governing the mentally ill. It goes without saying that confinement with straitjackets and chains carries with it a greater loss of liberty than a temporary loss of gun rights. And the mentally ill had less of a chance to regain their rights than drug users and addicts do today. Stopping the use of drugs, after all, restores gun rights under § 922(g)(3).

7

> The justification, which is to "keep guns out of the hands of presumptively risky people," is also comparable. It is reflected in colonial-era laws, whether it be disarming loyalists, or making sure the mentally ill could not harm themselves or others. At least as applied to drug users and addicts who pose a danger to others, § 922(g)(3) is just another example of this "longstanding" tradition.

*Id.* at 915-16 (citations omitted). As such, § 922(g)(3) survived *Bruen*. *Id.* at 918.

*Veasley* is not alone in its reasoning. Various district courts upholding the facial constitutionality of § 922(g)(3) have found the regulation of firearm possession by the mentally ill to be a relevant historical analogue under the *Bruen* framework. *See, e.g.*, *Blue Bird*, No. 3:22-CR-30112-RAL, 2024 WL 35247, at *2; *Slone*, No. 5:22-CR-144-KKC-MAS, 2023 WL 8037044, at *4; *Costianes*, 673 F. Supp. 3d at 762; *Fried v. Garland*, 640 F. Supp. 3d 1252, 1263 (N.D. Fla. 2022) ("At bottom, the historical tradition of keeping guns from those the government fairly views as dangerous – like alcoholics and the mentally ill – is sufficiently analogous to modern laws keeping guns from habitual users of controlled substances."); *United States v. Seiwert*, No. 20 CR 443, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022) ("In this case, § 922(g)(3) is relevantly similar to regulations aimed at preventing dangerous or untrustworthy persons from possessing and using firearms, such as individuals convicted of felonies or suffering from mental illness."). This Court will do the same. Although drug addiction and mental illness may have distinct pathologies, sufficient similarities exist between the two such that a historical analogue under *Bruen* is appropriate. And because this country has a longstanding tradition of regulating firearm possession by the mentally ill, for the reasons articulated in *Veasley* and the many district courts concluding the same, this Court finds that § 922(g)(3) is constitutional on its face under *Bruen*. *See Veasley*, 98 F.4th at 913 ("[T]hat the analogy works for some, and that the mentally ill sometimes lost their guns, means that § 922(g)(3) cannot be facially unconstitutional."); *see also*

*Heller*, 554 U.S. at 626 (emphasizing that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by . . . the mentally ill").

In his reply brief, Defendant attempts to blur the lines between facial and as-applied constitutional challenges. (*See* D.I. 79 at 9-11; *see also* D.I. 61 at 4-9 (the government pointing out Defendant's failure to separately address an as-applied challenge)). "An as-applied attack, in contrast [to a facial one], does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Marcavage*, 609 F.3d at 273. As previously noted, Defendant makes no arguments tailored to his situation here. Instead, he generically asserts that he should be allowed to raise an as-applied challenge at some later point. (D.I. 79 at 9-11). In any event, because of the likely need for factual findings, such a challenge would be ill-suited to resolution on a motion to dismiss before trial. *See* FED. R. CRIM. P. 12(b)(1) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."); *see also United States v. Pope*, 613 F.3d 1255, 1261 (10th Cir. 2010) (Gorsuch, J.) (improper to resolve as-applied challenge to § 922(g)(9) on pre-trial motion to dismiss because it would require consideration of contested facts surrounding the charged offense – "the very facts a court may *not* consider before trial" (emphasis in original)). As such, to the extent that Defendant seeks in his motion to raise a challenge to the constitutionality of § 922(g)(3) as applied to him, that request is denied without prejudice to renew on an appropriate trial record. *See Bird*, 2023 WL 9510705, at *9 ("Blue Bird must await the presentation of evidence at trial before seeking dismissal of the indictment on an as-applied basis. Once the trial evidence is in, he may renew his motion. Until then, his as-applied challenge to § 922(g)(3) should be held in abeyance or denied without prejudice."); *United States v. Davis*, No. 4:23CR3088, 2023 WL 9600860, at *2 (D. Neb. Dec. 6,

2023) ("The court cannot rule on Defendant's as applied constitutional challenge without resolving factual issues related to his alleged offense, such as the extent of his drug use, and therefore the court must defer a ruling on that issue until trial."), *report and recommendation adopted*, No. 4:23-CR-3088, 2024 WL 519970 (D. Neb. Feb. 9, 2024).

Finally, Defendant argues that the false-statement and false-record charges under §§ 922(a)(6) and 924(a)(1)(A) "fall to the wayside" if § 922(g)(3) is found to be unconstitutional. (D.I. 61 at 6). Defendant has no independent challenge to the constitutionality of these false-statement statutes. Because the Court has found that § 922(g)(3) is not unconstitutional, the charges under §§ 922(a)(6) and 924(a)(1)(A) will not be dismissed.[6]

Therefore, Defendant's motion to dismiss the indictment based on the Second Amendment is DENIED.

                                                                             *Maryellen Noreika*
                                                         The Honorable Maryellen Noreika
                                                         United States District Judge

---

[6] As it is unnecessary to do so, the Court declines to reach the government's argument that the false-statement charges would nevertheless remain in the case even if § 922(g)(3) were found unconstitutional. (*See* D.I. 71 at 35-39).