1                 IN THE UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF DELAWARE

3    UNITED STATES OF AMERICA,        )
                                       )
4                                      )   No. 23cr61(MN)
         v.                            )
5                                      )
     ROBERT HUNTER BIDEN,              )
6                                      )
              Defendant.               )
7

8

9

10                        Tuesday, May 14, 2024
                              11:00 a.m.
11                        STATUS CONFERENCE

12

13                           844 King Street
                          Wilmington, Delaware
14

15   BEFORE: THE HONORABLE MARYELLEN NOREIKA
          United States District Court Judge
16

17

18   APPEARANCES:

19

20                   UNITED STATES DEPARTMENT OF JUSTICE
                     OFFICE OF SPECIAL COUNSEL
                     BY:  DERK E. HINES, ESQ.
21                   BY:  LEO WISE, ESQ.
                              Counsel for the USA
22

23

24

25

1    APPEARANCES CONTINUED:

2

3              DALTON & ASSOCIATES
               BY:  CONNOR C. DALTON, ESQ.
4

5              -and-

6              WINSTON & STRAWN
               BY:  ABBE DAVID LOWELL, ESQ.
7              BY:  DAVID A. KOLANSKY, ESQ.

8                        Counsel for the Defendant

9

10

11                   _ _ _ _ _ _ _ _ _

12

13                    P R O C E E D I N G S

14

10:40:01 15    (Proceedings commenced in the courtroom beginning at

10:40:01 16    11:00 a.m.)

11:00:53 17         **THE COURT:**  Good morning, everyone.  Please be

11:00:54 18    seated.  All right.  So thanks for coming in.  I wanted to

11:00:58 19    catch up on where we are and how we go forward from here

11:01:03 20    to trial.  So I will ask the Government first.

11:01:08 21         **MR. HINES:**  Good morning, Your Honor.  Derek

11:01:09 22    Hines and Leo Wise on behalf of the United States.

11:01:11 23         We are prepared to proceed to trial on June 3.

11:01:14 24    The parties had obviously consulted with the Court at the

11:01:18 25    March 13 status conference about proposed trial dates.

11:01:22 1  Both parties agreed that June 3 was doable at that time

11:01:25 2  and both parties understood that there was a possibility

11:01:28 3  that the Court could deny or grant the pending motions to

11:01:31 4  dismiss.

11:01:32 5          From our perspective, absolutely nothing has

11:01:34 6  changed that militates in favor of any kind of delay.  The

11:01:38 7  United States has met every single deadline in this case,

11:01:42 8  including those that the Court imposed sort of

11:01:46 9  nunc pro tunc that the parties had submitted in the order,

11:01:51 10 that being expert disclosures, for example.  We filed

11:01:54 11 those with the defendant on the date that they were due.

11:01:56 12         This morning we filed several motions in

11:02:00 13 limine, I believe eight in total.  So we've met the

11:02:02 14 Court's deadline for motions in limine.

11:02:05 15         THE COURT:  That's it?  Those are the only ones

11:02:06 16 that are coming?

11:02:07 17         MR. HINES:  Those are the motions in limine

11:02:11 18 that the Government anticipates filing at this time.

11:02:14 19         THE COURT:  And that's what I meant, from the

11:02:14 20 Government.

11:02:14 21         MR. HINES:  Yeah.  And as far as the other

11:02:16 22 deadline in the Court's order, it's reciprocal discovery.

11:02:19 23 Based on a discussion with counsel, it's my understanding

11:02:19 24 that there is no reciprocal discovery in this case.  So no

11:02:24 25 deadlines have been blown yet with respect to the Court's

11:02:28 1    scheduling order, from our perspective.

11:02:30 2         This is a case that was indicted in September

11:02:32 3    that the defendant has known about for -- the possibility

11:02:35 4    about being charged for years.  He received discovery last

11:02:41 5    September, shortly after it was charged.  And it's a

11:02:46 6    simple case.  It is straightforward.  It involves three

11:02:50 7    firearms charges.  We think the trial is going to take

11:02:52 8    less than a week.  And we are working with counsel to

11:02:56 9    streamline issues.  And, indeed, our motions that we filed

11:02:59 10   today streamline those for trial.  So...

11:03:03 11        **THE COURT:**  Are you working currently with the

11:03:06 12   defendants or how is it going to work with jury

11:03:10 13   instructions, voir dire, stuff like that?

11:03:12 14        **MR. HINES:**  We have jury instructions drafted,

11:03:14 15   voir dire drafted as well.

11:03:17 16        The defense in the tax case took the position

11:03:20 17   that they would not meet and confer with respect to

11:03:25 18   proposed jury instructions pending the outcome of an

11:03:28 19   appeal.

11:03:29 20        Obviously, the Third Circuit has now denied

11:03:32 21   their -- or dismissed their appeal for lack of

11:03:36 22   jurisdiction.  We have jury instructions ready to go and

11:03:38 23   we can meet the Court's deadline of Thursday and work with

11:03:41 24   defense to file those on a joint basis.

11:03:44 25        **THE COURT:**  Friday, I think.  But regardless.

11:03:47  1          **MR. HINES:**  Friday.

11:03:48  2          **THE COURT:**  All right.  Anything else?

11:03:49  3          **MR. HINES:**  Not from the United States at this

11:03:50  4     time.

11:03:51  5          **THE COURT:**  Mr. Lowell.

11:03:52  6          **MR. LOWELL:**  Can I come to the podium, Your

11:03:53  7     Honor?

11:03:53  8          **THE COURT:**  You may.

11:03:55  9          **MR. LOWELL:**  Appreciate being here in person,

11:03:56 10     first time to see you.

11:03:59 11          To the bottom line, and then if you allow me,

11:04:01 12     I'll go back from the bottom line to explain the bottom

11:04:04 13     line.  We are not ready and are trying to be and cannot be

11:04:08 14     by the present date, which I just want to remind the

11:04:10 15     parties, when Mr. Hines talked about our status telephone

11:04:15 16     conference in March, we did talk about penciling in the

11:04:19 17     date, and I asked for that when you asked me, because

11:04:21 18     there were other things happening, including overlapping

11:04:24 19     dates with a corresponding trial in California which, even

11:04:28 20     if everything happened according to the plans of both

11:04:32 21     courts, would have this case end a week before that case

11:04:35 22     was supposed to start, theoretically.  And, also, with

11:04:38 23     deadlines in each case overlapping.  But that's the bottom

11:04:41 24     line.  And I want the Court to understand how we get

11:04:44 25     there, please.

11:04:45 1          The first thing is, I want the Court to

11:04:47 2    understand that while things have been pursued since the

11:04:50 3    time of the charge being filed through our filing of the

11:04:53 4    motions and Your Honor's consideration of those over those

11:04:56 5    months, we haven't been doing nothing.  We haven't put all

11:05:00 6    of our eggs in the basket of either your finding us

11:05:04 7    meritorious in our motions or when we raise the

11:05:07 8    interlocutory appeal for that to happen.

11:05:10 9          By that, I mean we have gone through the

11:05:12 10   materials provided by the Government.  We have looked at

11:05:15 11   their expert discloses.  We have tried to find reciprocal

11:05:19 12   experts that could then opine on the issues that would be

11:05:22 13   in the case.

11:05:23 14         We have looked to see what would be the

11:05:25 15   exhibits.  We have proposed a possibility of a jury

11:05:29 16   selection process, which we would submit and have a

11:05:32 17   questionnaire, which is pretty routine these days.

11:05:35 18         We have been looking to identify our fact

11:05:37 19   witnesses.  We have been doing the things that you would

11:05:40 20   do.  We have not been diligent -- we have not been not

11:05:44 21   diligent.  We have not been delaying.  We have not been

11:05:47 22   tardy; we have been trying.

11:05:48 23         But this is an unusual case, that everybody

11:05:50 24   needs to understand as such, right?  I've never seen in my

11:05:53 25   practice, Your Honor, where we're litigating in two

11:05:55 1    separate district courts and two courts of appeals at the

11:05:58 2    exact same time on some of the exact same issues.  And I

11:06:02 3    think that was the first thing I wanted the Court to know

11:06:04 4    is that we have not done nothing.

11:06:05 5         And I can -- when I get to a proposal that I

11:06:07 6    would like to make to Your Honor and to the Government, I

11:06:09 7    will explain the various pieces that we are doing and yet

11:06:13 8    to be done.

11:06:13 9         The second thing I wanted the Court to know in

11:06:15 10   preliminary before I get to that proposal, is that I think

11:06:20 11   everybody understands that our seeking relief from you and

11:06:24 12   then also from the appellate courts is not over your

11:06:27 13   normal -- there's a defect in account or not over whether

11:06:32 14   or not there has been some form of grand jury impropriety,

11:06:36 15   but it is trying to vindicate the right we believe we have

11:06:40 16   good basis to put forward for our client not to have to

11:06:43 17   stand trial and not to have to, in the words of the

11:06:46 18   courts, both the circuit courts and the Supreme Court,

11:06:48 19   undertake the burdens of pretrial preparation.

11:06:52 20        It is, at the same time, being ready, but also

11:06:54 21   saying we shouldn't have to be ready.  We shouldn't have

11:06:57 22   to go to trial.  And we have that dual requirement, which

11:07:00 23   is to get ready but, at the same time, vindicate a

11:07:03 24   client's right.  Doing that is difficult under every

11:07:07 25   circumstance.  But given the things I will lay out that

11:07:09 1    the Court should know, I want to point out -- we are also

11:07:12 2    trying to accomplish three other things.

11:07:14 3            First, to provide our client with competent

11:07:18 4    counsel.  Second, to make sure the record's clear that we

11:07:21 5    can have effective assistance of counsel.  And, third, is

11:07:25 6    to ensure that we can get a fair trial.

11:07:28 7            **THE COURT:**  Let me ask you some questions on

11:07:28 8    the competency of counsel.  I mean, this is not a terribly

11:07:32 9    complicated case.

11:07:37 10           With respect to the trial that's happening in

11:07:42 11   California, I mean, this case is going first.  So your

11:07:47 12   preparation for that case isn't interfering directly with

11:07:52 13   this case.  So what is it?  Like --

11:07:59 14           **MR. LOWELL:**  I can give you some ideas.

11:08:00 15           **THE COURT:**  -- because I'm not understanding

11:08:01 16   why we can't just -- you know, this isn't a long case.

11:08:05 17   It's doesn't seem like the issues are that complicated.

11:08:08 18   So tell me what is it that you need?

11:08:12 19           **MR. LOWELL:**  I'll give you a few examples,

11:08:13 20   Judge, and I want to also tell you about things that will

11:08:15 21   be filed today here in this Court and also in the Third

11:08:18 22   Circuit.

11:08:20 23           **THE COURT:**  Okay.

11:08:21 24           **MR. LOWELL:**  I'm sorry, but I will take as

11:08:23 25   little time as I need to make the record.  I'm sorry.  I

11:08:25 1    will answer your question.

11:08:27 2          So, for example, notwithstanding all the,

11:08:29 3    quote, trial preparation, the Government didn't get with

11:08:31 4    us pursuant to their request that a scheduling order be

11:08:34 5    filed and they did file it and then you issued it after

11:08:37 6    the Court of Appeals ruled, but I want to make sure the

11:08:40 7    report's clear that those dates were not ones to which I

11:08:43 8    had agreed.

11:08:45 9          **THE COURT:**  Let's make sure the record is

11:08:47 10   clear, sir.  On April 11 of 2024, there was a joint

11:08:54 11   motion, which was the defendant's and the Government, to

11:08:57 12   set a pretrial schedule.

11:08:59 13         The parties requested, it noted that the trial

11:09:03 14   date was going to be June 3, and the parties requested

11:09:06 15   that I hold a pretrial conference on May 31st.  Given the

11:09:10 16   June 3rd trial date, that didn't give me a lot of time.

11:09:14 17   So I set the pretrial conference a little bit earlier.

11:09:18 18         The other dates that were then submitted by the

11:09:23 19   Government, I understand you didn't join.

11:09:26 20         **MR. LOWELL:**  Correct.

11:09:27 21         **THE COURT:**  But there was a pretrial submission

11:09:29 22   that you did join, the one that was in April, and that had

11:09:36 23   many of the same dates, right?

11:09:39 24         **MR. LOWELL:**  We had not agreed to that

11:09:40 25   schedule.  We did agree, Your Honor, that the June 3 date

11:09:43  1    was penciled in, as I said to you.

11:09:46  2              THE COURT:  I'm looking at the document that is

11:09:48  3    attached to the joint motion for the pretrial schedule,

11:09:52  4    which was joined, and it has:  Parties shall make

11:09:57  5    disclosures pursuant -- expert disclosures April 17.

11:10:00  6    Defendant shall provide reciprocal discovery by April 19.

11:10:04  7    Those dates were pushed back in the later submitted order.

11:10:10  8              May 10, the parties shall make motions in

11:10:14  9    limine.  I'm sorry.  May 10, the parties shall make expert

11:10:20 10    disclosures in rebuttal.

11:10:23 11              May 17, the parties file motions in limine.

11:10:27 12              May 20, the parties exchange exhibit lists.

11:10:29 13              May 24, the parties shall file responses to

11:10:33 14    motions in limine.

11:10:35 15              These were all dates that were jointly proposed

11:10:39 16    to me.

11:10:39 17              MR. LOWELL:  I have to look at that, Your

11:10:41 18    Honor.  Your record is your record.  I was under the

11:10:43 19    impression we had understood that we were going to do two

11:10:45 20    things.  One, have that June 3 date which, when it was put

11:10:48 21    in, I thought we had both -- and I used your own words, to

11:10:51 22    use the phrase "penciled in" and the May 24 or so

11:10:54 23    pretrial.

11:10:54 24              THE COURT:  I'm looking at the April 11

11:10:56 25    submission, which was signed by you.

11:10:59 1    **MR. HINES:**  I have a copy here, Your Honor.

11:11:00 2    It's Document Number 95.  It is signed by Mr. Lowell.  I

11:11:04 3    can provide it to him.  We did negotiate that and agree to

11:11:08 4    submit it together.

11:11:09 5           **MR. LOWELL:**  Thank you.

11:11:21 6           I see the submission, Your Honor.

11:11:22 7           So what I'm here to say is that I have been

11:11:23 8    trying to follow and meet those requirements, and you

11:11:25 9    asked me why I cannot, so let me address that.

11:11:28 10          **THE COURT:**  No.  I'm just trying to clarify so

11:11:29 11   that I understand when you keep saying it was penciled in

11:11:33 12   and that you didn't agree to the dates.  I just want to

11:11:36 13   make sure we're all on the same page about what has been

11:11:39 14   done since that time.

11:11:41 15          **MR. LOWELL:**  You're right.  And I do see that

11:11:43 16   and I understand.  So let me clarify what has happened

11:11:47 17   once that was filed, as just a few examples.

11:11:52 18          On Friday, was the time that the Court -- that

11:11:55 19   the Government and we had our first conversation about

11:11:58 20   what they said were going to be proposed motions in

11:12:01 21   limine.

11:12:01 22          And they proposed, I think, 11 or 12.  We had a

11:12:04 23   conversation about those, and we went through them and

11:12:07 24   indicated that we would get back to them as to which ones

11:12:10 25   we could agree to and which not.  Then we had a submission

because we knew we were going to be here today.  And since then, I guess eight things have been filed this morning prior to here, where I thought we would be discussing the schedule for that.

I told them on Friday, when I asked them whether they intended to admit various forms of evidence, and we went through those.  There were a few that they said they needed to get back to me about.  So I haven't filed our motions in limine, and cannot do that today because I don't know their answer among other things, I don't have the wherewithal.  That's one issue.

The second is, on Friday they indicated that they would send us, for example, a piece of evidence which they have filed in a motion in limine today, which we got yesterday -- just to give you some examples because you've asked -- and it has a 76-page, almost a thousand entry summary chart of texts between Mr. Biden and various people.

So I had a chance to look at that last night. It's a draft by them.  And it implicates they have picked, of the thousands and thousands of communications, those to fit into their chart.  And now we are looking through 2,500 other entries, some of that in the very month this case is about, October, to determine either for the rule of completeness or for some other admissible reason what

11:13:26 1    else we would suggest before that's done as well.  That's

11:13:29 2    just a second example of what we're working on, but I'm

11:13:32 3    not ready to be able to do.

11:13:34 4          The third thing is, and this will dovetail onto

11:13:37 5    Your Honor's order last week after the Third Circuit ruled

11:13:40 6    on the Second Amendment.  We talked about jury

11:13:43 7    instructions.  Well, Your Honor's opinion talked a little

11:13:46 8    bit about what's happening -- and the Government's

11:13:47 9    opposition to our motion did as well.

11:13:50 10         We know that in the next few weeks the Supreme

11:13:52 11   Court is going to rule on a case that could have

11:13:55 12   implications, at the very least, to a jury instruction

11:13:59 13   that would be critical in this case as to the issues of

11:14:02 14   gun possession by somebody who might violate 922.

11:14:06 15         And Your Honor, yourself, pointed out that the

11:14:09 16   Fourth Circuit, in its case, basically has held in

11:14:12 17   abeyance its decision waiting that.  So at the very least,

11:14:15 18   I'm saying that there might be an instruction issue that

11:14:18 19   will come out of that.  At the very most, it might change

11:14:21 20   Your Honor's view of whether or not this charge should go

11:14:23 21   forward.

11:14:24 22         I don't know how to address the issue of a jury

11:14:27 23   instruction without have the information that may come out

11:14:29 24   of that decision in terms of the critical -- this is a

11:14:32 25   three-count having to do with gun possession.

11:14:34  1          Those are just three examples.

11:14:37  2          The fourth thing is the Government did provide

11:14:39  3    us their expert disclosure.  We're supposed to provide

11:14:41  4    that back.  I told you in the filing we filed that it's

11:14:45  5    not been easy to find rebuttal experts, not because of --

11:14:49  6    it's always hard to find experts, but it's particularly

11:14:53  7    hard, as we put in our papers, that there's not a lot of

11:14:56  8    experts -- let me put it this way -- as we said in our

11:15:01  9    papers, people are reluctant to become involved in this

11:15:04 10    case, particularly because of the noise that happens in

11:15:06 11    this particular high-profile case.  There have been people

11:15:10 12    who have been reticent --

11:15:11 13          **THE COURT:**  Tell me what you have done.  How

11:15:11 14    many experts have you approached?

11:15:13 15          **MR. LOWELL:**  We interviewed on the three types

11:15:15 16    of experts, one to deal with the lab report, one to deal

11:15:19 17    with the forms that were filed in terms of what's on the

11:15:22 18    forms.  And the third is somebody to opine on some of the

11:15:26 19    addiction issues.

11:15:27 20          We have basically interviewed now half a dozen

11:15:31 21    people.  We have three that are willing to consider doing

11:15:34 22    this, which we were going to continue to figure out if we

11:15:37 23    can figure out the retention agreement and what would be

11:15:41 24    necessary and provide them the material this week.

11:15:44 25          **THE COURT:**  When did you interview them?

11:15:46  1          **MR. LOWELL:**  We've been interviewing people

11:15:48  2   over the last two months.

11:15:51  3          **THE COURT:**  And you only just recently got to

11:15:53  4   three people who agreed?

11:15:56  5          **MR. LOWELL:**  Three people who are tentatively

11:15:58  6   agreeing.  I mean, it's not that necessarily easy to find

11:16:01  7   people in the field that will be able to opine on the

11:16:03  8   three things that we've said.  But, yes, we have done

11:16:05  9   that.  As I said, we have not not been doing things.

11:16:09 10          So there are three or four events, and we're

11:16:12 11   trying the best we can.  I will tell you as well, I think

11:16:16 12   there should be a consideration by the Court of what

11:16:19 13   selection system might take place that would ensure a fair

11:16:24 14   and impartial jury, which I think the giving form for that

11:16:28 15   would be to include a questionnaire, which we started

11:16:30 16   drafting, and I'm almost done drafting, to submit to the

11:16:34 17   Government for their approval or their consideration, as

11:16:36 18   well as any other item that would be in that regard as

11:16:38 19   well.

11:16:39 20          As I said, we're supposed to provide experts--

11:16:43 21   I'm sorry -- disclosures.  I am sure the Government won't

11:16:45 22   just accept our disclosures of the experts.  There will be

11:16:48 23   litigation about that.  And all of that is being squeezed

11:16:52 24   into about a two-and-a-half week period, notwithstanding

11:16:54 25   our attempts to be as vigilant and as hard working as we

1    can be.

2         Just to give you an example, as I did before, I

3    mean, as of yesterday, we have begun the process of

4    looking at in the month of October of 2018, the month in

5    which the events of this case happened, while the

6    Government's summary chart has a handful of

7    communications, there turns out to be, like, 2,000-plus

8    others in that month, which you would think would be the

9    more germane when it gets to, for example, the issue of

10   what does the law forbid.

11        If the law is in the present tense and it uses

12   the word "is" for somebody who shouldn't have a gun

13   because that person is an abuser and that's one of the

14   issues that has to be worked out, you would think that the

15   communications on or about the time of the gun purchase

16   would be pertinent.

17        And so there are 2,000 of those in that month

18   that we are now looking as against theirs.

19        That's just three examples, but I have some

20   other points to make to Your Honor before you decide on

21   what will be the schedule.

22        Okay.  Because I said to you that we believe we

23   have good basis on the issue of trying to vindicate our

24   client's right not to have to stand trial, there are two

25   things that are going to happen today based on what we

1   learned from your ruling last week and the court of

2   appeals.

3        The first is, is that we are, as we told the

4   Government, filing a motion for rehearing.  I had to look

5   at the certification requirement for doing that to make

6   sure that I could sign such a certification.  But we have

7   more than an adequate basis to file that request for

8   rehearing.

9        And I will, if you want, tell you, at least

10  briefly, that there are three reasons for that.  One is

11  that by -- on the injunction side, recognizing or saying

12  that our motion did not make clear that we were seeking

13  injunctive relief when we were seeking to vindicate past

14  violations of appropriations law, which couldn't be

15  remedied by an injunction, which was why we moved to

16  dismiss.  Then they applied the practical effect test.  We

17  looked at practical effect test that they cited and the

18  cases they cite don't, we believe, stand for the

19  proposition of what they've put in.

20       So we want to seek rehearing for them to

21  reconsider what that practical effect test have because in

22  practical effect, you can't vindicate after a trial that

23  was done with resources from an appropriations that should

24  not have been used.  If Mr. Biden is acquitted, he can't

25  vindicate that right even still.

1    And, you know, if the other thing occurs, sure,

2  but that already has occurred.  So we can't vindicate that

3  without seeking that the practical effect test as they

4  did.

5    Second of all, the Court pointed out that the

6  reason that they can't hear at the moment our injunction

7  issue is because they believe that it wasn't squarely

8  presented.

9    So today, because the violation we allege to

10  occurred, Judge Noreika, is continuing as they are

11  spending funds today in court that we believe are outside

12  the appropriation.  We are filing the motion for an

13  injunction.  Now, we understand Your Honor will likely, on

14  the appropriations violation, rule as she did before and

15  say that you don't believe that occurs without regard to

16  the remedy.

17    But according to what the court of appeals said

18  in their decision last week, that does provide us an

19  immediate appeal because the relief of a denial of an

20  injunction would be -- would be immediate.  And that is

21  something that we have to try to do to vindicate that

22  second thing I told you about, which is Mr. Biden's right

23  not to be tried when we think the appointment was wrong

24  and the appropriation spending was wrong and, for example,

25  the diversion agreement should prevent it.  So that will

be done, the rehearing and also the motion for injunction

will be filed today.

On the issue of the second amendment point, I

just wanted to reiterate that we are not tomorrow or weeks

away from a decision on what might affect everything from

your reconsideration of the motion to dismiss to jury

instructions, as the Supreme Court is about to rule.

And even on the day that you ruled, I think you

probably saw as well that the Ninth Circuit ruled in an

exact similar case, a 922(g)(3) case, where a person had

not been convicted, where a person was alleged to have

been a drug user, that there was a violation of -- a

on-its-face constitutional violation.

So this is in mix, this is in flux.  So what

we're saying in the amalgam, Your Honor, is my proposal is

as follows, and the Government is ready.  It says its

ready.  And I understand they have the resources to be

ready on both coasts.  I wish we did, but it's not for

want of trying.

My proposal is to pick a date that I can say we

are ready for trial.  We're backwards from that without

regard to what's happening in either the Third or the

Ninth Circuit.

I should point out, Your Honor, that it may be

today, it may not be today, that the same issue the Third

1  Circuit has the Ninth Circuit has, and the Ninth Circuit

2  law, we believe, is different.  I don't know what the

3  Ninth Circuit will do.  But if they decide to hear the

4  case that the Third Circuit said it wasn't going to hear,

5  it could also have ramifications on the issue of whether

6  he has the right not to stand trial.

7          So what I'm suggesting is we pick a date and

8  work backwards on the following things:  Our requirement

9  to provide reciprocal discovery.

10          **THE COURT:**  Why don't you tell me -- quit

11  saying "pick a date."  I don't know what date you're

12  talking about.  2027?  2026?  '25?  '24?

13          **MR. LOWELL:**  No.  No.  I'm sorry.  Glad to.

14          **THE COURT:**  I have no idea what you're talking

15  about.

16          **MR. LOWELL:**  I would like Your Honor to -- and

17  we would suggest the following date, the first week of

18  September, right after Labor Day, and work backwards from

19  there on the remaining requirements.  And would do that

20  without -- unless some Court of Appeals orders otherwise.

21          In other words, we'd have a date certain.  We

22  would submit the dates backwards from that, which would be

23  our expert disclosure, our motions in limine, our ability

24  to provide reciprocal discovery, our ability to submit

25  jury instructions, our ability to know what the Supreme

1  Court does, our ability to see whether or not the other

2  circuits' decisions have any bearing.

3        And that would both ensure two things.  For a

4  case that at that point still would not be a year old.  It

5  would, allow us to be ready, competent, effective, and not

6  delay, but also make sure that we are providing the Court

7  and our client a fair trial.

8        **THE COURT:**  All right.

9        **MR. LOWELL:**  And I know the Government will

10 object because they say they're ready, but they, too,

11 should care about having a fair trial, if a trial is going

12 to occur.  And they can't deny that there are things out

13 there out of both of our controls, which might affect our

14 ability to get that done.

15       **THE COURT:**  All right.  Mr. Hines.

16       **MR. HINES:**  Your Honor, we do deny there are

17 things out there beyond our control about the case.

18       **THE COURT:**  Yeah.  The one that caught my

19 attention that I'd like your input on is the injunction.

20 Seems like it's not a serious request, given that it

21 wasn't made before and if it was that important, it would

22 have been made prior to this time.

23       But, nevertheless, let's say he moves for an

24 injunction and I deny the injunction based on its lack of

25 timeliness, as well as the substantive basis.  And the

1  defendant appeals, which he has the right to do.  At that

2  point, it becomes less clear that this is -- this would be

3  an appeal that is of questionable jurisdiction in the

4  appellate court.

5        So what is it that you think I would do then?

6        **MR. HINES:**  So, for starters, I would say we

7  would immediately file to dismiss such an appeal in the

8  Third Circuit once they notice it.  They said -- they

9  represented they're going to be a filing a motion, I

10  believe, today on those grounds.  We can respond.  And

11  once the Court issues such an order, we will seek to

12  dismiss such an appeal immediately, citing not only the

13  abundance of case law, but the Third Circuit's already

14  existing order where they found that the defendant does

15  not meet the standards required for such injunctive

16  relief.

17        We believe that that request could be granted

18  before the June 3 trial date, particularly now knowing

19  that the Third Circuit is well versed on this matter.

20        **THE COURT:**  Okay.  So what I'm trying to figure

21  out, though, is it could be addressed by Third Circuit

22  before the trial date, but there's lots of stuff that goes

23  in to having this trial on the 3rd, including calling in

24  numbers of citizens of our state, and the Court doing some

25  preparation.

So what I'm trying to figure out is, I
certainly wouldn't want to be in a position where we do
all of that for naught because the Third Circuit needs
additional time.

And I don't hear you saying that it would be --
well, I guess my question is, would it be appropriate if
the Third Circuit were not to decide that issue, the
injunction issue, not the petition -- would it be
appropriate for us to hold a trial?

**MR. HINES:**  Yes.  We can brief the Court and
file a supplemental submission on that point, if Your
Honor would like.

**THE COURT:**  Because you think it falls within
where I can use my reseasoned judgment, or whatever, to
make that determination that the appeal isn't one that
divested me of jurisdiction.

**MR. HINES:**  Exactly.  Jurisdiction exists in
only one Court.  So even while the Third Circuit would be
considering the merits of their appeal, the
jurisdiction -- the law surrounding jurisdiction shows
that this Court has not been divested of it.  It can
continue to set schedules and make sure the parties abide
by the schedule in advance of trial.

If I could briefly just respond to a couple of
the points that counsel made of a factual nature.  He

1   discussed our motions in limine meet-and-confer on Friday.

2   And I just want to make the record clear that we had a

3   call and we apprised counsel of our motions that we

4   intended to file.  We then conferred and filed appropriate

5   motions today, after sending in an e-mail to counsel

6   exactly what those motions would be, which the parties had

7   agreed to on that call.

8         What Mr. Lowell said in response, he provided

9   his position on those motions, but he said he had -- they

10  had not had a time to write our questions that you had

11  answered as for our need or lack of need of motions in

12  limine.  And to date, we still haven't received their

13  e-mail memorializing their motions in limine.  So there's

14  nothing, there's been nothing for us to respond to at this

15  point.

16        With respect to the 1006 summary, we provided

17  in discovery in September, October the communications.  In

18  April, when we gave our expert disclosures, we provided an

19  excerpt of those communications that had highly relevant

20  messages and then, yes, yesterday we provided a summary

21  chart for the defense.

22        But in our -- Mr. Lowell represented that we

23  had attached that to our motion.  We didn't attach the

24  summary chart to our motion.  What we represented to the

25  Court is that the parties agreed that the use of a summary

chart would be appropriate and that underlying electronic evidence was self-authenticating per to the certificates that were attached.

We haven't presented the Court yet with the completeness issue that counsel intends to work with us on.  We're happy to hear it.

**THE COURT:**  I think what he's saying is it's going to take him a while to figure out whether things need to be added.  I don't know.  I mean, are we just talking text messages, so we're talking, like, a few words at a time?

**MR. HINES:**  Yeah.  We're talking about messages, for example, on October 13, the day after he buys the gun, Mr. Biden says that he was at a 7-Eleven meeting a dealer named Mookie.  The following day, October 14, he says, "I was sleeping in a car smoking crack."

So we're talking about messages in October, preceding October in 2018, during the course of time in which he's talking about, in his book, that he's an active addict, and then following his gun purchase.

It's not a highly -- you know, when you put it in a chart, it may seem daunting at first.  It's really not a highly voluminous set of information that we're talking about here.

1    And then third, Mr. Lowell said something about

2    anticipating a ruling from the Supreme Court.  We've

3    listened to the oral argument.  We don't anticipate that

4    anything will be coming down from the Supreme Court that's

5    going to impact jury instructions in this case, nor do we

6    think that the Ninth Circuit recent decision has anything

7    to do with the jury instructions in this case.

8    Expert disclosure, he listed three types --

9    **THE COURT:**  I'm sorry.  The Ninth Circuit's

10   recent decision?

11   **MR. HINES:**  Yeah, he mentioned a Ninth Circuit

12   decision on a 922(g)(3) saying that the law was in flux.

13   **THE COURT:**  Oh, yeah.  Yeah.

14   **MR. HINES:**  And we don't think --

15   **THE COURT:**  I'm sorry.  I thought you meant the

16   Ninth Circuit decision on the issues that are currently on

17   appeal.  I thought I missed something.  Okay.  Thanks.

18   **MR. HINES:**  And then the fourth issue he

19   addressed was expert disclosures.  For the first time

20   today, we've heard that they want an expert on the lab

21   report.  I mean, Your Honor has done numerous criminal

22   trials.  I've done a lot of gun and drug cases.  People

23   come in all the time from these DEA and FBI labs and

24   testify what the drugs were.  I'm not sure what they're

25   contemplating there, but there was cocaine found on the

11:30:06 1    brown leather pouch that had his firearm.  We produced

11:30:09 2    that expert report in discovery last fall.  There's no

11:30:12 3    reason why they shouldn't have been able to find an expert

11:30:16 4    by now.

11:30:16 5           The forms that were filed, he said, I'm not

11:30:18 6    sure what expert testimony will be permissible from the

11:30:21 7    defense perspective related to such ATF forms that were

11:30:25 8    filed in the case.  That seems like a factual matter.

11:30:27 9           And then, finally, with respect to addiction

11:30:30 10   issues, Mr. Biden has known about the possibility of this

11:30:34 11   case for years.  And in the fall, we charged it.  We don't

11:30:37 12   believe -- they're saying that they're having trouble

11:30:39 13   finding experts.  We don't believe there's an appropriate

11:30:42 14   expert who's qualified who can testify about addiction

11:30:45 15   issues relevant to this case.  I mean, Mr. Biden has said

11:30:48 16   in his Memoir he was an active addict during this time

11:30:51 17   period.  So I don't know what expert they're going to

11:30:53 18   possibly find that would say he wasn't or opine otherwise.

11:30:57 19   I think that is the issue that they're having in this

11:31:01 20   case.

11:31:01 21          And finally, with respect to the jury selection

11:31:04 22   questionnaire, we're happy to consider anything they give

11:31:06 23   to us.  The Court runs jury selection.  The Court is

11:31:09 24   well-versed in that process, having done trials, and we

11:31:12 25   are mindful and cognizant of the resources that go into

1    that with summoning people.

2            They started talking about this jury selection

3    questionnaire in March and we haven't seen anything yet.

4    So there's nothing that has happened in this case in the

5    interim that suggests that they could not have raised

6    their concerns with the Court or sought to address

7    whatever they wanted to in the form of a jury selection

8    questionnaire.  That's on them, their decision to wait on

9    that.

10           So for those reasons, you know, I'll end with

11   Mr. Lowell said they don't have the resources like us to

12   be ready on both coasts.  Your Honor, you're looking at

13   the resources here.  We're flying back and forth just like

14   they are.  They've got a team of lawyers, some different

15   in both cases, some in the gun case only, some in the tax

16   case.  Mr. Wise and I are doing what we can, and we're

17   ready for trial in both cases in June.  So with that, we'd

18   ask that the Court keep the schedule.

19           **MR. LOWELL:**  May I respond briefly?

20           **THE COURT:**  You may.

21           **MR. LOWELL:**  Or at least to respond.  Let me

22   start with the last piece.

23           This is all about my ability to come before

24   Your Honor and say, when you ask, are we ready for trial?

25   And I can say, yes, Your Honor, we are.  And I'm telling,

as sincerely as I can, in all my years of practice in all the cases I've tried, I've never not been able to say that. And I'm saying to Your Honor, with the things I've pointed out, I am not.

And I will give you last example. There may be two lawyers at this table. But they have DEA agents, ATF, agents, FBI agents, and I don't have those, and I'm trying to work around that.

To give you another example, I am not having an expert opine on the issue of whether Mr. Biden was addicted at any point of his life. But since this is a statute that requires the specific intent of willfulness, and I don't want to litigate the issue until we present it and Your Honor presents the arguments back and forth, there will be an issue as whether or not, if the requirement is: Does he -- or addicts on any given date, before they get to their sobriety, believe themselves to be addicts or users, for on a form that says: Are you a user and you're not using in that period of time, which goes back to the issue of what does the statute prohibit. That is something we want to present to the Court, which would be a proper subject for expert testimony.

When it comes to the DEA report, of course, I understand that they have a DEA report that says there was cocaine residue on a pouch. That wasn't sought until

11:33:29  1    three months after the charge was brought as to it being

11:33:33  2    an important piece of evidence that's peculiar to us.  But

11:33:36  3    even if it wasn't peculiar to us, there's no date on that

11:33:41  4    cocaine residue.  We don't know who put it there.  We

11:33:43  5    don't know whether it's even possible to date cocaine.

11:33:46  6    That could have been on that pouch years before in terms

11:33:49  7    of its evidentiary value.  We should have the right to be

11:33:51  8    able to explore that possibility.

11:33:53  9          THE COURT:  How did you learn about the

11:33:58 10    Government's assertions that there was cocaine on the

11:34:01 11    pouch?

11:34:02 12          MR. LOWELL:  I think in December or January of

11:34:04 13    this -- December or January, I believe.

11:34:06 14          THE COURT:  What have you done since then?

11:34:08 15          MR. LOWELL:  Tried to find a lab person that

11:34:10 16    would be able to tell us whether they would be --

11:34:12 17          THE COURT:  Tried.  So what were those efforts

11:34:14 18    in trying?

11:34:15 19          MR. LOWELL:  As I said, we've been looking to

11:34:17 20    see a former government DEA or other person.  We didn't --

11:34:20 21          THE COURT:  And --

11:34:20 22          MR. LOWELL:  -- a person until the spring of --

11:34:22 23    and then that person couldn't do it.  And now we have

11:34:25 24    found somebody on that issue.

11:34:27 25          In terms of form, on Friday, the Government

explained to us something that we asked them about that
was in their discovery, but I did not understand the
ramifications until Friday.

The 4473 form that is the subject of one of the
counts, the Government produced two versions of that to
us.  One, they indicated a week or so ago that they are
going to seek into evidence for it being the
contemporaneous filing of the form in October of 2018.

On Friday, they informed us that the second
form that was in discovery came to them in 2021, I
believe.  And we didn't know that.  And it's a different
form.  I mean, it's the same form.  It has different
material on it.  And when that was put on and who put it
on, we asked them on Friday, and they said they do not
know.

So, consequently, that becomes a subject of
importance to us as to how the actual form that will be
the one that they're not putting into evidence -- by that,
I mean the physical form that they obtained from the gun
shop in 2021 is the form.

What they are seeking to put into evidence is a
faxed or PDF'ed copy of that from October.  The actual
form has new handwriting on it, which is why we're looking
into that issue as well.  And I didn't know that until
Friday.

11:35:47 1      So there are some things that I am asking that
11:35:49 2  I have the ability to present in the way of experts, and
11:35:52 3  we're doing the best we can on that.

11:35:54 4      Your Honor has asked the Government their view
11:35:56 5  about my indication of an injunction, which Your Honor
11:36:00 6  said was possibly -- I forgot what you used, the phrase.
11:36:04 7  I want to say two things about the timeliness of that.
11:36:06 8  Again -- just, again, we are making a record.

11:36:08 9      The first is when we put forward our motion to
11:36:11 10 dismiss because funds had already been spent, and the
11:36:16 11 Government responded and said, no, the right way to
11:36:18 12 address is an injunction.  And in our reply brief, we
11:36:22 13 said, well, it doesn't fix the problem in the past, but we
11:36:25 14 have no problems with some remedy to address the right, if
11:36:29 15 that's what the Court wants to do.  We thought we did
11:36:31 16 that.

11:36:32 17     If we hadn't done that, I thought we were
11:36:36 18 clear.  Not clear enough, which is why we're going to be
11:36:39 19 clear.

11:36:39 20     In terms of timeliness, Your Honor, this is a
11:36:41 21 continuing violation.  There's no order that says you
11:36:43 22 can't address a continuing violation.  They filed eight
11:36:47 23 motions in limine today.  Those are pretrial motions.
11:36:49 24 That is in the subject of what is a pretrial motion.  We
11:36:52 25 will be quick about it, but it is a continuing violation.

11:36:57  1    So I just wanted to make the Court aware that

11:36:58  2  this was not something that we were hiding from.  We

11:37:01  3  addressed it in our reply brief.  In addition to which,

11:37:03  4  the Court -- the Government was the one to say, we

11:37:07  5  understand that the proper remedy is injunctive relief.

11:37:11  6  It's not like they were caught by surprise.  Nevertheless,

11:37:13  7  I wanted to make sure you were aware of our view of that.

11:37:16  8    And as to the gun issue, I'm bewildered,

11:37:19  9  honestly, as to the Government's point of view that

11:37:22 10  nothing the Supreme Court says could affect this issue as

11:37:26 11  the Fourth Circuit felt differently in a very similar, if

11:37:29 12  not exact situation.  Because in the case that you pointed

11:37:33 13  out in a footnote, the *Alston* case, there's not a felony

11:37:37 14  conviction.  It's an accusation that somebody possessed a

11:37:39 15  gun that was -- a user -- an illegal user of drugs, and

11:37:45 16  they have held that decision in abeyance just for a few

11:37:48 17  weeks to see what the Supreme Court does.

11:37:50 18    If the Fourth Circuit felt that in a similar

11:37:52 19  situation -- and I misstated it, by the way, 922(g)(1) not

11:37:56 20  (3).  That's identical.  And the Ninth Circuit's case is

11:38:00 21  also that.  So, consequently, there are things being done

11:38:03 22  that might impact.

11:38:04 23    Most importantly, though, I come back to where

11:38:06 24  I started.  I have six or seven or eight things to do to

11:38:09 25  be able to sit here and tell Your Honor we're ready for

trial and I can provide my client with effective

assistance of counsel, and I'm doing my best to get it

done as quickly as we can.

I've made a proposal that would work.  And I

think it's, given the timeliness and the other issues that

we're going to file, is not something that's unreasonable.

And all I can ask you to do is to consider that that's

what we need to do to be able to make that statement to

Your Honor, including the jury issue.

One more thing about that.  You can -- or they

can oppose our motion, and you can dismiss our injunction

today, and we'll take an interlocutory appeal and we'll

ask -- we'll take an immediate appeal, and we'll ask the

Court to consolidate that with our rehearing, and the

Court will rule on that.

If we're right, and we believe we are, of

course, we wouldn't be filing something if we didn't think

we had a good basis to do it, then moving ahead with the

trial comes at extraordinary risk for the reasons Your

Honor said.

And what is to be lost?  What's the prejudice

to the public or to the Government in a case that is not

about somebody who's a present danger in any way, is

somebody who was and is no longer an addict, no longer in

possession of a gun, and a case that is not so old that

11:39:17 1    asking for this schedule is not going to provide any harm

11:39:20 2    to the law enforcement interests.

11:39:26 3            **THE COURT:**  All right.

11:39:27 4            **MR. HINES:**  Mr. Lowell made a couple of new

11:39:28 5    factual representations I'll briefly address.

11:39:30 6            First of all, with respect to their expert and

11:39:32 7    the cocaine on the pouch, it's not rocket science when

11:39:37 8    cocaine comes into country, it is not in, like -- isn't

11:39:38 9    neatly packaged in a Kellog's box with a "born on" date

11:39:43 10   and expiration date.  That's not how drugs are

11:39:45 11   manufactured.  So they can ask our expert if there's a

11:39:48 12   test designed to tell exactly when a drug was made.

11:39:50 13   That's common sense, we would submit.  But, nonetheless,

11:39:53 14   that's not going to be a dispute at trial.

11:39:55 15           With respect to the Form 4473 and the two

11:39:56 16   versions, there are two forms 4473 produced in discovery.

11:40:01 17   This isn't a nefarious issue.

11:40:04 18           In October of 2018, the store owner of

11:40:08 19   Starquest e-mailed the form that Hunter Biden had signed,

11:40:13 20   prepared, and was dated on that date, to an ATF agent.

11:40:16 21   That form has been produced in discovery.  All of the

11:40:20 22   boxes on that form, with the exception of one box, matched

11:40:24 23   a form that was later turned into the ATF approximately

11:40:28 24   two years later, in, I believe, 2021; although, we've

11:40:33 25   given the exact date to defense counsel.  And the only

difference is in that intervening period, someone had

written Delaware Vehicle Registration on one of the lines,

as an additional ID that Mr. Biden had presented.

So, frankly, that latter form is, from an

evidentiary perspective, more valuable to the Government

because it's one more indicia of identity that Mr. Hunter

Biden had given to the Starquest owners and salespersons

when he bought that gun.

Nonetheless, out of fairness, we have agreed

that we should be using the form as it existed in October

of 2018 that's attached to an e-mail and has been

authenticated by Starquest so that there's no ambiguity or

uncertainty regarding when the Delaware vehicle

registration was written on there because that could have

been done years later in advance of turning it into the

ATF.  We don't know exactly when or who did that, but we

think that this is really a nonissue, nonevent.

**THE COURT:**  In advance of turning it in to the

ATF, but the e-mail was turning it in to the ATF already?

**MR. HINES:**  The e-mail was to the ATF.  So the

AFT has this e-mail.  That's been produced in discovery.

That e-mail attaches the form that existed without that

one -- it says -- I think the line item is like 19, and it

says "supplemental identification," and they had written

"Delaware vehicle registration" on the later -- on the

11:41:55  1    version that was turned into ATF.  But in the e-mail, it's

11:41:58  2    the form that existed at that time, with that box left

11:42:01  3    blank.  So that's the form we're going to use for trial

11:42:04  4    because that is exactly what he filled out at that time.

11:42:06  5         With respect to the injunction, Mr. Lowell said

11:42:11  6    that they thought they were clear in the request.  I mean,

11:42:13  7    I've seen lots of injunctions filed with courts and,

11:42:16  8    ordinarily, in the caption of the pleading, the word

11:42:19  9    "injunction" can be found.  In their pleading, you can't

11:42:22 10    even find the word "injunction" and "enjoin."

11:42:24 11         It's clearly not an injunction or any request

11:42:27 12    for this Court to enjoin the proceeding.  That would have

11:42:30 13    been done at the earliest instance, and they wouldn't have

11:42:33 14    waited until a motion to dismiss, if that was actually the

11:42:36 15    relief that they were requesting.  To say to the Third

11:42:38 16    Circuit that they had done so is disingenuous and,

11:42:42 17    frankly, the Third Circuit has swatted down that issue

11:42:46 18    already.

11:42:47 19         Finally, Your Honor, we believe we can proceed

11:42:50 20    with the June 3 trial with these interlocutory appeal

11:42:55 21    consideration that the defense is threatening at this

11:42:57 22    time.  Again, this is a hypothetical.  He hasn't actually

11:43:00 23    done anything yet.  So for purposes of what we're deciding

11:43:02 24    here today --

11:43:04 25         **THE COURT:**  Well, let's take him at his word

11:43:05  1    he's going to.

11:43:06  2            **MR. HINES:**  So we are mindful of the Court's

11:43:08  3    resources and sort of the sequencing and uncertainty that

11:43:15  4    you may be considering if he does such an injunction, but

11:43:19  5    we are happy to brief the Court, if we get there, on why

11:43:23  6    this Court can maintain jurisdiction, enforce this Court's

11:43:26  7    orders, continue with the trial, even while the defendant

11:43:29  8    pursues this, in our view, frivolous injunction.

11:43:33  9            So for those reasons, we would ask the Court to

11:43:35 10    keep the June 3 trial date.

11:43:37 11            **THE COURT:**  All right.

11:43:37 12            **MR. LOWELL:**  Would you accept one more response

11:43:38 13    to that?

11:43:39 14            **THE COURT:**  Sure.

11:43:40 15            **MR. LOWELL:**  Thank you, Judge.

11:43:41 16            Some of the things that we're discussing today

11:43:43 17    should be subject to the things that we're going to file

11:43:45 18    for you to consider in the way towards trial.  Let me give

11:43:49 19    you the last example.

11:43:50 20            I hear from Mr. Hines that cocaine doesn't come

11:43:54 21    in hermetic bags or boxes.  But they consider it an

11:43:59 22    important piece of evidence to put it on a pouch that had

11:44:02 23    cocaine residue that was in the possession of a car in

11:44:04 24    which Mr. Biden existed.

11:44:06 25            Your Honor will know sometime before we ever

11:44:08  1    get to trial that the chain of custody of that pouch is

11:44:11  2    very much in question.  And they didn't seek fingerprints

11:44:14  3    on it, which will support our motion, for example, in

11:44:18  4    limine to bar that from being admitted, let alone that it

11:44:21  5    came about after the charges were brought and it's

11:44:23  6    something the Court should consider.

11:44:25  7            It's not a question of whether we object to the

11:44:27  8    idea that there's cocaine on a pouch, but whose cocaine,

11:44:29  9    when was it put, and why does it have any evidentiary

11:44:31 10    significance.  Is one issue.

11:44:34 11            The 4473 form is much more complicated than

11:44:37 12    Mr. Hines would indicate.  There's not just one change on

11:44:40 13    that form.  There are three or four changes on that form.

11:44:43 14            There's a number on the top right for the

11:44:45 15    person who sold the gun's identification number.  There's

11:44:48 16    another change on it.  And the idea that after the fact

11:44:52 17    somebody put car registration, that's a significant event

11:44:55 18    in terms of Your Honor and the jury's consideration

11:44:57 19    because the form that they say is the critical aspect of

11:45:03 20    one of the counts in this case that includes the

11:45:05 21    identification being a passport is not an acceptable form

11:45:10 22    of identification.  It doesn't include the person's

11:45:13 23    address.  It should never have been accepted as a piece of

11:45:17 24    identification.  And somebody figured that afterwards.

11:45:20 25    And then tried to fix it.  And that should be a subject of

the value of that piece of evidence in front of this Court and a jury.  Those are issues we're pursuing.  And I didn't know about the last one's significance of when that came about until Friday.

That's some of the reasons I'm asking to get the time necessary to present this in an orderly and a complete way to the Court.  And in the amalgam of all that I said, the proposal that I make is not only not unfair and unreasonable, it will provide the ability for the Court to rule on some of these things which Mr. Hines and I are -- should not have to argue on the merits today, but I'm giving the Court at least some indication of these issues, as Mr. Hines has responded.

**THE COURT:**  All right.  Let me ask this, and then I want to take a break just to go over some of this.

But with respect to motions in limine, you all talked about them on Friday.  How many motions in limine did you propose to the government?  I know you may be still waiting to hear back from them, but how many did you propose?

**MR. LOWELL:**  We asked them whether their intention was to do six or seven things, and I think they said no as to three.  They said we'll let you know about a couple of the others.  And I didn't address the issue, for example, of the things I've suggested to Your Honor today

11:46:33 1    about the form or the pouch in that -- because I didn't

11:46:36 2    know that until Friday.

11:46:37 3         So I think there will be somewhere between six

11:46:41 4    or eight or maybe fewer, depending on whether we get back

11:46:45 5    to them and they say we don't need to worry about that.

11:46:48 6         I'll give you one example.  I asked them

11:46:49 7    whether they intend to put in their vast number of

11:46:50 8    communications -- communications between Mr. Biden and his

11:46:54 9    family, including his father, his mother, his daughters.

11:46:57 10   Initially, they said they weren't sure.  They said they'd

11:47:00 11   get back.  They weren't sure about which ones it might be.

11:47:02 12   We need to discuss that with them.

11:47:05 13        Especially need to discuss that with them

11:47:05 14   because it may then implicate which trial witnesses we

11:47:09 15   need.  In October of 2018, there's quite a lot of

11:47:12 16   communications among the family about things, and that's

11:47:14 17   one of ones we wanted to work out.

11:47:19 18        THE COURT:  Okay.  All right.  Just let me take

11:47:22 19   a couple of minutes here, and I will get back to you.

11:50:34 20        (Whereupon, a recess was taken.)

12:33:45 21        THE COURT:  Thank you.  Please be seated.

12:33:45 22   Thank you for your patience.  Appreciate the arguments

12:33:49 23   today.  I wanted to go back and look at a little bit of

12:33:53 24   case law.

12:33:53 25        Having done that, I think we should proceed to

trial as scheduled on June 3.  With respect to the issues
that have been before the Third Circuit, there is no
petition that has been filed.  But even with the
understanding that one will be filed today, as
represented, that does not change my decision.

Because of the potential for improper use of
interlocutory appeals and the adverse impact on trial and
other court proceedings, the Third Circuit has recognized
that a district court will not be divested of jurisdiction
by the improper filing of a notice of appeal from a
non-appealable order or judgment.

Instead, appellate courts have permitted trial
courts to make reseasoned decisions as to whether to
terminate lower court jurisdiction when there are serious
questions whether a notice of appeal is defective or the
matter is otherwise non-appealable.

Here, I had the panel decision of the Third
Circuit that lays out in some detail why the appellate
court does not have jurisdiction.  Based on that and the
absence of further guidance from the circuit, I am making
a reasoned decision to continue proceedings in this case.

If a request for injunction becomes an issue,
that can be addressed.  And, obviously, if you want to ask
the Third Circuit to tell me to stop, there is a way to do
that.

12:34:59  1        With respect to the issues raised about

12:35:01  2    counsel's preparation to competently represent his client

12:35:04  3    by June 3, I am not persuaded.  First, as to claims the

12:35:07  4    date was only penciled in, I think that is belied by the

12:35:11  5    filing more than a month ago of the joint motion to set a

12:35:14  6    trial schedule, which was based on the June 3 date.

12:35:17  7        Further, I don't find it credible that

12:35:17  8    experienced counsel, in a short trial with not terribly

12:35:20  9    complicated issues, cannot be prepared to go forward.

12:35:24 10    This case has been pending for eight months, and the

12:35:26 11    issues have been out there for even longer.  So I trust

12:35:29 12    everyone can get done what needs to be done.

12:35:31 13        So, with that, I want to talk about what we

12:35:34 14    need to -- what is it that we need to address, then, in

12:35:38 15    terms of schedule?  Anything?

12:35:41 16        First, the government.

12:35:47 17        **MR. HINES:**  Court's indulgence for just one

12:35:49 18    moment, Your Honor.

12:36:01 19        So, Your Honor, we have met the deadlines so

12:36:04 20    far, so we have no issue complying with the deadlines

12:36:07 21    currently in the scheduling order.  We obviously do not

12:36:09 22    want to be prejudiced by any belated disclosures from the

12:36:13 23    defendant.  Their expert disclosures, they have not made

12:36:17 24    any, as the Court is aware.

12:36:19 25        To the extent they are intending to do an

expert disclosure at this stage, we would ask for a very, very short deadline so that we can have an opportunity to file an appropriate motion so we're not, you know, filing stuff at the last minute that the Court is going to have to consider.

Moreover, they have not complied with -- well, they've represented to us that there is no reciprocal discovery.  We will take that in good faith.  But to the extent that was not, you know, an accurate representation, we would ask that they file reciprocal discovery with us as soon as possible as well.

And we will be prepared to respond to their motions in limine, which are due today, and moreover --

**THE COURT:**  All right.  What is your position on a short extension on the motions in limine, given the representations of counsel that he is not prepared to file them today?

**MR. HINES:**  We would be willing to agree to a short extension.  Friday would seem reasonable.  And then we would just ask that our response deadline not be sort of prejudiced by that, that we have an appropriate timeline to respond.  And experts by Friday as well, if possible, Your Honor.

**THE COURT:**  Mr. Lowell?

**MR. LOWELL:**  I hear Your Honor's ruling so, to

be clear, I asked you for a schedule that was based on
prep as well as the other issues, and you've issued what
you just read.

I'm asking Your Honor to -- in order to do the
five things that need to be done, are you saying that you
would not entertain my request to move the trial date from
June 3 to, like, the beginning of July so that reciprocal
discovery, the motions in limine, the questions of jury
instruction, the ability to put together our responses to
their motions in limine, it just cannot be done in two
weeks.  It just cannot.  And I don't know what else to
tell you, but it cannot.

Now, having said that, even the ability to file
our motions in limine by Friday, given our now in a
triggered date for what they have filed for their motions
in limine, to which I have to digest today and oppose, and
whatever the reply dates is -- I'm just -- I mean, I am
pleading with Your Honor to give me the time to be able to
do this.

You said that September is not good.  Thirty
days would not prejudice anybody and allow me to satisfy
what I just -- what you just said and what the government
said needs to be done.  So I'm imploring the Court to
allow that to happen.  And in that time period, we would
do all that the government said is required.

THE COURT:  Mr. Hines, I don't know what the
status of the --

MR. LOWELL:  I just simply can't get it done
since -- to Friday or next Monday.  I mean, it's just a
question of physicality, plus whatever else has got to be
filed.  I mean, I'm just stating the obvious.

I get your point about your decision on whether
the appeal would be proper or improper.  We'll let the
Third Circuit decide that.

For the moment, Your Honor, in terms of, for
example, calling the jury, getting a questionnaire
together, filing our responses...

THE COURT:  The questionnaire, there is no
questionnaire that has been proposed to me.  I think that
anything that would need to be done can be done through
voir dire.  So you can take the questionnaire off your
plate.

But let me hear from the government.

MR. LOWELL:  It just seems be to me, Judge, so
even if the questionnaire's not -- the questions on the
questionnaire would be submitted as the voir dire.  We
would be asking for individual voir dire as happening in
other high-profile cases.

The point is simply this.  I promise, with the
amount of time I'm asking for, we will get it done.  I am

12:40:00  1    also promising there's no way I can sit here and tell you

12:40:03  2    satisfy what the government said, like, why can't we do

12:40:06  3    this by Friday?  I can't.  But I will do it -- I mean, you

12:40:10  4    can bar, therefore, my motions in limine.  You can bar my

12:40:13  5    opposition for their motions in limine.  You can bar my

12:40:17  6    ability to submit jury instructions.  You can take away my

12:40:19  7    ability --

12:40:21  8            **THE COURT:**  I am not taking away anything,

12:40:23  9    Mr. Lowell.  I understand that you're telling me you

12:40:25 10    didn't understand this was a date, but it was.  And there

12:40:29 11    were submissions by both sides.  One that had your

12:40:32 12    signature on it that included a schedule that was proposed

12:40:37 13    with the July -- the June 3 date.

12:40:40 14            So the fact that you have not done what needed

12:40:43 15    to be done up until now is not me barring you from doing

12:40:48 16    anything.

12:40:49 17            Given that you keep saying you want to make the

12:40:51 18    record, I want that record to be clear that I am not

12:40:54 19    barring you from doing anything.  You are telling me that

12:40:57 20    you are choosing not to because you say you can't get

12:41:02 21    things done.

12:41:03 22            All right.  With that being said, I have asked

12:41:06 23    a few times to hear from Mr. Hines, so let me hear from

12:41:10 24    him.

12:41:10 25            And with that, I would also like to know,

1    because when we set this date originally, it was done

2    because there was a trial set in California for

3    June 20th that I was told was going to be run into the

4    middle to the end of July.

5          So what I've now heard is a date that is

6    proposed that seems to be in the middle there, and I don't

7    understand how that's a date you can propose.

8          **MR. LOWELL:**  Well, I have two -- let me respond

9    to that part.  Just to be clear, Your Honor, and I'm not

10   trying to reargue a point.

11         I did look at the April submission issue.  And

12   I looked at the correspondence between me and the

13   government.  And my mistake was when I told them those

14   dates predicated on what I thought was the penciled-in

15   date going backwards.  So I understand my confusion, and I

16   apologize.

17         That said, as to the California case, we have

18   an appeal pending.  We have the ability to ask that Court

19   for consideration as well.  We have a motion to stay the

20   schedule in that case pending the Ninth Circuit.  And if I

21   have to go back to them -- it's just that where we were,

22   the reason we said the phrase "penciled-in" originally was

23   because there was this overlap of the two cases, in

24   between of which --

25         **THE COURT:**  I don't think so.  I think the

"penciled-in," if you look at that transcript, the
penciled-in reason was because I had not decided the
motions.  And when you got on the phone that day, it was
clear that we were talking about what we would do should I
deny the motions that were pending in front of me to
dismiss the indictment.

So I don't -- as I recall, there was no real
discussion about whether it would be problematic.  The
government had asked for a date in May, and you said you
were available in June.  Just because I've gone back to
look at that transcript recently, that is my recollection.

But anyway, Mr. Hines.

**MR. HINES:**  So the July proposal is an
impossibility.  We presently have a June 20th trial date
in the tax case.  We've represented to the Court that we
anticipate our case in chief is 12 or less days in that
case.  The trial presently covers the July 4th holiday
period.  And we understand, although we've received no
discovery on this or any representation as to what the
defense case would entail, we understand there may be a
defense case.

So we believe, suffice it to say, that July is
off the table because we will be in trial at least through
the middle of July, perhaps, the third week of July.  And
there's no possibility for the Court to consider the

1    request to set a trial in July because we actively have a

2    trial then.

3            **MR. LOWELL:**  Again, Your Honor, there's a

4    matter of two people being -- I mean, a person being in

5    two places at the same time.  I understand what I'm asking

6    for then implicates the California schedule, which I need

7    to ask California for.

8            But I asked this Court for figuring out with me

9    how I can be able to do this.  I don't mean that you're

10   barring me.  I'm just saying that if I can't satisfy, in

11   the next five days, the six or seven things that are

12   required, then I don't know what the penalty will be for

13   us because I can't get it done.  I will try, but I can't.

14   And so, consequently, that's what I meant by barring.

15           And I was diligent, in while you were

16   contemplating our motions from the time they were filed --

17   I think at the end of December, January, I think your

18   rulings were four months later -- I was working in that

19   regard.  I was.  We were.  But we were also operating in

20   two different courts of appeals and two different district

21   courts.

22           So, again, I'm just asking for some

23   consideration to get what's done done, recognizing all

24   that you have said.  I just don't know how else to

25   describe it, other than to come up with a schedule within

12:44:56  1    the ability to get it done.

12:44:59  2            **THE COURT:**  All right.  Well, I'm going to ask

12:45:00  3    that you then work with the government.  I don't need to

12:45:03  4    be your scheduling secretary.

12:45:05  5            So you guys can work with the government to get

12:45:07  6    things done so that we have time to get them, the issues

12:45:12  7    decided by the date that I set in the scheduling order for

12:45:16  8    the pretrial conference, which I think I did.  Yes.

12:45:24  9    Pretrial conference on May 24th, Friday.

12:45:31 10            All right.  With respect to jury selection, we

12:45:37 11    were thinking of calling in 250 people sort of in five

12:45:42 12    waves of 50.  So first wave Monday at 8:30; second, Monday

12:45:48 13    at 12:30; the third, Tuesday at 8:30, and Tuesday at

12:45:54 14    12:30.  And, if necessary, Wednesday at 8:30.

12:45:57 15            And what we would do is go through each set

12:46:02 16    until we got, I believe it's 32 that we would need, in

12:46:07 17    order to give the appropriate strikes and impanel a jury

12:46:13 18    of 14.

12:46:14 19            Any thoughts on that?

12:46:20 20            **MR. HINES:**  That works for the United States,

12:46:21 21    Your Honor.

12:46:27 22            **MR. LOWELL:**  That would be what would work, I

12:46:30 23    suppose, once we get to that point.

12:46:33 24            **THE COURT:**  Okay.

12:46:43 25            Those are the pretrial issues.  Is there

12:46:46  1    anything else that –– I mean, we're going to have a

12:46:49  2    pretrial conference in just over a week.  But is there

12:46:52  3    anything else that you want my input on, for the

12:46:55  4    government?

12:46:55  5              MR. HINES:  No, thank you, Your Honor.

12:46:57  6              THE COURT:  Mr. Lowell?

12:46:58  7              MR. LOWELL:  No.  And thank you for allowing me

12:47:01  8    and you to make the record.

12:47:03  9              THE COURT:  All right.  Now, I did have one

12:47:05 10    other issue that I wanted to raise briefly, and that is,

12:47:09 11    Mr. Lowell, I got a call or a visit from the head of

12:47:15 12    Probation.  And she said that you had called her to have

12:47:19 13    an off–the–record chat about the diversion agreement.  And

12:47:26 14    I don't want to get into that, but Probation is an arm of

12:47:32 15    this Court, and she came to me.  So I just wanted to talk

12:47:36 16    to you a little bit about what, for example, did you mean

12:47:39 17    by "off–the–record"?

12:47:42 18              MR. LOWELL:  Having not been involved in the

12:47:44 19    discussions as to what the representations is to what she

12:47:47 20    did, why she signed or didn't sign, I asked –– and I

12:47:50 21    didn't recognize there was anything improper about it ––

12:47:52 22    if I could talk to her to understand that myself, which we

12:47:57 23    had a conversation.  And by "off–the–record," I meant I

12:48:00 24    was asking her and was not going to use it in a pleading

12:48:02 25    or use it in any kind of way, it was for my understanding,

12:48:05 1   so I wouldn't make a misrepresentation to any Court when I

12:48:09 2   was arguing the diversion agreement.

12:48:11 3          THE COURT:  Okay.  And I just want to be clear.

12:48:12 4   It was off the record.  Nobody else was present?  It was

12:48:15 5   not recorded in any way?

12:48:17 6          MR. LOWELL:  Of course.  And it wasn't supposed

12:48:19 7   to be something that was troubling to her.  In fact, that

12:48:21 8   was the beginning of it, to say could you explain this to

12:48:24 9   me, and if you could, great, and if you can't, can't.

12:48:26 10         THE COURT:  All right.  So what I would just

12:48:28 11  say is that just keep in mind that Ms. Bray is an employee

12:48:34 12  of this Court.  Probation is an arm of this Court.  And

12:48:37 13  certainly you are free to talk with her about how your

12:48:40 14  client is doing on release and any of the conditions of

12:48:45 15  release, but I would ask you to stay within the

12:48:48 16  appropriate bounds regarding your discussions that are

12:48:54 17  ex parte or what you are saying is off the record.  Okay?

12:48:57 18         MR. LOWELL:  I understand.  I didn't think of

12:48:59 19  it as an ex parte.  I wouldn't have done that, Your Honor.

12:49:01 20  It was in the context of first talking to her about a

12:49:03 21  condition of release.  And then I said to her, by the way,

12:49:05 22  if you could help me understand this, that would be

12:49:08 23  helpful to me so I do not make a misrepresentation when I

12:49:11 24  am arguing the issue of the diversion agreement.

12:49:14 25         THE COURT:  Okay.  I just wanted to make sure

that we were all clear.  And I just feel some

responsibility to her, so I just wanted to make sure that

we had that all clarified.  Okay?

       **MR. LOWELL:**  It is.  Thank you.

       **THE COURT:**  All right.  Thank you very much.

       (The proceedings concluded at 12:49 p.m.)


CERTIFICATE OF COURT REPORTER


    I hereby certify that the foregoing is a true and

accurate transcript from my stenographic notes in the

proceeding.

                    /s/ Bonnie R. Archer
                    Bonnie R. Archer
                    Official Court Reporter
                     U.S. District Court