# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN |
|  | ) |
| ROBERT HUNTER BIDEN, | ) |
|  | ) |
| Defendant. | ) |

## MR. BIDEN'S OPPOSITION IN PART TO THE SPECIAL COUNSEL'S MOTION TO ADMIT RULE 1006 SUMMARY CHART AND FIND ELECTRONIC EVIDENCE SELF-AUTHENTICATING PURSUANT TO RULE 902(14) (MIL #3)

Abbe David Lowell  
Christopher D. Man  
WINSTON & STRAWN  
1901 L Street NW  
Washington, DC 20036  
Tel.: (202) 282-5000  
Fax: (202) 282-5100  
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)  
DALTON & ASSOCIATES, P.A.  
1106 West 10th Street  
Wilmington, DE 19806  
Tel.: (302) 652-2050  
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

## INTRODUCTION

The Special Counsel seeks to exclude any authenticity challenge to six iCloud backup files included in its summary chart are self-authenticating pursuant to Rule 902(14).[1]  That data, obtained in 2019 and 2020 from a search warrant to Apple, Inc. and, by subpoena and later a search warrant for The Mac Shop in Delaware, consists of more than 18,000 pages from various sources, including four iCloud backup files from Apple, Inc. and two backup files from a MacBook laptop and external hard drive subpoenaed from The Mac Shop in December 2019.  (D.E.120 ("Mot.") at 1, 3.)  Defense counsel has numerous reasons to believe the data had been altered and compromised *before* investigators obtained the electronic material from Apple Inc. and The Mac Shop, such that the Special Counsel's claim that the underlying data is "authentic" (*id.* at 4) and accurately reflects "defendant's Apple Macbook Pro and [] hard drive" (*id.* at 2) is mistaken.

## ARGUMENT

**I.    MR. BIDEN SHOULD BE ABLE TO CONTEST EVIDENCE BEFORE ANY DATA FROM THE ICLOUD OR MACBOOK LAPTOP IS ACCEPTED AS AUTHENTIC**

Mr. Biden's counsel told the Special Counsel on May 10, 2024 it agrees not to challenge the authenticity of the electronic data the Special Counsel intends to use with respect to it being what law enforcement received on December 9, 2019 from John Paul Mac Isaac (owner of The Mac Shop), and from Apple on August 29, 2019 and in a follow-up search on July 10, 2020. (Mot. at n.3.)  However, Mr. Biden cannot agree this electronic data is "authentic" as to being *his data* as he used and stored it prior to Mac Issac obtaining it.  Mac Issac claims he received an Apple

---

[1] Although Mr. Biden does not challenge the authenticity of this evidence as reflecting what investigators collected and what existed at the time they obtained it, Mr. Biden reserves the ability to object to the relevance of some of the 1006 summary chart material under Rule 401, claiming the material's prejudice (e.g., inflammatory text messages) outweighs its probative value under Rule 403, and to include other material pursuant to the Rule of Completeness in Rule 106.

MacBook laptop from a customer on April 12, 2019. FBI investigators did not obtain that data until December 9, 2019 through a grand jury subpoena, or gain lawful permission to access it until December 13, 2019 through a search warrant (No. 19-309M), some eight months after the Mac Isaac acquired the laptop.[2]

In his own book, Mac Isaac admits he began accessing sensitive, private material in the data that very same evening (April 12), and accessed the data, watched videos, scrolled through photos, read e-mails, and opened files titled "*income.pdf*" dozens of times in those first few weeks. John Paul Mac Isaac, *American Injustice: My Battle to Expose the Truth* 15–17, 28, 30, 34 (Post Hill Press 2022) (e-book). Mac Isaac admitted he "dove into the laptop every evening," and "searched emails and files matching places and names with dates and times." *Id.* at 15. Mac Isaac also made copies or "clone[s]" of the data for others, and distributed copies of the data (in whole or in part) to others without Mr. Biden's consent (including Robert Costello, Rudy Giuliani, family, friends, and a forensics guy, Yaacov Apelbaum). *Id.* at 11, 24, 34, 36, 63–64.

Various media outlets that received copies of the laptop data hired forensic experts to determine if the material they had received was authentic, and they concluded it is not. It is unclear when changes to the data occurred—when Mac Isaac started opening and copying materials, after he did so and sent it to others, or any time in between. For example, *The Washington Post* hired two experts (Johns Hopkins computer science professor Matthew Green and former National Security Agency operative Jake Williams) to review copies of the laptop's data. Green said the

---

[2] The prosecution only received Office of Enforcement Operations approval to seek a search warrant for the laptop and hard drive on December 12, 2019, with the warrant issued the following day. *See* Gary Shapley, *Laptop and Hard Drive Timeline* (Oct. 22, 2020), Ex. 6 to Test. before H. Comm. on Ways & Means (May 26, 2023). Any access by FBI CART agents *prior to* December 12, 2019 was unauthorized, and Mr. Biden's counsel objects to the any unlawful access of the laptop or hard drive prior to December 13, 2019.

"forensic quality of [the data] is garbage" and likened it to a crime scene where detectives had strewn hamburger wrappers around. Williams' analysis could only verify 1,828 e-mails and Green could verify only 22,000 emails out of 129,000 e-mails in the laptop's data purporting to come from Mr. Biden between 2009 and 2019. This was "a small fraction of the 217 gigabytes of data provided." Further, *The Washington Post* concluded Mr. Biden's *purported* data had been "repeatedly accessed and copied by people other than Mr. Biden over nearly three years," before and after the first reports of a laptop occurred and even after Mac Isaac gave what he claims was Mr. Biden's laptop to the FBI in December 2019.[3] Thus, vast amounts of what has been reported as Mr. Biden's data from the laptop could not be validated as his.

In addition, others, such as Lev Parnas, Rudy Giuliani's former associate, came forward to say Mr. Biden's data was obtained, compromised, or hacked even prior to such material coming into the possession of Mac Isaac in April 2019.[4] According to Mr. Parnas, he and Mr. Giuliani first learned about the existence of explicit material from a so-called laptop—which he said included photos of Mr. Biden with a crack pipe in his mouth and engaged in sexual acts—and private communications pertaining to Hunter and Joe Biden on May 30, 2019, well before Mac Isaac first made contact with either the FBI in December 2019 or with Mr. Giuliani's lawyer, Robert Costello, who Mac Isaac gave a copy of the laptop data to on August 29, 2020.[5] Mr. Parnas has also gone on record that Vitaly Pruss—the same Russian businessman who told Mr. Giuliani about the material during a May 30, 2019 meeting—disclosed that Mr. Biden's personal devices

---

[3] Craig Timberg, Matt Viser & Tom Hamburger, *Here's How The Post Analyzed Hunter Biden's Laptop*, Wash. Post (Mar. 30, 2022), https://www.washingtonpost.com/technology/2022/03/30/hunter-biden-laptop-data-examined/.

[4] Natasha Bertrand, *Former Giuliani Associate Raises Questions About Hunter Biden's 'Hard Drive From Hell'*, Politico (Oct. 24, 2020), https://www.politico.com/news/2020/10/24/hunter-biden-hard-drive-lev-parnas-432108.

[5] *Id.*

3

were compromised by FSB assets (Russia's Federal Security Service) during a trip Mr. Biden took to Kazakhstan in 2014.[6] In fact, in October 2019, Mr. Parnas, Mr. Giuliani, and another attorney were planning a trip to Vienna to meet with ex-Burisma CFO, Alexander Gorbunenko, to retrieve a hard drive purportedly belonging to Mr. Biden and a package of material about Mr. Biden (purportedly from the laptop).[7]

There is little dispute that all of this happened well *before* Mac Isaac turned over the laptop and hard drive to the FBI in December 2019. Mr. Biden should be able to object on authenticity grounds to any data from the iCloud or the MacBook laptop reflecting its date, and object under Rule 403 to the prejudice or introducing inflammatory evidence that may have been tampered with by someone other than Mr. Biden.

## CONCLUSION

Mr. Biden respectfully requests the Court deny the motion to exclude any challenge to the self-authenticating nature of the six backup files included in the government's summary chart.

Dated: May 20, 2024

Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com
CMan@winston.com

---

[6] *Id.*; *see also* Letter from Lev Parnas to Chairman James Comer, H. Comm. on Oversight & Accountability at 8 (July 18, 2023), https://docs.house.gov/meetings/GO/GO00/20230719/116254/HHRG-118-GO00-20230719-SD008.pdf (explaining Biden's "computer hard drives were taken and duplicated.").

[7] Letter from Lev Parnas to Chairman James Comer, *supra* note 6, at 9. *See also* Written Statement of Lev Parnas before H. Comm. on Oversight & Accountability (Mar. 19, 2024), https://oversight.house.gov/wp-content/uploads/2024/03/Parnas-Lev-Written-Statement.pdf.

          Bartholomew J. Dalton (#808)
          DALTON & ASSOCIATES, P.A.
          1106 West 10th Street
          Wilmington, DE 19806
          Tel.: (302) 652-2050
          BDalton@dalton.law

*Counsel for Robert Hunter Biden*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 20th day of May, 2024, I filed the foregoing Opposition in Part with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                /s/ *Abbe David Lowell*
                Abbe David Lowell

                *Counsel for Robert Hunter Biden*