# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 1:23-cr-61-MN |
| ) | |
| ROBERT HUNTER BIDEN, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S TRIAL BRIEF

DAVID C. WEISS
Special Counsel

Derek E. Hines
Senior Assistant Special Counsel
Leo J. Wise
Principal Senior Assistant Spec. Counsel
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
771-217-6091

Dated: May 20, 2024

1

# INTRODUCTION

The Defendant, Robert Hunter Biden, chose to lie on a federal background check form required for the purchase of a firearm (hereafter "Form 4473") by falsely stating he was not an unlawful user of a controlled substance or an addict, when in fact he was both. By lying, he was able to illegally buy a gun on October 12, 2018, and he chose to illegally possess that firearm until it was taken from his possession on October 23, 2018. He is charged in a three-count indictment with violating 18 U.S.C. §§ 922(a)(6) and 924(a)(2) for making a false statement during a background check to deceive a firearms dealer ("Count One"), 18 U.S.C. § 924(a)(1)(A) for making a false statement during a background check on a form that the firearms dealer was required to maintain ("Count Two"), and 18 U.S.C. §§ 922(g)(3) and 924(a)(2) for his illegal possession of a firearm between October 12, 2018 and October 23, 2018 ("Count Three"). (Ind., Doc. No. 40). Trial begins June 3, 2024. This trial brief: (i) sets forth the elements the government will prove at trial, and (ii) summarizes some of the evidence the government will use to do so.

# THE LAW

### A. Count One–False Statement Material to Firearms Sale, in violation of Title 18, United States Code, Section 922(a)(6).

In order to find the defendant guilty of Count One, the jury must find that the government proved each of the following four elements beyond a reasonable doubt:

First:   That the seller was a licensed dealer;

Second:  That the defendant made a false statement while acquiring a firearm from the seller;

  Third:  That the defendant knew that the statement was false; and

  Fourth:  That the false statement was intended or likely to deceive the seller with respect to any fact material to the lawfulness of the sale of the firearm.[1]

The defendant has agreed to stipulate that the firearm charged in the indictment was a firearm. The defendant has agreed to stipulate that the dealer was a licensed dealer. That leaves three issues for trial with respect to Count One: (1) whether the defendant made <u>a false statement</u> when he filled out the Form 4473, (2) whether the defendant <u>knew</u> the statement was false, and (3) whether the false statement was <u>material</u> to the sale.

  **B.  Count Two–False Statement in Firearms Transaction Record, in violation of Title 18, United States Code, Section 924(a)(1)(A).**

In order to find the defendant guilty of this offense, the jury must find that the government proved each of the following four elements beyond a reasonable doubt:

  First:  The defendant knowingly made a statement or representation in a Form 4473;

  Second:  The defendant made the statement or representation to a federally licensed firearms dealer;

  Third:  The statement or representation was false; and

---

[1] *See* Model Criminal Jury Instructions, 3rd Circuit, § 6.18.922A.

Fourth:     The defendant knew the statement or representation was untrue when he made the statement or representation.[2]

Because the defendant agreed to stipulate that the dealer was a licensed dealer, and because materiality is not an element in Count Two as it is in Count One, that leaves only the following issues for trial with respect to Count Two (which are identical to two of the three issues for Count One): (1) whether the defendant made a false statement when he filled out the Form 4473, and (2) whether the defendant knew the statement was false.

### C. Count Three–Possession of a Firearm by a Drug User or Drug Addict, in violation of Title 18, United States Code, Section 922(g)(3).

In order to find the defendant guilty of this offense, the jury must find that the government proved each of the following four elements beyond a reasonable doubt:

First:     The defendant was an unlawful user of a controlled substance, that is, crack cocaine, or was a drug addict;

Second:     The defendant knowingly possessed a firearm, that is a Colt Cobra 38SPL revolver with serial number RA 551363, while he was an unlawful user of a controlled substance or a drug addict;

Third:     At the time the defendant knowingly possessed the firearm, he knew he was an unlawful user of a controlled substance or a drug addict; and

---

[2]     The Third Circuit does not have a model instruction for this offense. This proposed instruction is based on the Eighth Circuit's model instructions. *See* Model Criminal Jury Instructions, 8th Circuit, § 6.18.924.

Fourth:       The firearm was transported across a state line at some time during or before the defendant's possession of it.[3]

As noted above, the defendant agreed to stipulate that the firearm charged in the indictment was a firearm. The defendant agreed to stipulate that the firearm was transported across a state line at some time before the defendant's possession of it. Thus, that leaves only the following issues for trial with respect to Count Three: (1) whether the defendant was *either* an unlawful user of a controlled substance or a drug addict;[4] (2) whether the defendant knowingly possessed a firearm, (3) whether the defendant knew he was a unlawful user of a controlled substance or a drug addict at any point in time while he possessed the firearm (i.e., on any date between October 12 and October 23, 2018).

### D. All Counts–Instruction Regarding "Unlawful User of a Controlled Substance" and "Drug Addict"

The Court should instruct the jury on the definition of "unlawful user of a controlled substance" and "drug addict," as those terms are used in the statute charged in Count Three and in the forms that the defendant filled out relevant to Counts One and Two. The government proposed a jury instruction utilized by the Eight Circuit and is included in its proposed instructions. The instruction provides:

---

[3]   The Third Circuit does not have a model instruction for this offense.  This proposed instruction is based on the Eighth Circuit's model instructions.  *See* Model Criminal Jury Instructions, 8th Circuit, § 6.18.922B.

[4]   The government proposed a unanimity instruction in its jury instructions, meaning, the jury must be unanimous in its finding that the defendant is either an unlawful user of a controlled substance, or a drug addict, or both. It need not find that he is both but it must find he is one of those to find him guilty.

The phrase "unlawful user of a controlled substance" means a person who uses a controlled substance in a manner other than as prescribed by a licensed physician. The defendant must have been actively engaged in use of a controlled substance or controlled substances during the time he possessed the firearm, but the law does not require that he used the controlled substance or controlled substances at the precise time he possessed the firearm. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. An inference that a person was a user of a controlled substance may be drawn from evidence of a pattern of use or possession of a controlled substance that reasonably covers the time the firearm was possessed.

The term "drug addict" means any individual who habitually uses any controlled substance so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of a controlled substance as to have lost the power of self-control with reference to his addiction.

This instruction's definition of an unlawful user of a controlled substance is based on the definition utilized by the Treasury Department in its gun regulations, 27 C.F.R. § 478.11.[5] The Eighth Circuit has approved the use of the Treasury Department's definition in instructing the jury on this element. *United States v. Turnbull*, 349 F.3d 558, 562 (8th Cir. 2003).[6] The government must show some

---

[5] At least one court in the Third Circuit has also utilized the definition provided in § 478.11 in jury instructions. *United States v. Zareck*, 2021 WL 4391393 (W.D.Pa. 2021) (citing *United States v. Cheeseman,* 600 F.3d 270, 281 (3d Cir. 2010) and stating "The Third Circuit Court of Appeals has relied upon 27 C.F.R. § 478.11 to define 'unlawful user of controlled substances' for the purpose of § 922(g)(3)).

[6] The Eighth Circuit has also held that the district court is not required to include the "has lost the power of self-control with reference to the use of controlled substance" clause of the Treasury Department's definition and has approved instructions without this language. *United States v. Boslau*, 632 F.3d 422, 429-31 (8th Cir. 2011); *see also United States v. Carnes*, 22 F.4th 743, 748 (8th Cir. 2022) (quoting, with approval, definition similar to this model in finding sufficient evidence of temporal nexus between gun possession and drug use).

"temporal nexus" between the gun possession and regular drug use. *Turnbull*, 349 F.3d at 561. But the government is not required to establish that the defendant possessed the gun while contemporaneously using a controlled substance. *Carnes*, 22 F.4th at 748. Rather, it is sufficient that the government demonstrate the use of a controlled substance "during the period of time" the defendant possessed the gun. *Id*. The government filed a motion in limine to exclude the defense from arguing or suggesting that the government must show defendant's use of a controlled substance on the day of his gun purchase. (Doc. No. 118). The government respectfully requests a ruling on this motion prior to opening arguments.

## THE EVIDENCE

To meet the elements set forth above, the government will prove the following facts at trial:

### A.     The Defendant was a user of crack and was a crack addict.

The defendant admitted he was a user of crack and was a crack addict in his book, *Beautiful Things*, which he began writing in November 2019, published in 2021, and which he narrated in audiobook form. (*See* Motion to Admit Portions of Defendant's Book and Audiobook, Doc. No. 119, 119-1). Specifically, the defendant admitted that he was actively addicted to crack cocaine between 2015 and 2019. (Doc. No 119-1 at p. 219, 220). He stated, "[b]y the time my plane touched down in Los Angeles in March 2019, I had no plan beyond the moment-to-moment demands of the crack pipe." (Doc. No. 119-1 at p. 219). He described, in relevant part, that "four years of active addiction … preceded this trip to California . . ." (Doc. No. 119-1 at p. 220). He admitted, "I was a crack addict and that was that." (Doc. No. 119-1 at p. 222). The

7

government has identified excerpts from the book in which the defendant makes statements that evidence his addiction. These excerpts include his admissions during a less than three-year period between 2016 and 2019 (which is within the four-year period he identified as being an active addict). As discussed in another filing, these book excerpts are authentic under Federal Rule of Evidence 901, are relevant under Rule 401, are not unfairly prejudicial under Rule 403, and are admissible under Rule 801(d)(2). (Doc. No. 119).

The excerpts include portions of Chapter 9, titled "California Odyssey," in which the defendant describes his drug use and addiction in the spring of 2018. (Doc. No. 119-1 at p. 187-202). While in California, the defendant "used [his] superpower—finding crack anytime, anywhere" and described himself as "someone who's up twenty-four hours a day, smoking every fifteen minutes, seven days a week." (Doc. No. 119-1 at p. 187, 190.) The California odyssey ended with a visit from his uncle, who helped him check into a rehab center in Brentwood, California "where I stayed clean for about two weeks . . . It was great—the beauty, the peace, the support—right up until the moment I relapsed." (Doc. No. 119-1 at p 201-202).

The defendant received invoices from "The View," a luxury rehab center in Brentwood, California, for "DTX/Stabilization" from August 21, 2018 to August 27, 2018. The government obtained these invoices from a search of the defendant's Apple iCloud email account, authorized by a search warrant.

Next, in Chapter 10, the defendant states:

> My penultimate odyssey through full-blown addiction became a shabbier, gloomier, more solitary version of the chromatic tear I went on through Southern California.
>
> I came back east. The trees soon were bare, and the low slate sky seemed to hover inches above my head. In my mind's eye, I can't picture a single day during my months back there that wasn't gray and overcast, a fitting, ominous backdrop.
>
> I had returned that fall, after my most recent relapse in California, with the hope of getting clean through a new therapy and reconciling with Hallie.
>
> Neither happened.
>
> For all the obvious reasons—my extended disappearances, my inability to stay sober, her need to stabilize and reorder her own life and family—Hallie and I called it quits.[7]

At trial, the government will prove the defendant returned to Delaware on or about October 6, 2018, by introducing the following evidence:

- The defendant returned from Los Angeles on an Alaska Airlines flight, which landed the morning of October 6, 2018, in Philadelphia.

- The defendant's messages, identified in a 1006 summary chart that is the subject of a motion to admit (Doc. No. 120), and is attached to this Trial Brief as Exh. 2.[8] These include, for example, a message on October 8, 2018, in which the defendant says "I'm in DE. I will be here for at

---

[7] Page 203 was inadvertently omitted from the government's excerpts at Doc. No. 119-1. The government includes this single page in Exhibit 1 to this filing (it is the only page added to the submission at 119-1).

[8] The government did not attach the summary chart to its prior filing because it was waiting to hear back from the defense on any potential objections regarding the "rule of completeness" hypothetical he had posed. To date, the government has not received any objections to the summary chart.

9

least a week," a message on October 13, 2018, when the defendant says he is in "Newcastle," a message on October 13, 2018, when the defendant say, ". . . I'm now off MD Av behind blue rocks stadium waiting for a dealer named Mookie," and a message on October 14, 2018, when the defendant says "I was sleeping on a car smoking crack on 4th Street and Rodney," which is an intersection in Wilmington, DE.  There is also location data imbedded in photographs from the defendant's phone, which were backed up to his laptop, and which puts him in Delaware on October 16, 22, 24, 27, 2018.

- Testimony of Witness 3, who will confirm the defendant returned to Delaware in October 2018.

- Bank statements obtained for his bank accounts show that he withdrew money from ATMs during the month of October 2018.

In his book, the defendant describes that he had a short stint at a therapist-run wellness center in Newburyport, Massachusetts, where the defendant says he sought drug addiction therapy. According to his bank records, he began withdrawing cash in Newburyport on November 15, 2018. The defendant thereafter returned to Delaware where he continued to use crack. (Doc. No. 119-1 at 208) ("It was me and a crack pipe in a Super 8, not knowing which the fuck way was up.  All my energy revolved around smoking drugs and making arrangements to buy drugs—feeding the beast.") His crack use continued through at least when he describes a trip to Los Angeles in March 2019, where he had "no plan beyond the moment-to-moment

10

demands of the crack pipe." (Doc. No. 119-1 at 219). The defendant further stated, "During the nearly four years of active addiction that preceded this trip to California, which included a half dozen rehab attempts, that's what I told myself after each failure." (Doc. No. 119-1 at p. 220). He stated," I was a crack addict and that was that. Fuck it." (Doc. No. 119-1 at p. 220) (describing a call to a drug connection for crack). The defendant stated, "Everything that followed my return to L.A. was a genuine, dictionary-definition blur of complete and utter debauchery. I was doing nothing but drinking and drugging." (Doc. No. 119-1 at p. 222).

In addition to the defendant's book and audiobook admissions that he had "nearly four years of active addiction" prior to March 2019, the government will also present the following evidence:

- <u>Testimony from Witness 1</u>. Witness 1 was previously married to the defendant. They divorced in April 2017, but through 2018 she would check his vehicle from time to time because she did not want their children in a vehicle with drugs. While searching his vehicles, she found drugs or paraphernalia on approximately a dozen occasions, which she discarded in a trash can. She is corroborated by a text message exchange with the defendant, in which she tells the defendant on March 9, 2018, "I also found a few crack pipes. I took them out because our daughter was driving the car." Witness 1 ceased using her former cell phone number, ending in -2473, and the defendant began using it thereafter,

which the government will show he used to communicate with Witness 3 in October 2018 and thereafter. (*See* Exh. 2, Row 88 et seq.).

- Testimony from Witness 2. Witness 2 was previously in a romantic relationship with the defendant between approximately December 2017 and October 2018. During the course of their relationship, Witness 2 observed the defendant using crack cocaine frequently—every 20 minutes except when he slept. Witness 2 visited the defendant in Massachusetts when he was in rehab in the fall of 2018 (after his gun possession) and over the course of 3 days, she observed the defendant smoking crack cocaine every 20 minutes.

- Testimony from Witness 3. Witness 3 was in a romantic relationship with the defendant in October 2018, and before and after. Witness 3 observed the defendant using drugs on multiple occasions. When he stayed at her home in the fall of 2018, Witness 3 and her children searched his bags, backpacks, and vehicle in an effort to help him get sober, and discovered drug paraphernalia and drugs in his possessions on multiple occasions. Witness 3 observed that the defendant frequently lost phones and changed phones, which explains gaps in time where there are no messages, and she also had various text message exchanges with the defendant, including those listed in Exhibit 2.

- Other Statements by the Defendant in his Messages. In addition to the messages with Witness 3 in the 1006 summary chart, the chart includes

messages between the defendant and other individuals. These messages include conversations about his drug use and drug addiction. Where the defendant used coded language in messages, the government intends to qualify as an expert witness Supervisory Special Agent Joshua Romig, of the U.S. Drug Enforcement Administration, who will opine on coded terms and drug language found in those messages, such as "baby powder," "Party Favor," "10grams," "chore boy," "one full," "fentan…", a ball," and other specific terms identified in his expert disclosure.

- <u>Photographs and Videos of the Defendant Smoking Crack</u>. The government intends to show videos and photographs of the defendant smoking crack, or of crack or drug paraphernalia in videos/photographs backed up to the defendant's Apple iCloud account or laptop, or sent in the defendant's messages. Exhibit 2 includes 6 videos or photos. The government does not anticipate showing more than those 6.

- <u>Cocaine on the Defendant's Brown Leather Pouch</u>. A brown leather pouch was discovered with the defendant's revolver by a man collecting recyclables and these items, as well as others that the defendant had purchased, were later turned over to Delaware State Police Lieutenant Millard Greer. Lt. Greer sealed and logged the items as evidence in a Delaware State Police vault where they remained until 2023. In preparation for an indictment in this case, the FBI pulled the sealed evidence from a Delaware State Police evidence vault in September

13

2023, and agents observed a white powdery substance residue on the brown leather pouch that was with the defendant's gun. The white powdery substance was analyzed by a chemist, Jason Brewer, who will be qualified as an expert and will opine that it is cocaine.

### B. The Defendant *knew* he was a user of crack and *knew* he was a crack addict.

His book is replete with admissions that establish he knew he was an addict and knew he was using crack cocaine throughout 2018, including in October 2018 when he purchased and possessed the gun. For example, regarding his return to Delaware in October 2018, the defendant admitted, "I had returned that fall, after my most recent relapse in California, with the hope of getting clean through a new therapy and reconciling with Hallie. Neither happened." Exh. 1 at p. 203. The defendant made statements to Witness 1, 2, and 3 that show he knew he was a crack user and crack addict prior to his purchase of the gun and during his possession of the gun. Moreover, his actions were consistent with someone who was aware that they knew they were addicted to crack and a user of crack. For example, in 2018, he checked himself into rehab on multiple occasions in an effort to get sober. Additionally, messages identified in the 1006 summary chart show that the defendant knew he was a crack user and addict. For example:

- The defendant's messages between April 2018 and August 2018, as identified in Rows 1-85 of Exhibit 2, establish that the defendant routinely purchased and used crack cocaine.

- While he possessed the gun, on October 14, 2018, he told Witness 3, "I was sleeping on a car smoking crack on 4th Street and Rodney." (Exh. 2 at Row 125). After Witness 3 stated, "I just want to help you get sober, nothing I do or you do is working. I'm sorry," the defendant responded, "What one thing have YOU done to help me get sober []?" (Exh. 2 at Rows 129, 132).

- On the day his gun was taken from him, the defendant stated to Witness 3, "Who in their right mind would trust you would help me get sober?" (Exh. 2 at Row 145).

- On November 3, 2018, in a message to Witness 3, the defendant stated, "I'm a liar and a thief and a blamer and a user and I'm delusional and an addict unlike beyond and above all other addicts that you know and I've ruined every relationship I've ever cherished." (Exh. 2 at Row 152).

- On November 21, 2018, the defendant messaged another woman and stated, "I'm a fucking better man than any man you know whether I'm smoking crack or not." (Exh. 2 at Row 164). On this same day, the defendant messaged Witness 3 and stated, "What's the worst place for me to be trying to stay clean? Delaware."

- In December 2018, the defendant exchanged multiple messages with Witness 3 where he recognized that he was an addict and needed to get sober. (Exh. 2 at Rows 181-194). On December 18, 2018, the defendant texted another woman and stated, "I'm insane and [] an addict and I'll

obsess over it." (Exh. 2 at Row 207). On December 28, 2018, the woman asked the defendant, "why can't you admit you are unhappy, in the throes of addiction and need help coupled with love?" (Exh. 2 at Row 209). The defendant responded, "I admit it completely." (Exh. 2 at Row 210). He later said, however, "I'll fuxking get sober when I want to get fucking sober." (Exh. 2 at Row 212).

- Messages and video show that the defendant continued using crack in December 2018, January 2019, February 2019, and March 2019. (Exh. 2 at Rows 213 et seq).

- At present, the government has not included relevant messages with certain family members in the 1006 summary chart, but the government reserves to the right to use such evidence and may do so if the defense advances a theory that the defendant did not know he was in prohibited status because these messages are evidence of his knowledge of his addiction and use of crack.

In sum, his conduct and admissions evidence his knowledge that he was a user of crack at the time he purchased the gun and while he possessed the gun before it was taken from him. His conduct and admissions also evidence his knowledge that he was a crack addict in 2018 when he bought the gun and possessed it.

16

### C. The Defendant Purchased the Gun (and thereafter Possessed it) and His False Statements on a Certified Form 4473 Were Material to the Transaction.

A witness from StarQuest Shooters and Survival Supply in Wilmington, Delaware, will establish the following.

On October 12, 2018, the defendant entered the business premises of Starquest, which held a federal firearms license. After he surveyed the inventory of guns, he ultimately chose to purchase the following:

- A Colt Cobra 38SPL revolver with serial number RA 551363;

- An HKS Speedloader for a .38 special revolver, which, as the name suggests, is an accessory to enable the gun user to rapidly reload it by loading multiple chambers of the revolver simultaneously, as opposed to manually loading each chamber one-by-one; and,

- 25 rounds of Hornady "American Gunner" ammunition for the .38 special revolver.

When purchasing a gun, a purchaser is required to fill out background check paperwork, including an ATF Form 4473. The defendant completed the form, filling out basic information such as his name, address, height, weight, birthdate, and social security number. When asked whether he was an unlawful user of, or addicted to, any depressant, stimulant, or narcotic drug, or any other controlled substance, the defendant lied and answered, "no." Had he answered "yes," the gun seller could not have sold him a gun. After answering additional questions, the defendant certified that his answers were true, correct, and complete, and that he understood that

making any false written statement on the form was a crime punishable under federal law. Specifically, the defendant acknowledged that he could not have received a gun if his answer had been "yes" to the question about whether he was an addict or unlawful user of controlled substances. He signed and dated his form. He presented his U.S. Passport showing his photograph, which StarQuest scanned when it initiated a background check, and a certified copy of which will be used as an exhibit at trial.[9]

Witness 3 will also establish that the defendant possessed the gun and she discarded it in an outdoor trash receptacle at the Janssen's Market in Wilmington, Delaware after removing it from his vehicle. Witnesses will be called who will discuss law enforcement's recovery of that gun from a man who was collecting recyclables, and the gun and other evidence purchased by the defendant will be introduced.

The defendant's own words also establish his knowing possession of the gun. For example, after Witness 3 took the firearm from the defendant's vehicle on October 23, 2018, the defendant messaged her and stated, "Did you take that from me []? Are you insane. Tell me now. This is no game…." Later that evening, after he interacted with the police, he stated, "The fucking FBI []. It's hard to believe anyone is that stupid // so what's my fault here [] that you speak of. Owning a gun that's in a locked car hidden on another property? You say I invade your privacy. What more can I do than come back to you to try again. And you do this???? Who in their right mind would trust you would help me get sober?"

---

[9]   The Certified Form is the subject of a motion in limine that was filed today will address issues raised by the defendant at the recent status conference.  Doc. No. 157.

Finally, at trial, the government will admit statements made by the defendant to police in which he admitted he purchased and possessed the gun. (*See e.g.*, Doc. No. 121-1 at p. 3) (the defendant "stated that he had purchased the handgun from the Starquest Shooters store on Concord Pike on either 10/12, or 10/13"). He also turned over the gun's case to police. (*Id.*)

## **WITNESSES**

To establish the facts set forth above, the government intends to call the following witnesses:

- FBI Special Agent Erika Jensen will introduce the defendant's messages included in the 1006 summary chart (Exhibit 2) and the defendant's admissions in his book/audiobook, as well as introduce other evidence included on the government's exhibit list.

- Witness 1, Witness 2, and Witness 3.

- An employee of Starquest Shooters who sold the gun to the defendant and witnessed the defendant fill out the ATF Form 4473.

- Delaware State Police Senior Corporal Joshua Marley will testify about his response to an incident at Janssen's Market, the defendant's admissions, and about evidence recovered. *See* Doc. No. 121-1.

- Former Delaware State Police Lieutenant Millard Greer will testify about his recovery of the gun, ammunition, speedloader, and brown leather pouch from the man who found them in the trash receptacle at Janssen's Market.

- Forensic Chemist Dr. Jason Brewer, will testify about his analysis of the residue on the brown leather pouch, and his opinion that the residue is cocaine based on his testing and examination of that evidence.

- DEA Supervisory Special Agent Joshua Romig will offer opinions, based on his training and experience, regarding the coded messages sent by the defendant, as described above, and about other information disclosed to the defendant in the government's expert disclosure.

- The government anticipates including several other witnesses on its witness list and may call those witnesses in its case-in-chief or in rebuttal. This summary is not an exhaustive list of all evidence or witnesses.

## CONCLUSION

This trial brief is submitted as an aid to the court and parties in advance of the pretrial conference and trial. The government reserves the right to modify its positions herein and to include additional evidence and witnesses not listed in this brief or omit certain evidence and witnesses referenced herein.

Respectfully submitted,

DAVID C. WEISS
Special Counsel

/s/ *Derek E. Hines*
Derek E. Hines
Senior Assistant Special Counsel
Leo J. Wise
Principal Senior Assistant Spec. Counsel

United States Department of Justice

Dated:  May 20, 2024