## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 23-00061-MN |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| *Defendant*. | ) | |

## UNITED STATES' MOTION TO EXCLUDE PROPOSED DEFENSE EXPERTS

The United States, by and through undersigned counsel, respectfully moves to exclude the testimony of Dr. Joshua Lee, Michael Coyer and Khody Detwiler, three proposed expert witnesses that the defendant noticed on May 17, 2024, *see* Exhibit 1, and Dr. Elie Aoun, a fourth proposed expert witness that the defendant noticed yesterday on May 21, 2024, *see* Exhibit 2. All four witnesses should be excluded because (1) the defendant's expert notices are untimely; (2) they do not satisfy Fed. R. Crim. P. 16.; and (3) the testimony is otherwise inadmissible.

### I.      BACKGROUND

In a letter from counsel dated May 17, 2024, the defendant indicated his intention to call three "expert" witnesses: (1) Joshua Lee, who according to the defense, is a "clinician–researcher focused on addiction pharmacotherapies in primary care and criminal justice populations;" (2) Michael Coyer, who, according to the defense, is an expert in "forensic toxicology"; and (3) Khody Detwiler, who, according to the defense, is an expert in "forensic document" examination. See Exhibit 1, Defense letter dated May 17, 2024, at p. 2, 3, 4.

In a letter dated May 20, 2024, defense counsel indicated that Dr. Lee may have a scheduling conflict and noticed Dr. Aoun, "out of an abundance of caution."  See Exhibit 2 at 1. According to the letter, Dr. Aoun is "an experienced clinician, educator and researcher in the field of addiction medicine, and treatment of patients for addiction and other drug, opioid, and alcohol use disorders."  *Id*. at 2.

## I.      THE LAW

### A.  Standards for the Admission of Expert Testimony

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court emphasized that Rule 702 requires district courts to perform a critical "gatekeeping" function concerning the admissibility of expert scientific (and technical) evidence. *See Daubert,* 509 U.S. at 588; *Kumho,* 526 U.S. at 152. These gatekeeping requirements have been extended to apply to all expert testimony. *See Kumho Tire,* 526 U.S. at 147. This would include the "soft sciences," such as psychiatry and psychology. *Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002).

*Daubert* establishes that Rule 702 focuses on two threshold inquiries: reliability and relevance. The "reliability" component requires the court to determine "if [the opinion] is based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Walker*, 46 F. App'x at 694 (*quoting Daubert*, 509 U.S. at 590). The "relevance" component requires the court to find that the proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021); *Schneider ex rel. Estate of Schneider v.*

*Fried*, 320 F.3d 396 (3d. Cir. 2003) ("Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact"); *Exela Pharma Services, LLC v. Eton Pharmaceuticals, Inc.*, 2022 WL 806524, *2 (D. Del. 2022) (unreported decision of this Court citing relevant law).

Furthermore, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Because the trial court under *Daubert* acts as the "gatekeeper" for expert testimony at trial, it must conduct these inquiries into the reliability and relevance of proposed expert testimony before trial. Failing to "ensure the reliability of the evidence on the front end," "before it is presented to the jury," abdicates the district court's "gatekeeping function." *Nease v. Ford Motor Co.*, 848 F.3d 219, 230-31 (4th Cir. 2017); *Walker*, 46 F. App'x at 395. And finally, the proponent of the expert testimony bears the burden of establishing its admissibility "by a preponderance of proof." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000) (*quoting Daubert*, 509 U.S. at 590); *Exela Pharma Services, LLC,* 2022 WL 806524, *2.

### B.  Discovery Requirements for Expert Witnesses

Federal Rule of Criminal Procedure 16 requires a defendant to provide the government with "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition."  Fed.

R. Crim. Pro. 16(b)(1)(c)(iii).  The proposed expert "must approve and sign the disclosure."[1] *Id.* at 16(b)(1)(C)(v). If a defendant does not comply with Rule 16, the Court may "prohibit [the defendant] from introducing the undisclosed evidence." *Id.* at 16(d)(2)(C).

Because the defendant's disclosures are untimely and do not meet the requirements of Rule 16—they do not disclose any opinions, the bases for those opinions, the actual analysis or methodology that was used to arrive at any opinions on those bases and are unsigned—exclusion is the only appropriate remedy.  Further, based on what little the defendant has disclosed, their testimony would be inadmissible under Federal Rules of Evidence 401-403 and 702.

## II.    ARGUMENT

### A. The Expert Disclosures Are All Untimely and Should be Excluded on that Basis Alone

Consistent with this Court's order, the government provided expert disclosures on April 24, 2024.  Defense counsel has had approximately seven months since the indictment to obtain expert witnesses.[2]  They have only now, with less than two weeks before trial, made expert disclosures.  Whatever the reason, the government should not be prejudiced by the defendant's failure to meet their expert disclosure obligations by the deadline they agreed to and was then extended by the Court.  The Court should exclude the defendant's experts on this basis alone.

Rule 16 is meant:

> to prevent the defendant from obtaining an unfair advantage. For example, in cases where both prosecution and defense have employed experts to make psychiatric examinations, it seems as important for the government to study the opinions of the experts to be called by the defendant in order to prepare for trial as it does for the defendant to study those of the government's witnesses.

---

[1]    There are two narrow exceptions to the requirement that the proffered expert sign their disclosure, neither one of which is applicable here.

[2]    The defendant had been aware of the investigation for several years.

4

*United States v. Hoffecker*, 530 F.3d 137, 185 (3d Cir. 2008) (quoting Fed. R. Crim. P. 16 Advisory Committee Notes (1966 Amendment)).  The defendant's untimely notices deny the government the opportunity to "study the opinions" of their experts and prepare for trial.  At this point, less than two weeks away from trial, the government is unable to retain expert witnesses to rebut the testimony of Drs. Lee and Aoun.  More fundamentally, for the reasons described in the next section, even if the government could identify an expert with the education and professional experience of these two doctors, the government doesn't have any actual opinions from the defendant to give its own experts to review, consider, and potentially rebut.  This is precisely the situation the Rule 16 is designed to prevent.

Federal Rule of Criminal Procedure 16 was amended in 2022 to address "two shortcomings of the prior provisions on expert witness disclosure: the lack of adequate specificity regarding what information must be disclosed, and the lack of an enforceable deadline for disclosure. The amendment clarifies the scope and timing of the parties' obligations to disclose expert testimony they intend to present at trial. It is intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." The Advisory Committee Notes to the 2022 Amendments. "To ensure enforceable deadlines" Fed. R. Crim. P. 16 (b)(1)(C)(ii) now "provides that the court, by order or local rule, must set a time … for the defense to make its disclosures of expert testimony to the government. … sufficiently before trial to provide a fair opportunity for each party to meet the other side's expert evidence." *Id*.  The defendant's failure to timely disclose his experts denies the government "a fair opportunity" to meet the defendant's expert evidence.

The indictment was filed on September 14, 2023. ECF 39 and 40.  With the agreement of the parties, trial was scheduled for June 3, 2024.  *See* Minute Entry on March 12, 2024.  The parties

then submitted a Joint Motion to Set Pretrial Schedule in which both sides agreed to provide expert disclosures by April 17, 2024.  ECF 95.  The next day, the Court denied most of the defendant's pretrial orders.  ECF 97, 98 and 99.  Five days later the defendant filed a defective notice of appeal of some of the Court's pretrial orders.  ECF 103.  The government promptly moved to dismiss the defendant's jurisdictionless appeal and the Third Circuit did so on May 9, 2024.  ECF 111.  The next day, the Court entered a scheduling order which set an expert disclosure deadline of April 24, 2024, a week later than the parties had agreed to exchange expert disclosures.  ECF 112.  The Court also ordered a status conference for May 114, 2024.  ECF 115.  At that hearing, inexplicably, defense counsel stated, "We had not agreed to that schedule," referring to the pretrial schedule submitted by the parties.  But that statement was not true, as the Court noted.  ECF 96.  Indeed the Mr. Lowell applied his own signature to the document and emailed it to the government after several weeks of negotiating the schedule.

The Third Circuit has held that exclusion by the district court of an expert witness who was not timely or adequately disclosed was not an abuse of discretion.  *Hoffecker*, 530 F.3d at 185.  As the Third Circuit further noted in *Hoffecker* it is not alone in doing so.  *Id.*  ("Courts of appeals have upheld the exclusion of experts [under Fed.R.Crim.P. 16] when defendants fail to serve timely notice of their intent to call them as witnesses.").  In *Taylor v. Illinois*, the Supreme Court held that the state trial judge's refusal to allow a witness's testimony at trial in light of a belated disclosure was constitutionally permissible:

> The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence. . . If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purpose of the Compulsory Process Clause simply to exclude the witness's testimony.

484 U.S. 400, 411 and 415 (1988).  In *United States v. Campbell*, the Sixth Circuit affirmed the district court's exclusion of the defendant's proposed expert on the grounds that defendant failed to comply with his reciprocal obligation to timely disclose expert testimony. 81 Fed.App'x. 532, 534 (6th Cir. 2003). In *United States v. Petrie*, the Eleventh Circuit affirmed the district court's exclusion of defendant's proposed expert testimony "based on lateness of notice to the government" in violation of Rule 16's timeliness requirement.  302 F.3d 1280, 1288, 1299 (11th Cir. 2002).  In *Petrie*, there was no indication that the untimely disclosures were otherwise deficient.  Here, the defendant's disclosures are not only untimely, but are also woefully deficient.

### B.  The Disclosures for Each Proposed Expert Should be Excluded Because They are Inadequate and Fail to Comply with Fed. R. Crim. P. 16. and the Witnesses Testimony Violates the Rules of Evidence

None of the disclosures the defendant made for his four expert witnesses satisfies Rule 16. As noted above, Fed R. Crim. P. 16 was specifically amended in 2022 to address "the lack of adequate specificity regarding what information must be disclosed."  Previously, Federal Rule of Criminal Procedure 16 required only that a Defendant to provide the Government with a "*summary* of any testimony that the defendant intends to use under Rules 702," and "[t]his *summary* must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  *Hoffecker*, 530 F.3d at 184 (emphasis added).  Amendments to Rule 16 went into effect on December 1, 2022.  Rule 16 now require a defendant to disclose a "*complete statement* of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief," a "list of all publications authored [by the proposed expert] in the previous 10 years," and "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition" and the amendments require that an expert sign his or her disclosure.  *See* Fed. R. Crim. Proc. 16(b)(C)(iii) (emphasis added).

Defendant's disclosures do not satisfy Rule 16.  He is either unaware of the amendments to the Rule in 2022 or he has chosen to ignore them.  This is most plainly demonstrated by the fact that the amendments require the expert to sign their disclosure yet none of the disclosures are signed by the defendant's retained experts.  More importantly, none of the disclosures contain any opinions by any of the experts nor their bases for those opinions.

1. **Joshua Lee's Proposed Testimony Should be Excluded Because the Disclosures are Entirely Deficient and His Proposed Testimony Is Inadmissible under Rule 704(b)**

The first expert the defense has noticed is Joshua D. Lee, who according to the curriculum vitae provided by the defendant is:

> … clinician–researcher focused on addiction pharmacotherapies in primary care and criminal justice populations. He has conducted multiple NIH clinical trials examining the use of naltrexone and buprenorphine opioid and alcohol treatments in community criminal justice involved adults, at release from jail, and within community primary care settings. In addition, Dr. Lee leads the NYU Langone 'Hub' of the National Institute on Drug Abuse Justice and Community Outcomes and Innovation Network. Dr. Lee's research focuses on, among other topics, medical treatments for opioid and alcohol use disorders in criminal justice populations, and addiction treatments in primary care and criminal justice settings.

Exhibit 1 at 2.  The government notes that none of these "topics" are at issue in this case.  Further, it does not appear from his curriculum vitae that Lee has been qualified as an expert in any trial in the last four years, or perhaps ever, which is not surprising since his areas of expertise appears to be research and clinical care.  Given that defense counsel ignored the requirement that the expert sign the disclosure, it is unclear whether Dr. Lee has never testified of the defendant simply failed to supply a list of prior testimony for Lee in further violation of Rule 16. Exhibit 1.

*a.   The defendant has not disclosed any of Dr. Lee's actual opinions*

The defendant's letter of May 17, 2024, has two sections that purport to describe what Dr. Lee will testify about.  Neither section contains any disclosures about the opinions Dr. Lee

will offer, let alone a complete statement of them or the bases for those opinions.  This "failure to provide the required level of detail as to the expert's opinions and the bases, reasons, and sources of those opinions can [] lead to preclusion." *United States v. Ulbricht*, 2015 WL 413318, at 5 (S.D.N.Y. Feb. 1, 2015) (finding Rule 16 disclosures insufficient and stating that "while the defense's response contains additional high-level description of the testimony, and the Court might be able to guess as to various opinions, it contains no real opinions, no bases for opinions, no analysis, no methodology").

In the first section where he lists topics for testimony, the notice says, "Dr. Lee is expected to testify concerning the following …"  The defendant then lists seven topics none of which contain any disclosures about what opinions Lee will offer on these topics.

The first topic is "(a) the scope of addiction, including drug, alcohol, and other addiction." Exhibit 1 at 1.  What is his opinion about the 'scope of addiction'?  What does that phrase even mean?  Does he intend to offer any opinions about the scope of the defendant's addiction?  If he does, what are they?  If he does not, then the testimony should be excluded as irrelevant.  The evidence at trial will show that the defendant abused drugs.  What is the "other addiction" that he is referring to and how is it relevant to the defendant?

The second topic is "(b) a person with addiction's understanding of and state of denial about their own addiction."  *Id*.  What is Dr. Lee's opinion about a person with addiction's understanding of and state of denial about their own addiction?  The notice doesn't say.  For example, does a person with addiction have a high level of understanding of their own addiction, a low level or a moderate level of understanding?  Similarly, is it Dr. Lee's opinion that someone with addiction denies their addiction or is aware of it.  Who knows? Does he intend to offer any opinions about the defendant's understanding of and state of denial about his own addiction?  If

so, what is his opinion?  And that is it based on?  If not, why are his opinions on this topic, whatever they are, relevant?

The third topic is "(c) how in his training and experience he has come to know how an alcohol or substance user who has not yet come to terms with their addiction would describe or think of themselves."  *Id*.  What his opinion about *how* an alcohol or substance user who has not yet come to terms with addiction describes or thinks of themselves?  Do they think of themselves as addicts?  Or don't they?  Or do they sometimes think of themselves as addicts and sometimes don't?  Does he intend to offer any opinions about whether the defendant had "not yet come to terms" with his addiction during the time period relevant to the indictment?  If so, what is that based on?  Does he intend to offer any opinions about how the defendant described or thought of himself during that period?  If yes, what are his opinions?  If not, why are his opinions, whatever they are, relevant?  Does he intend to offer an opinion about the defendant's understanding of and state of denial about his own addiction?  If so, what is his opinion and what is it based on?  If not, why is this testimony relevant?

The fourth topic is "(d) how materials provided in discovery indicate that Mr. Biden was acting consistent with that behavior."  *Id*.  What is "that behavior?"  Dr. Lee hasn't told us.  What "materials" is Dr. Lee relying on to form that opinion?  It goes without saying that the Court cannot determine if an opinion that has not been disclosed is reliable.  But the Court also cannot determine whether Dr. Lee's opinion is reliable without knowing the basis for it.  If he was shown certain "materials," by defense counsel but not others that could produce a result that is biased or skewed and therefore unreliable.

The fifth topic is "(e) the different types of drug and alcohol use disorders and variable clinical traits, including high-functioning professionals with active use disorders."  *Id*. at 2.  This

sentence doesn't make sense.  In any event, what are Dr. Lee's opinions about the "different types of drug and alcohol use disorders," what are his opinions about "variable clinical traits," presumably of those disorders, and what are his opinions about the clinical traits of high functioning professionals with active use disorders?  The reasons these questions have to be answered is to determine whether Dr. Lee holds views on these topics that are "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Walker*, 46 F. App'x at 694 (*quoting Daubert*, 509 U.S. at 590).

The sixth topic is "(f) the effects and impacts of rehabilitation, therapy, and other types of treatment programs on affected individuals and their efforts in recovery."  Exhibit 1 at 2.  Same questions as with the others.  What are his opinions?  Does he intend to offer any as to the defendant?  If so, what are they?  If not, why are his opinion on this topic, whatever they are, relevant?  And if he does intend to offer opinions about the defendant what are those opinions based on?  Has he reviewed his medical records or treatment history?  Has he reviewed records from those treatment programs either specific to the defendant or ones that describe their methodology, rates of success or failure or other data?

The seventh topic is "(g) the effects and impacts of significant personal and family traumas on persons with drug and alcohol use disorders."  *Id*.  What are his opinions about the effects and impacts of significant personal and family traumas on persons with drug and alcohol use disorders?  Does he intend to offer opinions about the defendant on this topic?  If so, what are his opinions and what are they based on?  If not, why is this testimony relevant?

The next paragraph after the one that lists these seven topics starts with the ambiguous statement that Dr. Lee "will provide, *among other things*, opinions and related testimony … *along the following lines*", and then lists another series of non-descript topics that repeat some of

11

the vague topics included in the previous paragraph but doesn't actually offer any opinions as to any of them either.  *Id.*

The first topic in the second paragraph is "A description for the jury about the scope of addiction and that it cannot be objectively defined." *Id*.  What is the description?  The notice does not state a description so there is no way for the government or the Court to knowing if it is one that is based on science as opposed to science to Dr. Lee's "subjective belief." *Walker*, 46 F. App'x at 694 (*quoting Daubert*, 509 U.S. at 590).   What is Dr. Lee's opinion about why addiction cannot be objectively defined?  What is that opinion based on?  This statement also seems duplicative of the first topic described in the preceding paragraph, "(a) the scope of addiction, including drug, alcohol, and other addiction."  Why did defense counsel repeat the "scope of addiction" in both lists?

The second topic in the second paragraph is "A description for the jury that persons with drug and alcohol use disorders can be high functioning individuals, even during times of heavy drug and alcohol use, and how that contributes to their view of themself [sic.] as being addicted." What is the description?  How does it contribute to their view of themselves as being addicted? Does Dr. Lee intend to offer any opinions about the defendant on this topic?  If so, what are they and what are they based on?  If not, why are his opinions, whatever they may be, relevant?  This also seems repetitive of the fifth topic contained in the preceding paragraph, "(e) the different types of drug and alcohol use disorders and variable clinical traits, including high-functioning professionals with active use disorders."  What's the difference?  The notice doesn't say.

The third topic in the second paragraph is "3. An analysis of certain statements made by Mr. Biden in text message conversations with loved ones, family members, and close friends, including messages with Hallie Biden about sobriety or addiction as to his following [sic.] Dr.

Lee's view of how persons with addiction view themselves." This statement is challenging to parse, but, in any case, does not contain critical aspects required by Rule 16. First, what is Dr. Lee's opinion of how persons with addiction view themselves? The notice doesn't say. He also doesn't disclose whether or not, in his opinion, the defendant follows this view, whatever it is. To state the obvious, what is this analysis? It's not in the notice. And what is his opinion about the defendant following Dr. Lee's view based on? Which statements did Lee review and analyze? Which messages with Hallie Biden show "following Dr. Lee's view of how persons with addiction view themselves?"

The fourth topic in the second paragraph is" 4. An analysis of certain retrospective statements made by Mr. Biden in his memoir, *Beautiful Things*, as to him acting [sic.] in accordance with Dr. Lee's view of how persons with addiction view themselves." Id. Again, what is Dr. Lee's opinion of how persons with addiction view themselves? What is his opinion about whether the defendant acts in accordance with it or not? What are these opinions based on?

The fifth topic in the second paragraph is "5. An analysis of rehabilitation, drug therapy, and other alcohol and substance use treatment programs that Mr. Biden enrolled in or attended between 2010 and 2019 as to his following [sic.] Dr. Lee's view of how persons with addiction view themselves." Exhibit 1 at 2.. The government has no idea what this sentence means because it contains a grammatical error that renders it almost nonsensical. But it does reference "Dr. Lee's view of how persons with addiction view themselves," which raises the same question that all the other instances where Dr. Lee's view pops us raises—WHAT IS HIS VIEW? Dr. Lee presumably knows. Maybe defense counsel does, too. But the government doesn't because the notice doesn't state it. Further, what opinions has Dr. Lee reached based on his analysis of "rehabilitation, drug therapy, and other alcohol and substance use treatment programs that Mr. Biden enrolled in or

attended between 2010 and 2019"?  Were they effective?  Were they not?  And, of course, what is the basis for such opinions?  This topic also seems duplicative of the sixth topic in the preceding paragraph: "(f) the effects and impacts of rehabilitation, therapy, and other types of treatment programs on affected individuals and their efforts in recovery."  What's the difference?

The sixth and final topic in the second paragraph is "6. A description for the jury of the difference between drug, alcohol, and other substance use disorders."  What is Dr. Lee's opinion about the difference between drug, alcohol and other substance abuse disorders?  Without a disclosure of it, the Court cannot determine if it is reliable. This also seems to contradict the first topic in the second paragraph, namely, "A description for the jury about the scope of addiction and that it cannot be objectively defined."  *Id.* at 2.  If the scope of addiction cannot be objectively defined how can Dr. Lee opine about the differences between drug, alcohol and other substance abuse disorders. Also, what are the "other substance abuse disorders," that Dr. Lee is referring to and how are they relevant to the facts in this case?

   b. *The defendant has not disclosed the bases of Dr. Lee's opinions, whatever those opinions may be.*

As noted in discussing the specific topics the notice contains, nowhere in the disclosure does he provide a sufficiently detailed disclosure of the bases for any opinions Lee proposes to offer, such as clinical trials or peer reviewed studies or medical records for the defendant or anything else for that matter. Similarly, there is no description of his methodology. Both are required by Rule 16.  *See United States v. Northington*, 2012 WL 2873360, at *6 (E.D. Pa. July 12, 2012) ("Meaningful rebuttal means being permitted to test not only the conclusions of Defendant's expert, but also the testing procedures used to reach those conclusions"); *United States v. Tuzman*, 2017 WL 6527261, at *11 (S.D.N.Y. Dec. 18, 2017) ("It was not sufficient to disclose [the expert's] baseline conclusions that certain results were 'inconsistent' with preparation

during the period of the alleged fraud; rather, [the defendant] needed to disclose the formulas or calculations that [the expert] used to reach his conclusions"); *United States v. Rakhit*, 2020 U.S. Dist. LEXIS 168666, at *33-34 (N.D. Ohio Sep. 15, 2020) (finding that a "single sentence" that contained the expert's "overall conclusions is insufficient" and although the summary referenced guidelines, there was no explanation of the expert's rationale for how the defendant satisfied them and therefore directing supplementation); *Ulbricht,* 2015 WL 413318, at 5 (rejecting disclosure that contained "no bases for opinions, no analysis, no methodology.").

For instance, paragraph (3) does not contain a description of which text message(s) he is basing his opinions on, whether he has reviewed all the defendant's text messages, and for which period(s) of time. That information is required to be included in the defense's disclosures so that if, for instance, Lee has, in reaching his opinion(s) (whatever they may be) cherry-picked particular text messages without regard to other texts or the entire volume of texts, the government can prepare its rebuttal and, most importantly, the Court can make an admissibility determination under F.R.E. 702.

The defendant's failure to disclose Dr. Lee's bases provides another ground for exclusion. *See United States v. Barile*, 286 F.3d 749, 758 (4th Cir. 2002) (affirming district court's exclusion of expert witness testimony because Rule 16 disclosure "did not describe [the expert's] opinions beyond stating the conclusion he had reached and did not give the reasons for those opinions"); *United States v. Mavashev*, 2010 WL 234773 (E.D.N.Y. Jan. 14, 2010) (stating that an expert's testimony "may be excluded if the party has made no attempt at all to describe the bases and reasons for those opinions" in its disclosure) (citation and internal quotation marks omitted).

      *c.  The testimony that defendant intends to elicit from Dr. Lee violates Rule 704(b)*

What little is disclosed about Dr. Lee's anticipated testimony is that it violates Federal Rule of Evidence 704(b) and must be excluded on that basis as well.  Rule 704(b) prohibits experts in criminal cases from stating an opinion "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). Expert testimony regarding the defendant's "subjective intent in pursuing a particular activity," or "that a defendant had an *actual* thought or intent," is thus prohibited. *United States v. Barber*, 80 F.3d 964, 970 (4th Cir. 1996) (emphasis in orig.); *United States v. Fowler*, 932 F.2d 306, 315 (4th Cir. 1991) ("The expert witnesses could not testify that Fowler was confused, not culpable.  To the extent that the witnesses would have ventured an opinion that Fowler did not have the mental state constituting an element of the crime, specific intent, Rule 704(b) would have barred their testimony.").  The rule also precludes the Defendant from adducing "testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*." *United States v. Bennett*, 161 F.3d 171, 182 (3d Cir. 1998) (citation omitted).  In sum, expert testimony regarding the defendants' "true intent" is inadmissible. *See United States v. Smart*, 98 F.3d 1379, 1386 (D.C. Cir. 1996) ("the vast majority of cases in this and other circuits finding a Rule 704(b) violation involve situations in which the prosecutor, the expert, or both used the actual word 'intent'. . . [and] use of the word 'intent' clearly violate[s] the rule.").

The mens rea for a violation of 18 U.S.C. § 922(a)(6) (Count One) is that the defendant knew that he made a false statement while acquiring a firearm, specifically that he knew the statement that he was not an unlawful user of a controlled substance or a drug addict was false, s*ee* Model Criminal Jury Instructions, 3rd Circuit, § 6.18.922A and, similarly, for a violation of

924(a)(1)(A) (Count Two) that he knew he made a false statement on an ATF Form 4473, again, specifically that he knew the statement that he was not an unlawful user of a controlled substance or a drug addict was false, *see* Model Criminal Jury Instructions, 8th Circuit, § 6.18.924. The mens rea for a violation of 18 U.S.C. § 922(g)(3) is that at the time the defendant possessed the firearm he knew he was an unlawful user of a controlled substance or a drug addict. What all three counts have in common, in other words, is that the government must prove that the defendant knew he was an unlawful user of a controlled substance or a drug addict.

Dr. Lee's notice is riddled with references to the state of mind of people with addiction generally and the state of mind of the defendant, specifically. For example, the notice says Dr. Lee will testify about "(b) a person with addiction's **understanding of and state of denial** about their own addiction; (c) how in his training and experience he has come to know how an alcohol or substance user **who has not yet come to terms with their addiction** would describe or **think of themselves**" and "A description for the jury that persons with drug and alcohol use disorders can be highfunctioning individuals, even during times of heavy drug and alcohol use, and how that contributes to their **view of themself** [sic.] as being addicted. 3. An analysis of certain statements made by Mr. Biden in text message conversations with loved ones, family members, and close friends, including messages with Hallie Biden about sobriety or addiction **as to his following [sic.] Dr. Lee's view** of how persons with addiction **view themselves**. 4. An analysis of certain retrospective statements made by Mr. Biden in his memoir, Beautiful Things, as to him acting in accordance with Dr. Lee's view of how persons with addiction **view themselves**. 5. An analysis of rehabilitation, drug therapy, and other alcohol and substance use treatment programs that Mr. Biden enrolled in or attended between 2010 and 2019 as to his following Dr. Lee's view of how persons with addiction **view themselves**." All of this is impermissible state of mind testimony in

violation of Rule 704(b).  How people with addiction "view themselves" and how the defendant viewed himself is clearly an attempt to introduce evidence that goes to whether the defendant knew he was an unlawful user of a controlled substance or an addict.  It is an attempt to substitute the testimony of an expert for the testimony of the defendant and that is what Rule 704(b) prohibits. If the defendants wants the jury to know what he thought about his own addiction or drug use, he has to take the stand and testify or introduce other admissible evidence that reflects his state of mind at the time.  He cannot hire an expert to do it for him.

> d.  *Testimony on the other topics the defendant has disclosed will not aid the trier of fact*

Whatever testimony Dr. Lee could give apart from impermissible state of mind testimony, should be excluded because it would not "help the trierof fact to understand the evidence or to determine a fact in issue." F.R.E. 702.  At trial, the government has proposed the court instruct the jury consistent with the Eight Circuit's Model Jury Instructions, which have been followed in the courts within the Third Circuit, and asks that the court instruct that a "drug addict,"

> means any individual who habitually uses any controlled substance so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of a controlled substance as to have lost the power of self-control with reference to his addiction.

*See* Model Criminal Jury Instructions, 8th Circuit, § 6.18.922B. The evidence that is relevant to this element can be comprehended by a lay jury without expert testimony. In any case, "a description…of the difference between drug, alcohol, and other substance use disorders," "the different types of drug and alcohol use disorders and variable clinical traits" or information about "high-functioning professionals with active use disorders," or "the effects and impacts of rehabilitation, therapy, and other types of treatment programs on affected individuals and their efforts in recovery" or "the effects and impacts of significant personal and family traumas on persons with drug and alcohol use disorders," will not help the jury determine whether the

defendant was an addict.  Exhibit 1 at 1-2. Differences in types of addictions, the way addiction affects "high-functioning professionals" generally, rehab programs and family traumas are all irrelevant to whether the defendant's behavior meets the elements of the crimes charged.

* * *

The defendant's notice regarding Lee is insufficient because it does not include his opinions and the bases and reasons for them which Rule 16 requires. Moreover, his anticipated testimony violates Rule 704(b) because it offers impermissible state of mind evidence.  What testimony does not go to the defendant's statement of mind will not aid the trier of fact.  Therefore, and as explained in section C below, exclusion is the only appropriate remedy in this case.

### 2. Dr. Aoun's testimony should be excluded for the same reasons as Dr. Lee's

As the government was preparing this filing, on May 21, 2024, the defendant emailed the government a supplemental expert disclosure identifying Elie G. Aoun, a psychiatrist, as an additional expert witness.  Exhibit 2.  Like Dr. Lee, it does not appear from his curriculum vitae that Dr. Aoun has been qualified as an expert in any trial in the last four years, or perhaps ever.  In the event he has testified in the last four years, the failure to disclose that fact is a further violation of Rule 16. Exhibit 2.

It is unclear whether Dr. Aoun will actually testify because his notice states, "We are making this additional disclosure out of an abundance of caution, as we only just interviewed and began steps to retain Dr. Aoun yesterday, May 21, 2024, in light of a new scheduling conflict with Dr. Joshua D. Lee." This is a staring admission that Dr. Aoun has not done any work yet and helps to explain why his expert notice is completely deficient.

For example, the notice for Dr. Aoun describes the topics of his anticipated testimony in two separate sections. Below is a comparison of the first section for each witness:

| Dr. Lee [notice dated 5/17/2024] | Dr. Aoun [notice dated 5/20/2024] |
|---|---|
| (a) the scope of addiction, including drug, alcohol, and other addiction; | (a) the scope of addiction, including drug, alcohol, and other addiction; |
| (b) a person with addiction's understanding of and state of denial about their own addiction; | (b) a person with addiction's understanding of and state of denial about their own addiction; |
| (c) how in his training and experience he has come to know how an alcohol or substance user who has not yet come to terms with their addiction would describe or think of themselves; | (c) how in his training and experience he has come to know how an alcohol or substance user who has not yet come to terms with their addiction would describe or think of themselves; |
| (d) how materials provided in discovery indicate that Mr. Biden was acting consistent with that behavior; | (d) how materials provided in discovery indicate that Mr. Biden was acting consistent with that behavior; |
| (e) the different types of drug and alcohol use disorders and variable clinical traits, including high-functioning professionals with active use disorders; | (e) the different types of drug and alcohol use disorders and variable clinical traits, including high-functioning professionals with active use disorders; |
| (f) the effects and impacts of rehabilitation, therapy, and other types of treatment programs on affected individuals and their efforts in recovery; | (f) the effects and impacts of rehabilitation, therapy, and other types of treatment programs on affected individuals and their efforts in recovery; |
| (g) the effects and impacts of significant personal and family traumas on persons with drug and alcohol use disorders. | (g) the effects and impacts of significant personal and family traumas on persons with drug and alcohol use disorders |

The notice for Dr. Aoun also contains a second section that purports to be more specific, but isn't. Below is a comparison of this section as it appears in Dr. Lee's notice compared to Dr. Aoun which again shows they are identical:

| Dr. Lee [notice dated 5/17/2024] | Dr. Aoun [notice dated 5/20/2024] |
|---|---|
| 1. A description for the jury about the scope of addiction and that it cannot be objectively defined. | 1. A description for the jury about the scope of addictive disorders and that the term "addiction" itself lacks a uniform and consistent objective definition. |
| 2. A description for the jury that persons with drug and alcohol use disorders can be highfunctioning individuals, even during times of heavy drug and alcohol use, and how that contributes to their view of themself [sic.] being addicted. | 2. A description for the jury that persons with drug and alcohol use disorders can be highfunctioning individuals, even during times of heavy drug and alcohol use, and how that contributes to their view of themself [sic.] as being addicted. |
| 3. An analysis of certain statements made by Mr. Biden in text message conversations with loved ones, family members, and close friends, including messages with Hallie Biden about sobriety or addiction as to his following [sic.]Dr. Lee's view of how persons with addiction view themselves. | 3. An analysis of certain statements made by Mr. Biden in text message conversations with loved ones, family members, and close friends, including messages with Hallie Biden about sobriety or addiction as to his following [sic.] Dr. Aoun's view of how persons with addiction view themselves. |

| | |
|---|---|
| 4. An analysis of certain retrospective statements made by Mr. Biden in his memoir, Beautiful Things, as to him acting in accordance with Dr. Lee's view of how persons with addiction view themselves. | 4. An analysis of certain retrospective statements made by Mr. Biden in his memoir, Beautiful Things, as to him acting in accordance with Dr. Aoun's view of how persons with addiction view themselves. |
| An analysis of rehabilitation, drug therapy, and other alcohol and substance use treatment programs that Mr. Biden enrolled in or attended between 2010 and 2019 as to his following Dr. Lee's view of how persons with addiction view themselves. | 5. An analysis of residential, drug therapy, and other alcohol and substance use treatment programs that Mr. Biden enrolled in or attended between 2010 and 2019 as to his following Dr. Aoun's view of how persons with addiction view themselves. |
| 6. A description for the jury of the difference between drug, alcohol, and other substance use disorders. | 6. A description for the jury of the difference between drug, alcohol, and other substance use disorders |

What is startling about defense counsel's statement that "we only just interviewed and began steps to retain Dr. Aoun yesterday, May 21, 2024, in light of a new scheduling conflict with Dr. Joshua D. Lee," is that it reveals that Dr. Aoun hasn't done any work yet and helps to explain why his expert notice is so totally deficient.  But the fact that it is identical to Dr. Lee's also suggests Dr. Lee hasn't done any work yet either, and also explains why his notice was deficient.

In any event the notice for Dr. Aoun is identical to the one for Dr. Lee and therefore Dr. Aoun should be excluded for all the same reasons as Dr. Lee.

### 3.  Michael Coyer's Proposed Testimony Should be Excluded Because the Disclosures are Also Deficient

Defendant's third proposed expert, Michael Coyer, appears to be a forensic toxicologist. His CV does not contain any disclosures about past testimony or publications, as Rule 16 requires.  Like Drs. Lee and Aoun, the government presumes that he has never been qualified as an expert or the defendant would highlight that fact.  In any event, the notice for Coyer similarly provides no opinions he anticipates the "expert," will offer, only a non-exhaustive list of topics "along the following lines:"

1.   An analysis of Mr. Brewer's general chemistry examination of a brown colored pouch and the secondary evidence generated from that brown colored pouch.

2.      An analysis of the accuracy and reliability of Mr. Brewer's general chemistry test on the white/off-white residue sample collected from the brown leather pouch.

3.      A description for the jury of the possible samples collected from the pouch and combined for testing.

4.      A description for the jury of the typical techniques and laboratory methods used to conduct such forensic drug lab testing.

5.      A description for the jury of how materials (including drug residue) would be affected by age.

6.      An analysis of the chain-of-custody of the brown colored pouch submitted for laboratory testing by the FBI and analyzed by Mr. Brewer.

Exhibit 1 at  3. These proposed topics do not reveal any opinion regarding the cocaine found on the brown leather pouch (i.e., that it is or is not actually cocaine; that it is not possible to know how old the cocaine is or when it came to be on the pouch, etc.). The notice does not disclose whether Coyer believes the "typical techniques and laboratory methods" were used in this case and how that unspecified determination impacts his ultimate opinion or conclusion, whatever those may be. What "possible samples collected from the pouch" does he intend to describe? Those samples actually tested or others that he views as "possible"?  The notice also does not disclose Coyer's opinion about "how materials (including drug residue) would be affected by age.  Finally, the notice does not reveal Coyer's opinions based on his "analysis of the chair-of custody of the brown colored pouch submitted for laboratory testing by the FBI…"

The defendant also failed to disclose Coyer's analysis or methods. No bases for any opinion were supplied. He offers only that Coyer's "testimony is expected to be based on his 32-year career of clinical and forensic toxicology experience, and research and laboratory experience." Exhibit 1 at 4. But a career is no basis for an opinion; a proposed expert's experience only goes to his qualification. Moreover, no list of Coyer's publications or prior testimony was provided, as required by Fed. R. Crim Proc. 16(b)(1)(C)(iii). Exhibit 1.

As with Lee, the government is unable to test the bases for any potential – but still unknown – opinions Coyer would offer. The government cannot determine whether or how to allege them

under *Daubert*. And the Court is unable to determine whether such expert testimony is reliable and relevant and therefore admissible under F.R.E. 702. In violation of Fed. R. Crim Proc. 16(b)(1)(C)(v), Coyer's disclosure is also unsigned and neither of the narrow exceptions to this requirement invoked. For the reasons set forth above with respect to Lee (II.B.1) and in section C below, Coyer's testimony should be excluded from trial.

### 4. Khody Detwiler's Proposed Testimony Should be Excluded Because the Disclosure Is Deficient & His Testimony is Not Relevant

Finally, the defendant proposes a fourth expert, Khody Detwiler, a purported "professional forensic document examiner," he asserts will testify concerning:

> (a) generally accepted forensic examination methods for document, handwriting, and signature analysis;
> (b) analysis of handwriting and original writings on Firearm Transaction Form 4473; and
> (c) analysis of handwriting between documents.

Exhibit 1 at 4. As with the first two, there is no disclosure of Detwiler's opinions, but rather a list of four topics he intends to have Detwiler testify to "among other things":

> 1. A description for the jury of the differing copies of Form 4473 obtained by the government and produced in discovery.
> 2. An analysis of the accuracy and reliability of Mr. Blank's description of Form 4473 obtained and retained by StarQuest Shooters & Survival Supply.
> 3. A description for the jury of the possible ways in which Form 4473 was modified or otherwise altered.
> 4. A description for the jury of the typical techniques and methods used to forensically analyze documents and handwriting.

*Id*.

Based on the little that is disclosed, the government infers that the defendant may intend to offer Detwiler's testimony regarding the ATF Form 4473. While the government is, as with the other two proposed experts, unable to determine whether Detwiler's opinions, whatever they may be, are based upon reliable methods and admissible under F.R.E. 702, it appears his testimony is

not relevant for the reasons set forth in the government's May 21, 2024 Motion in Limine to Admit Certified Form 4473 an to Exclude Evidence of Annotated Form 4473 (ECF No. 157) which is incorporated herein by reference. Should the Court grant the government's motion, there would be no need for Dewiler to testify and his testimony would be irrelevant and cause jury confusion.

As with the other two proposed experts, Detwiler's disclosure also violations Fed. R. Crim Proc. 16(b)(1)(C)(v), in that it is not signed. For the foregoing reasons and as explained below, the only appropriate remedy for the Rule 16 violations with respect to Detwiler is exclusion of his testimony.

### C.  Exclusion is the Appropriate Remedy

Exclusion is a sanction available under Rule 16(d)(2) and the appropriate one under the facts and circumstances of this case.  *See, e.g., United States v. Concessi*, 38 Fed. App'x 866, 868 (4th Cir. 2002); ; *United States v. Mahaffy*, 2007 WL 1213738, at *3 (E.D.N.Y. Apr. 24, 2007). Courts have precluded expert testimony when the Rule 16 disclosures fail to specify the expert's bases, reasons, and sources for their opinions. *E.g., Concessi*, 38 Fed. App'x at 868; *United States v. Wilson*, 493 F. Supp. 2d 484, 487 (E.D.N.Y. 2006); *see also United States v. Sturman*, 1998 WL 126066 (S.D.N.Y. Mar. 20, 1998) (a "general description of possible bases" does not meet the requirements of Rule 16(b)(1)(C)).

Despite this Court's entry of an unchallenged Scheduling Order to which the defendant agreed, the defendant has filed untimely and inadequate expert disclosure just a little over two weeks before trial. The defendant enjoyed the benefit of the government's timely productions and complete expert disclosure notices but has not assumed his reciprocal duty.

Because the defendant's proposed experts do not appear to offer admissible, relevant testimony that satisfies Rule 702, there can be no prejudice to him in excluding them, particularly

where the prejudice to the government if they are permitted to testify about as-yet-unknown (and therefore unrebuttable), irrelevant information based on unreliable methods is so great.

Because the government's disclosures were complete on April 24, 2024, a date agreed to by the defendant and ordered by this Court, the defendant cannot blame surprise or insufficient time or any other reason for his failures. Moreover, discovery related to these disclosures was produced by the government last fall. The defendant is without any reasonable excuse for flouting the Court's scheduling order or thumbing his nose at the Rules.

Thus, the defendant's identification – and little more – of three "experts" late on a Friday two weeks before trial and weeks after they were due and a fourth "expert" four days later (just yesterday), and his violation of Rule 16 and the Scheduling Order can only be interpreted as improper gamesmanship undertaken to gain for himself an unfair tactical advantage that will impermissibly prejudice the government. There is insufficient time before trial for the defendant to supplement his disclosures to enable briefing under Rule 702, followed by a ruling as to the admissibility or inadmissibility of their testimony before trial in this matter commences on June 3. The defendant's antics prejudice the government's ability to effectively prepare its case and, if necessary, identify potential rebuttal experts, on the ambiguous and wide-ranging topics he supplied late on Friday and yesterday. Exhibits 1 and 2.

To reward the defendant by granting him a continuance or by permitting him to supplement his disclosures would have the effect of endorsing and even rewarding his flagrant Rule 16 violation and would prejudice the government. The defendant should not be permitted to gain a strategic advantage in this way. Should the defendant be permitted to supplement his disclosures, the government may likely need to request a continuance so that it can find a rebuttal expert once

it receives a disclosure that complies with the rules and contains the expert's actual opinions, so the government can determine what it needs to rebut.

## III.    CONCLUSION

For the foregoing reasons, this Court should grant the government's motion and preclude the defendant's proposed "experts" from testifying at trial.

Respectfully submitted,
DAVID C. WEISS
SPECIAL COUNSEL

By:   _____
Derek E. Hines
Senior Assistant Special Counsel

Leo J. Wise
Principal Senior Assistant Special Counsel

U.S. Department of Justice