# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN |
| ROBERT HUNTER BIDEN, | ) |
| Defendant. | ) |

## MR. BIDEN'S RESPONSE TO THE SPECIAL COUNSEL'S TRIAL BRIEF

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

The Special Counsel's Trial Brief (D.E.158) sets out his view of the facts that will emerge at trial, and he has a right to his opinion about testimony that has not yet occurred, but Mr. Biden objects to the Special Counsel's legal claims defining a user of controlled substances or addict. The Special Counsel makes the curious argument that the Court should follow the definitions created by the Treasury Department's regulations, 28 C.F.R. § 478.11, but then asks that the Court excise any unfavorable language from those regulations (D.E.158 at 6 n.6). In any event, Mr. Biden believes the Treasury regulations would unlawfully expand the scope of criminal liability under 28 U.S.C. §§ 922(g)(3), and the related firearm charges against him, and violate the Second Amendment in doing so. Additionally, the issue here is Mr. Biden's understanding of the question, which asks in the present tense if he "is" a user or addict. The terms "user" or "addict" are not defined on the form and were not explained to him. Someone, like Mr. Biden who had just completed an 11-day rehabilitation program and lived with a sober companion after that, could surely believe he was not a present tense user or addict.

Section 922(g)(3) makes it unlawful for anyone "who *is* an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))" to "possess" a firearm. (emphasis added). The cross-reference is of limited utility because it defines only "addict," not an "unlawful user." The statute defines "addict" vaguely and somewhat circularly: "The term 'addict' means any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction." 21 U.S.C. § 802(1). While some courts have looked to Treasury's Section 478.11 regulations in defining "user," those regulations are not a binding interpretation of Section 922. *See United States*

1

*v. Boslau*, 632 F.3d 422, 429 (8th Cir. 2011) ("we are not bound to the Treasury Department's definition because Congress did not otherwise define the term in the governing statute").

The Special Counsel asks this Court to instruct the jury through the Section 478.11 regulation, noting the Eighth Circuit upheld such an instruction in *United States v. Turnbull*, 349 F.3d 558, 561 (3d Cir. 2023), but the instruction the Special Counsel seeks is incomplete and not what *Turnbull* upheld. D.E.158 at 6. The Special Counsel deletes the very beginning of the Section 478.11 instruction that was upheld in *Turnbull* and rewrites the beginning of the instruction, which should begin: "A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance. . . ." 349 F.3d at 561. This language is an important part of any definition and should be included in any jury instruction the Court decides to give.

As Mr. Biden's explained in his Second Amendment motion (D.E.61), there has been a recent sea change in Second Amendment law, *see N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), but Section 922(g)(3) ran into constitutional vagueness problem even before *Bruen*. To cure an unconstitutional vagueness problem with what it means to be a "user of controlled substances," the Third Circuit among others imposed a limiting construction on the statute requiring the defendant "to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm." *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004). The Third Circuit highlighted the requirement that the person "*is*" a user is in the "present tense." *Id.* In doing so, the Third Circuit reversed a conviction where the only evidence at trial was that the defendant had used marijuana *six hours* before he was found in possession of a gun. *Id.*

2

Since *Bruen*, numerous courts question whether Section 922(g)(3), even under a limiting construction, satisfies the Second Amendment standards in *Bruen*. Both the Fifth Circuit and the Eight Circuit (the Circuit favored by the Special Counsel) have said so. Post *Bruen*, the Eight Circuit upheld Section 922(g)(3) against a facial challenge under the Second Amendment, but it noted that many as-applied challenges will be valid, and the Fifth Circuit upheld such an as-applied challenge. *United States v. Veasley*, 98 F.4th 906, 910 (8th Cir. 2024); *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023).

All Circuits now recognize that *Bruen* presumes Second Amendment activity is protected and the only exceptions are those that existed when the Second Amendment was adopted. *See Range v. Att'y Gen.*, 69 F.4th 96, 100 (3d Cir. 2023). Both the Fifth and Eighth Circuit's suggest that Section 922(g)(3) is unconstitutional, unless the prohibited conduct is, at a minimum, possession of a dangerous weapon simultaneously with being intoxicated. *Daniels* found valid historical precedent for prohibiting firearm possession while actively intoxicated, but it noted Section 922(g)(3) is "substantially broader" because it applies to "an undefined set of 'user[s],' even if they are not under the influence," and "there is a considerable difference between someone who is actively intoxicated and someone who is an 'unlawful user' under § 922(g)(3)." 77 F.3d at 347–48. The Fifth Circuit reversed a conviction for a defendant who used marijuana 14 days per month, but where "the government presented no evidence that Daniels was intoxicated at the time he was found with a gun." *Id.* at 348.

*Veasley* upheld the Second Amendment from a facial attack, but it adopted a more restrictive view of Section 922(g)(3) than *Daniels*. *Veasley* rejected a historical analogy to statutes disarming people who use drugs or alcohol, finding "the intoxicated kept their civil liberties, including the right to possess firearms." 908 F.4th at 914. Instead, the court found Section

3

922(g)(3) "resembles the Founding-era criminal prohibition on taking up arms to terrify the people" and concluded the statute could be applied in these circumstances. *Id.* at 916. That said, the historical "offense was not about mere possession, or even openly carrying a firearm. It required more, the 'offensive[ ]' *use* of a firearm in a way that terrorized others.." *Id.* at 917. While some armed and intoxicated persons are terrifying, *Veasley* acknowledged "not every drug user or addict will terrify others, even with a firearm. . . . But those are details relevant to an as-applied challenge, not a facial one." *Id.* at 917–18.

Read together, *Daniels* and *Veasley* require that any jury instruction specify that Section 922(g)(3) is violated only when a person is simultaneously armed and actively intoxicated, and using the weapon in some way that terrifies or endangers others.[1] As there is no evidence that Mr. Biden never loaded or fired the weapon, displayed it publicly, or threatened anyone with it, and was not in actual possession of the firearm throughout the entire eleven days from the time of purchase to disposal, the Special Counsel cannot meet that burden.[2]

---

[1] It is not clear that the Fifth Circuit will uphold Section 922(g)(3) against a facial challenge, or that the Eighth Circuit was justified in doing so. A facial challenge should be upheld if the statute would be invalid in most applications, which is the situation under *Veasley*'s narrowing construction. D.E.179 at 7–8. Moreover, it essentially rewrites the statute to save it from a facial challenge, which courts should not do. *See, e.g.*, *Virginia v. Am. Booksellers Ass'n.*, 484 U.S. 383, 387 (1988) (refusing to save a statute from a facial First Amendment challenge by rewriting it to make it constitutional); *Blount v. Rizzi*, 400 U.S. 410, 419 (1971). And, as Mr. Biden previously noted, wherever this Court may draw the yet-to-be-drawn line separating the exercise of a constitutional Second Amendment right from a felony, principles of due process notice preclude him from being convicted under a newly created standard that is applied retroactively. *See, e.g.*, *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964); D.E.179 at 9.

[2] These restrictions apply to addicts as well. People who habitually use drugs and lack the self-control to stop may be addicts, but they are not actively intoxicated unless they are actively using drugs. *Daniels* and *Veasley* show there was no Founding Era exception that disarmed people who merely wanted to be intoxicated, as opposed to those who were both intoxicated and dangerous at the same time.

4

More specifically, post-*Bruen*, many courts object to the constitutionality of this Special Counsel's proposed instruction:

> The defendant must have been actively engaged in use of a controlled substance or controlled substances during the time he possessed the firearm, but the law does not require that he used the controlled substance or controlled substances at the precise time he possessed the firearm. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct.

D.E.158 at 6. Eliminating any requirement that a person actively be intoxicated while in actual possession of a firearm is too far removed from even the historical analogs identified in *Daniels* where someone must be both armed and intoxicated. *See United States v. Harrison*, 654 F. Supp. 3d 1191, 1201-02 (W.D. Okla. 2023); *United States v. Connelly*, 668 F. Supp. 3d 662, 673 (W.D. Tex. 2023); *see also United States v. Beaty*, 2023 WL 4662247, at *3 n.4 (N.D. Fla. 2023) (upholding instructions to the extent they require active intoxication and firearm possession simultaneously).

Nor is such a restriction logical. Intoxication from too much alcohol or using drugs, legal or illegal, may make it too dangerous for people to drive a car, operate heavy machinery, or possess a firearm one day, but they may be perfectly sober enough to do all those things the next day. Thus, while we prohibit people from driving while drunk, we do not prohibit driving by people who often drink when they are not driving (even though they are more likely to drive drunk than people who never drink). There is no more reason to prohibit gun possession by people who are not intoxicated, simply because they may get intoxicated when they are not physically possessing a gun. A gun owner who leaves their guns behind when they head to the bar for a drink or locks their gun in a lockbox or safe while using marijuana (or taking a legally prescribed Oxycontin) is being responsible and should not be treated like a felon. That is not just good policy, it is a constitutional right under the Second Amendment.

Relatedly, the Court will have to address two constitutional issues under the Second Amendment involving an as-applied challenge and a due process notice challenge.[3] First, the Court will need to decide where the line is separating constitutionally protected conduct from a validly charged felony under Section 922(g)(3) exists. In rejecting Mr. Biden's facial challenge, the Court must have found that some applications of the statute are constitutional, but it did not draw the line separating what is constitutionally permissible from what is not. The Court recognized that Mr. Biden can bring an as-applied Second Amendment challenge once the evidence is in, but for him to make that challenge and for this Court to decide that challenge, the Court will need to draw that line. D.E.114 at 9–10. Otherwise, there is no way to know which side of that line Mr. Biden's conduct falls.

Second, wherever the Court draws that line will pose a Fifth Amendment due process notice problem. There is a sort of Alice in Wonderland sort of problem in telling Mr. Biden to act and then we will tell him whether or not he was exercising a constitutional right of committing a felony later. The Fifth Amendment requires advance notice so that people can conform their conduct to the law. As this Court's Second Amendment order explains, courts are divided on where that line should be draw, and even whether there is any room for Section 922(g)(3) to be constitutionally applied. D.E.114 at 4–6. If the Courts cannot figure out where that line falls, how can a citizen like Mr. Biden expected to know? While it is true that courts may impose limiting constructions on a statute to resolve constitutional problems with them in some circumstances, principles of due process notice prevent those new standards from being applied retroactively. *See,*

---

[3] Mr. Biden does not waive his Second Amendment facial challenge by proposing jury instructions, as he does not believe any set of instruction will state a constitutionally adequate offense. Similarly, Mr. Biden seeks a jury instruction that will comport with wherever the Court finds the appropriate line separating a valid offense from protected constitutional conduct. Because Mr. Biden does not know where the Court draws that line, he is not sure what instruction to request.

*e.g.*, *Marks v. United States*, 430 U.S. 188, 194–95 (1977); *Bouie v. City of Columbia*, 378 U.S. 347, 362 (1964).  Additionally, when courts add a judicial gloss on a statute, that gloss must be charged in an indictment like any other element.  *See, e.g.*, *United States v. Simmons*, 96 U.S. 360, 363 (1877).  Even on the eve of trial, we still do not know the constitutionally adequate elements of the charges in this case, and those charged in the indictment are inadequate, so Mr. Biden intends to move for a judgment of acquittal once that line is drawn.

Dated: May 23, 2024                                        Respectfully submitted,

/s/ *Abbe David Lowell*

Bartholomew J. Dalton (#808)                        Abbe David Lowell
DALTON & ASSOCIATES, P.A.                      Christopher D. Man
1106 West 10th Street                                      WINSTON & STRAWN
Wilmington, DE 19806                                    1901 L Street NW
Tel.: (302) 652-2050                                        Washington, D.C. 20036
BDalton@dalton.law                                       Tel.: (202) 282-5000
                                                                         Fax: (202) 282-5100
                                                                         AbbeLowellPublicOutreach@winston.com
                                                                         CMan@winston.com

*Counsel for Robert Hunter Biden*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 23rd day of May, 2024, I filed the foregoing response with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*

8