# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

_____
)
UNITED STATES OF AMERICA )
)
v. ) Criminal Action No. 1:23-cr-00061-MN
)
ROBERT HUNTER BIDEN, )
)
Defendant. )
)
_____)

## MR. BIDEN'S OPPOSITION TO THE SPECIAL COUNSEL'S MOTION TO EXCLUDE PROPOSED DEFENSE EXPERTS (D.E. 166)

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

The Special Counsel errs in arguing Mr. Biden's noticed expert disclosures of Dr. Joshua Lee, Dr. Michael Coyer, Khody Detwiler, and Dr. Elie Aoun, attached to the Special Counsel's Motion, were insufficient because they were untimely, did not satisfy defendant's obligations under Federal Rule of Criminal Procedure 16, and the proffered testimony is otherwise inadmissible. (D.E.166 at 1). The Court, prior to the submission of any opposition from Mr. Biden as well as any supplemental disclosure at the request of the Special Counsel, indicated it was not ruling on the issue of untimeliness but expressed concern about the adequacy of the disclosures during the May 24, 2024 pre-trial conference. While preserving arguments regarding the adequacy of the original notices, Mr. Biden did as he told the Court and counsel he would do, and served supplemental expert disclosures for Dr. Aoun and Dr. Coyer via e-mail on May 26, 2024,[1] attached as Exhibits A and B. These supplemental disclosures, prepared promptly following the conference, satisfy the Rule 16 requirements, address several of the concerns raised in the Special Counsel's motion to exclude, and provide additional detail and description of the two experts' anticipated opinions and testimony based on further conversations Mr. Biden's counsel had with them after the May 24, 2024 conference.

Accordingly, given the supplemental disclosures for Dr. Aoun and Dr. Coyer, and Mr. Biden no longer calling two of the experts (Dr. Lee and Mr. Detwiler), the Special Counsel's motion should be denied. Mr. Biden also maintains that his initial disclosures were sufficient, and that any deficiencies were not willful and did not prejudice the Special Counsel.

---

[1] Mr. Biden no longer anticipates calling Dr. Lee as an expert at trial because of an unavoidable scheduling conflict and anticipates calling Dr. Aoun instead. Mr. Detwiler will no longer serve as an expert in this case because Mr. Biden no longer requires a handwriting expert to explain certain of the discrepancies in the altered Form 4473 following the government's disclosures last week.

1

ARGUMENT

I. **MR. BIDEN'S MAY 26 SUPPLEMENTAL EXPERT DISCLOSURES FULLY COMPLY WITH RULE 16'S REQUIREMENTS**

On May 26, 2024, pursuant to Rule 16(b)(1)(C)(iv), Mr. Biden provided the government his supplemental expert disclosures for Dr. Aoun and Dr. Coyer. These supplemental disclosures correct any alleged deficiencies in the original disclosures. *See United States v. Bryan*, 2023 WL 5286999, at *3 (D.V.I. Aug. 16, 2023) (permitting defendant to correct the deficiencies in original expert disclosures by submitting supplemental disclosures); Fed. R. Crim. P. 16(b)(1)(C)(iv) ("The defendant must supplement or correct the defendant's disclosures in accordance with (c)."). Following the brief discussion at the pre-trial conference, Mr. Biden took steps to ensure Rule 16 compliance and included a signed complete statement of all opinions that Mr. Biden will elicit from these two expert witnesses in his possible case-in-chief, and the bases and reasons for them.

The introduction of the proffered expert opinion testimony of Dr. Aoun and Dr. Coyer is governed by Federal Rule of Evidence 702. Rule 702 provides that a witness qualified as an expert by knowledge, skill, experience, training or education may provide opinion testimony if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. Rule 702 also provides an expert witness may be permitted to testify regarding "scientific, technical, or other specialized knowledge" if it will "help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* The Third Circuit has "emphasized that the 'specialized expertise' requirement is a liberal one: 'a broad range of knowledge, skills, and training [may] qualify an expert as such.'" *De La Cruz v. V.I. Water & Power Auth.*, 597 F. App'x 83, 91 (3d Cir. 2014) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)). Indeed, trial courts need not determine which scientific theory is

2

best or should be applied, but rather, must only determine whether the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable manner. *See United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (internal citations and quotations omitted). The Advisory Committee's official note to the Rule elaborates that "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702.

### A. Dr. Elie Aoun

Dr. Aoun's proffered testimony is relevant to rebutting the offense charged in this case—centered around the definition and understanding of a "user" and an "addict" as used on Form 4473 and further defined in the Code of Federal Regulations 478.11—and is reliable and scientifically sound, and is based upon sufficient facts, expertise, and data. Regarding Dr. Aoun's education and training, Dr. Aoun is a highly qualified addictions and forensic psychiatrist currently serving as the Assistant Professor of Clinical Psychiatry at Columbia University's College of Physicians and Surgeons and the Chief of Psychiatry at the Secure Treatment and Rehabilitation Center (STARC). *See* Exhibit A (Dr. Aoun's Curriculum Vitae). Among other accolades, he received licensure and board certification in addiction medicine and addiction psychiatry, served on countless boards and committees regarding addiction psychiatry, and contributed broadly to these topics in academia. *Id*. Based on his training, experience, treatment of thousands patients with drug and alcohol abuse issues over 20 years and review of evidence in discovery, Dr. Aoun has the specialized knowledge to help the jury understand the evidence in this case. The testimony of Dr. Aoun, as summarized in detail in the supplemental disclosure, is relevant and admissible, based on valid methodologies of addiction science and psychiatry, and grounded in the facts of this case. "It is settled law that an expert may testify about common behavior patterns in a profession or subculture." *United States v. Price*, 458 F.3d 202, 212 (3d Cir.2006).

3

Furthermore, Dr. Aoun's testimony does not violate Federal Rule of Evidence 704.[2] Rule 704(b) provides that "in a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." However, "[e]xpert testimony is admissible if it merely support[s] an inference or conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony. It is only as to the last step in the inferential process—a conclusion as to the defendant's mental state—that Rule 704(b) commands the expert to be silent." *See United States v. Watson*, 260 F.3d 301, 308–09 (3d Cir. 2001) (citations and quotations omitted).

Here, Dr. Aoun's testimony is not being offered to show Mr. Biden's mental state or condition constituting an element of the crime charged. He will *not* be asked those questions. Nor is it "an attempt to substitute the testimony of an expert" for that of Mr. Biden. (D.E.166 at 18). Instead, Dr. Aoun's opinion concerns what constitutes general testimony regarding how individuals in the category the government alleges Mr. Biden to be (e.g., certain alcohol and substance abusers) view themselves and information about other relevant facts such as rehabilitation, substance abuse disorder, the cycles of sobriety, recovery, and rehabilitation, which although the Special Counsel may not like, will be helpful to the jury in deciding various facts at issue. *See United States v. Price*, 458 F.3d 202, 212 (3d Cir. 2006) (explaining an expert's testimony does not violate Rule 704(b) where the testimony was no more and no less than a description, "in general and factual terms, [of] the common practices of drug dealers"); *see United States v. Davis*, 397 F.3d 173, 179 (3d Cir. 2005) (finding no violation of Rule 704(b) where expert

---

[2] The Special Counsel does not argue that Dr. Coyer's testimony will violate Rule 704(b).

4

responded to hypothetical, not specific, questions about intent and expert had no direct relationship with the investigation or the defendants such that no juror could conclude expert had any special insight into the intent of the defendants).

While Dr. Aoun's testimony may support an inference regarding *mens rea*—exactly why experts are hired in criminal case—he will not provide a conclusion regarding Mr. Biden's mental state. If in Dr. Aoun's experience and training, people who speak as Mr. Biden does in emails, texts or other statements (all of which are marked as government exhibits), have long periods of sobriety, are high-functioning successful professionals, and undergo intensive rehabilitation treatment or programs would or would not call themselves "substance abusers" or "addicts," that opinion testimony fits into the Third Circuit's broad application of Rule 702. For these same reasons, Dr. Aoun's testimony also satisfies Rule 403's balancing requirement because the probative value of his testimony would not be substantially outweighed by any danger of unfair prejudice. The Special Counsel is free and able to test Dr. Aoun on whether the things he claims Mr. Biden did, said, or did not do or say undercuts any of his opinions.

### B. Dr. Michael Coyer

Dr. Michael Coyer's proffered testimony is also relevant to address the Special Counsel's evidence and inferences he seeks from that evidence concerning the offense charged in this case. It is also reliable and scientifically sound, and is based upon sufficient facts, expertise, and data. Dr. Coyer is a highly qualified forensic toxicologist with a Ph.D. in Inorganic/Physical Chemistry, who has worked in or supervised many different forensic toxicology labs. *See* Exhibit B (Dr. Coyer's Curriculum Vitae). Dr. Coyer currently works as the New York State CLEP Laboratory Director and is a Laboratory Director at other institutions. *Id*. Dr. Coyer also regularly reviews forensic laboratory evidence and results for the City of Philadelphia, and has testified in connection

5

with that forensic analysis. Based on his education, experience in over 30 years of work, training, and review of FBI-Chemist Jason Brewer's lab analysis, Dr. Coyer has specialized knowledge to help the jury understand certain evidence in this case including a lab report, sample integrity of the brown leather pouch, and chain-of-custody issues. Dr. Coyer's testimony, as summarized in detail in Mr. Biden's supplemental disclosure, is relevant, based on valid and generally accepted laboratory methodologies, and grounded in the facts of this case.

Moreover, calling Dr. Coyer is in direct rebuttal of the government's expert witness—FBI Chemist Jason Brewer—whom the Special Counsel noticed on its witness list on Friday May 24 and for whom the Special Counsel produced a laboratory report in discovery. The Special Counsel complains that "[p]eople come in all the time from these DEA and FBI labs and testify what the drugs were. . . . there was cocaine found on the brown leather pouch that had his firearm." 5/14/24 Status Conf. Tr. at 26–27. But the Special Counsel totally ignores the significance of when he did that test, what he chose to test and not test in October 2023, and the chain-of-custody concerns with that evidence Mr. Brewer analyzed. In fact, it is just the opposite of what the Special Claim claims; this is no routine sample immediately tested by a lab technician when collected and then the technician "testif[ies] what the drugs were" (*id.*)—the Special Counsel hopes to avoid the history leading up to that test and the decision as to what to test from the jury when displaying this critical piece of evidence.

To be clear, the government tested what it identified as "white residue" on a leather pouch collected in October 2018 to conclude it was cocaine. By its own admission, it did not do that until five years after the evidence was obtained and collected from a third-party who collected the pouch from a public trash can. The evidence was held, touched, and controlled by others before the government obtained it from a trash collector. The cocaine that was found was not tested to

determine whether it had been recently left on the evidence (e.g., 2018) or put there years before. There is no dating history whatsoever as part of the FBI-Chemist's test or analysis. Surely, the test did not indicate who put the residue there. In addition, as the government has alleged Mr. Biden was a user of crack cocaine, the government did not test the residue as it could have to determine what type of cocaine was present. These are specifically narrow areas that Dr. Coyer can address in direct rebuttal of the government's expert.

Reviewing the record before the Court, including the supplemental disclosures submitted on May 26, 2024, Mr. Biden has satisfied his burden of showing the qualification, reliability, and fit requirements under Rules 702 and 704 to admit the expert testimony of Dr. Aoun and Dr. Coyer.

II.  **MR. BIDEN'S ORIGINAL EXPERT DISCLOSURES ON MAY 17 AND MAY 21 WERE SUFFICIENT AND PROVIDED THE GOVERNMENT WITH ADEQUATE NOTICE**

Although Mr. Biden supplemented the disclosures based on the instructions of the Court during the May 24, 2024 pre-trial conference, Mr. Biden's initial disclosures (of Dr. Coyer, on May 17, and of Dr. Aoun on May 21) adhered to Rule 16(b)(1)(C)'s requirements and were submitted in time for the May 14, 2024 status conference. The Special Counsel suggested the May 17 date for initial disclosures, *see* 5/14/24 Status Conf. Tr. (Mr. Hines: "And experts by Friday as well, if possible, Your Honor."), and Mr. Biden did his best to comply with it in good faith with the information available to counsel at the time of the disclosures. Any purported deficiencies in those disclosures were not willful. Therefore, exclusion is not an appropriate remedy here. *See United States v. Mitchell*, 2013 WL 12202563, at *1 (W.D. Pa. Oct. 7, 2013) (citing *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002)) ("Exclusion is an appropriate remedy for a discovery rule violation only where 'the omission was willful and motivated by a desire to obtain a tactical advantage."); *United States v. Ganier*, 468 F.3d 920, 927 (6th Cir. 2006) (internal

quotation marks and citations omitted) ("courts should not exclude testimony without first considering (1) the reasons for the [] delay in producing the materials, including any bad faith; (2) the prejudice []; and (3) whether the prejudice "can be cured by any less severe course of action."").

Regarding Dr. Aoun's disclosure, Mr. Biden served that notice on May 21, only because Mr. Biden had to replace Dr. Lee at the last minute because of a previously unknown scheduling conflict. Mr. Biden did so as fast as possible a few days following the original Friday deadline. Federal Rule of Criminal Procedure 16 does not provide a specific timeline for expert disclosures. *See United States v. Maurizio*, 2015 WL 5439059, at *4 (W.D. Pa. Sept. 15, 2015) (finding no untimeliness where defendant explained he had "no intention of calling an expert" but for certain circumstances). In addition, Dr. Aoun is replacing Dr. Lee and intends to testify about nearly the exact same narrow topics as Dr. Lee; thus, there was no surprise or hardly any new information for the Special Counsel to consider in Dr. Aoun's disclosure.

Similarly, unlike what was represented by the Special Counsel in his Motion to Exclude, both Dr. Aoun's and Dr. Coyer's original disclosures provided information about their qualifications and publications for the previous ten years contained in their individual CVs. To the best of Dr. Aoun's and Dr. Coyer's recollection, their testimony as a experts at trial or by deposition was included in those initial disclosures, and Mr. Biden also provided a list of cases in which they testified in the last four years (as required by Rule 16(b)(1)(c)(iii)) on May 23, 2024). Separately, any deficiencies in terms of signatures did not cause the Special Counsel any harm. "Harm caused by the [Rule 16] violation is a key consideration in determining what court action is appropriate. The question of whether the [party] has shown prejudice resulting from the violation is the starting point for the inquiry into what, if any, sanction should be imposed in a given situation." *United States v. Evers*, 2022 WL 16857101, at *1 (M.D. Pa. Nov. 10, 2022). The

Special Counsel can demonstrate no harm whatsoever from the exclusion of this information (which has now been added to the supplemental disclosures).

Finally, the original disclosures provided to the Special Counsel satisfied the substantive requirements of Rule 16(b)(1)(C)(iii). Although the Special Counsel wanted more information, and the Court asked Mr. Biden to provide that information, and he has, the initial expert disclosures for Dr. Aoun and Dr. Coyer contained relevant information about the proffered opinions each of Mr. Biden's defense experts will offer and the bases and reasons for them. This is unlike the cases cited by the Special Counsel in his Motion to Exclude. For example, in *Hoffecker*, where defendant notified the government of his intent to call three experts three days before jury selection and 34 months after the indictment and in a retrial—vastly different circumstances to the present case— the court found the disclosure notices "[c]onspicuously omitted" expert's opinions, bases, and reasons for testimony, and that the experts would only have provided the jury with background information. *United States v. Hoffecker*, 530 F.3d 137, 186 (3d Cir. 2008). In *Taylor*, defendant's counsel tried to amend his witness list during trial and blatantly and willfully lied to the court about the witness' availability. *Taylor v. Illinois*, 484 U.S. 400, 400 (1988). In *Petrie*, 18 months after an indictment and during the defendant's third trial, defendant disclosed an expert on the Friday afternoon before trial who would only have provided background information on extraneous financial matters. *United States v. Petrie*, 302 F.3d 1280, 1288–89 (11th Cir. 2002). And in *Ulbricht*, the defendant delayed Rule 16 disclosure until trial had commenced, and then delayed second disclosure by another week, and did not provide sufficient information about the expert's opinions even after attempts to cure. *United States v. Ulbricht*, 2015 WL 413318, at *6 (S.D.N.Y. Feb. 1, 2015), *aff'd*, 858 F.3d 71 (2d Cir. 2017).

9

None of the Special Counsel's cited examples are at all like what happened here. Mr. Biden moved swiftly and provided Special Counsel with as much information as was available to him from early conversations with his newly retained experts and has now supplemented the disclosures further to provide more details about the opinions. Further, the experts testimony is confined and limited to the key areas at issue in the disclosures that are based on the experts' opinions, facts and expertise as allowed by Rule 702.

## CONCLUSION

Mr. Biden respectfully requests that this Court deny the Special Counsel's Motion to Exclude Proposed Defense Experts.

Dated: May 28, 2024

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com
CMan@winston.com

*Counsel for Robert Hunter Biden*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 28th day of May, 2024, I filed the foregoing Opposition to the Motion to Exclude Proposed Defense Experts with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*

11