**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN |
| | ) |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MR. BIDEN'S REVISED SUBSTANTIVE JURY INSTRUCTIONS**

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

Mr. Biden submits these additional slight revisions to his initial proposed jury instructions on the substantive charges.  Based on the discussions at the May 24, 2024 pretrial conference and the Court's May 29, 2024 Order (D.E.189 at 2 n.3), there are additional issues to be addressed. Defense counsel also recognized that in the rush to get proposed instructions and other filing submitted, there were some omissions and other mistakes in the instructions that should be corrected or otherwise clarified.[1]   Below, we will first address a few definitional issues, both because the issues are critical to giving proper jury instructions and because they may impact the admissibility of some evidence at trial, and then provide clarifying revisions to some proposed jury instructions.

**"User" or "Addict"**

Mr. Biden continues to object to any instruction based on Treasury regulation 28 C.F.R. § 478.11's definition of "Unlawful user of or addicted to any controlled substance" because it is inconsistent with the usage in 18 U.S.C. § 922(g)(3), would be unconstitutionally vague, and would violate the Second Amendment.  First, Section 478.11 is inconsistent with the criminal statute because Section 922(g)(3) addresses whether someone "*is*"—in the *present tense*—"an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))" while Section 478.11 includes someone who last used drugs in the *past*, even "days or weeks before."  Section 922(g) is very clear in distinguishing when gun

---

[1] Mr. Biden's initial proposed jury instructions made a number of objections to the instructions proposed by the Special Counsel and attempted to indicate where he agreed with the Special Counsel's proposed instructions and where he did not.  Although the underlining and cross-references in footnotes were intended to be clarifying, with the benefit of hindsight, defense counsel fears we may have made the issues more confusing.  Here, we will provide clean instructions reflecting certain of Mr. Biden's requested instructions.  Mr. Biden's initial proposed jury instructions and objections remain the same; the instructions addressed here are the only instructions he seeks to revise.

possession is precluded based on something a person "is" now doing versus what someone did in the past. *Compare* 18 U.S.C. §§ 922(g)(2) ("is" a fugitive); (g)(3) ("is" a drug user or addict); (g)(5) ("is" an alien in the United States illegally); (g)(8) ("is" subject to a restraining order); *with* 18 U.S.C. §§ 922(g)(1) ("has been convicted" of a felony); (g)(4) ("has been" found mentally incompetent or committed to a mental institution); (g)(6) ("has been" dishonorably discharged); (g)(7) ("has renounced" their U.S. citizenship; (g)(9) ("has been convicted" of certain misdemeanors). Congress did not prohibit gun possession by someone who "has been" a drug user or addict in the past (even days or weeks ago), as it did with someone who "has been" convicted of certain crimes or "has been" committed to a mental institution.

This difference between when Section 922(g) treats the firearm prohibition as permanent or only lasting as long as certain conditions exist is meaningful. A person cannot change the fact that they have been convicted, found mentally incompetent, been dishonorably discharged, or renounced their citizenship, but they can choose to stop using drugs, stop being a fugitive, stop engaging in behavior that would warrant a restraining order, and stop being in the U.S. illegally. Indeed, Section 922(g) exists as a sanction to encourage people to stop doing the various things that the statute seeks to discourage. Thus, it is inconsistent with the statutory language and purpose to claim someone "is" a user or addict based on past conduct that they are not presently doing.

Second, the Treasury regulation is not binding and should not be followed. *United States v. Boslau*, 632 F.3d 422, 429 (8th Cir. 2011) ("we are not bound to the Treasury Department's definition"). Section 922(g)(3) is not a statute that "explicitly leaves a gap for the agency to fill" in defining the statute's terms, *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984), and the regulation is invalid to the extent that it defines "user" or "addict" based on past circumstances because that is inconsistent with Section 922(g)(3)'s focus on the present tense, *Shalom*

*Pentecostal Church v. Acting Sec'y of U.S. Homeland Sec.*, 783 F.3d 156, 167 (3d Cir. 2015) (regulations are invalid when inconsistent with a statute).

Rather than leave it to Treasury to define these terms, Congress apparently tried to define the terms for itself. Congress supplied the definitions in Section 922(g)(3) by providing a statutory cross-reference: "an unlawful user of or addicted to any controlled substance (*as defined* in section 102 of the Controlled Substances Act (21 U.S.C. 802)" (emphasis added). That cross-reference is only effective in part, however, because Section 802 defines "addict," but not "user."

Nevertheless, the statutory definition of "addict" is controlling and should be given to the jury: "The term 'addict' means any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction." 21 U.S.C. § 802(1). As to the term "addict," there is no reason to give the jury any definition other than the one used by Congress.

Third, Section 478.11 is unconstitutionally vague. It fails to provide anyone notice as to how to stop being a defined "user" or "addict" under this definition or to know when their cessation of drug use has ended their inclusion within the definition. The regulation refers to the last possible drug use being "days or weeks" before. Parts of the regulation, which nobody has advocated for inclusion—and for the good reason that it would encroach on the jurors' ability to determine the facts for themselves—allows several inferences to be drawn from facts established a year earlier and, in some cases, five years earlier. 28 C.F.R. § 478.11. Even without giving this language to the jury, it reflects the disconnect between the drafters of the regulation and any notion of contemporaneous drug use.

This leaves the regulation unconstitutionally vague because no former user or addict could know, even with the advice of counsel, how to comply.  If a prospective client approached Mr. Biden's counsel and explained they were heavy drug users, but completed a drug rehabilitation and had been sober for two weeks and asked if it was legal to buy a gun under this regulation, we would have no idea what answer to tell the client.  We could say the case for legality is stronger the longer the client stayed clean before possessing a gun, but we could not tell the client how many weeks he or she should wait.  It would be interesting to know if the Special Counsel believes he could give more concrete advice on how long a former user must wait before possessing a gun to avoid a felony, but he has not said and we doubt he will (and, yes, that is a challenge).

Moreover, there are two statutory definitions in play "user" and "addict" and the regulation confusingly defines them together in one definition, failing to differentiate the distinctions between the interconnected concepts (e.g., someone cannot be an "addict" without some history of being a "user").  For example, the first sentence of the regulation has no subject.  ("A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician.")  That would be fine if it followed a single term to be defined as a subject, but here there are two terms to be defined, "user" and "addict," and the regulatory definition does not differentiate the two clearly.

The Special Counsel, for example, omits the first clause of the first sentence concerning the loss of self-control from his definition of "user" (D.E.131 at 53-54), but in the *Cheesman* case this Court identified at the hearing (5/24/24 Tr. at 4), the Third Circuit read both clauses as applicable to a "user": "The regulation interpreting this section of the Gun Control Act defines an unlawful user of a controlled substance as someone who 'uses a controlled substance and has lost

the power of self-control.'"  *United States v. Cheesman*, 600 F.3d 270, 280 (3d Cir. 2010). Importantly—this is all *Cheesman* says about Section 478.11—*Cheesman* does not endorse Section 478.11's elastic concept that someone "is" a user if they last used days or weeks ago.  Nor did *Cheesman* have the most recent Second Amendment jurisprudence from the Second Amendment before it.  Moreover, as discussed in the next section, this language cannot be excised from the definition.

Finally, as Mr. Biden has repeatedly argued, even if Section 922(g)(3) is not unconstitutional on its face, it certainly would be unconstitutional as-applied with such a broad definition of "user" or "addict" as to include people who are not currently either.  (*See, e.g.*, D.E.174 (trial brief), D.E.156 (proposed jury instructions).).  Thus, the doctrine of constitutional avoidance would dictate against using this instruction (in addition to it not being controlling and being contrary to the present-tense language of the statute.  *See, e.g.*, *United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict.").

**Clarification of the Court's May 29, 2024 Order on "User" or "Addict"**

The Special Counsel's statement at the May 24, 2024 hearing that the government is "not proceeding on the theory [that] the person who uses a controlled substance has lost the power of self control" is confusing (5/24/24 Tr. at 51), as is this Court's Order that "there shall be no reference to a loss of self-control as being required for a person to be an 'unlawful user of or addicted to' controlled substances," (D.E.189 at 2 n.3.)  The Third Circuit did not view this lack of self-control as merely one theory for what it means to be a user or addict, it viewed it as inherent in the definition itself: "The regulation interpreting this section of the Gun Control Act defines an unlawful user of a controlled substance as someone who 'uses a controlled substance and has lost

the power of self-control.'"  *Cheesman*, 600 F.3d at 280.  The definition is focused upon a particular type of user, one who has lost self-control.  Accordingly, Mr. Biden opposes any effort to sever this language.

At the very least, the theory that the Special Counsel seeks to jettison would be the theory of basing Mr. Biden's liability on his status as an addict and proceeding on the theory that he is a user.  The loss of self-control is an inherent aspect of addiction, which does not go to mere use.  Not all users of drugs have lost self-control when it comes to their drug use, but the loss of self-control is what separates an addict from an occasional user.

The definition of "addict" chosen by *Congress*, not the Treasury Department (which uses that language too), and specifically incorporated in Section 922(g)(3) includes that language: "The term 'addict' means any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to *have lost the power of self-control* with reference to his addiction."  21 U.S.C. § 802(1) (emphasis added).  Although *Cheesman* viewed this self-control language in the Treasury regulation as applicable to a user as well, there is no getting around the fact that Congress requires this language in defining the term "addict."  Thus, if the self-control language is removed, the jury instructions should omit all reference to addiction.

### **"Knowingly"**

Section 922(g)(3) is a somewhat unusual offense in that it is not a self-contained crime.  Rather Section 922(g) makes certain things "unlawful," but they are only made criminal of the violations are committed "knowingly" under 18 U.S.C. § 924(a).  *See Rehaif v. United States*, 588 U.S. 225, 227 (2019).  In *Rehaif*, the Supreme Court settled an issue that divided the lower courts as to what the defendant needed to "knowingly" do, whether that included knowingly possessing

a firearm and also knowingly belonging to one of the prohibited statuses listed in Section 922(g). the Supreme Court concluded: "We hold that the word 'knowing' applies both to the defendant's conduct and to the defendant's status.  To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it."  *Id.*  The Court reiterated: "The proper interpretation of the statute thus turns on what it means for a defendant to know that he has 'violate[d]' § 922(g)."  *Id.* at 230.

That is true even though the question of status is "a question of law."  *Id.* at 234.  "A defendant who does not know [his legal status] does not have the guilty state of mind that the statute's language and purposes require."  *Id.* at 235.

This requirement is necessary to comport with fundamental fairness, as it "helps to separate wrongful from innocent acts.  Assuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent.  It is therefore the defendant's *status*, and not his conduct alone, that makes the difference."  *Id.*at 232.  Obviously, "[w]ithout knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful."  *Id.*  In other words, "the defendant's status is the 'crucial element' separating innocent from wrongful conduct."  *Id.* at 233 (citation omitted).

This is significant for two reasons.  First, it shows that the relevant definitions of "user" and "addict" are not what the Treasury regulations or what anybody else says those terms mean, only what Mr. Biden understood the terms to mean.  Mr. Biden's understanding of those terms is the only basis for determining whether he "knowingly" believed he met either definition.

Importantly, Form 4473 did not define these terms for Mr. Biden.  It provided other guidance.  Question 11(e) asking about his status as a drug user or addict advised him that the question included marijuana, even though use may be legal under state law.  (D.E.157-1 at 5.)  The

form provides extensive instructions for answering various questions on the form, including providing some definitions, but it does not define what it means to be a "user" or "addict." (*Id.* at 6-10.) Nor does the defense anticipate that anyone at the gun shop or elsewhere advised Mr. Biden what these terms meant in the context of the legality of purchasing or possessing a gun. Thus, it will be up to the jury to determine what Mr. Biden understood these terms to mean, even if those definitions do not comport with the understanding of the Special Counsel or Treasury Department.

Second, *Rehaif* demonstrates that the "knowingly" requirement for the charged offense requires the Court to go beyond the statutory language in instructing the jury. Post-*Rehaif*, the Third Circuit explained: "Before *Rehaif*, 'every single court of Appeals to address the question' had held that § 922(g) did not require the government to prove the [defendant's status]," including the Third Circuit. *United States v. De Castro*, 49 F.3d 836, 846 (3d Cir. 2022) (quoting *Rehaif*, 588 U.S. at 239 (Alito, J. dissenting)). In other words, numerous trained lawyers and federal judges read Sections 922(g) and 924 and concluded that "knowingly" did *not* require a defendant know his own status. Thus, more instruction from this Court is necessary to comport with *Rehaif*'s holding. Otherwise, the jurors may make the same mistake as the numerous federal judges who misconstrued the same language pre-*Rehaif*.

### **"Possess"**

Like the reference to a person's current status as a "user" or "addict" in the present tense, Section 922(g) refers to the conduct in the present tense as well, to "possess" a firearm. It does not make it a crime to be in a position to later come into possession of a gun, but requires that someone be in actual physical possession of a firearm. As Mr. Biden addressed in his proposed jury instructions (D.E.156), the Special Counsel's definition strays far afield from the statute's plain meaning. A person may own a gun, among a vast number of other kinds of property, without

8

being in possession of the gun or other property at any particular point in time. A gun that is locked away in a gun safe or stored at a distant location is not within someone's possession at that time.

However elastic the concept of possession may be in other contexts, it is not in the context of Section 922(g)(3). The concern behind the statute is plainly with the safety of people who are impaired by drug use injuring someone through the misuse of a firearm, but that cannot occur unless the firearm is in that person's physical possession. A person who does not physically posses a gun cannot injure anyone with that non-existent gun. If an impaired person retrieves a gun they own from a gun safe or wherever it is locates, borrows one from a friend, or takes a gun from someone else, that may change the answer to the question of whether that person has committed a felony. But no crime can occur until a defendant takes physical possession.

Importantly here also, as with the requirement that a defendant know his status, the defendant also must know he is in possession of a firearm. *Rehaif* was clear that the government must prove that a defendant knowingly "engaged in the relevant conduct (that he possessed a firearm)." 588 U.S. at 227. The Special Counsel may believe possession exists where a defendant "had the power and intention to exercise control over [a gun], even though it was not in the defendant's physical possession - that is, that the defendant had the ability to take actual possession of the object when the defendant wanted to do so," but that is unlikely to be the viewed held by most people and certainly not Mr. Biden. (D.E.131 at 55.) If Mr. Biden believed, as is reasonable, that possession means actual physical possession and that did not exist, the line "separating wrongful from innocent acts" is not crossed, even if the Special Counsel or others understood the word "possess" to be more expansive. *Rahim*, 588 U.S. at 231.

9

The Special Counsel's proposed definition also is hopelessly vague and violates the Second Amendment. Most people have "the ability to take actual possession of [a gun] when the defendant want[s] to do so," either because they own a gun; or could borrow, or take one; or even buy one themselves from someone.

There is no temporal nexus on the "intention to control" reference either. Typically, for example, a person who is charged with a crime is precluded from possessing a gun as a condition of release, which often requires gun owners to have their guns stored with a friend or relative or somewhere out of their physical possession. But those same gun owners likely "intend to control" the gun sometime in the future and they have the "ability to take actual possession" by asking the person in possession of the gun to return their property. Similarly, a gun owner who enters drug rehabilitation may have the "ability" and "intent" to retake possession of their gun to go hunting once they are clean, but that aspirational goal would make someone a felon under the Special Counsel's definition. Extending the definitional reach of the term divorces the statutory offense from its purpose, and the way in which Congress used the term.

### "Material"

Materiality is relevant to Count One charging a violation of Section 922(a)(6) involving, again "knowingly," making a false statement "with respect to any fact material to the lawfulness of the sale or other disposition of such firearm." Thus, the reference point for the materiality is provided in the statute itself, the false statement must knowingly be "materials to the lawfulness of the sale."

The Special Counsel, however, seeks to change the reference of the materiality inquiry and grossly extend the scope of the materiality inquiry by defining the term: "A material fact is one which would reasonably be expected to be of concern to a reasonable and prudent person in

connection with the sale of the firearm." (D.E.131 at 49.) There are any number of concerns with a sale of a firearm that have nothing to do with whether the sale of a firearm is legal. Indeed, much of the country would favors some form of gun control because they have a "concern," held by many "reasonable and prudent" persons that too many gun sales are improper. A person may have a concern that someone is not well trained with a firearm, seems clumsy or to exercise poor judgment, that someone may be an alcoholic, or even that someone who had long given up drug use may relapse. Those are all valid concerns with the sale of a firearm, but none of them are "material to the lawfulness of the sale," which is the actual crime charged. This definition unconstitutionally allows a defendant to be convicted of a non-crime.

**REVISED PROPOSED JURY INSTRUCTIONS**

**DEFENDANT ROBERT HUNTER BIDEN'S PROPOSED INSTRUCTION NO. 23**

**Count I – Knowing False Statement in Purchase of a Firearm (18 U.S.C. 922(a)(6))**

Count One charges that the defendant knowingly made a false statement in the purchase of a firearm, in violation of Title 18, United States Code, Section 922(a)(6).  In order to find the defendant guilty of this offense, you must find that the government proved each of the following four elements beyond a reasonable doubt:

First: That the seller was a licensed dealer;

Second: That the defendant intentionally made a false statement while acquiring a firearm from the seller;

Third: That the defendant knew that the statement was false; and

Fourth: That the false statement was intended to deceive the seller with respect to any fact material to the lawfulness of the sale of the firearm.

**"Firearm" Defined**

The term "firearm" means any weapon which will expel, or is designed to or may readily be converted to expel, a projectile by the action of an explosive.  The term includes the frame or receiver of any such weapon.

**"Dealer" Defined**

A "dealer" is any person engaged in the business of selling firearms at wholesale or retail. The term "licensed dealer" means any dealer who is licensed under the provisions of the Gun Control Act of 1968.

**"Material" Defined**

A fact material to the lawfulness of a sale of a firearm is a fact that is relevant to whether the firearm can be sold legally.  In determining whether a fact was material to the lawfulness of the sale of the firearm, you may consider that the law prohibits any person who is an unlawful user or addicted to any controlled substance from purchasing or possessing any firearm.

15

**DEFENDANT ROBERT HUNTER BIDEN'S PROPOSED INSTRUCTION NO. 27**

**Count II – Knowingly Making A False Statement During A Firearm Purchase (18 U.S.C. 924(A)(1)(A))**

Count Two charges that the defendant knowingly made a false statement related to information required to be kept by law by a federal firearms licensed dealer, in violation of Title 18, United States Code, Section 924(a)(1)(A).

In order to find the defendant guilty of this offense, you must find that the government proved each of the following four elements beyond a reasonable doubt:

First, the defendant knowingly made a statement or representation in an ATF Form 4473;

Second, the defendant made the statement or representation to a federally licensed firearms dealer;

Third, the statement or representation was false; and

Fourth., the defendant knew the statement or representation was false when he made the statement or representation.

A statement is "false" if it was untrue when it was made.

**"Knowingly" Defined**

A person acts "knowingly" if that person acts voluntarily and intentionally and not because of mistake or accident or other innocent reason.  This means that the government must prove beyond a reasonable doubt that the defendant was conscious and aware of the nature of his actions and of the surrounding facts and circumstances, as specified in the definition of the offenses charged.

In deciding whether the defendant acted "knowingly," you may consider evidence about what the defendant said, what the defendant did and failed to do, how the defendant acted, and all the other facts and circumstances shown by the evidence that may prove what was in the defendant's mind at that time.

**DEFENDANT ROBERT HUNTER BIDEN'S PROPOSED INSTRUCTION NO. 29.**

**Count III – Drug User or Drug Addict in Possession of a Firearm**

Count Three charges the defendant, knowing that he was an unlawful user of a controlled substance or addicted to a controlled substance, did knowingly and intentionally possess a firearm, in violation of Title 18, United States Code, Section 922(g)(3).

In order to find the defendant guilty of this offense, you must find that the government proved each of the following four elements beyond all reasonable doubt:

First, the defendant was an unlawful user of a controlled substance or addicted to a controlled substance, that is, crack cocaine;

Second, the defendant knowingly possessed a firearm, that is a Colt Cobra 38SPL revolver with serial number RA 551363, while he was an unlawful user of a controlled substance or addicted to a controlled substance, that is, crack cocaine;

Third, at the time the defendant knowingly possessed the firearm, he knew he was an unlawful user of a controlled substance or addicted to a controlled substance, that is, crack cocaine; and

Fourth, the firearm was transported across a state line at some time during or before the defendant's possession of it.

If you have found beyond a reasonable doubt that the firearm in question was manufactured in a state other than Delaware and that the defendant possessed that firearm in the State of Delaware then you may, but are not required to, find that it was transported across a state line.

The term "firearm" means any weapon (including a starter gun) which will or is designed to or may be readily converted to expel a projectile by the action of an explosive.

## UNLAWFUL USER OF A CONTROLLED SUBSTANCE

The phrase "unlawful user of a controlled substance," means a person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician and has lost the power of self-control when it comes to using a controlled substance.[2]  This phrase does not include occasional users of controlled substances, only those who have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm.  *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004).  [3]

_____

[2] "The regulation interpreting this section of the Gun Control Act defines an unlawful user of a controlled substance as someone who 'uses a controlled substance and has lost the power of self-control.'"  *United States v. Cheesman*, 600 F.3d 270, 280 (3d Cir. 2010).

[3] The Third Circuit has imposed a limiting construction on this phrase to avoid a vagueness problem, requiring that a person "have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm."  *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004) (reversing conviction where only isolated recent unlawful drug use was proven).

**ADDICT**

The term "addict" means any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction.[4]

---

[4] 21 U.S.C. § 802(1).

**DEFENDANT ROBERT HUNTER BIDEN'S PROPOSED INSTRUCTION NO. 37**

**KNOWLEDGE OF "USER" OR "ADDICT" STATUS**

To convict the defendant, the government must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status of being a user of a controlled substance or of being addicted to a controlled substance when he possessed the firearm.  A defendant who does not know his legal status does not have the guilty state of mind that the statute's language and purposes require.[5]

Words sometimes are understood to have different meanings to different people.  I have defined the term "addict" and the phrase "user of controlled substances" for you, but those definitions reflect what Congress meant when it enacted the criminal statutes that we are discussing.  It does not mean that Mr. Biden understood those words to have the same definition that I just gave you when he was asked whether he was a user of controlled substances or addicted to them, or when he possessed a firearm.  If you find that Mr. Biden believed that he was not an "addict" or "user of controlled substances" at the time he denied being an addict or user of controlled substances, with respect to Counts One and Two, or when he possessed the firearm, with respect to Count Three, then you must find Mr. Biden not guilty on those counts.  It does not matter whether you or Congress or anyone else would define the defendant as an "addict" or "user of controlled substances," if Mr. Biden did not understand that he was an "addict' or "user of a controlled substance" at the time of the alleged charges, he did not knowingly break the law then either and he must be found not guilty.

---

[5] "To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it."  *Id. Rehaif v. United States*, 588 U.S. 225, 227 (2019).  "A defendant who does not know [his legal status] does not have the guilty state of mind that the statute's language and purposes require."  *Id.* at 235.

Keep in mind that a person's status as an "addict" or "user of a controlled substance" can change over time.  A person with a history of addiction or use of controlled substances may not always have those statuses.  Sometimes people lose those statuses by ending their drug use or addiction permanently, sometimes they may lose those statuses for a period of time and then relapse and acquire those statuses again.  Some people may go back and forth several times, alternating between periods of addiction or drug use and other times when they do not.

It is important to keep this in mind because the answer to the question of whether someone is an addict or user of controlled substances, or knows that they are an addict or user of controlled substances, may be "yes" at some points in time and "no" at other points in time.  In deciding whether Mr. Biden is guilty or innocent on each of these charges, your task is not to decide whether he was ever an addict or a user of controlled substances, but whether the government has proven beyond a reasonable doubt that Mr. Biden was an addict or user of controlled substances at the time of the alleged offense and knew he was an addict or user of controlled substances at the time of the offense.

**DEFENDANT ROBERT HUNTER BIDEN'S PROPOSED INSTRUCTION NO. 31**

**Unanimity Required – Addiction or User**

Your verdict, whether it is guilty or not guilty, must be unanimous. The indictment charges that Mr. Biden was both a user and addict of controlled substances. The government is not required to prove that Mr. Biden was both a user and an addict, but you must be unanimous as to which theory the government has proven beyond a reasonable doubt to convict. Even if all of you find beyond a reasonable doubt that he was either a user or an addict, but you cannot unanimously agree as to whether he was a user or an addict, that is insufficient. You must be unanimous that he was a user or unanimous that he was an addict, or both.[6]

---

[6] A unanimity instruction is necessary to ensure a unanimous verdict and avoid jury confusion. *See Richardson v. United States*, 526 U.S. 813, 818 (1999) (reversible error not to give a specific unanimity instruction); *United States v. Hara*, 985 F.3d 196, 224-25 (3d Cir. 2021) (same); *United States v. Gibbons*, 2017 WL 4082854, at *4 (N.D. Iowa Sept. 15, 2017) (explaining a unanimity instruct could redress charging multiple theories of liability under Section 922(g)); Model Criminal Jury Instructions, 5th Circuit, § 1.27.

## DEFENDANT ROBERT HUNTER BIDEN'S PROPOSED INSTRUCTION NO. 36

### Good Faith[7]

Each of the offenses charged in the indictment requires proof that Mr. Biden acted knowingly.  If you find that Mr. Biden acted in "good faith," that would be a complete defense to each of these charge, because good faith on the part of Mr. Biden would be inconsistent with his acting knowingly.  A person acts in "good faith" when he or she has an honestly held belief, opinion, or understanding that he or she is not an addict or user of controlled substances, even though the belief, opinion, or understanding turns out to be inaccurate or incorrect.  Thus, in this case if Mr. Biden made an honest mistake or had an honest misunderstanding about his status as an addict or user of controlled substances then he did not act knowingly.  Mr. Biden does not have the burden of proving "good faith."  Good faith is a defense because it is inconsistent with the requirement of the offenses charged, that Mr. Biden acted knowingly.  As I have told you, it is the government's burden to prove beyond a reasonable doubt each element of the offenses, including the mental state element.  In deciding whether the government proved that Mr. Biden acted knowingly or, instead, whether Mr. Biden acted in good faith, you should consider all of the evidence presented in the case that may bear on Mr. Biden's state of mind.  If you find from the evidence that Mr. Biden acted in good faith, as I have defined it, or if you find for any other reason that the government has not proved beyond a reasonable doubt that Mr. Biden acted knowingly, you must find Mr. Biden not guilty of the offense.

---

[7] Model Criminal Jury Instructions, 3d Circuit, § 5.07.  Mr. Biden will later provide a theory of the case instruction.  *See* Model Criminal Jury Instructions, 3d Circuit, § 8.01.

Dated: May 29, 2024                    Respectfully submitted,

                                       /s/ *Abbe David Lowell*
Bartholomew J. Dalton (#808)           Abbe David Lowell
DALTON & ASSOCIATES, P.A.              Christopher D. Man
1106 West 10th Street                  WINSTON & STRAWN
Wilmington, DE 19806                   1901 L Street NW
Tel.: (302) 652-2050                   Washington, D.C. 20036
BDalton@dalton.law                     Tel.: (202) 282-5000
                                       Fax: (202) 282-5100
                                       AbbeLowellPublicOutreach@winston.com
                                       CMan@winston.com

          *Counsel for Robert Hunter Biden*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of May, 2024, I filed the foregoing proposed jury verdict form to the Motion to Exclude Proposed Defense Experts with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*