# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Criminal No. 23-00061-MN |
| | ) |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| *Defendant.* | ) |

## PRESS COALITION'S MOTION TO INTERVENE
## AND FOR IN-PERSON ACCESS TO JURY SELECTION

BALLARD SPAHR LLP

Beth Moskow-Schnoll (# 2900)
Lauren P. Russell (# 6576)
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4447
moskowb@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 3

I.     THE PRESS COALITION SHOULD BE PERMITTED TO INTERVENE ...................... 3

II.    THE COURT SHOULD PERMIT IN-PERSON ACCESS TO JURY SELECTION ........................................................................................................... 4

III.   AT A MINIMUM, THE COURT SHOULD PERMIT POOL REPORTERS TO OBSERVE JURY SELECTION IN PERSON AND PROVIDE LIVE VIDEO OF THE PROCEEDINGS TO THE OVERFLOW ROOM ................................. 9

REQUEST FOR EXPEDITED TREATMENT ................................................................... 10

CERTIFICATION OF GOOD FAITH CONFERENCE ..................................................... 10

REQUEST FOR ORAL ARGUMENT ................................................................................ 11

CONCLUSION ..................................................................................................................... 11

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ABC, Inc. v. Stewart*,
  360 F.3d 90 (2d Cir. 2004) ................................................................................................7, 8

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982) ...........................................................................................................4, 5

*Pansy v. Borough of Stroudsburg*,
  23 F.3d 772 (3d Cir. 1994) .................................................................................................3, 4

*Presley v. Georgia*,
  558 U.S. 209 (2010) .....................................................................................................6, 8, 10

*Press-Enterprise Co. v. Superior Court*,
  464 U.S. 501 (1984) .......................................................................................................1, 5, 6

*Richmond Newspapers v. Virginia*,
  448 U.S. 555 (1980) .......................................................................................................4, 5, 9

*State v. Brimmer*,
  983 N.W.2d 247 (Iowa 2022) ................................................................................................10

*United States v. Alimehmeti*,
  284 F. Supp. 3d 477 (S.D.N.Y. 2018) .....................................................................................9

*United States v. Allen*,
  34 F.4th 789 (9th Cir. 2022) ............................................................................................7, 10

*United States v. Antar*,
  38 F.3d 1348 (3d Cir. 1994) ...............................................................................................4, 7

*United States v. Criden*,
  648 F.2d 814 (3d Cir. 1981) ..................................................................................................7

*United States v. Ochoa-Vasquez*,
  428 F.3d 1015 (11th Cir. 2005) .............................................................................................7

*United States v. Schulte*,
  436 F. Supp. 3d 698 (S.D.N.Y. 2020) .....................................................................................9

*United States v. Smith*,
  123 F.3d 140 (3d Cir. 1997) ...................................................................................................4

*United States v. Wecht*,
  484 F.3d 194 (3d Cir. 2007) ...................................................................................................4

*United States v. Wecht*,
    537 F.3d 222 (3d Cir. 2008) ............................................................................................. 4, 8

## PRELIMINARY STATEMENT

Starting next week, Defendant Robert Hunter Biden is scheduled to stand trial in this Court on federal charges of making false statements and illegal possession of a firearm. To call the trial high-profile would be an understatement: Defendant is the second son of the sitting President of the United States; the case has already given rise to a dramatic, eleventh-hour rejection of a proposed plea agreement[1]; and the Defendant argues that his prosecution is unconstitutional under a recent Supreme Court ruling that his father, the President, denounced as "contradict[ing] both common sense and the Constitution."[2] Such a closely watched criminal proceeding requires <u>maximum</u> transparency to assure "the appearance of fairness so essential to public confidence in the system." *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 508 (1984) ("*Press-Enterprise I*"). As it currently stands, however, the press and public will be barred from the courtroom during one of the key phases of trial: jury selection. Because that exclusion from the courtroom would violate the public's well-established right of access to judicial records and proceedings, the Press Coalition[3] respectfully moves to intervene in this action for the limited purpose of challenging that restriction under the First Amendment. The Court should rescind its directive and provide in-person access to jury selection on the same terms that the press and public will have access to the other phases of this important trial.

---

[1] *See, e.g.*, Marshall Cohen et al., *Hunter Biden hearing ends after judge is not ready to accept revised plea deal*, CNN (July 26, 2023), https://www.cnn.com/2023/07/26/politics/hunter-biden-plea-hearing/index.html.

[2] *See, e.g.*, Glenn Thrush & Michael S. Schmidt, *Hunter Biden's Lawyers Cite Landmark Gun Ruling in Bid to Stave Off Charges*, THE NEW YORK TIMES (May 31, 2023), https://www.nytimes.com/2023/05/31/us/politics/hunter-biden-bruen-justice-department.html.

[3] The coalition includes American Broadcasting Companies, Inc. d/b/a ABC News, the Associated Press, Cable News Network, Inc., CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, Gannett Co., Inc., the ultimate parent company of The News Journal and DelawareOnline.com, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBCUniversal News Group, The New York Times Company, POLITICO LLC, and WP Company LLC d/b/a The Washington Post.

**BACKGROUND**

Hunter Biden was originally charged in June 2023 with "two misdemeanor tax offenses" and one felony count of "possession of a firearm by a person who is an unlawful user of or addicted to a controlled substance." *See* Apr. 12, 2024 Mem. Op. at 1 (D.I. 97). That same day, the government also notified the Court that Defendant "had agreed to plead guilty to both misdemeanor tax offenses and also agreed to enter a pretrial diversion program as to the felony firearm charge." *Id.* A hearing on that proposed plea agreement was set for July 2023. *Id.*

At that hearing, "the Court pressed the parties on their respective understandings as to the government's promises in exchange for Defendant's guilty plea on the tax charges," and the Court observed that "the parties had different views as to the scope of the immunity provision in the Diversity Agreement." *Id.* at 5. The Court ultimately concluded that "it could not accept or reject the Plea Agreement as offered" and "Defendant then entered a plea of not guilty." *Id.* at 7.

The following month, "United States Attorney David Weiss was appointed as special counsel to conduct the ongoing investigations relating to these two criminal matters, as well as to conduct investigations into matters arising from the ongoing ones." *Id.* One month after that, in September 2023, "a federal grand jury returned an indictment against Defendant charging him with three firearm offenses," consisting of "the same unlawful possession charge that was present in the original Information along with two additional charges for making a false statement in connection with acquiring a firearm." *Id.* at 8 (citation omitted).

Defendant subsequently moved to dismiss the charges against him on multiple grounds, including selective prosecution, unconstitutional appointment of the Special Counsel, immunity arising from the unaccepted plea agreement, and violation of the Second Amendment. *See* D.I. 60-63. The Court denied each of those motions. *See* D.I. 97-101, 114. Defendant noticed an

2

appeal as to his Second Amendment motion, and the Third Circuit dismissed that appeal for lack of jurisdiction. *See* D.I. 183. Defendant is therefore set to stand trial starting next week.

On May 24, 2024, the Court issued a Public Notice stating that jury selection is scheduled to begin "at 9:00 a.m. on Monday, June 3, 2024, in Courtroom 4A," and that "[m]embers of the public and media <u>may not be present in the courtroom for jury selection</u> but may <u>listen</u> to those proceedings from the overflow room." *See Public Notice: Courthouse Logistics for Media and Members of the Public Attending the Pretrial Conference (May 24, 2024) and the Jury Trial (beginning June 3, 2024) in the matter of The United States of America v. Robert Hunter Biden* at 1 (May 4, 2024), *available at*

https://www.ded.uscourts.gov/sites/ded/files/news/PUBLIC%20NOTICE.pdf ("Public Notice") (emphasis added). Yet the Public Notice reflects that the overflow room is fully capable of providing both audio and video access to court proceedings; indeed, if the courtroom fills to capacity, members of the press or the public may view "portions of the trial other than jury selection" on a "video stream in the overflow room." *Id*.

The Court issued its directive excluding the press and public from the courtroom for jury selection without prior notice or an opportunity to be heard, and without any accompanying findings to justify its course of action. The Press Coalition therefore moves to intervene in this case to challenge this unconstitutional denial of access.

**ARGUMENT**

**I.    THE PRESS COALITION SHOULD BE PERMITTED TO INTERVENE.**

It is well settled that intervention is the appropriate procedural vehicle for journalists and news organizations to vindicate the right of the public and press to access judicial proceedings. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994). The Third Circuit has

3

"routinely found, as have other courts, that third parties have standing to challenge protective orders and confidentiality orders in an effort to obtain access to information or judicial proceedings," and that press organizations "may have standing notwithstanding the fact that 'they assert rights that may belong to a broad portion of the public at large.'" *Id.* (citations omitted). Moreover, to facilitate the ability of third parties to intervene to vindicate the public's right of access, the First Amendment and common law require that the public and press be given notice and an opportunity to be heard "at a meaningful time, and in a meaningful manner" <u>before</u> any records or proceedings are sealed. *United States v. Antar*, 38 F.3d 1348, 1361 n.18 (3d Cir. 1994); *see also, e.g.*, *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982) (stating that "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion") (internal marks omitted); *United States v. Wecht*, 537 F.3d 222, 232 (3d Cir. 2008) (media intervenors had standing to challenge restrictions on access to names of jurors); *United States v. Wecht*, 484 F.3d 194, 202-03 (3d Cir. 2007) (media outlets had third party standing to challenge the constitutionality of gag order on public's behalf); *United States v. Smith*, 123 F.3d 140, 145 (3d Cir. 1997) (adjudicating merits of newspapers' right of access claim to briefs and hearings in criminal proceeding).

The Press Coalition therefore seeks permission to intervene in this case for the limited purpose of challenging the Court's denial of in-person access to jury selection.

## II.     THE COURT SHOULD PERMIT IN-PERSON ACCESS TO JURY SELECTION.

In *Richmond Newspapers v. Virginia*, the Supreme Court recognized that "the right to attend criminal trials is implicit in the guarantees of the First Amendment." 448 U.S. 555, 580 (1980). As the Chief Justice emphasized, this constitutional right fosters faith in government,

because "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing," *id.* at 572:

> The crucial prophylactic aspects of the administration of justice cannot function in the dark; no community catharsis can occur if justice is done in a corner or in any covert manner.  It is not enough to say that results alone will satiate the natural community desire for satisfaction.  A result considered untoward may undermine public confidence, and where the trial has been concealed from public view an unexpected outcome can cause a reaction that the system at best has failed and at worst has been corrupted.

*Id.* at 571 (cleaned up).  The Supreme Court reiterated that interest in *Globe Newspaper*, where it overturned an order closing a trial involving a sexual offense alleged to have been committed against a minor victim:

> [T]he right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. . . . And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process — an essential component in our structure of self-government.

457 U.S. at 606 (footnote omitted).  Thus, because "the press and general public have a constitutional right of access to criminal trials," any "circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one."  *Id.* at 603, 606.

The Supreme Court has squarely held that this First Amendment right of access applies to the jury selection process.  *See Press-Enterprise I*, 464 U.S. at 508-09 (stating that, in terms of history, "[p]ublic jury selection . . . was the common practice in America when the Constitution was adopted" and that, in terms of logic, "public proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their

5

criminal conduct by jurors fairly and openly selected"). Any party seeking to exclude the press and public from jury selection must therefore identify "an overriding interest" advanced by the denial of access and must demonstrate that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 510. Moreover, in approving such a courtroom closure, the Court must articulate findings of fact that are "specific enough that a reviewing court can determine whether the closure order was properly entered." *Id*.

The Public Notice fails all of these requirements. It does not identify any "overriding" interest supposedly advanced by excluding the press and public from the courtroom during jury selection. It does not demonstrate that excluding the press and public is "essential" to that interest or that no less restrictive alternative could achieve the same goals. And it does not articulate any "findings" – let alone specific findings – to allow for appellate review. The proposed exclusion of the press and public from the trial courtroom during jury selection thus violates the First Amendment and must be rescinded immediately.

The controlling authority could hardly be clearer. Relying in part on *Press-Enterprise I*, the U.S. Supreme Court concluded in *Presley v. Georgia* that a state trial court had violated the Constitution when it "excluded the public from the *voir dire* of prospective jurors." 558 U.S. 209, 209 (2010) (per curiam). The Court stated that "[n]othing in the record shows that the trial court could not have accommodated the public," and that the trial court could have considered alternatives to closure such as "reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members." *Id.* at 215.

This Court's plan to exclude the press and public from the trial courtroom and permit them only to "listen to those proceedings from the overflow room," *see* Public Notice at 1, is

6

likewise unconstitutional. As the Third Circuit has explained, visual access is necessary to "fully implement the right of access because some information, concerning demeanor, non-verbal responses, and the like is necessarily lost" without it. *See Antar*, 38 F.3d at 1360 n.13. Indeed, "[t]here can be no question that actual observation . . . contributes a dimension which cannot be fully provided by second-hand reports," including "appearance, demeanor, expression, [and] gestures," such that "[i]n the absence of public attendance a substantial part of the real record of the proceeding will have been permanently lost to public scrutiny." *United States v. Criden*, 648 F.2d 814, 824 (3d Cir. 1981); *see also United States v. Allen*, 34 F.4th 789, 796 (9th Cir. 2022) ("For purposes of the public trial right, an audio stream is not substantially different than a public transcript. Although a listener may be able to detect vocal inflections or emphases that could not be discerned from a cold transcript, an audio stream deprives the listener of information regarding the trial participant's demeanor and body language."). Audio-only access also prevents the press and public from observing non-verbal responses to the Court's questioning (such as raised hands) and from monitoring whether potential jurors are being struck based in part on physical characteristics, which may itself be a matter of constitutional significance. *Cf. United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1043 (11th Cir. 2005) (noting, in assessing defendant's *Batson* challenge, that by being physically present in the courtroom the trial judge can "observe first-hand whether visible judgments could be made about each juror's ethnicity in the venire").

The Second Circuit's decision in *ABC, Inc. v. Stewart* rejecting a closed jury selection process in another "high-profile criminal prosecution" speaks directly to the issues here. 360 F.3d 90, 93 (2d Cir. 2004). There, the trial court issued an order directing that voir dire be held in the court's robing room, from which members of the press and public were excluded, and

providing that a redacted transcript of the voir dire proceedings would be released the following day. *Id.* at 95. "[A] coalition of news organizations and publications," including several of the same intervenors now seeking access here, promptly challenged that order and then appealed the trial court's denial of that access motion. *Id.* at 95-97. The Second Circuit reversed, explaining that "[t]he ability to see and to hear a proceeding as it unfolds is a vital component of the First Amendment right of access—not . . . an incremental benefit" and that "one cannot transcribe an anguished look or a nervous tic." *Id.* at 99. The court further noted that "[t]he mere fact that the suit has been the subject of intense media coverage is not . . . sufficient to justify closure," because "[t]o hold otherwise would render the First Amendment right of access meaningless; the very demand for openness would paradoxically defeat its availability." *Id.* at 102.

The Court's current directive allows members of the press and public to observe all "portions of the trial other than jury selection" in person, permits "two members from each news outlet . . . to sit in the courtroom" at a minimum and, if possible, accommodates "additional members of news organizations . . . until the courtroom is full." *See* Public Notice at 1. Because the Court has not identified any interest (let alone a <u>compelling</u> interest) in excluding the press and public from equivalent access to jury selection, has not demonstrated that exclusion is at all tailored (let alone <u>narrowly</u> tailored) to advancing that interest, and has not articulated a single finding (let alone <u>specific</u> findings) to justify this exclusion, the Court's denial of in-person access to jury selection violates settled First Amendment precedent. In fact, this denial of access alone may amount to reversible error that is immediately appealable. *See Presley*, 558 U.S. at 216; *Wecht*, 537 F.3d at 227 ("We have jurisdiction to review the Media-Intervenors' motion under 28 U.S.C. § 1291 and the 'collateral order' doctrine."). The Court should therefore reconsider this exclusion and provide the press and public in-person access to jury selection.

8

### III. AT A MINIMUM, THE COURT SHOULD PERMIT POOL REPORTERS TO OBSERVE JURY SELECTION IN PERSON AND PROVIDE LIVE VIDEO OF THE PROCEEDINGS TO THE OVERFLOW ROOM.

Even if the Court were to maintain, in spite of the controlling case law discussed above, that it must limit in-person access to jury selection proceedings in the trial courtroom, the Court should, at a minimum, permit a small group of "pool" reporters to observe jury selection in person. Pool reporters are routinely permitted to observe even the most sensitive portions of criminal trials, such as the testimony of undercover law enforcement officers in terror-related prosecutions. *See, e.g.*, *United States v. Alimehmeti*, 284 F. Supp. 3d 477, 487-88 (S.D.N.Y. 2018) (allowing "at least one representative from among the District's press pool to be present for each UC's testimony, so as to assure press exposure to visual observations (e.g., of trial participants' reactions) that only a person physically present in court can make" and noting that such a "partial closure" is "narrowly tailored" in part because "the public will have access to, through the reporting of an SDNY press pool member, any visual observations of trial participants noted by the reporter"); *see also, e.g.*, *United States v. Schulte*, 436 F. Supp. 3d 698, 705 (S.D.N.Y. 2020) (permitting "two representatives from the District's press pool to be present" for the testimony of CIA employees in Espionage Act case "to assure access to visual observations (e.g., of witness demeanor) that only a person in the courtroom can make"). Because the public interest in such visual observations is just as pressing here, the Court should, at a minimum, permit pool reporters to attend jury selection in person and make such visual observations as "surrogates for the public." *Richmond Newspapers*, 448 U.S. at 573.

The Court should also provide live video of jury selection, not just live audio, to the members of the press and public monitoring the proceedings in the overflow room. The Supreme Court has explained that the First Amendment provides a right of <u>meaningful</u> access, such that courts are "obligated to take every reasonable measure to accommodate public

9

attendance at criminal trials." *Presley*, 558 U.S. at 215. Providing live video of jury selection to the overflow room, which the Public Notice notes is capable of providing a video as well as audio stream, is without doubt a less restrictive alternative to prohibiting visual observation of jury selection altogether, and as such, is another way the Court can and should accommodate public attendance for this critical phase of this important trial. *See, e.g.*, *Allen*, 34 F.4th at 799-800 (trial court violated public trial right by providing only audio, not audiovisual, access to proceedings, where providing such audiovisual coverage was possible and the trial court "cannot show that allowing a limited number of members of the public to view the trial in the courtroom, or via a live-streamed video in a different room, would imperil" any compelling interest); *State v. Brimmer*, 983 N.W.2d 247, 270 (Iowa 2022) (reversing and remanding for new trial where court "closed [the courtroom] to all in-person spectators" because live video coverage represented "a reasonable alternative to cutting off all public view").

## REQUEST FOR EXPEDITED TREATMENT

The Press Coalition respectfully requests that the Court address this motion on an expedited basis before June 3, 2024, when jury selection is set to begin. Absent expedited consideration, the press and public may be denied the First Amendment right to observe jury selection in person, which cannot be cured after the fact and may constitute reversible error.

## CERTIFICATION OF GOOD-FAITH CONFERENCE

Pursuant to Local Rule 7.1.1, undersigned counsel conferred with counsel for the government and Defendant on May 28 and 29, 2024. The government takes no position on this Motion, and at the time of filing, counsel for Defendant had not responded regarding Defendant's position.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1.4, the Press Coalition respectfully requests oral argument on this motion.  Counsel for the Press Coalition will be in the courthouse on June 3, 2024 and prepared to address the issues discussed above and in the accompanying Memorandum of Law.

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that it be permitted to intervene in this proceeding, that the Court permit members of the press and public to attend and observe jury selection from inside the trial courtroom on the same terms as they will be permitted to attend the rest of the trial proceedings.  Alternatively, and at a minimum, the Court should permit pool reporters to observe jury selection in person and provide live video coverage of jury selection proceedings to the other members of the press and public in the overflow room.

Dated:  May 29, 2024

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Beth Moscow-Schnoll*
Beth Moscow-Schnoll (# 2900)
Lauren P. Russell (# 6576)
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4447
moskowb@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*