IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 23-00061-MN |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| *Defendant*. | ) |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE PROPOSED DEFENSE EXPERTS**

Two days ago, on May 28, six days before trial,[1] the defendant provided supplemental notices to the government concerning expert witnesses, Drs. Aoun and Coyer, but, once again, these notices do not contain the disclosures required by Federal Rule of Criminal Procedure 16. ECF 184. Both proposed experts must be excluded because (1) the notices are untimely; (2) they still do not satisfy Fed. R. Crim. P. 16; and, as before, (3) the testimony is otherwise inadmissible. Trial begins on Monday, four days from today, and the government will face significant prejudice if the experts are permitted to testify. However, based on the little that the defendant has disclosed, the proposed testimony would be inadmissible under Federal Rules of Evidence 401-403, 702 and 704(b) anyway.

Because the defendant's disclosures are untimely and do not meet the requirements of Rule 16—they still do not disclose any opinions, the specific bases for those opinions, the actual analysis or methodology that was used to arrive at any opinions—exclusion is the only appropriate remedy.

---

[1] While defense counsel attached letters dated May 26, 2024, to his Response to the government's motion to exclude his experts, the first time the government received this correspondence was on May 28, 2024, when it reviewed the defendant's filing and saw them attached as exhibits. ECF 184-1, 184-2.

The inadequacy of the disclosures and lack of timeliness have a relationship; the trial is too close to give defense counsel more time to try, for a third time, to effectively supplement his notices to provide the required disclosures. Further, defense counsel undoubtedly know what Rule 16 requires and have chosen not to satisfy it. In any event, based on what information that has provided, the Court, in its role as a gatekeeper under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993), should exclude the testimony because it is inadmissible.

I.  **THE LAW**

As set forth in the government's motion, ECF 166, pp. 3-4, 7, Federal Rule of Criminal Procedure 16 requires a defendant to provide the government with "a *complete statement of all opinions* that the defendant will elicit from the witness in the defendant's case-in-chief; *the bases and reasons for them*; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. Pro. 16(b)(1)(c)(iii) (emphasis added). If a defendant does not comply with Rule 16, the Court may "prohibit [the defendant] from introducing the undisclosed evidence." *Id*. at 16(d)(2)(C).

II. **ARGUMENT**

    **A. The Supplemented Disclosures Were Provided Six Days Before Trial and Should be Excluded on that Basis Alone**

Because the proposed experts' opinions and the methodology and evidence on which they are relying to arrive at those opinions remains undisclosed, the government is prejudiced because of its inability to (1) determine whether to challenge the relevancy and/or reliability of the proposed testimony before the Court in its gatekeeping role and to (2) identify rebuttal witnesses. *See United States v. Hoffecker*, 530 F.3d 137, 185 (3d Cir. 2008). The government did not intend to call an addiction expert and did not retain one in preparation for this case. While the government provided

2

its expert notices to defense counsel on April 24, 2024, defense counsel only provided their notice for Dr. Aoun on May 21, 2024, eight days ago.  Even if the government had retained addiction experts, it has nothing to give them that they could meaningfully review because defense counsel still hasn't disclosed the actual opinions they intend to elicit from their experts or the basis for those opinions. By failing to timely and properly disclose experts, the defendant has deprived the government of "a fair opportunity" to meet his evidence. Advisory Committee Notes to Rule 16's 2022 Amendments. The government should not learn, for the first time, what the experts' opinions are when they take the stand.  This is precisely the situation Rule 16 prohibits.

As the caselaw in the government's motion makes clear, it would be appropriate, and in any event *not* an abuse of discretion, for this Court to exclude the defendant's experts based on their now repeated failure to satisfy Rule 16's requirements.  The problem their insufficient notice poses is only compounded by the fact that trial begins in a matter of days. *See Hoffecker*, 530 F.3d at 185 ("Courts of appeals have upheld the exclusion of experts [under Fed.R.Crim.P. 16] when defendants fail to serve timely notice of their intent to call them as witnesses.").

### B. The Supplemented Disclosures for Each Proposed Expert Should be Excluded Because They Are Similarly Inadequate and Fail to Comply with Fed. R. Crim. P. 16 and the Witnesses Testimony Would Violate the Rules of Evidence

Neither of the disclosures the defendant made for his expert witnesses on May 28, 2024, satisfies Rule 16.  While the supplemental notices at least are signed, unlike their previous ones which didn't even meet that simple requirement, importantly, the supplemental notices do not contain a "*complete statement* of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief or the basis for them. *See* Fed. R. Crim. Proc. 16(b)(C)(iii) (emphasis added).

3

1. **Elie Aoun's Proposed Testimony Should be Excluded Because the Supplemented Notices are Entirely Deficient and His Proposed Testimony Is Inadmissible under Rule 704(b)**

The first expert the defense has now noticed is Dr. Elie Aoun, who according to his curriculum vitae is "an assistant professor of clinical psychiatry at Columbia University and a practicing general, addiction, and forensic psychiatrist." ECF 184-1 at p. 2.

a. *The defendant has not disclosed any of Dr. Aoun's actual opinions or the bases for them.*

The defendant's May 28, 2024 supplemental notice has two sections listing what Dr. Aoun intends to testify about but, as before, neither section contains any disclosures about the actual opinions he will offer, nor a complete statement of them or the bases for those opinions. In the first section where he lists topics for testimony, the notice says, "Dr. Aoun is expected to testify regarding …" The defendant then lists nine topics, none of which contain any disclosures about what opinions Dr. Aoun will offer on these topics or his basis for those undisclosed opinions. Below are the topical descriptions and the deficiencies, in terms of disclosures, and admissibility issues, raised by each of them:

> **(a) the various manifestations and characterological traits associated with drug and alcohol use of people in general and Mr. Biden's in specific [sic.], as well as the language used to describe it;**

- What <u>are</u> the "manifestations and characterological" traits of "people in general" that Dr. Aoun is referring to?
- What is his opinion based on? Literature? If so, what articles? Particular studies?
- What, in Dr. Aoun's view, are the defendant's traits? What is that opinion based on? Has he reviewed the defendant's medical records? Records from his rehab attempts? Has he interviewed him?
- What <u>is</u> the "language used to describe" drug and alcohol use of "people in general" in Dr. Aoun's opinion?
- Same question for "Mr. Biden in specific [sic.]"
- How are Dr. Aoun's opinions about language relevant as the defendant is the proponent of the testimony and must establish its admissibility?

4

> **(b) an individual's state of denial about their own substance use disorder is one of the most common characteristics of substance use disorders;**

- What is Dr. Aoun's opinion about an individual's state of denial about their own substance use disorder? What is it based on?
- Does he intend to offer any opinions about the defendant's understanding of and state of denial about his own addiction?
- If so, what is his opinion? And what is it based on?
- If he intends to testify about the defendant's state of mind, how does this not violate Fed.R.Evid. 704(b) as the defendant is the proponent of the testimony and must establish its admissibility?
- If not, how are his opinions on this topic - whatever they are - relevant as the defendant is the proponent of the testimony and must establish its admissibility?

> **(c) the various clinical traits, including those seen in high-functioning professionals with active drug or alcohol use contributing to that person in general (and what it appears to be the for Mr. Biden's [sic.]) view that they are not addicted;**

- What are the "clinical traits" he is referring to? What is the basis for his opinion that these clinical traits, whatever they are, "contribute to that person in general (and what it appears to be for Mr. Biden's [sic.] view that they are not addicted?
- What does he mean that it "appears"? Is that a scientifically valid diagnosis?
- Does he intend to offer any opinions about the defendant's "view that [he is] not addicted"? If so, what is his opinion? And what is it based on?
- If not, why are his opinions on this topic, whatever they are, relevant as the defendant is the proponent of the testimony and must establish its admissibility?
- If he intends to testify about the defendant's state of mind, how does that testimony not violate Fed.R.Evid. 704(b) as the defendant is the proponent of the testimony and must establish its admissibility?

> **(d) the effects and impacts of rehabilitation, therapy, and other types of treatment programs on affected individuals and their efforts at achieving a state of recovery;**

- What are his opinions about the effects and impacts on affected individuals?
- Does he intend to offer any as to the defendant? If so, what are they?
- And if he does intend to offer opinions about the defendant what are those opinions based on? Has he reviewed his medical records or treatment history? Has he reviewed records from those treatment programs either specific to the defendant or ones that describe their methodology, rates of success or failure or other data?
- If not, why are his opinions on this topic, whatever they are, relevant as the defendant is the proponent of the testimony and must establish its admissibility?

> **(e) how the cyclical patterns of alcohol and drug use followed by periods of recovery and rehabilitation also contributes to a user's view of themselves as not being addicted;**

- What are his opinions about how these cyclical patterns contribute to a user's view of themselves as not being addicted?
- Does Dr. Aoun intend to offer any opinions about whether the defendant had a view of himself as not being addicted during the time period relevant to the indictment? If so, what is that based on?
- If he intends to testify about the defendant's state of mind, how does this not violate Fed.R.Evid. 704(b) as the defendant is the proponent of the testimony and must establish its admissibility?
- Does he intend to offer any opinions about how the defendant described or thought of himself during that period? If yes, what are his opinions? If not, why are his opinions, whatever they are, relevant as the defendant is the proponent of the testimony and must establish its admissibility?

> **(f) the effects and impacts of significant personal and family traumas on persons with drug and alcohol use disorders;**

- What are his opinions about the effects and impacts of significant personal and family traumas on persons with drug and alcohol use disorders? What are those opinions based on?
- Does he intend to offer opinions about the defendant on this topic? If so, what are his opinions and what are they based on? If not, why is this testimony relevant as the defendant is the proponent of the testimony and must establish its admissibility?

> **(g) the difference between the clinical or legal understanding of the terms "controlled substance," "addict," and "substance abuse" differs from the general public's understanding of those same terms;**

- What, in Dr. Aoun's opinion, <u>is</u> the difference between clinical, legal or "general public" understandings of "controlled substance," "addict" or "substance abuse"?
- What is the basis for his opinion about the differences, whatever they are as the defendant is the proponent of the testimony and must establish its admissibility?

> **(h) how a person's interactions with their loved ones changes after they develop a drug use disorder;**

- What is his opinion about how "a person's" interactions with their "loved ones" changes after they develop a drug use disorder? What are these opinions based on?
- Does he intend to offer opinions about the defendant on this topic? If so, what are his opinions and what are they based on? If not, why is this testimony relevant as the defendant is the proponent of the testimony and must establish its admissibility?

6

### (i) the impact of addiction on traits of character pathology.

- What, in his opinion, is the impact? What is the basis for that opinion?
- Does he intend to offer opinions about the defendant on this topic? If so, what are his opinions and what are they based on? If not, why is this testimony relevant as the defendant is the proponent of the testimony and must establish its admissibility?

ECF 184-1 p. 2.

The answers to these questions are necessary, not only to determine whether the testimony is relevant, but also to determine whether Dr. Aoun holds views on these topics that are "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002) (*quoting Daubert*, 509 U.S. at 590).

In the next paragraph of the May 28, 2024 supplemental notice, the defendant states that "Dr. Aoun is expected to offer the following opinions" followed by another bulleted list of seven topics that repeat some of the vague topics included in the previous paragraph but do not actually offer any opinions as to any of them either. ECF 184-1 at pp. 2-3. These topics raise many of the same questions because they are similarly insufficient as the ones in the previous paragraph:

- **Individuals, like Mr. Biden, who have experienced significant personal trauma are at an increased risk of developing drug and alcohol use disorders.**
    - Is it his opinion that the defendant developed a drug and alcohol use disorder? If so, what is that opinion based on?
    - If he does not intend to offer an opinion about the defendant, what is the relevance of his opinion, whatever it is, about "individuals like" the defendant?
    - Why is his opinion on this topic relevant as the defendant is the proponent of the testimony and must establish its admissibility?

- **A state of denial is commonly observed in individuals with substance abuse disorder, such as Mr. Biden. Individuals, like Mr. Biden, who are high-functioning professionals often struggle to come to terms with their own addiction.**

7

- o Is it his opinion that the defendant "struggle(s) to come to terms with" his addiction?
- o If so, what is that opinion based on?
- o If not, how is the opinion relevant as the defendant is the proponent of the testimony and must establish its admissibility?

- **Individuals, like Mr. Biden, who have spent time in rehabilitation programs may view themselves as no longer being "addicts" under the term's general understanding. The terms "addict" and "user" do not have a universal clinical or scientific definition in medicine.**

  - o What does "may" mean in this context?
  - o Is it Dr. Aoun's opinion that Mr. Biden, because he spent time in rehabilitation programs, did not view himself as an addict? What is that opinion based on?
  - o If he does not intend to offer an opinion about the defendant, what is the relevance of his opinion, whatever it is, about "individuals like" the defendant?
  - o And how does this state of mind evidence not violate Rule 704(b) as the defendant is the proponent of the testimony and must establish its admissibility?
  - o If the defendant does not testify, how is this admissible? If he does testify, how is this not improper bolstering?

- **The lay understanding of the term "controlled substance" is prescription medications with addictive potential, while the academic and clinical definition relates to the Controlled Substance Act and refers to chemical compounds (including prescription medications and illicit drugs) with addictive properties.**

  - o What is the basis for Dr. Aoun's opinion that the "lay understanding" of the term "controlled substance" is prescription medications with addictive potential"? Survey data? Something else?
  - o What, in his opinion, is the academic and clinical definition? What is the basis for that opinion?
  - o What is the relevance of this as the defendant is the proponent of the testimony and must establish its admissibility?
  - o The Court will instruct the jury that crack cocaine is a controlled substance; how is introducing academic and clinical definitions helpful to the jury?

- **The cycles of sobriety, recovery, and rehabilitation also impact a substance abuser's view that they are not "addicts" at any given time.**

  - o How, in Dr. Aoun's opinion, do the cycles impact a substance abuser's view that they are not addicts at any given time?

- o Does Dr. Aoun intend to offer any opinions about whether the defendant viewed himself as not being an addict at any given time? If so, what is that based on?
- o And how does this state of mind evidence not violate Rule 704(b) as the defendant is the proponent of the testimony and must establish its admissibility?

- **Certain of Mr. Biden's communications are consistent with traits of character pathology, which can be spurred or heightened by periods of intense stress, trauma, and drug or alcohol use.**

    - o Which communications?
    - o What traits of character pathology?
    - o What periods of intense stress, trauma and "drug or alcohol use" is Dr. Aoun referring to?

- **Family members of persons with substance use disorders typically continue to question a person's sobriety, even when they actually are not using drugs, creating an atmosphere of distrust, and further compromising the person's recovery.**

    - o Is it Dr. Aoun's opinion that that happened here? What is that based on?
    - o Is this testimony intended only to cast doubt on the credibility of other witnesses, usurping the jury's function?

ECF 184-1 pp. 2-3

    b. *The defendant has not disclosed the bases of Dr. Aoun's opinions, whatever those opinions may be.*

As noted above and as discussed in the government's motion, the defendant still nowhere provides a sufficient disclosure of the bases for any opinions Dr. Aoun proposes to offer, such as clinical trials or peer reviewed literature or medical records for the defendant or anything else at all. There is still no description of his methodology. Both are required by Rule 16. See Gov't's Motion at pp. 14-15. In fact, the notice does not cite a single article or study on which Dr. Aoun relied and does not disclose whether he has examined any medical or treatment records of the defendant's or whether he has interviewed the defendant.

The defendant states that Dr. Aoun's testimony will be based on "evidence in discovery (including Mr. Biden's the text message communications provided by the government in

9

discovery, Mr. Biden's memoir, interview memos of potential government witnesses also provided in discovery)" but there is no list of "text message communications" he reviewed in any of the notices provided by defense counsel or the page numbers of which portions of the memoir he review, or, indeed, if he reviewed all of it. ECF 184-1, p. 2. And the defendant does not specify which "interview memos" Dr. Aoun will be relying on to form any opinions. In sum, there is insufficient information provided for the government to make arguments to this this Court about whether Dr. Aoun's opinion is reliable because the basis for his opinions, which are also undisclosed, is not specified. If Dr. Aoun reviewed certain memos, messages or book passages but not others, that could produce a result that is biased or skewed and therefore unreliable. There is no way to know, based on the supplemented notices from May 28, 2024. This information is required to be included in the defense's disclosures so that if, for instance, Dr. Aoun has, in reaching his opinion(s) (whatever they may be) cherry-picked particular text messages without regard to other texts or the entire volume of texts, the government can prepare its rebuttal and, most importantly, the Court can make an admissibility determination under F.R.E. 702. The defendant's failure to disclose Dr. Aoun's bases for his opinions is grounds for exclusion. Gov't's Motion, ECF 166, p. 15.

      c.   *The testimony that defendant intends to elicit from Dr. Aoun violates Rule 704(b).*

What little is disclosed about Dr. Aoun's anticipated testimony makes clear that his topics are either (1) irrelevant and therefore inadmissible or (2) violate Federal Rule of Evidence 704(b) and must be excluded on that basis. As explained in the government's motion, Rule 704(b) prohibits experts in criminal cases from stating an opinion "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). Gov't's Motion, ECF 166, p.

16. Importantly, the rule also prohibits what it appears the defendant may try to do here: adduce "testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*." *United States v. Bennett*, 161 F.3d 171, 182 (3d Cir. 1998) (citation omitted).

For all three counts charged in the indictment, the government must prove that the defendant's state of mind was "knowing." 18 U.S.C. § 922(a)(6) (Count 1); Model Criminal Jury Instructions, 3rd Circuit, § 6.18.922A; 18 U.S.C. § 924(a)(1)(A) (Count 2); Model Criminal Jury Instructions, 8th Circuit, § 6.18.924; 18 U.S.C. § 922(g)(3) (Count 3). This is a subjective standard; the government has the burden of proving that *this* defendant had the required mental state. No expert – on either side – is permitted to opine on the defendant's subjective mental state.

Dr. Aoun's supplemental notice frequently references the state of mind of people with addiction generally and five times references the state of mind of the defendant specifically. For example, the notice says Dr. Aoun will testify "that person in general (and what it appears to be the for *Mr. Biden's [sic.]) view that they are not addicted*; "an individual's *state of denial* about their own substance use disorder," "how the cyclical patterns … also contributes to a *user's view of themselves as not being addicted*," "*state of denial is commonly observed in individuals* with substance abuse disorder, *such as Mr. Biden*," "*Individuals, like Mr. Biden*, … often *struggle to come to terms with their own addiction*," "Individuals, like Mr. Biden, … *may view themselves as no longer being "addicts*,"" "The cycles of sobriety, recovery, and rehabilitation also impact *a substance abuser's view* that they are not "addicts" at any given time," etc. ECF 184-1, p. 2-3 (emphasis added).

None of this is permitted because it is "state of mind" testimony that violates Rule 704(b). The references to "person[s] in general" and "individuals" cannot salvage it; the rule also prohibits

11

testimony *leading* the jury to a mens rea conclusion. "Rule 704(b) may be violated when [counsel's] question is plainly designed to elicit the expert's testimony about the mental state of the defendant." *United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001) (citing *United States v. Boyd*, 55 F.3d 667, 672 (D.C. Cir. 1995) and *United States v. Lipscomb*, 14 F.3d 1236, 1240 (7th Cir. 1994)). *See also Bennett*, 161 F.3d at 182 ("testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea" is also prohibited under Rule 704(b)) (citation omitted); *United States v. Kim*, 303 F. Supp. 2d 150, 158–59 (D. Conn. 2004) (proposed expert testimony about defendant's history of family abuse and mental illness as an explanation for his involvement in the enterprise went to an ultimate issue in the case in violation of Fed.R.Evid. 704(b) and also was not admissible under 702); *United States v. DiDomenico*, 985 F.2d 1159, 1163 (2d Cir. 1993) (finding a potential expert's testimony of defendant's mental state as defense that she was manipulated and lacked knowledge of her co-conspirator's criminal activity was "close enough to a violation of Rule 704(b) that, when combined with the trial judge's assessment of helpfulness under Rule 702, amply justified his exercise of discretion to exclude it."); *United States v. Dela Cruz*, 358 F.3d 623, 626 (9th Cir. 2004) (excluding mental health professional's testimony about a mental state that is an element of the crime despite the phrasing of questions about the mental state of "a person" and not the defendant's mental state because "Federal Rule of Evidence 704(b) prohibits testimony 'from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea'") (quoting *United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997) (en banc)); *Boyd*, 55 F.3d at 669 (government counsel's recital of "hypothetical" facts to expert which exactly mirrored the alleged facts at issue to show intent was "a flagrant breach" of Rule 704(b) because that ultimate issue "was for the jury alone to decide"); *United States v. Dennison*,

937 F.2d 559, 564–65 (10th Cir. 1991) ("testimony—that alcohol and drug consumption by a person with borderline personality disorder renders that person incapable of forming specific intent—is the type of opinion or inference testimony Rule 704(b) is intended to exclude" despite being "premised on a hypothetical person suffering borderline personality disorder and couched in terms of the characteristics of the illness itself, [where] the necessary inference was that the instant defendant did not have the capacity to form specific intent at the time of his crimes because of the combined effects of his intoxication and mental illness"); *United States v. Hillsberg*, 812 F.2d 328, 331–32 (7th Cir. 1987) (exclusion was proper under Rule 704(b) of a psychiatrist's opinion as to whether defendant - given the circumstances leading to confrontation and his intoxication - had the capacity to form the specific intent required for second-degree murder because that was an ultimate issue for jury). No expert may testify about the defendant's state of mind under Rule 704(b), even if he frames his testimony as being about a hypothetical drug-addicted individual who has experienced trauma and participated in rehab programs. No case condones such an end-run around the Rules of Evidence.  The government must prove that the defendant was an unlawful user of a controlled substance, or an addict and that the defendant knew that to be the case. The defendant therefore cannot be permitted to contradict the government's evidence of his specific state of mind with an expert telling the jury about the states of mind of people like him so that the jury can infer that was also the defendant's state of mind.

   *d. Testimony on the other topics the defendant has disclosed will not aid the jury.*

  Apart from impermissible state of mind testimony, Dr. Aoun offers no other evidence that would "help the trier of fact to understand the evidence or to determine a fact in issue." F.R.E. 702. The relevant definition of "addict" will be provided by the Court in its legal instructions and therefore can be comprehended by a lay jury without expert testimony. In any case, opinions about

13

"characterological traits," "impacts of significant personal and family traumas," and the fact that "[f]amily members of persons with substance use disorders typically continue to question a person's sobriety, even when they actually are not using drugs, creating an atmosphere of distrust," *in general* will not help the jury determine whether this *specific* defendant knew he was an addict. ECF 184-1 at pp. 2-3.

If this testimony is proposed for the purpose of calling into question the credibility of witnesses who will testify that the defendant was using drugs during the time period of the indictment, which will include family members and others in personal relationships with him who did question his sobriety, this purpose is prohibited. *See United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir.1995) ("expert testimony can be properly excluded if it is introduced merely to cast doubt on the credibility of other witnesses, since evaluation of a witness's credibility is a determination usually within the jury's exclusive purview").

Finally, differences in types of addictions, the way addiction affects "high-functioning professionals," rehab programs and family traumas are not relevant to whether the elements of the crimes charged are satisfied by the admissible evidence in this case.

If the government attempted to introduce expert testimony that the defendant's history of "significant personal and family trauma" or "characterological traits" made it more likely that he was an addict such testimony would be improper propensity evidence and would be inadmissible under Fed. R. Evid. 404(b). The inverse is also true. The defendant cannot call an expert witness to give opinion testimony that the defendant's history of "significant personal and family trauma" or "characterological traits" make it more likely that he was *not* an addict. That is also propensity evidence, although in the opposite direction.

Even if the defendant were to take the stand, an expert opining, as Dr. Aoun apparently proposes to do, that other people who have similar experiences also have similar states of mind to the defendant's would be improper bolstering. A party may not flow its facts or testimony through an expert's mouth "merely to lend credence to the same." *Reedy v. CSX Transp., Inc.*, No. CIV.A. 06-758, 2007 WL 1469047, at *3 (W.D. Pa. May 18, 2007) (citing *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) and *S.E.C. v. Lipson*, 46 F.Supp.2d 758, 763 (N.D.Ill. 1998)).

Dr. Aoun also offers to testify about matters that are wholly irrelevant and would only serve to confuse the jury. For instance, the defendant proposes that Dr. Aoun testify to the "lay understanding of the term 'controlled substance' [being] prescription medications with addictive potential, while the academic and clinical definition relates to the Controlled Substance Act and refers to chemical compounds (including prescription medications and illicit drugs) with addictive properties." ECF 184-1, p. 2. This testimony would only risk confusion where the statute has a legal meaning, provided by Congress, on which the Court will instruct the jury. Academic, clinical and lay definitions would be irrelevant and would only confuse the issues.

Finally, if Dr. Aoun's proposed testimony is that – in general – people addicted to controlled substances are incapable of knowing they are "drug addicts," all convictions under §922(g)(3) would be vulnerable to being thrown out on this basis.

———

The defendant's notice regarding Dr. Aoun is insufficient because it does not include his opinions and the bases and reasons for them which Rule 16 requires. Moreover, his anticipated testimony would violate Rule 704(b) because it offers impermissible state of mind evidence. Any testimony that does not go to the defendant's statement of mind (i.e., testimony about personal traumas generally, substance abuse dynamics in general) is not relevant and will not aid the trier

15

of fact. *See, e.g., United States v. Shorter*, 809 F.2d 54, 61 (D.C. Cir. 1987) (abrogated by *Daubert*, 509 U.S. 579) (testimony was not admissible because there was no compelling indication suggesting that appellant's "gambling activities and their impact on his financial habits require the testimony of experts, as opposed to lay witnesses familiar with the [defendant's] activities … when knowledge of an expert is unnecessary to a jury's assessment of the salient factual issues, expert testimony will normally be excluded") (internal citations omitted).

### 2. Michael Coyer's Proposed Testimony Should be Excluded Because the Supplemented Notices are Still Deficient

Defendant's other proposed expert, Dr. Michael Coyer, is a chemist who, according to the supplemented notice will testify regarding the following topics:

(a) generally accepted laboratory methods for forensically testing cocaine;

(b) the ability to date or age cocaine samples;

(c) reliability, durability, and chemical composition of cocaine evidence; and,

(d) sample integrity considerations in general chemistry testing and forensic use of drug analysis reports.

ECF 184-2, p. 2

The defendant has now listed six "opinions" based on "the lab reports, interview memos, covering memos [sic.] provided by the government in discovery in this case." *Id*. The notice for these opinions is insufficient. The following are statements contained in the May 28, 2024 notice and the questions they raise:

- There is no forensic method available to date or age cocaine samples.
- The sample integrity of the brown colored pouch submitted for laboratory testing is compromised, rendering the outcome of any laboratory analysis after the fact inconclusive.
- The analysis conducted by FBI-Chemist Jason Brewer followed generally acceptable methods for laboratory analysis.

16

- Without knowing who was in contact with an item that had drug residue, how long it had been in various peoples' possession, and how it was kept for periods of time, it is not possible to determine who used or left the residue.
- Routinely conducted tests can determine if a sample is powder or crack cocaine.
- Additional commonly conducted laboratory analyses, including for the existence of fingerprints and DNA.

*Id*.

As to the first bullet, the defendant suggests that his proposed expert will testify that there is no method by which cocaine can be dated but provides no basis, for example in the scientific literature, for that opinion. Further, the defendant criticizes the government for failing to do just that in his response. Response, pp. 6-7 ("The cocaine that was found was not tested to determine whether it had been recently left on the evidence (e.g., 2018) or put there years before"). The contradiction between his notice for Dr. Coyer and the defendant's argument regarding the government's failures makes it clear that there is no basis for the opinion.

The second bullet fails to state in what way the "sample integrity…is compromised" or any basis for that opinion.

The third bullet affirms the government's expert's methods, which evidences their reliability, but says nothing about why it is useful to the jury to hear it from another witness.

The fourth bullet merely addresses a fact question that invades the province of the jury. The government's chemist is not going to offer an opinion about "who used or left the residue," as the disclosure for the government's chemist makes clear. Therefore, there is nothing for a defense expert to rebut. It will be up to the jury to decide, and they will hear evidence from a fact witness that the pouch was found in his car with drug paraphernalia and drug remnants. From that, and other evidence, they can conclude that he left the drugs on the pouch. But the expert witness has no first-hand knowledge of the facts in this case from which he can offer, in the form of an expert opinion, a contrary factual conclusion.

The fifth bullet – whether tests can determine what type of cocaine (powder or crack) – the notice does not disclose what Dr. Coyer's opinion is about whether tests could determine, in this case, what type of cocaine (powder or crack) was on the defendant's leather pouch.

Finally, the sixth bullet, appears to be a sentence fragment and it is not clear what opinion Coyer would offer regarding analyses for fingerprints.

The supplement still does not disclose any of Coyer's analysis or methods or the bases for any of his opinions. As with Dr. Aoun, the government is unable to test the bases for any potential – but still unknown – opinions Coyer would offer. It cannot determine whether or how to challenge them under *Daubert*. And the Court is unable to determine whether such expert testimony is reliable and relevant and therefore admissible under F.R.E. 702. Now that trial is imminent and the defendant has failed – again – to provide adequate disclosures, Coyer's testimony should be excluded from trial.

### C.  Exclusion is an Even More Appropriate Remedy Now

As set forth in the government's motion, exclusion is appropriate here where experts were untimely disclosed and still, less than a week before trial, have not specified their bases, reasons, and sources for their opinions, or even what their opinions will be. Gov't's Motion, ECF 166, at pp. 24-26. Fed. R. Crim. P. 16(d)(2). The defendant's initial, insufficient disclosure was provided a little over two weeks before trial. It is now Thursday and trial in this case begins on Monday and the defendant, who benefitted from the government's timely expert disclosures, still has not provided sufficient disclosures as required by Rule 16.

Because the defendant's proposed experts do not offer admissible, relevant testimony that satisfies Rule 702, and, in fact, Dr. Aoun so far offers only irrelevant testimony or testimony that violates Rule 704(b), there is no prejudice in simply excluding them.

### III. CONCLUSION

For the foregoing reasons, this Court should grant the government's motion and preclude the defendant's two proposed experts from testifying at trial.

Respectfully submitted,
DAVID C. WEISS
SPECIAL COUNSEL

By: *[signature]*
_____
Derek E. Hines
Senior Assistant Special Counsel

Leo J. Wise
Principal Senior Assistant Special Counsel

U.S. Department of Justice