**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:23-cr-61-MN |
| | ) | |
| ROBERT HUNTER BIDEN, | ) | |
| Defendant. | ) | |

**Government's Reply in Support of Its Motion in Limine to
<u>Admit Certified Form 4473 and to Exclude Evidence of Annotated Form 4473</u>**

In his supplemental response to the government's Motion in Limine to Admit Certified Form 4473 and to Exclude Evidence of Annotated Form 4473, the defendant announced his intent to introduce other inadmissible evidence:   information regarding perceived political bias of Ron Palimere, the owner of StarQuest, and Sgt. Vincent Clemons of the Delaware State Police. Any such evidence must also be excluded because it (1) is not relevant, (2) is unduly prejudicial in that it would confuse issues before the jury, and (3) only invites nullification. The government files this reply to explain the impermissible purpose for which the defendant is attempting to call additional witnesses which further underscores that his real reason for seeking to introduce an annotated version of Form 4473 is improper. The government also seeks to clarify for the Court that this latest identification of documents the defendant emailed last week – initially without any explanation – late on the Friday afternoon before trial and long after the deadline for exchanging exhibit lists had passed[1]  serves only to inject political motives and animus into this case.

I.   <u>Relevant Facts</u>

There are no facts to suggest that anyone other than the defendant checked the boxes in Form 4473 Section A. When the defendant checked "no" to 11e's question regarding being an unlawful user or addict, as StarQuest salesman, Gordon Cleveland, has always testified that the defendant did

---

[1] This Court's scheduling order (ECF 112) required the parties to "exchange exhibits, exhibits lists and witness lists and provide the Court with these lists by 2:00 p.m. on May 24, 2024.

himself with his own hand in front of Cleveland, the crimes alleged in Counts I and II. The defendant's conspiratorial rhetoric about "doctored" forms and Sgt. Clemons' arrival on the scene after his girlfriend threw his gun away and his alternative narrative implying that Palimere is merely currying favor with the government due to concerns about his recordkeeping does nothing to change this fact.

The government does not intend to call Palimere, StarQuest's owner, because he does not have any relevant information; he was not a witness – as Cleveland was – to the crimes alleged in Counts I and II. The defendant wants to call Palimere – as revealed in his latest filing – to ask him about his political opinions as expressed in messages sent years after the time period at issue in this case. Supp. Resp. at 8 and n. 3. But as to the day in question, October 12, 2018, Palimere never came to the front of the store or interacted with the defendant or observed him signing the Form 4473. Def. Ex. 4, p. 2. He approved the use of the defendant's passport as a form of identification when Jason Turner, the employee performing the background check, consulted with him. Def. Ex. 4, p. 2. All of the information in Section B of the 4473 was completed by Turner; Mr. Palimere's handwriting is nowhere on the form and he had no part in its completion on the day of the sale.

Cleveland has consistently testified[2] that he was the StarQuest salesman who sold the defendant his gun and that Turner performed the background check in the back office. Def. Ex. 3A: 12:12-19. All the witnesses have consistently confirm this. Def. Ex. 3-3B, 4, p.2.  Cleveland has testified that he was standing at the window, noticed the defendant's Cadillac, and sold him a specialty handgun. See Def. Ex. 3, para. 9, 10, 16; Ex. 3A, 11:13-14; 11:24-12:1 Ex. 3B 1. He provided the defendant with a blank form, copied his passport, wrote on the photocopied passport. He walked to

---

[2] The defendant has provided the Court with Cleveland's statements and testimony, labeled as 3-3B and describes his statements regarding the forms of identification as inconsistent, but no inconsistency is apparent. The issue is not discussed in his grand jury testimony and in his interviews he described his regular practice and what he recalls about the background check and identification procedures undertaken by Turner, but in no way do these contradict one another. Regardless, for the reasons explained herein, it has no relevance to defendant's crimes.

the back room and asked Turner about the passport which was ultimately approved as a form of identification by Palimere. Def. Ex. 3B p. 1. Any question regarding what second form of identification the defendant may have presented is simply not relevant because the crimes alleged in Counts I and II of the indictment were completed the moment he checked "no" in Section A for question 11e.

## II.   StarQuest Employees' Actions After the Defendant Completed Form 4473 §A Are Not Relevant

The government intends to call Gordon Cleveland to testify because he is the witness from Starquest who observed the defendant fill out Section A of the form 4473 where the defendant identified himself and stated that he was not an unlawful user of or addicted to a controlled substance. The other two individuals the defendant has subpoenaed, Turner and Palimere, cannot testify to that fact.  They, and not Cleveland, were involved in adding "DE VEHICLE REGISTRATION" to the form more than two years after the defendant filled it out.  Palimere exchanged text messages, again two years after the events that are the subject of the indictment, that indicate a bias against the defendant.  The addition of "DE VEHICLE REGISTRATION," and Palimere's political views are sideshows that the defendant is attempting to inject into the trial and are irrelevant.  The government does not intend to call either Turner or Palimere because they lack first-hand knowledge of the defendant's actions.  Their addition of "DE VEHICLE REGISTRATION" to the form after the defendant filled it out does not have "any tendency to make" those two facts, which are "fact[s] of consequence in determining" the charges—that he filled it out and that he said he wasn't an unlawful user of or addicted to a controlled substance—more or less probable.  F.R.E. 401.  Therefore, their testimony on the addition of "DE Vehicle Registration" to the form, years after the defendant's conduct occurred, is irrelevant and should be excluded.  F.R.E. 402.  *See* ECF 157, p. 4 (citing Model Criminal Jury Instructions, 3rd Circuit, § 6.18.922A (18 U.S.C. § 922(a)(6)); Model Criminal Jury

Instructions, 8th Circuit, § 6.18.924 (18 U.S.C. § 924(a)(1)(A) and § 6.18.922B (18 U.S.C. § 922(g)(3)).

Cleveland has been entirely consistent on the issue of identification in the two interviews where it came up. Defendants claims he has offered an "evolving story," but that characterization is not accurate based on defendant's own quotes from Cleveland's Jencks material. Supp. Resp. at 5. The only form of ID Cleveland saw was the passport. He never saw a Delaware vehicle registration and never claimed to. Instead, in both interviews he stated that Turner, who handled the background check, may have, but Cleveland didn't have first-hand knowledge of whether he did or didn't.

In his first interview on September 27, 2021, Cleveland told investigators:

> "He said he would provide the copy of the U.S. Passport and the firearm information on a sheet of paper to the person sending the background check in. Mr. Cleveland said he did *not* see the document **[a second form of identification]** with the ATF Form 4473 he was shown [by the Agent on September 27, 2021]." (TAB 3, 10/12/21 ATF EF 3120 at 2, ¶6) (emphasis added).

Supp. Resp. at 5 (emphasis added). The government at this point is obligated to point out that the defendant is again making malpresentations to the Court. In the above quote from his filing, the defendant inserted brackets into a real quote from the September 27, 2021, interview report for Cleveland. The defendant writes in those brackets that "Mr. Cleveland said he did not see the document [a second form of identification] with the ATF Form 4473 he was shown [by the Agent on September 27, 2021]. Supp. Resp. at 5. What defendant inserted into those quotes in brackets isn't accurate. The ATF never showed Cleveland "a second form of identification." If you look at the report, which defendant has and attached to his filing, it says that the only documents that were shown to Cleveland, at any point during the interview, were the following:

ATTACHMENTS:   Exh. 001:  Copy of ATF Form 4473 dated 10/12/2018 in the name of Robert Hunter BIDEN

Exh. 002:  Copy of Sales Receipt for Colt Revolver purchased by Robert Hunter BIDEN, at StarQuest on 10/12/2018

Exh. 003:  Copy of U.S. Passport in name of Robert Hunter BIDEN and description of firearm purchased on 10/12/2018.

Exh. 004:  Copy of the National Instant Criminal Background Check System (NICS) transaction number 100S8JTY7 approval for sale of firearm to Robert Hunter BIDEN on 10/12/2018

The ATF did not show Cleveland "a second form of identification," as the above list of documents make clear.  Defense counsel made that up.  What defense counsel chose not to quote from that report was the next sentence: "He said Jason Turner may have gotten the vehicle registration due to the U.S. Passport issue."

As defendant noted, Cleveland was not asked any questions about the form of identification that was used in the grand jury so there is nothing inconsistent between his first interview and his grand jury testimony.

Finally, when asked in his second interview on May 17, 2024, about identification he repeated that he only saw the passport and did not see a Delaware vehicle registration:

> When Biden presented his passport as identification, Cleveland went into the back and asked Ronald Palimere and Jason Turner if it could be used. Cleveland recalls going back out to Biden and saying something to the effect that if Biden was going to use a passport, they would need another form of identification. [] Cleveland thinks Biden went outside and got something, but he can not say with certainty. *Cleveland would not have paid attention to the paperwork side of the sale because he had already done his part by working with the customer and making the sale.* Cleveland does not think they would have competed the sale without the second identification, though. (TAB 3B, 5/17/24 Cleveland FD-302 at 1).

Supp. Resp. at 5.  In every interview Cleveland stated that  Turner handled the part of the form that covered forms of identification, Section B, and he, Cleveland, watched the defendant fill out Section A, where the defendant records information about himself and answers the required questions,

including the one that is the basis of the charges, namely, whether he was an unlawful user of or addicted to a controlled substance.  Here is what Cleveland said in his first interview:

5.  Mr. Cleveland stated in the case of this sale, BIDEN, the purchaser, filled out section A with his name:  Robert Hunter BIDEN.  Mr. Cleveland said questions 11.a-i, 12.a-d.2 were answered by BIDEN indicating "yes" to the firearm was for him (11.a) and "no" to the rest of the questions.  Mr. Cleveland stated BIDEN answered "no" to question 11.e indicating he was not an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance.  There is also a warning in 11.e stating the use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside. He agreed there would be no indication to know personal use unless the customer comes in smelling of marijuana.  Mr. Cleveland than stated the buyer, which in this instance is BIDEN, certified the form by signing his name in Section A.14 and dating Section A.15 on 10/12/18.

Consistent with his first interview, Cleveland said the following in the grand jury:

```
15      Q.   I'd like to just read one out for you.  Question E:
16   Are you an unlawful user of, or addicted to marijuana, or any
17   depressant, stimulant, narcotic drug, or any other controlled
18   substance.  Do you see that?
19      A.   Yes.
20      Q.   What did Hunter Biden say in response to that?
21      A.   He checked no.
22      Q.   And, again, he's personally filling this out, right?
23      A.   Yes.
```

Defendant claims "Palimere was in discussions with Cleveland and Turner on that date about what was and was not on the form and, thereafter, the sale would be made regardless of legal compliance concerns." Supp. Resp. at 7.  That is not true.  Defense counsel made that up, too.  And the best evidence it is not true is that defendant cites nothing from any grand jury transcript or interview report in support of that assertion in his supplemental response.  To be clear, no one has testified or stated in an interview—not Cleveland, not Turner and not Palimere—that they discussed

"what was and was not on the form."  All that was discussed was whether a U.S. Passport could be accepted as a form of identification and whether a Delaware vehicle registration was needed as a second form of identification.  And no one has testified or stated in an interview—not Cleveland, not Turner and not Palimere—that they discussed "the sale would be made regardless of legal compliance concerns," because no such discussions occurred.

Defendant states "Palimere's testimony also raises a fair inference of bias by all of the gun store employes to testify favorably for the government."  Supp. Resp. at 8.  It does not.  The defendant points out that Palimere was interviewed under a grant of immunity.  That is true but Cleveland, who is the only witness the government intends to call, did not.  Defendant points to no evidence of bias on the part of Cleveland because there isn't any.  And he can't cross-examine Cleveland using Palimere's text exchanges with other people.

Defendant argues, "The efforts by those who work at the gun shop to cover their tracks and hide their own unlawful actions, and to curry favor with the prosecution by testifying favorably, are certainly valid areas for cross-examination," does not apply to Cleveland, who is the only witness the government intends to call and the only witness who can testify that the defendant filled out the form. None of the grand jury transcripts or interview reports quoted by the defendant even suggest that Cleveland was involved in adding "DE VEHICLE REGISTRATION" to the form 4473 or had any knowledge that Turner and Palimere did that years after Cleveland sold the defendant the gun.

Once the defendant completed Section A, the crimes set forth in Counts I and II of the indictment were complete and this is unaffected by anything StarQuest employees did later in the day on October 12, 2018, or weeks or years later. Yet he made it even more clear in his latest filing that he wants to admit the annotated Form 4473 and call additional StarQuest employees to suggest that the gun seller never should have sold him the gun. *E.g.*, Supp. Resp. p. 9 ("the gun shop seemingly forced an unlawful sale through to make a profit, even though it knew it violated the procedures, rules,

7

and instructions on the form itself to do so"). There is no support for this argument and it is not relevant, but even if it were, any slight probative value is substantially outweighed by a danger of confusing the jury. Fed. R. Evid. 403. There is no evidence to suggest that anyone other than the defendant checked the boxes in Section A. If the defendant had answered the questions on the form truthfully, that would have ended the inquiry. Permitting the defendant to put the gun seller employees on trial for things that happened after he completed his false statement crimes is a patent attempt at nullification.

The evidence is entirely consistent and uncontroverted that if the defendant had answered the question 11e truthfully, that would have ended the sale. Cleveland testified that he would not sell a gun to someone who answered "yes" to 11e. Def. Ex. 6A, 17:6-22. There is no evidence to the contrary; the sale of the gun was dependent upon the defendant answering "no" to the question regarding his unlawful drug use or addiction. The question of whether or when or what second form of identification he provided is irrelevant. The seller's responsibility to complete Section B of the form is wholly separate and apart from the defendant's obligation to answer the questions in Section A truthfully. To permit the defendant to introduce a later version which showed a recordkeeping number added and a notation about the second form of identification would not be relevant and would create a mini-trial targeting the gun seller as explained in the government's motion. In fact, the defendant now vaguely states that the store should not have sold the gun because they "knew who Biden was." Supp. Resp. at 11.  It is not clear what "legal obstacle" the gun shop "look[ed] past" in order to make the sale, but what is evident is the defendant's transparent effort to vilify the gun seller to distract the jury from the elements of the offenses that – with respect to Counts I and II, were clearly met when he completed Section A of the form 4473.

Unlike the case the defendant cites, *United States v. Versaint*, 849 F.2d 827, 832 (3d Cir. 1988) where there was a misidentification of the defendant and failure to admit a report evidencing

same "impaired [the defendant's] substantial right of introducing significant relevant evidence," the evidence here is neither relevant nor significant. Palimere was not involved in selling the gun to the defendant; he was next door and only consulted that day regarding the use of a passport for identification. Turner was involved only in the background check aspect that day. Whatever action was taken after the fact with respect to the form is immaterial. Therefore neither Palimere nor Turner have any relevant testimony to offer.

### III.  Communications About Political Opinions Two Years After the Crimes Alleged Are Not Relevant & Must Be Excluded

Among the items the defendant emailed to the Court on Friday night were proposed exhibits – identified as defense tabs "6," "6A," "6B," and "6C" - which suggest that two witnesses are politically motivated. These selected portions[3] of communications by  Palimere to two friends and also to Sgt. Clemons – were made two years after the events in question when defendant's father was a political candidate. The defendant inaccurately summarizes them as referring "to the form, a plan to send it to others, needing to get their stories straight about what occurred in 2020, and wanting the gun sale issue and the form exposed during the Presidential campaign." Supp. Resp. p. 8 and n. 3. Nevertheless, he clearly wishes to confuse the jury by introducing these spliced, non-relevant communications to incite prejudice and emotion among the jury to distract from the elements of the crimes that were complete years before.

Thanks to this latest filing, the defendant's strategy is now more apparent. He has returned to a claim that this prosecution was trumped up and politically motivated. But to suggest that the gun store owner's political opinions, expressed two years after the fact, have bearing on whether or not he lied about his drug use on the form 4473 on Section A is absurd and must be excluded under the

---

[3] The proposed exhibits at tabs 6-6C also do not accurately represent the communications as they have picked and chosen particular messages and excluded other potentially relevant or innocuous items and created a string of messages that are without context.

rules of evidence. There is no evidence to suggest these communications played any part in the witnesses' actions or inactions with respect to the defendant. And there is no evidence that the defendant was the target of political animus by either witness.

The fact that witnesses in this case held political beliefs about which they communicated *two years* after the defendant's alleged crime cannot possibly have any relevance to any fact at issue. The defendant should therefore not be permitted to present irrelevant, confusing and unduly prejudicial facts regarding witnesses' political views to the jury. *See* Fed. R. Evid. 401, 402.

Even if the communications were somehow relevant – and they are not – such evidence is unduly prejudicial to the government. Courts have excluded evidence at trial of a witness's bias under Fed. R. Evid. 403 where admission would confuse the issues before the jury. *E.g.*, *Blair v. United States*, 401 F.2d 387, 390 (D.C. Cir. 1968) (affirming trial court's conclusion that the probative effect of the impeaching evidence was far outweighed by the potential prejudice).

Evidence of bias that arises years after the relevant time period risks misleading the jury and confusing the issues. Fed. R. Evid. 403. Permitting the defendant to introduce irrelevant evidence that appeals to political passions will derail the search for truth and jeopardize jurors' impartiality. The defendant must be precluded from making any attempt to admit such exhibits or elicit such testimony because there is no evidentiary foundation for such contentions and the communications are not relevant to any material issue. The jury must be permitted to reach a true verdict based on relevant evidence. It is well established that "it is improper to 'needlessly arouse the emotions of the jury.'" *United States v. Ayala-Garcia*, 574 F.3d 5, 16 (1st Cir. 2009) (quoting *United States v. Robinson*, 473 F.3d 387, 397 (1st Cir. 2007) and *United States v. Pirovolos*, 844 F.2d 415, 425 (7th Cir.1988)).The case the defendant cites for the idea that prior misconduct may be used for impeachment is of no help to his argument. *United States v. Schwab*, 886 F.2d 509, 513 (2d Cir. 1989) actually held that cross-examination about tax fraud that resulted in acquittal 18 years prior was *__improper__* but harmless error,

10

explaining that under those particular " circumstances, cross-examination concerning the tax matter was beyond the discretion confided in the trial judge by Rules 608(b) and 403." Here, the situation is even more distinguishable because Palimere's alleged actions and communications upon which the defendant is focused are subsequent, not prior to, the defendant's crimes.

Having failed to persuade this Court that there are defects in the prosecution related to prosecutorial selectiveness or vindictiveness or due to a Russian malign influence campaign, the defendant has adjusted course only slightly on the eve of trial: blaming his crimes on the gun shop to which he lied to purchase his firearm based on actions taken or communications made after his crimes were complete. Like his other after-the-fact politicization and political bias narratives, the defendant's latest leaves out reality: the defendant's ownership of the gun came to light not because of anyone affiliated with the gun shop. It was revealed when the defendant's own girlfriend notified a shopkeeper who called the police. The report and investigation that resulted and eventually led to the charges in this case were not the result of a conspiracy between the gun shop and the authorities based on political animus toward the defendant or his family.

The proposed exhibits at tabs 6-6C invite the jury to decide this case on an improper basis, but the defendant is not permitted to make assertions which could lead to jury nullification or confusion of the jurors' role in determining the facts, not the law. *See e.g.*, Third Circuit Model Jury Instruction 1.02 "Role of the Jury." Because the proposed exhibits lack any probative value and even if it did not, the prejudicial impact to the government substantial, exclusion is required.

Permitting the defendant to show evidence of an irrelevant witness' political opinion expressed two years after the relevant time period is unfairly prejudicial and not admissible. In excluding other types of irrelevant bias evidence, such as racial or religious bias, they explain that it is incompatible with a fair trial where the jury is being inflamed to allow their own bias and emotion to rule. *See, e.g., Calloway v. Hayward*, No. 08-CV-01896, 2017 WL 363000, at *4 (E.D. Cal. Jan.

24, 2017) (precluding a plaintiff from introducing evidence of racial discrimination where bias was "irrelevant to [a party's] claims."); *see also Martinez v. City of Chicago*, No. 14-CV-369, 2016 WL 3538823, at *13 (N.D. Ill. June 29, 2016) ("Although racial bias could be relevant to a claim of false arrest, there is no evidentiary basis for introducing allegations of racial animus into this trial"); *Beyene v. Hilton Hotels Corp.*, No. CV 08-1972 (BJR), 2012 WL 13214662, at *2–3 (D.D.C. Nov. 13, 2012) (excluding references to religion or national origin where the claim was negligent retention after the plaintiff-employee reported co-workers for making threats against then-President George W. Bush because, under Fed. R. Evid. 403, such evidence would have little probative value and a high likelihood of being "potentially inflammatory.")

## CONCLUSION

The government thus requests that the Court enter the attached proposed order excluding the annotated 4473 and precluding the defense from making statements, arguments or engaging in questioning that alludes to witnesses' political bias, including, but not limited to his proposed exhibits at tabs 6-6C.

Respectfully submitted,

DAVID C. WEISS
Special Counsel
United States Department of Justice

By:

Derek Hines

_____
Derek E. Hines
Senior Assistant Special Counsel
Leo J. Wise
Principal Senior Assistant Special Counsel
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
771-217-6091

12

Dated:  June 2, 2024