IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal Action No. 1:23-cr-00061-MN |
| ROBERT HUNTER BIDEN, | ) ) ) | |
| Defendant. | ) ) ) | |

**MR. BIDEN'S SUPPLEMENT TO HIS OPPOSITION TO THE SPECIAL COUNSEL'S MOTION *IN LIMINE* TO EXCLUDE THE ACTUAL STORED GUN FORM**

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

Biden files this supplement in response to the Special Counsel's motion to exclude the actual stored Form 4473 as it was delivered to the ATF as part of this investigation in 2021. This document should not be kept from the jury on the relevant issues and proper cross-examination of witnesses in this trial. To start, Count 2 charges that Biden caused a false statement "to be kept in the records" of a Federal Firearms Licensee (the gun shop)[1] and the form the Special Counsel seeks to exclude is the *very* form that is stored and delivered to the ATF when requested for this investigation in 2021. 18 U.S.C. § 924(a)(1)(A); *see Abramski v. United States*, 573 U.S. 169, 174-75 (2014). Instead of presenting the doctored form that is the given to the ATF in 2021 as part of this investigation, the Special Counsel seeks to introduce only some prior version of that document, which is *not* the record provided when requested in 2021. This actual form is not just relevant evidence under Rule 403, it is an essential aspect of this charge. The Special Counsel cannot prove Count 2 without introducing the form as was stored and provided when requested in the course of this investigation, and there would not be a proper basis for the Special Counsel to then claim that the form that was tampered with is not relevant.

The doctored form also is relevant to all counts because it goes to the credibility of the gun shop employees who sold the gun to Biden, as to what occurred when that purchase was made. The Special Counsel wants to call one gun shop employee to testify about how Biden was properly asked to fill out the form and that he completed it, but the doctored form shows the gun shop employees and owner do not follow the law and were willing to break it to make this sale. Even in civil cases, where questions turn upon whether a document was the product of fraud or forgery, restricting evidence on such subjects offends fundamental due process principles. *In re Bankers*

---

[1] The Biden Indictment reads: "FFL holders are required by law to *maintain a record*, in the form of a completed Form 4473, of the identity of the actual buyer of firearms sold by the FFL holder, including the buyer's home address and date of birth." (D.E.40, Indict. ¶5) (emphasis added).

1

*Trust Co. v. Bethlehem Steel Corp.*, 752 F.2d 874, 890 (3d Cir. 1984) ("Due process mandates that a judicial proceeding give all parties an opportunity to be heard on the *critical and decisive allegations* which go to the *core* of the parties' claim or *defense* and to present *evidence* on the contested facts.").

The form the Special Counsel seeks to exclude is the actual stored record retrieved as part of *this* investigation on September 21, 2021 by ATF Agent Veronica Hnat, nearly three years after Biden purchased the gun. (*See* TAB 2 at 1.) Even if the gun seller kept an earlier draft, the "original" form as defined in the rules and form itself was that as it existed in 2021. The form itself directs the gun seller as follows about keeping the form: "After the transferor/seller has completed the firearms transaction, he/she must make the completed, *original* ATF Form 4473 . . . . part of his/her *permanent* records. Such Forms 4473 must be retained for at least 20 years and after that period must be submitted to ATF." (Form 4473 at 3) (emphasis added). Notably, the form actually accounts for and sets out the proper way to deal with the possibility that there is a mistake or need for something else to be put on the form after it is first filled out and states:

> If the transferor/seller or the transferee/buyer discovers that an ATF Form 4473 is incomplete or improperly completed after the firearm has been transferred, and the transferor/seller or the transferee/buyer wishes to correct the omission(s) or error(s), photocopy the inaccurate form and make any necessary additions or revisions to the photocopy. . . . Whoever made the changes *should initial and date* the changes. The corrected photocopy should be attached to the original Form 4473 and retained as part of the transferor's/seller's permanent records.

(*Id.*) (emphasis added). This process, spelled out in detail and surely familiar to the gun shop dealer, was not followed. Instead, the owner attempted to conceal the changes initially as part of an effort to get the story about Biden's gun purchase into the media before the 2020 election. (*See* TABs 6 – 6C, Ron Palimere Texts). Nevertheless, that process was not followed and the doctored

form was stored and presented to the government at though it had been the form filled out as it was on October 12, 2018.

By September 2021, it was clear to the government the altered form StarQuest provided to Agent Hnat was different in two material respects from the version the Special Counsel seeks to introduce at trial as being in existence in some form on October 26, 2018, when some version was scanned and sent by the store to the ATF, which at that time was seeking only to trace what was then a missing handgun. Notably, it was not sent to the ATF at the time for this investigation. The first material difference was the addition of the seller's transaction serial number on page 1, and the second material change was the addition of "DE VEHICLE REGISTRATION" at line 18.b on page 2. Whenever those changes occurred (and we know now from Jencks material by whom), they were not done in accordance with the law or the form's directions for making such additions: no one initialed the change and no additional document was attached to the form. In later communications, the store owner referred to his efforts as being "behind the scenes" (TAB 6B, 10/29/20 Palimere-Clemons Texts at 6), and that phrase certainly opens the questioning of what was involved in those actions.

The Special Counsel's Jencks material also now makes certain that various parts of the form first used on October 12, 2018 were filled out by different people at different times, even on that day. What parts were filled out by whom and when—on October 12 and on days thereafter— are subjects for relevant and proper examination. The gun shop witnesses—Gordon Cleveland (gun salesman), Ron Palimere (gun shop owner), and Jason Turner (second salesman)[2]—were each

---

[2] Because the Special Counsel intends to call only Cleveland as a witness, but likely interviewed and has interview memoranda by other law enforcement who interviewed Palimere and Turner, the Special counsel produced only Jencks material for Cleveland (other than the only recently written FBI 302 of Palimere after the issue was raised at the May 14 status conference). Given the issues raised about the form's accuracy and reliability, defense counsel believes statements by

3

involved in discussions about the form on the day of the sale and whether the passport Biden presented was an adequate ID. The testimony of all who were involved that day is relevant and, again, each should be asked about what "record" was being kept at the store as required. Questioning all would include whether, when, and the circumstances in which Biden checked the boxes at the heart of two charges and, when he was asked to sign the form, what kind of ID he presented at the point of sale. The Form 4473 as it is stored and, as it was provided to the government as a stored record in 2021, can be used to establish those facts.

<u>Gordon Cleveland</u>

Cleveland (a government witness) sold Biden the handgun on October 12, 2018 and gave him the 4473 form to fill out. Yet, as to what was and was not on the form, who completed it and when, Cleveland offers divergent explanations at different points in time.

Cleveland was interviewed by ATF Agent Hnat on September 27, 2021, just *six* days after the actual Form 4473 (with additions) was obtained by ATF, and again on October 7, 2021. The interview notes reflect:

> Speaking of his general practice he said, "He then gathers the information provided by the customer for the background check, the customers *two forms* of identification . . ." (TAB 3, 10/12/21 ATF EF 3120 at 1, ¶2).

> With specific reference to Biden, "He said he would provide the copy of the U.S. Passport and the firearm information on a sheet of paper to the person sending the background check in. Mr. Cleveland said he did *not* see the document [a second form of identification] with the ATF Form 4473 he was shown [by the Agent on September 27, 2021]." (TAB 3, 10/12/21 ATF EF 3120 at 2, ¶6) (emphasis added).

> Now being shown the added information, "He said Jason Turner may have gotten the vehicle registration due to the U.S. Passport issue." (TAB 3, 10/12/21 ATF EF 3120 at 2, ¶6).

---

Palimere and Turner (if they exist) would be *Brady* material and asked again (after the initial discovery requests in October 2023) for *Brady* and *Giglio* material after the May 14, 2024 status hearing and again specifically on May 31, 2024. The Special Counsel has not responded.

4

Later, under oath before a grand jury in April 2022—months after the altered Form 4473 was obtained and after he was shown it on September 27, 2021—Cleveland was asked no questions about the identification issue, the added registration information, or the two forms. (*See* TAB 3A).

But after issues concerning the different versions of the form were raised at the May 14, 2024 status conference, the Special Counsel went back to Cleveland and this is what was explained:

> When Biden presented his passport as identification, Cleveland went into the back and asked Ronald Palimere and Jason Turner if it could be used. Cleveland recalls going back out to Biden and saying something to the effect that if Biden was going to use a passport, they would need another form of identification. [] Cleveland thinks Biden went outside and got something, but he can not say with certainty. *Cleveland would not have paid attention to the paperwork side of the sale because he had already done his part by working with the customer and making the sale.* Cleveland does not think they would have competed the sale without the second identification, though. (TAB 3B, 5/17/24 Cleveland FD-302 at 1).

Thus, even with Cleveland's evolving story, he cannot say that Biden presented the vehicle registration, but simply assumes that someone else at the gun store would have obtained a second form of identification. Biden should be allowed to challenge this *assumption* that the gun store would have followed the law in obtaining a second form of identification. This second form of identification is not (nor is any change initialed) on the form the Special Counsel wants to use that is seemingly contemporaneous with the transaction, but added only years later in an apparent attempt to hide the fact that the gun shop was willing to ignore the rules and instructions on the form itself to make the sale. The form the defense seeks to use to examine witnesses did not have any new ID attached and did not have any initials of the person who made the changes. If the gun shop was willing to ignore the law to make the sale when it came to obtaining the proper identification, it is relevant and part of Biden's defense to explore whether the gun shop would look past other legal obstacles to making the sale—including a disqualifying answer to one of the Section 922(g) questions on the form.

Other evidence shows Cleveland's purported assumption that someone in the gun shop would have ensured legal compliance with the sale is wrong. As further described below, Palimere made clear no two forms of identification were presented by Biden that day. Cleveland cannot say otherwise, as he did not see the second form of identification and now admits he "would not have paid attention to the paperwork side of the sale" that day. (TAB 3B, 5/17/24 Cleveland FD-302 at 1).

Ron Palimere

Palimere was not an absentee owner in this case and possesses critical knowledge that explains who, when, and why the original Form 4473 was altered. He was in the store on October 12, 2018. As to Palimere, Cleveland said, "the only person who has access to the form would be Ron Palimere, the owner." (TAB 3, 10/12/21 ATF EF 3120 at 2, ¶15). Palimere was in discussions with Cleveland and Turner on that date about what was and was not on the form and, thereafter, the sale would be made regardless of legal compliance concerns. He also could testify about what was on the form when it was shown to him and Turner by Cleveland that day (e.g., whether the boxes were all then filled out, whether there was a signature at that time, and whether these questions were explained to Biden or rushed through in a pro forma manner to make the sale). The very issue of his green lighting the sale, without a proper form of ID and then when he decided to alter the form by improperly adding missing information to it, also is subject to examination, again with reference to the kept record that Palimere then decided to alter.

On this issue, in the one interview memorandum the government did provide (after the Special Counsel gave Palimere a proffer agreement following the May 14 status conference), Palimere offered his own version of what happened that day and after. As to October 12:

> Palimere was sitting at his desk in the back and Cleveland said something to the effect of, "Hey, Hunter Biden's here. He wants to use his passport." . . . Palimere wanted to get the

> sale completed and get Biden out of the store, so Palimere said yes to using the passport as identification. . . . No one thought to get supplemental information because everyone knows who lives at [*redacted*]. . . . If a second form of identification with an address was presented by Biden, Palimere was not present when it happened. (TAB 4, 5/17/24 Palimere FD-302 at 2).

And as to the alterations to the original form:

> Palimere does not know when the [seller's number] was added to the form, but it could have been sitting in the pile on October 26, 2018, when Palimere scanned and sent it to the ATF SA James Reisch. . . . Palimere did not handle the form again for three years and until he was requested to turn it over to ATF SA Veronica Hnat on September 23, 2021. In 2021, Palimere had significant media attention and he had news crews, Tucker Carlson, the ATF and the FBI contacting him. . . . Palimere was contacted by Hnat who said she wanted to come by to take custody of the Form 4473. Palimere ultimately went to the ATF building in Wilmington, Delaware, and turned over the annotated 4473. . . . *After he was contacted* by Hnat, Palimere reviewed the form and he can not recall exactly how it happened, but believes that one of his employees brought it to Palimere's attention that the form needed to be annotated. Palimere saw that the box labeled "18.b Supplemental Government Issued Documentation" was not complete. Palimere cannot recall who brought it up, but does not believe it was Cleveland . . . . Once it was brought to his attention, Palimere had conversations with Jason Turner (hereinafter Turner) about it. Palimere decided to write Delaware registration in the box labeled 18.b. Palimere does not know why that was chosen but he knew it had to be an official document and it was all they could think of. Turner was the one who wrote Delaware vehicle registration in the box. Palimere thinks that if Biden presented a vehicle registration on the day of the sale, it would have been documented on the certified 4473. . . . Palimere felt it was necessary to annotate the Form 4473 because he felt they were going *to get in trouble* just for going up against Biden. (TAB 4, 5/17/24 Palimere FD-302 at 3–5) (emphasis added).

Palimere states plainly that it was when the ATF agent sought the form in September 2021 as it was kept by the store as required by law was when he made the additions. That statement makes the form an essential piece of evidence. Palimere also explains his reason for altering the form to avoid "get[ting] in trouble" for violating  law, and he directly refutes Cleveland's assumption that Biden must have presented a second form of identification because Palimere said it would have been documented on the form initially if the store received that identification from Biden. It also reveals a now-exposed attempt by the gun store to fabricate a false narrative about the gun sale. Palimere said the addition of the seller transaction serial number ("5,653") may have been added on October 26, 2018. (TAB 4, Palimere FD-302 at 4). He said the vehicle registration

7

reference was added in 2021. Yet, the government provided WhatsApp communications from October 2020 and February 2021 between Palimere, friends of his, and then-Delaware state trooper Vincent Clemons[3] (*see* TABs 6 – 6C), all of which refer to the form, a plan to send it to others, needing to get their stories straight about what occurred in 2020, and wanting the gun sale issue and the form exposed during the Presidential campaign.

Palimere's testimony also raises a fair inference of bias by all of the gun store employees to testify favorably for the government. Palimere received a form of immunity in exchange for being interviewed on May 16, 2024, and the government has known about the gun store's rule violations for two-and-a-half years now and yet no regulatory or enforcement action has been taken against the store or its employees. The efforts by those who work at the gun shop to cover their tracks and hide their own unlawful actions, and to curry favor with the prosecution by testifying favorably, are certainly valid areas for cross-examination. *See, e.g.*, *United States v. O'Brien*, 738 F. App'x 38, 42 (3d Cir. 2018) ("Inquiring into a cooperating defendant's expectations for leniency is appropriate, as potential leniency in exchange for testimony provides a witness 'a motive for favoring the prosecution in his testimony.'") (citations omitted); *United States v. Schwab*, 886 F.2d 509, 511 (2d Cir. 1989) (when evidence of a witness' prior misconduct is properly offered to show

---

[3] Not to be lost is the fact that Clemons was the Delaware State Police officer who first arrived at Janssens' grocery store on October 23, 2018 when Hallie Biden threw a bag containing the handgun into a trash can in front of the store. It was Clemons who took statements about the handgun from both Hallie and Hunter Biden and was part of filling out an official police report on the issue. Two years later, he is in the communications with Palimere about the Form 4473, one of which states: "Yep your side is simple - Hunter bought a gun from you, he filled out the *proper forms* and the Feds approved him for a purchase." (emphasis added). Palimere later responded, "I'll keep it short and sweet as well: Hunter bought a gun. The police visited me asking for verification of the purchase and that's all I can recall from that day. It was over 2 years ago." (TAB 6B, 10/26/20 Palimere-Clemons Texts at 4, 6.) The reference to filling out the "proper forms" is not lost on defense counsel given what transpired thereafter. And, despite the importance of Clemons (e.g., the person who actually took the statements), the Special Counsel is foregoing him as a witness to call two other Delaware officers instead.

8

bias, that evidence "is not limited by the strictures of Rule 608(b)"); *United States v. Eisenberg*, 773 F. Supp. 662, 684 (D.N.J. 1991) ("Evidence that might be used to impeach Government witnesses by showing bias or interest has been deemed to fall within the purview of *Giglio*.") (citations omitted).

### Jason Turner

The defense also has subpoenaed Turner because he too was involved in decisions made concerning the form in October 2018, according to Cleveland and Palimere, and, according to Palimere, then in 2021, when Turner added the reference to "DE VEHICLE REGISTRAION" at line 18.b. (*See* TAB 2). If the Special Counsel has interviewed or taken statements from Turner, he has not provided those to defense counsel in discovery or as part of the specific *Brady* requests that were made.

### Admissibility for Impeachment

The Special Counsel seeks to present a sanitized narrative of a law-abiding gun shop that meticulously followed the law even when that would cost it a profitable gun sale and tell the jury it should believe Cleveland when he says Biden completed the form because that is the legal procedure the gun shop follows. But the actual Form 4473 stored by StarQuest was doctored by the gun shop to hide the fact that the gun shop seemingly forced an unlawful sale through to make a profit, even though it knew it violated the procedures, rules, and instructions on the form itself to do so. Cleveland's assumption that the gun shop would follow the law, even if it were a sincerely held belief, is simply wrong and is relevant and part of Biden's complete defense to demonstrate that. Moreover, it turns out that profiting off an improper gun sale was not the gun shop's only motive. The gun shop staff recognized Biden and the newly-disclosed evidence from the Special

9

Counsel shows the store's owner sought to politicize the sale to influence the election, which provides further evidence of bias.

The Sixth Amendment affords Biden broad latitude to confront the witnesses against him, and he has a right to present a complete defense. *See, e.g.*, *Holmes v. South Carolina*, 547 U.S. 319, 337 (2006) (noting "a criminal defendant's right to have "'a meaningful opportunity to present a complete defense'") (citation omitted); *Davis v. Alaska*, 415 U.S. 308, 316 (1970) (reversing Confrontation Clause violation for limiting cross-examination, explaining "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness."); *United States v. Chandler*, 326 F.3d 210, 219 (3d Cir. 2003) (reversing for a Confrontation Clause violation for restricting cross-examination as to the witnesses' "motivation in testifying"). To put forward his complete defense, Biden must be allowed to introduce the actual form stored by the gun shop (and all copies of it) to test Cleveland's assumption and claim that the gun shop followed the rules and would not make an unauthorized sale. A jury that understands the gun shop is willing to break one law to make an unauthorized sale may conclude it would be willing to look past other legal obstacles in order to make that same sale.

Moreover, Biden's actions on the day of the sale in 2018—including the issue of materiality of any statement he made on the form 4473 in the presence (or not) of Cleveland—are ripe areas to be examined and to question the gun shop employees about. Count 1 requires Biden to have "knowingly made a false and fictious written statement . . . with respect to a fact *material* to the lawfulness of the sale of the firearm." (D.E.40, Indict. ¶7) (emphasis added). If Cleveland "would not have paid attention" to the paperwork (as he told investigators he did not), and Palimere and Turner agreed to alter the very form on which the alleged false statement was made and later stored

10

by the shop, then probing the issue of materiality of that statement (and on which form it was made) are proper areas for examination at trial.

The Special Counsel's invites reversible error in moving to exclude evidence that would allow Biden to counter the narrative advanced by the Special Counsel through witnesses like Cleveland. For example, in *United States v. Versaint*, the Third Circuit reversed a conviction for the exclusion of a police report that the defense could have used to show inconsistencies in what a testifying witness claimed to have seen and what the witness previously told police officers, as recorded in the police report. 849 F.2d 827, 832 (3d Cir. 1988) (Higginbotham, J.). The document the Special Counsel seeks to exclude in Biden's case is powerful documentary evidence that refutes Cleveland's claim that the gun store must have asked for Biden's identification because it would have followed the law. Instead, it—along with other evidence—shows the gun shop knew who Biden was and was willing to ignore the rules and the form's instructions that, if properly followed, should have prevented a sale. But the shop owner wanted the sale to go through, and afterward, took steps to cover up that violation and pass it off as though nothing had occurred. Demonstrating the gun shop did these acts provides a basis for the jury to question what happened on October 12 and after, when Biden filled out what portions of the form, what record was "kept" as required by the charge in Count Two, whether a witness is credible in his testimony, and whether a witness is willing to gloss over the events to avoid "getting in trouble" or any adverse action being taken against him. These actions and collaborations at the time of the sale and after among those who worked at the gun store to create and send a false version of the form to the government certainly is probative of each witness's truthfulness. This issue is ripe for examination and it would be wrong to exclude this evidence.

Dated: June 1, 2024                                   Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com
CMan@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2024, I filed the foregoing Supplement with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*

13