**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

_____

UNITED STATES OF AMERICA

        v.

ROBERT HUNTER BIDEN,

        Defendant.

_____

)
)
)
)
)
)
)
)
)
)

Criminal Action No. 1:23-cr-00061-MN


**MR. BIDEN'S RULE 29 MOTION FOR ACQUITTAL UNDER
THE SECOND AMENDMENT AS APPLIED AND THE FIFTH AMENDMENT**

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

_Counsel for Robert Hunter Biden_

Mr. Biden moves this Court for a Rule 29 judgment of acquittal under the Second Amendment, as applied to him, and under the advance notice requirement of the Fifth Amendment's Due Process Clause, just as he advised this Court he would do in his response to the Special Counsel's trial brief.  (D.E.174 at 6.)  Before trial Mr. Biden moved to dismiss the indictment as facially unconstitutional under the Second Amendment (D.E.61), which this Court denied while noting "to the extent that Defendant seeks in his motion to raise a challenge to the constitutionality of § 922(g)(3) as applied to him, that request is denied without prejudice to renew on an appropriate trial record."  (D.E.114 at 9.)  Mr. Biden brings that as-applied constitutional challenge now.[1]

## ARGUMENT

## I.   THE INDICTMENT IS UNCONSTITUTIONAL AS APPLIED TO MR. BIDEN UNDER THE SECOND AMENDMENT

Although the Court denied Mr. Biden's facial Second Amendment challenge because the statutes at issue could be constitutionally applied in some instances, the Court did not identify which instances where the statutes could be constitutionally applied or draw a clear line separating constitutional from unconstitutional applications of the statutes.  The Court did, however, identify recent decisions from the Fifth and Eight Circuits that did draw that line, albeit in potentially different places.  *United States v. Veasley*, 98 F.4th 906, 910 (8th Cir. 2024); *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023).  This indictment is unconstitutional as applied under either decision.

---

[1] In doing so, Mr. Biden does not waive or abandon his position that the indictment should be dismissed because the charges are facially unconstitutional under the Second Amendment.  Rather, Mr. Biden maintains that even assuming those laws can be constitutionally applied in some circumstances, they cannot be constitutionally applied to him.

A. ***Daniels* Test**

The Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), created a sea change in how the Second Amendment is interpreted. *Bruen* clearly hold, as the Third Circuit acknowledges, that the Second Amendment is presumed to protect the right of any American citizen to possess a firearm and the only exceptions are those that existed when the Second Amendment was adopted. *See Range v. Att'y Gen.*, 69 F.4th 96, 100 (3d Cir. 2023).

Applying *Bruen*, *Daniels* found what the Fifth Circuit believed was valid historical precedent for prohibiting firearm possession while actively intoxicated, but it noted Section 922(g)(3) is "substantially broader" because it applies to "an undefined set of 'user[s],' even if they are not under the influence," and "there is a considerable difference between someone who is actively intoxicated and someone who is an 'unlawful user' under § 922(g)(3)." 77 F.3d at 347–48. The Fifth Circuit upheld an as-applied constitutional challenge and reversed a conviction for a defendant who used marijuana *14 days per month*, but where "the government presented no evidence that Daniels was intoxicated at the time he was found with a gun." *Id.* at 348.

*Daniels* found historical precedent for an exception if a person was actively intoxicated and in possession of a firearm but noted that among these laws "none barred gun possession by regular drinkers," rather they focused on "the misuse of weapons while intoxicated." *Id.* at 345. Daniels concluded: "The government has failed to identify any relevant tradition at the Founding of disarming ordinary citizens who consumed alcohol." *Id.* at 346.

Importantly, *Daniels* rejected the government's claim "that Daniels—a repeat marihuana user—was presumptively dangerous enough to be disarmed." *Id.* at 350. No "historical evidence suggests that when the Founders ratified the Second Amendment, they authorized Congress to

3

disarm anyone it deemed dangerous." *Id.* at 350. The founding era references "left ordinary drunkards unregulated" and "neither Congress nor the state disarmed alcoholics, the group most analogous" to modern day drug users. *Id.* at 354–55. Consequently, "the government's theory of danger-based disarmament falls apart." *Id.*

The case against Mr. Biden fails for the same reason that the prosecution failed in *Daniels*. Given the evidence that was admitted in the government's case, there is plenty of evidence of when Mr. Biden was using drugs, including his own admissions in his book. By contrast, what the government calls evidence of drug use during the time period in which he owned a gun is very different: no one witnessing him using drugs, no texts or other messages arranging drug buys, no pictures of drugs, no picture of scales, no picture of Mr. Biden using, nothing meaningful at all. The fact that such evidence is plentiful when Mr. Biden is using and is tellingly absent in this time frame further confirms that he was not using drugs then.

What evidence there is are two texts after the gun sale where in the midst of Hallie Biden calling to arrange to meet Mr. Biden, he says he is "waiting for a dealer named Mookie" at the 7-11 or "sleeping on a car smoking crack" on a public street. As Ms. Biden acknowledged she knew Mr. Biden lied when trying to avoid seeing her, especially in the context of these texts indicating she was asking him about being with another woman.

There is no evidence that there ever was a drug dealer named Mookie in Mr. Biden's life, such as the text messages used when buying drugs from actual drug dealers. Nor is there any evidence of Mr. Biden sleeping on his car in a public street, which surely someone would have noticed. There is no video of Mr. Biden at the 7-11 or CCTV of him near the intersection where he was supposedly sleeping on his car, no location evidence (and if there was, there are bars and restaurants in the areas as well) , or any other evidence. Even Ms. Biden testified that she had no

4

evidence any of this was true or whether she could believe what Mr. Biden was telling her.  6/6/24 Tr. at 865 (explaining Mr. Biden often was untruthful with her and would avoid telling her his whereabouts); *id.* at 879–80 (did not know if the claims in these two texts were true).   She explained her questioning of him that led to those texts seeking his whereabouts was a suspicion that he was with another woman.  *Id.* at 879, 958.

The government continually misstates its obligation as met by showing Mr. Biden "owned" the gun, but that is not sufficient.  6/4/24 Tr. at 326-27 ("We're here today because the defendant, Robert Hunter Biden, chose to illegally own a firearm.  His ownership of that firearm was illegal because he was a user of crack, and a drug addict.  The law prevents users and drug addicts from owning a gun."); *id.* at 327 (addressing whether someone "can lawfully own a firearm"); *id.* at 331 ("The evidence will show that over the course of the next 11 days, the defendant owned that firearm before it was taken from him."); *id.* at 339 (discussing evidence that "relates to his ownership during the ensuing 11 days"); *id.* at 341 ("Again the reason he only had the gun for 11 days was because Hallie took it from him, not because he took any other steps to stop owning it."); *Id.* at 342 ("He is charged with owning a gun.").

The statute does not prevent anyone from owning a gun, it makes it a crime for certain people to "ship or transport. . .or possess" a firearm, but it does not prohibit ownership.  18 U.S.C. § 922(g)(3).  Courts regularly require a defendant "not possess a firearm" as a condition of release, for example, but that does not require persons who have been charged to immediately sell their firearms.  Administrative Office of the U.S. Courts, Form AO 199B § 7(k) (Dec. 2020).  Typically, this requires a friend or family member who does not live with the defendant to take possession of firearms owned by the defendant while the conditions or release are in effect.  But under the Special Counsel's equation of ownership with possession, all these defendants would be violating their

5

conditions of release.  Likewise, possession under Section 922(g) is a prohibition against physical possession and not merely ownership.

Under the canon that statutes should be construed to avoid constitutional questions, that is how Section 922(g) should be construed to avoid the obvious Second Amendment problem. *Daniels* made clear that there was no founding era exception disarming people who were regularly intoxicated; they could own and possess guns.  According to *Daniels*, gun owners could only be punished for possession if they, at a minimum, physically possessed the firearm.  That is like modern DUI laws where we look at whether someone is intoxicated while driving, and do not ask whether they drank a day or more before getting behind the wheel.  The Second Amendment would prohibit punishing Mr. Biden for gun ownership apart from his physical possession while actively using drugs.  The definition of a drug user this Court proposes goes far astray from the historic exception by deeming someone a drug used who may have last used "within a matter of days or weeks before," which not only violates the Second Amendment, it also violates the fair notice requirement of the Fifth Amendment.  (D.E.218 at 21.)

Moreover, as stated above and about which the Court is aware, unlike other periods the government spent the majority of its case showing, there is no one who testified that Mr. Biden was using drugs from the time he left California on October 5, 2018 through to when the actual evidence indicates he is using again after the gun incident of October 23.  The supposed evidence of drug use during the period comes from Ms. Biden saying she found paraphernalia or residue at some point in his truck in this period, and that cocaine residue was found on a leather pouch into which *Ms. Biden* put the gun.  She specifically stated she found no drugs and, unlike other periods, she did not find drugs in her and Mr. Biden's brother's house.  As the government's own expert FBI chemist Jason Brewer said, the government did not (and could not) determine when any such

residue was placed there, by whim, and when, as we also know, from her testimony, that Ms. Biden herself used cocaine.  Thus, none of this evidence shows Mr. Biden was actually using the drugs. Likewise, the two texts on October 13 and 14, after the gun was purchased, are starkly different that the actual evidence the government admitted when Mr. Biden was using drugs and a slim basis to support a constitution inference of any kind.

Again, physical possession is critical.  *Daniels* makes clear that, at a minimum, there would have to be an actual danger posed from active drug use and physical possession, and not just some prediction of future dangerousness based on regular drug use and the ability to take physical possession of a gun.  The exception the Special Counsel hopes to invoke focused on "the misuse of weapons while intoxicated," but there is no possible misuse of a weapon by an intoxicated person who owns a gun that is not in his physical possession.  77 F.3d at 345.

Because the government failed to show the defendant in *Daniels* did not use drugs at the same time he possessed the gun (even with the admission it was half of every month), *Daniels* did not need to refine where the constitutional line should be drawn further.  But it did suggest that the government may need to go beyond showing that a defendant was both actively using drugs and armed, it may have to show the defendant was actually dangerous.

In response to the government pointing to historical analogs punishing gun possession by people who are violent, *Daniels* explained that Section "922(g)(3) is not limited to those with a history of violent behavior—not all members of the set of 'drug users' are violent.  As applied in this case, the government has not shown how Daniels's marihuana use predisposes him to armed conflict or that he has a history of drug-related violence."  77 F.4th at 354.  As addressed in more detail below, there is no evidence that Mr. Biden is violent or has any history of violence.  In fact,

all the evidence that government admitted failed to show the gun was ever loaded or used and the bullets (save for two Ms. Biden said she did something with) confirms that fact.

> **B. *Veasley* Test**

The *Veasley* test may be even more restrictive than the test applied in *Daniels*.  *Veasley* rejected the government's claim that it can disarm *actively* intoxicated people, finding "the intoxicated kept their civil liberties, including the right to possess firearms."  908 F.4th at 914. Instead, the court upheld Section 922(g)(3) against a facial constitutional challenge by finding it "resembles the Founding-era criminal prohibition on taking up arms to terrify the people" and concluded the statute could be applied in these circumstances.  *Id.* at 916.  That said, the historical "offense was not about mere possession, or even openly carrying a firearm.  It required more, the 'offensive[ ]' *use* of a firearm in a way that terrorized others.." *Id.* at 917.  While some armed and intoxicated persons are terrifying, *Veasley* acknowledged "not every drug user or addict will terrify others, even with a firearm. . . .  But those are details relevant to an as-applied challenge, not a facial one." *Id.* at 917–18.

Mr. Biden would plainly not fall into this Second Amendment exception.  Nobody testified that Mr. Biden ever showed the weapon to anyone, much less brandished the weapon in any threatening or offensive manner.  Again, the government's evidence more than suggests it was never loaded or fired the weapon.  The only witnesses to even see the gun after Mr. Biden bought it and left with it in its own case, were Ms. Biden who was the one who took it from a compartment and brought it into public (and threw in a trashcan), Edwards Banner who also took the gun he found and carried it in public, and then Lt. Millard Greer who recovered the gun.  Mr. Biden was not even present on any of these instances, so he could not have used the gun in a threatening or offensive manner.

The Special Counsel told the jury that Mr. Biden never used the gun in any violent way at the outset of the trial: "To be clear, Mr. Biden is not charged with a violent offense, the gun was taken from him just after 11 days before anything like that could occur." 6/4/24 Tr. at 341. The Special Counsel did not even try to prove Mr. Biden is dangerous, telling the jury, "it's important to note that whether the defendant is dangerous is not an issue that's relevant for your determinations in this case." *Id.* But *Veasley* holds that dangerous is more than relevant—it is a necessary requirement for the government to prove for this case to fall outside the protection of the Second Amendment. Given that the Special Counsel did not even try to meet this requirement, Mr. Biden's as-applied challenge should be granted.

## II.   THE INDICTMENT IS UNCONSTITUTIONAL UNDER THE DUE PROCESS CLAUSE FOR FAILURE TO PROVIDE FAIR NOTICE OF A CRIME

The Due Process Clause prevents the government from prosecuting someone without first giving notice that certain conduct is a crime. We do not live in a system where the Second Amendment tells citizens that it is presumptively constitutional for them to possess a firearm, and then have the government add a caveat that you may be committing a felony if you try to exercise this constitutional right, but we will not tell you in advance whether you are engaging in a constitutionally protected activity or committing a felony until after you take possession of the gun.

Nevertheless, that is exactly the position Mr. Biden finds himself in—even now. We are at the end of this trial, and the Court now may try to draw a line a separating what is a constitutionally protected right and what is a felony, so Mr. Biden cannot determine which side of the line his conduct would fall on. More importantly, that line was not drawn before he bought the gun, so he had no opportunity to conform his conduct with the law.

To be sure, courts may impose limiting constructions on a statute to resolve constitutional problems with them in some circumstances, but principles of due process notice prevent those new standards from being applied retroactively. *See, e.g.*, *Marks v. United States*, 430 U.S. 188, 194–95 (1977); *Bouie v. City of Columbia*, 378 U.S. 347, 362 (1964).  Additionally, when courts add a judicial gloss on a statute, that gloss must be charged in an indictment like any other element. *See, e.g.*, *United States v. Simmons*, 96 U.S. 360, 363 (1877).  Thus, wherever the Court draws the line separating applications of the charges in this cases that are constitutional from those that are not, the clarity from the new test this Court creates cannot be imposed retroactively on Mr. Biden.  An acquittal is required.

## CONCLUSION

The Court should order an acquittal of Mr. Biden because the charges against him are unconstitutional.

Dated: June 7, 2024                                    Respectfully submitted,

                                                       /s/ *Abbe David Lowell*
Bartholomew J. Dalton (#808)                           Abbe David Lowell
DALTON & ASSOCIATES, P.A.                              Christopher D. Man
1106 West 10th Street                                  WINSTON & STRAWN
Wilmington, DE 19806                                   1901 L Street NW
Tel.: (302) 652-2050                                   Washington, D.C. 20036
BDalton@dalton.law                                     Tel.: (202) 282-5000
                                                       Fax: (202) 282-5100
                                                       AbbeLowellPublicOutreach@winston.com
                                                       CMan@winston.com

        *Counsel for Robert Hunter Biden*

10

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2024, I filed the foregoing with the Clerk of Court using the

CM/ECF system, which will send a notification of such filing to all counsel of record.


/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*