# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN |
| ROBERT HUNTER BIDEN, | ) |
| Defendant. | ) |

## MR. BIDEN'S RULE 29 MOTION FOR ACQUITTAL FOR INSUFFICIENCY OF THE EVIDENCE

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

The Court should order a Rule 29 acquittal based on a failure of proof by the Special Counsel. In considering a Rule 29 acquittal motion,

> "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This reasonable doubt standard of proof requires the finder of fact "to reach a subjective state of *near certitude* of the guilt of the accused."

*Travillion v. Superintendent Rockville SCI*, 982 F.3d 896, 902 (3d Cir. 2020) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 315 (1979)); *see Rayner v. Superintendent Forest SCI*, 2023 WL 1433610, at *2 (3d Cir. Feb. 1, 2023) (invalidating conviction). To allow a conviction, the evidence must "rise above speculation and conjecture." *United States v. Pepe*, 512 F.2d 1129, 1134 (3d Cir. 1975) (reversing conviction); *see Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963) ("Appellant may be guilty, but his conviction cannot rest upon mere conjecture and suspicion.") (citation omitted); *United States v. Rappaport*, 292 F.2d 261, 264 (3d Cir. 1961) (reversing conviction resting on "speculation"). Instead, no conviction can be upheld unless it rests upon "substantial evidence." *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003).

Even before the modern Second Amendment concerns arose with the federal gun charges at issue in this case, to cure an unconstitutional vagueness problem with what it means to be a "user of controlled substances" under 18 U.S.C. § 922(g)(3), the Third Circuit among others imposed a limiting construction on the statute requiring the defendant "to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm." *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004). The Third Circuit highlighted the requirement that the person "*is*" a user is in the "present tense." *Id.* In doing so, the Third Circuit reversed a conviction where the only evidence at trial was that the defendant had used marijuana *six hours* before he was found in possession of a gun. *Id.* The Court's proposed instruction

allowing a user to be defined based on whether the last drug use was "within a matter of days or weeks before" is inconsistent with the present tense use of the term in the statute, *Augustin*'s requirement that the use be "contemporaneous," is unconstitutionally vague in failing to advise when someone who stops using is no longer a user, and violates the Second Amendment. (D.E.218 at 21.)[1]

To be sure, Mr. Biden has publicly acknowledged a long struggle with drug abuse and addiction, which he has successfully overcome in maintaining his sobriety for more than five years. The evidence at trial shows the evidence in getting there has been rocky, with many fits and starts. This case focuses on whether Mr. Biden was an addict or drug user over the course of eleven days of his life in which he owned a gun, but there is a void of evidence that Mr. Biden was an addict or user during this time period. There is no evidence of contemporaneous drug use and a gun possession.

To the contrary, the Special Counsel's own evidence shows that Mr. Biden had completed a detoxification and rehabilitation program at The View at the end of August 2018, followed up by living with a sober companion. 6/4/24 Tr. at 419, 420 (Jensen). Mr. Biden then returned to Delaware to stay at his parents' house—something that witnesses indicated he did not do when he was using and was not interacting (or in 2018 actually fleeing from) his family. It was only after the gun was thrown away and the ensuing stress that Mr. Biden that the government was able to

---

[1] As Mr. Biden has argued extensively in addressing the jury instructions, the definition of user and addict as used in the present tense in Section 922(g)(3) must be defined temporally with someone actively using drugs or being addicted to them at the time in question. Otherwise, the statute becomes unconstitutionally vague. If not contemporaneous use and addiction, how could a person ever know how to conform with the law? For example, as in *Augustin,* how long will someone have to stop using drugs to cease being a drug user? There it was six hours. There is nothing close to that in the government's evidence here. Mr. Biden addresses the Second Amendment issues in his accompanying as-applied Rule 29 motion.

then find the same type of evidence of his use (e.g., photos, use of drug lingo) that he relapsed with drugs.

During this intervening window in which Mr. Biden owned—but for which the only evidence of the gun being in public in any way was when Hallie Biden found it and decided to take it out from his truck and throw it out in a trash can—there is no evidence that he was using or remained addicted to drugs at the same time he was handling the gun. The only evidence in the timeframe in which he owned the gun are the two text messages to Ms. Biden, which prove nothing (also explained in Mr. Biden's Rule 29 motion addressing the Second Amendment as-applied challenge, at 4), but still would be inadequate proof if accepted as true. Even if Mr. Biden was using drugs on these specific occasions, the Special Counsel has no evidence placing the gun in his hands at the same time and the gun goes unmentioned in these texts. The mere fact that Mr. Biden owned a gun that may have been miles away from him when he was using drugs does not establish possession of a gun at the time he was using drugs.

The Special Counsel went to great lengths to prove what Mr. Biden freely acknowledges, that there is substantial evidence that Mr. Biden used drugs before and after this timeframe, but in doing so, the Special Counsel undermined his own case. The evidence is that when Mr. Biden was using drugs, he was not very good at hiding it. The prosecution called witnesses who described watching Mr. Biden buy and use drugs, often in hotel rooms or at clubs in front of numerous strangers and other witnesses. Contemporaneous messages and other documents substantiate that he was reaching out to drug dealers to buy drugs. As government witness Joshua Roming explained, his drug use included photos with pipes in his hand, crack pipes, bags of powder, drugs on a scale, drug lingo, and other instances of buying or using. All this is markedly different when Mr. Biden bought the gun.

4

This plethora of evidence of Mr. Biden's drug use that the Special Counsel can point to before and after this time period stands in marked contrast to the absence of such evidence during the time period in which he bought the gun. The inescapable fact is that if Mr. Biden was using drugs during this time frame, the same sort of evidence the Special Count points to before and after would exist here too. But it does not exist. *Id.* at 507–09 (FBI Agent Erika Jensen and Mr. Romig acknowledging no similar evidence in this time period). Nor is that surprising for someone who had just completed a rehabilitation program. There is evidence of alcohol use in this period for sure, but again that points out what does not exist—enough evidence on which to base a conviction of actual drug use. Even Agent Jensen, who spent hours detailing Mr. Biden's description of his drug use in 2016, 2017 and the first part of 2018 in *Beautiful Things*, had to concede there was nothing like that when he returned from California before he started using again in November 2018. While those programs are not always effective in the long-term, they often are effective in the short-term, and it is not uncommon for a person in recovery to enjoy intermittent periods of sobriety, followed by relapses, until they can achieve a lasting sobriety.

And certainly, in a case with a "knowingly" requirement, there is no evidence that when Mr. Biden bought the gun, after having gone through a detoxification and rehabilitation program, *he* believed that he still suffered from drug addiction or was a present-tense drug user because he had stopped using. With the benefit of hindsight, we know Mr. Biden's sobriety did not last, but that does not change the fact that he did not "knowingly" make a false statement in denying in the present tense that he was a drug user or addict. The evidence is well-established that the form that is at the center of two charges specifically differentiated the question about drug use from other question by asking if he is a drug user in the present tense, as opposed to other questions asking "have you ever been" in the past tense. That clearly conveys that someone who has used drugs in

that past, but who has stopped, is no longer a drug user. Perhaps Mr. Biden was overly optimistic that he could maintain his sobriety or was even fooling himself, as people with a history of addiction often are in denial about the extent of their addiction, but that would not make him a liar. *See* 6/6/24 Tr. at 865 (Hallie Biden explaining Mr. Biden had periods of sobriety); *id.* 866 (explaining Mr. Biden often did not seem to appreciate the extent of his drug problem). If Mr. Biden thought he had stopped using drugs for good and was no longer addicted, he could not have "knowingly" lied by saying so to others.

The best the Special Counsel can do its point to two text messages from Mr. Biden to Hallie Biden where he told her that he was buying drugs from a drug dealer named Mookie at a 7-11 and passed out from using crack on his car on 4th and Rodney. Ms. Biden's calls and texts showed her constant interaction with him, and she would know best when he said he lied to her when he did not want her to know he was with another woman. 6/6/24 Tr. at 865 (explaining Mr. Biden often was untruthful with her and would avoid telling her his whereabouts); *id.* at 879–80 (did not know if the claims in these two texts were true). She explained her questioning of him that led to those texts seeking his whereabouts was a suspicion that he was with another woman. *Id.* at 879, 958. But there is no evidence that any of this was true or anything more than a man who had grown exhausted from having to defend himself just telling Hallie what she wanted to hear. Nor is there any evidence of Mr. Biden sleeping on his car in a public street, which surely someone would have noticed.

Given Mr. Biden's failures to maintain his sobriety, it was understandable for Ms. Biden to continue asking him about his whereabouts and if he was using, but it is just as understandable as to why Mr. Biden would grow frustrated at having to defend himself from someone he already was arguing with extensively in this period. Many people in those situations will give up the

6

argument and tell the other person they are right to end the conversation. Mr. Biden could respond he was with another woman or he could make up a story that would end the back and forth. Given that all of this has led to the three charges in the case five years later, it would have been wiser in retrospect for Mr. Biden to say "I am with John Doe at the bar," but that would no doubt have allowed Ms. Biden to go to the bar to find him.

Even crediting that what Mr. Biden said was true, that would not prove that he was lying when days before he bought the gun, and there is no proof that he was in possession of the gun while meeting Mookie at the 7-11 or sleeping on his car on 4th and Rodney. Not only is there no evidence that Mr. Biden was at either location, but there is not even so much as a joking reference to a gun being present with him there either.

## CONCLUSION

The Court should order an acquittal of Mr. Biden because the Special Counsel failed to prove Mr. Biden committed the offenses charged.

Dated: June 7, 2024

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com
CMan@winston.com

*Counsel for Robert Hunter Biden*

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*