# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) <br> ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN <br> ) |
| ROBERT HUNTER BIDEN, | ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

## MR. BIDEN'S PROPOSED THEORY OF THE CASE INSTRUCTION AND OBJECTIONS TO FINAL JURY INSTRUCTIONS (D.E.218)

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

Mr. Biden has explicitly reserved providing his proposed theory of the case instruction until closer to the end of trial (D.E.190 at 24 n.7), but provides it now. Mr. Biden asks that the Court consider his objections below, but acknowledges that they have been addressed at length previously. He reiterates those objections now, and incorporates his prior requests for jury instructions and objections to the then-proposed jury instructions, primarily to preserve his objections for the record. To be clear though, given the overly expansive and amorphous definitions of what it means to be a drug "user" and to "possess" a firearm, the use of those definitions will deny Mr. Biden a fair trial and any conviction that could be obtained under such instructions, particularly given the increasing court decisions applying the Second Amendment, cannot be sustained on appeal. Moreover, the Court seems to acknowledge that the Second Amendment creates room for as-applied Second Amendment challenges, but it has not proposed final jury instructions to prevent the jury from convicting based on *unconstitutional* applications of the statutes. If a limiting construction is required to allow for a constitutionally sufficient conviction, the jury must be instructed upon that limitation or a trial that results in a conviction would not be affirmed.

## THEORY OF THE DEFENSE INSTRUCTION

Mr. Biden's response to the charges is that he never "knowingly" either possessed a gun when he thought of himself as a user of drugs or addicted to them and he did not "knowingly" lie on a form that asked him "are you" a user or addict because he did not believe he was either a drug user or addict at the time.

As to the first two counts, Mr. Biden maintains that he did not "knowingly" make a false statement when he answered a question in the present tense asking if he was addicted to or a user of controlled substances and he checked the "no" box. I have defined for you what it means to be addicted to or a user of controlled substances, but it is important to remember that what matters in determining whether Mr. Biden "knowingly" made a false statement is what those words meant to him at the time. If you find that Mr. Biden did not "knowingly" think of himself as addicted to or a user of a controlled substance at the time he checked that box, even though he may have met some other person's definition of what it means to be a drug user or addict, then he must be acquitted on those charges.

As to the third charge, Mr. Biden's theory of the defense is that the government failed to prove beyond a reasonable doubt that he "knowingly" was addicted to or a user of controlled substances at the same time that he "knowingly" possessed a firearm. As with the phrase addicted to or user of a controlled substance, I have defined what it means to "possess" a firearm for you, but again you must consider how Mr. Biden understood this word "posses" in deciding whether or not he acted "knowingly." If you find that Mr. Biden did not understand himself to be addicted to or a user of a controlled substance at the time he possessed a firearm, or that he did not "knowingly" possess a firearm at the same time that he "knowingly" was addicted to or using a controlled substance, then he must be acquitted on this charge.

**Authority:** Model Criminal Jury Instructions, 3d Circuit, § 8.01.  Absent this instruction, the jury may mistakenly conclude that it must use the definitions provided by this Court in deciding whether Mr. Biden "knowingly" committed an offense, even if he acted with innocent intent based on his understanding of those terms.

## OBJECTIONS

Instruction I:   Reasonable Doubt

Mr. Biden objects to the final paragraph on page 1 and asks that the jury be instructed in accordance with his proposed definition of reasonable doubt.  *See* D.E.203 at 2-3.  In particular, Mr. Biden objects to the following language defining reasonable doubt: "It is a doubt that an ordinary reasonable person has after carefully weighing all of the evidence and is a doubt of the sort that would cause him or her to hesitate to act in matters of importance in his or her own life."

As Justice Ginsburg noted, a panel of esteemed federal judges heavily criticized the proposed "hesitate to act" formulation

> because the analogy it uses seems misplaced.  In the decisions people make in the most important of their own affairs, resolution of conflicts about past events does not usually play a major role.  Indeed, decisions we make in the most important affairs of our lives—choosing a spouse, a job, a place to live, and the like—generally involve a very heavy element of uncertainty and risk-taking.  They are wholly unlike the decisions jurors ought to make in criminal cases.

*Victor v. Nebraska*, 511 U.S. 1, 24 (1994) (Ginsburg, J., concurring) (quoting Federal Judicial Center, Pattern Criminal Jury Instructions 18–19 (1987) (commentary on instruction 21)).  People typically do not have the luxury of making important decisions in their life with the certainty that their choice is right beyond a reasonable doubt, such as choosing a career or picking among competing job offers.  Instead, they make their best guess as to what choice to take among the options before them, rather than decide based on whether they are certain beyond a reasonable doubt that the decision is the correct one.  The history of annulled marriages and cliché of near strangers being married by an Elvis impersonator at a drive-thru wedding ceremony in Las Vegas

3

further illustrate the kind of major decisions that may be taken impulsively, without hesitation and without being sure beyond a reasonable doubt that it is a good decision. The beyond a reasonable doubt standard should turn upon the strength of the evidence eliminating any reasonable doubt, leaving a juror "firmly convinced" of guilt before convicting, and not be based upon a more subjective analysis of how risk averse a juror may be in terms of whether they would hesitate to act. Some jurors may be careful in making important decisions, while others may follow their gut or a hunch or be willing to take a chance. The "firmly convinced" language is more accurate and should be constitutionally required.

Additionally, some jurors may be familiar with civil cases or watched enough civil trial coverage on the news or dramatized in movies or television to understand the civil jury standard. It is important to clarify that the criminal standard is not the same, and to educate jurors that the criminal burden is higher. The Fifth Circuit, for example, has upheld an instruction that it described as "nearly identical" to Mr. Biden's proposed instruction. *United States v. Williams*, 20 F.3d 125, 131 (5th Cir. 1994). "It is this feature, the juxtaposition of the requisite standard of proof in civil cases with the more stringent criminal trial standard of proof beyond a reasonable doubt, that is the FJC instruction's greatest asset [because]. . . contrasting the civil and the criminal standards of proof is an effective means of framing the issue for the jury." *United States v. Walton*, 207 F.3d 694, 704-06 (4th Cir. 2000) (*en banc*) (equally divided court) (King, J., dissenting) (quoting *Williams*, 20 F.3d at 132 n.5).

Instruction XI: Impeachment of Defendant – Prior Inconsistent Statement

This instruction prejudicially singles out Mr. Biden as a less credible witness because of a supposed prior inconsistent statement when others who have made prior inconsistent statements

have not.  If such an instruction is to be given, it should refer to witnesses generally and not Mr. Biden in particular.

The instruction also appears inapplicable.  It falsely asserts that "there was evidence that the defendant made a statement to one of the law-enforcement witnesses before trial" that is inconsistent with his testimony at trial.  We do not know what prior inconsistent statements the Court suggests that Mr. Biden made to a law-enforcement witness, as the only testimony from law-enforcement witnesses who spoke with him concerned the efforts to locate the gun after Hallie Biden threw it away.  Nobody has suggested that he said anything false to a law-enforcement officer then, and there is no reason to believe that Mr. Biden would testify inconsistently.

Instruction XV: "Materially" Defined

This instruction is flat-out wrong and violates the Due Process Clause by impermissibly expanding the scope of the charged offense.  18 U.S.C. § 922(a)(1)(6) defines materiality in the context of "any fact material to the <u>lawfulness</u> of the sale." (emphasis added).  It is not, as the Court would state that: "A material fact is one which would reasonably be expected <u>to be of concern</u> to a reasonable and prudent person <u>in connection with the sale of the firearm</u>.  In determining whether a fact was material to the lawfulness of the sale of the firearm, you <u>may consider</u> that the law prohibits any person who is an unlawful user or addicted to any controlled substance from purchasing or possessing any firearm." (emphasis added).

A concern "in connection the sale of a firearm" is much broader than a concern with the "lawfulness of the sale," and that breadth is further emphasized by the second sentence which identified the lawfulness of the sale as one factor to consider and not the only relevant factor.  For example, Mr. Cleveland who sold Mr. Biden the gun stated that he would be concerned if a gun buyer drank alcohol even though that was not a required question on the form or a legal prohibition

5

against buying a firearm. 6/6/24 Tr. at 804. Many Americans have concerns about people owning a gun, even when the Second Amendment guarantees such a right, including concerns about a gun owner's use of alcohol, purely past use of drugs, temperament, firearms training, etc. The statute here asks only about a fact material to a sale, and the instruction strays by allowing a conviction based on a material concern unrelated to the *lawfulness* of the sale.

Instruction XIX: "Unlawful User of a Controlled Substance" Defined

Instruction XIX substantially broadens the scope of the offense, violates the Second Amendment, and is unconstitutionally vague. The Court's definition departs sharply from Third Circuit precedent. *See United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004) (The Third Circuit has imposed a limiting construction on this phrase to avoid a vagueness problem, requiring that a person "have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm.") (reversing conviction where only isolated recent unlawful drug use was proven); *United States v. Cheesman*, 600 F.3d 270, 280 (3d Cir. 2010) ("The regulation interpreting this section of the Gun Control Act defines an unlawful user of a controlled substance as someone who 'uses a controlled substance and has lost the power of self-control.'").

The Court acknowledges cases finding the Second Amendment precludes such a broad definition of a drug user. *See United States v. Veasley*, 98 F.4th 906, 917–18 (8th Cir. 2024) (while some armed and intoxicated persons are terrifying and would qualify for a Second Amendment exception, "not every drug user or addict will terrify others, even with a firearm. . . . But those are details relevant to an as-applied challenge, not a facial one."); *United States v. Daniels*, 77 F.4th 337, 347–48 (5th Cir. 2023) (Section 922(g)(3) is "substantially broader" than any Second Amendment exception at founding because it applies to "an undefined set of 'user[s],' even if they

6

are not under the influence," and "there is a considerable difference between someone who is actively intoxicated and someone who is an 'unlawful user' under § 922(g)(3).").

When a statute has been narrowed by a judicial construction, courts must instruct juries that the narrowing condition must be satisfied to obtain a conviction.  *See, e.g.*, *United States v. Riley*, 621 F.3d 312, 323 (3d Cir. 2010) (finding error in honest services fraud jury instructions that did not comport with the Supreme Court's narrowing of the offense in *Skilling v. United States*, 561 U.S. 358 (2010)).  If the Second Amendment restricts the constitutionally permissible scope of the charged firearms offenses, the jury must be instructed upon that limitation so the jury does not impermissibly convict based on constitutionally protected conduct.  Otherwise, any conviction that results from such instructions will be reversed.  There is no reason to invite this error.

Although Mr. Biden continues to believe the charges are facially unconstitutional, he would ask that wherever the Court decides the line separating constitutional applications from unconstitutional applications be charged in this instruction.  At a minimum, Mr. Biden suggests the following instruction is preferable:

> The phrase "unlawful user of a controlled substance," means a person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician and has lost the power of self-control when it comes to using a controlled substance.  This phrase does not include occasional users of controlled substances, only those who have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm.

D.E.190 at 19.

Apart from any Second Amendment issues, the Court's Instruction XIX substantially broadens the statute and is unconstitutionally vague.  Section 922(g)(3) applies to someone who "is"—in the present tense—a drug user or addict, as opposed to the numerous other Section 922(g) inquiries that apply if the person "ha[s] been" convicted or institutionalized, etc.  The statute does not ask if someone has been a drug user or addict, and the form asks in the present tense if you

7

"are" a user or addict. But Instruction XIX defines a current user to include someone who has stopped using, so long as the last use was "days or weeks before" and does not depend on proof of use or addiction "on a particular day." That transforms the temporal inquiry asked on the form as to whether you "are" a user or addict into a question asking whether you have used or been an addict in the past few days or weeks. But that cannot be what the statute intended and, as no such definition is on the form, the question asked on the form cannot be interpreted that way either.

Even assuming the definition is what Congress intended, it would still be unconstitutionally vague. If someone goes through detoxification and is no longer an addict and quits using, how long must that person wait to qualify to exercise their Second Amendment rights because they will no longer be considered a user or addict under this Court's definition? Lawyers have no idea how to advise a client asking that question and we doubt any member of the public could do more than guess how many "days or weeks" is enough. A statute that does not allow a citizen to determine in advance how to differentiate the exercise of a constitutional right from a felony is quintessentially constitutionally void for vagueness. There has been no explanation for how it could be otherwise.

The vagueness concerns with the statute have not been lost on the Third Circuit. In *Augustin*, the Third Circuit highlighted the requirement that the person "*is*" a user is in the "present tense" and imposed a limiting instruction that is not reflected in this Court's final instructions. 376 F.3d at 139. There, the Third Circuit reversed a conviction where the only evidence at trial was that the defendant had used marijuana *six hours* before he was found in possession of a gun. *Id*. The Court's proposed instruction allowing a user to be defined based on whether the last drug use was "within a matter of days or weeks before" is inconsistent with the present tense use of the term in the statute, *Augustin*'s requirement that the use be "contemporaneous," is unconstitutionally

8

vague in failing to advise when someone who stops using is no longer a user, and violates the Second Amendment.

Instruction XXI: "Knowing Possession" Defined

Instruction XXI substantially broadens the charges offenses, violates the Second Amendment, and is unconstitutionally vague, compounding the problem created by the definition of user or addict. The plain language of the statute makes it a crime to "possess" a firearm now, in the present tense, not whether someone has "the ability to take actual possession" of the gun in the future. That transforms the term "possess" beyond actual physical possession into a statute that proscribes possession or the ability to take possession or mere ownership.

Plainly, *Daniels* and *Veasley* require the gun to be in the actual physical possession of someone who is at the same time intoxicated, so this definition violates the Second Amendment for the same reasons discussed above in addressing the definition of user or addict. Again, Mr. Biden challenges the instruction s facially unconstitutional under the Second Amendment, but any jury instruction should instruct the jury on the line separating whatever conduct the Court believes would separate constitutional violations of the statute from those that are not.

Moreover, the instruction is particularly vague in instructing that the ability to "control" the firearm constitutes possession "even though it was not in the defendant's physical possession." Again, careful lawyers would have no idea what this means; nor will the jury. The Special Counsel evidently thinks mere "ownership" is enough, but that is not the language of the statute, and such an understanding of possession would make every gun owner subject to the Court's standard conditions of release in violation of those conditions if they do not immediately sell their guns—which is never required. *See* As-Applied Second Amendment Rule 29 Motion (D.E.220). The definition is illogical, as a person may own a gun that is nowhere near where a person is located,

9

placing it beyond his possession. If a defendant simply knows where a gun is and has the ability to take it or borrow it or buy it through private sale, is that sufficient control? That would seem to cover most people in a country where guns are ubiquitous.

More elastic concepts of constructive possession do not apply in the context of Section 922. The concern is with the danger posed by people who are both impaired by drug abuse and actually armed. An impaired person who is not in actual physical possession of a gun, even though he may own a gun located elsewhere (even in a different state) or have the ability to obtain one, does not fall within the statute. Likewise, DUI laws do not target those who are intoxicated and own a car or have the ability to obtain a car, they punish only those who actually drive drunk/

Additionally, the Court should delete the paragraph discussing joint ownership from the definition as there is no issue of joint ownership here.

The Court should define "knowing possession" to mean "to knowingly have actual physical possession of a firearm, such that it is in his hand or otherwise on his person."

<u>Other Objections</u>

Mr. Biden objects to the Court not giving his proposed instructions for (1) Knowledge of "User" or "Addict" Status (D.E.190 at 21), without which the jury could misinterpret the definitions the Court instructs the jury upon as Mr. Biden's understanding of those terms, and (2) Good Faith (*id.* at 24), which would similarly convey that it is Mr. Biden's understanding of the terms that controls whether he acted "knowingly."

Dated: June 9, 2024                          Respectfully submitted,

/s/ *Abbe David Lowell*

Bartholomew J. Dalton (#808)            Abbe David Lowell
DALTON & ASSOCIATES, P.A.               Christopher D. Man
1106 West 10th Street                   WINSTON & STRAWN
Wilmington, DE 19806                    1901 L Street NW
Tel.: (302) 652-2050                    Washington, D.C. 20036

10

BDalton@dalton.law                             Tel.: (202) 282-5000
                                               Fax: (202) 282-5100
                                               AbbeLowellPublicOutreach@winston.com
                                               CMan@winston.com

*Counsel for Robert Hunter Biden*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*

12