IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 23-00061-MN |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| *Defendant*. | ) |

**THE UNITED STATES' OPPOSITION TO DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL FOR INSUFFICIENCY OF THE EVIDENCE (ECF 222)**

During its case-in-chief, the government provided overwhelming evidence that Defendant Robert Hunter Biden knew that he used or was addicted to crack cocaine when he purchased and possessed a Colt Cobra 38SPL firearm in October 2018. The evidence is more than sufficient to allow a reasonable juror to find that the defendant is guilty of the three offenses charged: Count One charges that the defendant knowingly made a false statement in the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6); Count Two charges that the defendant made a false statement related to information required to be kept by law by a federal firearms licensed dealer, in violation of *id*. § 924(a)(1)(A); and Count Three charges that the defendant, knowing that he was an unlawful user of a controlled substance or addicted to a controlled substance, did knowingly possess a firearm, in violation of *id*. § 922(g)(3).

In a seven-page motion, the defendant moves under Rule 29 for a judgment of acquittal based on insufficiency of the evidence. *See* ECF 222 ("Def.'s Mot."). The defendant does not contest that the government has proved most of the elements of each offense charged. Rather, the defendant focuses his sufficiency challenge on just two arguments: *first*, that there is insufficient evidence that the defendant was an unlawful user of a controlled substance or a drug addict when he bought and possessed the firearm, *see* Def.'s Mot. at 3-5; and *second*, that there is insufficient

1

evidence that the defendant knew he was an unlawful user of a controlled substance or a drug addict when he bought the firearm, *see id*. at 5-7. Based on the evidence presented at trial—which included the defendant's own statements about his regular drug use, testimony from several witnesses, photographs of drugs and drug paraphernalia used by the defendant, significant cash withdrawals by the defendant, drug residue on the pouch containing the firearm and additional evidence—a jury could easily find that the defendant was both using and addicted to crack cocaine when he bought and possessed the Colt Cobra, and that he knew he was using and addicted to crack cocaine at the time. While the jury need only be unanimous as to whether he knew he was an unlawful user *or* was addicted to a controlled substance—not both—the evidence supports a finding as to both. Because the defendant has failed to meet the "heavy burden" required to succeed under Rule 29, *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992), the Court should deny his motion.

## LEGAL STANDARD

A defendant seeking to raise a Rule 29 motion based on insufficiency of the evidence bears a "heavy burden." *Casper*, 956 F.2d at 421; *United States v. McGlory*, 968 F.2d 309, 321 (3d Cir. 1992); *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990). A grant of a motion for acquittal under Rule 29 must be "confined to cases where the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978); *see also Government of the Virgin Islands v. Brathwaite*, 782 F.2d 399, 404 (3d Cir. 1986). In making this determination, "the court must view the evidence and the inferences logically deducible therefrom in the light most favorable to the government." *United States v. McNeill*, 887 F.2d 448, 449-50 (3d Cir. 1989); *Burks*, 437 U.S. at 17. "When examining the sufficiency of the evidence, the court reviews the totality of the circumstances." *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984); *Government of the Virgin Islands v.*

*Greene*, 708 F.2d 113, 115 (3d Cir. 1983). "The evidence need not unequivocally point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Pungitore*, 910 F.2d 1084, 1129 (3d Cir. 1990); *Leon*, 739 F.2d at 891. A case may not be taken from the jury unless "the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." *McNeill*, 887 F.2d at 451. "In determining whether evidence is sufficient, [the court] will not weigh evidence or determine the credibility of witnesses." *Casper*, 956 F.2d at 421; *McGlory*, 968 F.2d at 321. "Nor will [the court] substitute its own subjective interpretation of the evidence for that of the jury." *United States v. Villard*, 700 F.Supp. 803, 811 (D.N.J. 1988), *aff'd*, 885 F.2d 117 (3d Cir. 1989).

## BACKGROUND

The offenses for which the defendant was charged stemmed from a purchase of a firearm on October 12, 2018 and its possession by the defendant until October 23, 2018. On October 12, 2018, the defendant entered StarQuest Shooters & Survival Supply, a firearms dealer in Wilmington, Delaware. Tr. 675-76. At the time, the defendant was a heavy user of and addicted to crack cocaine, and had been regularly using crack cocaine for several years. *See, e.g.*, Ex. 18 (Summary Chart); Ex. 19 (Book Excerpts); Tr. 576-80, 600-15, 619-48, 664-66, 816-27. In StarQuest Shooters, the defendant sought to buy a Colt Cobra 38SPL revolver. To purchase the firearm, the defendant was required to fill out an ATF Form 4473, which asked, "Are you an unlawful user of, or addicted to . . . any . . . stimulant, narcotic drug, or any other controlled substance?" Ex. 10A, Question 11(e). The Form 4437 also required the defendant to certify that his answers were true, correct and complete. Ex. 10A at 2. The defendant falsely stated on the Form 4473 that he was not an unlawful user of, or addicted to, any stimulant, narcotic drug, or any other controlled substance, *id*. at 1, and purchased the Colt Cobra 38SPL revolver, Tr. 704-07.

3

On October 23, 2018, Hallie Biden, with whom the defendant was romantically involved, found the Colt Cobra in the defendant's truck, which was parked at her house. Tr. 828-30. Hallie Biden put the firearm in the defendant's brown pouch she found in his truck, which she knew he used to store drugs and drug paraphernalia. Tr. 833-35. She then went to Janssen's Market and disposed of the revolver by putting it in a trashcan outside of the store. Ex. 39A. Later that day, the revolver was found by Edward Banner, who was looking for recyclables in the trash can. Ex. 39C; Tr. 1033. After Hallie Biden notified the Delaware State Police to report the gun missing, Officer Greer recovered the firearm from Banner's house. Tr. 991-92; Ex. 1, 1A.

On September 14, 2023, the defendant was charged by indictment with three counts: Count One charges that the defendant knowingly made a false statement in the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6); Count Two charges that the defendant made a false statement related to information required to be kept by law by a federal firearms licensed dealer, in violation of *id*. § 924(a)(1)(A); and Count Three charges that the defendant, knowing that he was an unlawful user of a controlled substance or addicted to a controlled substance, did knowingly possess a firearm, in violation of *id*. § 922(g)(3). ECF 40. Trial began on June 3, 2024. On June 7, 2024, the government rested its case-in-chief. After Court had adjourned for the day, on the evening of June 7, 2024, the defense filed the instant motion for judgment of acquittal under Rule 29. ECF 222.

## DISCUSSION

**I.  There Is Sufficient Evidence for a Jury to Conclude That the Defendant Was a User or an Addict.**

Conceding that "there is substantial evidence that [the defendant] used drugs before and after" he purchased the firearm, Def.'s Mot. at 4, the defendant only argues that the government has not provided sufficient evidence that he used or was addicted to drugs when he possessed the firearm in October 2018. But ample evidence demonstrates that the defendant was using or

4

addicted to crack cocaine in October 2018. The defendant's bank statements showed that he withdrew $5,000 in cash from the ATM on October 12, 2018, the same day that he purchased the Colt Cobra. Ex. 29E. On October 13, 2018, one day after he purchased the firearm, the defendant sent a text message stating that he was with "Bernard who hangs at the 7/11!on [sic] Greenhill and Lancaster I'm now off MD Av behind blue rocks stadium waiting for a dealer named Mookie." Ex. 18 at Row 119. He followed up by sending another text message to Hallie Biden stating that that he "has [his] money mad [sic] [he's] getting pissed." *Id*. at Row 121. On October 14, 2018, two days after he purchased the firearm, the defendant sent a text message to Hallie Biden stating that he was "sleeping on a car smoking crack on 4th Street and Rodney," which is an intersection in Wilmington, DE. *Id*. at Row 125. On October 16, in response to a text message from Hallie Biden saying, "I just want to help you get sober, nothing I do or you do is working," *Id*. at Row 129, the defendant responded, "What one thing have YOU done to help me get sober Hallie?" *Id*. at Row 131. These text messages—in which the defendant states that he was "waiting for a dealer," "smoking crack," and that he was not sober—clearly establish that he was using crack cocaine while he possessed the firearm.

Hallie Biden also testified that late on October 22 or early on October 23, the defendant arrived at her house in Delaware, looking "like he hadn't slept" and as though he could have been using drugs. Tr. 827. She testified that after he went to sleep, she searched the truck he arrived in for drugs and alcohol, something she had done on prior occasions and described it as part of a "pattern," which is precisely the language used in the Court's instruction to the jury on the definition of an unlawful user. Tr. 829-30. She testified that found remnants of crack cocaine and drug paraphernalia along with a firearm. Tr. 830-31. She testified that she placed the firearm in a brown leather pouch that she found in the defendant's truck, removed the firearm from the truck

5

in the pouch, and attempted to dispose of it at a nearby grocery store, Tr. 834-37; Ex. 39A. After the pouch was recovered by the Delaware State Police, Tr. 994, Chemist Jason Brewer testified that the white powdery substance found on the brown pouch was determined to be cocaine. Tr. 1056-63; *see also* Ex. 4; Ex. 4C. Hallie Biden also testified that on October 31, one week after she found the firearm, she found another similar brown leather pouch of the defendant's in her house with a crack pipe in it. Tr. 862-63.

Additional evidence in the record supports a finding that the defendant frequently used and was addicted to crack cocaine for several years, including when he possessed the Colt Cobra in 2018. In his autobiography *Beautiful Things*, the defendant's own words describe the extent of his drug use between 2015 to 2019:

- The defendant described his extensive drug use in the spring of 2018. Ex. 20J, 20K, Ex. 19 at 187-202.

- The defendant stated that, while he was in California until the end of September 2018, he had a "superpower" of "finding crack anytime, anywhere." Ex. 20J; Ex. 19 at 187.

- The defendant also stated that during his time in California, he was "up twenty-four hours a day, smoking every fifteen minutes, seven days a week." Ex. 20J; Ex. 19 at 190.

- The defendant stated that by March 2019, he had "no plan beyond the moment-to-moment demands of the crack pipe" and that this period followed "four years of active addiction." Ex. 20P; Ex. 19 at 219-20.

Several witnesses described the defendant's consistent use of and addiction to crack cocaine during the relevant time period. Zoe Kestan, with whom the defendant was in a romantic relationship from 2017 to 2018, recalled the defendant's extensive use of crack cocaine from December 2017 through November 2018. *See* Tr. 597-98, 600-02, 604, 606-10, 613-15, 619-48, 664-65 (describing the defendant's regular crack use, which occurred as frequently as every twenty minutes). Kathleen Buhle, who was married to the defendant until 2017, testified that the defendant used crack cocaine during their marriage, Tr. 576-79, and that as recently as 2019, she found drugs

or paraphernalia in his car. Tr. 579-80, 594. And Hallie Biden testified that she saw the defendant using drugs throughout the course of their relationship, Tr. 816-20, and that in 2017 and 2018, he was using drugs "daily," Tr. 822.

In text message exchanges throughout 2018 and 2019, the defendant discusses purchasing and using drugs with several individuals, showing a pattern of consistent drug use in a one-year period from spring 2018 to spring 2019. *See, e.g.*, Ex. 18 at Row 1-29, 50-72 (April through June 2018); *id*. at Row 30-49 (May 2018); *id*. at Row 73-85 (July 2018); *id*. at Row 86-87 (August 2018); *id*. at Row 169-80 (November 2018); *id*. at Row 195-206 (December 2018); *id*. at Row 217-49 (February 2019).

And FBI Agent Erika Jensen testified that the defendant's bank statements showed that he was withdrawing large sums of cash from ATMs, consistent with the practice of illegal drug users, who pay their dealers in cash. Ex. 28A, 29A, 29E, 30A, 36A, 37A; *see also* Tr. 427.

The evidence in the record also directly refutes the defendant's argument that, after leaving his rehabilitation program at The View in August 2018, he did not use drugs when he returned to Delaware during the fall of 2018. *See* Def.'s Mot. at 4. In his memoir, the defendant admitted that he "stayed clean for about two weeks" when he was at the View, but once he left, he "relapsed." Ex. 20l; Ex. 19 at 202. He stated that he then went to the East Coast "with the hope of getting clean through a new therapy," but admitted that this did not "happen[]." Ex. 20m; Ex. 19 at 203. Kestan testified that, in late September 2018, the defendant was smoking crack every 20 minutes. Tr. 641-44, 664-65; Ex. 38. The defendant also claims, without any citation to witness testimony or any support in the record whatsoever, that "witnesses indicated he did not" return to Delaware "when he was using." Def.'s Mot. at 3. But the defendant himself admitted in his memoir that in November 2018, he continued to use crack cocaine while in Delaware, stating that "[i]t was me

and a crack pipe in a Super 8, not knowing which the fuck way was up. All my energy revolved around smoking drugs and making arrangements to buy drugs—feeding the beast." Ex. 20n; Ex. 19 at 208. Consistent with those statements, in November 2018, he sent a text message to Hallie Biden saying, "What's the worst place for me to be trying to stay clean? Delaware." Ex. 18 at Row 168.

The defendant plainly misstates the law when he contends that the government must have "evidence placing the gun in [the defendant's] hands at the same time" that he was using drugs. *See* Def.'s Mot. at 4. Defendant does not point to a single court that has held this—in fact, courts hold the exact opposite. *See United States v. Roberge*, 565 F.3d 1005, 1008-09 (6th Cir. 2009) ("Roberge cites no authority supporting his position that the government must prove he used drugs on the day authorities seized the firearms, and courts addressing this question concluded the contrary") (citing cases); *United States v. Moran*, 452 F.3d 1167, 1172 (10th Cir. 2006) ("It is clear that the . . . conviction does not require proof that he was using—and, presumably, possessing—marijuana at the exact time he possessed the ammunition."); *United States v. Mack*, 343 F.3d 929, 933 (8th Cir. 2003) ("[I]t was not necessary to prove that [defendant] was actually smoking marijuana at the time that the officers discovered him in possession of firearms"); *United States v. Johnson*, 572 F.3d 449, 453 (8th Cir. 2009) ("We have held that to establish that a defendant was an unlawful user of marijuana while possessing a firearm, 18 U.S.C. § 922(g)(3) does not require proof of contemporaneous use of a controlled substance and possession of a firearm"); *United States v. Corona*, 849 F.2d 562, 566 (11th Cir. 1988) (government need not show that the defendant was actually using drugs at the exact moment he purchased firearm); *United States v. McIntosh*, 23 F.3d 1454 (8th Cir. 1994) (citing *Corona* and stating "the government does not need to prove the defendant was actually using . . . drugs at the exact moment he purchased the firearms in

question in order to be convicted as an 'unlawful user.'"). Defendant relies on *United States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004), but that case specifically stated that it "was not necessary for the government to prove" that the defendant was using drugs "at the very same time that he possessed the firearm." *Id*. at 138 n.5.[1]

The defendant's final argument—that the existence of evidence showing that the defendant was buying and using crack cocaine in certain instances from 2017 to 2019 implies that the defendant was *not* using crack cocaine in October 2018—is meritless. *See* Def.'s Mot. at 4-5. Far from "hiding" his drug use, *id*. at 4, in October 2018, the defendant was sending text messages to Hallie Biden stating that he was "waiting for a dealer" and "smoking crack"—overt admissions that he was using crack cocaine in the two days after he purchased the gun and during the period when he possessed it. In any event, the evidence demonstrates that the defendant engaged in a consistent pattern of drug use, including as frequently as every fifteen minutes from 2015 to 2019. A jury could reasonably infer that the defendant continued regularly using throughout the entirety of 2018, including in October, when he possessed the firearm. *See United States v. Edwards*, 540 F.3d 1156, 1162 (10th Cir. 2008) (holding the evidence was sufficient to support an inference that the defendant was a "user of controlled substances during all relevant times" when "[s]everal witnesses testified that Defendant was a habitual, heavy user of marijuana at the time the

---

[1] In *Augustin*, the Third Circuit primarily addressed whether a "single use" of marijuana sufficed to establish the defendant was an "unlawful user of or addicted to" a controlled substance, not whether the use was connected closely enough in time to the possession of the firearm. *Id*. at 138-39. The Third Circuit held that the defendant was not an "unlawful user of" marijuana because there "was no evidence that Augustin had ever used drugs prior to the single use" on the day he possessed the gun, "or that he ever used drugs again." *Id*. at 139. That is far different from this case, in which the defendant frequently used crack cocaine—including, in his own words, "every fifteen minutes, seven days a week," Ex. 19 at 190—throughout a four-year period.

conspiracy was in effect, and none of the witnesses indicated that Defendant's drug usage changed or varied over the year of the conspiracy[.]").

In sum, viewing the evidence in the light most favorable to the government, as the Court must do on a Rule 29 motion, *McNeill*, 887 F.2d at 449–50, a reasonable jury could easily find that the defendant was using or addicted to crack cocaine when he purchased the gun and during the period in which he possessed the firearm.

II. **There Is Sufficient Evidence for a Jury to Conclude That the Defendant Knew He Was a User or Addict.**

The defendant also argues that "because he had stopped using" in the fall of 2018 (a false premise, as explained above) "there is no evidence . . . *he* believed that he still suffered from drug addiction or was a present-tense user." Def.'s Mot. at 5. This argument likewise fails.

The defendant's own words in his memoir offer ample evidence that he knew he was a drug user and addict when he purchased the gun on October 12, 2018. As noted, the defendant admitted that he was actively addicted to crack cocaine between 2015 and 2019. Ex. 20o, 20p; Ex. 19 at 219, 220. And in the fall of 2018, the defendant in his book stated that he returned to the East Coast after a "relapse" with the "hope of getting clean" but admitted that this did not "happen[]." Ex. 20m; Ex. 19 at 203. These statements plainly indicate that the defendant was aware that, during the relevant time period, he was not "clean" and was using drugs.

The defendant also discussed his drug use and addiction in his text message exchanges with Hallie Biden that occurred immediately after his purchase of the Colt Cobra. Just two days after he purchased the gun, on October 14, 2018, he told Hallie Biden, "I was sleeping on a car smoking crack on 4th street and Rodney." Ex. 18 at Row 125. After Hallie Biden responded, "I just want to help you get sober, nothing I do or you do is working. I'm sorry," the defendant texted back, "What one thing have YOU done to help me get sober Hallie?" Ex. 18 at Rows 129, 131. On

10

October 23, 2018, the defendant texted Hallie Biden, "Who in their right mind would trust you would help me get sober?" Ex. 18 at Row 145. The defendant's repeated acknowledgement that he needed "help" to "get" sober demonstrates that he knew he was not sober, *i.e.* using drugs.

Messages the defendant sent to Hallie Biden after learning that she took his gun evidence his knowledge that his possession was unlawful. On October 23, 2018, he texted Hallie Biden stating, "Did you take that from me [H]allie? Are you insane. Tell me now. This is no game. And you're being totally irresponsible and unhinged." Ex. 18 at Row 139. "Tell me now [H]allie." *Id*. at Row 140. "You really need to help me think right now [H]allie – this is very very serious." *Id*. at Row 141. Later that day, after Hallie told him that the police are "coming to talk to me now," *id*. at Row 144, he texted Hallie Biden stating, "[t]he fucking FBI Hallie . . . Who in their right mind would trust you would help me get sober?" *id*. at Row 145.

Immediately after he possessed the gun, the defendant made other statements showing his awareness that he was not sober. In text messages from November 2018, the defendant repeatedly described himself as a "user" and referred to his own use of crack cocaine:

- On November 3, 2018, the defendant sent a text message to Hallie Biden stating, "I'm a liar and a thief and a blamer and a user and I'm delusional and an addict unlike beyond and above all other addicts that you know and I've ruined every relationship I've ever cherished." Ex. 18 at Row 152.

- On November 8, 2018, the defendant sent text messages to Hallie Biden saying, "Im a drunk" and "[a]n addict." Ex. 18 at Row 157-58.

- On November 21, 2018, the defendant sent a text message to another woman stating "I'm a fucking better man than any man you know whether I'm smoking crack or not." Ex. 18 at Row 164.

- On November 21, 2018, the defendant sent a text message to Hallie Biden saying, "[w]hat's the worst place for me to be trying to stay clean? Delaware." Ex. 18 at Row 168.

- On December 3, 2018, the defendant sent a text message to Hallie Biden saying that "[t]he drug is a problem." Ex. 18 at Row 184.

11

- On December 3, 2018, the defendant sent a text message to her saying that he "need[ed]" her to help him "get sober." Ex. 18 at Row 190-91.

- On December 18, 2018, the defendant texted a woman and stated, "I'm insane and [] an addict and I'll obsess over it." Ex. 18 at Row 207.

- On December 28, 2018, Liz Secundy sent a text message to the defendant asking him, "why can't you admit you are unhappy, in the throes of addiction and need help coupled with love?" Ex. 18 at Row 209. The defendant responded, "I admit it completely." Ex. 18 at Row 210. He then sent a text message, "I'll fuxking [sic] get sober when I want to get fucking sober." Ex. 18 at Row 212. In late 2018, the defendant told Kestan via text message that he would "always be an addict." Ex. 38 at 17; Tr. 651.

These text messages—in which the defendant himself stated that he was "smoking crack," admitted that he was an "addict and indicated that he was not "sober"—show that he knew he was an unlawful user of crack cocaine in the late fall of 2018.

Additionally, witnesses who were with the defendant from 2015 to 2019 testified that he acknowledged his use and referred to it as an "addiction." Hallie Biden testified that the defendant acknowledged his crack cocaine use and referred to it as an addiction. Tr. 821. Buhle also testified that he referred to his own drug use as an addiction. Tr. 583. Ms. Kestan testified that the defendant referred to himself as an addict throughout 2018. Tr. 645-46; 669.

The defendant also communicated with these women about his rehab attempts both before and after he purchased and possessed of the gun, indicating that he knew he was an addict. The defendant told Kestan that he had a plan to go to rehab to attempt to become sober in March 2018, but in April, he was still using crack. Tr. 620, 621-24. In late May 2018, the defendant told Kestan that he intended to try to become sober and go to rehab south of Los Angeles, but he never ended up going. Tr. 630. Kestan also testified that the defendant told her he attempted to go to rehab in August 2018. Tr. 644-45; Ex. 25a. The defendant's unsuccessful attempts at rehabilitation programs and his statements expressing his need to enroll in rehab to get sober further underscore his knowledge that he was addicted to crack cocaine.

The defendant attempts to dismiss that the text messages that the defendant sent to Hallie Biden on October 13 and 14 stating that he was "waiting for a dealer named Mookie" and "smoking crack" by arguing in a conclusory fashion that there is "no evidence that any of this was true." Def.'s Mot. at 6. In other words, the defendant argues—without any evidentiary support or any sense of irony—that he was repeatedly lying, and that because he is a liar, this somehow undercuts the evidence he made a false statement on the ATF Form 4473. This argument contradicts the defendant's own text to Hallie Biden that he sent just seconds after telling her he was "smoking crack" stating: "There's my truth." Ex. 18 at Row 127. And, contrary to the defendant's claims, there is simply no basis to infer that that Hallie Biden, who as noted, was repeatedly begging the defendant to get sober, "wanted to hear" that the defendant was buying and using drugs. There is no evidence that the defendant lied in these very messages and defense counsel's argument that he was lying is not evidence.

Given this overwhelming evidence, a reasonable jury could conclude that the defendant knew he was an unlawful user of and addicted to crack cocaine when he completed the Form 4473 and possessed the firearm. *E.g.*, *Bryan v. United States*, 524 U.S. 184, 193 (1998) ("'knowingly' "merely requires proof of knowledge of the facts that constitute the offense"); *United States v. Cheeseman*, 600 F.3d 270, 281 (3d Cir. 2010) (rejecting defendant's argument that he did not knowingly violate 18 U.S.C. § 922(g)(3) explaining "firmly established case law constru[es] the term "knowing" to require "only that the act be voluntary and intentional") (internal citation omitted).

## CONCLUSION

For all of these reasons, the Court should deny the defendant's motion for judgment of acquittal under Rule 29.

        Respectfully submitted,

        DAVID C. WEISS
        SPECIAL COUNSEL

By:   */s/ Derek E. Hines*
        _____
        Derek E. Hines
        Senior Assistant Special Counsel

        Leo J. Wise
        Principal Senior Assistant Special Counsel

        U.S. Department of Justice

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Criminal Action No. 23-cr-00061-MN |
| ROBERT HUNTER BIDER, | ) |
| | ) |
| Defendant. | ) |

# **ORDER**

IT IS HEREBY ORDERED that for the reasons stated in the Government's Opposition to Defendant's Rule 29 Motion for Acquittal on Insufficiency of the Evidence, the defendant's motion (ECF 222) is DENIED.

_____  _____
Date                                                                Hon. Maryellen Noreika
                                                                         United States District Judge

15