IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
        v.                         )  Criminal Action No. 1:23-cr-00061-MN
                                   )
ROBERT HUNTER BIDEN,               )
                                   )
        Defendant.                 )
                                   )
_____)

# MR. BIDEN'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR A RULE 29 ACQUITTAL ON COUNT THREE FOR CHARGING A NON-CRIME

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

## INTRODUCTION

Mr. Biden timely filed his Rule 29 motion for a judgment of acquittal, rather than move to dismiss the indictment, because he sought the double jeopardy protection that only an acquittal can provide. Even if viewed as the Special Counsel does as a Rule 12 motion, it can be raised at any time under Rule 12(b)(2) and the Court has good cause to consider it now in any event.

The fact that Mr. Biden has been convicted of a non-crime on Count 3 is clear because the very statute the Special Counsel charged is no longer in effect, and courts must apply the law as it now exists. The Special Counsel is doubly wrong in claiming that this rule for applying the law in effect has an exception for amended penalty provisions and that 18 U.S.C. § 924(a)(2) is such a penalty provision. Neither is true. There is no such legal exception and Section 924(a)(2) is no mere penalty provision—it is what transforms a violation of 18 U.S.C. § 922(g)(3) from a mere prohibition into a crime. Not all violations of Section 922(g)(3) are crimes either. Section 924(a)(2) goes beyond ascribing penalties, it establishes the scienter requirement where only violations of certain Section 922 offenses committed "knowingly" are crimes.

The Special Counsel's invocation of the 1871 savings clause now found in 1 U.S.C. § 109 is off base, because that statute only saves prosecutions that *already* had been filed when the law was amended. It does not allow the Special Counsel to bring new prosecutions post-amendment based on conduct that violated a pre-amendment statute, which is exactly what the Special Counsel has done. Not only does the language of Section 109 itself make this clear, but the 153-year history since the statute was enacted confirms this reading. Congress regularly attaches savings clauses to legislation to allow new prosecutions to be brought for violations of prior law, when it chooses to do so, and it did not do so here. In the Special Counsel's view though, Congress has been

1

enacting needless surplusage over the past century and a half because he believes this 1871 statute made all that legislation unnecessary. That is obviously wrong.

## ARGUMENT

### I. THE SPECIAL COUNSEL MISCONSTRUES THE CRIME CHARGED AND THE 1871 SAVINGS CLAUSE

#### A. The Special Counsel Misconstrues The Crime Charged

The Special Counsel does not seem to quarrel with the common law abatement rule that the amendment or repeal of a statute that eliminates a basis for criminal liability terminates the basis for prosecution under the prior law at the time the amendment takes effect, but he claims "[n]one of these arguments address the amendment or repeal of *penalty* provisions." D.E.233 at 6. As shown in the next section, the Special Counsel's penalty provision exception is a figment of imagination—it simply does not exist, and he cites nothing to suggest it actually exists. But his argument stumbles out of the gate because Section 924(a)(2) establishes the substantive offense as well as provides the penalty.

The Special Counsel has to contort his way around the plain language of the statutes that stand in his way. He claims Section 922(g)(3) "makes it a *crime* for any person who is an unlawful user of or addicted to any controlled substance to possess a firearm," but that is patently untrue. D.E.233 at 3 (emphasis added). Section 922(g)(3) merely states that conduct is "unlawful," but a lot of things are unlawful without being criminal and nothing in Section 922(g)(3) makes any reference to a violation of this provision being a crime.

It is Section 924(a)(2) which makes a violation of Section 922(g)(3) a crime, but not in all situations. On its face, Section 922(g)(3) makes conduct "unlawful" regardless of intent. Section 924(a)(2) lists various provisions of Section 922 that, if violated "knowingly," subjects someone to potential fines or imprisonment. Thus, Section 924(a)(2) is what creates the crime with the

2

*mens rea* requirement and Section 922(g)(3) merely identifies the prohibited conduct that Section 924(a)(2) requires to be committed "knowingly."

Despite the Special Counsel's need and desire to avoid the way both statutes operate, the Supreme Court describes the interplay between these statutes exactly as Mr. Biden does:

> A federal statute, 18 U.S.C. § 922(g), provides that "[i]t shall be unlawful" for certain individuals to possess firearms. The provision lists nine categories of individuals subject to the prohibition, including felons and aliens who are "illegally or unlawfully in the United States." A separate provision, § 924(a)(2), adds that anyone who "*knowingly* violates" the first provision shall be fined or imprisoned for up to 10 years.

*Rehaif v. United States*, 588 U.S. 225, 227 (2019). *Rehaif* emphasized that the word "knowingly" is a critical element in the statute, which it read broadly. "Applying the word 'knowingly' to the defendant's status in § 922(g) helps advance the purpose of scienter, for it helps to separate wrongful from innocent acts." *Id.* at 232.

Thus, even if there were some truth in the Special Counsel's imagined penalty provision exception from the rule that courts apply the law in effect at the time of their decisions, such an exception would not apply here.

### B.     There Is No Exception For Amendments Altering A Penalty Provision

It is firmly established that courts must apply the law in effect at the time they make decisions, and that is a categorical rule—there is no exception for penalty provisions. *See, e.g.*, *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110 (1801). There is an important caveat to this principle, addressed in the next section, where existing law may keep a prior statute in effect for some present purposes through a savings clause. But the common law abatement rule is categorical and applies to amendments altering even penalties.

The Supreme Court has declared: "The repeal of the law imposing the penalty, is of itself a remission." *Maryland v. Baltimore & Ohio R.R. Co.*, 44 U.S. (3 How.) 534, 552 (1845) (citing

3

*Schooner Peggy*, 5 U.S. at 104). In *Tynen v. United States*, 78 U.S. 88 (1870), for example, "a new statute with a greater schedule of penalties was held to abate the previous prosecution." *Hamm v. City of Rock Hill*, 379 U.S. 306, 314 (1964); *accord United States v. Chambers*, 291 U.S. 217, 223 (1934). There is no carve-out from the rule that courts apply the law in effect at the time a court issues its decision with respect to a penalty provision that is no longer in effect.

### C. The 1871 Savings Clause Only Saves Prosecutions Pending At The Time Of A Repeal

The purpose of the 1871 savings clause was to overturn the Supreme Court's decision in *Tynen* the year before, which caused a case then-pending before the Supreme Court to abate when Congress substituted new penalties for the prior offense that was then before the Court. In *Hamm*, the Supreme Court explained the savings clause was enacted to prevent this sort of "mere technical abatement" of *Tynen*, which "abate[d] the previous prosecution." 379 U.S. at 314.

Although the Special Counsel mistakes *United States v. Brown*, 47 F.4th 147 (3d Cir. 2022), as supporting its theory that penalty provisions are treated differently from all other laws now in effect, *Brown* merely reiterates what *Hamm* and countless cases like it make clear: the savings clause preserves already pending prosecutions. In *Brown*, the defendant was indicted on March 28, 2018, and the change of law did not occur until later, on December 20, 2018, so Section 109 saved a pending prosecution. *Id.* at 151.

This result is clear from the language of Section 109 itself:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of *sustaining* any proper action or *prosecution* for the enforcement of such penalty, forfeiture, or liability.

(emphasis added). The statute refers to "sustaining" both a pending civil case ("proper action") or criminal "prosecution," and for something to be sustained it must already exist.

4

In *Bradley v. United States*, 410 U.S. 605, 609 (1973), the Supreme Court looked to the language of a savings clause and explained: "The term 'prosecution' clearly imports a beginning and an end." The issue there was in finding sentencing part of the end of a prosecution, but our focus is on the beginning. A criminal prosecution begins with an indictment. *Kirby v. Illinois*, 406 U.S. 682, 690 (1972) (making the Sixth Amendment applicable). Thus, Section 109's use of the words "sustaining" and "prosecution" reenforce that the statute deals with only pending cases. A prosecution does not exist and cannot be sustained until after an indictment is returned.

This reading of the statute is consistent with how the Supreme Court reviews similar savings clauses as saving only pending cases, rather than cases that could have been brought under prior law. *See, e.g.*, *Wash. Home for Incurables v. Am. Sec. & Trust Co.*, 224 U.S. 486, 490–91 (1912) (Holmes, J.). Also, "when there is doubt concerning the effect of a savings clause on a criminal proceeding, the clause should be strictly construed in favor of the accused." *United States v. Obermeier*, 188 F.2d 243, 256 n.59 (2d Cir. 1950). From the earliest days of the Republic, Congress has known how to craft savings clauses which would go as far as the Special Counsel would like by providing that someone "may be prosecuted" under the former law despite its repeal. *See, e.g.*, *The Irresistible*, 20 U.S. 551 (1822) (Marshall, C.J.) (upholding a forfeiture claim under an amended statute, which included a provision that read: "Provided, nevertheless, that persons having offended against any of the acts aforesaid may be prosecuted, convicted, and punished, as if the same were not repealed, and no forfeiture heretofore incurred by a violation of any of the acts aforesaid shall be affected by such repeal.").

Mr. Biden catalogued many—but far from all—savings clauses that Congress has added to legislation in the 153 years since the 1871 statute was adopted, all of which would be meaningless

5

surplusage if the 1871 statute had done the same work decades earlier or even more than a century before. D.E.221 at 4–5. At least since Chief Justice Marshall's opinion in *The Irresistible*, Congress has known how to draft savings clauses that would allow prior law to reach cases that could have been brought under prior law, rather than to merely sustain pending prosecutions. The fact Congress did not do so here is dispositive.[1]

## II.     MR. BIDEN'S RULE 29 MOTION IS TIMELY

Rule 29 provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later," and Mr. Biden timely filed this motion. In an ironic twist after complaining that Mr. Biden should be confined to the remedy of dismissal that he sought in bringing an Appropriations Clause violation and could not seek a different remedy of injunctive relief, here the Special Counsel takes the opposite position. Although Mr. Biden filed this Rule 29 motion seeking an acquittal, the Special Counsel claims what Mr. Biden really wants is to dismiss the charge in the indictment for failure to state a claim.

Not true. Mr. Biden seeks exactly the remedy that he requested—an acquittal. Mr. Biden did not seek a dismissal under Rule 12 because double jeopardy protection does not attach to such

---

[1] Situations like the present case where Congress transitions from one statutory regime to another tend to impact relatively few cases given Section 109. Violations of the new statute will be prosecuted under the new statute and prosecution that had begun under the old statute will continue under the old statute with the savings clause of Section 109. Only potential prosecutions that could have been brought under the old statute, but that were not, are precluded. But prosecutors typically do not sit on their hands with respect to cases that are worthy of prosecution and legislation typically moves slowly, so prosecutors can seek indictments under prior law before any amendment can be passed or take effect. Congress has legislated against the background principle of the *Schooner Peggy* for two centuries and may very well conclude that any case not already brought under prior law is not worth bringing. Conversely, Congress knows how to craft a savings clause that would save those potential prosecutions too, when it wants to. It did not do so here. This Court applies the law as it finds it.

6

pre-trial dismissals, but an acquittal does afford a defendant double jeopardy protection. Mr. Biden took the case to trial so that, either by conviction or acquittal from the jury or by this Court, he would have double jeopardy protection against future prosecutions. That is his right.

Defense counsel certainly understood it to be Mr. Biden's right. Defense counsel previously succeeded in filing a similar Rule 29 motion in *United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013). In *Fernandez*, following a Travel Act conviction predicated on travel to violate a Puerto Rico bribery law, defense counsel filed a Rule 29 motion for a judgment of acquittal because the Puerto Rico bribery statute charged in the indictment had been repealed before the alleged travel took place, such that the crime was a legal impossibility. To be sure, defense counsel could have moved to dismiss the charge, which plainly rested upon a repealed law before trial, but defense counsel moved for a judgment of acquittal after trial instead, and the First Circuit agreed it should have been granted. *Id.* at 31. The argument fits comfortably within the literal language of Rule 29 as the government had failed to prove a crime at trial, regardless of whether the defendant could have taken an alternative path of seeking dismissal before trial.

The Third Circuit did something similar in *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973). In that case, there was legal uncertainty about the scope of the crime that was charged, and the Third Circuit found that a Rule 29 judgment of acquittal should have been granted because the government had charged a legal impossibility. *Id.* at 188–89 (explaining a legal impossibility exists when everything the government charges occurred factually is true, but it does not constitute a crime). The fact that the government failed to prove the charge warranted granting the Rule 29 motion in the Third Circuit's opinion, even though the same argument that the indictment failed to charge an offense could have been brought before trial.

Even viewing this motion as one under Rule 12, as the Special Counsel does, Rule 12(b)(2) provides that "[a] motion that the court lacks jurisdiction may be made at any time while the case is pending," and the Third Circuit has found that rule rejects the very argument the Special Counsel makes here. In *United States v. Wander*, the Third Circuit noted that "[t]he Government points out that the defendants did not raise this issue [with an indictment's failure to state an offense] until after the Government had rested its case and when it was too late to cure the defect," and the Court rejected that argument because "[f]ailure of an indictment sufficiently to state an offense is a fundamental defect, however, and it can be raised at any time." 601 F.2d 1251, 1259 (3d Cir. 1979). The Third Circuit has reiterated this principle over and over. *See, e.g.*, *United States v. Panarella*, 277 F.3d 678, 683 (3d Cir. 2002); *United States v. Vitillo*, 490 F.3d 314, 324 (3d Cir. 2007); *United States v. Cefaratti*, 221 F.3d 502, 507 (3d. Cir. 2000); *United States v. Spinner*, 180 F.3d 514, 516 (3d Cir. 1999). Indeed, the Third Circuit has taken the point further, explaining: "We have squarely held that Rule 12(b)(2) applies equally to both objections raised before a District Court and objections raised for the first time before a Court of Appeals." *Panarella*, 277 F.3d at 682; *see Gov. of the Virgin Islands v. Pemberton,* 813 F.2d 626, 631 (3d Cir. 1987) ("This court has interpreted Fed.R.Crim.P. 12(b)(2) to mean that an objection to an information on the ground that it fails to charge an offense may be raised for the first time on appeal."). The Third Circuit did that in both *Cefaratti* and *Spinner* too. *Panarella*, 277 F.3d at 684.

Alternatively, the Court can treat this reply as a Rule 34 motion for an arrest of judgment, which similarly can be brought where "the indictment charges no offense." *United States v. Earls*, 2004 WL 1488524, at *1 (S.D.N.Y. July 2, 2004). This motion is timely under Rule 34(b) because it is filed within 14 days of the verdict.

Ignoring all this case law, the Special Counsel invokes only *United States v. Desu*, 23 F.4th 224 (3d Cir. 2022), which did not address any of this law either, leaving its precise holding unclear. D.E.233 at 2. Whatever *Desu* intended, it is not precedential to the extent the Special Counsel seeks to use it to find Mr. Biden's motion time barred. *Berrigan* plainly held that where the government secures a conviction based on a legal impossibility, despite proving all that it charged, the government fails to obtain a valid conviction and a Rule 29 judgment of acquittal is appropriate. And *Panarella*, *Vitillo*, *Cefaratti*, *Spinner*, *Wander*, and *Pemberton* all hold that a challenge for failure to state an offense can be raised at any time, even when first raised on appeal. *See also, e.g.*, *United States v. Watkins*, 709 F.2d 475, 478 n.2 (7th Cir. 1983) ("It is well-established that the failure of an indictment to state an offense is a fatal defect that may be raised at any time."). The Third "Circuit has long held that if its cases conflict, the earlier is the controlling authority and the latter is ineffective as precedents." *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008) (quoting *United States v. Rivera*, 365 F.3d 213, 213 (3d Cir. 2004)); *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 278 n.8 (3d Cir. 2001) ("[T]o the extent that [a panel decision] is read to be inconsistent with earlier case law, the earlier case law . . . controls"); *O. Hommel Co. v. Ferro Corp.*, 659 F.2d 340, 354 (3d Cir. 1981) ("a panel of this court cannot overrule a prior panel precedent. . . . To the extent that [a later case] is inconsistent with [an earlier panel decision, the later decision] must be deemed without effect"); Third Circuit IOP 9.1 ("Policy of Avoiding Intra-circuit Conflict of Precedent. It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court en banc consideration is required to do so.").

In any event, the Special Counsel acknowledges that a late Rule 12 motion can be excused for "good cause" under Rule 12(c)(3), so—to the extent Mr. Biden's judgment for acquittal should be construed instead to seek the different remedy of dismissal—the Court should find Mr. Biden has such good cause. D.E.233 at 2. It makes no intuitive sense why a defendant who wants an acquittal under Rule 29 must instead seek a different remedy of dismissal under Rule 12, and cases like *Fernandez* and *Berrigan* suggest there is no need to do so. Defense counsel is confident that this motion is appropriate under Rule 29 and that it can be viewed as timely filed under Rule 12 now as well, but if the Court finds that defense counsel is mistaken, then it should find that such an inadvertent mistake provides good cause.

To do otherwise would provide an overly punitive response of allowing a conviction for a non-crime. It is not fair to place such a heavy consequence on a defendant due to any possible mistake by his counsel. The Third Circuit explains: "Those substantive errors which result in a person's charge and conviction for something not a crime are fundamental." *United States v. Stoneman*, 870 F.2d 102, 105 (3d Cir. 1989). Courts should use their discretion to avoid what "would result in upholding a sentence for a crime that in fact was not a crime." *Black v. District Att'y of Phila.*, 246 F. App'x 795, 798 (3d Cir. 2007) (equitable tolling). Here, such an error as convicting Mr. Biden under a repealed statute would constitute plain error on direct appeal under Criminal Rule 52(b), and such an actual innocence claim would be challengeable through writs of *habeas corpus* or *coram nobis*. *See, e.g.*, *Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018) (*habeas*); *United States v. De Castro*, 49 F.4th 836, 847 (3d Cir. 2022) (*coram nobis*). Even the government has conceded elsewhere that Courts of Appeals should not affirm convictions for non-crimes. *United States v. Bolar*, 2014 WL 2719362, at *7 (E.D. La. June 16, 2014) ("The government contends that 'it is improbable that an appellate court would affirm a conviction if an

element of the crime is missing under any standard of review. The Fifth Circuit does not affirm non-crimes, even when a defendant swears to his guilt in a plea colloquy.'") (citing government brief that cites *United States v. Reasor,* 418 F.3d 466, 473 (5th Cir.2005)). Thus, it would elevate form over substance for a district court to deny Mr. Biden the relief that he ultimately should receive on appeal or through a collateral challenge.

Consequently, Mr. Biden's motion for a judgment of *acquittal*—not dismissal—is timely under Rule 29, would be timely under Rule 34 and, to the extent that it should be treated as a Rule 12 motion for dismissal, it is timely under Rule 12(b)(2) and good cause otherwise exists for the Court to consider the motion. It would be unconscionable for the Court not to use all its discretion to prevent a conviction from being imposed for a non-crime.

## CONCLUSION

Mr. Biden should be acquitted on Count Three because the offense charged no longer exists.

Dated: June 24, 2024

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, D.C. 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com
CMan@winston.com

*Counsel for Robert Hunter Biden*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 24, 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                            /s/ *Abbe David Lowell*
                                            Abbe David Lowell

                                            *Counsel for Robert Hunter Biden*