**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:23-cr-00061-MN |
| | ) | |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MR. BIDEN'S RESPONSE TO THE SPECIAL COUNSEL'S NOTICE OF**
**SUPPLEMENTAL AUTHORITY**

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

The Special Counsel seeks to make too much into the Supreme Court's commonplace practice of granting certiorari, vacating, and remanding (a "GVR") lower court decisions that touch upon the same area as a recently decided case by the Supreme Court.  GVRs "are not decisions on the merits." *Washington v. Sec'y of Pa. Corr's.*, 801 F.3d 160, 168 (3d Cir. 2015); *see Kenemore v. Roy*, 690 F.3d 639, 641 (5th Cir. 2012) ("A GVR 'does 'not amount to a final determination on the merits.'") (quoting E. Gressman et al., Supreme Court Practice 348 (2007)).

When the Supreme Court issues a new decision, "a GVR order both promotes fairness and respects the dignity of the Court of Appeals by enabling it to consider potentially relevant decisions and arguments that were not previously before it." *Stutson v. United States*, 516 U.S. 193, 197 (1996).  "Vacatur and remand by the Supreme Court, however, does not create an implication that the lower court should change its prior determination." *West v. Vaughn*, 204 F.3d 53, 58-59 (3d Cir. 2000) (Becker, J.), *abrogated on other grounds*, *Tyler v. Cain*, 533 U.S. 656 (2001) (quoting *Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1473 (Fed.Cir.1998)).  Indeed, lower courts often reach the same conclusion post-GVR that they did before. *See, e.g.*, *Vaughn*, 204 F.3d at 59.  Accordingly, when a litigant suggested that the Third Circuit should infer from a GVR that the Supreme Court was directing a changed outcome, the Third Circuit responded: "We decline to engage in the parsing of Supreme Court intent necessary to breathe life into so abstract a contention.  Whatever a GVR's order value as a predictor of the Court's position on a particular matter, we do not treat such an order as a dispositive ruling. *Vaughn*, 204 F.3d at 59.

Yesterday, the Supreme Court issued GVRs in *eight* cases for reconsideration under *United States v. Rahimi*, No. 22-915 (U.S. June 21, 2024), but the Special Counsel only wants to discuss the GVRs in *Garland v. Range*, 2024 WL 3259661 (U.S. July 2, 2024), and *United States v. Daniels*, 2024 WL 3259662 (U.S. July 2, 2024), apparently because those GVR's concerned cases

that upheld Second Amendment challenges.  *See also United States v. Perez-Gallan*, 2024 WL

3259665 (GVR to Fifth Circuit affirming dismissal of 18 U.S.C. § 922(g)(8) under the Fifth

Circuit's decision in *Rahimi*).  But the majority of the Supreme Court's GVRs based on *Rahimi*

vacated lower court decisions that actually *rejected* a Second Amendment claim.  *See Melynda v.*

*Garland*, 2024 WL 3259668 (U.S. July 2, 2024) (GVR to the Tenth Circuit, which denied a Second

Amendment challenge to 18 U.S.C. § 922(g)(1)); *Doss v. United states*, 2024 WL 3259684 (U.S.

July 2, 2024) (GVR to the Eight Circuit for affirming a Section 922(g)(1) conviction over a Second

Amendment challenge); *Jackson v. United States*, 2024 WL 3259675 (U.S. July 2, 2024) (same);

*Cunningham v. United States*, 2024 WL 3259687 (U.S. July 2, 2024) (same); *Antonyuk v. James*,

2024 WL 3259671 (GVR to Second Circuit rejecting Second Amendment challenge to a New York

law restricting a right to a conceal carry firearm law).  The fact that the Supreme Court GVRd

cases that came out in favor *and* against Second Amendment challenges is not surprising because

*Rahimi* provides guidance on the Second Amendment that none of the Courts of Appeals had

before them when they ruled previously.  In any event, the Special Counsel's effort to read the tea

leaves brought about by the GVRs based on *Rahimi* cut against him as most of those GVRs

concerned cases that had ruled against a Second Amendment claim.

The Special Counsel continues to try to render *Rahimi*'s holding that a modern firearm

restriction must be based on a Founding Era Second Amendment meaningless by reading

expansively *Rahimi*'s unremarkable observation that the analogous exception did not have to be

"identical."  D.E.243 at 1.  Allowing analogous albeit not "identical" comparisons is not a

command that anything goes.  *Rahimi* found that 18 U.S.C. § 922(g)(8) "*matches* the surety and

going armed laws, which involved judicial determinations of whether a particular defendant likely

would threaten or had threatened another with a weapon." Slip op. at 14 (emphasis added). There is no such match with respect to 18 U.S.C. § 922(g)(3).

Additionally, the Supreme Court's GVRs did not impact *United States v. Veasley*, 98 F.4th 906 (8th Cir. 2024), in which, "[d]espite the widespread use of opium in particular, the government concedes that its 'review of early colonial laws has not revealed any statutes that prohibited [firearm] possession' by drug users." *Id.* at 912 (alteration in *Veasley*). Just as the government could not identify such Founding Era laws concerning drugs in *Veasley*, the Special Counsel has identified none here. "The lesson here is that disarmament is a modern solution to a centuries-old problem. The fact that 'earlier generations addressed the societal problem . . . through materially different means . . . [is] evidence that' disarming all drug users, simply because of who they are, is inconsistent with the Second Amendment." *Veasley*, 98 F.4th at 912 (quoting *Bruen*, 597 U.S. at 26). *Rahimi* did nothing to undermine that fact.

The Special Counsel's suggestion that *Rahimi*, coupled with the GVRs, means Section 922(g)(3) is close enough to the Founding Era precedents identified in *Rahimi* to be upheld tracks the very argument that was rejected in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022). *Rahimi* and *Bruen* are bookends to the relevance of Founding Era surety laws. *Rahimi* found the surety laws comparable enough to Section 922(g)(8) because both legal regimes required a judicial finding that someone in particular was a threat before their right to use a gun was restricted. Slip op. at 14. By contrast, *Bruen* rejected the very same sort of analogy the Special Counsel seeks to draw here. The surety laws "were not *bans* on public carry" and "the surety statute *presumed* that individuals had a right to public carry that could be burdened only if" a judicial finding found a particular person a threat. *Bruen*, 597 U.S. at 55-56 (emphasis in original). Thus, *Bruen* invalidated a New York licensing law that disarmed everyone until they received a

license because it was not close enough to the Founding Era surety laws.  Section 922(g)(3) fails

the Second Amendment, just as the New York licensing law in *Bruen* did, because the analogy to

surety laws falls apart without a prior judicial finding that someone in particular poses a threat that

justifies disarmament.  The Special Counsel's reading invites reversal.


Dated: July 3, 2024                                        Respectfully submitted,

                                                           /s/ *Abbe David Lowell*
Bartholomew J. Dalton (#808)                               Abbe David Lowell
DALTON & ASSOCIATES, P.A.                                  Christopher D. Man
1106 West 10th Street                                      WINSTON & STRAWN
Wilmington, DE 19806                                       1901 L Street NW
Tel.: (302) 652-2050                                       Washington, D.C. 20036
BDalton@dalton.law                                         Tel.: (202) 282-5000
                                                           Fax: (202) 282-5100
                                                           AbbeLowellPublicOutreach@winston.com
                                                           CMan@winston.com

        *Counsel for Robert Hunter Biden*

4

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2024, I filed the foregoing with the Clerk of Court using the

CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*

5