IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) Criminal Action No. 1:23-cr-00061-MN ) |
| ROBERT HUNTER BIDEN, | ) ) |
| Defendant. | ) ) ) |

**MR. BIDEN'S MOTION TO DISMISS THE INDICTMENT
FOR LACK OF JURISDICTION**

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

## INTRODUCTION

This prosecution (and another in California) did not occur until after unprecedented political pressure was brought to forego an agreed-upon resolution of a four-year investigation. Following the same outside criticism, then U.S. Attorney David Weiss sought and obtained an appointment as Special Counsel, pursuant to which he brought this indictment. Mr. Biden brings this motion for lack of jurisdiction to challenge as unconstitutional the appointment and subsequent unlawful funding of these cases.

Before trial, Mr. Biden moved to dismiss the indictment because the Special Counsel was improperly appointed in violation of a Department of Justice regulation and because he relied upon an appropriation that did not apply to the Special Counsel (D.E.62), but the motion Mr. Biden brings now is different and builds on recent legal developments. On July 1, 2024, in *Trump v. United States*, which concerned former President Trump's immunity claims with respect to an indictment brought by a different Special Counsel, Justice Thomas filed a concurring opinion raising a more fundamental antecedent question of whether the Special Counsel was validly appointed under the Appropriations Clause. 144 S. Ct. 2312, 2347 (2024). Guided by Justice Thomas' opinion, Judge Cannon dismissed an indictment against President Trump earlier this week because the Special Counsel was unconstitutionally appointed. *United States v. Trump*, 2024 WL 3404555 (S.D. Fla. July 15, 2024). Based on these new legal developments, Mr. Biden moves to dismiss the indictment brought against him because the Special Counsel who initiated this prosecution was appointed in violation of the Appointments Clause as well. The Attorney General relied upon the exact same authority to appoint the Special Counsel in both the Trump and Biden matters, and both appointments are invalid for the same reason. The invalidity of the Special Counsel appointment also renders this prosecution a violation of the Appropriations

1

Clause, as there is no appropriation by Congress to fund it. Who the individual is who is the subject of investigation by an improperly appointed Special Counsel cannot make a difference in applying the law.

## ARGUMENT

I. **THE SPECIAL COUNSEL'S APPOINTMENT IS UNCONSTITUTIONAL BECAUSE CONGRESS HAS NOT ESTABLISHED AN OFFICE OF SPECIAL COUNSEL**

The constitutional flaw at the center of the Special Counsel's appointment is that Congress has not established the office of a Special Counsel. The Appointments Clause requires the President nominate and the Senate confirm principal officials of the United States,[1] but the positions of inferior officials "established by Law" may be filled through appointments by the President or the heads of departments. U.S. Const., art. II, § 2, cl. 2. While there is an open question as to whether the Special Counsel is a principal officer who must be nominated by the President and confirmed by the Senate—which is not how David Weiss was appointed Special Counsel—the Attorney General's appointment of the Special Counsel as an inferior official fails as well because Special Counsel is not a position "established by Law." "Before the President or a Department Head can appoint any officer, however, the Constitution requires that the underlying office be 'established by Law.'" *Trump*, 144 S. Ct. at 2348 (Thomas, J., concurring). That phrase

---

[1] Judge Cannon reluctantly concluded that the Special Counsel is an inferior officer—having found compelling reasons for why he should be treated as a principal officer—because she felt constrained by existing precedent. *Trump*, 2024 WL 3404555, at *34. Mr. Biden agrees with Judge Cannon that the Supreme Court's decision in *Morrison v. Olson*, 487 U.S. 654 (1988), upholding the appointment of an Independent Counsel against a similar challenge over Justice Scalia's powerful dissent has seemingly been gutted by subsequent decisions but remains a controlling precedent until it is overruled. *Id.* at *36 n.54. Mr. Biden calls for *Morrison* to be overruled and for the indictment to be dismissed because Special Counsel Weiss was not appointed in conformance with the nomination and confirmation process. Nevertheless, he appreciates as Judge Cannon did that a District Court cannot overrule a decision from the Supreme Court.

2

requires statutory authority. *See, e.g., id.*; *Trump*, 2024 WL 3404555, at *8.[2] Consequently, the Constitution gives "the President the power to *fill* offices (with the Senate's approval), but not the power to *create* offices." *Trump*, 144 S. Ct. at 2349 (Thomas, J., concurring). "[O]ur Constitution leaves it in the hands of the people's elected representatives to determine whether new executive offices should exist." *Id.*

Justice Thomas expressed that he was "not sure that any office for the Special Counsel has been 'established by Law,' as the Constitution requires," because there is no apparent statutory authority establishing the position. *Id.* at 2347–48. "By requiring that Congress create federal offices 'by Law,'" Justice Thomas explained, "the Constitution imposes an important check against the President—he cannot create offices at his pleasure. If there is no law establishing the office that the Special Counsel occupies, then he cannot proceed with this prosecution." *Id.* at 2348. "We cannot ignore the importance that the Constitution places on *who* creates a federal office. . . If Congress has not reached a consensus that a particular office should exist, the Executive lacks the power to create and fill an office of his own accord." *Id.* at 2350.

Congress has established numerous positions in the Department of Justice. As Justice Thomas noted, Congress created "the offices of Attorney General and U.S. Attorney for each district" and "Congress has created several offices within the Department of Justice, including the offices of the Attorney General, Deputy Attorney General, Associate Attorney General, Solicitor General, and Assistant Attorneys General." *Id.* at 2349–50. In the past, Congress appointed a "Special Counsel" to investigate the Teapot Dome scandal, and Congress established the now

---

[2] No one seems to contest this principle. *Trump*, 2024 WL 3404555, at *44 (noting Special Counsel Smith's agreement). In any event, Special Counsel Weiss acknowledges he was not appointed pursuant to the Special Counsel regulations, given that those regulations bar a government insider from being appointed Special Counsel. (D.E.72 at 11.)

3

lapsed role of the "Independent Counsel" through the Independent Counsel Act. *Id.* at 2350. Congress, however, has not created a position for a Special Counsel that exists today and that omission is telling. *See* Brett M. Kavanaugh, *The President and the Independent Counsel*, 86 Geo. L.J. 2133, 2136–37 (1998) (urging Congress to enact "special counsel" legislation to replace the Independent Counsel Act).

Justice Thomas explained: "It is difficult to see how the Special Counsel has an office 'established by Law,' as required by the Constitution. When the Attorney General appointed the Special Counsel, he did not identify any statute that clearly creates such an office." *Trump*, 144 S. Ct. at 2350 (Thomas, J., concurring). The same is true of the appointment of Special Counsel Weiss.

As with the appointment of Special Counsel Jack Smith to investigate President Trump, the Attorney General relied upon the same statutory authority in appointing Special Counsel Weiss to investigate Mr. Biden: 28 U.S.C. §§ 509, 510, 515 and 533. *Compare* A.G. Order No. 5730-2023 (Aug. 11, 2023) (Special Counsel Weiss appointment) *with* A.G. Order No. 5559-2022 (Nov. 18, 2022) (Special Counsel Smith appointment). But none of these statutes creates an office for a Special Counsel. Justice Thomas and Judge Cannon rejected each of the bases offered by the Attorney General.

Given the importance of the constitutional issue, Judge Cannon suggested that a clear statement rule may be warranted. *Trump*, 2024 WL 3404555, at *9. Mr. Biden believes such a clear statement rule is warranted, requiring Congress to clearly establish an office to be filled. Nevertheless, Judge Cannon did not need to decide the issue because each of the grounds suggested by the Attorney General fails to support his authority to appoint a Special Counsel even under a less rigorous statutory analysis. Mr. Biden agrees with that as well.

4

Section 509 addresses only the responsibilities "vested in the Attorney General" with exceptions for certain other DOJ officials and employees, but none address any responsibilities given to a "Special Counsel." It is of no relevance whatsoever to the Special Counsel. *Trump*, 144 S. Ct. at 2350 (Thomas, J., concurring); *Trump*, 2024 WL 3404555, at *12.

Section 510 is no better. It generically allows the Attorney General to delegate "any function of the Attorney General" to another DOJ employee. Neither provision allows the Attorney General to appoint someone to a new position, such as Special Counsel, it merely allows the delegation of additional authority. *Trump*, 144 S. Ct. at 2350 (Thomas, J., concurring); *Trump*, 2024 WL 3404555, at *12. This is not the course followed here, as U.S. Attorney Weiss did not ask for some delegation of additional authority; he specifically asked to be appointed to a different office altogether – "Special Counsel." As U.S. Attorney he had years to bring whatever charges he believed were merited, but he brought no charges until after he received the Special Counsel title that he sought.

The type of delegation made here also would conflict with 28 U.S.C. § 541, which requires the President to nominate and the Senate to confirm appointments of a U.S. Attorney. If the Attorney General could use Section 510 to appoint a "Special Counsel" with all the authority and more of a U.S. Attorney on his own, he could circumvent this process for appointing U.S. Attorneys altogether with no nomination by the President nor confirmation by the Senate. There would be no need for U.S. Attorneys at all. Likewise, the Attorney General could strip lawfully appointed U.S. Attorneys of their powers and assign them instead to a person chosen by the Attorney General as "Special Counsel."

Judge Cannon noted that "the Special Counsel's powers are arguably broader than a traditional United States Attorney, as he is permitted to exercise his investigatory powers across

5

multiple districts within the same investigation." *Trump*, 2024 WL 3404555, at *39. That is true of Special Counsel Weiss who brought no charges in this investigation with his U.S. Attorney position but, as Special Counsel, initiated legal proceedings on both sides of the country against Mr. Biden in Delaware and California, as well as in Nevada and California against Alexander Smirnov. Mere U.S. Attorneys do not have that power. Given that Congress requires a U.S. Attorney to be nominated by the President and confirmed by the Senate, it makes no sense to assume that Congress would allow the Attorney General to unilaterally appoint someone as Special Counsel with equal or greater power than a U.S. Attorney. That is what has been attempted here.

In effect, the Attorney General's view allows him to use Section 510 to engage in a game of bait-and-switch with the President and the Senate. The President and Senate may agree that one person should be nominated for a particular position, but that does not mean that they would agree the nominee should be confirmed to any position. Nevertheless, in the Attorney General's view he can use Section 510 to transform the appointed person's position into a completely different position. Here, the President and the Senate confirmed Mr. Weiss to be the U.S. Attorney for the District of Delaware; neither the President nominated nor the Senate confirmed Mr. Weiss to a position with all the powers of the Special Counsel. Presumably, under this view, the Attorney General could assign Mr. Weiss' authority as U.S. Attorney to someone else entirely, such that his job would be completely different from the one for which he was nominated and confirmed. That cannot be what Congress intended. Section 510 allows for only the delegation of routine functions, not the creation of a new position with a new title. Again, Mr. Weiss did not seek delegated authority under Section 510; he sought Special Counsel status before bringing any charges.

Section 515 also provides inadequate support for the appointment of a Special Counsel. Rather than create a "Special Counsel" position, Section 515(b) authorizes the Attorney General

6

to designate a "special assistant to the Attorney General or special attorney." Not only are these titles not "Special Counsel," Judge Cannon explains they are not even similar positions. "Special Attorneys" assist a U.S. Attorney, but Special Counsels initiate cases on their own free of any involvement by the U.S. Attorney. *See* 28 U.S.C. §§ 519, 543; *Trump*, 2024 WL 3404555, at *15. Likewise, Judge Cannon found the "special assistant" to have "the same functional meaning" as "special attorney," except that the subordinate assistance is provided to the Attorney General rather than to a U.S. Attorney. *Trump*, 2024 WL 3404555, at *17 n.24.

The Attorney General surely recognizes that the authority of a "Special Counsel" goes far beyond the authority that can be delegated to a "special assistant" or "special attorney," otherwise he would have given Mr. Weiss one of those titles instead and there likely would have been no need to even create the Special Counsel regulations. The Special Counsel makes the decision as to who to prosecute, not the Attorney General nor the U.S. Attorney, so the Special Counsel is not assisting anyone else with their work.

Section 515(a) is even weaker authority for appointing a "Special Counsel" as it does not involve appointing anyone to a new position at all. It allows a Department official, "when specifically directed by the Attorney General, [to] conduct any kind of legal proceeding," regardless of the district in which they reside. But Special Counsel Weiss was not "specifically directed by the Attorney General [to] conduct any kind of legal proceeding;" rather the whole point of the Special Counsel appointment was for Special Counsel Weiss to conduct "a full and thorough investigation" and he "is authorized to prosecute federal crimes in any federal judicial district arising from the investigation of these matters." A.G. Order No. 5730-2023 (Special Counsel Weiss appointment). The investigation conducted by the Special Counsel is not a legal proceeding

7

and any prosecution the Special Counsel chooses to initiate is based on his decision and it is not "specifically directed by the Attorney General."

Reliance upon Section 533 to support authority to appoint a Special Counsel borders on the incredible. To begin, "this provision would be a curious place for Congress to hide the creation of an office for a Special Counsel. It is placed in a chapter concerning the Federal Bureau of Investigation," rather in the sections dealing with the authority of a U.S. Attorney or Independent Counsel. *Trump*, 144 S. Ct. at 2351 (Thomas, J., concurring). Even the Special Counsel regulations do not cite Section 533 as authority for issuing them, and it has only been cited in the appointments of Special Counsels Smith and Weiss, not in the appointment of any prior Special Counsel. *Trump*, 2024 WL 3404555, at *21. In the context of a provision for the FBI, this provision that allows the Attorney General to appoint persons "to detect and prosecute crimes against the United States" cannot be given an "interpretation [that] would shoehorn appointment authority for United States Attorney-equivalents into a statute that permits the hiring of FBI law enforcement personnel." *Id.* Doing so would be completely inconsistent with the statutory scheme and violate the Appointments Clause and separation of powers. *Id.* at *26.

In short, none of the statutory authority identified by the Attorney General's appointment of the Special Counsel authorizes the appointment of anyone to the role of Special Counsel. Because Congress did not create such a position, it cannot be filled by the Attorney General.

## II. THE INDICTMENT WAS BROUGHT IN VIOLATION OF THE APPROPRIATIONS CLAUSE

Mr. Biden previously challenged the Special Counsel's reliance on an appropriation for "independent counsel" because he is not "independent" of the U.S. government (D.E.62), but Judge Cannon found that Special Counsel Smith was ineligible to use this appropriation for a different reason: there was no statutory authority for his appointment as Special Counsel. *Trump*,

8

2024 WL 3404555, at *43. The same is true of Special Counsel Weiss, as explained above, which compels the same result here. Moreover, Special Counsel Weiss' additional flaw of coming from inside the government and, therefore, not being eligible as not being "independent" makes his appointment and spending more problematic.

## III. THIS MOTION IS TIMELY

"A motion that the court lacks jurisdiction may be made at any time while the case is pending" under Federal Rule of Criminal Procedure 12(b)(2), and that certainly is true when an indictment is brought by an unauthorized prosecutor. *Trump*, 2024 WL 3404555, at *45–46; *see also United States v. Durham*, 941 F.2d 886, 892 (9th Cir. 1991) (reversing the District Court's denial of a mid-trial motion challenging the authority of a Special Assistant U.S. Attorney as untimely because the motion went to the jurisdiction of the court and could be filed at any time). In *United States v. Wander*, the Third Circuit noted that "[t]he Government points out that the defendants did not raise this issue [with a motion to dismiss the indictment] until after the Government had rested its case and when it was too late to cure the defect," and the Court rejected that argument because "[f]ailure of an indictment sufficiently to state an offense is a fundamental defect, however, and it can be raised at any time." 601 F.2d 1251, 1259 (3d Cir. 1979). The Third Circuit has reiterated this principle over and over. *See, e.g.*, *United States v. Panarella*, 277 F.3d 678, 683 (3d Cir. 2002); *United States v. Vitillo*, 490 F.3d 314, 324 (3d Cir. 2007); *United States v. Cefaratti*, 221 F.3d 502, 507 (3d. Cir. 2000); *United States v. Spinner*, 180 F.3d 514, 516 (3d Cir. 1999). Indeed, the Third Circuit has taken the point further, explaining: "We have squarely held that Rule 12(b)(2) applies equally to both objections raised before a District Court and objections raised for the first time before a Court of Appeals." *Panarella*, 277 F.3d at 682; *see Gov't of the V.I. v. Pemberton*, 813 F.2d 626, 631 (3d Cir. 1987) ("This court has interpreted Fed.R.Crim.P.

12(b)(2) to mean that an objection to an information on the ground that it fails to charge an offense may be raised for the first time on appeal."). The Third Circuit did that in both *Cefaratti* and *Spinner*. *Panarella*, 277 F.3d at 684.

To be sure, Mr. Biden appreciates that it would have been preferable to have brought this motion before trial, rather than after, but the motion is timely under Rule 12(b)(2) and there is good cause for Mr. Biden to pursue this motion under Federal Rule of Criminal Procedure 12(c)(3). In terms of "good cause," the defects raised here were only recently addressed by Justice Thomas on July 1, 2024 and by Judge Cannon just this week. Few cases are ever brought by a Special Counsel or similarly appointed Special Prosecutors, and this defect has long eluded other litigants. *See Trump*, 144 S. Ct. at 2351 (Thomas, J., concurring) (explaining the issue was not raised in *United States v. Nixon*, 418 U.S. 683 (1974); *Trump*, 2024 WL 3404555, at *27 (same). Now that the defect has been recognized and used to invalidate an indictment brought by the Special Counsel against former President Trump, the equivalent result should be available to Mr. Biden. Different defendants but same constitutional flaws.

The Special Counsel will no doubt try to avoid the ramifications of the recent court opinions by complaining that Mr. Biden should have brought this motion sooner. Given the evolving state of separation of powers law on this very topic, that is not a fair criticism. In any event, it does not deprive Mr. Biden of the right to dismiss an unauthorized prosecution and it does not prevent this court from correcting a miscarriage of justice. The indictment should be dismissed.

## CONCLUSION

The Court should dismiss the indictment and vacate the conviction that rests upon it.

Dated: July 18, 2024                                  Respectfully submitted,

|  |  |
|---|---|
| Bartholomew J. Dalton (#808) | /s/ *Abbe David Lowell* |
| DALTON & ASSOCIATES, P.A. | Abbe David Lowell |
| 1106 West 10th Street | Christopher D. Man |
| Wilmington, DE 19806 | WINSTON & STRAWN |
| Tel.: (302) 652-2050 | 1901 L Street NW |
| BDalton@dalton.law | Washington, D.C. 20036 |
|  | Tel.: (202) 282-5000 |
|  | Fax: (202) 282-5100 |
|  | AbbeLowellPublicOutreach@winston.com |
|  | CMan@winston.com |

*Counsel for Robert Hunter Biden*

## CERTIFICATE OF SERVICE

    I hereby certify that on July 18, 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

                                            /s/ *Abbe David Lowell*
                                            Abbe David Lowell

                                            *Counsel for Robert Hunter Biden*