IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
          v.                        )  Criminal Action No. 1:23-cr-00061-MN
                                    )
ROBERT HUNTER BIDEN,                )
                                    )
          Defendant.                )
                                    )
_____)

# MR. BIDEN'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT FOR LACK OF JURISDICTION

Abbe David Lowell
Christopher D. Man
WINSTON & STRAWN
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

Bartholomew J. Dalton (#808)
DALTON & ASSOCIATES, P.A.
1106 West 10th Street
Wilmington, DE 19806
Tel.: (302) 652-2050
BDalton@dalton.law

*Counsel for Robert Hunter Biden*

## INTRODUCTION

The fact that the Special Counsel bends over backward trying to find a way for this Court to avoid considering a motion that challenges this Court's jurisdiction is telling. This Court has unwavering duty to examine its own jurisdiction—even when no party has challenged it—so the Special Counsel's claim that the Court should close its eyes to the merits of this challenge by striking the motion or finding it untimely is meritless. The crux of the issue is that recent opinions—namely Justice Thomas' concurrence in *Trump v. United States*, 144 S. Ct. 2312, 2347 (2024), and Judge Cannon's dismissal of an indictment by an unauthorized Special Counsel in *United States v. Trump*, 2024 WL 3404555 (S.D. Fla. July 15, 2024)—call into question the very office of Special Counsel because it is not a position established by Congress. Special Counsel Weiss does not seriously contend otherwise, instead he explains that he "respectfully disagrees with the reasoning in those opinions." (D.E.254 at 10.) Thus, the ultimate question is whether this Court should side with Justice Thomas and Judge Cannon, as Mr. Biden suggests, or agree with the Special Counsel. The fact that the Special Counsel so aggressively urges the Court to dodge considering the merits of the case signals to the Court that his position lacks merit.

## ARGUMENT

**I.  THE COURT SHOULD NOT IGNORE THE MERITS OF MR. BIDEN'S CHALLENGE TO ITS JURISDICTION**

**A. The Court Must Examine Its Own Jurisdiction**

Mr. Biden's Appointments Clause challenge is directed to the Special Counsel as a litigant, which is essentially a question of standing. "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Not all government appointees have standing to litigate claims. *See id.* at 819 (explaining "[w]e have always insisted on strict compliance with this jurisdictional standing requirement" in denying

1

Members of Congress standing to challenge the constitutionality of the Line Item Veto Act). Mr. Biden's argument is that the Special Counsel is not the proper party to bring this Indictment on behalf of the U.S. government.

Nor would it be proper to strike the motion as the Special Counsel requests because the Court must consider a potential defect in its jurisdiction, however it comes to the Court's attention. The Supreme Court has made clear that "federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31 (1990) (alteration in original). Accordingly, "it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). That obligation extends to the district courts. *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 270 (2015).

Consequently, the Court must reject the Special Counsel's efforts imploring the Court to find some way to ignore the merits of Mr. Biden's motion. Now that the issue of the Court's jurisdiction has come to this Court's attention, the question of jurisdiction must be examined.

**B. There Is No Reason To Strike Mr. Biden's Pleading**

The Special Counsel leads off claiming that Mr. Biden's motion should be stricken for misstatements in the brief, but no such misstatements were made and the harsh remedy he suggests is improper, especially in a criminal case where a defendant's Sixth Amendment rights are paramount. First, he claims Mr. Biden made a misstatement by saying that Mr. Weiss "brought no charges" until he obtained the Special Counsel title, which he says is untrue because he filed two Informations in this Court as U.S. Attorney. (D.E.254 at 2.) Plainly, Mr. Biden was referring

to the pending charges returned by a Delaware grand jury via indictment—and the only Indictments ever filed against him—which Mr. Weiss brought in his Special Counsel capacity.

There could be no intent to hide the fact that those Informations were filed in this Court, as Mr. Biden showed up for a plea hearing and has subsequently litigated both the Diversion Agreement and Plea Agreement concerning the charges in those Informations in this Court. (*See, e.g.*, D.E.27 at 2 ("As was required as part of the Plea Agreement, he was prepared to plead guilty to the two misdemeanor tax charges in open court"), D.E.38 at 1 ("the Information commencing this case"), D.E.53 at 1 ("The only charge that the Special Counsel was permitted to bring under the Diversion Agreement is the charge in the Information."), D.E.60 at 1 ("The prosecution filed two separate Informations against Mr. Biden on June 20, 2023.").)  Moreover, this Court was plainly aware of those Informations ahead of that hearing and subsequently when it granted the Special Counsel's motion to dismiss those Informations after the Special Counsel decided to abandon the negotiated resolution of those charges he had previously agreed to.  While Mr. Biden's motion could have been clearer in stating that the pending "Indictments" were not brought until Mr. Weiss had been given the Special Counsel title, in the context of this case there could have been no effort to erase the prior Informations from this Court's memory.

Nor is the fact that Mr. Weiss filed two Informations, which he later dismissed, as U.S. Attorney at all relevant to this motion.  This motion is a challenge to Mr. Weiss' actions as Special Counsel—particularly the Indictment he filed in the pending case that he filed as Special Counsel. That is the Indictment Mr. Biden seeks to dismiss.  There is nothing in this motion challenging any action he took as U.S. Attorney.  Thus, there would be nothing for Mr. Biden to gain by misrepresenting an immaterial fact.

3

Second, the Special Counsel is incorrect in claiming Mr. Biden made a false statement in his motion by stating: "This prosecution (and another in California) did not occur until after unprecedented political pressure was brought to forego an agreed-upon resolution of a four-year investigation." (D.E.254 at 3 (quoting MTD at 1).) The statement is literally true. A prosecution does not begin until an indictment is filed, and the Indictments against Mr. Biden were all filed by the Special Counsel and only after "unprecedented political pressure" was indeed brought. *See Kirby v. Illinois*, 406 U.S. 682, 690 (1972); *see also* 18 U.S.C. § 3282(a) (explaining the statute of limitations prevents a person from being "prosecuted" unless an indictment is timely filed). Moreover, the Special Counsel simply blinks in the face of reality in denying that considerable political pressure was placed on him to indict Mr. Biden—including by Members of Congress who boasted that they succeeded in pressuring the Special Counsel to abandon his negotiated resolutions and indict instead. (*See* D.E.63 at 3–4 (discussing House Republicans taking "credit for causing Mr. Weiss's about-face.").) To be sure, the Special Counsel objects to the accuracy of the statements by those Members of Congress as to whether they actually influenced him, but there is no question that they exerted unprecedented political pressure on him and, afterward, the Special Counsel indicted. That is all Mr. Biden said, which makes his statement literally true.

Additionally, striking the pleading for any misstatement here is improper because the statement is just as immaterial to the motion as the statement above. The motion is not based on why the Special Counsel chose to indict, but the fact that Congress never established the position of Special Counsel, so the Special Counsel had no authority to indict, regardless of his motive.

### C. Mr. Biden's Motion Is Not Untimely

Mr. Biden's motion should not be denied as untimely. Federal Rule of Criminal Procedure 12(b)(2) provides: "A motion that the court lacks jurisdiction may be made at any time while the

4

case is pending" and Rule 12(c)(3) permits any pretrial motion to be filed late for "good cause." In addition to the Court's independent duty under Article III to ensure that it has jurisdiction, the Court should consider Mr. Biden's motion under either subsection of Rule 12.

The Special Counsel first argues that Rule 12(b)(2) is inapplicable because this challenge to his authority does not go to jurisdiction, but he completely ignores the standing analysis addressed above. Instead, the Special Counsel quotes *Freytag v. Commissioner*, 501 U.S. 868, 878–79 (1991), for the proposition that Appointments Clause challenges are "nonjurisdictional structural claims" (D.E.254 at 5 n.1), but he omits the rest of the sentence: "that could be considered on appeal whether or not they were ruled upon below." *Freytag*, 501 U.S. at 879. The government in *Freytag* had objected that petitioners "waived their right to challenge" the appointment of a judge because they consented to trial before the judge and did not challenge the judge's appointment until after trial, but the Supreme Court held that the constitutional challenge should be heard anyway—even though it ultimately rejected that challenge on the merits. It noted that it heard a similar challenge in *Lamar v. United States*, 241 U.S. 103 (1916), "despite the fact that it had not been raised in the District Court or in the Court of Appeals or even in this Court until the filing of a supplemental brief upon a second request for review." *Freytag*, 501 U.S. at 879 (quoting *Glidden Co. v. Zdanok*, 370 U.S 530, 536 (1962)). Thus, if the issue can be considered on appeal, even if raised for the first time there, it surely can be considered by this Court now before any appeal is taken.

The Special Counsel also misreads the word "nonjurisdictional" in *Freytag*, which was used in discussing the Supreme Court's prior decision in *Glidden*. The line from *Freytag* is "*Glidden* expressly included Appointments Clause objections to judicial officers in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether

5

or not they were ruled upon below." 501 U.S. 878-79. Both *Glidden* and *Freytag* addressed the government's claim of waiver by petitioners who did not object on Appointments Clause grounds in the lower court and, ordinarily, such waiver will bar judicial review on appeal. Nevertheless, both *Glidden* and *Freytag* did hear the claim because the waiver rule is not jurisdictional. *Glidden* made clear that the alleged Appointments Clause violation is jurisdictional: "this Court has treated the alleged defect as 'jurisdictional' and agreed to consider it on direct review even though not raised at the earliest practicable opportunity." 370 U.S. at 356. *Freytag* agreed, explaining:

> The alleged defect in the appointment of the Special Trial Judge goes to the validity of the Tax Court proceeding that is the basis for this litigation. It is true that, as a general matter, a litigant must raise all issues and objections at trial. But the disruption to sound appellate process entailed by entertaining objections not raised below does not always overcome what Justice Harlan called "the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers."

501 U.S. at 879 (citation omitted). What *Freytag* described as "[t]he structural principles embodied in the Appointments Clause" are too important to be defeated by non-jurisdictional appellate waiver doctrines. *Id.* at 880. Unlike in *Freytag*, the Appointments Clause challenge here is not directed at the tribunal, but to the Special Counsel as a litigant, which is essentially a question of standing, as discussed above.

The Supreme Court has put to rest any question as to whether an Appointments Clause challenge is jurisdictional. *Collins v. Yellin* distinguished separation of powers cases that "involve[] a Government actor's exercise of power that the actor did not lawfully possess," including where a government official was improperly "appointed," from cases that do not. 594 U.S. 220, 258 (2021). As Justice Gorsuch explained, that is because an Appointments Clause violation means "the officers could 'not be entrusted with executive powers' from day one, and the challenged actions were 'void.'" *Id.* at 277 (2021) (Gorsuch, J. concurring) (citations omitted). *Collins* requires that "[t]he remedy in those cases, invalidation of the unlawful actions, flows

6

'directly from the government actor's lack of authority to take the challenged action in the first place.'" *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 642 (5th Cir. 2022) (citation omitted). If the Special Counsel was not properly appointed, filing the Indictment did not confer jurisdiction in this Court even if some other prosecutor could have filed the same Indictment.

To be sure, prior to the Supreme Court's more recent Appointments Clause cases, the lower courts did struggle with how to characterize separation of powers cases and even whether private parties had standing to assert separation of powers claims. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 211 (2020) (finding private parties had standing to raise Appointments Clause challenges in an enforcement action); *Bond v. United States*, 564 U.S. 211, 220 (2011) (reversing the Third Circuit's ruling that private parties lack standing to raise separation of powers claims, permitting private parties to challenge "governmental action taken in excess of the authority" permitted by separation of powers). Prior to *Collins*, the Ninth Circuit appropriately recognized that a challenge to a prosecutor's authority was jurisdictional and could be raised at any time. *United States v. Durham*, 941 F.2d 886, 892 (9th Cir. 1991) (reversing the District Court's denial of a mid-trial motion challenging the authority of a Special Assistant U.S. Attorney as untimely because the motion went to the jurisdiction of the court and could be filed at any time). By contrast, the Eighth and Eleventh Circuits ruled to the contrary in *United States v. Suescun*, 237 F.3d 1284, 1287–88 (11th Cir. 2001), and *United States v. Fitzhugh*, 78 F.3d 1326, 1330 (8th Cir. 1996), which found that an improperly appointed prosecutor did not pose a jurisdictional problem so long as the government itself had the power to prosecute. The Special Counsel's reliance on those cases is flawed because they were never precedential in this Circuit and plainly are inconsistent with subsequent Supreme Court holdings.

7

The premise of *Suescun* and *Fitzhugh* is essentially a no-harm, no-foul rule where an action by an improperly appointed prosecutor is deemed permissible if, hypothetically, a properly appointed prosecutor could bring the same indictment, but the Supreme Court has expressly rejected that view. The Appointments Clause issue is not whether the government has the authority to take an action, but whether the person who decided to take a government action was properly appointed to make that decision on the government's behalf.

Subsequent to those decisions, the Supreme Court has repeatedly "held that a litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a 'counterfactual world' in which the Government had acted with constitutional authority." *Seila Law*, 591 U.S. at 211 (quoting *Free Enterp. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 512 n.12 (2010)). Thus, it does not matter in the counter-factual hypothetical world of *Suescun* and *Fitzhugh* whether a properly appointed prosecutor could have brought this indictment, we deal in the actuality of whether the prosecutor who did bring this indictment was properly appointed.

Moreover, the Special Counsel's efforts to distinguish *Durham* are misleading. The Special Counsel correctly notes that the reason for the reversal in *Durham* was that the prosecutor "was not properly *authorized* to litigate the case," but then misstates the record in trying to distinguish *Durham* by claiming that Mr. Biden argues that the "sitting United States Attorney—who lawfully initiated the prosecution in this case—was not properly appointed to another federal prosecutorial position." (D.E.254 at 6.) The issue in *Durham* and here is exactly the same in that the prosecutor litigating the case is not authorized to do so. It was not the "sitting United States Attorney [] who lawfully initiated the prosecution in this case" because this prosecution was initiated by an Indictment filed by the Special Counsel—not the U.S. Attorney. The fact that the

8

U.S. Attorney may have investigated the charges ultimately filed by the Special Counsel, or that the U.S. Attorney filed Informations that he later had dismissed, does not change the fact that this prosecution was initiated by an Indictment that was filed by the Special Counsel. It is not the person himself that is the issue but what position or authority that person is invoking to take the official action that matters.

The Special Counsel also claims that *Durham* was somehow undermined by *United States v. Cotton*, 535 U.S. 625 (2002), but even the Special Counsel seems to recognize that *Cotton* is irrelevant. (D.E.254 at 6.) *Cotton* merely held that the government's failure to state a claim caused it to lose on the merits, but it was not a jurisdictional defect that prevented a court from adjudicating the merits of a case. 535 U.S. at 631. Just a page earlier in his brief, the Special Counsel correctly noted that Mr. Biden's challenge goes to the authority of the prosecutor to initiate the case, which would be a motion under Rule 12(b)(3)(A) concerning "a defect in instituting the prosecution," as opposed to a motion under Rule 12(b)(3)(B), "raising a 'defect in the indictment or information,' including 'failure to state an offense.'" (D.E.254 at 5 (quoting Rule 12).) An unauthorized indictment goes to the jurisdiction of the court because it means the Executive Branch did not properly invoke the court's jurisdiction. *See United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007) (differentiating a motion alleging an indictment's failure to state an offense from a motion alleging an indictment failed to invoke the court's jurisdiction).

The Special Counsel raises the distinction between Rule 12(b)(3)(A) and 12(b)(3)(B) in an effort to distinguish many cases cited by Mr. Biden, but he zeroes in on a distinction that does not matter. Mr. Biden cited a slew of cases holding that a jurisdictional challenge can be raised at any time, even for the first time on appeal under *Rule 12(b)(2)*: *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002); *United States v. Cefaratti*, 221 F.3d 502, 507 (3d Cir. 2000); *United States*

9

*v. Spinner*, 180 F.3d 514, 516 (3d Cir. 1999); *Government of Virgin Islands v. Pemberton*, 813 F.2d 626, 631 (3d Cir. 1987); *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979). The Special Counsel argues that these cases are no longer good law because they treated a failure to state an offense as jurisdictional, despite *Cotton*, and he notes that a 2014 amendment to Rule 12(b)(3)(B) eliminated the ability to move to challenge an indictment for failing to state an offense at any time. But the fact that challenges to an indictment for *failure to state a claim* under Rule 12(b)(3)(B) can no longer be raised at any time, does nothing to undermine the separate holding of those cases that *a jurisdictional defect* can be raised at any time under *Rule 12(b)(2)*, which is exactly what Mr. Biden is doing here.

Accordingly, this is a jurisdictional defect, and it can timely be considered under Federal Rule of Criminal Procedure 12(b)(2), and, at the very least, good cause exists to consider the issue now under Rule 12(c)(3). (*See* MTD at 10.) Indeed, given that cases like *Freytag*, *Glidden*, and *Lamar* hold that Appointments Clause challenges can be raised for the first time on appeal, there is no reason for this Court not to review Mr. Biden's motion now.

Beyond Rule 12(b)(2), Mr. Biden also argues that he has "good cause" under Rule 12(c)(3) to raise the issue now based on the recent opinions by Justice Thomas and Judge Cannon. The Special Counsel has little to say in response, beyond that the arguments that those judges found persuasive had been raised in other cases years earlier. (D.E.254 at 6 (citing *In re Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019)).) The Special Counsel proves Mr. Biden's point. Mr. Biden did not raise this argument before because it appeared foreclosed by the very prior decisions the Special Counsel cites, but Justice Thomas's recent opinion explained how the claim is viable now that the law has evolved and Judge Cannon agreed. The fact that Mr. Biden could have seen that the argument had been raised—and rejected—before trial is hardly a reason why he

10

should have repeated a rejected argument then. It is only the recent opinions explaining why the argument has vitality under more modern conceptions of the Appointments Clause that we now see why those prior precedents are wrong. That is what provides good cause to raise the argument now. As with other issues, Appointments Clause law is evolving, and the Court should weigh in on the changes.

### D. This is Not A Motion For Reconsideration

It is striking that the Special Counsel attacks Mr. Biden's counsel for misrepresentations, but then repeats the obvious falsehood that this is a motion for reconsideration over and over again. (*See, e.g.*, D.E.254 at 1 (claiming "that is all this is"), 7 ("plainly one for reconsideration").) The Special Counsel is wrong and knows better. He acknowledges that Mr. Biden's argument now is that the office of Special Counsel was not created by Congress, so under the Appointments Clause, there was no office of Special Counsel for the Attorney General to fill with Mr. Weiss. (*Id.* at 8.) And the Special Counsel faults Mr. Biden for *not* raising this motion sooner: "The defendant had the opportunity to timely raise these arguments in his first motion to dismiss challenging Special Counsel Weiss's appointment and funding, but chose not to." (*Id.* at 6-7; *see id.* at 7 (complaining "the defendant failed to present arguments that were readily available to him when he filed his first motion to dismiss before trial").) The Court cannot possibly be asked to reconsider a decision on an issue that the Special Counsel admits is only being made for the first time now.[1]

## II. THE SPECIAL COUNSEL'S APPOINTMENT IS INVALID

On the merits, it is quite simply up to this Court to decide whether it agrees with Justice Thomas and Judge Cannon that the office of Special Counsel must be established by Congress

---

[1] As the Court will recall, Mr. Biden previously challenged Mr. Weiss' appointment as Special Counsel under Department of Justice regulations—not under the Appointments Clause of the Constitution. (*See* D.E.62, D.E.80.)

11

before the Attorney General can appoint anyone to fill it. The Special Counsel "disagrees with the reasoning in those opinions" and has regurgitated the same explanations offered by Special Counsel Smith that both Justice Thomas and Judge Cannon found lacking. (D.E.254 at 10.) Mr. Biden stands on his briefing explaining why Justice Thomas and Judge Cannon properly rejected these very arguments.

The Special Counsel does seek to distinguish the facts here from those considered by Justice Thomas and Judge Cannon, but he finds it necessary to make inaccurate statements about the record in this case to do so. The Special Counsel claims "Special Counsel Weiss lawfully initiated this case as the duly appointed United States Attorney in this district—something the defendant does not even dispute—and he plainly had the authority to continue to prosecute the case, even after the Attorney General conferred additional authority upon him as special counsel." (D.E.254 at 1; *see id.* at 6 (claiming that the "sitting United States Attorney [is] who lawfully initiated the prosecution in this case); *id.* at 11 ("he prosecuted this case lawfully as United States Attorney").) As explained above, this is simply not true. As U.S. Attorney, Mr. Weiss did investigate Mr. Biden. This prosecution, however, was "initiated" by filing an Indictment and Mr. Weiss did so in his capacity as Special Counsel, not as U.S. Attorney. That is clear from the signature block on the Indictment, which notes "Special Counsel" David C. Weiss and "Assistant Special Counsels" Derek E. Hines and Leo J. Wise. (D.E.40 at 4.)

The Special Counsel claims that any error in filing the Indictment as Special Counsel should be ignored because he could have filed the same Indictment as U.S. Attorney, but that is an appeal to the very same sort of argument rejected in *Seila Law*, which "held that a litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a 'counterfactual

12

world' in which the Government had acted with constitutional authority." *Seila Law*, 591 U.S. at 211 (quoting *Free Enterp. Fund*, 561 U.S. at 512 n.12). The Court has only the Indictment filed by Mr. Weiss in his capacity as Special Counsel before it, and the only question is whether the Special Counsel was authorized to file that Indictment. If Mr. Weiss chooses to file some other indictment in his capacity as U.S. Attorney, whichever judge is assigned to that case can address any questions concerning the propriety of that indictment.

The Special Counsel also argues that Mr. Weiss was nominated by the President and confirmed by the Senate to the position of U.S. Attorney (D.E.254 at 9), but Mr. Biden is not challenging Mr. Weiss' appointment as U.S. Attorney. Mr. Biden challenges Mr. Weiss' appointment as Special Counsel because the Special Counsel position was not established by Congress—a fact the Special Counsel does not deny. (*See* MTD at Sec. I.) Mr. Weiss can have two hats, but the one he wore when he sought and filed the Indictment in this case says "Special Counsel."

The Special Counsel's argument then descends into more what-if-and-could-have-been arguments, claiming that the Attorney General has the authority under various statutory authorities to delegate Mr. Weiss the ability to work on this case, but the Court should focus upon what actually happened. To collect evidence in other districts, Mr. Weiss was not appointed as a Special Attorney in those districts. Nor was this a pending case that the Attorney General asked Mr. Weiss to assist with. Instead, the Attorney General made Mr. Weiss a Special Counsel with the roving power of a U.S. Attorney to seek an indictment in any jurisdiction that Mr. Weiss may choose. The fact is that he chose to indict in Delaware as Special Counsel; it is irrelevant that he could have done so as U.S. Attorney in Delaware because that is not what he did.

13

It is the office—not the person who holds the office—that matters. This case is *United States v. Biden*, not *Weiss v. Biden*. When a government office brings an indictment or any case, the case continues even after the officeholder who initiated the case leaves office. *Cf.* Fed. R. Civ. P. 25(d) (action involving a government official named in his or her official capacity is substituted for a successor upon leaving office). Mr. Weiss acted in his capacity as Special Counsel when he filed this Indictment—not in some other capacity—so it is irrelevant what he could have done, but did not do, in his capacity as U.S. Attorney. Because Congress never authorized the creation of such an office of Special Counsel, nothing Mr. Weiss did in that capacity was valid.

## CONCLUSION

The Court should dismiss the indictment and vacate the conviction that rests upon it.

Dated: August 13, 2024                                   Respectfully submitted,

/s/ *Abbe David Lowell*

Bartholomew J. Dalton (#808)                      Abbe David Lowell
DALTON & ASSOCIATES, P.A.                    Christopher D. Man
1106 West 10th Street                                    WINSTON & STRAWN
Wilmington, DE 19806                                  1901 L Street NW
Tel.: (302) 652-2050                                       Washington, D.C. 20036
BDalton@dalton.law                                      Tel.: (202) 282-5000
                                                                       Fax: (202) 282-5100
                                                                       AbbeLowellPublicOutreach@winston.com
                                                                       CMan@winston.com

*Counsel for Robert Hunter Biden*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Abbe David Lowell*
Abbe David Lowell

*Counsel for Robert Hunter Biden*

15