

# U.S. Department of Justice

*United States Attorney's Office*
*District of Delaware*

*The Hercules Building*
*1313 N. Market Street*
*P. O. Box 2046*                                    *(302) 573-6277*
*Wilmington, Delaware 19899-2046*          *FAX (302) 573-6220*

April 21, 2025

**<u>VIA ECF</u>**
The Honorable Maryellen Noreika
U.S. District Judge
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, Delaware 19801

**Re: Order to Respond to Request to Unseal Search Warrant Applications and Affidavits, *United States v. Hunter Biden*, 1:23-CR-61-MN (D.I. 279)**

Dear Judge Noreika:

The government writes to respond to the Court's Order to provide the parties' respective positions on a request to unseal search warrant applications and affidavits in the above-captioned case[1]   The government has conferred with subject-matter experts within the Department of Justice and counsel for Mr. Biden.  The parties agree the search warrant applications and affidavits at issue may be unsealed with limited redactions.

For the reasons set forth below, the government proposes, and counsel for Mr. Biden does not object to, limited redactions to protect specific privacy and grand jury secrecy interests.  Those proposals are attached hereto as Exhibits A – D, filed under seal for the Court's consideration.  The proposed redactions are designated by color to allow the Court to easily determine the basis for each redaction: privacy interests are marked in red, grand jury information is marked in blue, and redactions required by District of Delaware Local Rules are in brown.   We request that the government be ordered to file publicly on the docket the redacted search warrants and applications, consistent with the proposed redactions.

---

[1] Counsel for Mr. Biden does not object to the limited redaction proposed herein, but his counsel neither adopts nor agrees with all of the government's statements concerning the law contained in this letter.

## I. The Public Has a Common-Law Right of Access to the Search Warrant Applications and Affidavits.

The public has a common law, qualified right of access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–99 (1978). Whether a document qualifies as a judicial record "depends on the role it plays in the adjudicatory process." *Leopold v. United States* (*In re Leopold*), 964 F.3d 1121, 1128 (D.D.C. 2020). Search warrants, applications, and their accompanying affidavits are judicial records because they are "intended to influence the court, and the relevant orders are certainly decisions about them." *Id.*; *see also United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1193 (9th Cir. 2011) (holding that "[a]ffidavits in support of seizure or search warrants are central to a court's probable cause determination . . . [and] therefore clearly fall within the definition of judicial documents"); *Gardner v. Newsday, Inc.* (*In re Newsday*), 895 F.2d 74, 79 (2d Cir. 1990) (recognizing that a search warrant application is "a public document subject to a common law right of access"); *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 63-64 (4th Cir. 1989) (holding that affidavits for search warrants are judicial records because the court must review them, that review is subject to challenge through a motion to suppress, and the warrant and related papers must be filed with the clerk of the district court).

There is a strong presumption in favor of public access to judicial documents. *United States v. Smith*, 776 F.2d 1104, 1109-10 (3d Cir. 1985). The right of access is intended to "provide the public with a more complete understanding of the judicial system and a better perception of its fairness." *In re Avandia Mktg., Sales Prac. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019). However, the public right of access is not absolute. *Id.* It may be overcome where the material "is the kind of information that courts will protect" and "the interest in secrecy outweighs the presumption" of public access. *Id.*

## II. In Reviewing a Request for Public Access, the Court Analyzes the Interests and Makes Document-Specific Findings of Fact.

In making its determination regarding public access to court records, this Court "should articulate the compelling, countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure, and provide an opportunity for interested third parties to be heard." *Id.* at 672-3. The analysis requires "careful factfinding, . . . balancing of competing interest[s,]" and a "document-by-document review of the challenged documents." *Id.* at 673.

To facilitate the Court's review, the government has identified privacy and grand jury secrecy interests to be protected in connection with the petitioner's request to unseal. For each, the government has crafted proposed redactions for specified passages of the search warrant applications and affidavits at issue. The government's proposal identifies the interests supporting each redaction. The

2

government's analysis of the privacy and grand jury secrecy interests at play in petitioner's request follows.

### III. The Search Warrant Applications and Affidavits Should be Redacted Where Individual Privacy Interests Outweigh the Public Interest in the Information.

The government proposes narrow redactions to the search warrant applications and affidavits to preserve individuals' privacy. Those redactions include, for example, addresses beyond city and state; email addresses of third parties;[2] and the names and certain identifying information of the search warrant affiants. For each of those redactions, concerns for personal privacy outweigh the public's interest in the information.

As a preliminary matter, the search warrant applications and affidavits are not required to be redacted by the Federal Rules of Criminal Procedure. Rather, the "redaction requirement" which applies to most filings "does not apply to . . . a court filing that is related to a criminal matter or investigation and that is prepared before the filing of a criminal charge." Fed. R. Crim. P. 49.1(b)(7). Nor does the redaction requirement apply to "search warrant[s]." Fed. R. Crim. P. 49.1(b)(8). However, the Court "may" order that a redacted version of a sealed document be publicly filed. Fed. R. Crim. P. 49.1(d).

The District of Delaware's Privacy Notice Regarding Criminal Case Documents is more restrictive, stating certain privacy-related information "must" be redacted from public filings without exception. Those required redactions include, relevant here, "financial account numbers to the last four digits; names of minor children to the initials; . . . and home addresses to the city and state." D. Del. Notice Re. Crim. Case File Docs. The District of Delaware's Privacy Notice also counsels "caution" when filing other information which may implicate "personal security concerns," such as any personal identifying number, employment history, individual financial information, and information concerning an individual's cooperation with the government. *Id*. The District of Delaware's Privacy Notice's limited required

---

[2] The government has carefully considered how to redact third party email addresses in a way which allows the public to identify the users of the email addresses for narrative clarity, while also preserving those individuals' interest in nondisclosure of their complete contact information. In some instances, the proposal is to redact the domain name and unredact the unique username for an email address (for example, where an email address is "johndoe@yahoo.com," the proposal is to unredact "johndoe" and redact "@yahoo.com," because identifying the speaker is more important than identifying the general domain name). In other instances, the domain name provides the most relevant information, and the proposal is the opposite (for example, where an email address is "johndoe@accountingfirm.com," the proposal is to redact "johndoe" and unredact "@accountingfirm.com," because the emailer's status as an employee of that accounting firm is more relevant than their name). In still other instances, the proposal is a combination which redacts a portion of the unique username and the domain name in a way which still allows the public to identify the emailer but redacts enough of the email address that the full contact information is not obvious.

redactions and permissive additional guidance allow parties to appropriately balance privacy interests with the common law right of access.

The common law right of access is intended to "promote[] public confidence in the judicial system" and "diminish[] possibilities for injustice, incompetence, perjury, and fraud." *In re Avandia Mktg., Sales Prac. & Prod. Liab. Litig.*, 924 F.3d at 677. For search warrant materials in particular, access is "important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *Bus. of Custer Battlefield Museum & Store*, 658 F.3d at 1194.

That public interest may be outweighed, however, by "the privacy interests of the individuals identified in the warrants and supporting affidavits." *Id.*; *see also United States v. Criden*, 648 F.2d 814, 829 (3d Cir. 1981) (recognizing that "legitimate privacy concerns of third parties" may outweigh the public right of access). That is particularly the case where the private information in question has little bearing on the public's ability to understand and assess the fairness of the criminal justice system. *See generally Bus. of Custer Battlefield Museum & Store*, 658 F.3d at 1194. In such cases, the "legitimate privacy concerns" are appropriately addressed through redactions. *Criden*, 648 F.2d at 829; *Bus. of the Custer Battlefield Museum & Store*, 658 F.3d at 1194 (recognizing redactions as appropriate way to address privacy concerns).

Contact information, for example, poses a "legitimate privacy concern" appropriate for redaction. Telephone numbers and email addresses are routinely redacted from public court filings to protect the user's privacy. *See, e.g.*, *McCowan v. City of Phila.*, No. 2:19-CV-03326-KSM, 2021 WL 3737204, at *3 (E.D. Pa. Aug. 24, 2021) (granting motion to redact personal information of nonlitigant witnesses including home addresses and phone numbers); *Del Nero v. NCO Fin. Sys., Inc.*, No. 2:06-CV-04823-JDW, 2021 WL 2375892, at *2 (E.D. Pa. June 10, 2021) (granting motion to seal to the extent it sought redactions of the movant's home and email addresses, the disclosure of which could subject him to continued death threats).

In addition, courts recognize a "valid privacy interest" in "the intimate details of individuals['] lives." *In re App. of WP Co., LLC*, 201 F. Supp. 3d 109, 129 (D.D.C. 2016); *see also App. of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) ("[T]he common law right of access is qualified by recognition of the privacy rights of the persons whose intimate relations may thereby be disclosed[.]"). These "substantial privacy and reputational interests extend to the target or subject of the criminal investigation as well as to third parties who may be mentioned or somehow involved in the investigation." *In re App. of WP Co., LLC*, 201 F. Supp. 3d at 123.[3]

---

[3] The government proposes redactions of intimate details only insofar as those details, or the quoted materials describing those details, are not otherwise public.

Accordingly, the government proposes narrow redactions to information which implicates a privacy interest outweighing the public's right of access. These proposed redactions are narrowly tailored to preserve the narrative integrity of the affidavits to allow the public to "understand and assess the fairness of" those statements of probable cause. *See generally Bus. of Custer Battlefield Museum & Store*, 658 F.3d at 1194.

## IV. References to Matters Before the Grand Jury Should be Redacted to the Extent They are Still Secret.

The search warrant affidavits also discuss grand jury material. Grand jury material is subject to neither a common law nor a First Amendment right of access. *United States v. Smith*, 123 F.3d 140, 148, 156 (3d Cir. 1997). As such, "even after the grand jury has concluded its proceedings, a private party petitioning for access to grand jury materials must show that "the need for [access] outweighs the public interest in secrecy, and ... the burden of demonstrating this balance rests upon the private party seeking disclosure." *Id.* at 148 (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw,* 441 U.S. 211, 223 (1979)).

### A. The Court May Consider Disclosure of Grand Jury Material Here.

Federal Rule of Criminal Procedure 6(e)(3)(E)(i) allows a court to authorize disclosure of a grand-jury matter "preliminarily to or in connection with a judicial proceeding." Where the Court must "make a decision on the release" of a document, "as to which portions are appropriate for release, and as to what orders are appropriate for the protection of individuals named therein," the matter is a judicial proceeding. *In re North*, 16 F.3d 1234, 1244–45 (D.C. Cir. 1994) (finding the Court was engaged in a "judicial proceeding" as contemplated by Rule 6(e) where Independent Counsel submitted its final report to the Court, and parties moved for partial or entire sealing of the report). That is because those decisions are "acts of the Court, in a genuine case or controversy between the movants and the [government]." *Id.* at 1244.[4]

Here, the search warrant affidavits in question are held by the Court, and the Court may order their disclosure, in whole or in part. *See Balt. Sun Co.*, 886 F.2d at

---

[4] By contrast, judicial proceedings "clearly" do not include "the very proceeding instituted for the purpose of obtaining disclosure" of grand jury material within the possession of the government, which would not otherwise require judicial review and decision-making. *Hiss v. Dep't of Just.*, 441 F. Supp. 69, 70-71 (S.D.N.Y. 1977) (denying plaintiff's motion for release of grand jury information to the government for production by the government to the plaintiff under Freedom of Information Act; reasoning that finding otherwise would set "a mischievous precedent"). Nor do judicial proceedings include requests for disclosure of grand jury materials to an agency for administrative review. *United States v. Baggot*, 463 U.S. 476, 479-83 (1983) (affirming denial of disclosure of grand jury material to IRS for civil tax audit).

65. The government requests that the Court exercise its authority under Rule 6(e)(i) to make the following redactions and disclosures of grand jury material.

### B.    References to Matters Before the Grand Jury which Remain Secret Should be Redacted.

The "proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal.*, 441 U.S. at 218. Disclosure of grand jury material is "appropriate only in those cases where the need for it outweighs the public interest in secrecy," and the "burden of demonstrating this balance rests upon the private party seeking disclosure." *Id.* at 223.

Here, the search warrant affidavits discuss grand jury matters which retain their secret, non-public nature. As such, the need to preserve grand jury secrecy remains despite the fact that the grand jury has concluded its investigation, and that Mr. Biden has received a pardon for all "offenses against the United States which he has committed or may have committed or taken part in during the period from January 1, 2014 through December 1, 2024." Exec. Grant of Clemency (Dec. 1, 2024), *available at* https://www.justice.gov/d9/2024-12/biden_warrant.pdf.

It is well established that grand juries retain their secrecy even after they have concluded. That is because, "in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Douglas Oil Co. of Cal.*, 441 U.S. at 222. As the Supreme Court has explained:

> Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties. Concern as to the future consequences of frank and full testimony is heightened where the witness is an employee of a company under investigation. Thus, the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.

*Id.*

Accordingly, the need to maintain grand jury secrecy is not defeated by the conclusion of that particular grand jury's activities or Mr. Biden's pardon. *Id.*, *see also, Petition of Craig*, 942 F. Supp. 881, 882-83 (S.D.N.Y. 1996) (finding grand jury retained secrecy almost 50 years later, where target of investigation died shortly after testifying before grand jury and no determination of guilt or innocence was made). To achieve disclosure, the party seeking the information must show that their need for disclosure outweighs the need for continued secrecy. *Douglas Oil Co. of Cal.*, 441

U.S. at 222.

Here, the petitioner framed his request as one for search warrants under the public's right to access judicial records, rather than specifically for grand jury material. D.I. 278 at 2-4. However, in doing so, the petitioner made reference to the public's desire for disclosure given the "significant public attention" the trial garnered. D.I. 278 at 1.

The petitioner's expression of public interest is valid, and the common law public right of access to judicial records does counsel in favor of disclosure of the search warrant affidavits with narrowly tailored redactions to preserve individuals' privacy as outlined above. However, the rationale cannot carry the day as to the limited portions of the affidavits which implicate grand jury secrecy. As one Court observed when considering the public interest in disclosure of materials related to McCarthy-era espionage, "if courts granted disclosure whenever the public had an interest in grand jury proceedings, Rule 6(e) would be eviscerated." *Petition of Craig*, 942 F. Supp. at 883. That some may regard the present case as having "historic interest and importance" does not outweigh the need to maintain grand jury secrecy. *Hiss*, 441 F. Supp. at 71.

Publicizing information about secret investigations implicates notions of due process and fairness. "[C]ourts have consistently warned against the unfairness of being stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing[.]" *In re App. of WP Co. LLC*, 201 F. Supp. 3d at 124 (collecting cases). As the Eighth Circuit has observed:

> [W]here no indictments have issued against persons allegedly involved in criminal activity, there is a clear suggestion that, whatever their truth, the Government cannot prove these allegations. The court of public opinion is not the place to seek to prove them. If the Government has such proof, it should be submitted to a grand jury, an institution developed to protect all citizens from unfounded charges. All citizens, whatever their real or imagined past history, are entitled to the protection of a grand jury proceeding.

*Certain Interested Individuals, John Does I-V, Who Are Emps. of McDonnell Douglas Corp. v. Pulitzer Pub. Co.*, 895 F.2d 460, 466 (8th Cir. 1990).

Information in a search warrant is but a "snapshot in time of the Department's understanding of the conduct at issue in the investigation," and does not reflect whatever "countervailing information" may have subsequently informed prosecutorial decisions about charging or the direction of the investigation. *In re L.A. Times Commc'n's LLC*, 628 F. Supp. 3d 55, 65 (D.D.C. 2022). As such, the government respectfully requests limited redactions to the search warrant affidavits to preserve grand jury secrecy.

**C.      References to Matters Before the Grand Jury which Became Public Should be Disclosed.**

The search warrant affidavits also include discussion of matters before the grand jury which later became public.  Those discussions are appropriate for disclosure.

"[A]s the considerations justifying secrecy become less relevant, a party asserting a need [for disclosure] . . . will have a lesser burden in showing justification." *Douglas Oil Co. of Cal.*, 441 U.S. at 223.  Consistent with that balancing principle, where information presented to the grand jury was also revealed at trial or in the press, the "cat is out of the bag," and the information "lose[s] its character as Rule 6(e) material." *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154-55 (D.C. Cir. 2007).

To be sure, Rule 6(e) "does not create a type of secrecy which is waived once public disclosure occurs."  *In re North*, 16 F.3d at 1245 (quoting *Barry v. United States,* 740 F. Supp. 888, 891 (D.D.C. 1990)).  "For that reason, it is commonly said that when the media reports information alleged to be grand jury material, the government is obligated to stand silent and not confirm the information, whether it is accurate or not."  *Id.* (internal quotations omitted).  However, there "must come a time, . . . when information is sufficiently widely known that it has lost its character as Rule 6(e) material," such as when the material is revealed in open court or referenced in a court filing.  *Id.* (quoting *In re Charlotte Observer,* 921 F.2d 47, 50 (4th Cir. 1990) (describing example where judge inadvertently identified the subject of a grand jury investigation in open court)).

In this case, the secrecy Rule 6(e) is designed to protect no longer exists with respect to matters before the grand jury which later became public.  Where, for example, a witness testified before the grand jury and then testified consistently at trial, the substance of that testimony is no longer secret.  However, the grand jury process, including the fact that a grand jury subpoena issued or the fact that a person appeared before the grand jury, remains secret.[5]

---

[5] However, where a witness later publicly acknowledged that they appeared before the grand jury, that person's status as a grand jury witness is no longer secret.  *See, e.g.*, *United States v. Robert Hunter Biden*, 1:23-CR-61-MN, D.I. 257 at 171:14. (Testimony of Kestan, Z.) ("I gave a grand jury testimony.").

**V.    The Search Warrant Materials are Judicial Records Not Subject to Redactions Under 5 U.S.C. § 552a (the Privacy Act) or 26 U.S.C. § 6103 (Concerning Tax Returns and Return Information).**

### A.  The Privacy Act does not Apply to the Judicial Records here.

The government does not propose additional redactions under 5 U.S.C. § 552a (the Privacy Act) or 26 U.S.C. § 6103, which concerns tax returns and return information.  Neither of those statutory frameworks applies to documents held by the Court.

The Privacy Act prohibits enumerated government agencies from disclosing private information held in that agency's system of records.  5 U.S.C. § 552a(b).  The list of agencies subject to that prohibition does not include "the courts of the United States."  5 U.S.C. § 551(1)(B).  Because the search warrant applications and affidavits in question are judicial records held by the Court, the Court is the disseminating party.  As such, the Privacy Act does not prohibit the Court from disclosing personal information therein.  Instead, as set forth above, the government has proposed redactions to protect people's privacy interests under the Federal and Local Rules and common law.

### B.  Section 6103's Prohibition Against Disclosure of Return Information does not Apply to the Judicial Records here.

A similar rule applies to tax returns and return information.  26 U.S.C. § 6103(a) prohibits disclosure of tax returns and return information unless authorized by an enumerated exception. The definitions of tax returns and return information are focused on documents and information within the possession of the Treasury Secretary.  26 U.S.C. §§ 6103(b)(1)-(2) (defining tax returns and return information), 7701(a)(11) (defining "Secretary" as the "Secretary of the Treasury or his delegate"). There are specific terms under which the Secretary may disclose tax returns or return information to other federal officers, including the Court in the context of judicial proceedings pertaining to tax administration.  26 U.S.C. § 6103(h).

However, the confidential nature of tax returns and return information does not carry forward endlessly.  The Circuit Courts have articulated variations on the theme, but under all but the Fourth Circuit's analysis, the search warrant affidavits and applications held by the Court fall outside the protections of Section 6103.

The Seventh, Fifth, and Tenth Circuits follow the "immediate source" doctrine, which states a person does not violate Section 6103 by citing to public records, even though tax return information is discussed therein.  The Fifth Circuit carefully distinguished the immediate source doctrine from the Ninth and Sixth Circuit's analysis (discussed below), stating the fact that tax information is made public through court proceedings does not mean the tax information may be communicated

indiscriminately thereafter; the actual tax records and information in the possession of the Treasury remain confidential, but the specific versions of documents discussing tax information within the Court's control, or the specific words spoken at a public trial, are fair game for redistribution. *Johnson v. Sawyer*, 120 F.3d 1307, 1321 n.1 (5th Cir. 1997); *see also Thomas v. United States*, 890 F.2d 18, 20-21 (7th Cir. 1989) (finding a party could properly republish a Tax Court Opinion which discussed tax information, because the Opinion itself was not tax information under Section 6103, even though it discussed tax information); *Rice v. United States*, 166 F.3d 1088, 1091 (10th Cir. 1999) (finding an indictment, trial, and sentencing were all public documents and proceedings and that dissemination of information disclosed therein did not violate Section 6103). This rationale is consistent with the IRS's position that Section 6103 does not ban the further disclosure of tax information that is taken directly from a public court record. *See* IRS Publication 4639, at 2-31 − 2-32, *available at* https://www.irs.gov/pub/irs-pdf/p4639.pdf; Internal Revenue Manual 11.3.11.12(3), *available at* https://www.irs.gov/irm/part11/irm_11-003-011.

The Ninth Circuit, in articulating its broader approach, has held that "if a taxpayer's return information is lawfully disclosed in a judicial proceeding . . . the information is no longer confidential and may be disclosed again without regard to section 6103." *Lampert v. United States*, 854 F.2d 335, 337-38 (9th Cir. 1988). That is because "court records are public domain," and "once tax return information enters the public domain, the taxpayer no longer has any privacy interests in that information." *Id.* at 337-38; *see also Rowley v. United States*, 76 F.3d 796, 799-800 (6th Cir. 1996) (finding Section 6103 did not prohibit republication of tax return information placed in the public domain by the filing of tax lien notices, given that tax lien notices are intended by their nature to provide notice to the public, but not ruling with respect to disclosures in judicial proceedings).[6] This rationale comports with the general proposition that "[w]hat transpires in the court room is public property," *Craig v. Harney*, 331 U.S. 367, 374 (1947).

The Fourth Circuit, an outlier in the analysis, has found that dissemination of tax information made public through trial was not specifically authorized by Section 6103, and thus was prohibited. *Mallas v. United States*, 993 F.2d 1111, 1120–21 (4th Cir. 1993) (finding that dissemination of IRS agents' reports describing fraud and tax evasion convictions, without mentioning that convictions had been reversed, violated

---

[6] The closest the Third Circuit has come to the discussion of tax information in the public domain was the affirmance of the adoption of a Magistrate's Report and Recommendation. *Barnes v. United States*, 17 F.3d 1428 (Table) (3d Cir. 1994), affirming the district court's adoption of the Magistrate's Report and Recommendation. See 1991 U.S. Dist. LEXIS 21633, at **14-15 (W.D. Pa. Aug. 2, 1991) (magistrate's recommendation), adopted at 1991 U.S. Dist. LEXIS 12883 (W.D. Pa. Aug. 27, 1991). The Report and Recommendation is generally consistent with the Ninth and Sixth Circuits' approach but is not squarely on point. It found that a press release announcing an indictment contained tax information such as the defendant's name and address, but it concluded the press release was not issued in violation of Section 6103 because the information – which was not included in the indictment – was otherwise already public. *Id.*

Section 6103).

The government recommends that the Court unseal the discussions of tax information in the search warrant affidavits. The discussions within the search warrant affidavits – which are judicial records – fall outside the protections of Section 6103 whether considered under the immediate source doctrine or the framework articulated by the Ninth and Sixth Circuits. Disclosure is, accordingly, consistent with a majority of Circuit Courts. To the extent the discussions of tax information also include information implicating privacy interests or grand jury secrecy as discussed above, those considerations remain, and the government proposes redactions accordingly.

## VI.    Conclusion

For the reasons set forth herein, the government respectfully requests that the Court order it to file publicly on the docket the redacted search warrants and applications, consistent with the proposed redactions as set forth in Exhibits A-D.

Counsel for Mr. Biden objects to neither unsealing nor the proposed redactions.


/s/ *Shannon T. Hanson*
Shannon T. Hanson
Acting United States Attorney
District of Delaware