AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No. 20- 165M |
| *or identify the person by name and address)* | ) | |
| APPLE ICLOUD BACKUPS | ) | |
| | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ Delaware _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 7201 | Tax Evasion |
| 26 U.S.C. § 7203 | Willful Failure to File Tax Returns or Pay Taxes |
| 26 U.S.C. § 7206(1) | False Tax Returns |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Joseph A. Ziegler, IRS-CI
*Printed name and title*

FILED
JUL 10 2020
US DISTRICT COURT
DISTRICT OF DELAWARE

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: July 10, 2020

*Judge's signature*

City and state: Wilmington, Delaware

Hon. Sherry R. Fallon, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE SEARCH OF:

APPLE ICLOUD BACKUPS

Case No. _____

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Joseph A. Ziegler, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules
of Criminal Procedure for a search warrant authorizing the examination of property described
specifically below—an APPLE ICLOUD ACCOUNT, which contains specific APPLE ICLOUD
BACKUP DATA, that was previously provided by Apple Inc. ("Apple") pursuant to a search
warrant —which is currently in law enforcement possession, and the extraction from that property
of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Internal Revenue Service, Criminal Investigation
("IRS-CI") and have been since January of 2010.  I am currently assigned to the Washington D.C.
Field Office working out of Atlanta, Georgia.  I am assigned to the International Tax & Financial
Crimes Group.  Upon joining IRS-CI, I attended the Federal Law Enforcement Training Center in
Glynco, Georgia.  There, I received instruction on tax-related courses, investigative techniques,
search and seizures, and various other aspects of federal law enforcement for approximately six
months.  I have received training, both formal and informal in the enforcement and investigation
of these laws, interviewing techniques, and the use of physical and electronic surveillance.
Through my training and experience, I have become familiar with the techniques used by

1

individuals who violate the federal tax laws and who engage in other financial crimes. I have participated in a range of financial investigations and have been the affiant on a number of tax-related search warrants.

3.       In connection with my official duties, I investigate criminal violations of federal tax law and related statutes, including tax evasion (26 U.S.C. § 7201), willful failure to file tax returns and pay tax (26 U.S.C. § 7203), willfully filing false tax returns (26 U.S.C. § 7206(1)), and conspiracy to defraud the IRS (18 U.S.C. § 371), and violations of the Bank Secrecy Act, such as willful failure to file a Report of Foreign Bank and Financial Accounts (31 U.S.C. §§ 5314; 5322(a); 5322(b)).

4.       The facts set forth in this Affidavit are based on my personal observations, my training and experience, information obtained from other FBI and IRS agents and analysts, subpoenaed records, financial records, records obtained pursuant to court orders issued under 18 U.S.C. § 2703(d), records obtained by search warrants, publicly available information, and IRS records. Because I submit this Affidavit for the limited purpose of showing probable cause, I have not included in this Affidavit each and every fact that I have learned in this investigation. Rather, I have set forth only facts sufficient to establish probable cause to issue a search warrant for specific iPhone and iPad backups contained within the Apple iCloud User Account RHBCD@iCloud.com. The search would include a forensic review and extraction of data of the following items within the Apple iCloud User Account RHBCD@icloud.com, which are identified in Attachments A and B (collectively referred to as the "APPLE ICLOUD BACKUP DATA"):[1]

---

[1]    On September 12, 2019, the Court issued an Order examining several legal issues presented by search warrant applications such as this one and explained the basis for granting such applications. Mem. Order, Criminal Action No. 19-234M (Sept. 12, 2019). As requested by the Court, I am referencing that Order in this affidavit, which I believe to be applicable to this application for a search warrant.

    a.  A   backup   of   Apple   iPhone   X   Device   Identification

        D_8c78970d9dda9f5dbc1625b311efc72a6c50f68f ("Apple Backup 1");

    b.  A   backup   of   Apple   iPhone   6S   Device   Identification

        D_cdbe6900fc533da66a6c28169158d05cfb419a70 ("Apple Backup 2");

    c.  A   backup   of   Apple   iPad   Pro   Device   Identification

        D_f846713a36c06653457179e18582aa1c478e8db4 ("Apple Backup 3");

    d.  A   backup   of   Apple   iPhone   XR   Device   Identification

        D_a15b4a173b8ee009ee9adb908be74e4db618a323 ("Apple Backup 4").

5.     Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.     The property to be searched is the APPLE ICLOUD BACKUP DATA (described above) located in the iCloud[2] account data provided by Apple for the Apple User Identification ("Apple ID") rhbdc@icloud.com contained within Apple Production 19275210 received on or about September 25, 2019 (hereinafter "APPLE ICLOUD ACCOUNT"), pursuant to a prior search warrant for the Apple email account rhbc@icloud.com.[3] The production included emails and other associated data, such as photos, iPhone and iPad back-ups, and other materials. Only the emails and related attachments in the production were reviewed pursuant to the prior warrant. As of the date of this instant warrant, no government agent or attorney has reviewed the non-email content of the production, apart from reviewing account identifier information and the type and amount of

---

[2] According to Apple.com, the "iCloud" is a paid service that allows a user to store their photos, videos, documents, music, and applications. In addition, the user can also save and store backups of their Apple products, to include iPhones, iPads and iMacs.
[3] The Court previously issued a search warrant for the Apple email account rhbc@icloud.com: Case #19-234M issued on August 29, 2019. On or about September 25, 2019, we received a hard drive from Apple which in part contained an email production, as well as the entire iCloud account for the Apple ID rhbdc@icloud.com.

data provided by Apple. The applied-for warrant would authorize the examination and extraction of the APPLE ICLOUD BACKUP DATA from the APPLE ICLOUD ACCOUNT for the purpose of identifying electronically stored data particularly described in Attachments A and B.

7.    The APPLE ICLOUD ACCOUNT, including the APPLE ICLOUD BACKUP DATA, is currently located at the FBI-Wilmington Resident Agency, 500 Delaware Avenue, Suite 300, Wilmington, DE, 19801.

## SUMMARY OF THE INVESTIGATION AND STATEMENT OF PROBABLE CAUSE

8.    The instant affidavit fully incorporates the Summary of Investigation and Statement of Probable Cause as set forth in the affidavit in support of the search warrant previously issued by this Court on December 13, 2019, Case #19-310M, attached hereto as Exhibit 1.[4] As previously set forth and fully incorporated herein, there is probable cause to believe that Robert Hunter Biden (hereinafter, the "SUBJECT") has filed a false IRS Form 1040, 2014 U.S. Individual Income Tax Return ("Form 1040") by not reporting income, in violation of 26 U.S.C. § 7206(1); has evaded the timely payment of some of his 2015 individual income taxes, in violation of 26 U.S.C. § 7201; has willfully failed to timely and fully pay individual income taxes for 2015, in violation of 26 U.S.C. § 7203[5]; has evaded assessment of his 2016, 2017, and 2018 individual income taxes, in violation of 26 U.S.C. § 7201[6]; and has willfully failed to timely file Forms 1040 for the tax years

---

[4] The Court previously issued other search warrants which lay out the complete investigation thus far. Refer to: Case #19-266M issued on October 28, 2019; Case #19-296M issued on December 5, 2019; Case #19-315M issued on December 18, 2019; Case #20-30M issued on January 30, 2020; Case #20-35M issued on February 11, 2020, and Case #20-47M issued on February 19, 2020.

[5] According to IRS records, on or about February 6, 2020, a payment of approximately $160,560 was made towards the unpaid penalties, interest, and tax for the SUBJECT's 2015 individual income tax debt. As the potential criminal act of failure to timely pay his 2015 taxes was completed prior to the recent payment, there remains probable cause to believe the SUBJECT failed to timely pay his 2015 taxes.

[6] In paragraphs 43 and 58 of the incorporated affidavit, your affiant referenced the filing of false applications for extension as affirmative acts of tax evasion. At this time, based on additional information learned in the investigation, I am not relying on this theory herein. However, there remains probable cause to believe the SUBJECT committed tax evasion as otherwise set forth in the incorporated affidavit.

2016, 2017, and 2018, in violation of 26 U.S.C. § 7203[7]. In addition, there is also probable cause to believe that the SUBJECT has willfully failed to timely file an IRS Form 1120, U.S. Corporation Income Tax Return ("Form 1120" or "corporate tax return") for the tax years 2017 and 2018, in violation of 26 U.S.C. § 7203.[8]

### A. Apple iCloud Backup Data

9.     According to records provided by Apple for the Apple ID rhbdc@icloud.com, the APPLE ICLOUD ACCOUNT is an iCloud account created on or about October 17, 2011, in the name of the SUBJECT, and contains data from various services provided by Apple.

10.     After receipt of the APPLE ICLOUD ACCOUNT, an IRS-CI, Computer Investigative Specialist performed a review. Based on that review, I have identified a total of eleven Apple iPhone and iPad backups in the APPLE ICLOUD ACCOUNT which appear to be related to the SUBJECT. For purposes of this affidavit, we are requesting to perform a forensic review and extraction of the APPLE ICLOUD BACKUP DATA within the APPLE ICLOUD ACCOUNT, including:

---

[7] On or about February 18, 2020, the IRS received the SUBJECT's 2017 and 2018 Forms 1040. As of June 8, 2020, the IRS has neither processed nor scanned the two returns, which was due to the shutdown of IRS operations. We have been informed that the tax returns report tax balances due of $581,713 for 2017 and $620,901 for 2018, with no payments made for these tax years. As of June 8, 2020, the IRS has not received the SUBJECT's 2016 Form 1040. As the potential criminal act of failure to timely file his 2017 and 2018 Forms 1040 was completed prior to the recent filings, as well as the unfiled 2016 Form 1040, there remains probable cause to believe the SUBJECT failed to timely file his 2016, 2017 and 2018 tax returns and probable cause to believe that the SUBJECT evaded the assessment of his 2016, 2017, 2018 taxes.

[8] On or about February 20, 2020, the IRS received and processed the Owasco PC 2017 and 2018 Forms 1120. Copies of the returns have been received and reviewed. The returns report tax balances due of $13,630 for 2017 and $4,247 for 2018, with no payments made for these tax years. We have not been able to perform an extensive review of the returns due to not having copies of the Forms 1040, but there is an indication of underreporting of total income for 2017 and 2018. As the potential criminal act of failure to timely file the 2017 and 2018 Forms 1120 was completed prior to the recent filings, there remains probable cause to believe the SUBJECT failed to timely file the 2017 and 2018 Owasco PC tax returns and probable cause to believe that the SUBJECT evaded the assessment of his 2017 and 2018 taxes.

    a.  Apple Backup 1;

    b.  Apple Backup 2;

    c.  Apple Backup 3;

    d.  Apple Backup 4.

11.    In addition to the APPLE ICLOUD BACKUP DATA associated to the APPLE ICLOUD ACCOUNT, the devices also were associated with phone numbers believed to belong to the SUBJECT.[9]

12.    Based on a review of the APPLE ICLOUD BACKUP DATA:

    a.  Apple Backup 1 contains approximately 110 WhatsApp[10] chats comprised of a total of 2,637 messages from September of 2017 through September of 2018;

    b.  Apple Backup 2 contains approximately 166 WhatsApp chats comprised of a total of 3,062 messages from May of 2017 through March of 2019;

    c.  Apple Backup 3 contains approximately 22 WhatsApp chats comprised of a total of 588 messages from September of 2017 through April of 2018; approximately 15 WeChat[11] chats comprised of a total of 310 messages from October of 2017 through January of 2018 using the username "Hudson W Hunter"; approximately 421 iMessage chats comprised of 7,338 messages using the email address

---

[9] When the backup is captured by Apple, it identifies an MSISDN (Mobile Station International Subscriber Directory Number) with the backup. According to Google, the MSISDN is a number used to identify a mobile phone number internationally. Apple Backup 1, 2 and 4 had associated MSISDN with the devices that were owned by the SUBJECT. Apple Backup 3 did not have an MSISDN but had a phone number belonging to the SUBJECT used for the "HangOuts" account on the device. According to Google, Hangouts is an Apple Application that allows a user to call any phone number in the World.

[10] According to Google, WhatsApp is a cross-platform messaging and Voice over IP service that allows its users to send text messages and voice messages, make voice and video calls, and share images, documents, user locations, and other media. WhatsApp has more than two billion users in over 180 countries.

[11] According to Google, WeChat is a Chinese multi-purpose messaging, social media, and mobile payment application.

rhb@rspdc.com[12]; approximately 93 iMessage chats comprised of 8,560 messages using the email address rhbdc@icloud.com; approximately 27 multimedia messaging service (MMS) chats; and approximately 1,345 Short Messaging Service (SMS) chats all covering the period May of 2018 through January of 2019.

d. Apple Backup 4 contains approximately 184 WhatsApp chats comprised of a total of 3,962 messages from September of 2017 through May of 2019.

**B.**  *Use of Messaging Services and Technologies*

13.    As previously referenced, on December 13, 2019, the Court issued a warrant, Case #19-309M, which authorized the search of an Apple Laptop and an External Hard-drive believed to have been associated with the SUBJECT.  After the forensic review of the External Hard-drive, a backup of the SUBJECT's Apple iPhone 11 was found and subsequently reviewed. The Apple iPhone 11 was backed up using the SUBJECT's Apple ID, as well as a phone number associated with the SUBJECT.  The Apple iPhone 11 was backed up to the Apple Laptop on or about February 6, 2019.  The date range of the data recovered from the Apple iPhone 11 backup was from on or about October 13, 2018 through February 6, 2019.  I have reviewed iMessages, SMS, MMS, and WhatsApp messages found on the SUBJECT's Apple iPhone 11 backup, which show that the SUBJECT used these messaging services to discuss his business dealings, income, payments and expenditures, and tax matters.  Further, the messages reviewed from the Apple iPhone 11 backup cover a four-month period and the messages found within the APPLE BACKUPS cover the period May of 2017 through May of 2019.  The following relevant items were found on the SUBJECT's Apple iPhone 11 backup:

---

[12] The rhb@rspdc.com email address is a Google email account registered to the SUBJECT.  Based on the records provided by Apple, rhb@rspdc.com is an alternate email account associated with SUBJECT's APPLE ICLOUD ACCOUNT.

a. On or about November 16, 2018, iMessages were sent between the SUBJECT and Katie Dodge ("Dodge"), who was the SUBJECT's assistant at that time, discussing the company's payroll. In the message, the SUBJECT messaged Dodge: "just don't pay me. Can you do that. And is Lunden still on the Payroll???". Dodge responded: "Yes Lunden is still on payroll." Based on our review of records provided by ADP as well as public records, the "Lunden" that the SUBJECT referred to is believed to be Lunden Roberts. Lunden Roberts sued the SUBJECT in Arkansas in 2019 for child support that the SUBJECT owed for a child he had fathered in August of 2018.

b. On or about November 27 and December 3, 2018, iMessages were sent between the SUBJECT and Dodge, discussing some of the SUBJECT's business matters. In one message, Dodge asked: "Also an [sp] you please check the RHBDC email account for emails from Eric (re.BHR loan[13]) and Kathleen re.refi of Lake house thx." Dodge further advised: "BTW I am sending the Burisma invoice today but the won't pay it until later this month." The SUBJECT responded, "I'm wooing [sp] on it thx".

c. In another thread, or about November 28, 2018, Dodge sent SUBJECT an iMessage informing: "I think Bill [Morgan] was trying to reach you re: taxes[.] Just sent you the letter re: lien to rhbdc email. It's on the page with roughly $13k amount." Bill Morgan is the SUBJECT's accountant. Later in the same chain, Dodge advised SUBJECT that "Monthly expenses - $87K per month not including any payments for Taxes[.]"

---

[13] This is believed to be Bohai Harvest RST. Based on various records, this is a Chinese equity investment firm in which the SUBJECT sits on the board of directors and is an equity owner of.

d.  On December 4 and December 6, 2018, iMessages were sent between the SUBJECT and Dodge discussing the payments of the SUBJECT's bills. Dodge identified a number of bills to be paid including "a health insurance bill - $2700. Sidwell ($4300) & boat payment ($420) are coming up. And $10k for taxes," as well as a bill of $15,200 from Bill Morgan. The SUBJECT responded with: "Don't pay bill or tuition just yet" and "Only pay Kath Sidwell Boat." Based on my review of various records, prior to these messages, the SUBJECT had been making $10,000 payments to the IRS for his 2015 tax debt. The SUBJECT made the last $10,000 payment on or about March 5, 2018. There was no payment to the IRS during December of 2018, and as of that month, he owed approximately $152,000 for his 2015 tax debt.

e.  Between December 18, 2018 and December 20, 2018, the SUBJECT and Devon Archer ("Archer") exchanged iMessages discussing the payments received from Burisma. The SUBJECT and Archer discussed the timing of the wires from Burisma and how they had been splitting the payments from Burisma. Archer said, "We have not been splitting for past few months but generally yes she [believed to be a reference to Dodge] sends half after it gets to your account." At the end of the conversation, the SUBJECT sent the following message to Archer: "What's app". I was not able to find any messages between the SUBJECT and Archer in the WhatsApp messages backed up to the Apple Laptop.

f.  Between November 26, 2018 and January 2, 2019, the SUBJECT and his ex-wife, Kathleen Biden ("Kathleen") exchanged iMessages in which they discussed the SUBJECT's taxes. On November 26, 2018, Kathleen messaged the SUBJECT:

"I just received a call that there is a tax lien against me because you are delinquent on a payment to the IRS of $112,805. If you don't respond to me by tomorrow morning, I go to my lawyer."[14]  At one point, the SUBJECT told Kathleen that he wasn't aware of the tax lien. In another message, the SUBJECT said: "When I can pay the taxes I will pay the taxes".  On December 20, 2018, Kathleen asked the SUBJECT to allow his return preparer to share the SUBJECT's tax returns with her. The SUBJECT responded, "(…) And I have not filed the taxes and have been extending (…)" and then later added, "My tax returns aren't completed. Bill is going off information from Eric that is not accurate at all. I don't understand. I will call him now. Regarding Bill I have no prepared tax returns to send you now." Based on my review of the emails from Google and Apple received pursuant to previously executed search warrants, at this same time, the SUBJECT's accountant had prepared the SUBJECT's 2017 individual and corporate income tax returns, both of which showed a significant tax due and owing, and was attempting to send the returns to the SUBJECT so that he could file them with the IRS.

g.  On November 30, 2018, the SUBJECT and his sister-in-law Hallie Biden ("Hallie") exchanged iMessages. The SUBJECT asked Hallie to wire money into his bank account and promised that he would pay her back.  The SUBJECT claimed:  "Taxes came out of my accounts and leaves me short for girls and Kathleen."

---

[14] Based on a review of the IRS records, this tax lien is believed to be related to the taxes the SUBJECT owes for the 2015 tax year as the IRS account balance for 2015, not including penalties and interest, was approximately $112,805, which is the same amount referenced by Kathleen.

h. On January 17, 2019, the SUBJECT and Hallie exchanged iMessages in which the SUBJECT claimed that he paid Hallie's American Express bills in the prior year and also paid for her rehabilitation.

i. On December 25, 2018, an SMS message was sent from Robinson Walker ("Walker") to the SUBJECT in which he said, "Merry Christmas, buddy." Robinson Walker is one of the SUBJECT's business associates, and the SUBJECT appears to have earned income from ventures with Walker. Based on the review of the backup, this was the only message sent to and/or received from Walker. I include this message, however, as it reveals that the SUBJECT was also receiving some SMS messages from business partners.

j. On December 28, 2018, James Biden ("James"), the SUBJECT's uncle, sent an SMS message to the SUBJECT in which he stated: "Look at w/App. Idea." On December 28 and 29, 2018, James and the SUBJECT exchanged messages using WhatsApp. James said, "Why don't you take them up on their offer. There is a place I found in Colorado skii ect (sp) outdoor stuff. 90 days. (…) By that time we will have made it with all of these deals or not. I think we will. (…) Deal with K when you get out?! (…)". In a later message, James said, "This can work, you need safe harbor. I can work with your father alone!! We as usual just need several months of his help for this to work. Let's talk about it. It makes perfect sense to me. This is difficult to fully vet without talking. Will you please call me on w/A

[believed to be a reference to WhatsApp]. We can develop a plan together. It can work. I'm going to try to call yo [sp] again please Ans."[15]

k. Between October of 2018 and February of 2019, there were numerous SMS, MMS, and WhatsApp message exchanges between the SUBJECT and alleged prostitutes in which they discussed financial transactions as well as in-person meetings.

l. During this same time period, the SUBJECT received multiple SMS messages from Wells Fargo confirming financial transactions and wires from the SUBJECT's bank accounts.

14.    I have reviewed documents provided by multiple sources which further show that the SUBJECT and his business partners used WeChat to send documents and have conversations. For example:

a. On the SUBJECT's laptop, a screenshot was found of a WeChat message between Gongwen (also known as Kevin) Dong and an individual believed to be the SUBJECT. The date of the conversation is not apparent. In the message, they appear to be discussing one of the SUBJECT's business ventures, Hudson West III. The SUBJECT wrote: "Please let me know when friend is available Kevin. I promise you I am calm and focused. My frustration is that I am feeling very much disconnected from my partners and completely in the dark as to our future and present to be honest. As you and he know I have given up all other sources of income to pursue the interests of HW3 by developing projects to the joint benefit

---

[15] WhatsApp is an end to end encryption messaging service. Based on my training and experience, individuals typically use WhatsApp when they want to communicate in "secret". This is further evidenced with the SUBJECT's communication with James in which James asks the SUBJECT to move their communication to WhatsApp.

of both my home and yours. Everything I have done as well as Jim has been beyond reproach. I have absolutely nothing to hide or be concerned about relating to my work towards furthering the above goal."

b. I have reviewed a September 21, 2017 email conversation between Celinen ███████ com and ay.accou ███████ com, with Gongwen Dong copied, that was obtained via a Court issued warrant, Case #19-315M issued on December 18, 2019. In the email, Celiner ███████ com stated that Kevin [believed to be Gongwen Dong] was in China so he could not use his Gmail account and that, as such, he replied using his WeChat account.

c. In an email exchange between the SUBJECT's business associate, Eric Schwerin ("Schwerin), and Dodge on January 7, 2019, Schwerin informed Dodge that he sent a loan agreement for "BHR," believed to be Bohai Harvest RST, to Xin via WeChat. Based on our review of various records, Xin is believed to be a business associate of the SUBJECT who is also involved with Bohai Harvest RST.

15.     Based on my training and experience and my discussions with other IRS and FBI agents and analysts, individuals who engage in tax evasion schemes typically create multiple business entities and bank accounts to make it difficult for law enforcement to trace the flow of income. Such individuals often use their phones and/or iPads through the use of email, SMS, MMS, WhatsApp, and WeChat messaging services to communicate with their various business partners, their employees, family, and individuals from whom they are receiving money, as well as with their accountants and/or tax preparers concerning business dealings, corporate structures, and taxes.

13

16.    Based on the information discussed in the probable cause section of this affidavit as well as my training and experience, there is probable cause that the APPLE ICLOUD ACCOUNT would contain the APPLE ICLOUD BACKUP DATA, which contain iMessage, SMS, MMS, WhatsApp and WeChat messages that the SUBJECT used to communicate with business partners, family, and friends regarding the SUBJECT's business dealings, tax matters, as well as income and expenditures made by or on behalf of the SUBJECT. There is also probable cause to believe that the APPLE ICLOUD BACKUP DATA contains evidence, further described in Attachment B, of business discussions, documents, and pictures/screenshots created by or on behalf of the SUBJECT, which are relevant to the tax offenses currently under investigation.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17.    As described above and in Attachment B, this application seeks permission to search for iMessages, SMS, MMS, WhatsApp, and WeChat messages found on the APPLE ICLOUD BACKUP DATA which are located on the APPLE ICLOUD ACCOUNT.

18.    *Probable Cause*. There is probable cause to believe that the APPLE ICLOUD BACKUP DATA on the APPLE ICLOUD ACCOUNT contain the SUBJECT's iMessages, SMS, MMS, WhatsApp, and WeChat messages and may still be stored there, for at least the following reasons:

   a. Based on the IRS-CI, Computer Investigative Specialist review of the APPLE ICLOUD ACCOUNT, a total of eleven Apple iPhone and iPad backups were found and are believed to be associated to the SUBJECT. Of those eleven backups, we have identified four backups that appear to contain relevant information;

      i. Apple Backup 1;

      ii. Apple Backup 2;

14

       iii. Apple Backup 3;

       iv. Apple Backup 4.

  b. As set forth above, the four Apple Backups referred to above, are linked to the SUBJECT through Apple Backup 1, 2 and 4 are linked to the SUBJECT through associated MSISDN with the devices that were owned by the SUBJECT. Apple Backup 3 did not have an MSISDN but had a phone number belonging to the SUBJECT used for the "HangOuts" account on the device.

  c. The four Apple Backups referred to above contain actual content and based on the review performed by the IRS-CI, Computer Investigative Specialist, the backups contain iMessages, SMS, MMS, WhatsApp, and WeChat messages.

19. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the APPLE ICLOUD BACKUP DATA was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the APPLE ICLOUD BACKUP DATA because:

  a. Data on the storage medium can provide evidence of a message that was once on the storage medium but has since been deleted or edited, or of a deleted portion of the message. Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a backup is evidence may depend on other information stored on the backup and the application of knowledge about how the backup behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20.    *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the APPLE ICLOUD BACKUP DATA consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium,

16

that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## FILTER REVIEW PROCEDURES

22.    Review of the items described in Attachment A and Attachment B will be conducted pursuant to established procedures designed to collect evidence in a manner consistent with professional responsibility requirements concerning the maintenance of attorney-client and other operative privileges. The procedures include use of a designated "filter team," separate and apart from the investigative team, in order to address potential privileges.

## CONCLUSION

23.    Based on the forgoing, I request that the Court issue the proposed search warrant. I submit that this affidavit supports probable cause for a warrant to search the APPLE ICLOUD ACCOUNT for the APPLE ICLOUD BACKUP DATA, which is located at FBI-Wilmington Resident Agency, 500 Delaware Avenue, Suite 300 Wilmington, DE, 19801.

## REQUEST FOR SEALING

24.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution,

destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Joseph A. Ziegler
Special Agent
Internal Revenue Service
Criminal Investigation

Subscribed and sworn to before me on ___July 10_____, 2020, by telephone.

HONORABLE SHERRY R. FALLON
UNITED STATES MAGISTRATE JUDGE

18

## ATTACHMENT A

### Property to be Searched

The property to be searched is the APPLE ICLOUD BACKUP DATA, defined below, located in the iCloud account data provided by Apple for the Apple User Identification rhbdc@icloud.com contained within Apple Production 19275210 received on or about September 25, 2019, pursuant to a prior search warrant for the Apple email account rhbc@icloud.com. The APPLE ICLOUD BACKUP DATA associated with Apple ID rhbdc@icloud.com and that will be searched includes the following specific device information:

- backup of an Apple iPhone X Device Identification D_8c78970d9dda9f5dbc1625b311efc72a6c50f68f;

- backup of an Apple iPhone 6S Device Identification D_cdbe6900fc533da66a6c28169158d05cfb419a70;

- backup of an Apple iPad Pro Device Identification D_f846713a36c06653457179e18582aa1c478e8db4; and

- backup of Apple iPhone XR Device Identification D_a15b4a173b8ee009ee9adb908be74e4db618a323.

(collectively, the "APPLE ICLOUD BACKUP DATA").

The APPLE ICLOUD BACKUP DATA is currently located at the FBI-Wilmington Resident Agency, 500 Delaware Avenue, Suite 300 Wilmington, DE, 19801.

1

## ATTACHMENT B

### Particular Things to be Seized

All information that constitutes fruits, contraband, evidence, and instrumentalities of tax evasion (26 U.S.C. § 7201), willful failure to file tax returns and failure to pay income tax (26 U.S.C. § 7203), and willfully filing false tax returns (26 U.S.C. § 7206(1)), those violations involving Robert Hunter Biden or any entity he owns or controls, occurring after January 1, 2014, including, for the APPLE ICLOUD BACKUP DATA listed on Attachment A, information pertaining to the following matters:

(a) All financial and other bookkeeping information and records, including correspondence regarding the same;

(b) All records and information relating to federal, state, and foreign individual, corporate, employment and property taxes, including correspondence regarding the same;

(c) All records and information pertaining to personal and business expenditures including correspondence regarding the same;

(d) All records and information reflecting business operations and business ownership, including business incorporation documents, employment records, paychecks, business expenses, business income, investments, and work schedules, including correspondence regarding the same;

(e) Evidence indicating the state of mind of the owner and user of the APPLE ICLOUD BACKUP DATA as it relates to the crime under investigation;

(f) Evidence of user attribution showing who used or owned the APPLE ICLOUD BACKUP DATA at the time the things described in this warrant were created,

2

edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI or IRS-CI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3

# EXHIBIT 1

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Delaware

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

eschweri[_____]om that is stored at
premises controlled by Google, Inc.

Information associated with

)
)
)
)
)

Case No. 19- 310M

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein

located in the ____Northern____ District of ____California____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

□ contraband, fruits of crime, or other items illegally possessed;

□ property designed for use, intended for use, or used in committing a crime;

□ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C § 7201 | Tax Evasion |
| 26 U.S.C § 7203 | Willful Failure to File Tax Returns or Pay Taxes |
| 26 U.S.C § 7206(1) | False Tax Returns |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

□ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Joseph A. Ziegler, IRS-CI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __12/13/2019__

City and state: Wilmington, Delaware

_____
*Judge's signature*

Honorable Sherry R. Fallon, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
ESCHWERIN███████████████COM
THAT IS STORED AT PREMISES
CONTROLLED BY GOOGLE, INC.

Case No. 19-310m

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Joseph A. Ziegler, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with the Google, Inc. email address ESchwerin█████████com ("Google Account 1") as further described in Attachment A that is stored at premises owned, maintained, controlled, or operated by Google, Inc., ("Google") an email provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

2.      This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.[1]  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

---

[1] On September 12, 2019, the Court issued an Order examining several legal issues presented by search warrant applications such as this one and explained the basis for granting such applications. Mem. Order, Criminal Action No. 19-234M (Sept. 12, 2019). As requested by the Court, I am referencing that Order in this affidavit, which I believe to be applicable to this application for a search warrant.

1

3.    I am a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI") and have been since January of 2010. I am currently assigned to the Washington D.C. Field Office working out of Atlanta, Georgia. I am assigned to the International Tax & Financial Crimes Group. Upon joining IRS-CI, I attended the Federal Law Enforcement Training Center in Glynco, Georgia. There, I received instruction on tax-related courses, investigative techniques, search and seizures, and various other aspects of federal law enforcement for approximately six months. I have received training, both formal and informal, in the enforcement and investigation of these laws, interviewing techniques, and the use of physical and electronic surveillance. Through my training and experience, I have become familiar with the techniques used by individuals who violate the federal tax laws and who engage in other financial crimes. I have participated in a range of financial investigations and have been the affiant on a number of tax-related search warrants.

4.    In connection with my official duties, I investigate criminal violations of federal tax law and related statutes, including tax evasion (26 U.S.C. § 7201), willful failure to file tax returns and pay tax (26 U.S.C. § 7203), willfully filing false tax returns (26 U.S.C. § 7206(1)), and conspiracy to defraud the IRS (18 U.S.C. § 371), and violations of the Bank Secrecy Act, such as willful failure to file a Report of Foreign Bank and Financial Accounts (31 U.S.C. §§ 5314; 5322(a); 5322(b)).

5.    The facts set forth in this Affidavit are based on my personal observations, my training and experience, information obtained from other FBI and IRS agents and analysts, subpoenaed records, financial records, records obtained pursuant to court orders issued under 18 U.S.C. § 2703(d), publicly available information, and IRS records. Because I submit this Affidavit for the limited purpose of showing probable cause, I have not included in this Affidavit

2

each and every fact that I have learned in this investigation. Rather, I have set forth only facts sufficient to establish probable cause to issue a search warrant for the email accounts identified above. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## JURISDICTION

6.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## SUMMARY OF THE INVESTIGATION

7.    The Federal Bureau of Investigation and IRS-CI are currently conducting a criminal tax investigation into Robert Hunter Biden ("the SUBJECT"). The investigation has thus far revealed that the SUBJECT and/or entities he controls have concealed from the IRS and underreported a substantial amount of foreign and domestic income since at least 2014.[2] In so concealing this income, there is probable cause to believe that the SUBJECT has filed a false IRS Form 1040, 2014 U.S. Individual Income Tax Return ("Form 1040") by not reporting income, in violation of 26 U.S.C. § 7206(1); has evaded the payment of some of his 2015 individual income taxes, in violation of 26 U.S.C. § 7201; has willfully failed to timely and fully pay individual income taxes for 2015, in violation of 26 U.S.C. § 7203; has evaded assessment of his 2016, 2017, and 2018 individual income taxes, in violation of 26 U.S.C. § 7201; and has willfully failed to

---

[2] The Court previously issued email search warrants which lay out the complete investigation thus far. *See* Case #19-234M (Aug. 29, 2019) and Case #19-266M (Oct. 28, 2019). For purposes of this affidavit, only the probable cause related to Google Account 1 is set forth in this affidavit.

3

timely file Forms 1040 for the tax years 2016, 2017, and 2018, in violation of 26 U.S.C. § 7203. In addition, there is also probable cause to believe that the SUBJECT has willfully failed to timely file an IRS Form 1120, U.S. Corporation Income Tax Return ("Form 1120" or "corporate tax return") for the tax years 2017 and 2018, in violation of 26 U.S.C. § 7203.

8.       The SUBJECT is a graduate of Yale Law School and Georgetown University and has worked as a lobbyist, political consultant, and provided legal services, operating primarily out of Washington, D.C. Since 1997, the SUBJECT has been a member of the Connecticut Bar, with no record of attorney discipline. He is also currently a member in good standing of the District of Columbia Bar, having been admitted in 2007.

9.       The IRS investigation concerning the SUBJECT started in November of 2018 as a result of an investigation involving a United Kingdom ("U.K.") company for failing to report and withhold tax on payments made to U.S. contractors. Research on the company yielded bank reports indicating that the SUBJECT made payments to a U.S. contractor, who also had received payments from that U.K. company. A review of the SUBJECT's individual income tax filings was performed that indicated the SUBJECT had failed to file his 2016 and 2017 Forms 1040 and a 2017 corporate tax return for an entity for which he appears to be the responsible party.

10.      At all times relevant to this Affidavit, the SUBJECT has been involved with multiple companies. Bank records and tax return filings reveal the SUBJECT is the owner of the entities Owasco, PC and Owasco, LLC. Owasco, PC had articles of incorporation filed in the District of Columbia in January of 2006, and was considered a C-corporation for tax purposes. A C-corporation is a separate entity for tax purposes, meaning it is required to pay income taxes on the business income earned during the tax year. Additionally, most C-corporations are required to file a corporate tax return each year, regardless of whether the corporation had any gross receipts

4

that year.[3] Per IRS tax records, the SUBJECT is the 100% shareholder of Owasco, PC. During 2015, IRS and public records indicate that the SUBJECT started an additional business, Owasco, LLC. Owasco, LLC had articles of incorporation filed in Delaware in December 2015 and is considered a "disregarded entity" for tax purposes. A disregarded entity means that for tax purposes it is not recognized as an entity separate from its owner, in this case the SUBJECT.

11.    The SUBJECT, Owasco, PC, and Owasco, LLC have direct or indirect ownership interests in a number of other entities, including: Rosemont Seneca Partners, LLC; Rosemont Seneca Technology Partners, LLC; RSTP II Alpha Partners, LLC; RSTP II Bravo Partners, LLC; RSP Holdings, LLC; Seneca Global Advisors, LLC; Skaneateles, LLC; Rosemont Seneca Advisors, LLC; and Eudora Global, LLC. All of these entities are considered "flow-through entities" under the tax law. For a flow-through entity, the income or loss of the entity is treated as income or loss for the investor or owner; as relevant here, the investor or owner is the SUBJECT and/or Owasco, PC.

12.    For the tax years 2014 through 2017, the SUBJECT received IRS Forms W-2, Wage and Tax Statement ("Form W-2") from various sources, including the law firm Boies, Schiller & Flexner, LLP and his corporation, Owasco, PC.

13.    As described more below, the SUBJECT has not filed Forms 1040 for several tax years. In several years relevant to this Affidavit, however, the IRS received an IRS Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return ("Application for Extension") for the SUBJECT. By filing an Application for Extension, a taxpayer can automatically extend his or her time to file a tax return for up to six months (for

---

[3] *See generally* 26 U.S.C. § 6012(a)(2); IRS Publication 542, Corporation Publication. While there are exceptions to this rule, based on the investigation to date, none of the exceptions appear to apply to Owasco, PC.

example, from April 15 to October 15). The Application for Extension does not, however, extend the time a taxpayer has to *pay* taxes owed. When filing the Application for Extension, the taxpayer is also required to estimate and pay his or her total tax liability.

14. IRS records, as of December 2, 2019, show the following information regarding the SUBJECT's Forms 1040 and tax payments for the 2014 through 2018 tax years:[4]

| | 2014 | 2015 | 2016 No Return Filed | 2017 No Return Filed | 2018 No Return Filed |
|---|---|---|---|---|---|
| Wages | $819,500 | $745,372 | - | - | - |
| Interest Income | $154 | $137 | - | - | - |
| Taxable Refunds | $357 | $1,267 | - | - | - |
| Schedule D Income | $0 | $609,786 | - | - | - |
| Schedule E Income | $24,880 | $292,395 | - | - | - |
| Other Income | $2,437 | $829,251 | - | - | - |
| Total Income Per Tax Return | $847,328 | $2,478,208 | - | - | - |
| Taxable Income Per Tax Return | $721,166 | $2,335,597 | - | - | - |
| Total Tax Per Tax Return | $239,076 | $820,801 | - | - | - |
| Federal Income Tax Withholdings Per Tax Return (From Form W-2 Wages) | $231,725 | $206,087 | N/A | N/A | N/A |
| Federal Income Tax Withholdings Per IRS Records (From Forms W-2 Wages) | N/A | N/A | $399,887 | $123,857 | $38,465 |
| Other Taxes Paid Per Tax Filings (including excess social security withholdings, estimated tax payments made and payments made with extensions) | $15,271 | $438,694 | $30,000[5] | $0 | $0 |
| Other Taxes Paid after Tax Filings Per IRS Records | - | $70,000 | - | - | -- |

[4] As of December 2, 2019, the IRS has not received Forms 1040 for the SUBJECT for the tax years 2016, 2017, and 2018.

[5] While no Form 1040 was filed, the SUBJECT filed and/or caused to be filed an Application for Extension for his 2016 Form 1040 along with a $30,000 tax payment.

6

| | | | | | |
|---|---|---|---|---|---|
| Total Taxes Paid to Date Per IRS Records | $246,996 | $714,781 | $429,887 | $123,857 | $38,465 |
| Tax Refunds Issued Per IRS Records | $7,920 | - | N/A | N/A | N/A |
| Total Tax, Penalties and Interest Outstanding Per IRS Records | - | $159,721 | N/A | N/A | N/A |

15.    IRS records, as of December 2, 2019, show the following information reported on

Owasco, PC's corporate tax returns for the 2014 through 2018 tax years[6]:

| | 2014 | 2015 | 2016 | 2017 No Return Filed | 2018 No Return Filed |
|---|---|---|---|---|---|
| Gross Receipts | $17,500 | $316,666 | $1,550,965 | - | - |
| Capital Gain | $0 | $293,477 | $0 | - | - |
| Other Income | $700,918 | $885 | $6,335 | - | - |
| Total Income Per Tax Return | $718,427 | $611,195 | $1,557,307 | - | - |
| Officer Comp. | $600,000 | $365,403 | $1,295,000 | - | - |
| Other Deductions | $66,573 | $264,046 | $117,043 | - | - |
| Total Deductions | $666.573 | $629,449 | $1,412,043 | - | - |
| Taxable Income Per Tax Return | $13,339 | $(18,254) | $127,010 | - | - |
| Total Tax Per Tax Return | $4,669 | $0 | $44,454 | - | - |
| Total Taxes Paid Prior to April 15th Per IRS Records | $6,000 | $9,000 | - | - | - |
| Total Taxes Paid after Tax Filings Per IRS Records | - | - | $45,673 | | |
| Total Taxes Paid to Date Per IRS Records | $6,000 | $9,000 | $45,673 | - | - |
| Tax Refunds Issued Per IRS Records | $(1,331) | $(9,000) | - | - | - |

---

[6] As of December 2, 2019, the IRS has not received corporate tax returns for Owasco, PC for the tax years 2017 and 2018.

## ERIC SCHWERIN

16.     According to information provided by Google, Eric D. Schwerin ("Schwerin") is the owner of Google Account 1.

17.     According to publicly available information, Schwerin has been a business associate of the SUBJECT for over a decade.  From 2002 to 2008, Schwerin was a partner at Oldaker, Biden & Belair, LLP, a lobbying firm where the SUBJECT was a named partner.[7]

18.     According to publicly available information, in or around 2008, Schwerin became a Founding Partner and Managing Director at Rosemont Seneca Partners, LLC, a firm co-founded by the SUBJECT.[8]

19.     According to IRS records, Schwerin and the SUBJECT co-owned a flow-through entity called Skaneateles, LLC, since at least 2014.[9]  Schwerin owned his 25% interest in Skaneateles, LLC through a flow-through entity named Aqaba, LLC.  The SUBJECT owned a 75% interest in Skaneateles, LLC through two different entities:  Owasco, PC, a corporation that the SUBJECT wholly owned, held the interest in 2014 and part of 2015; Owasco, LLC, a disregarded entity owned by the SUBJECT, held the interest from the end of 2015 through the

---

[7] "President Obama Announces More Key Administration Posts," The White House Office of the Press Secretary, Mar. 10, 2015, *available at* https://obamawhitehouse.archives.gov/the-press-office/2015/03/10/president-obama-announces-more-key-administration-posts; "Biden's Son Ends D.C. Lobby Work," Associated Press, Sept. 13, 2008, *available at* https://www.latimes.com/archives/la-xpm-2008-sep-13-na-bidenson13-story.html

[8] President Obama Announces More Key Administration Posts," *supra* note 7; Kenneth P. Vogel and Luliia Mendel, "Biden Faces Conflict of Interest Questions That Are Being Promoted by Trump and Allies," N.Y. Times, May 1, 2019, *available at* www.nytimes.com/2019/05/01/us/politics/biden-son-ukraine.html.

[9] According to IRS records, through Skaneateles, LLC, Schwerin and the SUBJECT held interests in Rosemont Seneca Partners LLC, RSP Holdings LLC, and Seneca Global Advisors LLC.

present.  For tax years 2014 through 2018, Schwerin signed the IRS Form 1065, U.S. Return of

Partnership Income ("Form 1065"), for Skaneateles, LLC that was filed with the IRS.

20.     According to IRS records, Schwerin served as an officer of Owasco, PC.  For tax

years 2014 and 2015, the IRS received a Form 1120 for Owasco, PC that was signed by Schwerin

as the Secretary-Treasurer.  Further, bank records obtained from Wells Fargo show that Schwerin

was a joint signer, with the SUBJECT, for an account held in the name of Owasco, PC and that

Schwerin retains power of attorney status for a bank account held in the name of Owasco, LLC.

## STATEMENT OF PROBABLE CAUSE

### A.  *2014 Tax Year*

21.     As described below, there is probable cause to believe that the SUBJECT filed a

false Form 1040 for tax year 2014, in violation of 26 U.S.C. § 7206(1), by failing to report at least

$315,000 in income that he received for serving as a director of a Ukrainian natural gas producer.

22.     In April 2014, the SUBJECT was appointed to the board of directors of Burisma

Holdings Limited ("Burisma"), Ukraine's largest private natural gas producer.  This is confirmed

by multiple sources.  Burisma's website, dated August 1, 2016, featured a photo of the SUBJECT,

noting his appointment as "Director" in April 2014.  News articles, including in the *New York

Times* and *The New Yorker*,[10] also reported that the SUBJECT was appointed to Burisma's board

in April 2014.  In the *New York Times* article, the SUBJECT acknowledged his role with Burisma

and stated:  "I explicitly limited my role to focus on corporate governance best practices to

facilitate Burisma's desire to expand globally."

---

[10] Kenneth P. Vogel and Luliia Mendel, *supra* note 8; Adam Entous, *Will Hunter Biden Jeopardize His Father's Campaign?*, The New Yorker, July 1, 2019, at www.newyorker.com/magazine/2019/07/08/will-hunter-biden-jeopardize-his-fathers-campaign.

23.    Burisma's website and the *New York Times* article also stated that Devon Archer ("Archer") was appointed to the board of directors of Burisma at approximately the same time that the SUBJECT was.  According to IRS tax filings and *The New Yorker* article, the SUBJECT and Archer have ownership interests, directly or indirectly, in a number of the same business entities and they are involved together in multiple business ventures, both domestic and international.

24.    According to IRS and public records, Rosemont Seneca Bohai LLC ("RSB") is a partnership in which Archer holds a 99% interest.    According to bank records from Morgan Stanley, starting in or around April 15, 2014, two Morgan Stanley bank accounts held in the name of RSB ("RSB Morgan Stanley Accounts") began receiving payments from a bank account held by Burisma at AS Privatbank located in Latvia.  Each month, Burisma typically sent two separate payments of approximately $83,333.33 to the Morgan Stanley Accounts.  All told, in 2014, Burisma transferred approximately $1,538,503 to the RSB Morgan Stanley Accounts.

25.    A review of financial records shows no direct payment from Burisma to the SUBJECT in 2014.  However, between June 2014 and December 2014, the RSB Morgan Stanley Accounts sent multiple wire transfers totaling approximately $315,000 to the SUBJECT's two personal bank accounts at USAA.

26.    Given the structure of the monthly payments, whereby Burisma sent two separate and equal payments to the RSB Morgan Stanley Accounts, beginning in the month Archer and the SUBJECT joined Burisma's board of directors, there is probable cause to believe these payments represent directors' fees for Archer and the SUBJECT.  Moreover, as set forth below, payments from Burisma were identified on the SUBJECT's 2015 Form 1040 as either consulting and/or directors' fees.

10

27.     In April 2015, an Application for Extension was filed for the SUBJECT. In or around October 2015, the SUBJECT filed his 2014 Form 1040, which was signed under penalty of perjury. The SUBJECT filed jointly with his then-wife and William Morgan ("Morgan") of Morgan Wingate & Co., PC, is listed as the paid preparer of the Form 1040.[11] On his 2014 Form 1040, the SUBJECT reported $819,500 in wages and a handful of other, minor sources of income adding up to a total income of $847,328. The wages reported comprised $216,000 from Boies Schiller & Flexner, LLP, $3,500 from Georgetown University, and $600,000 from Owasco, PC. All of these amounts were reported on Forms W-2 issued to the SUBJECT and were attached to the tax return. Despite receiving at least $315,000 from Burisma, the SUBJECT's Form 1040 does not reflect any of that income.[12] Therefore, there is probable cause to believe that the SUBJECT filed a false 2014 Form 1040 in violation of 26 U.S.C. § 7206(1).

---

[11] The Washington Post reported that William Morgan died on or about June 26, 2019. *See* "William "Bill" Morgan, Jr." *available at* https://www.legacy.com/obituaries/washingtonpost/obituary.aspx?fhid=2167&n=william-morgan-bill&pid=193272189

[12] I have also examined the $600,000 in wages reported from Owasco, PC on the SUBJECT's 2014 Form 1040, and while the investigation has not yet identified the ultimate source of these funds, it does not appear to represent the payments from Burisma. According to its tax filings, Owasco, PC is a corporation wholly owned by the SUBJECT. Owasco, PC filed a 2014 Form 1120. This return was also prepared by Morgan. Most of the income Owasco, PC reports was derived from its 75% ownership of Skaneateles, LLC, a partnership. In turn, the vast majority of the income Skaneateles, LLC reported on its 2014 Form 1065 was derived from its 83% ownership of Seneca Global Advisors, LLC and its 99.5% ownership of RSP Holdings, LLC. The 2014 Forms 1065 for Seneca Global Advisors, LLC and RSP Holdings, LLC did not specifically identify the sources of the majority of their income. Nothing on the Owasco, PC, Skaneateles, LLC, Seneca Global Advisors, LLC, or RSP Holdings, LLC tax returns mentioned any income from Burisma, nor do the amounts reported on these returns match the Burisma payments. Moreover, the transfers of these fees were made to the SUBJECT's personal bank account. Finally, as noted above, in the subsequent tax year, the SUBJECT reported Burisma director's fees on his 2015 Form 1040, separate and in addition to reporting wages from Owasco, PC.

11